# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ART VAN FURNITURE, LLC, *et al.*,[1] | ) Case No. 20-10553 (___) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion (this "Motion"):

### Relief Requested

1.      The Debtors seek entry of an interim order (the "Interim Order"), substantially in

the form attached hereto, and a final order (the "Final Order"), *inter alia*:  (a) authorizing the

Debtors' use of Cash Collateral (as defined below); (b) granting adequate protection to the

Prepetition Secured Parties (as defined below) for any diminution in value of their interests in the

Prepetition Collateral (as defined below), including Cash Collateral; and (c) vacating and

modifying the automatic stay solely to the extent necessary to implement and effectuate the terms

and provisions of the Interim Order.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).  The location of the Debtors' service address in these chapter 11 cases is: 6500 East 14 Mile Road, Warren Michigan 48092.

2.      In addition, the Debtors request that the Court schedule a final hearing within approximately 35 days of the commencement of these chapter 11 cases to consider approval of this Motion on a final basis.

## Jurisdiction and Venue

3.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested herein are sections 105, 361, 362, 363, 503, 506, 507 and 552 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 4001 and 9014, and Bankruptcy Local Rules 4401-2 and 9013.1(m).

## Background

6.      The Debtors operate 169 locations, including 92 furniture and mattress showrooms and 77 freestanding mattress and specialty locations.  The Debtors do business under brand names, including Art Van Furniture, Pure Sleep, Scott Shuptrine Interiors, Levin Furniture, Levin Mattress, and Wolf Furniture.  The Debtors were founded in 1959 and was owned by its founder, Art Van Elslander, until it was sold to funds affiliated with Thomas H. Lee Partners, L.P. ("THL")

in March 2017.  Pennsylvania based Levin Furniture and Wolf Furniture were acquired by Art Van in November 2017.  As of the Petition Date (as defined below), the Debtors operate stores throughout Michigan, Indiana, Ohio, Illinois, Pennsylvania, Maryland, Missouri, and Virginia. The Debtors are headquartered in Warren, Michigan and have approximately 4,500 employees as of the Petition Date (as defined below).

7.       On March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description surrounding the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of David Ladd, Executive Vice President and Chief Financial Offer of Art Van Furniture, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with this Motion and incorporated by reference herein.  Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

### Statement of the Material Terms of the Interim Order

8.       Pursuant to Bankruptcy Rule 4001(b), (c) and (d) and Bankruptcy Local Rule 4001-2(a)(i) and (ii), the following is a concise statement and summary of the material terms of the Interim Order (collectively, the "Highlighted Provisions"):

13144876 v3

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| **Entities with an Interest in Cash Collateral**<br><br>*Bankruptcy Rule 400l(b)(1)(B)(i)* | The Prepetition ABL Parties[2] and the Prepetition Term Loan Parties[3] (collectively, the "<u>Prepetition Secured Parties</u>") | ¶¶ F & H |
| **Purposed Use of Cash Collateral**<br><br>*Bankruptcy Rule 400l(b)(1)(B)(ii)*<br><br>*Local Rule 4001-2(a)(ii)* | The Debtors seek authority to use Cash Collateral to:<br><br>(i) finance their working capital needs and for any other general corporate purposes; and (ii) pay related transaction costs, fees, liabilities and expenses (including all professional fees and expenses) and other administration costs incurred in connection with and for the benefit of these chapter 11 cases, in each case solely to the extent consistent with the Budget (as defined below) and the Interim Order. | ¶ 2 |
| **Budget and Variance Reporting**<br><br>*Bankruptcy Rule 400l(b)(1)(B)(ii)*<br><br>*Local Rule 4001-2(a)(ii)* | <u>Budget</u>:  The use of Cash Collateral for the first thirteen-week period from the Petition Date shall be in accordance with the budget (the "<u>Budget</u>"), which Budget shall be updated, modified, or supplemented by the Debtors not less than one time in each four-week period. | ¶ 11 |
|  | <u>Budget Compliance</u>:  The Debtors shall not, without the consent of the Prepetition Agents, permit (i) the actual Total Cash Receipts (as defined in the Interim Order) for any rolling four-week period to be less than 90% of the Total Cash Receipts set forth in the Budget for such period, (ii) the actual GOB Disbursements (as defined in the Interim Order) for any rolling four-week period to exceed 110% of the aggregate GOB Disbursements set forth in the Budget for such period, (iii) the actual Operating Disbursements (as defined in the Interim Order) for any rolling four-week period to exceed 110% of the aggregate Operating | ¶ 12(a) |

---

[2] The "Prepetition ABL Parties" are Wells Fargo Bank, National Association, as administrative agent, issue bank, and collateral agent (in such capacity, the "<u>Prepetition ABL Agent</u>") and the lenders party to the Prepetition ABL Agreement (as defined in the Interim Order).

