**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ART VAN FURNITURE, LLC, *et al.*,[1] | ) ) ) | Case No. 20-10553 (___) |
| Debtors. | ) ) | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND
FINAL ORDERS (I) AUTHORIZING THE PAYMENT OF CERTAIN
PREPETITION TAXES AND FEES AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion (this "Motion"):

**Relief Requested**

1. The Debtors seek entry of an interim order (the "Interim Order") and a final order (the "Final Order"), substantially in the forms attached hereto: (a) authorizing the Debtors to pay, in their sole discretion and as necessary to avoid interruption in their business, certain accrued and outstanding prepetition obligations accrued in the ordinary course of business on account of the Taxes and Fees (as defined herein) in an aggregate amount not to exceed $854,000 on an interim basis and $1,031,000 on a final basis, absent further order of the Court; (b) authorizing the Debtors to continue paying the Taxes and Fees (as defined herein) accrued in the ordinary course of business on a postpetition basis; and (c) granting related relief.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463). The location of the Debtors' service address in these chapter 11 cases is: 6500 East 14 Mile Road, Warren Michigan 48092.

13165050 v3

2.      In addition, the Debtors request that the Court schedule a final hearing within approximately 25 days of the commencement of these chapter 11 cases to consider approval of this Motion on a final basis.

**Jurisdiction and Venue**

3.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested herein are sections 105(a), 363(b), 507(a)(8), and 541 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 6003 and 6004, and Bankruptcy Local Rule 9013-1(m).

**Background**

6.      The Debtors operate 169 locations, including 92 furniture and mattress showrooms and 77 freestanding mattress and specialty locations.  The Debtors do business under brand names, including Art Van Furniture, Pure Sleep, Scott Shuptrine Interiors, Levin Furniture, Levin Mattress, and Wolf Furniture.  The Debtors were founded in 1959 and was owned by its founder, Art Van Elslander, until it was sold to funds affiliated with Thomas H. Lee Partners, L.P. ("THL")

in March 2017. Pennsylvania based Levin Furniture and Wolf Furniture were acquired by Art Van in November 2017. As of the Petition Date (as defined below), the Debtors operate stores throughout Michigan, Indiana, Ohio, Illinois, Pennsylvania, Maryland, Missouri, and Virginia. The Debtors are headquartered in Warren, Michigan and have approximately 4,500 employees as of the Petition Date (as defined below).

7. On March 8, 2020 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description surrounding the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of David Ladd, Executive Vice President and Chief Financial Offer of Art Van Furniture, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>"), filed contemporaneously with this Motion and incorporated by reference herein. Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

<b><u>The Debtors' Tax and Fee Obligations</u></b>

**I.    Overview of the Debtors' Tax and Fee Obligations.**

8. In the ordinary course of business, the Debtors collect, incur, and pay sales taxes, use taxes, annual report and licensing fees, property taxes, franchise taxes and fees, income taxes, various other governmental taxes, fees, and assessments (collectively, the "<u>Taxes and Fees</u>").[2]

---

2    By this Motion, the Debtors do not seek the authority to collect and remit state and federal employee-related withholding taxes. Such relief is instead requested in the *Debtors' Motion for Entry of Interim and Final Orders*

13165050 v3

The Debtors remit the Taxes and Fees to various federal, state, and local governments, including taxing authorities (collectively, the "Authorities"). A schedule identifying the Authorities is attached hereto as **Exhibit A**.[3] Taxes and Fees are remitted and paid by the Debtors through checks and electronic transfers that are processed through their banks and other financial institutions.[4]

9. The Debtors estimate that approximately $1,031,000 in Taxes and Fees relating to the prepetition period are or will become due and owing to the Authorities after the Petition Date in the ordinary course, of which $854,000 is expected to become due and payable in the first 25 days following the Petition Date.[5]

10. The following table contains descriptions of the Taxes and Fees, as well as the Debtors' estimate of the amounts of the Taxes and Fees accrued as of the Petition Date:

---

*(I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Employee Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief* filed concurrently herewith.

[3] Although **Exhibit A** is intended to be comprehensive, the Debtors may have inadvertently omitted one or more Authorities. By this Motion, the Debtors request relief applicable to all Authorities, regardless of whether such Authority is specifically identified on **Exhibit A**.

[4] The Debtors have filed contemporaneously herewith the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, and (C) Maintain Existing Business Forms and (II) Granting Related Relief.*

[5] This estimate does not include any potential prepetition tax liability that may later come due as the result of an audit.

