## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ART VAN FURNITURE, LLC, *et al.*,[1] | ) | Case No. 20-10553 (___) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

**DEBTORS' MOTION
FOR ENTRY OF INTERIM
AND FINAL ORDERS (I) DETERMINING
ADEQUATE ASSURANCE OF PAYMENT FOR
FUTURE UTILITY SERVICES, (II) PROHIBITING
UTILITY PROVIDERS FROM ALTERING, REFUSING,
OR DISCONTINUING UTILITY SERVICES, (III) ESTABLISHING
PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF
PAYMENT, (IV) REQUIRING UTILITY PROVIDERS TO RETURN DEPOSITS FOR
UTILITY SERVICES NO LONGER IN USE, AND (V) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion (this "Motion"):

### Relief Requested

1.      The Debtors seek entry of an interim order (the "Interim Order") and a final order

(the "Final Order"), substantially in the forms attached hereto:  (a)  determining adequate assurance

of payment for future utility services; (b) prohibiting utility providers from altering, refusing, or

discontinuing utility services; (c) establishing procedures for determining adequate assurance of

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484);  Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).  The location of the Debtors' service address in these chapter 11 cases is: 6500 East 14 Mile Road, Warren Michigan 48092.

payment; (d) requiring utility providers to return deposits for utility services no longer in use; and (e) granting related relief.

2.      In addition, the Debtors request that the Court schedule a final hearing within approximately 25 days of the commencement of these chapter 11 cases to consider approval of this Motion on a final basis.

## Jurisdiction and Venue

3.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested herein are sections 105(a) and 366 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 6003 and 6004, and Bankruptcy Local Rule 9013-1(m).

## Background

6.      The Debtors operate 169 locations, including 92 furniture and mattress showrooms and 77 freestanding mattress and specialty locations.  The Debtors do business under brand names, including Art Van Furniture, Pure Sleep, Scott Shuptrine Interiors, Levin Furniture, Levin

Mattress, and Wolf Furniture. The Debtors were founded in 1959 and was owned by its founder, Art Van Elslander, until it was sold to funds affiliated with Thomas H. Lee Partners, L.P. ("THL") in March 2017. Pennsylvania based Levin Furniture and Wolf Furniture were acquired by Art Van in November 2017. As of the Petition Date (as defined below), the Debtors operate stores throughout Michigan, Indiana, Ohio, Illinois, Pennsylvania, Maryland, Missouri, and Virginia. The Debtors are headquartered in Warren, Michigan and have approximately 4,500 employees as of the Petition Date (as defined below)

7. On March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description surrounding the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of David Ladd, Executive Vice President and Chief Financial Offer of Art Van Furniture, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with this Motion and incorporated by reference herein. Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

## **The Utility Services**

8. In connection with the operation of their businesses and management of their properties, the Debtors historically obtain water, sewer service, electricity, waste disposal, natural gas, and other similar services (collectively, the "Utility Services") from a number of utility

3

providers (collectively, the "Utility Providers").  A nonexclusive list of the Utility Providers and their affiliates that provide Utility Services to the Debtors as of the Petition Date (the "Utility Providers List") is attached hereto as **Exhibit A**.[2]

9.      Pursuant to the leases for several of the Debtors' stores, certain Utility Services are billed directly to the Debtors' landlords and passed through to the Debtors as part of the Debtors' lease payments in accordance with the applicable lease agreements.  The relief requested herein is with respect to all Utility Providers supplying Utility Services to the Debtors, including those that indirectly supply services through the applicable landlords.

10.      Uninterrupted Utility Services are essential to the Debtors' ongoing business operations and, hence, the overall success of these chapter 11 cases.  As of the Petition Date, the Debtors' business includes approximately 170 stores and leased departments.  These locations require electricity, telecommunications, internet, water, waste management (including sewer and trash), and other utility services to operate.  Should any Utility Provider refuse or discontinue service, even for a brief period, the Debtors' business operations would be severely disrupted, and such disruption would jeopardize the Debtors' ability to administer their chapter 11 cases.  Such disruption would adversely affect customer goodwill and employee relations, which, in turn, would negatively affect the Debtors' revenues.  Accordingly, it is essential that the Utility Services continue uninterrupted during the chapter 11 cases.

