IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Chapter 11 |
| ART VAN FURNITURE, LLC, *et al.*,[1] | ) ) ) | Case No. 20-20553 (___) |
| Debtors. | ) ) ) | (Joint Administration Requested) |

**DEBTORS' MOTION SEEKING ENTRY
OF INTERIM AND FINAL ORDERS (I) APPROVING
NOTIFICATION AND HEARING PROCEDURES FOR CERTAIN
TRANSFERS OF AND DECLARATIONS OF WORTHLESSNESS WITH
RESPECT TO COMMON STOCK AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:

**Relief Requested**

1. The Debtors seek entry of an interim order (the "Interim Order") and a final order (the "Final Order"), substantially in the form attached hereto: (a) approving certain notification and hearing procedures related to certain transfers of, or declarations of worthlessness with respect to, Debtor Art Van Furniture, LLC's existing common stock or any Beneficial Ownership[2] therein

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463). The location of the Debtors' service address in these chapter 11 cases is: 6500 East 14 Mile Road, Warren Michigan 48092.

[2] "Beneficial Ownership" will be determined in accordance with the applicable rules of sections 382 and 383 of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1–9834 as amended (the "IRC"), and the Treasury Regulations thereunder (other than Treasury Regulations Section 1.382-2T(h)(2)(i)(A)), and includes direct, indirect, and constructive ownership (*e.g.*, (1) a holding company would be considered to beneficially own all equity securities owned by its subsidiaries, (2) a partner in a partnership would be considered to beneficially own its proportionate share of any equity securities owned by such partnership, (3) an individual and such individual's family members may be treated as one individual, (4) persons and entities acting in concert to make a coordinated acquisition of equity securities may be treated as a single entity, and (5) a holder would be considered to beneficially own equity securities that such holder has an Option to acquire). An "Option" to acquire stock includes all interests described in Treasury Regulations Section 1.382-4(d)(9), including any contingent purchase right, warrant, convertible debt,

(any such record or Beneficial Ownership of common stock, the "Common Stock"),³ as detailed in **Exhibit 1** to the Interim Order and Final Order (the "Procedures"), (b) directing that any purchase, sale, other transfer of, or declaration of worthlessness with respect to Common Stock in violation of the Procedures shall be null and void *ab initio*, and (c) granting related relief.

2. In addition, the Debtors request that the Court schedule a final hearing within approximately 25 days of the commencement of these chapter 11 cases to consider approval of this Motion on a final basis.

## Jurisdiction and Venue

3. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

put, call, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

³ For the avoidance of doubt, the definition of Common Stock shall not include any securities issued in connection with a chapter 11 plan of reorganization of the Debtors.

5. The bases for the relief requested herein are sections 362 and 541 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 3002 and 9014, and Bankruptcy Local Rule 9013-1(m).

**Background**

6. The Debtors operate 169 locations, including 92 furniture and mattress showrooms and 77 freestanding mattress and specialty locations. The Debtors do business under brand names, including Art Van Furniture, Pure Sleep, Scott Shuptrine Interiors, Levin Furniture, Levin Mattress, and Wolf Furniture. The Debtors were founded in 1959 and was owned by its founder, Art Van Elslander, until it was sold to funds affiliated with Thomas H. Lee Partners, L.P. ("THL") in March 2017. Pennsylvania based Levin Furniture and Wolf Furniture were acquired by Art Van in November 2017. As of the Petition Date (as defined below), the Debtors operate stores throughout Michigan, Indiana, Ohio, Illinois, Pennsylvania, Maryland, Missouri, and Virginia. The Debtors are headquartered in Warren, Michigan and have approximately 4,500 employees as of the Petition Date (as defined below).

7. On March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description surrounding the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of David Ladd, Executive Vice President and Chief Financial Offer of Art Van Furniture, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with this Motion and incorporated by reference herein. Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee

13166375 v2

or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

## The Tax Attributes

8. A company generates a variety of tax attributes under various circumstances. The most common example of such tax attributes are net operating losses ("NOLs"), which occur when the operating expenses incurred by a company exceed the revenues it has earned during a single tax year. A company may apply, or "carry forward," NOLs to reduce future tax payments (subject to certain conditions as discussed below).[4] *See* 26 U.S.C. §§ 39, 172.

