## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ART VAN FURNITURE, LLC, *et al.*,[1] | ) Case No. 20-10533 (CSS) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING SECURED POST-PETITION FINANCING PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 364(c) AND 364 (d); AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")
respectfully state as follows in support of this motion (this "Motion"):

### Relief Requested

1.     The Debtors seek entry of an interim order (the "Interim Order"), substantially in
the form attached hereto as Exhibit A, and a final order (the "Final Order" and, collectively with
the Interim Order, the "Orders") authorizing the Debtors' use of secured post-petition financing
(the "DIP Facility") on an interim and final basis pursuant to the terms of the Debtor-in-Possession
Credit and Security Agreement (the "DIP Credit Agreement") by and among Debtor Sam Levin,
Inc. (the "Borrower" or "Debtor Levin") and Levin Furniture LLC (the "DIP Lender") attached
here to as Exhibit B.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, include:  Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509);
AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC
(8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising,
LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).  The location
of the Debtors' service address in these chapter 11 cases is: 6500 East 14 Mile Road, Warren Michigan 48092.

2.      In addition, the Debtors request that the Court schedule a final hearing within approximately 35 days of the commencement of these chapter 11 cases to consider approval of this Motion on a final basis.

3.      In further support of the Motion, the Debtors respectfully represent as follows:

### Overview

4.      By this Motion, the Debtors seek entry of the Interim Order:

a.      authorizing, under sections 364(c) of the Bankruptcy Code and Bankruptcy Rule 4001(c), the Debtors to obtain secured, superpriority, post-petition loans, advances and other financial accommodations (the "DIP Facility"), on an interim basis;

b.      authorizing the Debtors to execute and deliver the DIP Credit Agreement and all other related documents and agreements as contemplated by the DIP Credit Agreement and requested by the DIP Lender (collectively, the "DIP Loan Documents");

c.      authorizing the Debtors, prior to the entry of the Final Order, to request extensions of credit under the DIP Facility up to an aggregate principal amount of $7,000,000.00 at any one time outstanding;

d.      granting allowed superpriority administrative expense claim status pursuant to section 364(c)(1) of the Bankruptcy Code to all obligations owing under the DIP Credit Agreement and the other DIP Loan Documents, subject to carve-outs;

e.      granting to the DIP Lender automatically perfected security interests and liens on all of the DIP Collateral;

f.      authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Loan Documents;

g.      vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and the Interim Order;

h.      granted related relief; and

i.      scheduling the final hearing on this Motion (the "Final Hearing").

13169264 v1

**Jurisdiction and Venue**

5.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The bases for the relief requested herein are 105, 361, 363(c) and 364(d) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 2002, 4001, 6004 and 9014, and Bankruptcy Local Rule 4001-2.

**Background**

8.      The Debtors operate 169 locations, including 92 furniture and mattress showrooms and 77 freestanding mattress and specialty locations.  The Debtors do business under brand names, including Art Van Furniture, Pure Sleep, Scott Shuptrine Interiors, Levin Furniture, Levin Mattress, and Wolf Furniture.  The Debtors were founded in 1959 and was owned by its founder, Art Van Elslander, until it was sold to funds affiliated with Thomas H. Lee Partners, L.P. ("THL") in March 2017.  Pennsylvania based Levin Furniture and Wolf Furniture were acquired by Art Van in November 2017.  As of the Petition Date (as defined below), the Debtors operate stores throughout Michigan, Indiana, Ohio, Illinois, Pennsylvania, Maryland, Missouri, and Virginia.

3

The Debtors are headquartered in Warren, Michigan and have approximately 4,500 employees as of the Petition Date (as defined below).

9.      On March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description surrounding the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of David Ladd, Executive Vice President and Chief Financial Offer of Art Van Furniture, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with this Motion and incorporated by reference herein.  Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

**Need to the DIP Facility**

10.      The Debtors have an urgent and immediate need to obtain postpetition financing.  Here, the DIP Facility sends a fundamentally positive signal to the Debtors' vendors, employees, customers, and other parties critical to maintaining the Debtors' viability that the operations at the stores subject to the Wolf-Levin LOI (attached to the First Day Declaration) will continue as a going concern.

