**<u>EXHIBIT B</u>**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ART VAN FURNITURE, LLC, *et al.*,[1] | ) Case No. 20-10553 (CSS) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |
| | ) **Re: Docket No. _____** |

**FINAL ORDER GRANTING DEBTORS'
EMERGENCY MOTION FOR ENTRY OF INTERIM AND
FINAL ORDERS (I) APPROVING PROCEDURES FOR STORE
CLOSING SALES, (II) AUTHORIZING CUSTOMARY BONUSES TO
EMPLOYEES OF CLOSING STORES, (III) AUTHORIZING ASSUMPTION
OF THE CONSULTING AGREEMENT UNDER §§ 363 AND 365 OF THE
BANKRUPTCY CODE, (IV) AUTHORIZING THE DEBTORS TO
RETAIN CERTAIN CONSULTANT ENTITIES AS SPECIAL ASSET
DISPOSITION ADVISORS TO THE DEBTORS PURSUANT TO §327(A)
OF THE BANKRUPTCY CODE AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (this "Final Order"):  (a) authorizing and

approving the conduct of store closing or similar themed sales in accordance with the terms of the

store closing procedures (the "Store Closing Procedures") attached hereto as **Exhibit 1**, with such

sales to be free and clear of all liens, claims and encumbrances; (b) authorizing the Debtors to

conduct the Store Closings; (c) authorizing the Debtors to pay customary bonuses to employees of

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Art Van Furniture, LLC (9205); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVCE, LLC (2509); AVF Franchising, LLC (6325); AVF Holding Company, Inc. (0291); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); LF Trucking, Inc. (1484); and Sam Levin, Inc. (5198).  The location of the Debtors' service address in these chapter 11 cases is: 6500 East 14 Mile Road, Warren Michigan 48092.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

13172872 v1

Closing Stores; (d) authorizing the Debtors to assume the Consulting Agreement; (e) authorizing

the Debtors to retain the Consultant as special asset disposition advisor pursuant to Section 327(a)

of the Bankruptcy Code; (f) scheduling a final hearing to consider approval of the Motion on a

final basis; and (g) granting related relief, all as more fully set forth in the Motion; and upon the

First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C.

§§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware, dated February 29, 2012; and this Court having found that this

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order

consistent with Article III of the United States Constitution; and this Court having found that venue

of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

and this Court having found that the relief requested in the Motion is in the best interests of the

Debtors' estates, their creditors, and other parties in interest; and this Court having found that the

Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under

the circumstances and no other notice need be provided; and this Court having reviewed the

Motion and having heard the statements in support of the relief requested therein at a hearing

before this Court (the "Hearing"); and this Court having determined that the legal and factual bases

set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and

upon all of the proceedings had before this Court; and after due deliberation and sufficient cause

appearing therefor, it is HEREBY FOUND AND DETERMINED THAT:[3]

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate.

A.     The Debtors have advanced sound business reasons for seeking to implement the Store Closing Procedures and assume the Consulting Agreement, as set forth in the Motion and at the Hearing, and such relief is in the best interests of the Debtors and their estates.

B.     The Store Closing Procedures are reasonable, and the conduct of the Closing Sales in accordance with the Store Closing Procedures will provide an efficient means for the Debtors to dispose of the Merchandise and the M&E and will maximize the returns on the Merchandise and the M&E.

C.     The Consulting Agreement was negotiated, proposed, and entered into by the Debtors and the Consultant without collusion, in good faith, and from arm's-length bargaining positions, and the operation and effectiveness of the Consulting Agreement on a final basis is a sound exercise of the Debtors' business judgment.

D.     The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates and the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

E.     The Store Closings and Closing Sales are in the best interest of the Debtors' estates.

F.     The entry of this Final Order is in the best interest of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and now therefore it is HEREBY ORDERED THAT:

1.     The Motion is granted on a final basis as provided herein.

2.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

3.     The Debtors are authorized, but not directed, to make payments under the Store Closing Bonus Plan.

13172872 v1

4.      The Debtors and the Consultant are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.  The failure to specifically include any provision of the Consulting Agreement in this Final Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Consulting Agreement and all of its provisions, payments, and transactions be, and hereby are, authorized and approved as and to the extent provided in this Final Order.

5.      To the extent of any conflict between this Final Order, the Consulting Agreement, and the Store Closing Procedures, the terms of this Final Order shall control.

6.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of the Final Order are immediately effective and enforceable upon its entry.

**I.      Authority to Engage in Closing Sales and Conduct Store Closings.**

7.      The Debtors and the Consultant are authorized, on a final pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to continue and conduct Closing Sales at the Closing Stores in accordance with this Final Order, the Store Closing Procedures, and the Consulting Agreement as may be modified by a Side Letter (as defined below) between the Debtors and the landlords at the closing locations.

8.      The Store Closing Procedures are approved in their entirety on a final basis. The Store Closing Procedures shall be used for all permitted store closings in these chapter 11 cases, unless otherwise ordered.

9.      The Debtors are authorized to discontinue operations at the Closing Stores in accordance with this Final Order, the Store Closing Procedures, and the Consulting Agreement.

10.      All entities that are presently in possession of some or all of the Merchandise or M&E in which the Debtors hold an interest that are or may be subject to this Final Order hereby are directed to surrender possession of such Merchandise or M&E to the Debtors.

5

11.     Neither the Debtors nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including, without limitation, any Governmental Unit (as defined in Bankruptcy Code section 101(27)) or landlord, to conduct the Closing Sales and to take the related actions authorized herein.

**II.     Conduct of the Sales.**

12.     All media in which the Closing Sales may be advertised and all landlords are directed to accept this Final Order as binding authority so as to authorize the Debtors and the Consultant to conduct the Closing Sales and the sale of Merchandise, M&E, and Additional Consultant Goods, including, without limitation, to conduct and advertise the sale of the Merchandise, M&E, and Additional Consultant Goods in the manner contemplated by and in accordance with this Final Order, the Store Closing Procedures, and the Consulting Agreement.

13.     The Debtors and the Consultant are hereby authorized to take such actions as may be necessary and appropriate to conduct the Store Closings without necessity of further order of this Court as provided in this Final Order,  the Store Closing Procedures, and the Consulting Agreement, including, but not limited to, advertising the sale as a "store closing sale," "sale on everything," "everything must go," or similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall closing locations, and at enclosed mall closing locations to the extent the applicable closing location entrance does not require entry into the enclosed mall common area), use of signwalkers, and street signage; *provided*, *however*, that only Debtor-approved terminology will be used at each Closing Store in connection with the Sales.

14.     The Consultant is authorized to supplement the Merchandise in the Closing Stores with Additional Consultant Goods, provided that any such supplementing with Additional Consultant Goods must be of like kind and no lesser quality than goods sold in the Closing Stores prior to the Petition Date.  Sales of Additional Consultant Goods shall be run through the Debtors'

cash register systems; provided, however, that the Consultant shall mark the Additional Consultant Goods using either a "dummy" SKU or department number or in such other manner so as to distinguish the sale of Additional Consultant Goods from the sale of Merchandise. The Consultant and Merchant shall cooperate to ensure that the Additional Consultant Goods are marked in such a way that a reasonable consumer could identify the Additional Consultant Goods from the Merchandise.

15.     All transactions relating to the Additional Consultant Goods are, shall be construed as, and are acknowledged by the Debtors to be, a true consignment from Consultant to the Debtors under Article 9 of the Uniform Commercial Code in effect in the State of Delaware (the "UCC") and not a consignment for security purposes. At all times and for all purposes, the Additional Consultant Goods and their proceeds shall be the exclusive property of the Consultant, and no other person or entity (including, without limitation, the Debtors, or any third person claiming a security interest in the Debtors' property, including any of the Debtors' secured lenders) shall have any claim against any of the Additional Consultant Goods or the proceeds thereof. The Additional Consultant Goods shall at all times remain subject to the exclusive control of the Consultant. The Debtors shall, at Consultant's sole cost and expense, insure Additional Consultant Goods and, if required, promptly file any proofs of loss with regard thereto.

16.     Consultant is hereby granted a first priority security interest in and lien upon (i) the Additional Consultant Goods and (ii) the Additional Consultant Goods proceeds, which security interest shall be deemed perfected on an final pursuant to this Final Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that Consultant is hereby authorized to deliver any notices and file any financing statements and amendments thereof under the applicable UCC identifying Consultant's interest in the Additional

Consultant Goods (and any proceeds from the sale thereof) as consigned goods thereunder and the Debtors as the consignee therefor, and Consultant's security interest in such Additional Consultant Goods and Additional Consultant Goods proceeds).  As part of each weekly reconciliation, the Debtors shall turnover all proceeds from the sale of Additional Consultant Goods to the Consultant, net of any fee payable to the Debtors pursuant to the Consulting Agreement.

17.    Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the sale of the Merchandise, M&E, and Additional Consultant Goods, to the extent that, prior to the Final Hearing, disputes arise during the course of such sale regarding laws regulating the use of sign-walkers, banners, or other advertising and the Debtors are unable to resolve the matter consensually, any party may request an immediate telephonic hearing with this Court pursuant to these provisions.  Such hearing will, to the extent practicable, be scheduled initially no later than the earlier of (a) the Final Hearing, or (b) within two (2) business days of such request.  This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

18.    The sale of the Merchandise, M&E, and Additional Consultant Goods shall be conducted by the Debtors notwithstanding any restrictive provision of any lease, sublease, restrictive covenant, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store Closings or the Closing Sales (including the sale of the Merchandise, M&E, and Additional Consultant Goods) and the rejection of leases, abandonment of assets, or "going dark" provisions, and such provisions shall not be enforceable in conjunction with the Sales or the Store Closings.  Breach of any such provisions in these chapter 11 cases in conjunction with the Store Closings or the Closing Sales shall not constitute a default under a lease or provide a basis to terminate the lease; *provided* that the Store Closings and Closing Sales are conducted in

8

accordance with the terms of this Final Order and the Store Closing Procedures.  Subject to the approval of the Secured Lenders, the Debtors and landlords of the Closing Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the Store Closing Procedures without further order of the Court and such Side Letters shall be binding as among the Debtors and any such landlords.  In the event of any conflict between the Store Closing Procedures and any Side Letter, the terms of such Side Letter shall control.

19.     Except as expressly provided for herein or in the Store Closing Procedures, and except with respect to any Governmental Unit (as to which paragraphs  and  shall apply) no person or entity, including, but not limited to, any landlord, licensor, service provider, utility, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Closing Sales or the sale of Merchandise, M&E, or Additional Consultant Goods, or the advertising and promotion (including the posting of signs and exterior banners or the use of signwalkers) of such sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service provider, utility, and creditor and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding the conduct of the Closing Sales and/or Store Closings, and/or (b) instituting any action or proceeding in any court (other than this Court) or administrative body seeking an order or judgment against, among others, the Debtors, or the landlords at the Closing Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Closing Sales or other liquidation sales at the Closing Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

13172872 v1

20.     In accordance with and subject to the terms and conditions of the Consulting Agreement, the Consultant shall have the right to use the Closing Stores and all related Closing Store services, furniture, fixtures, equipment, and other assets of the Debtors for the purpose of conducting the Store Closings, free of any interference from any entity or person, subject to compliance with the Store Closing Procedures and this Order.

21.     All sales of Merchandise, M&E and Additional Consultant Goods shall be "as is" and final.  Returns related to the purchase of Store Assets shall not be accepted at stores that are not participating in the Store Closings.  However, as to the Closing Stores, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."

22.     The Consultant shall not be liable for sales taxes except with respect to the Additional Consultant Goods, and  as expressly provided in the Consulting Agreement, and the payment of any and all sales taxes is the responsibility of the Debtors, subject to Consultant's obligation to collect and remit the sales taxes attributable to the sale of Additional Consultant Goods.  The Debtors are directed to remit all taxes arising from the Sales to the applicable Governmental Units as and when due; *provided* that in the case of a *bona fide* dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected.  This Final Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

13172872 v1

23.     Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the Debtors, is authorized to sell Store Assets—and all sales of Store Assets whether by the Consultant or the Debtors, shall be—free and clear of any and all of any liens, claims, encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state, and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax, labor, ERISA, CERCLA, alter ego and other liabilities, causes of action, contract rights, and claims, to the fullest extent of the law, in each case, of any kind or nature (including, without limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether pre-petition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable (collectively, "Encumbrances")s; as provided for herein because in each case, one or more of the standards set forth in section 363(f)(1)–(5) has been satisfied; *provided*, *however*, that any such Encumbrances shall attach to the proceeds of the sale of the Merchandise and the M&E with the same validity, in the amount, with the same priority as, and to the same extent that any such Encumbrances have with respect to the Merchandise and the M&E, subject to any claims and defenses that any party may possess with respect thereto and subject to the Consultant's and expenses (as provided in the Consulting Agreement).

24.     To the extent that the Debtors propose to sell or abandon M&E that may contain personal and/or confidential information about the Debtors' employees and/or customers

(the "<u>Confidential Information</u>"), the Debtors shall remove the Confidential Information from such items of M&E before such sale or abandonment.

25.    The Debtors are authorized and empowered to transfer merchandise, M&E and Additional Consultant Goods among, and into, the Stores.

**III.    Dispute Resolution Procedures with Governmental Units.**

26.    Nothing in this Final Order, or the Store Closing Procedures, releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order.  Nothing contained in this Final Order, or the Store Closing Procedures shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with its rights and obligations as debtor in possession under the Bankruptcy Code. The Store Closings and the Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "<u>General Laws</u>").  Nothing in this Final Order, the Consulting Agreement, or the Store Closing Procedures, shall alter or affect obligations to comply with all applicable federal safety laws and regulations.  Nothing in this Final Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(47) of the Bankruptcy Code) from enforcing General Laws, subject to the Debtors' rights to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code or this Final Order.  Notwithstanding any other provision in this Final Order, no party waives any rights to argue any position with

respect to whether the conduct was in compliance with this Final Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Final Order shall be deemed to have made any rulings on any such issues.

27.    To the extent that the sale of Merchandise, M&E, and Additional Consultant Goods is subject to any Liquidation Sale Laws, including any federal, state or local statute, ordinance, or rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws, laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the sale and including ordinances establishing license or permit requirements, waiting periods, time limits, or bulk sale restrictions that would otherwise apply solely to the sale of the merchandise, M&E, and Additional Consultant Goods, the Dispute Resolution Procedures in this section shall apply:

a.    Provided that the Closing Sales are conducted in accordance with the terms of the Interim Order or the Final Order, as applicable, and the Store Closing Procedures, and in light of the provisions in the laws of many Governmental Units (as defined in the Bankruptcy Code) that exempt court-ordered sales from their provisions, the Debtors will be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Closing Sales in accordance with the terms of the Interim Order or the Final Order, as applicable, and the Store Closing Procedures without the necessity of further showing compliance with any such Liquidation Sale Laws.

b.    Within three business days after entry of the Interim Order, the Debtors will serve by email, facsimile, or first-class mail, copies of the Interim Order, the proposed Final Order and the Store Closing Procedures on the following:  (i) the landlords for the Stores; (ii) the Attorney General's office for each state in which the Closing Sales are being held; (iii) the county consumer protection agency or similar agency for each county in which the Closing Sales are being held; (iv) the division of consumer protection for each state in which the Closing Sales are being held; (v) the chief legal counsel for each local jurisdiction in which the Closing Sales are being held (collectively, the "Dispute Notice Parties").

c.    With respect to any additional Stores, within three business days after Court authorization to close additional stores (each, an "Additional Closing Store

List"), the Debtors will serve by email, facsimile, or first-class mail, copies of the Interim Order or Final Order, as applicable, and the Store Closing Procedures on the Dispute Notice Parties.  To the extent that there is a dispute arising from or relating to the Sales, the Interim Order, or the proposed Final Order, as applicable, the Store Closing Procedures, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within ten days following entry of the Interim Order or service of any Additional Closing Store List, as applicable, any Governmental Unit may assert that a Reserved Dispute exists by sending a notice (the "Dispute Notice") explaining the nature of the dispute to: (i) counsel to the Debtors, Benesch, Friedlander, Coplan & Aronoff LLP, 222 Delaware Avenue, Suite 201, Wilmington, Delaware 19801-1611, Attn: Michael J. Barrie and Gregory W. Werkheiser; (ii) counsel to the Prepetition ABL Agent, Morgan Lewis & Bockius LLP, (a) 101 Park Avenue, New York, New York 10178-0060, Attn: Jennifer Feldsher, and (b) One Federal Street, Boston, Massachusetts 02110, Attn: Marjorie Crider and Christopher L. Carter, and Burr & Forman LLP, 1201 N. Market Street, Suite 1407, Wilmington, Delaware 19801, Attn: J. Cory Falgowski; (iii) counsel to the Consultant, Riemer & Braunstein LLP, Times Square Tower, Seven Times Square, Suite 2506, New York, New York 10036; (iii) the United States Trustee's Office for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda Richenderfer; (iv) counsel to the Prepetition Term Loan Lenders, Greenberg Traurig, LLP, One International Place, Suite 2000, Boston, MA 02110, Attn: Jeffrey M. Wolf. If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within 15 days after service of the Dispute Notice, the Governmental Unit may file a motion with the Court requesting that the Bankruptcy Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

d.      In the event that a Dispute Resolution Motion is filed, nothing in the Interim Order or the Final Order, as applicable, shall preclude the Debtors, a landlord, or any other interested party from asserting (i) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (ii) that neither the terms of the Interim Order or the Final Order nor the conduct of the Debtors pursuant to the Interim Order or the Final Order violates such Liquidation Sale Laws.  Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of the Interim Order or the Final Order or to limit or interfere with the Debtors' ability to conduct or to continue to conduct the Closing Sales pursuant to the Interim Order or the Final Order, absent further order of the Court.  Upon the entry of the Interim Order or the Final Order, as applicable, the Court grants authority for the Debtors to conduct the Closing Sales pursuant to the terms of the Interim Order or the Final Order, as applicable, the Store Closing Procedures and to take all actions reasonably related thereto or arising in connection therewith.  The Governmental Unit will be entitled to assert any

13172872 v1

jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in the Interim Order or the Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

e.    If, at any time, a dispute arises between the Debtors and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in the Interim Order or the Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (c) and (d) above by serving a notice to the other party and proceeding thereunder in accordance with those subparagraphs.  Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

28.    Subject to paragraphs  and __ above, each and every federal, state, or local agency, departmental unit, or Governmental Unit with regulatory authority over the Closing Sales, and all newspapers and other advertising media in which the Closing Sales are advertised shall consider the Final Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors be required, to post any bond, to conduct the Sales.

29.    Within three business days of the Final Order, the Debtors shall serve copies of the Final Order, and the Store Closing Procedures via e-mail, facsimile, or regular mail, on:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Attorney's Office for the District of Delaware; (d) the Internal Revenue Service; (e) the state attorneys general for all states in which the Debtors conduct business; (f) all parties who are known by the Debtors to assert liens against the Merchandise and the M&E ; (g) all state attorneys general in which the Merchandise and the M&E are located; (h) municipalities in which the Merchandise and the M&E are located; (i) all of the Debtors' landlords at the locations of the Stores; (j) all applicable state and consumer protection agencies; and (k) any party that has requested notice pursuant to

Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**IV.    Effectiveness of the Consulting Agreement.**

30.    The Consulting Agreement is operative and effective on a final basis.  The Debtors are authorized to act and perform in accordance with the terms of the Consulting Agreement, including, without limitation, reimbursing all expenses to the Consultant as required by the Consulting Agreement without the need for any application of the Consultant or a further order of the Court.  For avoidance of doubt, the Debtors are also authorized to fund the Expense Deposit in accordance with the terms of the Consulting Agreement.

31.    The treatment of Pre-SCD Orders, including the Cancelled Back-Order Merchandise Credit, described in the Consulting Agreement is a sound exercise of the Debtors' business judgment, complies with applicable law, and is hereby approved, subject to entry of the Final Order.

32.    Subject to the restrictions set forth in this Final Order Order and the Store Closing Procedures, the Debtors and the Consultant are hereby authorized to take any and all actions as may be necessary or desirable to implement the Consulting Agreement, the Store Closings, and the Closing Sales, and each of the transactions contemplated by the Consulting Agreement, and any actions taken by the Debtors and the Consultant necessary or desirable to implement the Consulting Agreement and the Closing Sales prior to the date hereof, are hereby approved and ratified.  The failure to specifically include any particular provision of the Consulting Agreement in this Final Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Court that the Consulting Agreement and all of its provisions, payments, and transactions, be and hereby are authorized and approved as and to the extent provided for in this Final Order.

16

33.     Notwithstanding anything to the contrary in the Consulting Agreement, the Debtors and their estates shall not indemnify the Consultant for any damages arising primarily out of any act or omission by the Consultant constituting fraud, gross negligence, or willful misconduct.

**V.      Debtors are Authorized to Retain Consultant as Special Asset Disposition Consultant Pursuant to the Consulting Agreement.**

34.     The This Court is satisfied that the Consultant represents and holds no interest adverse to the Debtors or their estates, and that the Consultant will not represent any other entity in connection with these cases and that its employment is necessary and would be in the best interests of the Debtors and the estates.  Accordingly, pursuant to sections 327(a), 330 and 331 of Bankruptcy Code, the Debtors be, and hereby are, authorized to retain the Consultant as their special asset disposition advisors and consultants, to assist the Debtors in the marketing and sale process for the Assets in accordance with the Consulting Agreement; provided however, it is agreed and understood that no fees shall be payable to the Consultant in connection with Services rendered by it to the Debtors pursuant to the Consulting Agreement, and other than the right to reimbursement of Consultant Incurred Expenses, Consultant shall have to claim or right to payment from the Company; provided further however, Consultant shall not be required to file a fee application for reimbursement of the Consultant Incurred Expenses. Debtors shall not be required to comply with any state or local law requiring that the Debtors pay an employee substantially contemporaneously with his or her termination; *provided*, however, that the Debtors shall pay any accrued wages to terminated employees as expeditiously as possible

**VI.     Other Provisions.**

35.     The Consultant shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Consultant, in each case, other than as expressly provided for in the Consulting Agreement.

17

36.     The Debtors shall not be required to comply with any state or local law requiring that the Debtors pay an employee substantially contemporaneously with his or her termination; *provided*, *however*, that the Debtors shall pay any accrued wages to terminated employees as expeditiously as possible.

37.     Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code (other than the Consulting Agreement); (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Final Order are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection or to seek avoidance of all such liens. Any payment made pursuant to this Final Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

38.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

39.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

13172872 v1

40.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

41.     Cause exists to shorten the notice period set forth in Bankruptcy Rule 2002, to the extent possible.

42.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

43.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order, including, but not limited to, (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional, and non-deceptive manner, (b) any claim of the Debtors, the landlords for protection from interference with the Store Closings or Closing Sales, (c) any other disputes related to the Store Closings or Closing Sales, and (d) protect the Debtors against any assertions of any liens, claims, encumbrances, and other interests.  No such parties or person shall take any action against the Debtors, the landlords, the Store Closings, or the Closing Sales until this Court has resolved such dispute.  This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

Dated: _____, 2020
Wilmington, Delaware                          _____
                                                        UNITED STATES BANKRUPTCY JUDGE

13172872 v1

# **<u>EXHIBIT 1</u>**

## Store Closing Procedures[1]

1.      The Sales shall be conducted so that the Stores in which Sales are to occur will remain open no longer than during the normal hours of operation or such hours as otherwise provided for in the respective leases for the Stores.

2.      The Store Closing Sales shall be conducted in accordance with applicable state and local "Blue Laws," where applicable, so that no Store Closing Sale shall be conducted on Sunday unless the Debtors had been operating such Stores on a Sunday prior to the commencement of the Store Closing Sales.

3.      On "shopping center" property, the Consultant shall not distribute handbills, leaflets or other written materials to customers outside of any Stores' premises, unless permitted by the lease or if distribution is customary in the "shopping center" in which such Stores is located; *provided* that the Consultant may solicit customers in the Stores themselves.  On "shopping center" property, the Consultant shall not use any flashing lights or amplified sound to advertise the Store Closing Sales or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

4.      At the conclusion of the Store Closing Sales, the Consultant shall, subject to the Consulting Agreement, vacate the Stores and the Distribution Centers in broom clean condition; *provided* that Consultant may abandon any M&E not sold in the Store Closing Sales at the conclusion of the Store Closing Sales, without cost or liability of any kind to the Consultant.  The Debtors will have the option to remove the M&E at their own cost prior to the termination date.  Any abandoned M&E left in a Stores after a lease is rejected shall be deemed abandoned to the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party and without waiver of any damage claims against the Debtors.  For the avoidance of doubt, as of the Sale Termination Date, the Consultant may abandon, in place and without further responsibility or liability of any kind, any M&E.

5.      The Consultant and the Debtors may advertise each Store Closing Sale as a "store closing," "sale on everything," "everything must go," or similar themed sale, and to the extent permitted in the Approval Orders, "going out of business".  The Consultant and the Debtors may also have "countdown to closing" signs prominently displayed in a manner consistent with these Store Closing Procedures.  All signs, banners, ads and other advertising collateral, promotions, and campaigns will be approved by the Debtors in accordance with these Store Closing Procedures.

6.      The Consultant shall be permitted to utilize sign walkers, display, hanging signs, and interior banners in connection with the Sales; *provided* that such sign walkers, display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner.  The Debtors and the Consultant shall not use neon or day-glo on its sign walkers, display, hanging signs, or interior banners.  Furthermore, with respect to enclosed mall locations, no exterior signs

---

[1]      Capitalized terms used but not defined in these Store Closing Procedures have the meanings given to them in the Interim Order to which these Store Closing Procedures are attached as **Exhibit 1** or the Motion to which the Interim Order is attached as **Exhibit A**, as applicable.

or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Store Closing Procedures.  In addition, the Debtors and the Consultant shall be permitted to utilize exterior banners at (i) non-enclosed mall Stores and (ii) enclosed mall Stores to the extent the entrance to the applicable Stores does not require entry into the enclosed mall common area; *provided*, however, that such banners shall be located or hung so as to make clear that the Store Closing Sales are being conducted only at the affected Stores, and shall not be wider than the storefront of the Closing Stores.  In addition, the Debtors and the Consultant shall be permitted to utilize sign walkers in a safe and professional manner and in accordance with the terms of the Order.  Nothing contained in these Store Closing Procedures shall be construed to create or impose upon the Debtors or the Consultant any additional restrictions not contained in the applicable lease agreement.

7.    The purchasers of any Merchandise sold during the Store Closing Sales shall be permitted to remove the Merchandise through the front of the Closing Stores, or through the back or alternative shipping areas at any time.

8.    Conspicuous signs shall be posted in the cash register areas of each of the affected Stores to effect that "all sales are final."

9.    Except with respect to the hanging of exterior banners, the Consultant shall not make any alterations to the storefront or exterior walls of any Stores, except as authorized by the applicable lease.

10.    The Consultant shall not make any alterations to interior or exterior Stores lighting, except as authorized by the applicable lease.  No property of the landlord of a Stores shall be removed or sold during the Store Closing Sales.  The hanging of exterior banners or in-store signage and banners shall not constitute an alteration to a Stores.

11.    The Consultant shall keep Stores premises and surrounding areas clean and orderly consistent with present practices.

