**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| ART VAN FURNITURE, LLC, *et al.*,[1] | ) Case No. 20-10553 (CSS) |
| Debtors. | ) (Joint Administration Requested) |

**DECLARATION OF DENNIS STOGSDILL OF ALVAREZ & MARSAL NORTH AMERICA, LLC IN SUPPORT OF DEBTORS' MOTION SEEKING ENTRY OF INTERIM AND FINAL ORDERS (I) APPROVING PROCEDURES FOR STORE CLOSING SALES, (II) AUTHORIZING CUSTOMARY BONUSES TO EMPLOYEES OF CLOSING STORES, (III) AUTHORIZING ASSUMPTION OF THE CONSULTING AGREEMENT, AND (IV) GRANTING RELATED RELIEF**

I, Dennis Stogsdill, make this declaration pursuant to 28 U.S.C. § 1746:

1. I am a managing director at Alvarez & Marsal North America, LLC ("A&M"), which has been advising Art Van Furniture, LLC, and its affiliated debtors and debtors in possession (collectively, the "Debtors") on their restructuring and deleveraging efforts at certain times since August 2019. I have more than 20 years of management consulting and restructuring experience serving as a financial advisor and providing performance improvement services to corporations, various creditor groups, equity owners, and directors of underperforming companies. I have significant experience assisting distressed retail companies with day-to-day management activities, including development of business plans, cash flow management, and implementation

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463). The location of the Debtors' service address in these chapter 11 cases is: 6500 East 14 Mile Road, Warren Michigan 48092.

13171279 v5

of liquidity and cost saving strategies, including store closing strategies. My prior retail restructuring experience includes advisory roles in chapter 11 cases such as Sears Holdings, Fairway Markets, and Fresh & Easy Markets.

2. A&M is a global business advisory firm that provides multidisciplinary solutions to complex challenges and opportunities. The restructuring and turnaround experts at A&M help management stabilize finances and operations to reassure all parties-in-interest that proactive steps are being taken to enhance value. A&M's professionals have a deep expertise in crisis situations, allowing them to ascertain key issues quickly and react immediately on behalf of their clients. A&M's professionals develop liquidity forecasts, implement cash flow preservation strategies, obtain and consult regarding financing, and guide complex debt restructuring, among other services.

3. Since my retention, I have overseen a team of individuals assisting the Debtors' management team with, among other things, managing and forecasting the Debtors' liquidity position, evaluating store profitability on a 4-wall basis, pursuing alternative sale and financing options, and other financial analysis and planning. Accordingly, I am knowledgeable and familiar with the Debtors' day-to-day operations, business and financial affairs, cash flow needs and projections, and personnel. I am also familiar with the Debtors' supply chain and the status of the Debtors' relationships with various vendors, suppliers, and service-providers.

4. I submit this declaration (this "Declaration") in support of the *Debtors' Motion for Entry of Interim and Final Orders (I) Approving Procedures for Store Closing Sales, (II) Authorizing Customary Bonuses to Employees of Closing Stores, (III) Authorizing Assumption of the Consulting Agreement, and (IV) Granting Related Relief* (the "Store Closings Motion").

2

5.  Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by the Debtors' employees or A&M employees working with the Debtors, or my opinion based upon experience, knowledge, and information concerning the Debtors' operations and the furniture retail industry. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Debtors.

## Store Closings Motion

**A.    Closing Stores and Store Closing Procedures.**

6.  As of the Petition Date, the Debtors operate 169 locations, including 92 furniture and mattress showrooms and 77 freestanding mattress and specialty locations. The Company does business under brand names, including Art Van Furniture, Pure Sleep, Scott Shuptrine Interiors, Levin Furniture, Levin Mattress, and Wolf Furniture. The Company was founded in 1959 and was owned by its founder, Art Van Elslander, until it was sold to funds affiliated with Thomas H. Lee Partners, L.P. ("THL") in March 2017. As part of this transaction, THL acquired the operating assets of the Company and certain real estate investment trusts, who closed the transaction alongside THL, acquired the owned real estate portfolio of the Company, and entered into long-term leases with Art Van. The proceeds from the sale-leaseback transaction were used to fund the purchase price paid to the selling shareholders. Art Van acquired Pennsylvania-based Levin Furniture and Wolf Furniture in November 2017 through similar transaction structures. As of the Petition Date, the Company operates stores throughout Michigan, Indiana, Ohio, Illinois, Pennsylvania, Maryland, Missouri, and Virginia.