[3] The "Prepetition Term Loan Parties" are Virtus Group, LP, as administrative agent and collateral agent and the lenders party to the Prepetition Term Loan Agreement (as defined in the Interim Order).

13144876 v3

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| | Disbursements set forth in the Budget for such period, or (iv) the actual Non-Operating Disbursements (as defined in the Interim Order) for any rolling four week period to exceed 110% of the aggregate Non-Operating Disbursements set forth in the Budget for such period (with any unspent amounts in the subparagraph (iv) being carried forward for subsequent periods). | |
| **Duration of Use of Cash Collateral/ Events of Default/ Rights and Remedies Upon Event of Default** | Specified Period:  The Debtors are authorized to use Cash Collateral for the period from the Petition Date through the date which is the earliest to occur of: (a) the Termination Date (as defined in the Interim Order), (b) thirty (30) days after the Petition Date, and (c) entry of the Final Order; provided, however, that, during the Remedies Notice Period (as defined in the Interim Order) the Debtors may use Cash Collateral for certain specified purposes. | ¶ 2 |
| | Events of Default:  The occurrence of any of the following events, unless consented to or waived by the Prepetition Agents in advance in writing, each in their sole and absolute discretion, shall constitute an event of default (collectively, the "Events of Default"): | ¶ 20 |
| | (a)    the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under the Interim Order (including, without limitation, the Covenants in paragraph 12 of the Interim Order); | |
| | (b)    the failure of the Debtors to obtain a Final Order on the Motion on terms acceptable to the Prepetition Agents on or before 30 days after the Petition Date; | |
| | (c)    (i) the failure by the Debtors to continue sales of the Assets in accordance with the Consulting Agreement and to assume the Consulting Agreement on a timely basis; | |
| | (d)    the filing of a motion or any plan of reorganization or disclosure statement attendant | |

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| | thereto by and of the Debtors: (i) to obtain additional financing under section 364(d) of the Bankruptcy Code not otherwise permitted pursuant to the Interim Order; (ii) to grant any lien other than Permitted Prior Liens (as defined in the Interim Order) upon or affecting any Postpetition Collateral(as defined in the Interim Order); or (iii) except as provided in the Interim Order, to use Cash Collateral under section 363(c) of the Bankruptcy Code; | |
| | (e)   (i) the filing of any Prohibited Plan (as defined in the Interim Order) or disclosure statement attendant thereto, or any direct or indirect amendment to such chapter 11 plan or disclosure statement, by a Debtor, (ii) the entry or request for entry of any order terminating any Debtor's exclusive right to file a chapter 11 plan (unless actively contested by the Debtors), or (iii) the expiration of any Debtor's exclusive right to file a chapter 11 plan; | |
| | (f)   the entry of an order in any of the cases confirming a Prohibited Plan; | |
| | (g)   the entry of an order amending, supplementing, staying, vacating or otherwise modifying the Interim Order or the Cash Management Order, the filing by a Debtor of a motion for reconsideration with respect to the Interim Order or the Cash Management Order, or the Interim Order shall cease to be in full force and effect; | |
| | (h)   the payment of, or application by the Debtors for authority to pay, any prepetition claim unless in accordance with the Budget, subject to variances permitted by the Interim Order; | |
| | (i)   the appointment of an interim or permanent trustee in the cases, the appointment of a receiver, receiver and manager, interim receiver or similar official over any substantial portion of the assets of the Debtors, or the appointment of a | |

13144876 v3

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| | trustee receiver or an examiner in the cases with expanded powers to operate or manage the financial affairs, the business, or reorganization of the Debtors; | |
| | (j)  the filing of a motion to approve a Prohibited Sale (as defined in the Interim Order) or to sell all or substantially all of the Debtors' assets other than in accordance with the Consulting Agreement or the Levin LOI (as those terms are defined in the Interim Order); | |
| | (k)  the dismissal of any case, or the conversion of any case from one under Chapter 11 to one under Chapter 7 of the Bankruptcy Code or any Debtor filing a motion or other pleading seeking the dismissal of the cases under section 1112 of the Bankruptcy Code or otherwise or the conversion of the cases to Chapter 7 of the Bankruptcy Code; | |
| | (l)  the filing of a motion seeking, or the Court shall enter an order granting, relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor (other than the Prepetition ABL Agent and, subject to the Intercreditor Agreement (as defined in the Interim Order), the Prepetition Term Loan Agent) to execute upon or enforce a lien on any Postpetition Collateral or Prepetition Collateral, (ii) approving any settlement or other stipulation with any secured creditor of any Debtor providing for payments as adequate protection or otherwise to such secured creditor, or (iii) with respect to any lien on or the granting of any lien on any Postpetition Collateral or the Prepetition Collateral to any federal, state or local environmental or regulatory agency or authority, which in either case involves a claim of [$250,000] or more; | |
| | (m)  the existence of any claim or charges, or the entry of any order of the Court authorizing any | |