4

13165050 v3

| Category | Description | Approximate Amount Accrued as of Petition Date | Approximate Amount Due During Interim Period |
|---|---|---|---|
| Sales and Use Taxes | The Debtors collect and remit sales, use, and related taxes to the Authorities in various states in connection with the sale of their products or services at store locations in those states, or through shipment of products purchased through the Debtors' e-commerce website. Generally, the Debtors collect and remit sales and use taxes to the relevant Authorities on a monthly or quarterly basis, depending on sales volume and the applicable jurisdiction. | $782,000 | $782,000 |
| Personal Property Taxes | State and local laws in the jurisdictions where the Debtors operate generally grant the Governmental Authorities the power to levy property taxes against the Debtors' personal property. To avoid the imposition of statutory liens on their personal property, the Debtors typically pay these taxes in the ordinary course of business on a quarterly or annual basis. | $203,000 | $72,000 |
| Franchise Taxes and Fees | The Debtors remit certain taxes, fees, permitting charges, and related fees required to conduct business in the ordinary course pursuant to state and local laws. Most jurisdictions assess franchise taxes on an annual basis, in arrears. | $1,000 | $0 |
| State Income Tax | The Debtors pay income or similar taxes to certain state Governmental Authorities to operate their businesses in the applicable taxing jurisdictions. States assess these taxes in one of the following manners: (a) a minimum tax on all businesses; (b) a tax based on gross receipts, gross margin, or net operating income; (c) a tax on an entity's total capital/equity or pro forma calculation thereof; or (d) other similar payment obligations. The Debtors pay such taxes on a monthly, quarterly, or annual basis, as applicable. | $27,000 | $0 |
| Business License and State Registration Fees | The Debtors operate in jurisdictions that impose business licensing fees and other similar fees, which the Debtors pay in the ordinary course of business.<br><br>Generally, the Debtors collect and remit payments with respect to business licenses, registration, and other fees to the relevant Governmental Authorities on a monthly or quarterly basis, depending on the applicable jurisdiction. | $18,000 | $0 |
| **Total** | | **$1,031,000** | **$854,000** |

5

11. The Debtors believe that failing to pay the Taxes and Fees could materially disrupt the Debtors' business operations in several ways. **First**, the Authorities could initiate audits, suspend operations, file liens, or seek to lift the automatic stay, which would unnecessarily divert the Debtors' attention from the chapter 11 process. **Second**, failing to pay Taxes and Fees could subject certain of the Debtors' directors and officers to claims of personal liability, which likely would distract those key employees from their duties related to the Debtors' chapter 11 process. **Third**, failing to pay certain of the Taxes and Fees, particularly franchise taxes, likely would cause the Debtors to lose their ability to conduct business in certain jurisdictions. **Fourth**, unpaid Taxes and Fees may result in penalties, the accrual of interest, or both, any of which could negatively impact the Debtors' business and creditor recoveries. **Fifth**, the Debtors collect and hold certain outstanding tax liabilities in trust for the benefit of the applicable Authorities, and these funds may not constitute property of the Debtors' estates.

## Basis for Relief

**I.    Certain of the Taxes and Fees Are Not Property of the Debtors' Estates.**

12. Many of the Taxes and Fees are collected or withheld by the Debtors on behalf of the applicable Authorities and are held in trust by the Debtors. *See, e.g.*, I.R.C. § 7501 (stating that certain taxes and fees are held in trust). As such, these Taxes and Fees are not property of the Debtors' estates under section 541 of the Bankruptcy Code. *See, e.g.*, 11 U.S.C. § 541(d); *Begier v. IRS*, 496 U.S. 53, 57–60 (1990) (holding that any prepetition payment of trust fund taxes is not an avoidable preference because the funds are not the debtor's property); *In re Shank*, 792 F.2d 829, 833 (9th Cir. 1986) (finding that sales tax required by state law to be collected by sellers from their customers is a "trust fund" tax and not released by a bankruptcy discharge); *DeChiaro v. New York State Tax Comm'n*, 760 F.2d 432, 435–36 (2d Cir. 1985) (same). To the extent these "trust fund" taxes are collected, they are not property of the Debtors' estates under section 541(d) of the

Bankruptcy Code. *See In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 104-05 (Bankr. E.D. Pa. 1987). Because the Debtors may not have an equitable interest in funds held on account of such "trust fund" taxes, the Debtors should be permitted to pay those funds to the Authorities as they become due.[6]

II. **Payment of the Taxes and Fees as Provided Herein Is a Sound Exercise of the Debtors' Business Judgment.**

13. The Court may authorize the Debtors to pay the Taxes and Fees under section 363(b)(1) of the Bankruptcy Code, which provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). Under this section, a court may authorize a debtor to pay certain prepetition claims. *See In re Ionosphere Clubs*, *Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (affirming lower court order authorizing payment of prepetition wages pursuant to section 363(b) of the Bankruptcy Code). To do so, courts require that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (citations omitted); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air*, *Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

---

[6] For the avoidance of doubt, the Debtors hereby request authority to pay the Taxes and Fees as provided herein regardless of whether such Taxes and Fees constitute trust fund obligations.