11.      On average, the Debtors pay approximately $1,162,000 each month for third-party Utility Services, calculated as a historical average payment for the preceding twelve-month period,

---

[2]    The inclusion of any entity on, or the omission of any entity from, the Utility Providers List is not an admission by the Debtors that such entity is, or is not, a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights with respect to any such determination.  Additionally, although **Exhibit A** is intended to be comprehensive, the Debtors may have inadvertently omitted one or more Utility Providers.  By this Motion, the Debtors request relief applicable to all Utility Providers, regardless of whether such Utility Providers are specifically identified on **Exhibit A**.

paid directly by the Debtors and excluding Utility Services billed directly to the Debtors' landlords. The Debtors estimate that their cost for Utility Services during the next 25 days will be approximately $813,000. The Debtors do not believe that there are any amounts currently held as deposits or prepayments by the Utility Providers as of the Petition Date.

**I.      The Proposed Adequate Assurance and Adequate Assurance Procedures.**

12.      The Debtors intend to pay postpetition obligations to the Utility Providers in a timely manner in the ordinary course of business. Cash held by the Debtors, cash generated in the ordinary course of business, and cash collateral available to the Debtors postpetition will provide sufficient liquidity to pay the Debtors' Utility Service obligations in accordance with their prepetition practice.

13.      To provide additional assurance of payment, the Debtors propose to deposit into a segregated account $581,000 (the "Adequate Assurance Deposit"), which represents an amount equal to approximately one-half of the Debtors' average monthly cost of Utility Services, calculated based on the Debtors' average utility expenses over the preceding twelve-month period, excluding Utility Services billed directly to the Debtors' landlords. The Debtors are conducting store closing sales for certain stores (the "Closing Stores"), which are expected to close by April 26, 2020. Once these stores are closed and their corresponding utilities accounts are settled, in accordance with the Adequate Assurance Procedures (as defined below), the Adequate Assurance Deposit will be reduced by one-half of the average monthly cost of Utility Services provided to the Closing Stores, calculated based on the aforementioned historical average, to align with the go-forward average monthly cost of Utility Services.

14.      The Adequate Assurance Deposit will be held by the Debtors in a segregated account that may be interest bearing or non-interest bearing at the Debtors' election (the "Adequate Assurance Account") for the benefit of the Utility Providers and for the duration of these

5

chapter 11 cases, subject to the Adequate Assurance Procedures.  No liens will encumber the Adequate Assurance Deposit or the Adequate Assurance Account; *provided* that, for the avoidance of doubt, to the extent any portion of the Adequate Assurance Deposit is released or returned to the Debtors pursuant to the terms of the Interim Order or Final Order, the liens that previously encumbered the released or returned amounts shall continue to encumber such amounts in accordance with the terms of the interim or final order granting the Debtors' use of cash collateral. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future utility services in accordance with their prepetition practices (collectively, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance to the Utility Providers in full satisfaction of section 366 of the Bankruptcy Code.

15.    Nevertheless, if any entity believes that they are a Utility Provider and seeks to make a request for additional adequate assurance of future payment (each, an "Adequate Assurance Request"), the Debtors request they be required to do so pursuant to the following procedures (the "Adequate Assurance Procedures"):

a.    The Debtors will serve a copy of this motion and each order granting the relief requested herein to each Utility Provider within two business days after entry of such order by the Court.

b.    Subject to paragraphs (e)–(i) herein, the Debtors will deposit the Adequate Assurance Deposit, in the aggregate amount of $581,000, in the Adequate Assurance Account as soon as reasonably practicable after entry of the Interim Order.

c.    The amount of the Adequate Assurance Deposit allocated to each Utility Provider shall be set forth on the Utility Providers List in the column labeled "Proposed Adequate Assurance."