9. As of September 30, 2019, the Debtors estimate that they had approximately $89,694,000 of federal NOLs and believe that, as of the Petition Date, they have a significant number of disallowed interest carryforwards (collectively, and together with state and certain other tax attributes, the "Tax Attributes"). The Tax Attributes are potentially of significant value to the Debtors and their estates because the Debtors expect to utilize such Tax Attributes to offset taxable income or federal tax liability generated by transactions consummated during these chapter 11 cases. Accordingly, the value of the Tax Attributes will inure to the benefit of all of the Debtors' stakeholders.

**I.    An "Ownership Change" May Negatively Impact the Debtors' Utilization of the Tax Attributes.**

10. Sections 382 and 383 of the Internal Revenue Code ("IRC") limit the amount of taxable income and tax liability, respectively, that can be offset by a corporation's tax attributes in taxable years (or portions thereof) following an "ownership change." Generally, an "ownership change" occurs if the percentage (by value) of the stock of a corporation owned by one or more

---

[4]   In addition, under certain circumstances, certain NOLs may be "carried back" to offset taxable income in prior years. The specific rules regarding carrybacks and carryforwards depend on when a particular NOL was generated. *See* 26 U.S.C. § 172.

five-percent shareholders has increased by more than 50 percentage points over the lowest percentage of stock owned by such shareholders at any time during the three-year testing period ending on the date of the ownership change. The total percentage point increases of stock owned by one or more five-percent shareholders within the measuring period is generally referred to as the amount of the "ownership shift." For example, an ownership change would occur in the following situation:

> An individual ("A") owns 50.1 percent of the stock of corporation XYZ. A sells her 50.1 percent interest to another individual ("B"), who owns 5 percent of XYZ's stock. Under section 382, an ownership change has occurred because B's interest in XYZ has increased more than 50 percentage points (from 5 percent to 55.1 percent) during the testing period. The same result would follow even if B owned no XYZ stock prior to the transaction with A because B both becomes a 5-percent shareholder and increases his ownership by more than 50 percentage points during the testing period.

11. An "ownership change" can also occur as a result of a "worthless stock deduction" claimed by any "50-percent shareholder." A 50-percent shareholder is any person that owned 50 percent or more of a corporation's stock "at any time during the 3-year period ending on the last day of the taxable year" with respect to which the worthless stock deduction is claimed. IRC § 382(g)(4)(D). If the 50-percent shareholder still owns the corporation's stock at the end of the taxable year, sections 382 and 383 of the IRC essentially treat the person as newly-purchasing the stock on the first day of the next taxable year. For example, if a person with 50 percent of a corporation's stock claims a worthless stock deduction in 2018 (or with respect to the 2018 taxable year) but did not sell such stock in 2018, that person is treated (a) as not having owned the stock at the end of 2018 and (b) as having purchased the stock on the first day of the 2019 taxable year. That deemed purchase would cause an ownership change, because the 50-percent shareholder would be deemed to have a 50 percentage point increase in its stock ownership. Notably, while

the seminal case of *Official Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines Inc.)*, 928 F.2d 565, 573 (2d Cir. 1991) is generally relied upon to support equity trading motions in general, the specific issue in *Prudential Lines* was, in fact, a worthless stock deduction.

12. If an ownership change occurs, section 382 of the IRC limits the amount of a corporation's future income that may be offset by its "pre-change losses," and section 383 of the IRC limits the amount of a corporation's future tax liability that may be offset by its "excess credits," in each case, to an annual amount based on the fair market value of all of the stock of the corporation prior to the ownership change multiplied by the long-term tax exempt rate that applies to the month of the ownership change.[5]  *See* IRC §§ 382(b) and 383(a).  Pre-change losses and excess credits include the Debtors' Tax Attributes and any "realized built-in loss" (as defined in section 382(h)(3) of the IRC).[6]  Once a Tax Attribute or other pre-change loss is limited under section 382 or 383 of the IRC, its use is limited forever (for items other than realized built-in losses), and for five years if it is a realized built-in loss.  Thus, certain transfers of Common Stock effected before the effective date of the Debtors' emergence from chapter 11 protection may trigger an "ownership change" for IRC purposes, severely endangering the Debtors' ability to utilize the Tax Attributes, and causing substantial damage to the Debtors' estates.  Likewise, if a 50-percent or greater shareholder of the Debtors were to treat its Common Stock as having become worthless prior to the Debtors' emergence from chapter 11 protection, such a claim could trigger an ownership change under section 382(g)(4)(D) of the IRC, thus inhibiting the Debtors' ability to use the Tax Attributes.