11.      The DIP Facility is narrow and limited to purchasing inventory for sale in those stores.  Without the availability provided under the DIP Facility, the Debtors may be unable to preserve such stores as a going concern.

12.     Hence, the Debtors have determined, in the exercise of their sound business judgment, that they require financing under the terms of the DIP Credit Agreement and hereby request authority to obtain such financing through the proposed Orders.

**Statement of the Material Terms of the Interim Order**

13.     Pursuant to Bankruptcy Rule 4001(b), (c) and (d) and Bankruptcy Local Rule 4001-2(a)(i) and (ii), the following is a concise statement and summary of the material terms of the Interim Order and/or the DIP Credit Agreement (collectively, the "Highlighted Provisions"):

| Material Terms | Summary of Material Terms | Para(s). of Interim Order and/or DIP Credit Agreement |
|---|---|---|
| Borrowers | Sam Levin, Inc. | DIP Credit Agreement at p. 1 |
| Guarantors | None | N/A |
| DIP Lender | Levin Furniture, LLC | DIP Credit Agreement at p.1 |
| Purpose | To fund operations of Borrower, specifically, to purchase inventory in the ordinary course of business of Borrower during the administration of the Bankruptcy Case | Interim Order at ¶ G |
| Interim Debt Limit | Not to exceed $3,500,000.00 during the Interim Period. | Interim Order at ¶ K and DIP Credit Agreement at § 3(d) |
| Type and Amount of DIP Facility | $7 million secured superpriority facility | DIP Agreement introduction and defined terms |

| Material Terms | Summary of Material Terms | Para(s). of Interim Order and/or DIP Credit Agreement |
|---|---|---|
| **Maturity Date** | April 7, 2020 | DIP Credit Agreement at § 14(a) |
| **Interest Rate** | Non-default rate: 9% per annum based upon 360 day year<br><br>Default rate: Non-default rate plus 2% per annum | DIP Credit Agreement at §§ 1 and 3(e)(ii) |
| **Other Fees** | N/A | N/A |
| **Conditions Precedent to Lending** | (a)    Each of the representations and warranties made by Borrower in or pursuant to DIP Credit Agreement and any Other Document, as the case may be, and each of the representations and warranties contained in any certificate, document or financial or other statement furnished at any time under or in connection with this Agreement or any Other Document shall be true and correct in all material respects on and as of such date as if made on and as of such date.<br><br>(b)    <u>Financing Orders</u>.  Subject to Section 9(c) of the DIP Credit Agreement, the Financing Orders shall be in full force and effect and shall not have been stayed, reversed, modified or amended in any respect without the prior written consent of the DIP Lender, provided, that at the time of the making of any Advance the aggregate amount of which, when added to the sum of the principal amount of all Advances then outstanding would exceed the amount authorized by the Interim Financing Order (collectively, the "<u>Additional Credit</u>"), the DIP Lender shall have received satisfactory evidence of the entry of the Final Financing Order, which, in any event, shall have been entered by the Bankruptcy Court no later than twenty (20) days after the Petition Date and at the time of the extension of any Additional Credit the Final Financing Order shall be in full force and effect, and shall not have been vacated, stayed, reversed, modified or amended in any respect without the prior written consent of the DIP Lender; and if either the Interim Financing Order or the Final Financing Order is the subject of a pending appeal in any respect, neither the making of the Advances nor | DIP Credit Agreement at § 10 |