12.    Subject to the provisions of the Consulting Agreement, the Consultant shall have the right to use and sell all M&E.  The Consultant may advertise the sale of the M&E in a manner consistent with these guidelines.  The purchasers of any M&E sold during the Store Closing Sales shall be permitted to remove the M&E either through the back or alternative shipping areas at any time, or through other areas after applicable business hours, *provided, however* that the foregoing shall not apply to *de minimis* M&E sales made whereby the item can be carried out of the Closing Stores in a shopping bag.  For the avoidance of doubt, as of the Sale Termination Date, the Consultant and the Debtors may abandon, in place and without further responsibility, any M&E.

13.    At the conclusion of the Store Closing Sales at each Stores, pending assumption or rejection of applicable leases, the landlords of the Closing Stores shall have reasonable access to the Closing Stores' premises as set forth in the applicable leases.  The Debtors, the Consultant, and their representatives and agents shall continue to have access to the Closing Stores as provided for in the Consulting Agreement.

14.    The rights of landlords against the Debtors for any damages to a Stores shall be reserved in accordance with the provisions of the applicable lease.

15.     If and to the extent that the landlord of any Stores affected hereby contends that the Debtors or the Consultant is in breach of or default under these Store Closing Procedures, such landlord shall email or deliver written notice by overnight delivery to the Debtors and the Consultant as follows:

<u>If to the Debtors:</u>

Art Van Furniture, LLC
6500 14 Mile Road
Warren, MI 48092
Attention: Michael Zambricki

with copies (which shall not constitute notice) to:

Benesch, Friedlander, Coplan & Aronoff LLP
222 Delaware Avenue, Suite 801
Wilmington, Delaware 19801
Attn: Gregory Werkheiser & Michael J. Barrie

-and-

Montgomery McCracken Walker & Rhoads LLP
437 Madison Avenue
New York, NY 10022
Attn. Maura I. Russell

If the parties are unable to resolve the dispute, either the landlord or the Debtors shall have the right to schedule a hearing before the Court on no less than five (5) days' written notice to the other party, served by email or overnight delivery.

# **<u>EXHIBIT 2</u>**

**Art Van Furniture**
Results - Store Count Strategy by Location

| 169 # Stores included in liquidation | Yes |
|---|---|
| # stores closed prior to sale commencement | No |

**Financial Information in ($000's)**

| | | | Location Information | | | | | | | | | | | Location Space Details | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Store # | Store Name | Original Store Name | Include In Liquidation | Direct Marketing Area | Store Type | Company Affiliation | Gross Sq. Ft. | Selling Sq. Ft. | Lease Beginning Date | Lease Expires | Months Remaining | SLB Property | Landlord | Master Lease | Address |
| 1 | Bel Air, MD (1) | BEL AIR (#65) | Yes | Baltimore | Standard | WLF | 74,400 | 62,000 | 5/15/2015 | 12/31/2025 | 70 | No | CAMPUS HILLS MARYLAND ASSOCIATES, L.P. | None | 2400 E Churchville Rd, Bel Air, MD, 21015, USA |
| 2 | Pasadena, MD (2) | PASADENA (#61) | Yes | Baltimore | Standard | WLF | 61,646 | 54,000 | 5/15/2015 | 8/31/2025 | 66 | No | ARUNDEL PROPERTY INVESTORS LP | None | 8038 Ritchie Hwy, Pasadena, MD, 21122, USA |
| 3 | Westminster, MD (3) | WESTMINSTER (#64) | Yes | Baltimore | Standard | WLF | 40,550 | 38,000 | 5/15/2015 | 8/31/2021 | 18 | No | WESTMINSTER GATEWAY, LLC | None | 1030 Baltimore Blvd Suite 110, Westminster, MD, 21157, USA |
| 4 | Towson, MD (4) | TOWSON (#63) | Yes | Baltimore | Standard | WLF | 54,000 | 46,000 | 5/15/2015 | 4/30/2038 | 218 | Yes | STORE CAPITAL | Store Master Funding XII, LLC | 1530 E Joppa Rd, Towson, MD, 21286, USA |
| 5 | Catonsville, MD (5) | CATONSVILLE (#62) | Yes | Baltimore | Standard | WLF | 115,300 | 40,000 | 5/15/2015 | 8/31/2025 | 66 | No | JMB JOINT VENTURE | None | 6415 Baltimore National Pike, Catonsville, MD, 21228, USA |
| 6 | Downers Grove, IL (6) | DOWNERS GROVE AVF & SSI (#199) | Yes | Chicago | Flagship | AVF | 100,000 | 92,428 | 8/1/2015 | 3/31/2037 | 205 | Yes | STORE CAPITAL | STORE SPE AVF I 2017-1, LLC | 1021 BUTTERFIELD RD, DOWNERS GROVE, IL, 60515, USA |
| 7 | Merrillville, IN (7) | MERRILLVILLE AVF | Yes | Chicago | Standard | AVF | 50,000 | 43,130 | 8/24/2013 | 2/28/2023 | 36 | No | ACADIA MERRILLVILLE REALTY, L.P. | None | 1600 E 80TH AVE, MERRILLVILLE, IN, 46410, USA |
| 8 | Naperville, IL (8) | NAPERVILLE AVF | Yes | Chicago | Standard | AVF | 62,000 | 52,753 | 6/18/2015 | 8/31/2025 | 66 | No | BRIXMOR HERITAGE SQUARE, LLC | None | 404 SOUTH ROUTE 59, NAPERVILLE, IL, 60540, USA |
| 9 | Bedford Park, IL (9) | BEDFORD PK AVF | Yes | Chicago | Standard | AVF | 84,505 | 71,590 | 10/26/2013 | 4/30/2024 | 50 | No | SPIRIT SPE LOAN PORTFOLIO 2013-3, LLC | None | 7200 S CICERO AVE, BEDFORD PARK, IL, 60638, USA |
| 10 | Elston, IL (10) | ELSTON AVE AVF | Yes | Chicago | Standard | AVF | 48,000 | 40,660 | 10/26/2013 | 4/30/2024 | 50 | No | Fartman Group | None | 2606 ELSTON AVE, CHICAGO, IL, 60647, USA |
| 11 | Batavia, IL (11) | BATAVIA AVF | Yes | Chicago | Standard | AVF | 42,500 | 37,055 | 9/14/2013 | 1/31/2024 | 47 | No | PARAGON BATAVIA, LLC | None | 165 N RANDALL RD, BATAVIA, IL, 60510, USA |
| 12 | Orland Park, IL (12) | ORLAND PARK AVF | Yes | Chicago | Standard | AVF | 65,523 | 53,329 | 7/13/2013 | 5/31/2024 | 51 | No | 55th & S. Kedzie, LLC | None | 15080 S LA GRANGE RD, ORLAND PARK, IL, 60462, USA |
| 13 | Algonquin, IL (13) | ALGONQUIN AVF | Yes | Chicago | Standard | AVF | 48,397 | 41,272 | 3/31/2016 | 7/31/2025 | 65 | No | c/o Mid America Asset Management, Inc. | None | 1500 S RANDALL ROAD, ALGONQUIN, IL, 60102, USA |
| 14 | Kildeer, IL (14) | KILDEER AVF | Yes | Chicago | Standard | AVF | 40,628 | 34,534 | 10/4/2017 | 9/30/2027 | 91 | No | Kildeer Village Square, LLC | None | 20393 N RAND RD, KILDEER, IL, 60074, USA |
| 15 | Glendale Heights, IL (15) | GLENDALE HEIGHTS AVF | Yes | Chicago | Standard | AVF | 60,820 | 37,044 | 2/26/2016 | 3/31/2026 | 73 | No | 125 W. Army Trail Road LLC | None | 125 ARMY TRAIL ROAD, GLENDALE HEIGHTS, IL, 60139, USA |
| 16 | Deerfield, IL (16) | DEERFIELD AVF | Yes | Chicago | Standard | AVF | 41,966 | 35,671 | 12/13/2017 | 2/29/2028 | 96 | No | Gateway Fairview, Inc. | None | 120 S. WAUKEGAN, DEERFIELD, IL, 60015, USA |
| 17 | Schaumburg, IL (17) | SCHAUMBURG AVF & SSI (#303) | Yes | Chicago | Flagship | AVF | 71,400 | 61,990 | 10/29/2016 | 3/31/2037 | 205 | Yes | STORE CAPITAL | Store Master Funding XII, LLC | 1293 E HIGGINS RD, SCHAUMBURG, IL, 60173, USA |
| 18 | Joliet, IL (18) | JOLIET PS | Yes | Chicago | Sleep | APS | 3,116 | 2,884 | 12/26/2017 | 12/31/2027 | 94 | No | GW Fidelity PH, LLC | None | 2901 PLAINFIELD, JOLIET, IL, 60435, USA |
| 19 | Burbank, IL (19) | BURBANK PS | Yes | Chicago | Sleep | APS | 3,994 | 3,476 | 3/21/2015 | 3/31/2025 | 61 | No | WM 73 RE, LLC | None | 7712 CICERO AVENUE, BURBANK, IL, 60459, USA |
| 20 | Woodridge, IL (20) | WOODRIDGE AVF | Yes | Chicago | Standard | AVF | 68,400 | 59,687 | 3/27/2014 | 10/31/2037 | 212 | Yes | STORE CAPITAL | STORE SPE AVF II 2017-2, LLC | 900 E BOUGHTON RD, WOODRIDGE, IL, 60517, USA |
| 21 | Gurnee, IL (21) | GURNEE AVF | Yes | Chicago | Standard | AVF | 34,000 | 28,900 | 6/26/2018 | 12/31/2032 | 154 | No | 3503 RP Gurnee, L.L.C. | None | 6911 W. GRAND AVE, GURNEE, IL, 60031, USA |
| 22 | Plainfield, IL (22) | PLAINFIELD PS | Yes | Chicago | Sleep | APS | 3,600 | 3,290 | 2/11/2017 | 2/28/2027 | 84 | No | NATIONAL SHOPPING PLAZAS, INC. | None | 13511 S ROUTE 59, PLAINFIELD, IL, 60544, USA |
| 23 | Willowbrook, IL (23) | WILLOWBROOK PS | Yes | Chicago | Sleep | APS | 3,834 | 3,400 | 12/3/2016 | 1/31/2027 | 83 | No | NATIONAL SHOPPING PLAZAS, INC. | None | 6938 KINGERY HIGHWAY, WILLOWBROOK, IL, 60527, USA |
| 24 | Chicago, IL (24) | ASHLAND PS | Yes | Chicago | Sleep | APS | 3,000 | 2,600 | 9/10/2016 | 9/30/2026 | 79 | No | NATIONAL SHOPPING PLAZAS, INC. | None | 2911 N. ASHLAND AVENUE, CHICAGO, IL, 60657, USA |
| 25 | Bloomingdale, IL (25) | BLOOMINGDALE PS | Yes | Chicago | Sleep | APS | 4,798 | 4,370 | 5/26/2017 | 4/30/2027 | 86 | No | Bloomingdale Square, LP | None | 398 W ARMY TRAIL RD #102, BLOOMINGDALE, IL, 60108, USA |
| 26 | Harwood Heights, IL (26) | HARWOOD HEIGHTS AVF | Yes | Chicago | Standard | AVF | 60,000 | 51,000 | 11/15/2017 | 12/31/2038 | 226 | No | DBO AVF | None | 7304 WEST LAWRENCE AVE, HARWOOD HEIGHTS, IL, 60706, USA |
| 27 | Avon, OH (27) | AVON (#45, 46 CC) | Yes | Cleveland | LVF | 77,000 | 72,380 | 7/1/2011 | 11/30/2037 | 213 | Yes | VEREIT REAL ESTATE LP | Vereit | 1801 NAGEL ROAD, AVON, OH, 44011, USA |
| 28 | North Canton, OH (28) | CANTON (#14, 25, 26 CC) | Yes | Cleveland | LVF | 65,765 | 60,199 | 3/1/2008 | 11/30/2037 | 213 | Yes | VEREIT REAL ESTATE LP | Vereit | 6229 PROMLER AVENUE NW, NORTH CANTON, OH, 44720, USA |
| 29 | Akron, OH (29) | AKRON (#23, 24 CC) | Yes | Cleveland | LVF | 69,422 | 65,257 | 10/1/2005 | 9/30/2020 | 7 | No | TABANI AKRON, LP | None | 3742 BROOKWALL DRIVE, AKRON, OH, 44333, USA |
| 30 | Middleburg Heights, OH (30) | MIDDLEBURG (#11, 31 CC) | Yes | Cleveland | LVF | 50,000 | 45,172 | 7/1/1993 | 11/30/2037 | 213 | Yes | VEREIT REAL ESTATE LP | Vereit | 16960 SPRAGUE ROAD, MIDDLEBURG HEIGHTS, OH, 44130, USA |
| 31 | Mentor, OH (31) | MENTOR (#9, 27, 28 CC) | Yes | Cleveland | LVF | 75,600 | 70,712 | 7/1/2009 | 11/30/2037 | 213 | Yes | VEREIT REAL ESTATE LP | Vereit | 7799 MENTOR AVE, MENTOR, OH, 44060, USA |
| 32 | Oakwood Village, OH (32) | OAKWOOD VILLAGE (#18, 19 CC) | Yes | Cleveland | LVF | 89,723 | 67,723 | 8/1/2002 | 11/30/2027 | 93 | No | FIRST INERNATIONAL HAWTHORNE LP | None | 23100 BROADWAY AVE, OAKWOOD VILLAGE, OH, 44146, USA |
| 33 | North Olmsted, OH (33) | NORTH OLMSTED (#12, 34 CC) | Yes | Cleveland | LVF | 46,000 | 41,270 | 8/1/1996 | 1/31/2027 | 83 | No | GLITZ AND ASSOCIATES INC | None | 23250 LORAIN ROAD, NORTH OLMSTED, OH, 44070, USA |
| 34 | Strongsville, OH (34) | STRONGSVILLE (#74) | Yes | Cleveland | LM | 5,000 | 4,400 | 11/5/2015 | 10/31/2025 | 68 | No | ECHO STRONGSVILLE LLC | None | 16105 PEARL ROAD, STRONGSVILLE, OH, 44136, USA |
| 35 | Mayfield Heights, OH (35) | MAYFIELD (#65) | Yes | Cleveland | LM | 4,620 | 4,120 | 5/1/2012 | n/a | n/a | n/a | JACK H SCHWARTS, TRUSTEE OF THE JACK H | None | 6061 Mayfield Rd, Mayfield Heights, OH, 44124, USA |
| 36 | Stow, OH (36) | STOW (#68) | Yes | Cleveland | LM | 4,160 | 3,660 | 10/25/2013 | 1/31/2024 | 47 | No | DEVILLE DEVELOPMENTS LLC | None | 1061 GRAHAM RD, STOW, OH, 44224, USA |
| 37 | Medina, OH (37) | MEDINA (#76) | Yes | Cleveland | LM | 4,500 | 4,000 | 8/25/2016 | 9/30/2021 | 19 | No | GOWE LEASING LIMITED | None | 3823 PEARL RD, MEDINA, OH, 44256, USA |
| 38 | Sandusky, OH (38) | SANDUSKY (#73) | Yes | Cleveland | LM | 5,400 | 4,900 | 11/14/2014 | 2/28/2025 | 60 | No | PLI II LTD | None | 4917 MILAN RD PLAZA, SANDUSKY, OH, 44870, USA |
| 39 | Elyria, OH (39) | ELYRIA (#72) | Yes | Cleveland | LM | 6,400 | 5,800 | 6/19/2015 | 6/30/2026 | 76 | No | ELYRIA-CHESTNUT, LLC / NICKLEPLATE REALT | None | 510 CHESTNUT COMMONS DR, ELYRIA, OH, 44035, USA |
| 40 | Solon, OH (40) | SOLON (#67) | Yes | Cleveland | LM | 3,788 | 3,288 | 2/22/2013 | 5/31/2023 | 39 | No | L & j PROPERTIES - SOLON, LLC | None | 6130 KRUSE DRIVE, SOLON, OH, 44139, USA |
| 41 | Canton, OH (41) | MASSILLON (#71) | Yes | Cleveland | Sleep | LM | 5,650 | 5,150 | 6/27/2014 | 11/30/2024 | 57 | No | PERRY TOWN CENTER, LLC | None | 5119 WEST TUSCARAWAS ST, CANTON, OH, 44708, USA |
| 42 | Polaris, OH (42) | POLARIS AVF | Yes | Columbus | Flagship | AVF | 70,000 | 59,500 | 3/16/2019 | 10/31/2037 | 212 | Yes | STORE CAPITAL | Other | 1651 GEMINI PLACE, COLUMBUS, OH, 43240, USA |
| 43 | Novi, MI (43) | NOVI AVF | Yes | Detroit | Flagship | AVF | 102,520 | 88,958 | 1/1/1985 | 2/28/2037 | 204 | Yes | BROADSTONE | BROADSTONE AVF MICHIGAN, LLC | 27775 NOVI RD, NOVI, MI, 48377, USA |
| 44 | Warren, MI (44) | TECH PLAZA AVF | Yes | Detroit | Flagship | AVF | 109,980 | 87,859 | 11/26/1982 | 2/28/2037 | 204 | Yes | LCN PARTNERS | LCN AVF WARREN (MI) LLC | 6500 E 14 MILE RD, WARREN, MI, 48092, USA |
| 45 | Shelby Township, MI (45) | LAKESIDE AVF | Yes | Detroit | Flagship | AVF | 68,104 | 72,336 | 8/14/1992 | 3/31/2037 | 205 | Yes | STORE CAPITAL | Store Master Funding XII, LLC | 14055 HALL RD, SHELBY TOWNSHIP, MI, 48315, USA |
| 46 | Canton, MI (46) | CANTON AVF | Yes | Detroit | Flagship | AVF | 69,929 | 58,740 | 1/3/2018 | 12/31/2038 | 226 | No | Agree Limited Partnership | None | 41861 FORD ROAD, CANTON, MI, 48187, USA |
| 47 | Taylor, MI (47) | TAYLOR AVF | Yes | Detroit | Flagship | AVF | 91,720 | 79,294 | 3/6/1978 | 10/31/2037 | 212 | Yes | STORE CAPITAL | STORE SPE AVF II 2017-2, LLC | 22035 EUREKA RD, TAYLOR, MI, 48180, USA |
| 48 | Ann Arbor, MI (48) | ANN ARBOR AVF | Yes | Detroit | Flagship | AVF | 70,000 | 60,912 | 7/2/1993 | 2/28/2037 | 204 | Yes | STONEBRIAR | SCF RC Funding III, LLC | 425 E EISENHOWER PKWY, ANN ARBOR, MI, 48108, USA |
| 49 | Southfield, MI (49) | SOUTHFIELD AVF | Yes | Detroit | Standard | AVF | 64,584 | 52,094 | 11/1/2000 | 7/31/2023 | 41 | No | GREENFIELD PLAZA, INC. | None | 22555 GREENFIELD RD, SOUTHFIELD, MI, 48075, USA |
| 50 | Royal Oak, MI (50) | WOODWARD AVF & SSI (#174) | Yes | Detroit | Standard | AVF | 56,520 | 54,943 | 11/14/1997 | 10/31/2037 | 212 | Yes | STORE CAPITAL | STORE SPE AVF II 2017-2, LLC | 32301 WOODWARD AVE, ROYAL OAK, MI, 48073, USA |
| 51 | Clinton Twp, MI (51) | CLINTON AVF | Yes | Detroit | Flagship | AVF | 69,720 | 60,128 | 1/1/1988 | 2/28/2037 | 204 | Yes | BROADSTONE | BROADSTONE AVF MICHIGAN, LLC | 33801 S GRATIOT AVE, CLINTON TWP, MI, 48035, USA |
| 52 | Chesterfield, MI (52) | CHESTERFIELD AVF | Yes | Detroit | Standard | AVF | 73,152 | 58,029 | 12/26/2003 | 2/28/2037 | 204 | Yes | BROADSTONE | BROADSTONE AVF MICHIGAN, LLC | 50400 GRATIOT AVE, CHESTERFIELD, MI, 48051, USA |
| 53 | Howell, MI (53) | HOWELL AVF | Yes | Detroit | Standard | AVF | 51,075 | 45,721 | 11/1/1997 | 3/31/2037 | 205 | Yes | STORE CAPITAL | Store Master Funding XII, LLC | 4101 E GRAND RIVER AVE, HOWELL, MI, 48843, USA |
| 54 | Waterford, MI (54) | DRAYTON PLAINS AVF | Yes | Detroit | Standard | AVF | 53,188 | 57,435 | 6/30/1971 | 3/31/2037 | 205 | Yes | STORE CAPITAL | Store Master Funding XII, LLC | 5053 DIXIE HWY, WATERFORD, MI, 48329, USA |
| 55 | Dearborn, MI (55) | DEARBORN AVF | Yes | Detroit | Standard | AVF | 57,633 | 58,164 | 7/11/1997 | 2/28/2037 | 204 | Yes | CAPITAL PARTNERS, LLC | None | 15701 MARKET DR, DEARBORN, MI, 48126, USA |
| 56 | Auburn Hills, MI (56) | GREAT LAKES AVF | Yes | Detroit | Standard | AVF | 43,319 | 37,296 | 1/1/2009 | 1/31/2021 | 11 | No | Taubman Auburn Hills Associates Limited Partnership | None | 4612 BALDWIN RD, AUBURN HILLS, MI, 48326, USA |
| 57 | Port Huron, MI (57) | PORT HURON AVF | Yes | Detroit | Standard | AVF | 74,800 | 59,123 | 9/20/2002 | 3/31/2037 | 205 | Yes | STORE CAPITAL | STORE SPE AVF I 2017-1, LLC | 1234 32ND ST, PORT HURON, MI, 48060, USA |
| 58 | Rochester Hills, MI (58) | ROCHESTER AVF | Yes | Detroit | Standard | AVF | 48,621 | 41,328 | 5/16/2019 | 11/30/2035 | 188 | No | Rochester XM Partners, LLC | None | 1032 SOUTH ROCHESTER ROAD, ROCHESTER, MI, 48307, USA |
| 59 | Livonia, MI (59) | 7 MILE AVF | Yes | Detroit | Standard | AVF | 61,752 | 53,705 | 1/1/1985 | 3/31/2037 | 205 | Yes | STORE CAPITAL | Store Master Funding XII, LLC | 29905 7 MILE RD, LIVONIA, MI, 48152, USA |
| 60 | Warren, MI (60) | SCHOENHERR AVF | Yes | Detroit | Standard | AVF | 38,795 | 41,890 | 6/2/2009 | 11/1/2024 | 57 | No | ZANE PROPERTIES, LLC | None | 13855 E 12 MILE RD, WARREN, MI, 48088, USA |
| 61 | Westland, MI (61) | WESTLAND AVF | Yes | Detroit | Standard | AVF | 79,773 | 70,723 | 4/14/1987 | 2/28/2037 | 204 | Yes | STONEBRIAR | SCF RC Funding III, LLC | 8300 N WAYNE RD, WESTLAND, MI, 48185, USA |
| 62 | Ann Arbor, MI (62) | ANN ARBOR W PS | Yes | Detroit | Sleep | APS | 4,600 | 4,079 | 11/1/2015 | 8/31/2025 | 66 | No | WARRIOR Village 2 SPE, LLC | None | 2570 JACKSON AVE, ANN ARBOR, MI, 48103, USA |
| 63 | Rochester, MI (63) | ROCHESTER PS | Yes | Detroit | Sleep | APS | 5,000 | 4,474 | 6/1/2017 | 5/31/2027 | 86 | No | McKnight South East, LP c/o McKnight Property Mgmt | None | 1856 S ROCHESTER RD, ROCHESTER, MI, 48307, USA |
| 64 | Grosse Pointe Woods, MI (64) | GROSSE POINTE SOUTH PS | Yes | Detroit | Sleep | APS | 3,500 | 3,688 | 2/1/2016 | 2/29/2024 | 47 | No | Ryan Eisenbeis Enterprises Inc c/o Colliers | None | 19387 MACK AVENUE, GROSSE POINTE, MI, 48236, USA |
| 65 | Warren, MI (65) | WARREN E PS | Yes | Detroit | Sleep | APS | 5,072 | 4,507 | 5/12/2011 | 6/30/2022 | 28 | No | GROSSMAN ASSOCIATES | None | 6400 14 MILE RD, WARREN, MI, 48092, USA |
| 66 | Sterling Heights, MI (66) | STERLING HTS PS | Yes | Detroit | Sleep | APS | 4,020 | 3,600 | 6/1/2018 | 5/31/2028 | 99 | No | MARKET SQUARE, LLC | None | 44975 HAYES RD, STERLING HTS, MI, 48313, USA |
| 67 | Washington, MI (67) | WASHINGTON PS | Yes | Detroit | Sleep | APS | 4,300 | 3,425 | 5/16/2011 | 7/31/2021 | 16 | No | AF Jonna Development & Management Company, LLC | None | 7887 26 MILE RD, WASHINGTON, MI, 48094, USA |
| 68 | Southgate, MI (68) | SOUTHGATE PS | Yes | Detroit | Sleep | APS | 4,117 | 3,600 | 8/1/2017 | 7/31/2027 | 88 | No | BRANDON ASSOCIATES SOUTHGATE L.L.C. | None | 15060 DIX TOLEDO RD, SOUTHGATE, MI, 48195, USA |
| 69 | Canton, MI (69) | CANTON PS | Yes | Detroit | Sleep | APS | 4,600 | 4,280 | 7/1/2009 | 6/30/2024 | 52 | No | Ford Road Development, LLC | None | 41913 FORD RD, CANTON, MI, 48187, USA |
| 70 | Monroe, MI (70) | MONROE PS | Yes | Detroit | Sleep | APS | 4,000 | 3,593 | 7/30/2016 | 7/31/2026 | 88 | No | RLP Monroe, LLC | None | 1570 N TELEGRAPH RD, MONROE, MI, 48162, USA |
| 71 | Troy, MI (71) | TROY N PS | Yes | Detroit | Sleep | APS | 4,500 | 4,059 | 5/1/2014 | 7/31/2021 | 17 | No | Universal Mall Properties, LLC | None | 1735 BIG BEAVER RD, TROY, MI, 48083, USA |
| 72 | West Bloomfield, MI (72) | W BLOOMFIELD PS | Yes | Detroit | Sleep | APS | 4,000 | 3,696 | 2/15/2013 | 3/31/2028 | 94 | No | West Bloomfield Plaza Associates | None | 6470 ORCHARD LAKE RD, WEST BLOOMFIELD, MI, 48322, USA |
| 73 | Chesterfield, MI (73) | CHESTERFIELD PS | Yes | Detroit | Sleep | APS | 4,000 | 3,572 | 11/18/2016 | 11/30/2026 | 93 | No | CHESTERFIELD COMMONS ASSOCIATES, LLC | None | 50938 GRATIOT AVE, CHESTERFIELD, MI, 48051, USA |
| 74 | Woodhaven, MI (74) | WOODHAVEN PS | Yes | Detroit | Sleep | APS | 3,966 | 3,565 | 10/17/2016 | 10/31/2026 | 91 | No | THE MIDWEST LIMITED HAVEN WOODHAVEN | None | 19410 WEST ROAD, WOODHAVEN, MI, 48183, USA |
| 75 | Brighton, MI (75) | BRIGHTON E PS | Yes | Detroit | Sleep | APS | 4,248 | 3,218 | 5/16/2011 | 9/30/2021 | 18 | No | BRIGHTON GATE COMMONS, LLC | None | 9990 E GRAND RIVER AVE, BRIGHTON, MI, 48116, USA |
| 76 | Bloomfield Twp, MI (76) | BLOOMFIELD TWP PS | Yes | Detroit | Sleep | APS | 3,602 | 3,139 | 5/20/2014 | 5/31/2021 | 14 | No | BIRMINGHAM PROPERTIES L.L.C. | None | 6485 TELEGRAPH ROAD, BLOOMFIELD TWP, MI, 48301, USA |
| 77 | New Hudson, MI (77) | NEW HUDSON PS | Yes | Detroit | Sleep | APS | 4,106 | 3,758 | 4/16/2012 | 10/31/2022 | 32 | No | Milford Road Plaza, LLC | None | 30821 MILFORD RD, NEW HUDSON, MI, 48165, USA |
| 78 | Lapeer, MI (78) | LAPEER PS | Yes | Detroit | Sleep | APS | 4,500 | 4,011 | 5/15/2016 | 5/31/2026 | 87 | No | KNM REALTY, LLC | None | 1400 IMLAY CITY RD, LAPEER, MI, 48446, USA |
| 79 | Royal Oak, MI (79) | ROYAL OAK PS | Yes | Detroit | Sleep | APS | 4,960 | 4,956 | 5/16/2011 | 5/31/2022 | 15 | No | 4400 GROESBECK ASSOC, LLC | None | 32500 WOODWARD AVE, ROYAL OAK, MI, 48073, USA |
| 80 | White Lake, MI (80) | WHITE LAKE PS | Yes | Detroit | Sleep | APS | 4,200 | 3,865 | 4/15/2016 | 4/30/2026 | 86 | No | White Lake Shops, LLC | None | 9451 HIGHLAND RD, WHITE LAKE, MI, 48386, USA |
| 81 | Troy, MI (81) | TROY S PS | Yes | Detroit | Sleep | APS | 4,875 | 3,464 | 5/16/2011 | 8/31/2021 | 17 | No | ROSE STREET BIG BEAVER LLC | None | 272 JOHN R, TROY, MI, 48083, USA |
| 82 | Waterford, MI (82) | WATERFORD PS | Yes | Detroit | Sleep | APS | 6,008 | 5,453 | 6/1/2016 | 6/30/2026 | 88 | No | TIMBERLINE PROPERTIES L.L.C. | None | 5900 HIGHLAND RD, WATERFORD, MI, 48327, USA |
| 83 | Novi, MI (83) | NOVI PS | No | Detroit | Sleep | APS | 2,000 | | 2/11/2011 | 5/31/2021 | n/a | No | Ramco 22 Commons LLC | None | 43420 W OAKS DR, NOVI, MI, 48377, USA |
| 84 | Brighton, MI (84) | BRIGHTON W PS | Yes | Detroit | Sleep | APS | 4,200 | 3,784 | 4/1/2015 | 10/31/2021 | 20 | No | CROSS GRAND PLAZA, L.L.C. | None | 8709 W GRAND RIVER AVE, BRIGHTON, MI, 48116, USA |
| 85 | Ann Arbor, MI (85) | ANN ARBOR E PS | Yes | Detroit | Sleep | APS | 4,274 | 3,062 | 5/16/2011 | 5/31/2021 | 14 | No | 3550 WASHTENAW, ANN ARBOR, MI, 48104, USA | None | 3550 WASHTENAW, ANN ARBOR, MI, 48104, USA |
| 86 | Lake Orion, MI (86) | LAKE ORION PS | Yes | Detroit | Sleep | APS | 4,200 | 3,775 | 4/1/2014 | 10/31/2024 | 20 | No | SHOPS AT BRIGHTON | None | 610 N LAPEER RD, LAKE ORION, MI, 48362, USA |
| 87 | Ferndale, MI (87) | FERNDALE PS | Yes | Detroit | Sleep | APS | 6,553 | 5,587 | 10/1/2015 | 9/30/2025 | 76 | No | GILLETT RETAIL PARTNERS, LLC | None | 23100 WOODWARD AVE, FERNDALE, MI, 48220, USA |
| 88 | Utica, MI (88) | UTICA E PS | Yes | Detroit | Sleep | APS | 4,350 | 3,887 | 9/1/2017 | 9/30/2027 | 91 | No | SHELBY CORNERS, LLC | None | 45040 NORTHPOINTE BLVD, UTICA, MI, 48315, USA |
| 89 | Howell, MI (89) | HOWELL PS | Yes | Detroit | Sleep | APS | 4,000 | 4,000 | 4/1/2014 | 5/31/2024 | 51 | No | COUNTRYSIDE PLAZA, LLC | None | 2690 E GRAND RIVER AVE, HOWELL, MI, 48843, USA |
| 90 | Shelby Twp, MI (90) | SHELBY PS | Yes | Detroit | Sleep | APS | 5,400 | 4,973 | 4/30/2015 | 4/30/2025 | 62 | No | 23 MILE ROAD PROPERTIES, LLC | None | 50591 SHELBY PARKWAY, SHELBY TWP, MI, 48315, USA |
| 91 | Plymouth, MI (91) | PLYMOUTH PS | Yes | Detroit | Sleep | APS | 5,000 | 4,570 | 9/1/2016 | 8/31/2026 | 89 | No | Plymouth Retail LLC | None | 14920 SHELDON RD, PLYMOUTH, MI, 48170, USA |
| 92 | Roseville, MI (92) | ROSEVILLE PS | Yes | Detroit | Sleep | APS | 4,200 | 3,800 | 6/15/2016 | 6/30/2026 | 88 | No | Roseville 12-Gratiot SC, LLC | None | 31851 GRATIOT AVE, ROSEVILLE, MI, 48066, USA |
| 93 | Taylor, MI (93) | TAYLOR PS | Yes | Detroit | Sleep | APS | 5,820 | 5,214 | 12/1/2015 | 12/31/2025 | 70 | No | VAN LEEUWEN HOLDING, LLC | None | 23471 EUREKA RD, TAYLOR, MI, 48180, USA |
| 94 | Dearborn, MI (94) | DEARBORN PS | Yes | Detroit | Sleep | APS | 5,400 | 4,800 | 11/1/2015 | 11/30/2025 | 68 | No | AMD Realty, LLC | None | 5300 MERCURY DR, DEARBORN, MI, 48126, USA |
| 95 | Ypsilanti, MI (95) | YPSILANTI PS | Yes | Detroit | Sleep | APS | 3,500 | 3,612 | 6/16/2011 | 8/31/2021 | 17 | No | WALMART REAL ESTATE BUSINESS TRUST | None | 2750 WASHTENAW AVE, YPSILANTI, MI, 48197, USA |
| 96 | Livonia, MI (96) | LIVONIA PS | Yes | Detroit | Sleep | APS | 4,312 | 3,120 | 5/16/2011 | 8/31/2021 | 16 | No | Middlebelt-Plymouth Venture LLC | None | 29611 PLYMOUTH RD, LIVONIA, MI, 48150, USA |
| 97 | Southfield, MI (97) | SOUTHFIELD PS | Yes | Detroit | Sleep | APS | 4,000 | 3,653 | 9/1/2015 | 9/30/2025 | 76 | No | TELEGRAPH PLAZA LLC | None | 28470 TELEGRAPH RD, SOUTHFIELD, MI, 48034, USA |
| 98 | Bloomfield Hills, MI (98) | BLOOMFIELD AVF | Yes | Detroit | Standard | AVF | 46,388 | 39,863 | 1/1/2005 | 3/31/2037 | 205 | Yes | STONEBRIAR | None | 2300 TELEGRAPH RD, BLOOMFIELD HILLS, MI, 48302, USA |
| 99 | Saginaw, MI (99) | SAGINAW AVF | Yes | Flint-Saginaw-Bay City | Standard | AVF | 77,827 | 46,540 | 6/30/1984 | 3/31/2037 | 205 | Yes | STORE CAPITAL | Store Master Funding XII, LLC | 2680 TITTABAWASSEE RD, SAGINAW, MI, 48604, USA |
| 100 | Flint, MI (100) | FLINT AVF | Yes | Flint-Saginaw-Bay City | Standard | AVF | 46,177 | 48,827 | 6/30/1977 | 2/28/2037 | 204 | Yes | BROADSTONE | BROADSTONE AVF MICHIGAN, LLC | 4577 MILLER RD, FLINT, MI, 48507, USA |
| 101 | Burton, MI (101) | BURTON AVF | Yes | Flint-Saginaw-Bay City | Standard | AVF | 48,194 | 41,965 | 11/1/1994 | 2/28/2037 | 204 | Yes | STORE CAPITAL | STORE SPE AVF I 2017-1, LLC | 4122 E COURT ST, BURTON, MI, 48509, USA |
| 102 | Bay City, MI (102) | BAY CITY AVF | Yes | Flint-Saginaw-Bay City | Standard | AVF | 34,578 | 36,957 | 4/1/1974 | 3/31/2037 | 205 | Yes | STORE CAPITAL | Store Master Funding XII, LLC | 4150 WILDER RD, BAY CITY, MI, 48706, USA |
| 103 | Grand Blanc, MI (103) | GRAND BLANC PS | Yes | Flint-Saginaw-Bay City | Sleep | APS | 4,000 | 3,400 | 7/1/2018 | 6/30/2028 | 100 | No | Grand Blanc Plaza Associates | None | 12765 S SAGINAW ST, GRAND BLANC, MI, 48439, USA |
| 104 | Flint Township, MI (104) | FLINT W PS | Yes | Flint-Saginaw-Bay City | Sleep | APS | 4,000 | 3,600 | 6/15/2017 | 6/30/2027 | 87 | No | Jonna Management Group, LLC | None | 4002 MILLER ROAD, FLINT, MI, 48507, USA |
| 105 | Saginaw, MI (105) | SAGINAW PS | Yes | Flint-Saginaw-Bay City | Sleep | APS | 4,847 | 4,368 | 1/1/2018 | 12/31/2027 | 94 | No | MJS Investments, LLC | None | 4605 BAY RD #20, SAGINAW, MI, 48604, USA |
| 106 | Fort Wayne, IN (106) | FORT WAYNE AVF | Yes | Fort Wayne | Standard | AVF | 45,982 | 38,667 | 12/10/2015 | 12/31/2035 | 190 | No | Sterdor Development Company | None | 311 E COLISEUM BLVD, FORT WAYNE, IN, 46805, USA |
| 107 | Grand Rapids, MI (107) | GRAND RAPIDS AVF | Yes | Grand Rapids-Kalamazoo-Battle Creek | Standard | AVF | 79,200 | 64,650 | 1/1/1985 | 2/28/2037 | 204 | Yes | BROADSTONE | BROADSTONE AVF MICHIGAN, LLC | 4375 28TH ST SE, GRAND RAPIDS, MI, 49512, USA |
| 108 | Portage, MI (108) | PORTAGE AVF | Yes | Grand Rapids-Kalamazoo-Battle Creek | Standard | AVF | 73,990 | 63,986 | 5/1/1989 | 3/31/2037 | 205 | Yes | STORE CAPITAL | Store Master Funding XII, LLC | 5901 S WESTNEDGE AVE, PORTAGE, MI, 49002, USA |
| 109 | Muskegon, MI (109) | MUSKEGON AVF | Yes | Grand Rapids-Kalamazoo-Battle Creek | Standard | AVF | 39,590 | 34,069 | 1/1/1993 | 2/28/2037 | 204 | Yes | BROADSTONE | BROADSTONE AVF MICHIGAN, LLC | 5400 HARVEY ST, MUSKEGON, MI, 49444, USA |
| 110 | Grandville, MI (110) | GRANDVILLE AVF | Yes | Grand Rapids-Kalamazoo-Battle Creek | Standard | AVF | 28,000 | 24,910 | 11/1/2006 | 2/28/2037 | 204 | Yes | BROADSTONE | BROADSTONE AVF MICHIGAN, LLC | 4625 WILSON AVE SW, GRANDVILLE, MI, 49418, USA |
| 111 | Battle Creek, MI (111) | BATTLE CREEK AVF | Yes | Grand Rapids-Kalamazoo-Battle Creek | Standard | AVF | 50,000 | 43,411 | 6/15/1999 | 3/31/2037 | 205 | Yes | STORE CAPITAL | STORE SPE AVF I 2017-1, LLC | 6100 B DR N, BATTLE CREEK, MI, 49014, USA |