7.  Commencing in or about January 2020, in the wake of extreme market conditions and limited liquidity, the Company began to explore the various options available to it, namely,

the sale of some or all of the business brands (the "Going Concern Options"), and, as a last resort embarked on a full or partial chain liquidation of the business (the "Liquidation Options"). Toward that end, while others took the lead on pursuing the Going Concern Options, I lead the team in connection with the solicitation and evaluation of the Liquidation Options.[2]

**B.     Consultant and Consulting Agreement.**

13.    Faced with the impending liquidity crisis, the Debtors' management team and advisors, including my team at A&M and me, determined that it was necessary to hire a liquidator to assist with the Sales.

14.    Based on my retail experience, the number of stores currently designated for closure by the Debtors (the "Designated Closing Stores") that simultaneously need to be closed and the complexity of a furniture GOB, I believe a national liquidator, such as the Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners LLC (the "Consultant"), with significant experience with large-scale liquidations, provides the best chance at a smooth liquidation process that will maximize the value of the Store Closure Assets.  In addition, the Debtors retained the services of Montgomery McCracken Walker & Rhoads LLP ("MMW&R"). A&M reached out to five (5) of the national liquidation firms, to solicit proposals from such firms to serve as a consultant to the Debtors in connection with the Debtors conducting of the Sale. Additionally, A&M contacted several other potential buyers or liquidators of assets. With the consent of the Debtors, certain of the liquidation firms formed contractual joint ventures, and the process culminated in the Debtors receiving proposals from two bidding groups.   Initially the proposal submitted by the Consultant contemplated a fee payable by the estate to the Consultant. As the

---

[2]    Prior to the Petition Date, the Debtors had engaged the services of Evercore Group, L.L.C., to explore and if available secure the Alternative Financing Options and/or Going Concern Options.

process unfolded, the Consultant submitted the modified proposal set forth in the Consulting Agreement, which provided for no fee being payable by the estate to the Consultant.[3]  Ultimately, after reviewing the proposals and consulting with their advisors, the Debtors and their advisors selected the Consultant, and the terms set forth in the Consulting Agreement as providing the best alternative for the conduct of the Store Closings and Sales.  The terms of the Consulting Agreement are the result of a reasonable due diligence and solicitation process, are the product of arm's-length bargaining, and in the Debtors' business judgment provide the Debtors with the necessary flexibility to effectuate the Store Closings, while at the same time pursue the Going Concern Options in connection with the Levin and Wolf locations.

15.    Accordingly, the Debtors and the Consultant entered into the Consulting Agreement attached as <u>Exhibit 3</u> to <u>Exhibit B</u> to the Store Closings Motion, which will govern the terms of the Consultant's engagement.  The Consulting Agreement will enable the Debtors to use the experience, skills, and resources of the Consultant to effectively and efficiently assist with the Sales and, thus, significantly improve the potential value to be received through the Sales for the benefit of all stakeholders.   Value realized from the Designated Closing Stores will inure to

---

[3]    In connection with making this proposal, after arm's-length and extensive negotiations, these discussions ultimately yielded a series of agreements under which (a) the Debtors determined to engage the Consultant to provide the full range of asset disposition consulting services required by the Debtors in respect of merchandise inventories, fixed assets, receivables (subject to a Debtors' option), and intellectual property, (b) HGB AVF Lending, LLC ("<u>HGB</u>"), an entity controlled by affiliates of Hilco and Gordon Brothers, entered into an agreement with KKR under which HGB acquired KKR's interests in the Term Loans (and as part of such transaction GBH agreed to share a portion of any recovery, if any, it may later receive on account of the Term Loans), and (c) the Consultant simultaneously agreed with the Debtors that the Consultant would **not** earn or be paid any consulting or other fee or compensation from the Debtors or their estates, other than reimbursement of certain out-of-pocket expenses incurred in connection with the conduct of the Store Closing Sales, any such reimbursement being strictly in accordance with a budget agreed to by the Debtors and the Debtors' secured lenders.

5

the benefit of the Debtors' estates.  Further, the estate is obligated only to reimburse the Consultant for the Consultant Incurred Expenses set forth on the Budget annexed to the Consulting Agreement and any Supplemental Budget that may be agreed to by the Debtors (after consultation with the Secured Lenders) and the Consultant in connection with the marketing and sale of the Debtors' M&E, Real Estate, Receivables (if requested by the Debtors) and Intellectual Property Assets.  All Fees to be earned by the Consultant shall be paid to the Consultant by the Term Lenders, thus ensuring that although not being paid by the Debtors' estate, the Consultant remains incentivized to maximize value for the Debtors' estates.