13144876 v3

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| | claims or charges entitled to superpriority administrative expense claim status in any Case pursuant to section 364(c)(1) of the Bankruptcy Code *pari passu* with or senior to the claims of the Prepetition Secured Parties under the Interim Order, or there shall arise or be granted by the Court (i) any claim having priority over any or all administrative expenses of the kind specified in clause (b) of section 503 or clause (b) of section 507 of the Bankruptcy Code or (ii) any lien on the Postpetition Collateral or the Prepetition Collateral having a priority senior to or *pari passu* with the liens and security interests granted in the Interim Order, except, in each case, as expressly provided in the Interim Order; | |
| | (n)    the filing of a motion or entry of an order materially adversely impacting the rights and interests of the Prepetition Secured Parties shall have been entered by the Court or any other court of competent jurisdiction; | |
| | (o)    any Debtor shall challenge, support or encourage a challenge of any payments made to any Prepetition ABL Party with respect to the Prepetition ABL Obligations; | |
| | (p)    any Debtor shall challenge, support or encourage the challenge of any payments made to any Prepetition Term Loan Party with respect to the Prepetition Term Loan Obligations; | |
| | (q)    the entry of any order by the Court granting, or the filing by any Debtor of any motion or other request with the Court seeking authority to use cash proceeds of any of the Postpetition Collateral  or Prepetition Collateral other than as set forth in the Interim Order or to obtain any financing under section 364(d) of the Bankruptcy Code; | |
| | (r)    any Debtor or any person on behalf of any Debtor shall file any motion seeking authority to | |

8

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| | consummate a sale of assets, other than in connection with the Consulting Agreement or the Levin APA (as defined in the Interim Order), with respect to Postpetition Collateral or Prepetition Collateral having a value in excess of [$250,000] outside the ordinary course of business and not otherwise permitted under the Interim Order; | |
| | (s)   any Debtor shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise provide any credit on account of any prepetition indebtedness or payables other than payments (i) under customary "first day orders as approved by the Prepetition Agents in writing (provided that the Interim Order and all orders relating to cash management shall be acceptable to the Prepetition Agents) and (ii) payments approved (A) by the Court or (B) by the Prepetition Agents in writing, in each case in accordance with the Budget, subject to variances permitted by the Interim Order; | |
| | (t)   any Debtor shall fail to contest in good faith a request to take any action that if taken by the Debtor would constitute an event of default under paragraph 20 of the Interim Order; | |
| | (u)   the automatic stay shall be modified, reversed, revoked or vacated in a manner that has a material adverse impact on the rights and interests of the Prepetition Agents or the Prepetition Secured Parties. | |
| | Rights and Remedies Upon Entry of Default: Immediately upon the occurrence and during the continuation of an Event of Default, without any application, motion, or notice to, hearing before, or order from the Court, but subject to the terms of the Interim Order (and the Remedies Notice Period), (a) (i) the Prepetition ABL Agent may declare (any such declaration delivered by the Prepetition ABL Agent or | ¶ 21 |

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| | the Prepetition Term Loan Agent, as applicable, shall be referred to as a "Termination Declaration") (A) all Prepetition ABL Obligations owing under the Prepetition ABL Documents to be immediately due and payable, and (B) that the application of the Carve Out (as defined in the Interim Order) has occurred through the delivery of the Carve Out Trigger Notice (as defined in the Interim Order); and (ii) the Prepetition ABL Agent may declare a termination, reduction, or restriction on the ability of the Debtors to use Cash Collateral, and (b) the Prepetition Term Loan Agent may (i) declare a termination, reduction, or restrict on the ability of the Debtors to use Cash Collateral that is Postpetition Term Priority Collateral and (ii) after the Prepetition ABL Obligations have been Paid in Full, declare a termination, reduction, or restriction on the ability of the Debtors to use Cash Collateral (the date a Termination Declaration is delivered shall be referred to as the "Termination Date").  The Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to a Committee (if appointed), the Prepetition ABL Agent (if delivered by the Prepetition Term Loan Agent), the Prepetition Term Loan Agent (if delivered by the Prepetition ABL Agent), and the U.S. Trustee.  The automatic stay in the Cases otherwise applicable to the Prepetition ABL Parties is hereby modified so that five (5) business days after the date a Termination Declaration is delivered (the "Remedies Notice Period"), the Prepetition ABL Parties shall be entitled to exercise their rights and remedies in accordance with the Prepetition ABL Documents and the Interim Order to satisfy the Prepetition ABL Obligations, Prepetition ABL Superpriority Claims, and Prepetition ABL Adequate Protection Liens, subject to the Carve Out (to the extent applicable).  During the Remedies Notice Period, the Debtors and/or a Committee (if appointed) shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court.  Upon expiration of the Remedies Notice Period, unless the Court orders otherwise, the automatic stay, as to the Prepetition ABL Parties, shall automatically be terminated without further notice or order and the | |