14. This standard is satisfied here. The Debtors' ability to pay the Taxes and Fees is critical to maintaining the value of the Debtors' estates. If certain Taxes and Fees remain unpaid, Authorities may seek to impose penalties on the Debtors' directors, officers, or employees, thereby diverting them from the administration of the Debtors' chapter 11 cases. *See, e.g.*, Ohio Rev. Code Ann. § 5739.33 (stating, in part, that "[i]f any . . . limited liability company . . . required to file returns and to remit tax due to the state . . . fails for any reason to make the filing or payment, . . . any of its officers, members, managers, or trustees who are responsible for the execution of the . . . limited liability company's fiscal responsibilities, shall be personally liable for the failure"). Any collection action on account of such penalties, and any ensuing liability, would distract the Debtors and their personnel to the detriment of all parties in interest. The dedicated and active participation of the Debtors' officers and employees is essential to the orderly administration of these chapter 11 cases and maximizing the value of the Debtors' estates for the benefit of their stakeholders.

15. Furthermore, the Debtors' liability to pay the Taxes and Fees may ultimately result in increased tax liability for the Debtors if interest and penalties accrue on the tax claims. Many of the Taxes and Fees may be entitled to priority status pursuant to section 507(a)(8)(C) of the Bankruptcy Code. As priority claims, these obligations must be paid in full before any general unsecured obligations of the Debtors may be satisfied. To the extent that the Debtors are unable to timely pay the prepetition Taxes and Fees, they may ultimately be required to pay those amounts with additional interest and penalties. The Debtors' failure to pay the prepetition Taxes and Fees as they come due thus may ultimately increase the amount of priority claims held by the Authorities against the Debtors' estates to the detriment of the Debtors' general unsecured creditors. *See* 11

U.S.C. § 507(a)(8)(C), (G).  Accordingly, the Court should grant the Debtors authority to pay, in their sole discretion, the prepetition Taxes and Fees as provided herein.

16. Courts in this jurisdiction have often authorized payment of prepetition taxes under section 363(b) of the Bankruptcy Code.  *See, e.g.*, *In re Destination Maternity Corporation*, No. 19-12256 (BLS) (Bankr. D. Del. Nov. 12, 2019) (authorizing debtors to pay prepetition taxes in the ordinary course of business); *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Oct. 1, 2019) (same); *In re PES Holdings, LLC*, No. 19-11626 (KG) (Bankr. D. Del. Aug. 20, 2019) (same)*; In re Z Gallerie, LLC*, No. 19-10488 (KBO) (Bankr. D. Del. Apr. 9, 2019) (same); *In re RMBR Liquidation, Inc.*, No. 19-10234 (KBO) (Bankr. D. Del. Feb. 26, 2019) (same).[7]

**Processing of Checks and Electronic Fund Transfers Should Be Authorized**

17. The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral.  Under the Debtors' existing cash management system, the Debtors have made arrangements to readily identify checks or wire transfer requests relating to the Taxes and Fees, as applicable.  Accordingly, the Debtors believe that checks or wire transfer requests that are not related to authorized payments will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

---

[7] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

13165050 v3

### The Requirements of Bankruptcy Rule 6003 Are Satisfied

18. Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed above, authorizing the Debtors to pay the Taxes and Fees that accrued prior to the Petition Date and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases smoothly. Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. The relief requested is necessary in order for the Debtors to operate their business in the ordinary course, preserve the going concern value of the Debtors' operations, and maximize the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

19. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Reservation of Rights

20. Nothing contained in this Motion or any actions taken by the Debtors pursuant to any order granting the relief requested by this Motion is intended or should be construed as: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim

10

is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's Interim Order and Final Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

**Notice**

21.     Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Bankruptcy Local Rules, and is sufficient under the circumstances.  Without limiting the foregoing, due notice will be afforded, whether by facsimile, electronic mail, overnight courier or hand delivery, to parties-in-interest, including: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) agents under the Debtors' prepetition secured facilities and counsel thereto; (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the state attorneys general for states in which the Debtors conduct business; (g) the Authorities; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

22. No prior motion for the relief requested herein has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

13165050 v3

WHEREFORE, the Debtors respectfully request that the Court enter interim and final orders, substantially in the forms attached hereto, respectively, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated: March 8, 2020
Wilmington, Delaware

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

   */s/ Gregory W. Werkheiser*
Gregory W. Werkheiser (DE No. 3553)
Michael J. Barrie (DE No. 4684)
Jennifer Hoover (DE No. 5111)
Kevin Capuzzi (DE No. 5462)
John C. Gentile (DE No. 6159)
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
E-mail: gwerkheiser@beneschlaw.com
       mbarrie@beneschlaw.com
       jhoover@beneschlaw.com
       kcapuzzi@beneschlaw.com
       jgentile@beneschlaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

13165050 v3