d.    Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve a request for additional assurance (an "Additional Assurance Request") on the following parties: (a) the Debtors, Art Van Furniture, LLC, 6500 East 14 Mile Road, Warren Michigan 48092, Attn: John Budzinski; (b) proposed counsel to the Debtors, Benesch, Friedlander, Coplan & Aronoff LLP, 222 Delaware Avenue, Suite

801, Wilmington, Delaware 19801, Attn: Gregory Werkheiser, Michael J. Barrie, Jennifer R. Hoover, Kevin M. Capuzzi, and John C. Gentile; (c) the Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda Richenderfer; (d) counsel to the administrative agent under the Debtors' ABL loan facilities (i) Morgan, Lewis & Bockius LLP, One Federal Street, Boston, Massachusetts 02110, Attn: Marjorie S. Crider, (ii) Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, New York 10178, Attn: Jennifer Feldsher, and (iii) Burr & Forman LLP, 1201 N. Market Street, Wilmington, Delaware 19801, Attn: J. Cory Falgowski; and (e) counsel to any statutory committee appointed in these chapter 11 cases (collectively, the "Notice Parties").

e.    Any Additional Assurance Request must: (i) be in writing, (ii) identify the location for which the Utility Services are provided and the related account number(s), (iii) include the alleged outstanding balance for the affected account(s), (iv) certify the amount that is equal to one-half the monthly cost of the Utility Services the Utility Provider supplies to the Debtors, calculated as a historical average over the preceding twelve-month period, (v) certify that the Utility Provider does not already hold a deposit equal to or greater than one-half the monthly cost of Utility Services, (vi) provide evidence that the Debtors have a direct obligation to the Utility Provider, and (vii) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

f.    Any Additional Assurance Request may be made at any time.  If a Utility Provider fails to file and serve an Additional Assurance Request, the Utility Provider shall be forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtors on account of any unpaid prepetition charges, or requiring additional assurance of payment other than the Proposed Adequate Assurance.

g.    Upon the Debtors' receipt of an Additional Assurance Request, the Debtors shall promptly negotiate with the Utility Provider to resolve the Utility Provider's Additional Assurance Request.

h.    Without further order of the Court, the Debtors may enter into agreements granting additional adequate assurance to a Utility Provider serving an Additional Assurance Request if the Debtors determine that the Additional Assurance Request is reasonable.

i.    If the Debtors determine that the Additional Assurance Request is not reasonable and the Debtors are unable to reach an alternative resolution with the Utility Provider, within 14 days, the Debtors will request a hearing (a "Determination Hearing") before the Court to determine the adequacy of assurance of payment with respect to that Utility Provider pursuant to section 366(c)(3) of the Bankruptcy Code.

j.   Pending resolution of such dispute at a Determination Hearing, the relevant Utility Provider shall be prohibited from altering, refusing, or discontinuing service to the Debtors on account of:  (i) unpaid charges for prepetition services; (ii) a pending Additional Assurance Request; or (iii) any objections to the Proposed Adequate Assurance.

k.   The Adequate Assurance Deposit deposited into the Adequate Assurance Account on behalf of any Utility Provider (including any additional amount deposited upon request of any applicable Utility Provider), or any portion thereof, shall be returned to the Debtors by no later than five business days following the earlier of the date upon which (i) a chapter 11 plan becomes effective after being confirmed in these chapter 11 cases, (ii) the Debtors conclude a store closing for the applicable location receiving services provided by such Utility Provider, or (iii) the Debtors provide notice to a Utility Provider that services provided to the Debtors by such Utility Provider will no longer be needed or will be reduced.

16.   The Adequate Assurance Procedures set forth a streamlined process for Utility Providers to address potential concerns with respect to the Proposed Adequate Assurance, while at the same time allowing the Debtors to administer their chapter 11 estates uninterrupted.  More specifically, the Adequate Assurance Procedures permit a Utility Provider to object to the Proposed Adequate Assurance by serving an Additional Assurance Request upon certain notice parties.  The Debtors may then resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without further order of the Court.  If the Additional Assurance Request cannot be resolved by mutual agreement, the Debtors may seek Court resolution of the Additional Assurance Request.