---

[5] The applicable long-term tax exempt rate changes from month to month.

[6] Whether "realized built in losses" are subject to limitation is a complex issue that depends, among other things, on whether the company has a "net unrealized built-in loss" when the ownership change occurs.  A net unrealized built-in loss is equal to the excess of the aggregate adjusted basis of all of a corporation's applicable assets over their fair market value (as determined for purposes of section 382 of the IRC) immediately prior to the ownership change.  IRC § 382(h)(1)(B).

13.    Notably, the Debtors have limited the relief requested herein to the extent necessary to preserve estate value. Specifically, the proposed Interim Order and Final Order will affect only (a) holders of the equivalent of more than 38,410 shares of Common Stock[7] (*i.e.*, 4.5 percent or more of outstanding Common Stock); (b) parties who are interested in purchasing sufficient Common Stock to result in such party becoming a holder of 4.5 percent or more of outstanding Common Stock; and (c) any "50-percent shareholder" seeking to claim a worthless stock deduction.

14.    To maximize the use of the Tax Attributes and enhance recoveries for the Debtors' stakeholders, the Debtors seek limited relief that will enable them to closely monitor certain transfers of Common Stock and certain worthless stock deductions with respect to Common Stock so as to be in a position to act expeditiously to prevent such transfers or worthlessness deductions, if necessary, with the purpose of preserving the Tax Attributes. By establishing and implementing such Procedures, the Debtors will be in a position to object to "ownership changes" that threaten their ability to preserve the value of their Tax Attributes for the benefit of the estates.

### II.    Proposed Procedures for Transfers of or Declarations of Worthlessness with Respect to Common Stock.

15.    The Procedures are the mechanism by which the Debtors propose that they will monitor and, if necessary, object to certain transfers of Common Stock and declarations of worthlessness with respect to Common Stock to ensure preservation of the Tax Attributes. The Procedures, which are fully set forth in **Exhibit 1** to the Interim Order and Final Order, are summarized below.[8]

---

[7]    Based on approximately 853,563 shares of Common Stock outstanding for purposes of section 382 of the IRC as of the Petition Date.

[8]    Capitalized terms used in this section but not otherwise defined herein have the meanings ascribed to them in the Procedures. To the extent that this summary and the terms of the Procedures are inconsistent, the terms of the Procedures control.

*Procedures for Transfers of Common Stock*

    a. Any person or entity that (i) is a Substantial Shareholder[9] and (ii) wishes to effectuate a transfer of Common Stock that would (A) affect the size of a Substantial Shareholder's Beneficial Ownership, or (B) would result in another entity or individual becoming or ceasing to be a Substantial Shareholder, must file with the Court and serve upon the "Notice Parties" (as defined herein) a declaration of such status, substantially in the form annexed to the Procedures as **Exhibit 1A** (each, a "Declaration of Status as a Substantial Shareholder"), on or before the later of (1) twenty (20) calendar days after the date of the Notice of Interim Order, and (2) ten (10) calendar days after becoming a Substantial Shareholder; *provided* that, for the avoidance of doubt, the other procedures set forth herein shall apply to any Substantial Shareholder even if no Declaration of Status as a Substantial Shareholder has been filed.

    b. Prior to effectuating any transfer of Common Stock that would (i) affect the size of a Substantial Shareholder's Beneficial Ownership, or (ii) would result in another entity or individual becoming or ceasing to be a Substantial Shareholder, the parties to such transaction must file with the Court, and serve upon the Notice Parties, an advance written declaration of the intended transfer of Common Stock, substantially in the form annexed to the Procedures as **Exhibit 1B** (each, a "Declaration of Intent to Accumulate Common Stock").

    c. Prior to effectuating any transfer of Common Stock that would (i) affect the size of a Substantial Shareholder's Beneficial Ownership, or (ii) would result in another entity or individual becoming or ceasing to be a Substantial Shareholder, the parties to such transaction must file with the Court, and serve upon the Notice Parties, an advance written declaration of the intended transfer of Common Stock, substantially in the form annexed to the Procedures as **Exhibit 1C** (each, a "Declaration of Intent to Transfer Common Stock," and together with a Declaration of Intent to Accumulate Common Stock, each a "Declaration of Proposed Transfer").

    d. The Debtors shall have fifteen (15) calendar days after receipt of a Declaration of Proposed Transfer to file with the Court and serve on such Substantial Shareholder or potential Substantial Shareholder an objection to any proposed transfer of Common Stock described in the Declaration of Proposed Transfer on the grounds that such transfer might adversely affect the Debtors' ability to utilize their Tax Attributes.