6

| Material Terms | Summary of Material Terms | Para(s). of Interim Order and/or DIP Credit Agreement |
|---|---|---|
| | the performance by the Borrower of any of its obligations under the DIP Credit Agreement or any of the Other Documents shall be the subject of a presently effective stay pending appeal.<br><br>(c)    <u>Sale Motion</u>.  For each Advance made on or after the fifth (5th) day following the Petition Date, the Borrower shall have filed a motion for approval of the sale of substantially all of the assets of the Borrower to the DIP Lender, which shall be reasonably satisfactory in form and substance to the DIP Lender (the "<u>Sale Motion</u>").<br><br>(d)    <u>Asset Purchase Agreement</u>.  For each Advance made on or after the tenth (10th) day following the Petition Date, Borrower and LF Trucking, Inc., a Pennsylvania corporation and co-Debtor in the Bankruptcy Case, as sellers (collectively, the "<u>Sellers</u>"), and the DIP Lender and Levin Trucking, LLC, a Pennsylvania limited liability company, as purchasers (collectively, the "<u>Purchasers</u>"), shall have entered into a purchase and sale agreement for the purchase and sale of substantially all of the assets of the Sellers to the Purchasers (the "<u>Sale Agreement</u>"), which shall be reasonably satisfactory in form and substance to the DIP Lender (the "<u>Sale Motion</u>").<br><br>(e)    For each Advance made on or after the twenty-first (21st) day following the Petition Date, an order reasonably satisfactory in form and substance to the DIP Lender (the "<u>Sale Order</u>") shall have been entered by the Bankruptcy Court approving a sale to the Purchasers pursuant to the Sale Motion and the Sale Agreement, which Sale Order shall not be subject to a stay pending appeal.  Within two (2) Business Days after entry of the Sale Order, the Sellers and the Purchasers shall close on such sale pursuant to the Purchase Agreement.<br><br>(f)    <u>No Default</u>.  No Event of Default or Default shall have occurred and be continuing on such date, or would exist after giving effect to the Advances requested to be made, on such date; provided, however that, the DIP Lender, in its sole discretion, may continue to make Advances notwithstanding the existence of an Event of Default or Default and that any Advances so made shall not be deemed a waiver of any such Event of Default or Default. | |
| Interim Borrowing Limit | Not to exceed $3,500,000.00 during the Interim Period. | Interim Order at ¶ K |

| Material Terms | Summary of Material Terms | Para(s). of Interim Order and/or DIP Credit Agreement |
|---|---|---|
| | | |
| **Limitations on Use of Proceeds:** | The funds available under the DIP Facility may be used to purchase inventory in the ordinary course of business of Borrower during the administration of the Bankruptcy Case in accordance with the terms of any order regarding Borrower's use of cash collateral or the Financing Orders. | DIP Credit Agreement at § 4 |
| **Budget and Financial Covenants** | N/A | N/A |
| **Cash Dominion** | N/A | N/A |
| **DIP Lien / Superpriority Claim** | Borrower agrees to grant DIP Lender an allowed Superpriority Claim which shall survive any conversion of the these matters to a case under chapter 7 of the Bankruptcy Code.  "Superpriority Claim" shall mean indebtedness or other claim arising out of credit obtained or debt incurred by the Borrower in the Bankruptcy Case having priority in accordance with the provisions of Section 364(c)(1) of the Bankruptcy Code over any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code. | DIP Credit Agreement at §§ 1 and 5(i) |
| **DIP Collateral** | To secure prompt payment and performance of all obligations, the Borrower grants to the DIP Lender a continuing security interest in and Lien upon: (a) all inventory of the Borrower purchased solely with the proceeds of any Advances under the DIP Loan Documents; (b) all receivables; (c) all right, title and interest in and to (i) all inventory returned or rejected by | DIP Credit Agreement at §1 |