| Store # | Original Store Name | Store Name | Include in Liquidation | Marketing Area | Type | Format | Sq Ft 1 | Sq Ft 2 | Beginning Date | End Date | Term | Property | Landlord | Master Lease | Address |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 113 | Comstock Park, MI (113) | ALPINE AVF | Yes | Grand Rapids-Kalamazoo-Battle Creek | Flagship | AVF | 111,077 | 63,525 | 11/29/1999 | 2/28/2037 | 204 | Yes | LCN PARTNERS | LCN AVF WARREN (MI) LLC | 4273 ALPINE AVE NW STE B, COMSTOCK PARK, MI, 49321, USA |
| 114 | Holland, MI (114) | HOLLAND AVF | Yes | Grand Rapids-Kalamazoo-Battle Creek | Standard | AVF | 39,950 | 38,443 | 8/18/1993 | 2/28/2037 | 204 | Yes | STONEBRIAR | SCF RC Funding III, LLC | 12610 FELCH ST STE 100, HOLLAND, MI, 49424, USA |
| 115 | Muskegon, MI (115) | MUSKEGON PS | Yes | Grand Rapids-Kalamazoo-Battle Creek | Standard | APS | 4,000 | 3,519 | 5/28/2016 | 10/31/2021 | 20 | No | SVH PROPERTIES, LLC | None | 1664 E STERNBERG RD, MUSKEGON, MI, 49444, USA |
| 116 | Portage, MI (116) | PORTAGE PS | Yes | Grand Rapids-Kalamazoo-Battle Creek | Sleep | APS | 4,018 | 3,632 | 5/24/2014 | 5/31/2024 | 51 | No | NATIONAL SHOPPING PLAZAS, INC. | None | 6947 SOUTH WESTNEDGE AVE, PORTAGE, MI, 49002, USA |
| 117 | Grandville, MI (117) | GRANDVILLE PS | Yes | Grand Rapids-Kalamazoo-Battle Creek | Sleep | APS | 4,229 | 3,773 | 3/1/2015 | 5/31/2024 | 51 | No | CWD Grandville 1, LLC | None | 4540 IVANREST AVE SW, GRANDVILLE, MI, 49418, USA |
| 118 | Kalamazoo, MI (118) | KALAMAZOO PS | Yes | Grand Rapids-Kalamazoo-Battle Creek | Sleep | APS | 3,481 | 3,186 | 3/8/2013 | 3/31/2023 | 37 | No | Kalamazoo Mall LLC | None | 338 N DRAKE RD, KALAMAZOO, MI, 49009, USA |
| 119 | Grand Rapids, MI (119) | GRAND RAPIDS PS | Yes | Grand Rapids-Kalamazoo-Battle Creek | Sleep | APS | 5,562 | 4,903 | 10/15/2014 | 2/28/2037 | 204 | Yes | Broadstone | BROADSTONE AVF MICHIGAN, LLC | 3500 28TH ST SE, GRAND RAPIDS, MI, 49512, USA |
| 120 | Grand Rapids, MI (120) | GRAND RAPIDS N PS | Yes | Grand Rapids-Kalamazoo-Battle Creek | Sleep | APS | 4,000 | 3,687 | 9/12/2016 | 8/31/2026 | 78 | No | EAST BELTLINE DEVELOPMENT, LLC | None | 2036 EAST BELTLINE AVE, GRAND RAPIDS, MI, 49525, USA |
| 121 | Comstock Park, MI (121) | ALPINE N PS | Yes | Grand Rapids-Kalamazoo-Battle Creek | Sleep | APS | 4,300 | 3,797 | 5/16/2011 | 10/31/2022 | 32 | No | ALPINE VALLEY, L.L.C. | None | 4174 ALPINE AVE NW STE A, COMSTOCK PARK, MI, 49321, USA |
| 122 | Lancaster, PA (122) | LANCASTER (#46) | Yes | Harrisburg | Standard | WLF | 60,000 | 52,500 | 9/1/2002 | 11/30/2037 | 213 | Yes | VEREIT REAL ESTATE LP | Vereit | 2040 Bennett Avenue, Lancaster, PA, 17601, USA |
| 123 | York, PA (123) | YORK (#44) | Yes | Harrisburg | Standard | WLF | 60,000 | 52,500 | 1/1/2002 | 11/30/2037 | 213 | Yes | VEREIT REAL ESTATE LP | COLE AVF PORTFOLIO | 380 North Northern Way, York, PA, 17402, USA |
| 124 | Harrisburg, PA (124) | HARRISBURG (#42) | Yes | Harrisburg | Standard | WLF | 61,900 | 51,900 | 1/19/1999 | 11/30/2037 | 213 | Yes | STORE CAPITAL | Store Master Funding XII, LLC | 4661 Linde Road, Harrisburg, PA, 17111, USA |
| 125 | Hanover, PA (125) | HANOVER (#50) | Yes | Harrisburg | Standard | WLF | 34,600 | 30,600 | 5/19/2008 | 11/30/2037 | 213 | Yes | VEREIT REAL ESTATE LP | Vereit | 371 Eisenhower Drive, Hanover, PA, 17331, USA |
| 126 | Mechanicsburg, PA (126) | MECHANICSBURG (#43) | Yes | Harrisburg | Standard | WLF | 45,567 | 42,567 | 8/22/2010 | 7/31/2020 | 5 | No | LESTER ASSOCIATES | None | 75 Gateway Drive, Mechanicsburg, PA, 17055, USA |
| 127 | Chambersburg, PA (127) | CHAMBERSBURG (#61) | Yes | Harrisburg | Sleep | WLF | 27,262 | 25,762 | 1/1/2009 | 12/27/2038 | 226 | No | BRITM, LLC | None | 480 Gateway Avenue, Chambersburg, PA, 17201, USA |
| 128 | Altoona, PA (128) | ALTOONA (#28) | Yes | Johnstown | Standard | WLF | 53,136 | 43,176 | 1/1/1978 | 4/30/2038 | 218 | Yes | VEREIT REAL ESTATE LP | Store Master Funding XII, LLC | 4 Sellers DriveAltoona, Altoona, PA, 16601, USA |
| 129 | Johnstown, PA (129) | JOHNSTOWN (#32) | Yes | Johnstown | Standard | WLF | 40,258 | 37,258 | 9/1/1995 | 11/30/2037 | 213 | Yes | VEREIT REAL ESTATE LP | Vereit | 1130 Scalp Avenue, Johnstown, PA, 15904, USA |
| 130 | State College, PA (130) | STATE COLLEGE (#40) | Yes | Johnstown | Standard | WLF | 50,000 | 51,402 | 5/1/2007 | 11/21/2037 | 213 | No | PATTON CENTER ASSOCIATES LP | None | 138 Valley Vista Drive, State College, PA, 16803, USA |
| 131 | Lansing, MI (131) | LANSING AVF | Yes | Lansing | Flagship | AVF | 71,581 | 77,379 | 10/25/2000 | 2/28/2037 | 204 | Yes | BROADSTONE | BROADSTONE AVF MICHIGAN, LLC | 8748 W SAGINAW HWY, LANSING, MI, 48917, USA |
| 132 | Jackson, MI (132) | JACKSON AVF | Yes | Lansing | Standard | AVF | 33,214 | 30,012 | 6/9/1992 | 7/31/2024 | 53 | No | ARGYLE ACRES MALL, LLC | None | 950 N WEST AVE, JACKSON, MI, 49202, USA |
| 133 | E Lansing, MI (133) | OKEMOS PS | Yes | Lansing | Sleep | APS | 5,855 | 4,457 | 5/16/2011 | 8/31/2023 | 42 | No | RICHARD AND MICHELLE BROWN | None | 2660 E. GRAND RIVER, EAST LANSING, MI, 48823, USA |
| 134 | East Lansing, MI (134) | EAST LANSING PS | Yes | Lansing | Sleep | APS | 3,974 | 3,495 | 7/16/2016 | 7/31/2021 | 17 | No | River Castle Development, LLC | None | 1595 LAKE LANSING ROAD, EAST LANSING, MI, 48823, USA |
| 135 | Lansing, MI (135) | LANSING PS | Yes | Lansing | Sleep | APS | 4,590 | 3,689 | 5/16/2011 | 12/31/2021 | 22 | No | John Doezema Real Estate | None | 6007 W SAGINAW HWY, LANSING, MI, 48917, USA |
| 136 | Wexford, PA (136) | WEXFORD (#4, 29, 30 CC) | Yes | Pittsburgh | Standard | LVF | 53,000 | 48,823 | 10/1/2009 | 2/28/2038 | 216 | No | STORE CAPITAL | Store Master Funding XII, LLC | 10688 PERRY HIGHWAY, WEXFORD, PA, 15090, USA |
| 137 | Monroeville, PA (137) | MONROEVILLE (#3 CC, 20, 21 CC) | Yes | Pittsburgh | Standard | LVF | 67,564 | 67,545 | 7/1/2004 | 11/30/2037 | 213 | Yes | VEREIT REAL ESTATE LP | COLE AVF PORTFOLIO / LEVIN FAMILY P... | 124 LEVIN WAY, MONROEVILLE, PA, 15146, USA |
| 138 | Mcmurray, PA (138) | SOUTH HILLS (#2, 32 CC) | Yes | Pittsburgh | Standard | LVF | 74,600 | 67,964 | 7/1/2000 | 11/30/2037 | 213 | Yes | STORE CAPITAL | Store Master Funding XII, LLC | 3664 WASHINGTON ROAD, MCMURRAY, PA, 15317, USA |
| 139 | Greensburg, PA (139) | GREENSBURG (#40, 41 CC) | Yes | Pittsburgh | Standard | LVF | 55,314 | 50,637 | 8/1/2011 | 10/31/2021 | 20 | No | CBL/WESTMORELAND, LP | None | 5280 ROUTE 30, GREENSBURG, PA, 15601, USA |
| 140 | Pittsburgh, PA (140) | THE POINTE (#15, 35 CC) | Yes | Pittsburgh | Standard | LVF | 68,730 | 61,886 | 7/1/1999 | 11/30/2037 | 213 | No | STORE CAPITAL | Store Master Funding XII, LLC | 400 CHALVET DRIVE, PITTSBURGH, PA, 15275, USA |
| 141 | Pleasant Hills, PA (141) | CURRY HOLLOW (#47, 48 CC) | Yes | Pittsburgh | Standard | LVF | 90,500 | 87,500 | 7/1/1991 | 9/30/2026 | 79 | No | PAUL PROPERTY MANAGEMENT, LP | None | 292 CURRY HOLLOW RD, PLEASANT HILLS, PA, 15236, USA |
| 142 | Mount Pleasant, PA (142) | MOUNT PLEASANT (#1, 22 CC) | Yes | Pittsburgh | Standard | LVF | 34,500 | 30,766 | 1/1/1924 | 4/30/2038 | 218 | No | STORE CAPITAL | Store Master Funding XII, LLC | 600 MAIN STREET, MT. PLEASANT, PA, 15666, USA |
| 143 | Cranberry Township, PA (143) | CRANBERRY (#60) | Yes | Pittsburgh | Sleep | LM | 5,000 | 4,500 | 5/1/2012 | 4/30/2022 | 26 | No | WALNUT CAPITAL PARTNERS - CRANBERRY SC | None | 20012 ROUTE 19, CRANBERRY, PA, 16066, USA |
| 144 | Mount Lebanon, PA (144) | MOUNT LEBANON (#36) | Yes | Pittsburgh | Sleep | LM | 3,990 | 3,490 | 6/28/2013 | 7/31/2023 | 41 | No | RELIANCE PITTSBURGH LLC | None | 1600 WASHINGTON RD, MT LEBANON, PA, 15228, USA |
| 145 | Butler, PA (145) | BUTLER (#75) | Yes | Pittsburgh | Sleep | LM | 5,010 | 5,010 | 11/18/2016 | 2/28/2027 | 84 | No | BUTLER SITEWORK ASSOCIATES LLC | None | 620 Butler Crossing Suite 5, BUTLER, PA, 16001, USA |
| 146 | Pittsburgh, PA (146) | SHADYSIDE (#70) | Yes | Pittsburgh | Sleep | LM | 7,145 | 6,645 | 10/10/2014 | 4/30/2024 | 50 | No | MCKNIGHT SOUTH EAST LP | None | 5438 BAUM BLVD, PITTSBURGH, PA, 15232, USA |
| 147 | Washington, PA (147) | WASHINGTON (#63) | Yes | Pittsburgh | Sleep | LM | 7,800 | 7,300 | 3/29/2013 | 4/30/2023 | 38 | No | WASHINGTON MALL - JCP ASSOCIATES, LTD | None | 56 TRINITY POINT DR, WASHINGTON, PA, 15301, USA |
| 148 | Pittsburgh, PA (148) | FOX CHAPEL (#61) | Yes | Pittsburgh | Sleep | LM | 4,000 | 3,500 | 5/1/2012 | 4/30/2022 | 26 | No | WATERWORKS PHASE II | None | 956 FREEPORT ROAD, PITTSBURGH, PA, 15238, USA |
| 149 | Pittsburgh, PA (149) | ROBINSON (#64) | Yes | Pittsburgh | Sleep | LM | 5,593 | 5,093 | 8/30/2013 | 12/31/2023 | 46 | No | MCROBIN LTC AND MOSITES FAMILY GST TRUS... | None | 6528 STEUBENVILLE PIKE, PITTSBURGH, PA, 15205, USA |
| 150 | Indiana, PA (150) | INDIANA (#33) | Yes | Pittsburgh | Sleep | LM | 4,800 | 4,300 | 6/7/2013 | 9/30/2023 | 43 | No | LIBBY REGENCY ASSOCIATES LP | None | 1570 OAKLAND AVE, INDIANA, PA, 15701, USA |
| 151 | Monroeville, PA (151) | MONROEVILLE (#62) | Yes | Pittsburgh | Sleep | LM | 4,319 | 4,000 | 6/1/2012 | 6/30/2022 | 28 | No | CE-MONROEVILLE 3820 WM PENN LP | None | 3820 WILLIAM PENN HIGHWAY, MONROEVILLE, PA, 15146, USA |
| 152 | St. Louis, MO (152) | AFFTON | Yes | St. Louis | Standard | AVF | 41,352 | 32,759 | 1/17/2018 | 12/31/2023 | 46 | No | South Lindbergh Property LLC | None | 5711 S LINDBERGH BLVD, SAINT LOUIS, MO, 63123, USA |
| 153 | O'fallon, IL (153) | FAIRVIEW | Yes | St. Louis | Standard | AVF | 39,676 | 32,627 | 1/17/2018 | 12/31/2023 | 46 | No | Rohman-O'Fallon LLC | None | 1776 WEST US 50, O FALLON, IL, 62269, USA |
| 154 | O'fallon, MO (154) | O FALLON | Yes | St. Louis | Standard | AVF | 40,884 | 31,674 | 1/16/2018 | 12/31/2023 | 46 | No | O'Fallon-Missouri Properties, LLC | None | 2101 E TERRA LN, O FALLON, MO, 63366, USA |
| 155 | Bridgeton, MO (155) | BRIDGETON | Yes | St. Louis | Standard | AVF | 45,314 | 35,975 | 1/17/2018 | 12/31/2023 | 46 | No | JS Westfic, LLC | None | 925 NORTHWEST PLAZA, SAINT ANN, MO, 63074, USA |
| 156 | Richmond Heights, MO (156) | RICHMOND (DESIGN STUDIO) | Yes | St. Louis | Design | AVF | 3,670 | 3,343 | 11/15/2017 | 7/31/2024 | 53 | No | Hanley LM Properties, LLC | None | 1516 S HANLEY RD, SAINT LOUIS, MO, 63144, USA |
| 157 | Holland, OH (157) | TOLEDO AVF | Yes | Toledo | Flagship | AVF | 91,000 | 80,731 | 8/27/2013 | 8/31/2028 | 205 | Yes | REED HOLDING-TALMADGE, LLC | None | 1301 E MALL DR, HOLLAND, OH, 43528, USA |
| 158 | Toledo, OH (158) | TOLEDO PS | Yes | Toledo | Sleep | APS | 4,500 | 4,045 | 5/24/2013 | 11/30/2023 | 45 | No | REED HOLDING-TALMADGE, LLC | None | 4600 TALMADGE RD, TOLEDO, OH, 43623, USA |
| 159 | Holland, OH (159) | HOLLAND PS (TOLEDO) | Yes | Toledo | Sleep | APS | 3,485 | 3,135 | 7/13/2018 | 8/31/2028 | 102 | No | Kieo Properties BG, LLC | None | 6760 AIRPORT HWY SUITE B, HOLLAND, OH, 43528, USA |
| 160 | Perrysburg Township, OH (160) | PERRYSBURGH (FREEMONT) | Yes | Toledo | Sleep | APS | 3,500 | n/a | 2/8/2019 | 4/30/2029 | 110 | No | 10411 Fremont Pike, LLC | None | 10411 FREMONT PIKE, PERRYSBURG, OH, 43551, USA |
| 161 | Traverse City, MI (161) | TRAVERSE CITY AVF | Yes | Traverse City-Cadillac | Standard | AVF | 63,120 | 49,903 | 11/21/1998 | 2/28/2037 | 204 | Yes | BROADSTONE | BROADSTONE AVF MICHIGAN, LLC | 1775 OAK HOLLOW DR, TRAVERSE CITY, MI, 49686, USA |
| 162 | Petoskey, MI (162) | PETOSKEY AVF | Yes | Traverse City-Cadillac | Standard | AVF | 48,115 | 49,765 | 10/5/2002 | 10/31/2037 | 212 | Yes | STORE CAPITAL | STORE SPE AVF III 2017-2, LLC | 1619 ANDERSON ROAD, PETOSKEY, MI, 49770, USA |
| 163 | Traverse City, MI (163) | TRAVERSE CITY PS | Yes | Traverse City-Cadillac | Sleep | APS | 4,509 | 4,104 | 6/30/2016 | 6/30/2026 | 76 | No | ANCHOR MANISTEE | None | 3675 N US 31 S SUITE B, TRAVERSE CITY, MI, 49684, USA |
| 164 | Frederick, MD (164) | FREDERICK (#7) | Yes | Washington DC | Standard | WLF | 60,000 | 52,500 | 7/1/2003 | 1/31/2024 | 47 | No | Frederick-BELCO, LLP | None | 1215 West Patrick Street, Frederick, MD, 21702, USA |
| 165 | Hagerstown, MD (165) | HAGERSTOWN (#9) | Yes | Washington DC | Standard | WLF | 66,829 | 60,000 | 2/1/2004 | 5/23/2029 | 111 | No | OUTLET VILLAGE OF HAGERSTOWN LP | None | 900 Premium Outlets Boulevard, Hagerstown, MD, 21740, USA |
| 166 | Leesburg, VA (166) | LEESBURG (#48) | Yes | Washington DC | Standard | WLF | 46,030 | 41,430 | 8/24/2012 | 11/30/2037 | 213 | Yes | STORE CAPITAL | Store Master Funding XII, LLC | 131 Fort Evans Road NE, Leesburg, VA, 20176, USA |
| 167 | Frederick, MD (167) | FREDERICK OUTLET (#52) | No | Washington DC | Standard | WLF | 40,484 | 30,484 | 9/17/2014 | 1/31/2020 | n/a | No | RAVID FREDERICK LLC | None | 5830 Ballenger Creek Pike, Frederick, MD, 21703, USA |
| 168 | Saint Clairsville, OH (168) | SAINT CLAIRSVILLE (#50) | Yes | Wheeling | Standard | LVF | 24,908 | 21,000 | 9/29/2017 | 10/31/2022 | 32 | No | OHIO VALLEY MALL, CO | None | 67661 MALL RING RD, SAINT CLAIRSVILLE, OH, 43950, USA |
| 169 | Boardman, OH (169) | BOARDMAN (#52) | Yes | Youngstown | Standard | LVF | 52,000 | n/a | 8/1/2018 | 8/31/2028 | 102 | No | A&R Properties | None | 300 BOARDMAN-POLAND ROAD, BOARDMAN, OH, 44512, USA |
| 170 | Hermitage, PA (170) | HERMITAGE (#54) | Yes | Youngstown | Standard | LVF | 42,000 | n/a | 9/21/2018 | 9/30/2023 | 43 | No | A&R Properties | None | 1340 N. Hermitage Road Suite 1 Route 18, Hermitage, PA, 16148, USA |
| 171 | Niles, OH (171) | NILES (#56) | Yes | Youngstown | Standard | LVF | 52,000 | n/a | 10/31/2018 | 10/31/2028 | 104 | No | A&R Properties | None | 836 YOUNGSTOWN-WARREN RD, NILES, OH, 44446, USA |
| Totals | | | | | | | 5,879,611 | 4,932,964 | | | | | | | |