16. I have experience working with liquidation consultants and liquidation consulting agreements that were approved in other retail chapter 11 cases, such as Sears Holding.  Based on this experience, I believe the terms proposed under the Consulting Agreement are reasonable.

**C.    Store Closing Procedures.**

17. Based on my experience with other retail chapter 11 debtors, I believe that implementing the Store Closing Procedures attached as to the Store Closings Motion will provide the best and most efficient means for the Debtors to sell the Merchandise and the M&E located in the Stores (the "Store Assets") and maximize value to the estates (such sales, the "Sales").  I believe that the Sales will continue until April 30, 2020, with the right to extend into May 2020 if circumstances and economics warrant.

18. I believe that conducting the going-out-of-business sales at the Designated Closing Stores in accordance with the Store Closing Procedures will provide an efficient means for the Debtors to dispose of the assets in the Closing Stores.  Any interruption or delay in the Debtors' ability to implement the Store Closing Procedures at the Designated Closing Stores will cause serious and irreparable harm to the Debtors' estates.  Given the Debtors' current financial

situation, it is vital that the Debtors exit these Stores and terminate their financial obligations under the leases as soon as possible. The sooner the Designated Closing Stores are closed and the inventory at the Designated Closing Stores liquidated, the more cash the Debtors will save for the benefit of their estates. For this reason, the Debtors' proposed post-petition consensual use of cash collateral includes a budget that assumes the Sales will continue without interruption so that they can be concluded by April 30, 2020. In addition, approval of the Store Closing Procedures and the Debtors' assumption of the Consulting Agreement is required so that the Consultant can continue with the Sales at the Stores and the marketing of the other Assets, with the aim of maximizing the value of all of the Assets. It is my view that as a result of the announcement of the Sale, the issuance of notice under the he Worker Adjustment and Retraining Notification Act of 1988 (the "WARN Act") and similar applicable state statues, coupled with the filing of these cases, the Debtors will face difficulty retaining employees at these locations beyond April 30, 2020. In short, any delay in continuing the Sales, the more difficult it will be for the Debtors to maximize the results of the Sales.

19. The relief requested in the Motion with respect to the Store Closing Procedures is integral to maximizing the value of the Debtors' estates and, based on my prior experience, is a routine part of chapter 11 cases involving retail debtors. Such relief will establish fair and uniform store closing procedures to assist the Debtors and their creditors through the Debtors' going concern sales for the Levin and Wolfe business, and wind down of the Art Van Furniture line of the business.

**D.    Liquidation Sale Laws.**

20. Certain states in which the Debtors operate stores have licensing or other requirements governing the conduct of store closings, liquidation, or other inventory clearance

sales, including state and local laws, statutes, rules, regulations, and ordinances (the "Liquidation Sale Laws"). Liquidation Sale Laws may establish licensing, permitting, or bonding requirements, waiting periods, time limits, and bulk sale restrictions and augmentation limitations that would otherwise apply to the Sales. Additionally, many of the Debtors' leases with their landlords restrict the use of "store closing" or similarly themed signage. Absent relief from the Court, such requirements hamper the Debtors' ability to maximize value in selling their Merchandise.

21. One of the most important factors in maximizing value in the context of a store closing sale is the ability to drive a message to the consumer that creates urgency to purchase. Thus, being able to advertise and use signage that delivers a message such as "store closing" is critical to obtain the necessary consumer traffic to the stores to drive sales and maximize value from the Sales. Further, if the Debtors cannot increase sales volume through advertising that communicates urgency, the Debtors may incur additional liabilities to the detriment of their estates.

22. Based on my experience, complying with Liquidation Sales Laws and lease provisions restricting store closing sales will have a significant negative impact on sales at the Designated Closing Stores and value that the Debtors will be able to generate from the Sales. Procedures substantially similar to the Store Closing Procedures have been used in numerous retail chapter 11 cases that I have been personally involved with. The Store Closing Procedures provide a uniform framework for how the Designated Store Closings will be conducted and afford the Debtors' landlords with a fair and reasonable process to voice their opposition while balancing the Debtors' duty to maximize value of the inventory and FF&E without delay.

## Conclusion

23. Based on the foregoing, I submit that the relief requested in the Store Closings Motion is reasonable, necessary, and should be granted.

13171279 v5

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

*/s/ Dennis Stogsdill*
Dennis Stogsdill
Alvarez & Marsal North America, LLC

Dated: March 9, 2020
Wilmington, Delaware