13144876 v3

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| | Prepetition ABL Parties shall be permitted to exercise all remedies set forth in the Interim Order, in the Prepetition Documents, and as otherwise available at law without further order of or application or motion to the Court consistent with the Intercreditor Agreement and the Interim Order.  Upon the occurrence and during the continuation of an Event of Default, in each case, subject to the Intercreditor Agreement, the Prepetition ABL Agent and any liquidator or other professional will have the right to access and utilize, at no cost or expense, any trade names, trademarks, copyrights or other intellectual property and any warehouse, distribution centers, store or other locations to the extent necessary or appropriate in order to sell, lease or otherwise dispose of any of the Postpetition ABL Priority Collateral, including pursuant to any Court approved sale process. | |
| **Proposed Adequate Protection**<br><br>*Bankruptcy Rule 400l(b)(1)(B)(iv)*<br><br>*Local Rule 4001-2(a)(ii)* | The Prepetition Secured Parties shall be granted, to the extent of any diminution in value of its interests in the Prepetition Collateral from and after the Petition Date, the following:<br><br>Adequate Protection Liens.<br>(a)    Prepetition ABL Adequate Protection Liens.  Subject to the Carve Out, pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition ABL Parties in the Prepetition Collateral to the extent of any Diminution in Value of such interests in the Prepetition Collateral, the Debtors grant to the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Parties, continuing, valid, binding, enforceable, and perfected postpetition security interests in and liens (the "Prepetition ABL Adequate Protection Liens") on any Postpetition Collateral.<br><br>(b)    Prepetition Term Loan Adequate Protection Liens.  Subject to the Carve Out, pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection of the interests of the | ¶¶ 3, 5, 7-8<br><br><br><br>¶ 3(a)-(b) |

11

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| | Prepetition Term Loan Parties in the Prepetition Collateral to the extent of any Diminution in Value of such interests in the Prepetition Collateral, the Debtors grant to the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Parties, continuing, valid, binding, enforceable, and perfected postpetition security interests in and liens (the "Prepetition Term Loan Adequate Protection Liens," and together with the Prepetition ABL Adequate Protection Liens, the "Adequate Protection Liens") on the Postpetition Collateral.<br><br>Adequate Protection Superpriority Claims.<br>(a)  Prepetition ABL Superpriority Claim.  As further adequate protection of the interests of the Prepetition ABL Parties in the Prepetition Collateral to the extent of any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition ABL Agent, on behalf of itself and the Prepetition ABL Parties, is granted as and to the extent provided by section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "Prepetition ABL Superpriority Claim").<br><br>(b)  Prepetition Term Loan Superpriority Claim.  As further adequate protection of the interests of the Prepetition Term Loan Parties in the Prepetition Collateral to the extent of any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Term Loan Agent, on behalf of itself and the Prepetition Term Loan Parties, is granted as and to the extent provided by section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "Prepetition Term Loan Superpriority Claim," and together with the Prepetition ABL Superpriority Claim, the "Adequate Protection Superpriority Claims"). | ¶ 5(a)-(b) |

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| | <u>Adequate Protection Payments and Protections for Prepetition ABL Parties.</u>  As further adequate protection, the Debtors are authorized and directed to pay in cash the following:  (a) all principal and interest at the default rate due under the Prepetition ABL Documents (but subject to the Challenge rights to the extent preserved in paragraph 27 of the Interim Order), (b) immediately upon entry of the Interim Order, the reasonable and documented fees, out-of-pocket fees and expenses, and disbursements (including the reasonable and documented fees, out-of-pocket fees and expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition ABL Agent arising prior to the Petition Date and reimbursable under the Prepetition ABL Documents, (c) om accordance with paragraph 22 of the Interim Order, the reasonable and documented fees, out-of-pocket fees and expenses, and disbursements (including the reasonable and documented fees, out-of-pocket fees and expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition ABL Agent on and subsequent to the Petition Date reimbursable under the Prepetition ABL Documents, (d) the Prepetition ABL Obligations in accordance with the Budget, and (e)the Prepetition ABL Obligations with the Deposit (as defined in the Levin LOI) upon such Deposit becoming non-refundable in accordance with the terms of the Levin LOI.  In addition, immediately upon the payment in full in cash of the Prepetition ABL Obligations (including principal, interest, fees, prepayment premiums, expenses, indemnities, other than contingent indemnification obligations for which no claim has been asserted),  the cash collateralization of all treasury and cash management obligations, hedging obligations, and bank product obligations, in each case, in accordance with the terms of the Prepetition ABL Documents, the Debtors shall fund to the Prepetition ABL Agent, for the benefit of the Prepetition ABL Parties, $500,000 into a non-interest bearing account maintained at Wells Fargo Bank, National Association (the "<u>Prepetition ABL Indemnity Reserve</u>") to secure | ¶ 7 |