17.   Absent compliance with the Adequate Assurance Procedures, the Debtors request that the Utility Providers, including subsequently added Utility Providers, be forbidden from altering, refusing, or discontinuing service or requiring additional assurance of payment other than the Proposed Adequate Assurance.

18.   The relief requested herein is for all Utility Providers providing Utility Services to the Debtors and is not limited to those parties or entities listed on the Utility Providers List.

13164992 v2

## II.      Subsequently Identified Utility Providers.

19.      To the extent the Debtors identify new or additional Utility Providers or discontinue services from existing Utility Providers, the Debtors seek authority to add or remove parties from the Utility Providers List.  For any Utility Provider that is subsequently added to the Utility Providers List, the Debtors will serve such Utility Provider with a copy of the Court's order regarding Utility Services, including the Adequate Assurance Procedures, and increase the Adequate Assurance Deposit by an amount equal to approximately one-half of the Debtors' average monthly cost from the subsequently added Utility Provider, net of any prepetition deposits, letters of credit, or surety bonds already provided to the Utility Provider in the ordinary course of business.  The Debtors request that the terms of the entered Interim Order and/or Final Order, as applicable, and the Adequate Assurance Procedures apply to any subsequently identified Utility Provider to the same extent as if the Utility Provider was listed on the original Utility Providers List attached hereto.  For any Utility Provider that is subsequently removed from the Utility Providers List, the Debtors request the authority to decrease the Adequate Assurance Deposit by an amount equal to approximately one-half of the Debtors' average monthly cost from such removed Utility Provider.

### Basis for Relief

20.      Section 366 of the Bankruptcy Code protects a debtor against the immediate termination or alteration of utility services after the Petition Date.   *See* 11 U.S.C.  § 366. Section 366(c) requires the debtor to provide "adequate assurance" of payment for postpetition services in a form "satisfactory" to the utility provider within thirty days of the Petition Date, or the utility provider may alter, refuse, or discontinue service.   11 U.S.C.  § 366(c)(2). Section 366(c)(1) enumerates what constitutes "assurance of payment."   11 U.S.C.  § 366(c)(1). Although assurance of payment must be "adequate," it need not constitute an absolute guarantee

of the debtors' ability to pay.  *See, e.g., In re Great Atl. & Pac. Tea Co.*, No. 11-CV-1338, 2011 WL 5546954, at *5 (Bankr. S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full"); *In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires . . . adequate assurance of payment.  The statute does not require an absolute guarantee of payment." (internal quotation and citation omitted)), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997).

21.     When considering whether a given assurance of payment is "adequate," the Court should examine the totality of the circumstances to make an informed decision as to whether the Utility Provider will be subject to an unreasonable risk of nonpayment.  *See Mass. Elec. Co. v. Keydata Corp. (In re Keydata Corp.)*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citing *In re Cunha*, 1 B.R. 330 (Bankr. E.D. Va. 1979)); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 82–83 (Bankr. S.D.N.Y. 2002).  Courts have recognized that, in determining the requisite level of adequate assurance, "a bankruptcy court must focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources."  *Va. Elec. & Power Co.*, 117 F.3d at 650 (internal quotations omitted) (citing *In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987)); *see also In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103–04 (3d Cir. 1972) (affirming bankruptcy court's ruling that no utility deposits were necessary where such deposits likely would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already are reasonably protected").  Accordingly, demands by a Utility Provider for a guarantee of payment should be refused when the Debtors' specific circumstances already afford adequate assurance of payment.

22.     Here, the Utility Providers are adequately assured against any risk of nonpayment for future services.  The Adequate Assurance Deposit and the Debtors' ongoing ability to meet obligations as they come due in the ordinary course provides assurance of the Debtors' payment of their future obligations.  Moreover, termination of any Utility Services could result in the Debtors' inability to operate their business to the detriment of all stakeholders.  *Cf. In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility service, the debtors "would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it").