---

[9] For purposes of these Procedures, a "Substantial Shareholder" is any entity or individual that has Beneficial Ownership of at least 38,410 shares of Common Stock (representing approximately 4.5 percent of all issued and outstanding shares of Common Stock, based on approximately 853,563 shares of Common Stock outstanding as of the Petition Date).

13166375 v2

      i. If the Debtors timely object, the proposed transaction will remain ineffective unless such objection is withdrawn by the Debtors, or such transaction is approved by a final and nonappealable order of the Court.

      ii. If the Debtors do not object, the proposed transaction may proceed solely as set forth in the Declaration of Proposed Transfer. Further transactions within the scope of these procedures must be the subject of additional notices in accordance with the procedures set forth herein, with an additional fifteen-day waiting period for each Declaration of Proposed Transfer.

*Procedures for Declarations of Worthlessness of Common Stock*

a. Any person or entity that currently is or becomes a 50-Percent Shareholder[10] must file with the Court and serve upon the Notice Parties a declaration of such status as a 50-Percent Shareholder, substantially in the form annexed to the Procedures as **Exhibit 1D** (each, a "Declaration of Status as a 50-Percent Shareholder"), on or before the later of (i) twenty (20) calendar days after the date of the Notice of Interim Order and (ii) ten (10) calendar days after becoming a 50-Percent Shareholder; *provided* that, for the avoidance of doubt, the other procedures set forth herein shall apply to any 50-Percent Shareholder even if no Declaration of Status as a 50-Percent Shareholder has been filed.

b. Prior to filing any federal or state tax return, or any amendment to such a return, or taking any other action that claims any deduction for worthlessness of Common Stock for a tax year ending before the Debtors' emergence from chapter 11 protection, such 50-Percent Shareholder must file with the Court and serve upon the Notice Parties a declaration of intent to claim a worthless stock deduction, substantially in the form annexed to the Procedures as **Exhibit 1E** (each, a "Declaration of Intent to Claim a Worthless Stock Deduction").

c. The Debtors shall have fifteen (15) calendar days after receipt of a Declaration of Intent to Claim a Worthless Stock Deduction to file with the Court and serve on such 50-Percent Shareholder an objection to any proposed claim of worthlessness described in the Declaration of Intent to Claim a Worthless Stock Deduction on the grounds that such claim might adversely affect the Debtors' ability to utilize their Tax Attributes.

---

[10] For purposes of the Procedures, a "50-Percent Shareholder" is any person or entity that at any time since December 31, 2015 has owned Beneficial Ownership of 50 percent or more of the Common Stock of the Debtors (determined in accordance with section 382(g)(4)(D) of the IRC and the applicable Treasury Regulations thereunder).

13166375 v2

      i. If the Debtors timely object, the filing of the tax return or amendment thereto with such claim will not be permitted unless approved by a final and non-appealable order of the Court, unless the Debtors withdraw such objection.

      ii. If the Debtors do not object, the filing of the return or amendment with such claim will be permitted solely as described in the Declaration of Intent to Claim a Worthless Stock Deduction. Additional returns and amendments within the scope of these procedures must be the subject of additional notices as set forth herein, with an additional fifteen-day waiting period. To the extent that the Debtors receive an appropriate Declaration of Intent to Claim a Worthless Stock Deduction and determine in their business judgment not to object, they shall provide notice of that decision as soon as is reasonably practicable to any statutory committee(s) appointed in these chapter 11 cases.