8

| Material Terms | Summary of Material Terms | Para(s). of Interim Order and/or DIP Credit Agreement |
|---|---|---|
| | customers previously sold by the Borrower giving rise to receivables referred to in clause (b) above; (ii) all of Borrower's rights as a consignor, a consignee, an unpaid vendor, mechanic, artisan, or other lienor, including stoppage in transit, setoff, dentinue, replevin, reclamation and repurchase with respect to any of the foregoing (a) or (b); (iii) all additional amounts due to Borrower from any customer related to the receivables set forth in clause (b) above; (iv) other property, including warranty claims, relating to any of the foregoing (a) and (b); (v) all of Borrower's contract rights, rights of payment which have been earned under a contract right, instruments (including promissory notes), documents, chattel paper (including electronic chattel paper), warehouse receipts, deposit accounts, letters of credit and money relating to any of the foregoing (a) and (b); (vi) all commercial tort claims (whether now existing or hereafter arising) relating to any of the foregoing (a) and (b); and (vii) if and when obtained by Borrower, all real and personal property of third parties in which Borrower has been granted a lien of security interest as security for the payment or enforcement of receivables referred to in clause (b)<br><br>(d) ledger sheets, ledger cards, files, correspondence, records, books of account, business papers, computer software (owned by Borrower or in which it has an interest and in which the granting of a security interest therein is not expressly prohibited), computer programs, tapes, disks and documents relating to (a), (b) or (c) of this definition; and<br><br>(e) proceedings and products of (a), (b), (c) or (d) of this definition, in whatever form, including, but not limited to: cash, deposit accounts (whether or not comprised solely of proceeds), certificates of deposit, insurance proceeds (including hazard and credit insurance), negotiable instruments and other instruments for the payment of money, chattel paper, security agreements, documents and tort claims proceeds. | |

| Material Terms | Summary of Material Terms | Para(s). of Interim Order and/or DIP Credit Agreement |
|---|---|---|
| | The term Collateral shall not include any lease, license, contract, property right or agreement (or any of its rights or interests thereunder) if and to the extent that the grant of the security interest shall, after giving effect to Section 9-406, 9-407, 9-408 or 9-409 of the Uniform Commercial Code (or any successor provision or provisions), the Bankruptcy Code, or any other applicable law, constitute or result in (i) the abandonment, invalidation or uneforceability of any right, title or interest of Borrower therein or (ii) a breach of termination pursuant to the terms of, or a default under, any such lease license, contract, property rights or agreement; provided, however, that (y) the Collateral excluded hereby shall not include any and all proceeds of such property rights or agreements or any right, title or interest or Borrower therein, and (z) the security interest shall attach immediately at any such time as the restriction resulting in abandonment, invalidation or unenforceability or breach or termination shall be removed or any condition thereto (including any consent) shall be satisfied. | |
| **Lien on Avoidance Claims** | N/A | N/A |
| **Administrative Carve-Out** | Subject to the Financing Orders and the DIP Loan Agreement, the Borrower hereby covenants, represents and warrants that upon entry of the Interim Financing Order (and the Final Financing Order, as applicable), the Obligations shall: (i) pursuant to Section 364(c)(l) of the Bankruptcy Code, at all times constitute allowed claims in the Bankruptcy Case having priority over any and all administrative expenses, diminution claims and all other claims against the Borrower, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code; (ii) pursuant to Section 364(c)(2) of the Bankruptcy Code, at all times be secured by a valid, binding, continuing, enforceable and fully-perfected first priority senior security interest in and Liens upon the Collateral that is not subject to valid, perfected | DIP Credit Agreement at § 15(k) |

10

| Material Terms | Summary of Material Terms | Para(s). of Interim Order and/or DIP Credit Agreement |
|---|---|---|
| | and non-avoidable Liens on the Petition Date; and (iii) pursuant to Section 364(d) of the Bankruptcy Code, the Advances shall be secured by valid, binding, continuing and enforceable senior priming security interests, senior priming liens on all the Collateral. | |
| **Waivers** | N/A | N/A |
| **Perfection Other Than Under State Law** | The Interim DIP Lien shall be automatically perfected upon entry of the Interim Order. | Interim Order at ¶10 and DIP Credit Agreement at § 5(b) |
| **Events of Default** | The occurrence of one or more of the following events shall constitute an "Event of Default": <br><br> (a) <u>Payment of Obligations</u>. Failure by Borrower to pay any principal or interest on the Obligations when due, whether at maturity or by reason of acceleration pursuant to the terms of this Agreement, or by required prepayment or failure to pay any other liabilities or make any other payment, fee or charge provided for herein when due or in any Other Document. <br><br> (b) <u>Misrepresentations</u>. Any representation or warranty made by Borrower in this Agreement or any Other Document or in any certificate, document or financial or other statement furnished at any time in connection herewith or therewith, as the case may be, shall prove to have been misleading in any material respect on the date when made or deemed to have been made. <br><br> (c) <u>Failure to Furnish Information</u>. Failure by Borrower to (i) furnish financial information required to be provided hereunder when due, (ii) furnish financial information requested by the Lender within ten | DIP Credit Agreement at § 12 |