# EXHIBIT 3

## CONSULTING AND MARKETING SERVICES AGREEMENT

This Consulting and Marketing Services Agreement, dated as of March 4, 2020 (this "Agreement"), is made by and between **AVF HOLDING COMPANY, INC.**, and **AVF HOLDING COMPANY, INC.** d/b/a Art Van Furniture, Art Van Pure Sleep, Levin Furniture, Levin Mattress and Wolf Furniture (collectively, the "Company"), and a contractual joint venture comprised of **HILCO MERCHANT RESOURCES, LLC, HILCO IP SERVICES, LLC D/B/A HILCO STREAMBANK, HILCO REAL ESTATE, LLC, AND HILCO RECEIVABLES, LLC**, each a Delaware limited liability company (collectively, "Hilco"), and **GORDON BROTHERS RETAIL PARTNERS, LLC, DJM REALTY SERVICES, LLC D/B/A GORDON BROTHERS REAL ESTATE, GORDON BROTHERS COMMERCIAL & INDUSTRIAL, LLC AND GORDON BROTHERS BRANDS, LLC**, each, a Delaware limited liability company (collectively, "GBG", and together with Hilco, the "Consultant").

## R E C I T A L S:

WHEREAS, the Company is (i) the owner or lessee of certain real property identified on Exhibit A attached hereto (each a "Property", and collectively, the "Properties"), (ii) machinery, equipment, furniture, fixtures and other personal property located at, in, or in the vicinity of the Properties (the "M&E"), (iii) Merchandise (defined below) inventory located at, in, or the vicinity of the Properties, (iv) to the extent the Company exercise the Receivables Option (defined below), outstanding trade accounts receivable for which the Company has the exclusive right to collect, except for those accounts receivable that are currently the subject of litigation (the "Receivables") and (v) intangible assets, including, without limitation, trademarks, trade names, copyrights, domain names, software and source code, URLs, telephone numbers, customer data including customer names, addresses, email addresses, transaction history and other demographic data captured and maintained by the Company, vendor data, franchise agreements, "IP" addresses, and license agreements, logos and assorted artwork used in marketing materials and other contractual rights relating to the foregoing (collectively, the "Intellectual Property"; and collectively with the M&E, Inventory, Receivables (to the extent the Company exercises the Receivables Option), and Properties, the "Assets");

WHEREAS, the Company desires to retain Consultant to provide certain consulting, marketing and related asset disposition services to the Company with respect to the Assets, including where the context makes appropriate assisting the Company in the conduct of certain "Store Closing Sale", "Total Inventory Blowout", "Everything Must Go", "Everything On Sale" or similar themed liquidation sales (the "Sale") at the Company's retail store locations identified on Exhibit A-1 attached hereto (each individually, a "Store", and collectively, the "Stores"); and (ii) provide assistance to the Company in fulfilling and delivering On-Hand Fulfillment Merchandise and Back-Order Fulfillment Merchandise on account of goods sold by the Company prior to the Sale Commencement Date (defined  below), in each case as more fully described herein; and

WHEREAS, Consultant is in the business of marketing, selling and otherwise realizing maximum value for assets similar to those comprising the Assets on behalf of its clients, and subject to the terms and conditions set forth herein, including, without limitation, authorization and approval of the Bankruptcy Court (defined below), is willing to serve as the Company's

exclusive agent and consultant to perform the services described herein upon the terms and conditions, and in the manner set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

<div align="center">**AGREEMENT**</div>

**1.    <u>Definitions</u>**

For the purposes of this Agreement, the terms listed below shall have the respective meanings indicated:

"<u>ABL Agent</u>" means shall mean Wells Fargo Bank, National Association, as administrative agent and collateral agent for itself and the other ABL Lenders.

"<u>ABL Lenders</u>" means those lenders under that certain ABL Credit Agreement, dated as of  March 1, 2017 (as amended, restated, supplemented or otherwise modified from time to time and in effect on the date hereof), by and among, among others, the Company, such lenders and the ABL Agent.

"<u>Advertising Expenses</u>"  means the costs and expenses incurred in connection with advertising the Sale, including, without limitation, direct media costs, agency fees and production costs) and Signage Costs.

"<u>Approval Orders</u>" shall mean collectively the Interim Order and Final Order.

"<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the District of Delaware.

"<u>Cash Collateral Budget</u>" means that certain debtor-in-possession and/or cash collateral Cash Collateral Budget to be approved under the Interim Cash Collateral Order.

"<u>Central Services</u>" shall mean those central administrative services provided by Company that are necessary or appropriate for the conduct and support of the Sale, including, but not limited to, use and/or access to Company's: (i) inventory control system, (ii) payroll system, (iii) accounting system, (iv) office facilities (including use of reasonably sized offices located at Company's central office facility to effect the Sale), (v) central administrative services and personnel to process and perform sales audit, banking, accounting, sale and expense reconciliation, and other normal course administrative services customarily provided to or for the benefit of operating the Stores, (vi) no fewer than one weekly email messages targeted to the customers of the Stores and Company's e-commerce site, which email messages will be designed by Consultant (and approved by Company) and sent by Company or Company's existing service provider and (vii) such other central office services reasonably necessary or appropriate for the Sale.

"<u>Consultant Incurred Expenses</u>" shall mean the aggregate amount of (i) Supervisor Costs; (ii) reasonable and documented travel expenses for members of Consultant's executive team in an

<div align="center">2</div>

aggregate amount not to exceed $20,000; (iii) Consultant's reasonable and documented general legal fees incurred in connection with the negotiation of this Agreement in an aggregate amount not to exceed $35,000; provided, however, in addition to, and not as part of, such capped amount, Company shall also reimburse Consultant for its reasonable and documented legal fees and expenses incurred in connection with negotiating any "side letters" with landlords of the Stores; and (iv) Advertising Expenses, in each case in as defined herein and in accordance with the Sale Budget (as defined below).

"Final Order" shall mean a final order of the Bankruptcy Court granting final approval, inter alia, for the Company's (a) assumption of this Agreement, (b) retention of the Consultant to perform the consulting, marketing and sale-related services described herein, (c) conduct of the Sale, and (d) granting such other and further relief as is appropriate in order to effectuate the terms and provisions of this Agreement.

"Gross Sales" shall mean the sum of all proceeds derived from the sale of Merchandise during the Sale Term (excluding amounts paid for sales, excise, or gross receipts taxes); plus (i) all proceeds of fire, flood or other insurance covering the Merchandise, and (ii) the amount of any gift cards or merchandise credits redeemed at the Stores during the Sale Term; provided, however, that it is expressly understood and agreed, that Gross Sales shall not include sales made by or on behalf of Company prior to the Sale Commencement Date or after the Sale Termination Date, regardless of when the applicable Merchandise is delivered to or picked up by the customer(s).

"Interim Order" shall mean an order of the Bankruptcy Court granting interim approval, inter alia, for the Company's (a) assumption of this Agreement, (b) retention of the Consultant to perform the consulting, marketing and sale-related services described herein, (c) conduct of the Sale, and (d) granting such other and further relief as is appropriate in order to effectuate the terms and provisions of this Agreement.

"Leases" shall mean all leases, occupancy agreements, reciprocal easement, license, or similar agreements pursuant to which Company has the right to occupy or utilize the Stores.

"Lender Agents" mean collectively, the ABL Agent and the Term Loan Agent.

"Merchandise" shall mean all inventory that is owned by Company and actually sold in the Stores during the Sale Term, the aggregate amount of which shall be determined using the gross rings inventory taking method, which may include inventory that (i) is located at, or in transit to, the Store as of the Sale Commencement Date with respect to each such Store; and/or (ii) is located at the Company's distribution center in the United States during the Sale Term; provided, however, the Company and the Consultant agree that "Merchandise" shall expressly exclude: (1) goods which belong to sublessees, licensees or concessionaires of Company; (2) goods held by the Company on memo or consignment, unless otherwise agreed to by Company (in consultation with the Lender Agents) and Consultant; (3) M&E; and (4) Additional Agent Goods.

"Merchandise File" shall mean the "Store and DC Master Inventory Report Final 020320.xlsx" and "Levin Store & DC Master Inventory as of 2.3.20.xlslx" files together with all subsequent files specifically delivered by Merchant to Agent on or prior to the Sale Commencement Date to be used in connection with this Agreement.

"Sale Commencement Date" shall mean a date determined by the Company in consultation with the Consultant, but in no event later than March 6, 2020.

"Sale Expenses" shall mean all expenses incurred in connection with and attributable to the Sale.

"Sale Guidelines" shall mean the Sale Guidelines annexed hereto as Exhibit C which shall serve as the guidelines under which the Sale shall be conducted.

"Sale Term" shall mean the period of time beginning with the Sale Commencement Date and ending on the Sale Termination Date.

"Sale Termination Date" shall mean a date determined by the Consultant in consultation with the Company, but in no event later than May 31, 2020; provided, however, absent the prior consent of the Company, the Sale shall conclude in the Stores no later than April 30, 2020.

"Services" shall mean the services to be performed by Consultant pursuant to Section 2.2 of this Agreement.

"Signage Costs" shall mean all the interior and exterior signage used in connection with the Sale, including, without limitation, banners, A-frames, feather flags, and sign walkers, in each case to the extent approved by Consultant.

"Store Employees" shall mean those employees of the Company retained by Company to conduct the Sale following consultation with Consultant.

"Supervisor(s)" shall mean the individual(s) whom Consultant shall engage to provide Services in the Stores to Company in connection with the Sale in accordance with Section 2.3 below.

"Supervisor Costs" shall mean the following customary costs and expenses incurred by Consultant with respect to Supervisors in accordance with the Sale Budget,: (i) the weekly compensation paid during the Sale Term per Supervisor (which in each case represents Consultant's actual costs); (ii) reasonable and documented travel expenses of the Supervisors between Stores during the term of the Sale, and to and from the Sale locations at the commencement and conclusion of the Sale (and reasonable travel to and from the Supervisors' homes during the Sale Term as is typical and customary in the liquidation industry given the nature of the Merchandise, the length of the Sale, and the actual results of the Sale); and (iii) reasonable Supervisor deferred compensation.

"Term Loan Agent" shall mean Virtus Group, LP, as administrative agent and collateral agent for itself and the other Term Loan Lenders.

"Term Loan Lenders" means those lenders under that certain Credit Agreement, dated as of March 1, 2017 (as amended, restated, supplemented or otherwise modified from time to time and in effect on the date hereof), by and among, among others, the Company, such lenders and the Term Loan Agent.

**2.** **Consulting Services**

2.1    Company hereby retains Consultant, and Consultant hereby agrees to serve as the exclusive independent consultant to the Company in connection with the conduct of the Sale as set forth herein.  With respect to the Sale, Consultant shall serve as the sole and exclusive consultant to the Company relative to the conduct of the Sale at the Stores, and the sale or other disposition of the other Assets, in each case throughout the Sale Term.

2.2    Conduct of the Sale; Merchandise Services.  On the terms and conditions set forth herein, commencing as of the Sale Commencement Date, the Consultant shall provide the Company with the following Services with respect to the sale or other disposition of the Merchandise as part of the Sale:

(a)    provision of approximately forty six (46) qualified Supervisors to supervise and assist Company in its conduct of the Sale as further described in Section 2.3 below, including such lead, regional, financial, and field Supervisors as needed (after consultation with Company and Lender Agents).  All Supervisors shall have industry-specific experience conducting "Store Closing", "Total Inventory Blowout", "Everything on Sale", "Everything Must Go" or similar themed liquidation sales, and shall act in a professional manner; provided, that from time to time during the Sale Term the Company and the Consultant shall meet and confer to evaluate the level and number of Supervisors being utilized in connection with the conduct of the Sale, and the Company and the Consultant (in consultation with the Lender Agents) shall jointly determine any reasonable adjustments thereto; provided, further, that, once identified, Supervisors cannot be removed from the project absent Company consent;

(b)    provide the Company with such oversight, supervision and guidance as may be appropriate or requested by the Company with respect to the conduct of the Sale and the liquidation and disposal of the Merchandise and M&E as may be required from time to time to maximize the recovery for such Assets;

(c)    recommend and implement appropriate point of purchase, point of sale and external advertising to effectively sell the Merchandise during the Sale Term, consistent with the theme of the Sale and the Sale Guidelines, it being understood that the Sale will be advertised as a "Total Inventory Blowout", "Store Closing", "Everything Must Go", "Everything on Sale" or similar sale themes throughout the term of the Sale; provided, that Consultant shall not utilize "Going Out of Business" sale theme absent (i) prior consultation with and approval by the Company and (ii) as may be set forth in the Approval Orders;

(d)    advise the Company as to appropriate discounting of Merchandise, appropriate staffing levels for the Stores, and appropriate deferred compensation and incentive programs for Store Employees;

(e)    advise the Company in creating the optimal display of Merchandise in the Stores in an effort to maximize the recovery for such Assets;

(f)    assist Company in the formulation and implementation of a loss prevention security program designed to protect the Merchandise from theft or other shortages;

(g)    assist Company with accounting functions for the Stores, including evaluation of sales of Merchandise by category, sales reporting and monitoring of expenses, in each case using the Company's infrastructure;

(h)    recommend and implement the transfer and balancing of Merchandise between and among the Stores to maximize results during the Sale;

(i)    participate in weekly calls with representatives of the Company and Lender Agents; and

(j)    provide such other related services deemed necessary or prudent by the Company (in consultation with the Lender Agents), and as may be mutually agreed by the Consultant and the Company under the circumstances giving rise to the Sale.

2.3    <u>M&E Services</u>.

(a)    On the terms and conditions set forth herein, commencing as of the Sale Commencement Date through the earlier of (i) the applicable Sale Termination Date for each of the Stores (or, with respect to any Distribution Center(s), the last day of available occupancy for each such center, as may be mutually agreed by the Company and the Consultant (in consultation with the Lender Agents)); (ii) April 30, 2020; or (iii) such other earlier or extended date as may be mutually agreed upon by the Company (in consultation with the Lender Agents) and the Consultant (as applicable the "<u>Asset Marketing Period</u>"), the Consultant shall provide the Company with the following Services with respect to the sale or other disposition of the M&E (the "<u>M&E Services</u>"):

(i)    Develop an advertising and marketing plan ("<u>M&E Marketing Plan</u>") for the sale or auction of, or other disposition strategy for, the M&E and in connection therewith; <u>provided</u>, that no later than March 13, 2020, the Company (in consultation with the Lender Agents) and the Consultant shall mutually agree upon a supplemental expense budget for the sale or other disposition of the M&E (the "<u>M&E Expense Budget</u>");

(ii)    Implement the M&E Marketing Plan as deemed necessary by Consultant to maximize the net recovery on the M&E;

(iii)    Prepare for the sale of the M&E, including gathering specifications and photographs for brochures;

(iv)    Make the M&E available for viewing by potential buyers on an appointment-only basis;

(v)    Sell or auction the M&E for cash to the highest bidder "as is," "where is," and in accordance with the terms of this Agreement; and

(vi)    Charge and collect on behalf of the Company from all purchasers any purchase price (inclusive of any Buyer's premium paid by the respective buyer(s)) together with all applicable taxes in connection therewith.

(b)    All proceeds collected by Consultant in connection with the M&E Services shall be either remitted directly to the Company to such account as designated by the Company (the "Company's Designated Deposit Account") by the buyer of the M&E, or, to the extent funds are remitted to the Consultant, they shall be remitted  by Consultant to the Company as part of the weekly reconciliation provided for in Section 4.2 hereof, with such amounts to be deposited into the Company's Designated Deposit Account.

2.4    Real Estate Services.

(a)    On the terms and conditions set forth herein, during the applicable Asset Marketing Period, the Consultant shall provide the Company with the following Services with respect to the sale or other disposition of the Properties (the "Real Estate Services"):

(i)    Meet with the Company to ascertain the Company's goals, objectives and financial parameters with respect to the sale or other disposition of the Properties;

(ii)    Mutually agree with the Company with respect to a strategic plan for the disposition of each Property (the "Real Estate Strategic Plan");

(iii)    In accordance with the Real Estate Strategic Plan, and in lieu of assigning a Property lease to a third party, work with the Company to secure favorable termination agreements whereby a landlord pays the Company to terminate the lease associated with each such Property; and

(iv)    Solicit interested parties for the assumption/assignment of leases associated with each Property or, where applicable, the sale of each Property, and marketing each Property for assignment/sale in accordance with the Real Estate Strategic Plan.

(b)    In connection with the performance of Real Estate Services, the Consultant agrees that the Company shall not be responsible for the payment of any expenses incurred in connection with the execution of the Real Estate Strategic Plan, except to the extent pursuant to a budget ("Real Estate Services Budget"), which Real Estate Services Budget, if any, shall be subject in all respects to the consent and approval of the Company (in consultation with the Lender Agents) prior to any associated costs or expenses are incurred by the Company or the Consultant.

(c)    All proceeds collected by Consultant in connection with the Real Estate Strategic Plan shall be either remitted directly to Company's Designated Deposit Account by the buyer/assignee of the Company's interests in the Properties, or to the extent funds are remitted to the Consultant, they shall be remitted by Consultant to the Company as part of the weekly reconciliation as part of the weekly reconciliation provided for in Section 4.2 hereof, following Consultant's receipt of such amounts, with such amounts to be deposited into the Company's Designated Deposit Account.

2.5     <u>Receivables Services</u>.  (a)  From the date of execution of this Agreement to and including March 31, 2020, the Company shall retain the exclusive option, in its sole discretion (following consultation with the Lender Agents)(the "<u>Receivables Election</u>") to direct the Consultant to perform Receivables Services (defined below).  The Company shall exercise the Receivables Election, if at all, by delivery of a written notice to the Consultant on or before the above date indicating its direction to the Consultant to commence performance of Receivables Services.  Upon the Company's exercise of the Receivables Election, the Consultant shall thereafter perform Receivables Services on the terms and conditions set forth herein, through the later of (i) expiration of the Asset Marketing Period or (ii) such later date as the Company (in consultation with the Lender Agents) and the Consultant agree (the "<u>Receivables Marketing Period</u>")

(b)     the Services with respect to the collection or other disposition of the Receivables shall include the following (collectively, the "<u>Receivables Services</u>"):

(i)     In consultation with the Company, collect, service, settle, and otherwise resolve the Receivables on the Company's behalf and in otherwise compliance with applicable law;

(ii)     Direct the obligors on the Receivables to make payment to Consultant, as the agent for the Company and the Lender Agents;

(iii)     (a) Receive cash, drafts, checks, wire transfers, credit cards, and money orders on account or in satisfaction of the Receivables; and (b) endorse and negotiate any of the foregoing received by Consultant, as the agent for the Company; and

(iv)     If the Company requests, identify and oversee third party collection attorneys to collect those Receivables Consultant is otherwise unable to collect.

(c)     In connection with the performance of Receivables Services, the Consultant agrees that the Company shall not be responsible for payment of any expenses incurred in connection with the Consultant's performance of the Receivables Services, except to the extent pursuant to a budget ("<u>Receivables Services Budget</u>"), which Receivables Services Budget, if any, shall be subject in all respects to the consent and approval of the Company (in consultation with the Lender Agents) prior to any associated costs or expenses are incurred by the Company or the Consultant.

(d)     Any amounts collected by Consultant in connection with the collection of the Receivables, shall be remitted by the Consultant to the Company as part of the weekly reconciliation as part of the weekly reconciliation provided for in <u>Section 4.2</u> hereof, following Consultant's receipt of such Proceeds, with such amounts to be deposited into the Company's Designated Deposit Account.

2.6     <u>IP Services</u>.

(a)     Through the later of (i) the expiration of the Asset Marketing Period; or (ii) such later date as the Company (in consultation with the Lender Agents) and the Consultant may

agree (the "IP Marketing Period"), the Consultant shall provide the Company with the following Services with respect to the collection or other disposition of the Company's Intellectual Property (the "IP Services"):

> (i)    Work with the Company's management and advisors to collect and secure all of the available information and data concerning the Intellectual Property;

> (ii)    In consultation with the Company, prepare marketing materials designed to advertise the availability of the Intellectual Property for sale, assignment, license, or other disposition;

> (iii)    In consultation with the Company, develop and execute a sales and marketing program designed to elicit proposals to acquire the Intellectual Property from qualified acquirers, with a view toward completing one or more sales, assignments, licenses, or other dispositions of the Intellectual Property; and

> (iv)    Assist the Company in connection with the transfer of the Intellectual Property to the acquirer(s) who offer the highest or otherwise best consideration for the Intellectual Property.

(b)    In connection with the performance of IP Services, the Consultant agrees that the Company shall not be responsible for payment of any expenses incurred in connection with the Consultant's performance of the IP Services, except to the extent pursuant to a budget ("IP Services Budget"), which IP Services Budget, if any, shall be subject in all respects to the consent and approval of the Company (in consultation with the Lender Agents) prior to any associated costs or expenses are incurred by the Company or the Consultant.