13

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| | contingent indemnification, reimbursement, or similar continuing obligations arising under or related to the Prepetition ABL Documents (the "<u>Prepetition ABL Indemnity Obligations</u>").  The Prepetition ABL Indemnity Reserve shall secure all costs, expenses, and other amounts (including reasonable and documented attorneys' fees) owed to or incurred by the Prepetition ABL Agent and the Prepetition ABL Lenders related to the Prepetition ABL Documents, the Prepetition ABL Obligations, or the Prepetition ABL Liens, as applicable, whether in these Cases or independently in another forum, court, or venue.  The Prepetition ABL Indemnity Obligations shall be secured by a first priority lien on the Prepetition ABL Indemnity Reserve and the funds therein (which shall not be subject to the Carve-Out) and by a lien on the Postpetition Collateral and the Prepetition Collateral (subject in all respects to the Intercreditor Agreement).  Subject to paragraph 22 of the Interim Order, the Debtors shall pay all Prepetition ABL Indemnity Obligations as and when they arise and paid; *provided, that* the Prepetition ABL Agent shall have authority in its sole discretion, but not an obligation, to apply amounts in the Prepetition ABL Indemnity Reserve to any Prepetition ABL Indemnity Obligations, without further notice to or consent from the Debtors, a Committee (if appointed), or any other parties in interest and without further order of this Court; *provided*, that (i) any such indemnification claims shall be subject to (a) the terms of the Prepetition ABL Documents (including with respect to application of proceeds) and (b) the rights of parties in interest with requisite standing to object to such indemnification claim(s) to the extent set forth in paragraph 27 of the Interim Order.  The Prepetition ABL Agent (for itself and on behalf of the Prepetition ABL Parties) shall retain and maintain the Prepetition ABL Liens and the Prepetition ABL Adequate Protection Liens granted to the Prepetition ABL Agent as security for the amount of any Prepetition ABL Indemnity Obligations in excess of the funds on deposit in the Prepetition ABL Indemnity Reserve.  The Prepetition ABL Indemnity Reserve shall be released at such time as the Prepetition ABL Indemnity | |

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| | Obligations are Paid in Full. | |
| | <u>Adequate Protection Payments and Protections for Prepetition Term Loan Agent</u>.  As further adequate protection, the Debtors are authorized and directed to pay in cash the following:  (a) the reasonable and documented fees, out-of-pocket fees and expenses, and disbursements (including the reasonable and documented fees, out-of-pocket fees and expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition Term Loan Agent arising prior to the Petition Date and reimbursable under the Prepetition Term Loan Documents, and (b) in accordance with paragraph 22 of the Interim Order, the reasonable and documented fees, out-of-pocket fees and expenses, and disbursements (including the reasonable and documented fees, out-of-pocket fees and expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition Term Loan Agent on and subsequent to the Petition Date reimbursable under the Prepetition Term Loan Documents; *provided, however*, that any payments made under this paragraph 8 shall be made solely from proceeds of Postpetition Term Priority Collateral. | ¶ 8 |
| **Liens on Chapter 5 Actions**<br><br>*Local Rule 4001-2(a)(i)(D)* | Subject to the entry of the Final Order, the Adequate Protection Liens include the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents. | ¶ 3(a)-(b) |