23.     Courts are permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under section 366 of the Bankruptcy Code.  *See, e.g.*, *In re Circuit City Stores Inc.*, No. 08-35653, 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) ("The plain language of § 366 of the Bankruptcy Code allows the court to adopt the Procedures set forth in the Utility Order.").  Such procedures are important because, without them, the Debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize."  *Id.*  Here, notwithstanding a determination that the Debtors' Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Providers believe they have under sections 366(b) and 366(c)(2) of the Bankruptcy Code are wholly preserved under the Adequate Assurance Procedures.  *See id.* at *5–6.  The Utility Providers still may choose, in accordance with the Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance.  *See id.* at *6.  The Adequate Assurance Procedures, however, avoid a disorganized process whereby each Utility Provider could make a last-minute demand for adequate assurance that would force the Debtors to pay under the threat of losing critical Utility Services.  *See id.* at *5.

11

24.     Because the Adequate Assurance Procedures are reasonable and in accord with the purposes of section 366 of the Bankruptcy Code, the Court should grant the relief requested herein. Similar procedures have been approved by courts in this district. *See, e.g.*, *In re Destination Maternity Corporation*, No. 19-12256 (BLS) (Bankr. D. Del. Nov. 12, 2019) (approving adequate assurance deposit equal to one half of debtor's monthly utility expenses); *In re Forever 21*, *Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Oct. 1, 2019) (same); *In re Blackhawk Mining LLC,* No. 19-11595 (LSS) (Bankr. D. Del. Aug. 9, 2019) (same); *In re Z Gallerie, LLC*, No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (same); *In re RMBR Liquidation, Inc.*, No. 19-10234 (KG) (Bankr. D. Del. Feb. 26, 2019) (same).[3]

25.     Further, the Court possesses the power, under section 105(a) of the Bankruptcy Code, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Adequate Assurance Procedures and the Proposed Adequate Assurance are necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly section 366. Accordingly, the Court should exercise its powers under sections 366 and 105(a) of the Bankruptcy Code and approve both the Adequate Assurance Procedures and the Proposed Adequate Assurance.

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

26.     The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral. Under the Debtors' existing cash management system, the Debtors have made arrangements to readily identify checks or wire transfer requests relating

---

[3]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

13164992 v2

to the Utility Services, as applicable.  Accordingly, the Debtors believe that checks or wire transfer requests that are not related to authorized payments will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

### The Requirements of Bankruptcy Rule 6003 Are Satisfied

27.      Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  For the reasons discussed above, authorizing the Debtors to pay the Utility Providers and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases smoothly.  Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

28.      To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Reservation of Rights

29.      Nothing contained in this Motion or any actions taken by the Debtors pursuant to any order granting the relief requested by this Motion is intended or should be construed as:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity;

13

(b) a waiver of the Debtors' right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's Interim Order and Final Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

## Notice

30.     Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Bankruptcy Local Rules, and is sufficient under the circumstances.   Without limiting the foregoing, due notice will be afforded, whether by facsimile, electronic mail, overnight courier or hand delivery, to parties-in-interest, including:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) agents under the Debtors' prepetition secured facilities and counsel thereto; (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the state attorneys general for states in which the Debtors conduct business; (g) the

13164992 v2

Utility Providers; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

31.     No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of the page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter interim and final orders, substantially in the forms attached hereto, respectively, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated: March 8, 2020
Wilmington, Delaware

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

_/s/ Gregory W. Werkheiser_
Gregory W. Werkheiser (DE No. 3553)
Michael J. Barrie (DE No. 4684)
Jennifer Hoover (DE No. 5111)
Kevin Capuzzi (DE No. 5462)
John C. Gentile (DE No. 6159)
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
E-mail: gwerkheiser@beneschlaw.com
        mbarrie@beneschlaw.com
        jhoover@beneschlaw.com
        kcapuzzi@beneschlaw.com
        jgentile@beneschlaw.com

_Proposed Counsel to the Debtors and Debtors in Possession_

13164992 v2