*Notice Procedures*

    a. No later than two business days following entry of the Interim Order, the Debtors shall serve by first class mail, substantially in the form of **Exhibit 1F** attached to these Procedures (the "Notice of Interim Order"), on: (i) the Debtors, Art Van Furniture, LLC, 6500 East 14 Mile Road, Warren Michigan 48092, Attn: John Budzinski; (ii) proposed counsel to the Debtors, Benesch, Friedlander, Coplan & Aronoff LLP, 222 Delaware Avenue, Suite 801, Wilmington, Delaware 19801, Attn: Gregory Werkheiser, Michael J. Barrie, Jennifer R. Hoover, Kevin M. Capuzzi, and John C. Gentile; (iii) the Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda Richenderfer; (iv) counsel to the administrative agent under the Debtors' ABL loan facilities (a) Morgan, Lewis & Bockius LLP, One Federal Street, Boston, Massachusetts 02110, Attn: Marjorie S. Crider, (b) Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, New York 10178, Attn: Jennifer Feldsher, and (c) Burr & Forman LLP, 1201 N. Market Street, Wilmington, Delaware 19801, Attn: J. Cory Falgowski; and (v) counsel to any statutory committee appointed in these chapter 11 cases (collectively, the "Notice Parties"). Additionally, no later than two (2) business days following entry of the Final Order, the Debtors shall serve a Notice of Interim Order modified to reflect that the final order has been entered (as modified, the "Notice of Final Order") on the same entities that received the Notice of Interim Order.

    b. All registered and nominee holders of Common Stock shall be required to serve the Notice of Interim Order or Notice of Final Order, as applicable, on any holder for whose benefit such registered or nominee holder holds such Common Stock down the chain of ownership for all such holders of Common Stock.

13166375 v2

    c.    Any entity or broker or agent acting on such entity's or individual's behalf who sells Common Stock to another entity or individual shall be required to serve a copy of the Notice of Interim Order or Notice of Final Order, as applicable, on such purchaser of such Common Stock, or any broker or agent acting on such purchaser's behalf.

    d.    To the extent confidential information is required in any declaration described in these Procedures, such confidential information may be filed and served in redacted form; *provided* that any such declarations served on the Debtors **shall not** be in redacted form. The Debtors shall keep all information provided in such declarations strictly confidential and shall not disclose the contents thereof to any person except to the extent (i) necessary to respond to a petition or objection filed with the Court, (ii) otherwise required by law, or (iii) that the information contained therein is already public; *provided* that the Debtors may disclose the contents thereof to their professional advisors, who shall keep all such notices strictly confidential and shall not disclose the contents thereof to any other person, subject to further Court order. To the extent confidential information is necessary to respond to a petitioner objection filed with the Court, such confidential information shall be filed under seal or in a redacted form.

### Basis for Relief

16.    Section 541 of the Bankruptcy Code provides that property of the estate comprises, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Tax Attributes are property of the Debtors' estates. *Prudential Lines Inc.*, 928 F.2d 565, 573 (2d Cir. 1991) ("We hold that the right to a carryforward attributable to its . . . NOL was property of [the debtor's] bankruptcy estate."), *cert. denied*, 502 U.S. 821 (1991); *In re Delta Air Lines, Inc.*, No. 05-17923 (PCB) (Bankr. S.D.N.Y. Dec. 19, 2005) (finding that NOLs are property of the debtors' estates); *Nisselson v. Drew Indus., Inc. (In re White Metal Rolling & Stamping Corp.)*, 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) (same); *Official Comm. of Unsecured Creditors v. Forman (In re Forman Enters Inc.)*, 273 B.R. 408, 415 (Bankr. W.D. Pa. 2002) (same). Moreover, section 362(a)(3) of the Bankruptcy Code stays "any act [of a person or entity] to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

11 U.S.C. § 362(a)(3). Accordingly, any act of a holder of a debtor's equity securities that causes the termination or limits use of the NOLs violates the automatic stay. *See*, *e.g.*, *Prudential Lines*, 928 F.2d at 574 (holding that causing the termination of or adversely affecting the value of a debtor's NOL violates the automatic stay); *In re Phar-Mor, Inc.*, 152 B.R. 924, 927 (Bankr. N.D. Ohio 1993) ("the sale of stock is prohibited by § 362(a)(3) as an exercise of control over the NOL, which is property of the estate.").

17.    Implementation of the Procedures is necessary and appropriate to enforce the automatic stay and, critically, to preserve the value of the Tax Attributes for the benefit of the Debtors' estates. Under sections 382 and 383 of the IRC, certain transfers of or declarations of worthlessness with respect to Beneficial Ownership of Common Stock prior to the consummation of a chapter 11 plan could cause the termination or limit the use of the Tax Attributes. The Tax Attributes described above may be necessary to minimize or eliminate potential tax consequences resulting from the implementation of the transactions contemplated by these chapter 11 cases. The termination or limitation of the Tax Attributes could be materially detrimental to all parties-in-interest. Thus, granting the relief requested herein will preserve the Debtors' flexibility in operating their business during the pendency of these chapter 11 cases and also implementing an exit plan that makes full and efficient use of the Tax Attributes, maximizing the value of their estates.