| Material Terms | Summary of Material Terms | Para(s). of Interim Order and/or DIP Credit Agreement |
|---|---|---|
| | (10) days after such information is requested, or (iii) permit the inspection of its books or records.<br><br>(d)     Liens Against Assets.  Issuance of a notice of Lien (other than Permitted Encumbrances), levy, assessment, injunction or attachment against the Collateral or a material portion of Borrower's property which is not stayed or lifted within ten (10) days.<br><br>(e)     Breach of Covenants.  Except as otherwise provided for in this Section, failure or neglect of Borrower to perform, keep or observe any term, provision, condition or covenant herein contained or contained in any other agreement or arrangement, now or hereafter entered into between Borrower and the Lender relating to the Obligations.<br><br>(f)     Judgment.    Any judgment is rendered or judgment lien is filed against Borrower for any post-petition obligation (to the extent not covered by insurance to which the insurance provider has not contested coverage).<br><br>(g)     Loss of Priority Lien.  Any Lien created hereunder or provided for hereby or under any related agreement for any reason ceases to be or is not a valid and perfected Lien having the priority contemplated herein and in the Financing Orders.<br><br>(h)     Invalidity of Credit Agreement. Any material provision of this Agreement shall, for any reason, cease to be valid and binding on Borrower, or Borrower shall so claim in writing to the Lender.<br><br>(i)     Destruction of Collateral.    Any portion of the Collateral shall be seized or taken by a Governmental Body, or Borrower or the title and rights of Borrower shall have become the subject matter of litigation which might, in the reasonable opinion of the Lender, upon final determination, result in material | |

| Material Terms | Summary of Material Terms | Para(s). of Interim Order and/or DIP Credit Agreement |
|---|---|---|
| | impairment or loss of the security provided by this Agreement or the Other Documents.<br><br>(j)    Pre-Petition Payments. Except as permitted by the Financing Orders, the Borrower shall make any pre-petition payment other than pre-petition payments authorized by the Bankruptcy Court (w) in accordance with the Cash Collateral Order, (x) in accordance with other "first day" orders reasonably satisfactory to the Lender, (y) in connection with the assumption of executory contracts and unexpired leases and (z) in respect of accrued payroll and related expenses and employee benefits as of the Petition Date.<br><br>(k)    Dismissal or Conversion of Bankruptcy Case. The Bankruptcy Case shall be dismissed or converted to a case under Chapter 7 of the Bankruptcy Code or Borrower shall file a motion or other pleading seeking the dismissal of the Bankruptcy Case under Section 1112 of the Bankruptcy Code or otherwise; a trustee under Chapter 7 or Chapter 11 of the Bankruptcy Code, a responsible officer or an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in Sections 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code shall be appointed in the Bankruptcy Case, or an application shall be filed by Borrower for the approval of any other Superpriority Claim in the Bankruptcy Case which is pari passu with or senior to the claims of the Lender against Borrower hereunder, or there shall arise or be granted any such pari passu or senior Superpriority Claim.<br><br>(l)    Relief from Stay. The Bankruptcy Court shall enter an order or orders granting relief from the automatic stay applicable under Section 362 of the Bankruptcy Code to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) or repossession on any assets of the Borrower. | |