(c)    All proceeds collected by Consultant in connection with the IP Services shall be either remitted directly to Company's Designated Deposit Account by the buyer(s) of the IP Assets, or to the extent funds are remitted to the Consultant, they shall be remitted by Consultant to the Company as part of the weekly reconciliation as part of the weekly reconciliation provided for in Section 4.2 hereof, following Consultant's receipt of such amounts, with such amounts to be deposited into the Company's Designated Deposit Account

2.7    License.  (a) Solely in connection with the performance of the Services as provided herein, the Company hereby grants Consultant a non-exclusive royalty free license ("Services License") to use, including, but not limited to, in all of its advertising and promotional activities related to this Agreement, all Intellectual Property, including, without limitation, the following Company tradenames: "Art Van Furniture", "Wolf Furniture", "Levin Furniture", and/or similar derivations thereof. The Services License shall extend through the later of (i) the expiration of the Asset Marketing Period, or (ii) such later date as the Company (in consultation with the Lender Agents) and the Consultant may agree (the "License Period").

(b)    The Company hereby grants Consultant a license to allow Consultant to enter and occupy the Properties.  Specifically, Consultant shall have the right to enter and  the Properties during the applicable Asset Marketing Period solely for the purposes of performing its obligations under this Agreement, including, without limitation, taking photographs and preparing the marketing material for the Assets, and selling and overseeing the removal of the removable

Assets, without interference from any labor unions or any other third parties. The Company shall use reasonable efforts to ensure that the Consultant shall have access to and quiet enjoyment of the Properties for the applicable Asset Marketing Period. Consultant shall not be obligated to pay any rent, taxes, utilities, or other occupancy-related charges arising from or related to its access to and occupancy of the Properties during the applicable Asset Marketing Period. Subject to and limited by the Cash Collateral Budget, the Company agrees to continue to provide and pay for all utilities and other usual and customary occupancy-related costs and expenses during the course of Consultant's occupancy of the Properties. The Company agrees to maintain and bear the cost of any existing security personnel and trash removal for the Properties during the term of this Agreement. The Company acknowledges that Consultant is not an insurer of the Assets. Consultant shall have the right to abandon at the Properties any movable Assets not sold.

2.8    <u>Supervisory Personnel</u>.  (a)  In connection with the Sale, Consultant shall directly or indirectly retain and engage the Supervisors. The Supervisors are engaged by Consultant as independent contractors and are not and shall not be deemed to be employees or agents of Company in any manner whatsoever; nor do the Supervisors have any relationship with Company by virtue of this Agreement or otherwise which creates any liability or responsibility on behalf of Company for the Supervisors, except with respect to indemnification pursuant to <u>Section 7.7</u> hereof.  During the Sale Term, the Supervisors shall perform Services during normal Store operating hours and for the period of time prior to the Stores' opening and subsequent to the Stores' closing, as required in connection with the Sale, in Consultant's discretion.

(b)    In consideration of Consultant's engagement of the Supervisors, Company agrees to reimburse Consultant, as a Sale Expense, for the actual Supervisor Costs paid by Consultant for services rendered by the Supervisors during the Sale Term. Company shall reimburse Consultant for all Supervisor Costs weekly, based upon invoices or other documentation reasonably satisfactory to Company (in consultation with the Lender Agents).  Company shall not be obligated to pay Supervisor Costs and/or Supervisor deferred compensation that have not been included in, or provided for, in the Sale Budget.

2.4    <u>Title</u>.  (a)  Title to all Assets shall remain with Company at all times during the Sale Term until such Asset(s) is sold.  Although Consultant shall undertake its obligations under this Agreement in a manner designed to achieve the desired results of the Sale and to maximize the benefits to Company from the sale or other disposition of the other Assets, the Company expressly acknowledges that Consultant is not guaranteeing the results of the Sale or ensuring the recoveries to be realized by the Company from the sale or other disposition of the Assets. All sales of Assets shall be made on behalf of Company.  Consultant shall have no liability to the Company or any third party for its failure to sell any Asset(s), and shall have the right to abandon such unsold Asset(s) at the conclusion of the applicable Asset Marketing Period; <u>provided</u>, that any abandonment of any M&E in any Store(s) shall be done in a neat and orderly fashion.

(b)    the Company further agrees that responsibility for the handling of any Merchandise or other goods held by Company and located in the Properties under any consignment, sale or return, or other similar agreement shall lie exclusively with Company, and Consultant shall have no responsibility with respect thereto.

(c)    The Company and Consultant agree, and the Company hereby expressly

acknowledges, that Consultant shall not be responsible for the removal or disposition of any environmentally hazardous chemicals, solvents or substances found at or in the Assets, or obtaining or maintaining any Environmental Permits or other permits with respect thereto. The Company shall be responsible for ensuring that the Company possesses and is in compliance with all Environmental Permits that are required for the operation of the Company's businesses. As used in this Agreement, "Environmental Laws" means all federal, state and local statutes, regulations, ordinances, rules, regulations and policies, all court orders and decrees and arbitration awards, and the common law, which pertain to environmental matters or contamination of any type whatsoever; and "Environmental Permits" means licenses, permits, registrations, governmental approvals, agreements and consents which are required under or are issued pursuant to Environmental Laws. In addition to any other indemnities provided herein, the Company hereby agrees to defend, indemnify and hold Consultant harmless from any and all claims, losses, damages and liabilities (including reasonable attorney's fees and costs) of any kind whatsoever which arise from or are in connection with any hazardous chemicals, solvents or substances found at or in the Assets or any violation of any such Environmental Laws or Environmental Permits.

3.    **Sale Expenses; Consultant's Compensation**

3.1    <u>Sale Expenses</u>. (a)  The Company shall be responsible for all Sale Expenses (including without limitation, the Consultant Incurred Expenses), and Consultant shall not be responsible for any such expenses, including Consultant Incurred Expenses, except as expressly provided for in <u>Section 11</u> below.  The Company, Consultant and Lender Agents have agreed on a *pro forma* budget relating to the Sale describing in reasonable detail the projected Sale Expenses to be incurred in connection with the sale of Merchandise through the Stores  (the "<u>Sale Budget</u>"), the form and content of which Sale Budget is annexed hereto and made a part hereof as <u>Exhibit B</u>. The Sale Budget may only be modified by mutual agreement of the Company, the Consultant, and the Lender Agents. Consultant Incurred Expenses shall not exceed the aggregate amount, per expense category, of Consultant Incurred Expenses set forth in the Sale Budget without the prior written consent of the Company and Lender Agents.  Subject to the limitations of the Sale Budget, the Company shall reimburse Consultant for any reasonable and documented Consultant Incurred Expense on a weekly basis in connection with the weekly Sale reconciliation provided for in <u>Section 4</u> hereof upon presentation of invoices and statements for such expenses.

(b)    To the extent the Company, Consultant and Lender Agents agree on any separate M&E Budget, Real Estate Budget, Receivables Services Budget, and/or IP Services Budget, as the case may be, such supplemental budgets (each a "<u>Supplemental Budget</u>", and collectively the "<u>Supplemental Budgets</u>") shall be in addition to, and not in substitution of, the Sale Budget.

3.2    <u>Consultant's Compensation</u>. In consideration of the Consultant providing the consulting, marketing and asset disposition-related Services provided for herein, the Consultant shall NOT earn any fee or other compensation from the Company, other than reimbursement of all Consultant Incurred Expenses and such other Sale Expenses as may be advanced by Consultant from time to time at the request of the Company, in the course of performing Services  hereunder, in each case limited to the amounts set forth in the Sale Budget and at the times provided herein. The Company shall keep (i) a strict count of gross register receipts less applicable sales taxes, and (ii) cash reports of sales within each Store.  Register receipts shall show for each item sold the

retail price (as reflected on Company's books and records) for such item, and the markdown or other discount granted by Consultant in connection with such sale. The Company shall make all such records and reports available to Consultant and the Lender Agents during regular business hours upon reasonable notice.

3.3    Expenses Deposit. The Interim Order and/or the Interim Cash Collateral Order (defined below) shall include approval on the part of the Company to fund, and the Company shall thereafter promptly fund, to Consultant $3,353,912 (the "Expense Deposit'). The Company shall be entitled to apply the Expense Deposit to, or otherwise offset any portion of the Expense Deposit against, any weekly reimbursement or other amount owing to Consultant under this Agreement prior to the Final Settlement; provided, however, at no time prior to the Final Settlement shall the Expense Deposit be reduced below $1,000,000. Without limiting any of Consultant's other rights, Consultant may apply the Expense Deposit to any unpaid obligation owing by Company to Consultant under this Agreement. Any portion of the Expense Deposit not used to pay amounts contemplated by this Agreement shall be returned to Company (or its designee) within three (3) business days following the Final Settlement.

## 4.    **Sale Proceeds; Weekly/Final Settlement**

4.1    During the Sale, the Company shall collect all proceeds realized from the sale of Merchandise and deposit the same in deposit accounts established by Company for the deposit thereof consistent with Company's existing cash management system (which may be Company's existing Store-level deposit accounts) (the "Sale Accounts"). In addition, if in connection with the sale of any M&E hereunder the Consultant assesses or receives any "buyer's premium" or similar sale price enhancement, the Company shall be entitled to receive any such amount, and the Consultant shall remit such amount to the Company in connection with the weekly reconciliation provided for hereunder and/or any Final Settlement (defined herein). The Company shall, upon request, deliver to Consultant and Lender Agents account statements and such other information relating sale of the Assets (including the Gross Sales and the Sale Accounts) reasonably requested by Consultant or Lender Agents.

4.2    On Wednesday of each week, commencing on the first Wednesday following the Sale Commencement Date, the Company (in consultation with the Lender Agents) and the Consultant shall reconcile the results of the sales of Asset for the prior week, including, without limitation, Gross Sales, sales of Assets, Sale Expenses (including Consultant Incurred Expenses), and any other expenses that may be incurred in connection with the performance of Services that may be in conformity with any Supplemental Budget(s). The Company shall promptly pay or reimburse all amounts due to Consultant on account of Sale Expenses, including Consultant Incurred Expenses and other expenses incurred by Consultant for the previous week on account of which it is entitled to be reimbursed pursuant to the Sale Budget and/or any Supplemental Budget(s).

4.3    No later than fourteen (14) business days following the end of the Sale Term, the Company (in consultation with the Lender Agents) and the Consultant shall complete a final accounting and reconciliation of all amounts contemplated by this Agreement ("Final Settlement"), including, without limitation, the determination and payment/reimbursement of any Sale Expenses, including Consultant Incurred Expenses, and such other expenses reimbursable to

Consultant in connection with the performance of Services that may be in conformity with any Supplemental Budget(s), if any.

4.4     To the extent the Company fails to pay or reimburse the Consultant for any amount for which it is entitled to be reimbursed as and when due, the Consultant shall be entitled to set off Asset sale proceeds in its possession and/or the Expense Deposit as reimbursement for any such unreimbursed amounts as part of the weekly reconciliations under <u>Section 4.2</u> hereof and/or the Final Settlement under <u>Section 4.3</u> hereof.

## 5.     **Company Employees**

5.1     The Company and the Consultant shall cooperate to retain the employees of the Company (including the Store Employees) to be utilized to conduct the Sale at the Stores during the Sale Term, as such employees may be designated from time to time by Consultant, in its discretion.  Such employees shall remain employees of the Company, and Consultant shall have no liability to such employees (including, without limitation, all the Store Employees and any of Company's other current or former employees) of any kind or nature whatsoever, including, without limitation, with respect to severance pay, termination pay, vacation pay, pay in lieu of reasonable notice of termination, Worker Adjustment and Retraining Notification Act ("<u>WARN Act</u>") payments, or any other costs, expenses, obligations, or liabilities arising from the Company's employment  or termination of such employees prior to, during, and subsequent to the Sale Term. Other than advising Company that Consultant no longer desires to utilize the services of any employee in connection with the sale or other disposition of the Assets, including as part of the Sale, Consultant shall not have the right to change the terms of employment of any employee(s).

## 6.     **Fulfillment of Pre-Sale Customer Orders**

6.1     In addition to providing the forgoing Services, the Consultant shall use commercially reasonable efforts to assist the Company in fulfilling certain pre-Sale Commencement Date orders for which the Company has received customer deposits (collectively, the "<u>Pre-SCD Orders</u>").

(a)     <u>On-Hand Fulfillment Orders</u>. Consultant shall assist the Company in fulfilling certain Pre-SCD Orders having an aggregate retail value of approximately $22 Million (collectively, the "<u>On-Hand Fulfillment Orders</u>"), on account of which orders (i) the Company has received customer deposits in the aggregate amount of $18 Million (collectively, the "<u>On-Hand Customer Deposits</u>") and (ii) with respect to which all of the goods necessary to fulfill such orders are on-hand either at the Company's Distribution Centers or the Stores (collectively, the "<u>On-Hand Fulfillment Merchandise</u>").  As soon as reasonably practicable after the Sale Commencement Date, the Consultant shall assist the Company in earmarking the On-Hand Fulfillment Merchandise (and, to the extent necessary segregated by the Company) in order to fulfill and complete the On-Hand Fulfillment Orders.  Consultant shall advise the Company in the development of efficient methods aimed at fulfilling the On-Hand Fulfillment Orders, and the Company and the Consultant shall use commercially reasonable efforts to deliver the On-Hand Fulfillment Merchandise as promptly as practicable, giving due consideration to the Company's existing distribution/fulfillment capabilities. Any usual and customary costs and expenses incurred in connection with the fulfillment of any On-Hand Fulfillment Orders, including, but not limited to, labor, sales

commissions and delivery (collectively, the "<u>On-Hand Fulfillment Processing Expenses</u>"), shall be borne exclusively by the Company, and the Consultant shall not be responsible for any such costs or expenses.  Any funds received from customers on account of the On-Hand Fulfillment Orders, whether received prior to or after the Sale Commencement Date (including, without limitation, any On-Hand Customer Deposits), shall be retained by and/or remitted to the Company.  To the extent any such funds are received from the customer in connection with the delivery of such On-Hand Fulfillment Goods, those funds shall be delivered by the Consultant to the Company on a weekly basis as part of the weekly reconciliation contemplated by <u>Section 4.2</u> hereunder.  Subject to <u>Section 7.5</u> hereof, the On-Hand Fulfillment Merchandise shall be excluded from the definition of Merchandise hereunder; <u>provided</u>, that any proceeds realized by the Company upon fulfillment and completion of an On-Hand Fulfillment Order(s) in excess of the applicable On-Hand Customer Deposit shall constitute Gross Proceeds hereunder.

(b)    <u>Back-Order Fulfillment Orders</u>.  Following the Sale Commencement Date, Consultant shall also assist the Company in evaluating the status certain Pre-SCD Orders (collectively, the "<u>Back-Order Fulfillment Orders</u>"), on account of which orders (i) the Company has received customer deposits (collectively, the "<u>Back-Order Customer Deposits</u>") and (ii) with respect to which the goods necessary to fulfill such orders are <u>not</u> on-hand either at the Company's Distribution Centers or the Stores (collectively, the "<u>Back-Order Fulfillment Merchandise</u>").  To the extent that a Back-Order Fulfillment Order(s) can be filled by the Company within a reasonable time after the Sale Commencement Date, the Company and the Consultant shall work together to implement a protocol for fulfillment of such order(s).  To the extent that the Company is unable to fulfill a Back-Order Fulfillment, such Back-Order Fulfillment Order shall be cancelled by the Company, and the Company and the Consultant shall offer the affected customer the option of either (i) a merchandise credit in the amount of such customer's respective Back-Order Customer Deposit (the "<u>Cancelled Back-Order Merchandise Credit</u>"), which Cancelled Back-Order Merchandise Credit must be used by the affected customer no later than April 15, 2020; or (ii) filing a claim in the Company's bankruptcy case for the full amount of such customer's Back-Order Customer Deposit.

(c)    If a customer cancels a Pre-SCD Order, or refuses to accept completion/delivery of either On-Hand Fulfillment Merchandise or a Back-Order Fulfillment Order (where the goods become available), the subject the On-Hand Fulfillment Merchandise, Back-Order Fulfillment Merchandise, as the case may be, attributable to such cancelled Pre-SCD Orders, shall thereupon constitute Merchandise and be included in the Sale, and the affected customer can file a claim in the bankruptcy case for the full amount of such customer's deposit.

(d)    During the Sale Term, the Company shall provide, and continue to provide through the Sale Term, Consultant with all reports reasonably requested by Consultant with respect to the status of all Pre-SCD Orders.

7.    <u>**Affirmative Duties Of Company**</u>

7.1    The Company shall be solely liable for, and shall pay when due (except as provided in this <u>Section 7.1</u>) the following: (i) all Store-level operating expenses, all Sale Expenses (including, but not limited to, Consultant Incurred Expenses), Central Service expenses, any expenses provided for in any Supplemental Budget(s), and all other Sale-related expenses that are

necessary to conduct, or are incurred in the conduct of, the Sale or Company's businesses, including, without limitation, all taxes, costs, expenses, accounts payable and other liabilities relating to the Sale, the Properties, Store Employees, any other agents and representatives of Company, and/or Company's businesses.  For the avoidance of doubt, unless otherwise agreed to by Company and Lender Agents in writing, the Company shall not be responsible for, and shall have no obligation to pay or reimburse, any Consultant Incurred Expenses or other expenses in excess of the amounts set forth in the Sale Budget or any Supplemental Budget(s).

7.2    The Company shall collect all sales, excise, or gross receipts taxes. The Company shall be solely responsible for preparing and processing of all reporting forms, certificates, reports and other documentation required in connection with the payment of all applicable taxes (including, but not limited to, sales taxes collected as part of the Sale) to the appropriate taxing authorities; and Company shall pay all collected sales taxes when due in accordance with applicable law.  The Consultant shall provide all assistance reasonably required or requested by the Company in connection with the preparation and processing of any such reporting forms, certificates, reports and other documentation required in connection with the payment of all applicable taxes (including, but not limited to, sales taxes collected as part of the Sale) to the appropriate taxing authorities.

7.3    Without limiting any other term or provision of this Agreement, during the Sale Term, Company shall provide Consultant, with (i) Central Services; (ii) employees at the Stores necessary or appropriate to implement and conduct the Sale, and (iii) subject to lease expirations, peaceful use and occupancy of, and reasonable access (including reasonable before and after hours access and normal utilities/phone service) to, the Stores and Company's corporate offices and Distribution Centers for the purpose of preparing for, conducting, and completing the Sale as contemplated hereby; provided, however, any incremental cost or expense to the Company in connection with the foregoing that is solely attributable to the Additional Consultant Goods shall reimbursed to the Company by the Consultant.  In furtherance of the foregoing, the Company shall use reasonable efforts to (i) cause the Company's employees, including Store Employees, to cooperate with Consultant and the Supervisors; (ii) execute all agreements determined by the Company and Consultant to be necessary or desirable for the operation of the Stores during the Sale; and (iii) arrange for the ordinary maintenance of all point-of-sale equipment required for the Stores.

7.4    During the period between the Sale Commencement Date and April 15, 2020, the Company and the Consultant agree that gift cards and merchandise credits, including any Cancelled Back-Order Merchandise Credit shall be honored at the Stores in accordance with store-level operation procedures to be mutually agreed upon between the Company, the Consultant, and the Lender Agents. The Company and Consultant further agree that no gift cards shall be sold from the Stores during the Sale Term.

7.5    During the first seven (7) days following the Sale Commencement Date, the Company agrees that returns of inventory sold prior to the Sale Commencement Date and either delivered to customers prior to or after the Sale Commencement Date ("Returned Merchandise") shall be accepted in a manner consistent with Company's customary practices and policies in effect on the Sale Commencement Date; provided however, no pricing adjustments, or returns of inventory sold prior to the Sale Commencement Date followed by the Customer's attempt to

15

repurchase the item (or item of the same sku) at the discounted price shall be accepted or honored during the Sale Term.  All customer requests for cash refunds or merchandise credits in respect of any Returned Merchandise shall be processed exclusively through Company's point-of-sale system. All Returned Merchandise, to the extent it is not defective, shall be included as Merchandise.  No returns of inventory sold prior to the Sale Commencement Date shall be accepted or allowed following the seventh (7th) day following the Sale Commencement Date.

7.6     The Company agrees to procure and maintain, during the Sale Term, all insurance (including, without limitation, commercial general liability, property damage, fire and other perils insurance) currently in effect and in the same amounts, levels, deductibles, and coverages in respect of all Assets until sold.

7.7     The Company shall indemnify and hold the Consultant and its affiliates, and their respective officers, directors, employees, agents and independent contractors (collectively, "Consultant Indemnified Parties") harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from, or related to:

(a)     Company's material breach or material failure of or failure to comply with any of its agreements, covenants, representations or warranties contained herein or in any written agreement entered into in connection herewith;

(b)     any failure of Company to pay to its employees any wages, salaries or benefits due to such employees during the Sale Term;

(c)     any consumer warranty or products liability claims relating to any Merchandise;

(d)     any liability or other claims asserted by customers, any of Company's employees, or any other person against any Consultant Indemnified Party (including, without limitation, claims by employees arising under collective bargaining agreements, worker's compensation or under the "WARN Act"); except where due to the negligence or willful misconduct of Consultant or from a breach of the terms hereof by Consultant;

(e)     any harassment or any other unlawful, tortious or otherwise actionable treatment of any employees, agents, or representatives of Consultant (including, without limitation, any Supervisors) by Company or any of Company's employees, agents, or representatives (including, without limitation, any Company employees); and

(f)     the negligence or willful misconduct of Company or any of its officers, directors, employees, agents or representatives.

## 8.     Affirmative Duties Of Consultant

8.1     To the extent necessary, and except as provided in the Approval Orders, Consultant shall assist the Company in obtaining all required permits and governmental consents required in

order to conduct the Sale, and shall ensure that the Sale is conducted in accordance with all applicable laws, regulations and ordinances.

8.2    The Consultant shall indemnify and hold Company and its affiliates, and their respective officers, directors, employees, agents, lenders and independent contractors (collectively, "Company Indemnified Parties"), harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from, or related to:

(a)    Consultant's material breach or material failure of or failure to comply with any of its agreements, covenants, representations or warranties contained herein or in any written agreement entered into in connection herewith;

(b)    any harassment or any other unlawful, tortious or otherwise actionable treatment of any employees or agents of Company (including, without limitation, any Store Employees) by Consultant or any of Consultant's representatives (including, without limitation, any Supervisor);

(c)    any claims by any party engaged by Consultant as an employee or independent contractor (including, without limitation, any Supervisor) arising out of such employment or engagement; except where due to the negligence or willful misconduct of Company or Company Indemnified Parties or from a breach of the terms hereof by Company; and

(d)    the negligence or willful misconduct of Consultant or any of its officers, directors, employees, agents or representatives, or any Supervisor.

9.    **Additional Consultant Goods**

9.1    In connection with the Sale, and subject to compliance with applicable law (or if and when applicable, the Approval Orders), Consultant shall have the right, at Consultant's sole cost and expense, to supplement the Merchandise in the Sale with additional goods procured by Consultant which are of like kind, and no lesser quality to the Merchandise ("Additional Consultant Goods"). The Additional Consultant Goods shall be purchased by Consultant as part of the Sale, and delivered to the Stores (or direct shipped to customers) at Consultant's sole cost and expense (including, without limitation, all acquisition costs, sales commissions, credit card processing fees, labor, freight and insurance relative to shipping and/or delivery of such Additional Consultant Goods). Sales of Additional Consultant Goods shall be run through Company's point-of-sale systems; provided, however, that Consultant shall mark the Additional Consultant Goods using either a "dummy" SKU or department number, or in such other manner so as to distinguish the sale of Additional Consultant Goods from the sale of Merchandise. Consultant and Company shall also cooperate so as to ensure that the Additional Consultant Goods are marked in such a way that a reasonable consumer could identify the Additional Consultant Goods as non-Company goods. Additionally, Consultant shall provide signage in the Stores notifying customers that the Additional Consultant Goods have been included in the Sale. Absent the Company's written

consent and subject to Consultant's agreement to reimburse Company for any associated expenses, Consultant shall not use Company's distribution centers for any Additional Consultant Goods.

9.2     Consultant shall pay to the Company an amount equal to seven and one-half percent (7.5%) of the aggregate Gross Proceeds, net only of sales taxes collected in respect thereof, realized by Consultant from the sale of Additional Consultant Goods (the "Additional Consultant Goods Fee"). Consultant shall pay the Company any earned and accrued Additional Consultant Goods Fee on a weekly basis as part of each weekly sale reconciliation. Except for sales taxes associated with the sale of Additional Consultant Goods and Company's Additional Consultant Goods Fee, all proceeds from the sale of Additional Consultant Goods shall be for the sole and exclusive account of Consultant, and shall be remitted to Consultant in connection with each weekly sale reconciliation. Consultant shall be responsible for collecting and remitting sales taxes to the applicable taxing authorities on account of sales of Additional Consultant Goods.

9.3     The Consultant, the Company, and the Lender Agents intend that the transactions relating to the Additional Consultant Goods are, and shall be construed as, a true consignment from Consultant to Company in all respects and not a consignment for security purposes. Subject solely to Consultant's obligations to pay to Company the Additional Consultant Goods Fee, at all times and for all purposes the Additional Consultant Goods and their proceeds shall be the exclusive property of Consultant, and no other person or entity, including, without limitation, the Lenders and Lender Agents, shall have any claim against any of the Additional Consultant Goods or their proceeds. The Additional Consultant Goods shall at all times remain subject to the exclusive control of Consultant. In furtherance of the foregoing, the Company acknowledges that the Additional Consultant Goods shall be consigned to Company as a true consignment under Article 9 of the Uniform Commercial Code (the "UCC"). The Consultant is hereby granted a first priority security interest in and lien upon (i) the Additional Consultant Goods and (ii) the Additional Consultant Goods proceeds (less any Additional Consultant Goods Fee), and Consultant is hereby authorized to file UCC financing statements and provide notifications to any prior secured parties, including, but not limited to, the Lender Agents.

9.4     The Company shall, at Consultant's sole cost and expense, insure the Additional Consultant Goods and, if required, promptly file any proofs of loss with regard to same with Company's insurers. Consultant shall be responsible for payment of any deductible (but only in relation to the Additional Consultant Goods) under any such insurance in the event of any casualty affecting the Additional Consultant Goods.

## 10.    **Representation and Warranties**

10.1    Representations and Warranties of the Consultant.    Each entity comprising Consultant hereby represents, warrants and covenants in favor of Company as follows:

(a)    Consultant has taken all necessary action required to authorize the execution, performance and delivery of this Agreement, and to consummate the transactions contemplated hereby.

(b)    Upon execution by the parties hereto, this Agreement is a valid and binding obligation of Consultant enforceable in accordance with its terms, subject to the entry of the Approval Orders as and to the extent required to the effectiveness hereof.

(c)    No action or proceeding has been instituted or, to Consultant's knowledge, threatened, affecting the Consultant's ability to consummate this Agreement or the transactions contemplated herein.

(d)    Except as provided in the Approval Orders and the Sale Guidelines, Consultant will comply with and act in accordance with any and all applicable state and local laws, rules and regulations and other legal obligations of all governmental authorities and the terms/restrictions of the underlying Stores' leases.

10.2    Representations and Warranties of the Company: the Company hereby represents, warrants and covenants in favor of Consultant as follows:

(a)    Subject to the entry of the Approval Orders as and to the extent required to the effectiveness hereof, the Company has taken all necessary action required to authorize its execution, performance and delivery of this Agreement, and to consummate the transactions contemplated hereby.