13144876 v3

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| **Carve Out**<br><br>*Local Rule 4001-2(a)(i)(F)* | The "<u>Carve Out</u>" means (i) all fees required to be paid to (A) the Clerk of the Court and (B) the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code; (ii) all reasonable fees and expenses up to $50,000 (and any interest thereon) incurred by a trustee under section 726(b) of the Bankruptcy Code (the "<u>Chapter 7 Trustee Carve Out</u>"); (iii) to the extent allowed at any time (regardless of whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice (as defined below)), whether by interim order, procedural order, or otherwise, all accrued and unpaid fees and expenses incurred by persons or firms retained by the Debtors pursuant to sections 327, 328 or 363 of the Bankruptcy Code (the "<u>Debtor Professionals</u>") and a Committee (if appointed) pursuant to sections 328 or 1103 of the Bankruptcy Code (the "<u>Committee Professionals</u>" and, together with the Debtor Professionals, the "<u>Professional Persons</u>") (such fees and expenses, the "<u>Allowed Professional Fees</u>") at any time on or prior to the first business day following delivery by the Prepetition ABL Agent of a Carve Out Trigger Notice (as defined in the Interim Order), provided that the amount of such Allowed Professional Fees shall, as relates to the Prepetition ABL Parties, the Prepetition ABL Priority Collateral and the Postpetition ABL Priority Collateral, not exceed, at any time, the amount set forth for Allowed Professional Fees in the Budget at such time (the "<u>ABL Professional Fee Cap</u>"); and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $[500,000] incurred after the first business day following delivery by the Prepetition ABL Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order or otherwise (the amounts set forth in this clause (iv) being the "<u>Post Carve Out Trigger Notice Cap</u>").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Prepetition ABL Agent to lead restructuring counsel for the Debtors, the U.S. Trustee, and lead counsel to a Committee (if appointed), which notice may be delivered following the occurrence and during the | ¶ 24 |

13144876 v3

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| | continuation of an Event of Default (as defined above), stating that the Post-Carve Out Trigger Notice Cap has been invoked. Each Professional Person shall deliver bi-weekly (on Thursday of each such week, beginning on the second Thursday following the Petition Date) to the Debtors (and the Debtors shall cause the same to be delivered to the Prepetition Agents on the same day received by the Debtors) a statement setting forth a good-faith estimate of the amount of fees and expenses incurred during the preceding week by such Professional Persons (through Saturday of such week). | |
| **Cross Collateralization**<br><br>*Local Rule 4001-2(a)(i)(A)* | None, other than replacement liens as adequate protection. | N/A |
| **Findings Regarding Validity/ Perfection/ Amount**<br><br>*Local Rule 4001-2(a)(i)(B)* | As set forth in the Interim Order, the Debtors have acknowledged and agreed as set forth therein, to the validity, perfection, priority, amount and enforceability of the Prepetition Secured Obligations, without prejudice to any other party's rights to assert claims, counterclaims or causes of actions, objections, contests or defenses prior to the expiration of the Challenge Period (as defined below). | ¶¶ F, 27 |
| **Challenge Period**<br><br>*Local Rule 4001-2(a)(i)(B)* | The "Challenge Period" is (A) for a Committee (if appointed), sixty (60) days from the date of formation of the Committee (if appointed), or (B) seventy-five (75) days following the entry of the Interim Order for any other party in interest with requisite standing (the occurrence of (A) and (B), as applicable, the "Challenge Deadline"), as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition ABL Agent (with respect to the Prepetition ABL Documents) and the Prepetition Term Loan Agent (with respect to the Prepetition Term Loan Documents), or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline. | ¶ 27 |

13144876 v3

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| **506(c) Waiver**<br><br>*Local Rule 4001-2(a)(i)(C)* | Subject to entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the cases at any time shall be charged against the Prepetition Secured Parties or any of their respective claims, the Postpetition Collateral, or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the Prepetition Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by any such parties. | ¶ 29 |
| **552(b) Wavier**<br><br>*Local Rule 4001-2(a)(i)(H)* | Subject to entry of the Final Order, the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties, with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral. | ¶ 31 |
| **Releases**<br><br>*Local Rule 4001-2(a)(ii)* | The Debtors stipulate and agree that they forever and irrevocably release, discharge, and acquit the Prepetition Agents, the Prepetition Secured Parties, all former, current and future Prepetition Secured Parties, and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys and agents, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "Releasees") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including reasonable attorneys' fees), debts, liens, actions and causes of action of any and every nature whatsoever relating to, as applicable, the Prepetition Secured Facilities, the Prepetition Documents, and/or the transactions contemplated under the Interim Order or thereunder occurring prior to the entry of the Interim Order including (x) any so-called "lender liability" or equitable subordination or recharacterization claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, | ¶ F(x) |

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| | priority, perfection or avoidability of the liens or claims of the Prepetition Agents and the Prepetition Secured Parties.  The Debtors further waive and release any defense, right of counterclaim, right of set-off or deduction to the payment of the Prepetition Secured Obligations which the Debtors may now have or may claim to have against the Releasees, arising out of, connected with or relating to any and all acts, omissions or events occurring prior to this Court entering the Interim Order. | |
| **Provisions Deeming Prepetition Debt to be Postpetition Debt**<br><br>*Local Rule 4001-2(a)(i)(E)* | None. | N/A |
| **Non-Consensual Priming**<br><br>*Local Rule 4001-2(a)(i)(G)* | None. | N/A |