18.    Additionally, the Procedures do not bar all transfers of or declarations of worthlessness with respect to Common Stock. The Debtors seek to establish procedures only to monitor those types of transactions that would pose a serious risk under the ownership change test pursuant to sections 382 and 383 of the IRC, and to preserve the Debtors' ability to seek substantive relief if it appears that a proposed transfer or declaration of worthlessness could jeopardize the

Debtors' utilization of the Tax Attributes. Because of the Tax Attributes' importance to the Debtors' restructuring, and thus all parties-in-interest, the benefits of implementing the Procedures outweighs subjecting a limited number of transfers to the Procedures.

19. The importance of restricting transfers of equity interests and declarations of worthlessness with respect to beneficial interests of a debtor's stock, or instituting notice procedures regarding proposed transfers and declarations of worthlessness, to protect a debtor against the possible loss of its tax attributes has been repeatedly recognized by courts in this district, and such courts have granted relief similar to the relief requested herein. *See, e.g.*, *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Jan. 21, 2020) (approving notification procedures and restricting certain transfers of the debtor's equity interests on a final basis); *In re Anna Holdings Inc.*, No. 19-12551 (CSS) (Bankr. D. Del. Dec. 3, 2019) (approving notification procedures and restricting certain transfers of the debtor's equity interests on an interim basis); *In re Destination Maternity Corp.*, No. 19-12256 (BLS) (Bankr. D. Del. Nov. 12, 2019) (approving notification procedures and restricting certain transfers of the debtor's equity interests on a final basis); *In re Things Remembered, Inc.*, (No. 19-10234) (KG) (Bankr. D. Del. Feb. 26, 2019) (same); *In re ATD Corp.*, No. 18-12221 (KJC) (Bankr. D. Del. Oct. 5, 2018) (same).[11]

**The Requirements of Bankruptcy Rule 6003 Are Satisfied**

20. Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed above, authorizing the

---

[11] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

13166375 v2

Debtors to implement certain protective procedures related to certain transfers of, or declarations of worthlessness with respect to, Debtor's existing common stock or any Beneficial Ownership therein, and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases smoothly.  Failure to receive the requested relief during the first 21 days of these chapter 11 case would expose the Debtors to significant tax consequences, irreparably jeopardizing the Debtors' ability to maximize the value of their estates for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

21.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Reservation of Rights

22.     Nothing contained in this Motion or any actions taken by the Debtors pursuant to any order granting the relief requested by this Motion is intended or should be construed as:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other

party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's interim or final orders is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

### Notice

23.    Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Bankruptcy Local Rules, and is sufficient under the circumstances. Without limiting the foregoing, due notice will be afforded, whether by facsimile, electronic mail, overnight courier or hand delivery, to parties-in-interest, including: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the agents under the Debtors' prepetition secured facilities and counsel thereto; (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the state attorneys general for states in which the Debtors conduct business; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

24.    No prior request for the relief sought in this motion has been made to this or any other court.

[*Remainder of page intentionally left blank*]

13166375 v2

WHEREFORE, the Debtors respectfully request that the Court enter interim and final orders, substantially in the forms attached hereto, respectively, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

| | |
|---|---|
| Dated: March 8, 2020<br>Wilmington, Delaware | **BENESCH, FRIEDLANDER, COPLAN &<br>ARONOFF LLP**<br><br>  */s/ Gregory W. Werkheiser*  <br>Gregory W. Werkheiser (DE No. 3553)<br>Michael J. Barrie (DE No. 4684)<br>Jennifer Hoover (DE No. 5111)<br>Kevin Capuzzi (DE No. 5462)<br>John C. Gentile (DE No. 6159)<br>222 Delaware Avenue, Suite 801<br>Wilmington, DE 19801<br>Telephone: (302) 442-7010<br>Facsimile: (302) 442-7012<br>E-mail: gwerkheiser@beneschlaw.com<br>         mbarrie@beneschlaw.com<br>         jhoover@beneschlaw.com<br>         kcapuzzi@beneschlaw.com<br>         jgentile@beneschlaw.com<br><br>*Proposed Counsel to the Debtors and Debtors in Possession* |

13166375 v2