13

| Material Terms | Summary of Material Terms | Para(s). of Interim Order and/or DIP Credit Agreement |
|---|---|---|
| | (m)   The Financing Orders.   Borrower shall apply for authority to amend, supplement, stay, vacate or otherwise modify any of the Financing Orders without the consent of the Lender, and the Lender has sent notice of such default to Borrower.  Any of the Financing Orders shall be revoked, remanded, vacated, reversed, stayed, rescinded or shall cease to be in full force and effect, in each case without the consent of the Lender, modified or amended on appeal by any Bankruptcy Judge or District Court Judge or the Final Financing Order shall not have been entered within twenty-one (21) days of the Petition Date.<br><br>(n)   Lien Challenge.   Borrower shall support (in any such case by way of any motion or other pleading filed with the Bankruptcy Court or any other writing to another party-in-interest executed by or on behalf of Borrower) any other Person's opposition of, any motion made in the Bankruptcy Court by Lender seeking confirmation of the amount of Lender's claim or the validity or enforceability of the Liens in favor of Lender. Borrower shall seek to, or shall support (in any such case by way of any motion or other pleading filed with the Bankruptcy Court or any other writing to another party-in-interest executed by or on behalf of Borrower) any other Person's motion to disallow in whole or in part Lender's claim in respect of the Obligations or to challenge the validity, perfection and enforceability of Liens in favor of the Lender.<br><br>(o)   Filing of Reorganization Plan or Sale Motion.  A plan of reorganization or a motion for the sale of substantially all of the assets of the Sellers is filed by any party in interest in the Bankruptcy Case which does not contemplate a sale to the Purchasers. | |

13169264 v1

| Material Terms | Summary of Material Terms | Para(s). of Interim Order and/or DIP Credit Agreement |
|---|---|---|
| **Remedies / Relief from Automatic Stay** | Upon the occurrence and during the continuance of any Event of Default, the automatic stay provisions of section 362 of the Bankruptcy Code shall be vacated and/or modified to the extent necessary to permit the DIP Lender to (i) perfect the security interests and Liens granted under the DIP Loan Documents and (ii) exercise its rights under section 13 of the DIP Loan Documents. | DIP Credit Agreement at § 7(d) |
| **Indemnification and Exculpation** | Borrower shall indemnify the DIP Lender and each of its officers, directors, affiliates, employees, attorneys and agents from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses and disbursements of any kind or nature whatsoever (including, without limitation, fees and disbursements of counsel) which may be imposed on, incurred by, or asserted against the Lender in any litigation, proceeding or investigation instituted or conducted by any governmental agency or instrumentality or any other Person (as defined in the DIP Loan Agreement) with respect to any aspect of, or any transaction contemplated by, or referred to in, or any matter related thereto, the DIP Loan Agreement or Other Documents (as defined in the DIP Loan Agreement), whether or not the DIP Lender is party thereto, except to the extent that any of the foregoing arises out of the gross negligence or willful misconduct of the party being indemnified. | DIP Credit Agreement at § 15(a) |

## Bankruptcy Local Rule 4001-2 Disclosures

13.     The Debtors do not believe that this Motion or the Interim Order contain any provisions requiring special disclosure under Bankruptcy Local Rule 4001-2(a).

**Basis for Relief**

I.     **The Debtors Should Be Permitted to Obtain Post-Petition Financing Pursuant to Section 364(c) of the Bankruptcy Code.**

14.    Section 364(c) of the Bankruptcy Code requires a finding, made after notice and a hearing, that the debtors seeking post-petition financing on a secured basis cannot "obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code] as an administrative expense…" 11 U.S.C. § 364(c).

15.    In evaluating proposed post-petition financing under section 364(c) of the Bankruptcy Code, courts perform a qualitative analysis and generally consider similar factors, including whether: (i) unencumbered credit or alternative financing without superpriority status is available to the debtor; (ii) the credit transactions are necessary to preserve assets of the estate; (iii) the terms of the credit agreement are fair, reasonable, and adequate; (iv) the proposed financing agreement was negotiated in good faith and at arm's-length and entry thereto is an exercise of sound and reasonable business judgment and in the best interest of the debtor's estate and its creditors; and (v) the proposed financing agreement adequately protects prepetition secured creditors.