(b)    Subject to the entry of the Approval Orders as and to the extent required to the effectiveness hereof, upon execution by the Company, this Agreement is a valid and binding obligation of the Company enforceable in accordance with its terms, subject only to any applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally and the availability of equitable remedies.

(c)    Except as may be affected by the Company's commencement of the Bankruptcy Case, no court order or decree of any federal, state or local governmental authority or regulatory body is in effect that would prevent or impair, or is required for the Company's consummation of the transactions contemplated by this Agreement, and no consent of any third party which has not been obtained is required therefor.

(d)    The Company has all requisite authority to grant the License to Consultant to utilize the Properties and the Intellectual Property, including, without limitation, the tradenames "Art Van Furniture", "Wolf Furniture", "Levin Furniture",  and similar derivations thereof as provided for under this Agreement.

(e)    The Company has maintained its pricing files in the ordinary course of business, and prices charged to the public for goods are the same in all material respects as set forth in such pricing files for the periods indicated therein, and all pricing files, records, and information received by Consultant are true and accurate in all material respects.

(f)    Except for the liens of the ABL Lenders and Term Loan Lenders, all Assets are, or will be as of the Sale Commencement Date free and clear of all liens, claims and encumbrances of any kind whatsoever.

**11.    Bankruptcy Matters**.  If the Company commences a case under Chapter 11 of title 11, United States Code (the "Bankruptcy Code"), in the Bankruptcy Court, the Company shall promptly file an expedited motion (a) seeking authorization to conduct the Sale and sell or otherwise dispose of the Assets, and (b) to assume this Agreement under section 365 of the Bankruptcy Code, and utilize its reasonable best efforts to ensure that such motion is approved by the Interim Order, and thereafter the Final Order (together with the Interim Order, the "Approval Orders").  The Approval Orders shall be reasonably acceptable in form and substance to the Consultant, the Company and the Lender Agents, and provide for, among other things, the following:

(a)    approval of the transactions contemplated by this Agreement, including, without limitation, the company's conduct of the Sale and the sale of the other Assets;

(b)    approving the Company's retention and employment of Consultant to perform the Services contemplated by this Agreement;

(c)    approving the Sale Guidelines;

(d)    authorizing the Company's reimbursement to Consultant of all Sale Expenses advanced by the Consultant, including Consultant Incurred Expenses, together with any additional expenses incurred pursuant to any Supplemental Budget(s), such reimbursements to be made on a weekly basis and otherwise in accordance with this Agreement, from the Expense Deposit, and thereafter from gross receipts from the sale or other disposition of the Assets (or retained by the Consultant from such receipts) without further order of the Bankruptcy Court and otherwise in accordance with this Agreement, in each case without further order of the Bankruptcy Court, and any such payment(s)/reimbursement(s) shall be free and clear of all liens, claims and encumbrances;

(e)    providing that the authority granted herein for the reimbursement of Sale Expenses, including Consultant Incurred Expenses, and any other expenses incurred or advanced by Consultant pursuant to any Supplemental Budget(s), shall be subject to the provisions of (i) that certain proposed  Interim Order authorizing the Company Use of Cash Collateral" (the "Interim Cash Collateral Order") to be filed and entered in the Bankruptcy Case, and shall be made strictly in accordance with the Cash Collateral Budget (as defined in the Interim Cash Collateral Order), subject to such variances as permitted by the Cash Collateral Order; provided, however, that neither the Interim Cash Collateral Order shall not require or impose a cap or reduction on amounts due to the Consultant under this

Agreement, other than any such cap or reduction resulting from the Company's required compliance with the Cash Collateral Budget;

(f)    not later than two (2) business days after entry of the Interim Order the Company shall deliver to the Consultant the Expense Deposit as set forth in the Sale Budget as security for payment or reimbursement to Consultant of Sale Expenses incurred by Consultant on account of which it is entitled to be reimbursed;

(e)    any remaining balance of Expense Deposit being held by Consultant upon completion of the Final Settlement shall (i) be applied by Consultant as shall be set forth in the Final Settlement, and (ii) be subject to all provisions relating to Cash Collateral set forth in the Interim Cash Collateral Order;

(f)    authorizing the Company's conduct of the Sale without the necessity of complying with state and local rules, laws, ordinances and regulations, including, without limitation, permitting and licensing requirements, that could otherwise govern the Sale;

(g)    authorizing the Company's conduct of the Sale notwithstanding restrictions in leases, reciprocal easement agreements or other contracts that purport to restrict the Sale or the necessity of obtaining any third party consents;

(h)    approving the sale of Additional Consultant Goods in accordance with the terms and conditions hereof; and

(i)    authorizing the Consultant and the Company to take all further actions as are necessary or appropriate to carry out the terms and conditions of this Agreement.

Upon the commencement of the Bankruptcy Case, any legal action, suit or proceeding arising in connection with this Agreement shall be submitted to the exclusive jurisdiction of the Bankruptcy Court having jurisdiction over the Company's Bankruptcy Case, and each Party hereby waives any defenses or objections based on lack of jurisdiction, improper venue, and/or forum *non conveniens*.  From and after entry of the Approval Orders, Consultant shall conduct the Sale in accordance with the terms of the Approval Orders in all material respects.

## 12.    <u>Insurance; Risk of Loss</u>

12.1    Company shall maintain throughout the Sale Term, (i) insurance with respect to the Assets in amounts and on such terms and conditions as are consistent with the Company's ordinary course operations and (ii) casualty and liability insurance policies (including, but not limited to, product liability, comprehensive public liability insurance and auto liability insurance) covering injuries to persons and property in or in connection with the operation of the Stores, and shall cause Consultant to be listed as an additional insured with respect to all such policies, and as loss payee for the property insurance.  Company shall be responsible for the payment of all deductibles, self-insurance and other amounts payable in connection with any claim asserted under such policies, except for any claims arising directly from the negligence or willful misconduct of Consultant, or its employees, representatives, agents or Supervisors.

12.2    Consultant shall maintain, throughout the Sale Term, liability insurance policies (including, but not limited to, comprehensive general liability and auto liability insurance) covering injuries to persons and property in or in connection with Consultant's provision of Services at the Stores, and shall cause Company to be named an additional insured with respect to such policies.

12.3    Notwithstanding any other provision of this Agreement, the Company and the Consultant agree that Company shall bear all responsibility for liability claims (product liability and otherwise) of customers, employees and other persons arising from events occurring at the Stores before, during and after the Sale Term, except to the extent any such claim arises from the negligence, willful misconduct, or unlawful acts of the Consultant or any Supervisor engaged by Consultant under the terms of this Agreement.

## 13.    <u>Miscellaneous</u>

13.1    Any notice or other communication under this Agreement shall be in writing and may be delivered personally or sent by facsimile or by prepaid registered or certified mail, addressed as follows:

If to the Company:    c/o AVF HOLDING COMPANY, INC.
6500 East Fourteen Mile Road
Warren, MI  48092
Attn: David Ladd
Email: dladd@artvan.com

With copies to:

MONTGOMERY MCCRACKEN WALKER & RHOADS, LLP
437 Madison Avenue
New York, NY 10022
Attn:  Maura I. Russell
Email:  mrussell@mmwr.com

ALVAREZ & MARSAL, LLP
600 Madison Avenue – 7th Floor
New York, NY 10022
Attn:   Dennis Stogsdill
          Matthew Davidson
Email: DStogsdill@alvarezandmarsal.com
          matthew.davidson@alvarezandmarsal.com

22

If to the Consultant:

HILCO MERCHANT RESOURCES, LLC, HILCO
IP SERVICES, LLC D/B/A HILCO STREAMBANK,
HILCO REAL ESTATE, LLC, AND HILCO
RECEIVABLES, LLC
5 Revere Drive, Suite 206
Northbrook, IL 60062
Attention: Ian S. Fredericks
Tel: (847) 418-2075
Email: ifredericks@hilcotrading.com

-and-

GORDON BROTHERS RETAIL PARTNERS, LLC,
DJM REALTY SERVICES, LLC D/B/A GORDON
BROTHERS REAL ESTATE, GORDON
BROTHERS COMMERCIAL & INDUSTRIAL, LLC
AND GORDON BROTHERS BRANDS, LLC
Prudential Tower
800 Boylston Street
Boston, MA 02119
Attn: Mackenzie L. Shea
Tel: (617) 210-7116
Email: mshea@gordonbrothers.com

With a copy to (which shall not constitute notice):

RIEMER & BRAUNSTEIN LLP
Times Square Tower
Seven Times Square, Suite 2506
New York, NY 10036
Attn:  Steven E. Fox
Email:  sfox@riemerlaw.com

If to the ABL Lenders:

WELLS FARGO BANK, NATIONAL
ASSOCIATION
125 High Street, 11th Floor
Boston, MA 02110
Attn: Danielle Baldinelli
Email:  Danielle.M.Baldinelli@wellsfargo.com

MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110-1726
Attn:  Marjorie B. Crider
Email: marjorie.crider@morganlewis.com

<div style="margin-left: 2em;">

If to the Term Lenders:     King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036
Attn:  W. Todd Holleman
Email:  tholleman@kslaw.com

</div>

13.2   <u>Governing Law</u>.  This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of New York, without reference to any conflict of laws provisions.

13.3   <u>Severability</u>.  In the event any term or provision contained within this Agreement shall be deemed illegal or unenforceable, then such offending term or provision shall be considered deleted from this Agreement and the remaining terms shall continue to be in full force and effect.

13.4   <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the parties with respect of the subject matter hereof and supersedes all prior negotiations and understandings, and can only be modified by a writing signed by the Company (with the consent of the Lender Agents, which consent shall not be unreasonably withheld, delayed or conditioned) and the Consultant.

13.5   <u>Assignment</u>.  Neither Company nor Consultant shall assign this Agreement without the express written consent of the other; <u>provided</u>, <u>however</u>, notwithstanding the foregoing, the Consultant may delegate and assign its rights and obligations under this Agreement to one or more affiliates with subject matter experience with applicable Assets without the consent of the Company.  This Agreement shall inure to the benefit of, and be binding upon, the parties and their respective successors and permitted assigns.

13.6   <u>Counterparts</u>.  This Agreement may be executed in several counterparts, each of which when so executed shall be deemed to be an original and such counterparts, together, shall constitute one and the same instrument.  Delivery by facsimile of this Agreement or an executed counterpart hereof shall be deemed a good and valid execution and delivery hereof or thereof.

13.7   <u>Independent Contractor</u>.  Nothing contained herein shall be deemed to create any relationship between the Company and the Consultant other than that of an independent contractor. It is stipulated that the parties are not partners or joint venturers.

13.8   <u>Termination</u>.  This Agreement shall terminate upon the earlier to occur (a) in the event the Bankruptcy Court does not enter the Interim Order on or before March 10, 2020, (b) in the event the Sale Commencement Date does not occur on or prior to March 7, 2020, (c) in the event the Bankruptcy Court does not enter the Final Order on or before March 31, 2020, (d) the mutual agreement of the Parties, or (e) upon the completion and approval of the Final Settlement; <u>provided</u>, <u>however</u>, that either party may terminate this Agreement in the event that the other commits a material breach or material failure of its obligations hereunder.  If either party seeks to terminate this Agreement by reason of a claim of a material breach or material failure, such party shall provide the other party with not less than five (5) days' prior written notice stating with specificity the nature of the claimed material breach or material failure, and the party receiving

such notice shall have five (5) business days in which to cure such material breach or material failure, failing which this Agreement shall be deemed terminated. In the event this Agreement is terminated by Consultant on account of a material breach or material failure by the Company, Consultant shall be entitled to be reimbursed any Sale Expenses, including Consultant Incurred Expenses and any other expenses incurred in conformity with the Sale Budget or any Supplemental Budget(s) through the date of such termination.

13.8    Confidentiality.  Except for such disclosure as may be required and/or incident to Asset sale-related activities and Services provided for herein, all information of a business nature relating to the pricing, sales, promotions, marketing, assets, liabilities or other business affairs of Company, its customers, parent, subsidiary or other affiliated entities (for purposes of this provision, all such entities are included within each reference to "Company") is Company's confidential, trade secret information ("Company Confidential Information"), which is and shall remain the exclusive intellectual property of Company.  Consultant shall not divulge, furnish, make available or in any other manner disclose such information to any third party other than Consultant's officers, employees, representatives and agents.  Consultant shall take and shall cause its officers, employees, representatives and agents to take such action as shall be reasonably necessary or advisable to preserve and protect the confidentiality of Company Confidential Information.  Consultant agrees to maintain strict confidentiality and agrees that it may use Company Confidential Information only as reasonably necessary to the performance of its obligations related to the sale of the Assets as contemplated hereby.  Notwithstanding the foregoing, Company hereby agrees that Consultant may identify Company as a Consultant customer for which Consultant has provided services for purposes of promoting its business.

13.9    Force Majeure. If any casualty or act of God, war, or terrorism prevents or substantially inhibits the conduct of business in the ordinary course at any Store(s), or results in a material loss or impairment of the Assets, then the subject location(s) and the remaining Merchandise located thereat shall be eliminated from the Sale and considered to be deleted from this Agreement as of the date of such event, and Consultant and shall have no further rights or obligations hereunder with respect thereto; provided, however, that the proceeds of any insurance attributable to impacted Assets or proceeds from business interruption insurance shall constitute Gross Proceeds hereunder.

13.10   By executing or otherwise accepting this Agreement, the Company and Consultant acknowledge and represent that they are represented by and have consulted with independent legal counsel with respect to the terms and conditions contained herein.

13.11   This Agreement shall be deemed drafted by both parties hereto, and there shall be no presumption against either party in the interpretation of this Agreement.

[Remainder of Page Intentionally Left Blank]
[Signatures Appear On Next Page]

IN WITNESS WHEREOF, the Company and the Consultant have executed this Agreement or caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first written above.

**AVF HOLDING COMPANY, INC.**
**AVF HOLDING COMPANY, INC.**

By: _David Ladd_

Name: DAVID LADD

Its: 3/4/2020

[Signatures Continue Next Page]

27

**HILCO MERCHANT RESOURCES, LLC,
HILCO IP SERVICES, LLC D/B/A HILCO
STREAMBANK, HILCO REAL ESTATE, LLC, AND
HILCO RECEIVABLES, LLC**

By:_____

    Name:    Sarah Baker
    Title:     Assistant General Counsel

          - and –

**GORDON BROTHERS RETAIL PARTNERS, LLC,**

By:_____

    Name:    _____
    Its:      _____

**DJM REALTY SERVICES, LLC D/B/A GORDON
BROTHERS REAL ESTATE**

By:_____

    Name:    _____
    Its:      _____

**GORDON BROTHERS COMMERCIAL &
INDUSTRIAL, LLC**

By:_____

    Name:    _____
    Its:      _____

**HILCO MERCHANT RESOURCES, LLC, HILCO IP SERVICES, LLC D/B/A HILCO STREAMBANK, HILCO REAL ESTATE, LLC, AND HILCO RECEIVABLES, LLC**

By:_____
    Name:    Sarah Baker
    Title:    Assistant General Counsel

        - and –

**GORDON BROTHERS RETAIL PARTNERS, LLC,**

By:_____
    Name:    _____
    Its:     _____

**DJM REALTY SERVICES, LLC D/B/A GORDON BROTHERS REAL ESTATE**

By:_____
    Name:    _____
    Its:     _____

**GORDON BROTHERS COMMERCIAL & INDUSTRIAL, LLC**

By:_____
    Name:    _____
    Its:     _____

**HILCO MERCHANT RESOURCES, LLC,
HILCO IP SERVICES, LLC D/B/A HILCO
STREAMBANK, HILCO REAL ESTATE, LLC, AND
HILCO RECEIVABLES, LLC**

By:_____

    Name:    Sarah Baker
    Title:    Assistant General Counsel

             - and –

**GORDON BROTHERS RETAIL PARTNERS, LLC,**

By:_____

    Name:    _____
    Its:    _____

**DJM REALTY SERVICES, LLC D/B/A GORDON
BROTHERS REAL ESTATE**

By:_____

    Name:    Mark T. Dufton
    Its:    Chief Executive Officer , Real Estate

**GORDON BROTHERS COMMERCIAL &
INDUSTRIAL, LLC**

By:_____

    Name:    _____
    Its:    _____

**HILCO MERCHANT RESOURCES, LLC,
HILCO IP SERVICES, LLC D/B/A HILCO
STREAMBANK, HILCO REAL ESTATE, LLC, AND
HILCO RECEIVABLES, LLC**


By:_____
    Name:    Sarah Baker
    Title:     Assistant General Counsel


         - and –

**GORDON BROTHERS RETAIL PARTNERS, LLC,**


By:_____
    Name:    _____
    Its:      _____


**DJM REALTY SERVICES, LLC D/B/A GORDON
BROTHERS REAL ESTATE**


By:_____
    Name:    _____
    Its:      _____


**GORDON BROTHERS COMMERCIAL &
INDUSTRIAL, LLC**


By: *Robert J Maroney*
    Name:    Robert J. Maroney
    Its:      President

28

**GORDON BROTHERS BRANDS, LLC**

By: _____

Name: _____RAMEZ TOUBASSY_____

Its: _____PRESIDENT_____

[Signatures Continue Next Page]

ACKNOWLEDGED AND AGREED
TO THIS ___ DAY OF MARCH, 2020:

**WELLS FARGO BANK, NATIONAL ASSOCIATION,**
As Administrative Agent and Collateral Agent

By: _____
    Name: Lauren Murphy
    Its: Director

[Signatures Continue Next Page]

**VIRTUS GROUP, LP,**
As Administrative Agent and Collateral Agent
For Itself and the Other Term Loan Lenders

VIRTUS GROUP, LP,
as Administrative Agent

By: _____

Name:
Title: SNR DIR

**Art Van Furniture**
Results - Store Count Strategy by Location

| 169 # Stores included in liquidation | Yes |
|---|---|
| # stores closed prior to sale commencement | No |