## Basis for Relief

**I.       The Debtors' Request to Use Cash Collateral and Proposed Adequate Protection are Appropriate**

10.     The Debtors' use of property of their estates, including Cash Collateral, is governed by section 363 of the Bankruptcy Code.[4]  Pursuant to section 363(c)(2) of the Bankruptcy Code, a

---

[4] The Bankruptcy Code defines "cash collateral" as follows:

Cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as

19

debtor may use cash collateral as long as "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

11.    Section 363(e) of the Bankruptcy Code provides for adequate protection of interests in property when a debtor uses cash collateral. 11 U.S.C. § 363(e). Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay. *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996). While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis. *Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); *In re Satcon Tech. Corp.*, No. 12-12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *see also In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 COLLIER ON BANKRUPTCY ¶ 361.01 [1] at 361-66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding"); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("[T]he determination of adequate protection is a fact-specific inquiry left to the vagaries of each case . . . ") (citation and quotation omitted).

12.    The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use. *See In re*

---

provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

*Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral."); *see also In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993) (holding that adequate protection for use of collateral under section 363 of the Bankruptcy Code is limited to use-based decline in value).

### A. The Proposed Adequate Protection for the Prepetition Secured Parties is Sufficient

13.    As set forth in the Interim Order and described above in the Highlighted Provisions, the Debtors propose to provide the Prepetition Secured Parties with various forms of Adequate Protection.  The Debtors respectfully submit that, in light of the circumstances of these chapter 11 cases, the proposed Adequate Protection is appropriate and sufficient to protect the Prepetition Secured Parties from any diminution in value to the Collateral during the Specified Period.  In particular, the Cash Collateral will be used to sustain the Debtors' business operations, allowing for the maximization of the value of the Debtors' estates, specifically the arms' length negotiated terms to protect the Debtors' customer programs.  If Cash Collateral is not available for this purpose, the Debtors will be unable to fund payroll obligations, procure goods and services from vendors or otherwise maintain their operations and service their customers, thereby dissipating value to the detriment of the Prepetition Secured Parties and other stakeholders.  The use of the Cash Collateral will therefore protect the Prepetition Secured Parties' security interests by preserving the value of their collateral. *See In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (evaluating "whether the value of the debtor's property will increase as a result of the" use of collateral in determining sufficiency of adequate protection); *In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that a debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream,"

21

provided adequate protection to the secured creditor); *In re Constable Plaza Assocs., L.P.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (observing that debtor's use of rents to maintain and operate property "will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the secured lender's] mortgage").

14.     In light of the foregoing, the Debtors submit that the proposed Adequate Protection to be provided for the benefit of the Prepetition Secured Parties is appropriate. Thus, the Debtors' proposed Adequate Protection not only is necessary to protect the Prepetition Secured Parties against any diminution in value, but also is fair and appropriate on an interim basis under the circumstances of these chapter 11 cases to ensure the Debtors are able to continue using Cash Collateral in the near term, for the benefit of their estates and all parties in interest.

## II.     Failure to Obtain Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm

15.     Bankruptcy Rule 4001(b)(2) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion. Fed. R. Bankr. P. 4001(b)(2). However, the Court is authorized to conduct a preliminary expedited hearing on the Motion and authorize the Debtors' proposed use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates. *Id.*

16.     The Debtors has an immediate postpetition need to use Cash Collateral. The Debtors cannot maintain the value of their estates during the pendency of these chapter 11 cases without access to cash. The Debtors will use cash to, among other things, continue operating their business and satisfy other working capital needs during the chapter 11 cases, including, among other things, to fund their customer programs. The Debtors believe that all or substantially all of their available cash constitutes the Prepetition Secured Parties' Cash Collateral, as that term is

used by section 363(c) of the Bankruptcy Code. The Debtors therefore will be unable to proceed

with operating their business without the ability to use Cash Collateral, and will suffer immediate

and irreparable harm to the detriment of all creditors and other parties in interest.  In short, the

Debtors' ability to finance their operations and the availability of sufficient working capital and

liquidity to the Debtors through the use of Cash Collateral is vital to the preservation and

maintenance of the value of the Debtors' estates.

17.     The Debtors, therefore, seek immediate authority to use the Cash Collateral on an

interim basis and as set forth in this Motion and in the Interim Order to prevent immediate and

irreparable harm to their estates pending the Final Hearing pursuant to Bankruptcy Rule

400l(b)(2). Accordingly, to the extent that the Debtors require the use of Cash Collateral, the

Debtors respectfully submit that they have satisfied the requirements of Bankruptcy Rule

4001(b)(2) to support an expedited preliminary hearing and immediate Cash Collateral availability

on an interim basis.