16.    *See, e.g.*, *In re Los Angeles Dodgers LLC*, 457 B.R. 308, 312 (Bankr. D. Del. 2011) (applying the first three factors); *In re Aqua Assoc.*, 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991) (applying the first three factors in making a determination under section 364(c)); *In re Crouse Group, Inc.*, 71 B.R. 544, 546 (Bankr. E.D. Pa. 1987) (same); *Bland v. Farmworker Creditors*,

308 B.R. 109, 113-14 (S.D. Ga. 2003) (applying all factors in making a determination under section 364(d)).

17.     For the reasons discussed below, the Debtors satisfy the standards required to obtain post-petition financing under section 364(c) of the Bankruptcy Code. For the avoidance of doubt, the Debtors are not seeking any relief pursuant to section 364(d) of the Bankruptcy Code

## II.    The Debtors Were Unable to Obtain Financing on an Unsecured Basis.

18.     Whether debtors were unable to obtain unsecured credit is determined by application of a good faith effort standard, and debtors must make a good faith effort to demonstrate that credit was not available without granting a security interest. *See In re YL West 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) ("Courts have generally deferred to a debtor's business judgment in granting section 364 financing."); *In re Gen. Growth Props., Inc.*, 412 B.R. 122, 125 (Bankr. S.D.N.Y. 2009). The required showing under section 364 of the Bankruptcy Code that unsecured credit was not available is not rigorous. *See, e.g., Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) (stating that section 364(d) of the Bankruptcy Code imposes no duty to seek credit from every possible lender, particularly when "time is of the essence in an effort to preserve a vulnerable seasonal enterprise").

19.     Here, as detailed in the First-Day Declaration, as supplemented by the record, the Debtors filed these cases to avert a liquidity crisis and prevent further deterioration of their business. The Debtors are unable, in the present circumstances, to purchase inventory at the Wolf-Levin go-forward stores by obtaining financing on an unsecured, administrative expense basis.

20.     The Debtors respectfully submit that their efforts to obtain post-petition financing therefore satisfy the standards required under section 364(c) of the Bankruptcy Code. *See, e.g., In*

*re Simasko Production Co.*, 47 B.R. 444, 448-49 (Bankr. D. Colo. 1985) (authorizing interim financing stipulation where debtor's best business judgment indicated financing was necessary and reasonable for benefit of estates); *In re Ames Dept. Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to post-petition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties"); *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988) (where few lenders can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing").

**III.    The Proposed Financing is Necessary to Preserve the Assets of the Debtors' Estates.**

21.    Cash is necessary for working capital, operating costs and expenses incurred during these Cases, including purchasing inventory for the Wolf-Levin go-forward stores so that they can continue as going concerns. The DIP Facility thus is essential to Debtor Levin's continued operational viability and will provide Debtor Levin with the opportunity to preserve its businesses while the Debtors prepare to enter the sale process.

22.    As debtors in possession, the Debtors have a fiduciary duty to protect and maximize their estates' assets. *See Burtch v. Ganz (In re Mushroom Transp. Co.)*, 382 F.3d 325, 339 (3d Cir. 2004). As noted above, the Debtors require post-petition financing under the terms of the DIP Loan Documents to continue their operations during these Chapter 11 Cases.

**IV.    The Terms of the Proposed Financing Are Fair, Reasonable, and Appropriate.**

23.    In considering whether the terms of post-petition financing are fair and reasonable, courts consider the terms in light of the relative circumstances and disparate bargaining power of both the debtor and the potential lender.  *In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank &*

18

*Trust Co. (In re Ellingsen MacLean Oil Co.)*, 65 B.R. 358, 365 n.7 (W.D. Mich. 1986) (a debtor may have to enter into hard bargains to acquire funds).

24.     The terms of the DIP Credit Agreement and the proposed DIP Orders were negotiated between the Debtors and the DIP Lender. The Debtors negotiated with the DIP Lender in good faith to ensure that the terms of the DIP Facility are consistent with "market" terms, and are fair and reasonable to the Debtors. To that end, the Debtors, on the one hand, and the DIP Lender on the other hand, each had separate business teams and used separate counsel in negotiating the DIP Facility.