**Financial Information in ($000's)**

| Store # | Store Name | Original Store Name | Include in Liquidation | Direct Marketing Area | Store Type | Company Affiliation | Gross Sq. Ft. | Selling Sq. Ft. | Lease Beginning Date | Lease Expires | Months Remaining | SLB Property | Landlord | Master Lease | Address |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Bel Air, MD (1) | BEL AIR (#65) | Yes | Baltimore | Standard | WLF | 74,400 | 62,000 | 5/15/2015 | 12/31/2025 | 70 | No | CAMPUS HILLS MARYLAND ASSOCIATES, L.P. | None | 2400 E Churchville Rd, Bel Air, MD, 21015, USA |
| 2 | Pasadena, MD (2) | PASADENA (#61) | Yes | Baltimore | Standard | WLF | 61,646 | 54,000 | 5/15/2015 | 8/31/2025 | 66 | No | ARUNDEL PROPERTY INVESTORS LP | None | 8038 Ritchie Hwy, Pasadena, MD, 21122, USA |
| 3 | Westminster, MD (3) | WESTMINSTER (#64) | Yes | Baltimore | Standard | WLF | 40,550 | 38,000 | 5/15/2015 | 8/31/2021 | 18 | No | WESTMINSTER GATEWAY, LLC | None | 1030 Baltimore Blvd Suite 110, Westminster, MD, 21157, USA |
| 4 | Towson, MD (4) | TOWSON (#63) | Yes | Baltimore | Standard | WLF | 54,000 | 46,000 | 5/15/2015 | 4/30/2038 | 218 | Yes | STORE CAPITAL | Store Master Funding XII, LLC | 1530 E Joppa Rd, Towson, MD, 21286, USA |
| 5 | Catonsville, MD (5) | CATONSVILLE (#62) | Yes | Baltimore | Standard | WLF | 115,300 | 40,000 | 5/15/2015 | 8/31/2025 | 66 | No | JMB JOINT VENTURE | None | 6415 Baltimore National Pike, Catonsville, MD, 21228, USA |
| 6 | Downers Grove, IL (6) | DOWNERS GROVE AVF & SSI (#199) | Yes | Chicago | Flagship | AVF | 100,000 | 92,428 | 8/1/2015 | 3/31/2037 | 205 | Yes | STORE CAPITAL | STORE SPE AVF I 2017-1, LLC | 1021 BUTTERFIELD RD, DOWNERS GROVE, IL, 60515, USA |
| 7 | Merrillville, IN (7) | MERRILLVILLE AVF | Yes | Chicago | Standard | AVF | 50,000 | 43,130 | 8/24/2013 | 2/28/2023 | 36 | No | ACADIA MERRILLVILLE REALTY, L.P. | None | 1600 E 80TH AVE, MERRILLVILLE, IN, 46410, USA |
| 8 | Naperville, IL (8) | NAPERVILLE AVF | Yes | Chicago | Standard | AVF | 62,000 | 52,753 | 6/1/2015 | 8/31/2025 | 66 | No | BRIXMOR HERITAGE SQUARE, LLC | None | 404 SOUTH ROUTE 59, NAPERVILLE, IL, 60540, USA |
| 9 | Bedford Park, IL (9) | BEDFORD PK AVF | Yes | Chicago | Standard | AVF | 84,505 | 71,590 | 10/26/2013 | 4/30/2024 | 50 | No | SPIRIT SPE LOAN PORTFOLIO 2013-3, LLC | None | 7200 S CICERO AVE, BEDFORD PARK, IL, 60638, USA |
| 10 | Elston, IL (10) | ELSTON AVE AVF | Yes | Chicago | Standard | AVF | 48,000 | 40,660 | 10/26/2013 | 4/30/2024 | 50 | No | Fartman Group | None | 2606 ELSTON AVE, CHICAGO, IL, 60647, USA |
| 11 | Batavia, IL (11) | BATAVIA AVF | Yes | Chicago | Standard | AVF | 42,500 | 37,055 | 9/14/2013 | 1/31/2024 | 47 | No | PARAGON BATAVIA, LLC | None | 165 N RANDALL RD, BATAVIA, IL, 60510, USA |
| 12 | Orland Park, IL (12) | ORLAND PARK AVF | Yes | Chicago | Standard | AVF | 65,523 | 53,329 | 7/13/2013 | 5/31/2024 | 51 | No | 55th & S. Kedzie, LLC | None | 15080 S LA GRANGE RD, ORLAND PARK, IL, 60462, USA |
| 13 | Algonquin, IL (13) | ALGONQUIN AVF | Yes | Chicago | Standard | AVF | 48,397 | 41,272 | 3/31/2016 | 7/31/2025 | 65 | No | c/o Mid America Asset Management, Inc. | None | 1500 S RANDALL ROAD, ALGONQUIN, IL, 60102, USA |
| 14 | Kildeer, IL (14) | KILDEER AVF | Yes | Chicago | Standard | AVF | 40,628 | 34,534 | 10/4/2017 | 9/30/2027 | 91 | No | Kildeer Village Square, LLC | None | 20393 N RAND RD, KILDEER, IL, 60074, USA |
| 15 | Glendale Heights, IL (15) | GLENDALE HEIGHTS AVF | Yes | Chicago | Standard | AVF | 60,820 | 37,044 | 2/26/2016 | 3/31/2026 | 73 | No | 125 W. Army Trail Road LLC | None | 125 ARMY TRAIL ROAD, GLENDALE HGTS, IL, 60139, USA |
| 16 | Deerfield, IL (16) | DEERFIELD AVF | Yes | Chicago | Standard | AVF | 41,966 | 35,671 | 12/13/2017 | 2/29/2028 | 96 | No | Gateway Fairview, Inc. | None | 120 S. WAUKEGAN, DEERFIELD, IL, 60015, USA |
| 17 | Schaumburg, IL (17) | SCHAUMBURG AVF& SSI (#303) | Yes | Chicago | Flagship | AVF | 71,400 | 61,990 | 10/29/2016 | 3/31/2037 | 205 | Yes | STORE CAPITAL | Store Master Funding XII, LLC | 1293 E HIGGINS RD, SCHAUMBURG, IL, 60173, USA |
| 18 | Joliet, IL (18) | JOLIET P3 | Yes | Chicago | Sleep | APS | 3,116 | 2,884 | 12/26/2017 | 12/31/2027 | 94 | No | GW Fidelity PH, LLC | None | 2901 PLAINFIELD, JOLIET, IL, 60435, USA |
| 19 | Burbank, IL (19) | BURBANK P5 | Yes | Chicago | Sleep | APS | 3,994 | 3,476 | 3/21/2015 | 3/31/2025 | 61 | No | WM 73 RE, LLC | None | 7712 CICERO AVENUE, BURBANK, IL, 60459, USA |
| 20 | Woodridge, IL (20) | WOODRIDGE AVF | Yes | Chicago | Standard | AVF | 68,400 | 59,687 | 3/27/2014 | 10/31/2037 | 212 | Yes | STORE CAPITAL | STORE SPE AVF II 2017-2, LLC | 900 E BOUGHTON RD, WOODRIDGE, IL, 60517, USA |
| 21 | Gurnee, IL (21) | GURNEE AVF | Yes | Chicago | Standard | AVF | 34,000 | 28,900 | 6/26/2018 | 12/31/2032 | 154 | No | 3503 RP Gurnee, L.L.C. | None | 6911 W. GRAND AVE, GURNEE, IL, 60031, USA |
| 22 | Plainfield, IL (22) | PLAINFIELD P5 | Yes | Chicago | Sleep | APS | 3,600 | 3,290 | 2/11/2017 | 2/28/2027 | 84 | No | NATIONAL SHOPPING PLAZAS, INC. | None | 13511 S ROUTE 59, PLAINFIELD, IL, 60544, USA |
| 23 | Willowbrook, IL (23) | WILLOWBROOK P5 | Yes | Chicago | Sleep | APS | 3,834 | 3,400 | 12/3/2016 | 1/31/2027 | 83 | No | NATIONAL SHOPPING PLAZAS, INC. | None | 6938 KINGERY HIGHWAY, WILLOWBROOK, IL, 60527, USA |
| 24 | Chicago, IL (24) | ASHLAND P5 | Yes | Chicago | Sleep | APS | 3,000 | 2,600 | 9/10/2016 | 9/30/2026 | 79 | No | NATIONAL SHOPPING PLAZAS, INC. | None | 2911 N. ASHLAND AVENUE, CHICAGO, IL, 60657, USA |
| 25 | Bloomingdale, IL (25) | BLOOMINGDALE P5 | Yes | Chicago | Sleep | APS | 4,798 | 4,370 | 5/26/2017 | 4/30/2027 | 86 | No | Bloomingdale Square, LP | None | 398 W ARMY TRAIL RD #102, BLOOMINGDALE, IL, 60108, USA |
| 26 | Harwood Heights, IL (26) | HARWOOD HEIGHTS AVF | Yes | Chicago | Standard | AVF | 60,000 | 51,000 | 11/15/2017 | 12/31/2038 | 226 | No | DBO AVF | None | 7304 WEST LAWRENCE AVE, HARWOOD HEIGHTS, IL, 60706, USA |
| 27 | Avon, OH (27) | AVON (#45, 46 CC) | Yes | Cleveland | LVF | 77,000 | 72,380 | 7/1/2011 | 11/30/2037 | 213 | Yes | VEREIT REAL ESTATE LP | Vereit | 1801 NAGEL ROAD, AVON, OH, 44011, USA |
| 28 | North Canton, OH (28) | CANTON (#14, 25, 26 CC) | Yes | Cleveland | LVF | 65,765 | 60,199 | 3/1/2008 | 11/30/2037 | 213 | Yes | VEREIT REAL ESTATE LP | Vereit | 6229 PROMLER AVENUE NW, NORTH CANTON, OH, 44720, USA |
| 29 | Akron, OH (29) | AKRON (#23, 24 CC) | Yes | Cleveland | LVF | 69,422 | 65,257 | 10/1/2005 | 9/30/2020 | 7 | No | TABANI AKRON, LP | None | 3742 BROOKWALL DRIVE, AKRON, OH, 44333, USA |
| 30 | Middleburg Heights, OH (30) | MIDDLEBURG (#11, 31 CC) | Yes | Cleveland | LVF | 50,000 | 45,172 | 7/1/1993 | 11/30/2037 | 213 | Yes | VEREIT REAL ESTATE LP | Vereit | 16960 SPRAGUE ROAD, MIDDLEBURG HEIGHTS, OH, 44130, USA |
| 31 | Mentor, OH (31) | MENTOR (#9, 27, 28 CC) | Yes | Cleveland | LVF | 75,600 | 70,712 | 7/1/2009 | 11/30/2037 | 213 | Yes | VEREIT REAL ESTATE LP | Vereit | 7799 MENTOR AVE, MENTOR, OH, 44060, USA |
| 32 | Oakwood Village, OH (32) | OAKWOOD VILLAGE (#18, 19 CC) | Yes | Cleveland | LVF | 89,723 | 67,723 | 8/1/2002 | 11/30/2027 | 93 | No | FIRST INERNATIONAL HAWTHORNE LP | None | 23100 BROADWAY AVE, OAKWOOD VILLAGE, OH, 44146, USA |
| 33 | North Olmsted, OH (33) | NORTH OLMSTED (#12, 34 CC) | Yes | Cleveland | LVF | 46,000 | 41,270 | 8/1/1996 | 1/31/2027 | 83 | No | GLITZ AND ASSOCIATES INC | None | 23250 LORAIN ROAD, NORTH OLMSTED, OH, 44070, USA |
| 34 | Strongsville, OH (34) | STRONGSVILLE (#74) | Yes | Cleveland | LM | 5,000 | 4,400 | 11/5/2015 | 10/31/2025 | 68 | No | ECHO STRONGSVILLE LLC | None | 16105 PEARL ROAD, STRONGSVILLE, OH, 44136, USA |
| 35 | Mayfield Heights, OH (35) | MAYFIELD (#65) | Yes | Cleveland | LM | 4,620 | 4,120 | 5/1/2012 | n/a | n/a | No | JACK H SCHWARTS, TRUSTEE OF THE JACK H | None | 6061 Mayfield Rd, Mayfield Heights, OH, 44124, USA |
| 36 | Stow, OH (36) | STOW (#68) | Yes | Cleveland | LM | 4,160 | 3,660 | 10/25/2013 | 1/31/2024 | 47 | No | DEVILLE DEVELOPMENTS LLC | None | 1061 GRAHAM RD, STOW, OH, 44224, USA |
| 37 | Medina, OH (37) | MEDINA (#76) | Yes | Cleveland | LM | 4,500 | 4,000 | 8/25/2016 | 9/30/2021 | 19 | No | GOWE LEASING LIMITED | None | 3823 PEARL RD, MEDINA, OH, 44256, USA |
| 38 | Sandusky, OH (38) | SANDUSKY (#73) | Yes | Cleveland | LM | 5,400 | 4,900 | 11/14/2014 | 2/28/2025 | 60 | No | PLI II LTD | None | 4917 MILAN RD PLAZA, SANDUSKY, OH, 44870, USA |
| 39 | Elyria, OH (39) | ELYRIA (#72) | Yes | Cleveland | LM | 6,400 | 5,800 | 6/19/2015 | 6/30/2026 | 76 | No | ELYRIA-CHESTNUT, LLC / NICKLEPLATE REALTY | None | 510 CHESTNUT COMMONS DR, ELYRIA, OH, 44035, USA |
| 40 | Solon, OH (40) | SOLON (#67) | Yes | Cleveland | LM | 3,768 | 3,288 | 2/22/2013 | 5/31/2023 | 39 | No | L & J PROPERTIES - SOLON, LLC | None | 6130 KRUSE DRIVE, SOLON, OH, 44139, USA |
| 41 | Canton, OH (41) | MASSILLON (#71) | Yes | Cleveland | Sleep | LM | 5,650 | 5,150 | 6/27/2014 | 11/30/2024 | 57 | No | PERRY TOWN CENTER LLC | None | 5119 W TUSCARAWAS ST, CANTON, OH, 44708, USA |
| 42 | Polaris, OH (42) | POLARIS AVF | Yes | Columbus | Flagship | AVF | 70,000 | 59,500 | 3/16/2019 | 10/31/2037 | 212 | Yes | STORE CAPITAL | Other | 1501 GEMINI PLACE, COLUMBUS, OH, 43240, USA |
| 43 | Novi, MI (43) | NOVI AVF | Yes | Detroit | Flagship | AVF | 102,520 | 88,958 | 1/1/1985 | 2/28/2037 | 204 | No | BROADSTONE | BROADSTONE AVF MICHIGAN, LLC | 27775 NOVI RD, NOVI, MI, 48377, USA |
| 44 | Warren, MI (44) | TECH PLAZA AVF | Yes | Detroit | Flagship | AVF | 109,980 | 87,859 | 11/26/1982 | 2/28/2037 | 204 | Yes | LCN PARTNERS | LCN AVF WARREN (MI) LLC | 6500 E 14 MILE RD, WARREN, MI, 48092, USA |
| 45 | Shelby Township, MI (45) | LAKESIDE AVF | Yes | Detroit | Flagship | AVF | 68,104 | 72,336 | 8/14/1992 | 3/31/2037 | 205 | Yes | STORE CAPITAL | Store Master Funding XII, LLC | 14055 HALL RD, SHELBY TOWNSHIP, MI, 48315, USA |
| 46 | Canton, MI (46) | CANTON AVF | Yes | Detroit | Flagship | AVF | 69,929 | 58,740 | 1/3/2018 | 12/31/2038 | 226 | Yes | Agree Limited Partnership | None | 41661 FORD ROAD, CANTON, MI, 48187, USA |
| 47 | Taylor, MI (47) | TAYLOR AVF | Yes | Detroit | Flagship | AVF | 91,720 | 79,294 | 3/6/1978 | 10/31/2037 | 212 | Yes | STORE CAPITAL | STORE SPE AVF II 2017-2, LLC | 22035 EUREKA RD, TAYLOR, MI, 48180, USA |
| 48 | Ann Arbor, MI (48) | ANN ARBOR AVF | Yes | Detroit | Flagship | AVF | 70,000 | 60,912 | 7/2/1993 | 2/28/2037 | 204 | Yes | STONEBRIAR | SCF RC Funding III, LLC | 425 E EISENHOWER PKWY, ANN ARBOR, MI, 48108, USA |
| 49 | Southfield, MI (49) | SOUTHFIELD AVF | Yes | Detroit | Standard | AVF | 64,584 | 52,094 | 11/1/2000 | 7/31/2023 | 41 | No | GREENFIELD PLAZA, INC. | None | 22555 GREENFIELD RD, SOUTHFIELD, MI, 48075, USA |
| 50 | Royal Oak, MI (50) | WOODWARD AVF & SSI (#174) | Yes | Detroit | Standard | AVF | 56,520 | 54,943 | 11/14/1997 | 10/31/2037 | 212 | Yes | STORE CAPITAL | STORE SPE AVF II 2017-2, LLC | 32301 WOODWARD AVE, ROYAL OAK, MI, 48073, USA |
| 51 | Clinton Twp, MI (51) | CLINTON AVF | Yes | Detroit | Flagship | AVF | 69,720 | 60,128 | 1/1/1988 | 2/28/2037 | 204 | Yes | BROADSTONE | BROADSTONE AVF MICHIGAN, LLC | 33801 S GRATIOT AVE, CLINTON TWP, MI, 48035, USA |
| 52 | Chesterfield, MI (52) | CHESTERFIELD AVF | Yes | Detroit | Standard | AVF | 73,152 | 58,029 | 12/26/2003 | 2/28/2037 | 204 | Yes | BROADSTONE | BROADSTONE AVF MICHIGAN, LLC | 50400 GRATIOT AVE, CHESTERFIELD, MI, 48051, USA |
| 53 | Howell, MI (53) | HOWELL AVF | Yes | Detroit | Standard | AVF | 51,075 | 45,721 | 11/1/1997 | 3/31/2037 | 205 | Yes | STORE CAPITAL | Store Master Funding XII, LLC | 4101 E GRAND RIVER AVE, HOWELL, MI, 48843, USA |
| 54 | Waterford, MI (54) | DRAYTON PLAINS AVF | Yes | Detroit | Flagship | AVF | 53,188 | 57,435 | 6/30/1971 | 3/31/2037 | 205 | Yes | STORE CAPITAL | STORE SPE AVF I 2017-1, LLC | 5053 DIXIE HWY, WATERFORD, MI, 48329, USA |
| 55 | Dearborn, MI (55) | DEARBORN AVF | Yes | Detroit | Flagship | AVF | 57,633 | 58,164 | 7/11/1997 | 2/28/2037 | 204 | Yes | LCN CAPITAL PARTNERS, LLC | 15701 MARKET DR, DEARBORN, MI, 48126, USA |
| 56 | Auburn Hills, MI (56) | GREAT LAKES AVF | Yes | Detroit | Standard | AVF | 43,319 | 37,296 | 11/1/2011 | 1/31/2021 | 11 | No | Taubman Auburn Hills Associates Limited Partnershi | None | 4612 BALDWIN RD, AUBURN HILLS, MI, 48326, USA |
| 57 | Port Huron, MI (57) | PORT HURON AVF | Yes | Detroit | Standard | AVF | 74,800 | 59,123 | 9/20/2002 | 3/31/2037 | 205 | Yes | STORE CAPITAL | STORE SPE AVF I 2017-1, LLC | 1234 32ND ST, PORT HURON, MI, 48060, USA |
| 58 | Rochester Hills, MI (58) | ROCHESTER AVF | Yes | Detroit | Standard | AVF | 48,621 | 41,328 | 11/5/1999 | 11/30/2033 | 165 | No | Rochester Kan Properties, LLC | None | 1032 SOUTH ROCHESTER RD, ROCHESTER, MI, 48307, USA |
| 59 | Livonia, MI (59) | 7 MILE AVF | Yes | Detroit | Standard | AVF | 61,752 | 53,795 | 1/15/1985 | 3/31/2037 | 205 | Yes | STORE CAPITAL | Store Master Funding XII, LLC | 29905 7 MILE RD, LIVONIA, MI, 48152, USA |
| 60 | Warren, MI (60) | SCHOENHERR AVF | Yes | Detroit | Standard | AVF | 38,795 | 41,890 | 11/9/1972 | 2/28/2037 | 204 | Yes | STORE CAPITAL | STORE SPE AVF I 2017-1, LLC | 13855 E 8 MILE RD, WARREN, MI, 48089, USA |
| 61 | Westland, MI (61) | WESTLAND AVF | Yes | Detroit | Standard | AVF | 79,773 | 70,723 | 4/14/1987 | 2/28/2037 | 204 | Yes | STONEBRIAR | SCF RC Funding III, LLC | 8300 N WAYNE RD, WESTLAND, MI, 48185, USA |
| 62 | Ann Arbor, MI (62) | ANN ARBOR W P5 | Yes | Detroit | Sleep | APS | 6,000 | 4,079 | 11/1/1994 | 10/31/2021 | 18 | No | 2570 JACKSON AVE, ANN ARBOR, MI, 48103, USA |
| 63 | Rochester Hills, MI (63) | ROCHESTER P5 | Yes | Detroit | Sleep | APS | 5,000 | 4,474 | 6/30/2017 | 1/31/2027 | 83 | No | McKnight South East, LP c/o McKnight Property Man | None | 2943 S. ROCHESTER RD, ROCHESTER, MI, 48307, USA |
| 64 | Grosse Pointe Woods, MI (64) | GROSSE POINTE SOUTH P4 | Yes | Detroit | Sleep | APS | 3,500 | 2,688 | 3/1/2016 | 2/28/2026 | 72 | No | 19387 MACK AVE, GROSSE POINTE, MI, 48236, USA |
| 65 | Warren, MI (65) | WARREN E P5 | Yes | Detroit | Sleep | APS | 5,072 | 4,507 | 5/16/2011 | 6/30/2027 | 88 | No | WARREN VILLAGE, LLC | None | 6400 14 MILE RD, WARREN, MI, 48092, USA |
| 66 | Sterling Hgts, MI (66) | STERLING HTS P5 | Yes | Detroit | Sleep | APS | 4,800 | 4,218 | 11/1/2012 | 11/30/2027 | 93 | No | 45000 NORTHPOINTE BLVD, STERLING HTS, MI, 48314, USA |
| 67 | Washington, MI (67) | WASHINGTON P5 | Yes | Detroit | Sleep | APS | 4,000 | 3,425 | 3/16/2011 | 10/31/2021 | 20 | No | AF Jonna Development & Management Company, LLC | None | 7887 26 MILE ROAD, WASHINGTON, MI, 48094, USA |
| 68 | Southgate, MI (68) | SOUTHGATE P5 | Yes | Detroit | Sleep | APS | 5,117 | 4,768 | 1/16/2016 | 3/31/2021 | 13 | No | BRABDON GROUP AF JONNA SOUTHGATE, LLC | None | 14075 DIX-TOLEDO RD, SOUTHGATE, MI, 48195, USA |
| 69 | Canton, MI (69) | CANTON P5 | Yes | Detroit | Sleep | APS | 4,600 | 4,280 | 6/1/2016 | 6/30/2024 | 52 | No | Michigan Canton, LLC | None | 41913 FORD RD, CANTON, MI, 48187, USA |
| 70 | Monroe, MI (70) | MONROE P5 | Yes | Detroit | Sleep | APS | 4,800 | 3,543 | 1/15/2008 | 3/31/2026 | 77 | No | Keystone Commercial | None | 1570 NORTH TELEGRAPH ROAD, MONROE, MI, 48162, USA |
| 71 | Troy, MI (71) | TROY N P5 | Yes | Detroit | Sleep | APS | 4,500 | 4,059 | 5/1/2011 | 7/31/2021 | 17 | No | Universal Mall Properties LLC | None | 1735 BIG BEAVER RD, TROY, MI, 48083, USA |
| 72 | West Bloomfield, MI (72) | W BLOOMFIELD P5 | Yes | Detroit | Sleep | APS | 4,000 | 3,655 | 4/1/2016 | 3/31/2023 | 39 | No | 6470 ORCHARD LAKE ROAD, WEST BLOOMFIELD, MI, 48322, USA |
| 73 | Chesterfield, MI (73) | CHESTERFIELD P5 | Yes | Detroit | Sleep | APS | 4,500 | 3,572 | 11/18/2011 | 11/30/2027 | 93 | No | CHESTERFIELD COMMONS ASSOCIATES, LLC | None | 50938 GRATIOT AVE, CHESTERFIELD, MI, 48051, USA |
| 74 | Woodhaven, MI (74) | WOODHAVEN P5 | Yes | Detroit | Sleep | APS | 3,966 | 3,515 | 9/9/2016 | 9/30/2026 | 80 | No | THE ALLEN INVESTMENT GROUP, LLC | None | 19410 WEST ROAD, WOODHAVEN, MI, 48183, USA |
| 75 | Brighton, MI (75) | BRIGHTON E P5 | Yes | Detroit | Sleep | APS | 4,248 | 3,218 | 5/16/2011 | 5/31/2021 | 15 | No | BRIGHTON GATE COMMONS, LLC | None | 9990 E GRAND RIVER AVE, BRIGHTON, MI, 48116, USA |
| 76 | Bloomfield Twp, MI (76) | BLOOMFIELD TWP P5 | Yes | Detroit | Sleep | APS | 4,136 | 3,691 | 10/10/2016 | 9/30/2026 | 80 | No | BLOOMFIELD TWP, MI, 48302, USA |
| 77 | New Hudson, MI (77) | NEW HUDSON P5 | Yes | Detroit | Sleep | APS | 4,106 | 3,758 | 4/10/2012 | 10/31/2022 | 32 | No | Milford Road Plaza, LLC | None | 30821 MILFORD RD, NEW HUDSON, MI, 48165, USA |
| 78 | Lansing, MI (78) | LANSING P5 | Yes | Detroit | Sleep | APS | 4,000 | 3,522 | 6/1/2013 | 10/31/2023 | 44 | No | 6220 S PENNSYLVANIA AVE, LANSING, MI, 48911, USA |
| 79 | Royal Oak, MI (79) | ROYAL OAK P5 | Yes | Detroit | Sleep | APS | 5,960 | 4,956 | 6/16/2011 | 6/30/2024 | 52 | No | 32500 WOODWARD AVE, ROYAL OAK, MI, 48073, USA |
| 80 | White Lake, MI (80) | WHITE LAKE P5 | Yes | Detroit | Sleep | APS | 4,000 | 3,680 | 2/28/2017 | 2/28/2027 | 84 | No | 9440 HIGHLAND RD, WHITE LAKE, MI, 48386, USA |
| 81 | Troy, MI (81) | TROY S P5 | Yes | Detroit | Sleep | APS | 4,675 | 3,971 | 11/10/2014 | 11/30/2024 | 57 | No | 272 JOHN R, TROY, MI, 48083, USA |
| 82 | Waterford, MI (82) | WATERFORD P5 | Yes | Detroit | Sleep | APS | 6,000 | 5,250 | 10/16/2011 | 3/31/2027 | 73 | No | 4997 DIXIE HIGHWAY, WATERFORD, MI, 48329, USA |
| 83 | Novi, MI (83) | NOVI P5 | No | Detroit | Sleep | APS | 2,000 | 1,723 | 10/31/2011 | 10/31/2021 | n/a | No | RAMCO-GERSHENSON PROPERTIES LP | None | 43420 W OAKS DR, NOVI, MI, 48377, USA |
| 84 | Brighton, MI (84) | BRIGHTON W P5 | No | Detroit | Sleep | APS | 4,000 | 3,600 | 5/16/2011 | 5/31/2021 | n/a | No | 8709 W GRAND RIVER, BRIGHTON, MI, 48116, USA |
| 85 | Ann Arbor, MI (85) | ANN ARBOR E P5 | Yes | Detroit | Sleep | APS | 4,274 | 3,062 | 5/16/2011 | 5/31/2021 | 15 | No | AREOLA PROPERTIES | None | 3500 WASHTENAW, ANN ARBOR, MI, 48104, USA |
| 86 | Lake Orion, MI (86) | LAKE ORION P5 | Yes | Detroit | Sleep | APS | 4,000 | 3,775 | 6/1/2014 | 5/31/2024 | 51 | No | SHOPS AT THE BROOKS OF LAKE LLC | None | 750 S. LAPEER RD, LAKE ORION, MI, 48362, USA |
| 87 | Ferndale, MI (87) | FERNDALE P5 | Yes | Detroit | Sleep | APS | 4,000 | 3,654 | 6/3/2016 | 4/30/2026 | 75 | No | B.P. Of White Lake Inc. | None | 23100 WOODWARD AVE, FERNDALE, MI, 48220, USA |
| 88 | Utica, MI (88) | UTICA E P5 | Yes | Detroit | Sleep | APS | 6,000 | 5,600 | 4/11/2011 | 3/31/2022 | 24 | No | 45040 NORTHPOINTE BLVD, UTICA, MI, 48315, USA |
| 89 | Howell, MI (89) | HOWELL P5 | Yes | Detroit | Sleep | APS | 5,000 | 4,400 | 4/1/2016 | 5/31/2024 | 51 | No | COUNTRY CORNERS SHOPPING CENTER, L.L.C | None | 4050 E GRAND RIVER AVE, HOWELL, MI, 48843, USA |
| 90 | Westland, MI (90) | WESTLAND P5 | Yes | Detroit | Sleep | APS | 5,000 | 4,500 | 4/1/2013 | 9/30/2022 | 30 | No | 7915 N WAYNE ROAD, WESTLAND, MI, 48185, USA |
| 91 | Grosse Pointe, MI (91) | GROSSE POINTE P5 | Yes | Detroit | Sleep | APS | 4,000 | 3,600 | 5/1/2016 | 3/31/2021 | 13 | No | 17145 KERCHEVAL AVE, GROSSE POINTE, MI, 48230, USA |
| 92 | Plymouth, MI (92) | PLYMOUTH P5 | Yes | Detroit | Sleep | APS | 4,000 | 3,594 | 4/1/2016 | 4/30/2024 | 50 | No | 41512 ANN ARBOR RD, PLYMOUTH, MI, 48170, USA |
| 93 | Shelby Twp, MI (93) | SHELBY TWP P5 | Yes | Detroit | Sleep | APS | 4,200 | 3,714 | 4/1/2011 | 3/31/2026 | 77 | No | 46975 VAN DYKE AVE, SHELBY TWP, MI, 48317, USA |
| 94 | Roseville, MI (94) | ROSEVILLE P5 | Yes | Detroit | Sleep | APS | 4,300 | 4,000 | 8/1/2016 | 7/31/2026 | 81 | No | 31831 GRATIOT AVE, ROSEVILLE, MI, 48066, USA |
| 95 | Taylor, MI (95) | TAYLOR P5 | Yes | Detroit | Sleep | APS | 4,000 | 3,700 | 10/1/2015 | 9/30/2025 | 68 | No | 23471 EUREKA RD, TAYLOR, MI, 48180, USA |
| 96 | Dearborn, MI (96) | DEARBORN P5 | Yes | Detroit | Sleep | APS | 4,000 | 3,500 | 3/1/2016 | 3/31/2026 | 73 | No | 22731 MICHIGAN AVE, DEARBORN, MI, 48124, USA |
| 97 | Livonia, MI (97) | LIVONIA P5 | Yes | Detroit | Sleep | APS | 4,000 | 3,500 | 7/1/2016 | 6/30/2026 | 80 | No | 29611 PLYMOUTH RD, LIVONIA, MI, 48150, USA |
| 98 | Southfield, MI (98) | SOUTHFIELD P5 | Yes | Detroit | Sleep | APS | 4,000 | 3,650 | 4/1/2016 | 3/31/2026 | 73 | No | 29119 TELEGRAPH RD, SOUTHFIELD, MI, 48034, USA |
| 99 | Bloomfield Hills, MI (99) | BLOOMFIELD AVF | Yes | Detroit | AVF | 46,000 | 38,000 | 3/1/2015 | 2/28/2025 | 60 | No | 2041 S TELEGRAPH RD, BLOOMFIELD HILLS, MI, 48302, USA |
| 100 | Saginaw, MI (100) | SAGINAW AVF | Yes | Flint-Saginaw-Bay City | AVF | 77,000 | 65,000 | 3/1/2015 | 2/28/2025 | 60 | No | 2660 TITTABAWASSEE RD, SAGINAW, MI, 48604, USA |
| 101 | Flint, MI (101) | FLINT AVF | Yes | Flint-Saginaw-Bay City | AVF | 60,000 | 52,000 | 3/1/2015 | 2/28/2025 | 60 | No | 4577 MILLER RD, FLINT, MI, 48507, USA |
| 102 | Burton, MI (102) | BURTON P5 | Yes | Flint-Saginaw-Bay City | Sleep | APS | 4,000 | 3,500 | 3/1/2016 | 3/31/2026 | 73 | No | 4242 E COURT ST, BURTON, MI, 48509, USA |
| 103 | Bay City, MI (103) | BAY CITY P5 | Yes | Flint-Saginaw-Bay City | Sleep | APS | 4,000 | 3,500 | 3/1/2016 | 3/31/2026 | 73 | No | 4150 WILDER RD, BAY CITY, MI, 48706, USA |
| 104 | Grand Blanc, MI (104) | GRAND BLANC P5 | Yes | Flint-Saginaw-Bay City | Sleep | APS | 4,000 | 3,500 | 3/1/2016 | 3/31/2026 | 73 | No | 11501 SOUTH SAGINAW ST, GRAND BLANC, MI, 48439, USA |
| 105 | Flint Township, MI (105) | FLINT P5 | Yes | Flint-Saginaw-Bay City | Sleep | APS | 4,000 | 3,500 | 3/1/2016 | 3/31/2026 | 73 | No | 4002 MILLER ROAD, FLINT, MI, 48507, USA |
| 106 | Saginaw, MI (106) | SAGINAW P5 | Yes | Flint-Saginaw-Bay City | Sleep | APS | 4,000 | 3,500 | 3/1/2016 | 3/31/2026 | 73 | No | 4605 BAY RD, SAGINAW, MI, 48604, USA |
| 107 | Fort Wayne, IN (107) | FORT WAYNE AVF | Yes | Fort Wayne | AVF | 60,000 | 52,000 | 3/1/2015 | 2/28/2025 | 60 | No | 4350 W JEFFERSON BLVD, FORT WAYNE, IN, 46804, USA |
| 108 | Grand Rapids, MI (108) | GRAND RAPIDS AVF | Yes | Grand Rapids-Kalamazoo-Battle Creek | AVF | 77,000 | 65,000 | 3/1/2015 | 2/28/2025 | 60 | No | 4375 28TH ST SE, GRAND RAPIDS, MI, 49512, USA |
| 109 | Portage, MI (109) | PORTAGE AVF | Yes | Grand Rapids-Kalamazoo-Battle Creek | AVF | 60,000 | 52,000 | 3/1/2015 | 2/28/2025 | 60 | No | 6303 S WESTNEDGE AVE, PORTAGE, MI, 49002, USA |
| 110 | Muskegon, MI (110) | MUSKEGON AVF | Yes | Grand Rapids-Kalamazoo-Battle Creek | AVF | 50,000 | 43,000 | 3/1/2015 | 2/28/2025 | 60 | No | 5057 HARVEY ST, MUSKEGON, MI, 49444, USA |
| 111 | Grandville, MI (111) | GRANDVILLE AVF | Yes | Grand Rapids-Kalamazoo-Battle Creek | AVF | 60,000 | 52,000 | 3/1/2015 | 2/28/2025 | 60 | No | 3425 WILSON AVE SW, GRANDVILLE, MI, 49418, USA |
| 112 | Battle Creek, MI (112) | BATTLE CREEK AVF | Yes | Grand Rapids-Kalamazoo-Battle Creek | AVF | 50,000 | 43,000 | 3/1/2015 | 2/28/2025 | 60 | No | 6100 B DR N, BATTLE CREEK, MI, 49014, USA |