**III.    <u>Modification of the Automatic Stay is Appropriate</u>**

18.     The Interim Order and Final Order (together, the "<u>Cash Collateral Orders</u>")

contemplate a modification of the automatic stay (to the extent applicable) as necessary to, *inter*

*alia*, permit the Debtors to: (a) grant the security interests, liens and superpriority claims described

above, and to perform such acts as may be requested to assure the perfection and priority of such

security interests and liens; and (b) authorize the Debtors to make certain payments in accordance

with the terms of the Cash Collateral Orders.  In addition, the Cash Collateral Orders provide for

modification of the automatic stay to allow the Prepetition Secured Partiers to exercise remedies

upon the occurrence and during the continuance of an Event of Default, and after the giving of five

(5) business days' prior written notice to the Debtors.

19. Stay modification provisions of this kind are ordinary and standard terms of postpetition use by debtors-in-possession of prepetition collateral, and, in the Debtors' business judgment, are reasonable under the present circumstances. *See, e.g., In re Open Road Films, LLC*, Case No. 18-12012 (LSS) [Docket No. 51] (Bankr. D. Del. September 7, 2018) (terminating automatic stay after occurrence of termination event and applicable notice*); In re RM Holdco LLC*, Case No. 18-11795 (MFW) [Docket No. 53] (Bankr. D. Del. August 7, 2018) (same); *In re Heritage Home Grp. LLC*, Case No. 18-11736 (KG) [Docket No. 46] (Bankr. D. Del. July 31, 2018) (same); *In re EBH Topco, LLC*, Case No. 18-11212 (BLS) [Docket No. 55] (Bankr. D. Del. May 24, 2018) (same); *In re Gibson Brands, Inc.*, Case No. 18-11025 (CSS) [Docket No. 71] (Bankr. D. Del. May 2, 2018) (same); *In re Appvion, Inc.*, Case No. 17-12082 (KJC) [Docket No. 75] (Bankr. D. Del. October 5, 2017). Accordingly, the Debtors respectfully request that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the Cash Collateral Orders.

## Request for Final Hearing

20. Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request that the Court set a date for the Final Hearing within thirty-five (35) days of the Petition Date and fix the date and time prior to the Final Hearing for parties to file objections to the relief requested by this Motion.

## The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

24. Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed above, authorizing the Debtors to use Cash Collateral and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases smoothly. Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would

24

severely disrupt the Debtors' operations at this critical juncture.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## **Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

25.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## **Reservation of Rights**

26.     Nothing contained in this Motion or any actions taken by the Debtors pursuant to any order granting the relief requested by this Motion is intended or should be construed as:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's Interim Order and Final Order is not intended and should not be construed as an admission as to the validity,

priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

## Notice

27.     Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Bankruptcy Local Rules, and is sufficient under the circumstances.  Without limiting the foregoing, due notice will be afforded, whether by facsimile, electronic mail, overnight courier or hand delivery, to parties-in-interest, including:  (a) the Office of the U.S. Trustee for the District of Delaware;  (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis);  (c) the agents under the Debtors' prepetition secured facilities and counsel thereto;  (d) the United States Attorney's Office for the District of Delaware;  (e) the Internal Revenue Service;  (f) the state attorneys general for states in which the Debtors conduct business; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

28.     No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

26

13144876 v3

WHEREFORE, for the reasons set forth herein and in the First Day Declaration, and based on the record of the Chapter 11 Case, the Debtors respectfully request that this Court (a) enter the Cash Collateral Orders (i) authorizing the Debtors to use Cash Collateral on an interim and final basis subject to the terms and conditions set forth therein; (ii) granting adequate protection to the Prepetition Secured Parties to the extent set forth in the Cash Collateral Orders; (iii) scheduling the Final Hearing, pursuant to the Interim Order, within approximately thirty-five (35) days of the commencement of the chapter 11 cases, to consider approval of this Motion on a final basis; and (iv) granting related relief; and (b) grant the Debtors such other and further relief as may be just and proper.

Dated:  March 8, 2020
Wilmington, Delaware

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

    /s/ Gregory W. Werkheiser
Gregory W. Werkheiser (DE No. 3553)
Michael J. Barrie (DE No. 4684)
Jennifer Hoover (DE No. 5111)
Kevin Capuzzi (DE No. 5462)
John C. Gentile (DE No. 6159)
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
E-mail: gwerkheiser@beneschlaw.com
        mbarrie@beneschlaw.com
        jhoover@beneschlaw.com
        kcapuzzi@beneschlaw.com
        jgentile@beneschlaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*