**V.      Entry Into the Proposed Financing Reflects the Debtors' Sound Business Judgment.**

25.     A debtor's decision to enter into a post-petition lending facility under section 364 of the Bankruptcy Code is governed by the business judgment standard. *See, e.g., Trans World Airlines, Inc. v. Travelers Int'l AG (In re Trans World Airlines, Inc.)*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving post-petition credit facility because such facility "reflect[ed] sound and prudent business judgment"); *In re Ames Dep't Stores, Inc.*, 115 B.R. at 38 ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest"). One court has noted that "[m]ore exacting scrutiny [of the debtors' business decisions] would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

26.     Here, the Debtors' sound business judgment clearly supports entry into the DIP

Credit Agreement to gain access to needed funding and maximize value for all constituents.

**VI.    The DIP Lender is Extending Credit in Good Faith.**

27.    Section 364(e) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).

28.    The Debtors and the DIP Lender negotiated the DIP Credit Agreement in good faith. Accordingly, the DIP Orders should provide that the DIP Lender, as a good faith lender, is entitled to all of the protections set forth in section 364(e) of the Bankruptcy Code.

<u>**Request for Final Hearing**</u>

29.    Pursuant to Bankruptcy Rule 400l(b)(2), the Debtors request that the Court set a date for the Final Hearing within thirty-five (35) days of the Petition Date and fix the date and time prior to the Final Hearing for parties to file objections to the relief requested by this Motion.

30.    The urgent need to preserve the Debtors' businesses, and avoid immediate and irreparable harm to the Debtors' estates, makes it imperative that the Debtors be authorized to obtain post-petition financing as of the Petition Date, pending the Final Hearing, in order to continue their operations and administer the Cases. Without the ability to obtain access to such funding, the Debtors would be unable to meet their post-petition obligations, including maintaining and maximizing the value of the Debtors' businesses, thus causing irreparable harm to the value of the Debtors' estates.

31.     Accordingly, the Debtors respectfully request that, pending the hearing on the Final Order, the Interim Order be approved in all respects, and that the terms and provisions of the Interim Order be implemented and be deemed binding, and that, after the Final Hearing, the Final Order be approved in all respects and the terms and provisions of the Final Order be implemented and be deemed binding.

### The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

32.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  For the reasons discussed above, authorizing the Debtors to use the DIP Facility and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases smoothly.  Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

33.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

34.     Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Bankruptcy Local Rules, and is sufficient under the circumstances.  Without limiting the

13169264 v1

foregoing, due notice will be afforded, whether by facsimile, electronic mail, overnight courier or hand delivery, to parties-in-interest, including:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the agents under the Debtors' prepetition secured facilities and counsel thereto; (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the state attorneys general for states in which the Debtors conduct business; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

35.    No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

13169264 v1

WHEREFORE, for the reasons set forth herein and in the First Day Declaration, and based on the record of the Chapter 11 Case, the Debtors respectfully request that this Court (a) enter the Orders (i) authorizing the Debtors to use the DIP Facility on an interim and final basis subject to the terms and conditions set forth therein; (ii) scheduling the Final Hearing, pursuant to the Interim Order, within approximately thirty-five (35) days of the commencement of the chapter 11 cases, to consider approval of this Motion on a final basis; and (iii) granting related relief; and (b) grant the Debtors such other and further relief as may be just and proper.

Dated:  March 9, 2020
Wilmington, Delaware

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

   */s/ Gregory W. Werkheiser*
Gregory W. Werkheiser (DE No. 3553)
Michael J. Barrie (DE No. 4684)
Jennifer Hoover (DE No. 5111)
Kevin Capuzzi (DE No. 5462)
Kate Harmon (DE No. 5343)
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
E-mail: gwerkheiser@beneschlaw.com
        mbarrie@beneschlaw.com
        jhoover@beneschlaw.com
        kcapuzzi@beneschlaw.com
        kharmon@beneschlaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*