| Store # | Store Name (Original) | Store Name | Include In Liquidation | Marketing Area | Type | Format | SF | SF | Beginning Date | End Date | Term | Property | Landlord | Master Lease | Address |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 113 | Comstock Park, MI (113) | ALPINE AVF | Yes | Grand Rapids-Kalamazoo-Battle Creek | Flagship | AVF | 111,077 | 63,525 | 11/09/1999 | 2/28/2037 | 204 | Yes | LCN PARTNERS | LCN AVF WARREN (MI) LLC | 4273 ALPINE AVE NW STE B, COMSTOCK PARK, MI, 49321, USA |
| 114 | Holland, MI (114) | HOLLAND AVF | Yes | Grand Rapids-Kalamazoo-Battle Creek | Standard | AVF | 39,950 | 38,443 | 8/18/1993 | 2/28/2037 | 204 | Yes | STONEBRIAR | SCF RC Funding III, LLC | 12610 FELGH ST STE 100, HOLLAND, MI, 49424, USA |
| 115 | Muskegon, MI (115) | MUSKEGON PS | Yes | Grand Rapids-Kalamazoo-Battle Creek | Sleep | APS | 4,000 | 3,519 | 5/28/2016 | 10/31/2021 | 20 | No | SVH PROPERTIES, LLC | None | 1664 E STERNBERG RD, MUSKEGON, MI, 49444, USA |
| 116 | Portage, MI (116) | PORTAGE PS | Yes | Grand Rapids-Kalamazoo-Battle Creek | Sleep | APS | 4,018 | 3,632 | 5/24/2014 | 5/31/2024 | 51 | No | NATIONAL SHOPPING PLAZAS, INC. | None | 6947 SOUTH WESTNEDGE AVE, PORTAGE, MI, 49002, USA |
| 117 | Grandville, MI (117) | GRANDVILLE PS | Yes | Grand Rapids-Kalamazoo-Battle Creek | Sleep | APS | 4,229 | 3,773 | 3/1/2015 | 5/31/2024 | 51 | No | CWD Grandville 1, LLC | None | 4560 IVANREST AVE SW, GRANDVILLE, MI, 49418, USA |
| 118 | Kalamazoo, MI (118) | KALAMAZOO PS | Yes | Grand Rapids-Kalamazoo-Battle Creek | Sleep | APS | 3,481 | 3,186 | 3/8/2013 | 3/31/2023 | 37 | No | Kalamazoo Mall LLC | None | 338 N DRAKE RD, KALAMAZOO, MI, 49009, USA |
| 119 | Grand Rapids, MI (119) | GRAND RAPIDS PS | Yes | Grand Rapids-Kalamazoo-Battle Creek | Sleep | APS | 5,562 | 4,903 | 10/15/2014 | 2/28/2037 | 204 | No | Broadstone | BROADSTONE AVF MICHIGAN, LLC | 3500 28TH ST SE, GRAND RAPIDS, MI, 49512, USA |
| 120 | Grand Rapids, MI (120) | GRAND RAPIDS N PS | Yes | Grand Rapids-Kalamazoo-Battle Creek | Sleep | APS | 4,000 | 3,687 | 9/12/2016 | 8/31/2026 | 78 | No | EAST BELTLINE DEVELOPMENT, LLC | None | 2036 EAST BELTLINE AVE, GRAND RAPIDS, MI, 49525, USA |
| 121 | Comstock Park, MI (121) | ALPINE N PS | Yes | Grand Rapids-Kalamazoo-Battle Creek | Sleep | APS | 4,300 | 3,797 | 5/16/2011 | 10/31/2022 | 32 | No | ALPINE VALLEY, L.L.C. | None | 4174 ALPINE AVE NW STE A, COMSTOCK PARK, MI, 49321, USA |
| 122 | Lancaster, PA (122) | LANCASTER (#46) | Yes | Harrisburg | Standard | WLF | 60,000 | 52,500 | 9/1/2002 | 11/30/2037 | 213 | Yes | VEREIT REAL ESTATE LP | Vereit | 2040 Bennett Avenue, Lancaster, PA, 17601, USA |
| 123 | York, PA (123) | YORK (#44) | Yes | Harrisburg | Standard | WLF | 60,000 | 52,500 | 5/1/2002 | 11/30/2037 | 213 | Yes | VEREIT REAL ESTATE LP | COLE AVF PORTFOLIO | 380 North Northern Way, York, PA, 17402, USA |
| 124 | Harrisburg, PA (124) | HARRISBURG (#42) | Yes | Harrisburg | Standard | WLF | 61,900 | 51,900 | 1/19/1999 | 11/30/2037 | 213 | No | STORE CAPITAL | Store Master Funding XII, LLC | 4661 Lindle Road, Harrisburg, PA, 17111, USA |
| 125 | Hanover, PA (125) | HANOVER (#50) | Yes | Harrisburg | Standard | WLF | 34,600 | 30,600 | 5/19/2008 | 11/30/2037 | 213 | Yes | VEREIT REAL ESTATE LP | Vereit | 371 Eisenhower Drive, Hanover, PA, 17331, USA |
| 126 | Mechanicsburg, PA (126) | MECHANICSBURG (#43) | Yes | Harrisburg | Standard | WLF | 45,567 | 42,567 | 8/22/2010 | 7/31/2020 | 5 | No | LESTER ASSOCIATES | None | 75 Gateway Drive, Mechanicsburg, PA, 17055, USA |
| 127 | Chambersburg, PA (127) | CHAMBERSBURG (#61) | Yes | Harrisburg | Standard | APS | 27,262 | 25,762 | 1/1/2009 | 12/27/2038 | 226 | No | BRITM, LLC | None | 480 Gateway Avenue, Chambersburg, PA, 17201, USA |
| 128 | Altoona, PA (128) | ALTOONA (#28) | Yes | Johnstown | Standard | WLF | 53,136 | 43,176 | 1/1/1978 | 4/30/2038 | 218 | Yes | VEREIT REAL ESTATE LP | Store Master Funding XII, LLC | 4 Sellers Drive/Altoona, Altoona, PA, 16601, USA |
| 129 | Johnstown, PA (129) | JOHNSTOWN (#32) | Yes | Johnstown | Standard | WLF | 40,258 | 37,258 | 9/1/1995 | 11/30/2037 | 213 | Yes | VEREIT REAL ESTATE LP | Vereit | 1130 Scalp Avenue, Johnstown, PA, 15904, USA |
| 130 | State College, PA (130) | STATE COLLEGE (#40) | Yes | Johnstown | Standard | WLF | 50,000 | 51,402 | 5/1/2007 | 11/21/2037 | 213 | No | PATTON CENTER ASSOCIATES LP | None | 138 Valley Vista Drive, State College, PA, 16803, USA |
| 131 | Lansing, MI (131) | LANSING AVF | Yes | Lansing | Flagship | AVF | 71,581 | 77,379 | 10/25/2000 | 2/28/2037 | 204 | Yes | BROADSTONE | BROADSTONE AVF MICHIGAN, LLC | 8748 W SAGINAW HWY, LANSING, MI, 48917, USA |
| 132 | Jackson, MI (132) | JACKSON AVF | Yes | Lansing | Standard | AVF | 33,214 | 30,012 | 8/5/1992 | 7/31/2024 | 53 | No | ARGYLE ACRES MALL, LLC | None | 950 N WEST AVE, JACKSON, MI, 49202, USA |
| 133 | E Lansing, MI (133) | OKEMOS PS | Yes | Lansing | Sleep | APS | 5,855 | 4,457 | 5/16/2011 | 8/31/2023 | 42 | No | RICHARD AND MICHELLE BROWN | None | 2660 E. GRAND RIVER, EAST LANSING, MI, 48823, USA |
| 134 | East Lansing, MI (134) | EAST LANSING PS | Yes | Lansing | Sleep | APS | 3,974 | 3,495 | 7/16/2016 | 7/31/2021 | 17 | No | River Castle Development, LLC | None | 1595 LAKE LANSING ROAD, EAST LANSING, MI, 48823, USA |
| 135 | Lansing, MI (135) | LANSING PS | Yes | Lansing | Sleep | APS | 4,590 | 3,689 | 5/16/2011 | 12/31/2021 | 22 | No | John Doezema Real Estate | None | 6007 W SAGINAW HWY, LANSING, MI, 48917, USA |
| 136 | Wexford, PA (136) | WEXFORD (#4, 29, 30 CC) | Yes | Pittsburgh | Standard | LVF | 53,000 | 48,823 | 10/1/2009 | 2/28/2038 | 216 | No | STORE CAPITAL | Store Master Funding XII, LLC | 10688 PERRY HIGHWAY, WEXFORD, PA, 15090, USA |
| 137 | Monroeville, PA (137) | MONROEVILLE (#3 CC, 20, 21 CC) | Yes | Pittsburgh | Standard | WLF | 74,600 | 67,545 | 7/1/2004 | 11/30/2037 | 213 | Yes | VEREIT REAL ESTATE LP | COLE AVF PORTFOLIO / LEVIN FAMILY P | 124 LEVIN WAY, MONROEVILLE, PA, 15146, USA |
| 138 | Mcmurray, PA (138) | SOUTH HILLS (#2, 32 CC) | Yes | Pittsburgh | Standard | WLF | 74,600 | 67,964 | 7/1/2000 | 11/30/2037 | 213 | No | STORE CAPITAL | Store Master Funding XII, LLC | 3684 WASHINGTON ROAD, MCMURRAY, PA, 15317, USA |
| 139 | Greensburg, PA (139) | GREENSBURG (#40, 41 CC) | Yes | Pittsburgh | Standard | LVF | 55,314 | 50,637 | 8/1/2011 | 10/31/2021 | 20 | No | CBLIVESTMORELAND, LP | None | 5280 ROUTE 30, GREENSBURG, PA, 15601, USA |
| 140 | Pittsburgh, PA (140) | THE POINTE (#15, 35 CC) | Yes | Pittsburgh | Standard | LVF | 68,730 | 61,886 | 7/1/1999 | 11/30/2037 | 213 | No | STORE CAPITAL | Store Master Funding XII, LLC | 400 CHALVET DRIVE, PITTSBURGH, PA, 15275, USA |
| 141 | Pleasant Hills, PA (141) | CURRY HOLLOW (#47, 48 CC) | Yes | Pittsburgh | Standard | LVF | 90,500 | 87,500 | 7/1/1991 | 9/30/2026 | 79 | No | PAUL PROPERTY MANAGEMENT, LP | None | 292 CURRY HOLLOW RD, PLEASANT HILLS, PA, 15236, USA |
| 142 | Mount Pleasant, PA (142) | MOUNT PLEASANT (#1, 22 CC) | Yes | Pittsburgh | Standard | LVF | 34,500 | 30,766 | 1/1/1924 | 4/30/2038 | 218 | No | STORE CAPITAL | Store Master Funding XII, LLC | 600 MAIN STREET, MT. PLEASANT, PA, 15666, USA |
| 143 | Cranberry Township, PA (143) | CRANBERRY (#60) | Yes | Pittsburgh | Sleep | LM | 5,000 | 4,500 | 5/1/2012 | 4/30/2022 | 26 | No | WALNUT CAPITAL PARTNERS - CRANBERRY SC | None | 20012 ROUTE 19, CRANBERRY, PA, 16066, USA |
| 144 | Mount Lebanon, PA (144) | MOUNT LEBANON (#36) | Yes | Pittsburgh | Sleep | LM | 3,990 | 3,490 | 6/28/2013 | 7/31/2023 | 41 | No | RELIANCE PITTSBURGH LLC | None | 1600 WASHINGTON RD, MT LEBANON, PA, 15228, USA |
| 145 | Butler, PA (145) | BUTLER (#75) | Yes | Pittsburgh | Sleep | LM | 5,010 | 5,010 | 11/18/2016 | 2/28/2027 | 84 | No | BUTLER SITEWORK ASSOCIATES LLC | None | 620 Butler Crossing Suite 5, BUTLER, PA, 16001, USA |
| 146 | Pittsburgh, PA (146) | SHADYSIDE (#70) | Yes | Pittsburgh | Sleep | LM | 7,145 | 6,645 | 10/10/2014 | 4/30/2024 | 50 | No | MCKNIGHT SOUTH EAST LP | None | 5438 BAUM BLVD, PITTSBURGH, PA, 15232, USA |
| 147 | Washington, PA (147) | WASHINGTON (#63) | Yes | Pittsburgh | Sleep | LM | 7,800 | 7,300 | 3/29/2013 | 4/30/2023 | 38 | No | WASHINGTON MALL - JCP ASSOCIATES, LTD | None | 56 TRINITY POINT DR, WASHINGTON, PA, 15301, USA |
| 148 | Pittsburgh, PA (148) | FOX CHAPEL (#61) | Yes | Pittsburgh | Sleep | LM | 4,000 | 3,500 | 5/1/2012 | 4/30/2022 | 26 | No | WATERWORKS PHASE II | None | 956 FREEPORT ROAD, PITTSBURGH, PA, 15238, USA |
| 149 | Pittsburgh, PA (149) | ROBINSON (#64) | Yes | Pittsburgh | Sleep | LM | 5,593 | 5,093 | 8/30/2013 | 12/31/2023 | 46 | No | MCROBIN LTC AND MOSITES FAMILY GST TRU | None | 6528 STEUBENVILLE PIKE, PITTSBURGH, PA, 15205, USA |
| 150 | Indiana, PA (150) | INDIANA (#33) | Yes | Pittsburgh | Sleep | LM | 4,800 | 4,300 | 6/7/2013 | 9/30/2023 | 43 | No | LIBBY REGENCY ASSOCIATES LP | None | 1570 OAKLAND AVE, INDIANA, PA, 15701, USA |
| 151 | Monroeville, PA (151) | MONROEVILLE (#62) | Yes | Pittsburgh | Sleep | LM | 4,319 | 4,000 | 6/1/2012 | 6/30/2022 | 28 | No | CE-MONROEVILLE 3820 WM PENN LP | None | 3820 WILLIAM PENN HIGHWAY, MONROEVILLE, PA, 15146, USA |
| 152 | St. Louis, MO (152) | AFFTON | Yes | St. Louis | Standard | AVF | 41,352 | 32,759 | 1/17/2018 | 12/31/2023 | 46 | No | South Lindergh Property LLC | None | 5711 S LINDBERGH BLVD, SAINT LOUIS, MO, 63123, USA |
| 153 | O'fallon, IL (153) | FAIRVIEW | Yes | St. Louis | Standard | AVF | 39,676 | 32,627 | 1/17/2018 | 12/31/2023 | 46 | No | Rothman-O'Fallon LLC | None | 1776 WEST US 50, O FALLON, IL, 62269, USA |
| 154 | O'fallon, MO (154) | O FALLON | Yes | St. Louis | Standard | AVF | 40,884 | 31,674 | 1/16/2018 | 12/31/2023 | 46 | No | O'Fallon Missouri Properties, LLC | None | 2101 E TERRA LN, O FALLON, MO, 63366, USA |
| 155 | Bridgeton, MO (155) | BRIDGETON | Yes | St. Louis | Standard | AVF | 45,314 | 35,975 | 1/17/2018 | 12/31/2023 | 46 | No | JS Westfio, LLC | None | 925 NORTHWEST PLAZA, SAINT ANN, MO, 63074, USA |
| 156 | Richmond Heights, MO (156) | RICHMOND (DESIGN STUDIO) | Yes | St. Louis | Design | AVF | 3,670 | 3,343 | 11/15/2017 | 7/31/2024 | 53 | No | Hanley LM Properties, LLC | None | 1516 S HANLEY RD, SAINT LOUIS, MO, 63144, USA |
| 157 | Holland, OH (157) | TOLEDO AVF | Yes | Toledo | Flagship | AVF | 91,000 | 80,731 | 8/27/2013 | 8/31/2037 | 205 | Yes | STORE CAPITAL | STORE SPE AVF I 2017-1, LLC | 1301 E MALL DR, HOLLAND, OH, 43528, USA |
| 158 | Toledo, OH (158) | TOLEDO PS | Yes | Toledo | Sleep | APS | 4,500 | 4,045 | 5/24/2013 | 11/30/2023 | 45 | No | REED HOLDING-TALMADGE, LLC | None | 4600 TALMADGE RD, TOLEDO, OH, 43623, USA |
| 159 | Holland, OH (159) | HOLLAND PS (TOLEDO) | Yes | Toledo | Sleep | APS | 3,485 | 3,135 | 7/13/2018 | 8/31/2028 | 102 | No | Kiezi Properties BG, LLC | None | 6760 AIRPORT HWY SUITE B, HOLLAND, OH, 43528, USA |
| 160 | Perrysburg Township, OH (160) | PERRYSBURGH (FREEMONT) | Yes | Toledo | Sleep | APS | 3,500 | n/a | 2/8/2019 | 4/30/2029 | 110 | No | 10411 Fremont Pike, LLC | None | 10411 FREMONT PIKE, PERRYSBURG, OH, 43551, USA |
| 161 | Traverse City, MI (161) | TRAVERSE CITY AVF | Yes | Traverse City-Cadillac | Standard | AVF | 63,120 | 49,903 | 10/21/1998 | 2/28/2037 | 204 | Yes | BROADSTONE | BROADSTONE AVF MICHIGAN, LLC | 1775 OAK HOLLOW DR, TRAVERSE CITY, MI, 49686, USA |
| 162 | Petoskey, MI (162) | PETOSKEY AVF | Yes | Traverse City-Cadillac | Standard | AVF | 48,115 | 49,765 | 10/5/2002 | 10/31/2027 | 212 | Yes | STORE CAPITAL | STORE SPE AVF II 2017-2, LLC | 1619 ANDERSON ROAD, PETOSKEY, MI, 49770, USA |
| 163 | Traverse City, MI (163) | TRAVERSE CITY PS | Yes | Traverse City-Cadillac | Sleep | APS | 4,509 | 4,104 | 8/30/2016 | 6/30/2026 | 78 | No | ANCHOR MANISTEE | None | 3675 N US 31 S SUITE B, TRAVERSE CITY, MI, 49684, USA |
| 164 | Frederick, MD (164) | FREDERICK (#7) | Yes | Washington DC | Standard | WLF | 60,000 | 52,500 | 7/1/2003 | 1/31/2024 | 47 | No | Frederick-BILCO, LLP | None | 1215 West Patrick Street, Frederick, MD, 21702, USA |
| 165 | Hagerstown, MD (165) | HAGERSTOWN (#9) | Yes | Washington DC | Standard | WLF | 66,829 | 60,000 | 2/1/2004 | 5/23/2029 | 111 | No | OUTLET VILLAGE OF HAGERSTOWN LP | None | 900 Premium Outlets Boulevard, Hagerstown, MD, 21740, USA |
| 166 | Leesburg, VA (166) | LEESBURG (#48) | Yes | Washington DC | Standard | WLF | 46,030 | 41,430 | 8/24/2012 | 11/30/2037 | 213 | Yes | STORE CAPITAL | Store Master Funding XII, LLC | 131 Fort Evans Road NE, Leesburg, VA, 20176, USA |
| 167 | Frederick, MD (167) | FREDERICK OUTLET (#52) | No | Washington DC | Standard | WLF | 40,484 | 30,484 | 9/17/2014 | 1/31/2020 | n/a | No | RAVID FREDERICK, LLC | None | 5830 Ballenger Creek Pike, Frederick, MD, 21703, USA |
| 168 | Saint Clairsville, OH (168) | SAINT CLAIRSVILLE (#50) | Yes | Wheeling | Standard | LVF | 24,908 | 21,000 | 9/29/2017 | 10/31/2022 | 32 | No | OHIO VALLEY MALL, LLC | None | 67661 MALL RING RD, SAINT CLAIRSVILLE, OH, 43950, USA |
| 169 | Boardman, OH (169) | BOARDMAN (#52) | Yes | Youngstown | Standard | LVF | 52,000 | n/a | 8/31/2018 | 8/31/2028 | 102 | No | A&R Properties | None | 300 BOARDMAN POLAND ROAD, BOARDMAN, OH, 44512, USA |
| 170 | Hermitage, PA (170) | HERMITAGE (#54) | Yes | Youngstown | Standard | LVF | 42,000 | n/a | 9/21/2018 | 9/30/2023 | 43 | No | A&R Properties | None | 1340 N. Hermitage Road Suite 1 Route 18, Hermitage, PA, 16148, USA |
| 171 | Niles, OH (171) | NILES (#56) | Yes | Youngstown | Standard | LVF | 52,000 | n/a | 10/31/2018 | 10/31/2028 | 104 | No | A&R Properties | None | 836 YOUNGSTOWN-WARREN RD, NILES, OH, 44446, USA |
| Totals | | | | | | | 5,879,611 | 4,932,964 | | | | | | | |

**AVF Holding Company, Inc.**
**Exhibit B**

| Expense Budget (1) |
| --- |

**Advertising**

| | |
| --- | --- |
| Media (2) | 2,097,000 |
| Signs (3) | 1,236,760 |
| Sign Walkers | 566,588 |
| Subtotal Advertising | 3,900,348 |

**Supervision**

| | |
| --- | --- |
| Fees / Wages / Expenses (4) | 2,160,913 |
| Subtotal Supervision | 2,160,913 |

| | |
| --- | --- |
| Miscellaneous /Legal (5) | 35,000 |

| | |
| --- | --- |
| Total Expenses | 6,096,261 |

*Note(s):*

*1. This Expense Budget contemplates a sale term of March, 5, 2020 through April 26, 2020.  The Expense Budget remains subject to modification in the event that this term is extended, or as otherwise agreed to by the parties.*

*2. Amounts attributable to media shall only be spent in consultation with the Company.*

*3. Includes Sales Tax.*

*4. Includes Deferred Compensation and Insurance.*

*5. Any legal expenses associated with issues raised by or disputes with landlords, including (without limitation) negotiations in respect of landlord side letters, shall be in addition to and not part of the budgeted legal expenses.*

## Store Closing Procedures[1]

1.      The Sales shall be conducted so that the Stores in which Sales are to occur will remain open no longer than during the normal hours of operation or such hours as otherwise provided for in the respective leases for the Stores.

2.      The Store Closing Sales shall be conducted in accordance with applicable state and local "Blue Laws," where applicable, so that no Store Closing Sale shall be conducted on Sunday unless the Debtors had been operating such Stores on a Sunday prior to the commencement of the Store Closing Sales.

3.      On "shopping center" property, the Consultant shall not distribute handbills, leaflets or other written materials to customers outside of any Stores' premises, unless permitted by the lease or if distribution is customary in the "shopping center" in which such Stores is located; *provided* that the Consultant may solicit customers in the Stores themselves. On "shopping center" property, the Consultant shall not use any flashing lights or amplified sound to advertise the Store Closing Sales or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

4.      At the conclusion of the Store Closing Sales, the Consultant shall, subject to the Consulting Agreement, vacate the Stores and the Distribution Centers in broom clean condition; *provided* that Consultant may abandon any M&E not sold in the Store Closing Sales at the conclusion of the Store Closing Sales, without cost or liability of any kind to the Consultant. The Debtors will have the option to remove the M&E at their own cost prior to the termination date. Any abandoned M&E left in a Stores after a lease is rejected shall be deemed abandoned to the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party and without waiver of any damage claims against the Debtors. For the avoidance of doubt, as of the Sale Termination Date, the Consultant may abandon, in place and without further responsibility or liability of any kind, any M&E.

5.      The Consultant and the Debtors may advertise each Store Closing Sale as a "store closing," "sale on everything," "everything must go," or similar themed sale, and to the extent permitted in the Approval Orders, "going out of business". The Consultant and the Debtors may also have "countdown to closing" signs prominently displayed in a manner consistent with these Store Closing Procedures. All signs, banners, ads and other advertising collateral, promotions, and campaigns will be approved by the Debtors in accordance with these Store Closing Procedures.

6.      The Consultant shall be permitted to utilize sign walkers, display, hanging signs, and interior banners in connection with the Sales; *provided* that such sign walkers, display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner. The Debtors and the Consultant shall not use neon or day-glo on its sign walkers, display, hanging signs, or interior banners. Furthermore, with respect to enclosed mall locations, no exterior signs

---

[1]     Capitalized terms used but not defined in these Store Closing Procedures have the meanings given to them in the Interim Order to which these Store Closing Procedures are attached as **Exhibit 1** or the Motion to which the Interim Order is attached as **Exhibit A**, as applicable.

or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Store Closing Procedures.  In addition, the Debtors and the Consultant shall be permitted to utilize exterior banners at (i) non-enclosed mall Stores and (ii) enclosed mall Stores to the extent the entrance to the applicable Stores does not require entry into the enclosed mall common area; *provided*, however, that such banners shall be located or hung so as to make clear that the Store Closing Sales are being conducted only at the affected Stores, and shall not be wider than the storefront of the Closing Stores.  In addition, the Debtors and the Consultant shall be permitted to utilize sign walkers in a safe and professional manner and in accordance with the terms of the Order.  Nothing contained in these Store Closing Procedures shall be construed to create or impose upon the Debtors or the Consultant any additional restrictions not contained in the applicable lease agreement.

7.    The purchasers of any Merchandise sold during the Store Closing Sales shall be permitted to remove the Merchandise through the front of the Closing Stores, or through the back or alternative shipping areas at any time.

8.    Conspicuous signs shall be posted in the cash register areas of each of the affected Stores to effect that "all sales are final."

9.    Except with respect to the hanging of exterior banners, the Consultant shall not make any alterations to the storefront or exterior walls of any Stores, except as authorized by the applicable lease.

10.    The Consultant shall not make any alterations to interior or exterior Stores lighting, except as authorized by the applicable lease.  No property of the landlord of a Stores shall be removed or sold during the Store Closing Sales.  The hanging of exterior banners or in-store signage and banners shall not constitute an alteration to a Stores.

11.    The Consultant shall keep Stores premises and surrounding areas clean and orderly consistent with present practices.

12.    Subject to the provisions of the Consulting Agreement, the Consultant shall have the right to use and sell all M&E.  The Consultant may advertise the sale of the M&E in a manner consistent with these guidelines.  The purchasers of any M&E sold during the Store Closing Sales shall be permitted to remove the M&E either through the back or alternative shipping areas at any time, or through other areas after applicable business hours, *provided, however* that the foregoing shall not apply to *de minimis* M&E sales made whereby the item can be carried out of the Closing Stores in a shopping bag.  For the avoidance of doubt, as of the Sale Termination Date, the Consultant and the Debtors may abandon, in place and without further responsibility, any M&E.

13.    At the conclusion of the Store Closing Sales at each Stores, pending assumption or rejection of applicable leases, the landlords of the Closing Stores shall have reasonable access to the Closing Stores' premises as set forth in the applicable leases.  The Debtors, the Consultant, and their representatives and agents shall continue to have access to the Closing Stores as provided for in the Consulting Agreement.

14.    The rights of landlords against the Debtors for any damages to a Stores shall be reserved in accordance with the provisions of the applicable lease.

15.     If and to the extent that the landlord of any Stores affected hereby contends that the Debtors or the Consultant is in breach of or default under these Store Closing Procedures, such landlord shall email or deliver written notice by overnight delivery to the Debtors and the Consultant as follows:

> If to the Debtors:
>
> Art Van Furniture, LLC
> 6500 14 Mile Road
> Warren, MI 48092
> Attention: Michael Zambricki
>
> with copies (which shall not constitute notice) to:
>
> Benesch, Friedlander, Coplan & Aronoff LLP
> 222 Delaware Avenue, Suite 801
> Wilmington, Delaware 19801
> Attn: Gregory Werkheiser & Michael J. Barrie
>
> -and-
>
> Montgomery McCracken Walker & Rhoads LLP
> 437 Madison Avenue
> New York, NY 10022
> Attn. Maura I. Russell

If the parties are unable to resolve the dispute, either the landlord or the Debtors shall have the right to schedule a hearing before the Court on no less than five (5) days' written notice to the other party, served by email or overnight delivery.