# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF ARIZONA

In re:                                       )
                                             )
FIRST MAGNUS CAPITAL, INC.      CH: 11    )    2008-01494-GBN
                                             )
ORAL ARGUMENT RE: ENHANCED FEE REQUEST   )
AND THE COMPENSATION REQUEST             )
                                             )

U.S. Bankruptcy Court
230 N. First Avenue, Suite 101
Phoenix, AZ 85003-1706

March 16, 2010
1:33 p.m.

BEFORE THE HONORABLE GEORGE B. NIELSEN, Judge

APPEARANCES:

For Grant Lyon:                 Andrew Hardenbrook
                                SNELL & WILMER LLP
                                One Arizona Center
                                400 East Van Buren Street
                                Phoenix, AZ 85004-2202

For Jennifer Binford, et al.:   Rene S. Roupinian
                                Jack A. Raisner
                                OUTTEN & GOLDEN LLP
                                3 Park Avenue, 29th Floor
                                New York, NY 10016

Proceedings recorded by electronic sound technician, Jo-Ann Stawarski; transcript produced by AVTranz.

**AVTranz**
E-Reporting and E-Transcription
Phoenix (602) 263-0885 • Tucson (520) 403-8024
Denver (303) 634-2295

2

THE CLERK:  Please rise.

THE COURT:  Be seated.

THE CLERK:  This is case number 08-1494, First Magnus Capital and we do have telephonic appearances.

THE COURT:  This is Judge Nielsen.  I'll take appearances on our phone line first.

MS. ROUPINIAN:  Good afternoon, Your Honor, Rene Roupinian of Outten Golden appearing on behalf of the WARN class.

MR. RAISNER:  And Jack Raisner also appearing on behalf of the WARN class with Ms. Roupinian.

THE COURT:  All right.  In the courtroom.

MR. HARDENBROOK:  Afternoon, Your Honor, Andrew Hardenbrook with Snell & Wilmer on behalf of the First Magnus Capital Inc. liquidation trust.

THE COURT:  Good afternoon, lady and gentlemen.  We set this hearing to get some further information on an enhanced fee request and compensation request.  Not to torture people, but to allow me to make the necessary findings that the law requires me to make in order to award the enhanced fees that are sought here.

I've seen the supplement.  I'm not aware of any objection that has been filed.  Let's turn to Ms. Roupinian, Mr. Raisner and see if they've received any input concerning the enhanced fee request.

3

MR. RAISNER:  We have not received any objection, Your Honor.

THE COURT:  All right.

Well, I'm -- I have no objections.  I now have the information I need.  I thought the supplements did very well in providing that information.  So I'll listen with interest to counsel's presentations but I am disposed to grant the enhanced request.

Anything from counsel?

MR. RAISNER:  Thank you, Your Honor.  If Your Honor is disposed to grant it, I don't think I would have anything to supplement what we've submitted which I think, you know, covered the points that you were appropriately interested in and I'm pleased that Your Honor found that the materials were helpful.

THE COURT:  All right.  I'm going to make a -- I'll make my findings now.  So I'll have to ask for everyone's patience.  It'll take me a few minutes to get through this material but I think it's important to document the reasons why we're going to grant the request.

This appears to be so-called common fund case.  Under the Common Fund Doctrine, a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his or her client is entitled to reasonable attorneys' fees from the fund as a whole.  The Ninth Circuit has addressed this

4

concept in the Stanton decision, 327 F.3d 938 at 967.

As to the reasonableness of such an award, the Ninth Circuit has affirmed use of two separate methods for determining attorneys' fees.  In common fund cases where the settlement or award creates a large fund for distribution to a class, the Court has discretion to use either a percentage or loadstar method.

The percentage method means the Court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee.  This Circuit has established 25 percent of the common fund as a benchmark award for attorneys fees.

In employment civil rights and other injunctive relief class actions, the Court has often used a loadstar calculation because there is no way to gauge the net value of the settlement or any percentage.  Loadstar calculation begins with multiplication of the number of hours reasonably expended by a reasonable hourly rate.  Hours expended and the rate should be supported by adequate documentation and other evidence.

Attorneys working on cases where loadstar may be employed should keep records and timesheets documenting their work and time.  The resulting figure may be adjusted upward or downward to account for factors including quality of the representation, benefit obtained, complexity and novelty of the

5

issues, and the risk of non-payment.  These principles come from the Ninth Circuit's <u>Hanlon</u> decision, 150 F.3d 1011 at 1029.

The 25 percent benchmark although a starting point may be inappropriate in some cases.  Selection of the benchmark or any other rate must be supported by findings that take into account all circumstances.  <u>See</u> the Ninth Circuit's <u>Vizcaino</u> decision, 290 F.3d 1043 at 1048.

Here class counsel seek more than the benchmark of 25 percent.  They are seeking 33 percent.  Based on the information that has been provided and supplemented, the 33 percent figure is acceptable and has garnered absolutely no objections.

First, counsel's efforts achieved a reasonable result for the WARN Act claimants with a potential recovery of about 38 percent.  This result is impressive given that it did not come about easily.  As counsel themselves note, in First Magnus more than 15 sets of motions and objections were made.  As a result, class certification was denied and Plaintiff's adversary complaint was dismissed by the Tucson Court.

Plaintiffs nevertheless filed appeals and stay motions subjected to confirmation of the FMFC plan and negotiated a 1.9 million dollar reserve in FMFC, served discovery requests and filed hundreds of proofs of claim in Tucson and Phoenix proceedings.  Undeterred by adverse rulings,

6

Plaintiffs drafted their Circuit Court appeal, conducted an extensive analysis of employee data and engaged in mediation which at first was unsuccessful but led to protracted negotiations and settlement.  See the supplement at pages 15 to 16.

Second, this litigation was all uphill for the WARN Act claimants and counsel bore substantial risk.  Again, as counsel note, they lost thrice in the Tucson Court, class certification, dismissal of the complaint and administrative priority treatment and lost all again in District Court.  The risk of no recovery was exacerbated by the two-year wait for their appeal to be heard in the Ninth Circuit.

The issues noticed for appeal were complex and novel. Even if Plaintiffs had prevailed on appeal, their reward could have been nugatory.  Had litigation continued, Defendants were expected to make several motions that if successful might have allowed the assets to fund a  settlement or a judgment to be dissipated before the appeal could be resolved.  See the supplement this time at pages 16 to 17.  This is a high level risk which continues even now as the matter is on appeal.

Third, counsel bore considerable burden.  Counsel notes during the two and a half years of litigation, the professionals representing Plaintiffs have spent about 2,500 hours litigating without receiving compensation.  Counsel advanced over $30,000 in expenses.  See the supplement at page

18.

Counsel also provided timesheets affording a cross check loadstar analysis. Counsel submitted a fee statement noting 2,391.31 hours for a total of $891,446. See Exhibit B to the supplement.

Counsel note current fees and costs through February, 2010 are $952,337.18. Those fees may rise to one million dollars as the settlement is implemented. See the supplement at pages 11 to 12.

Using counsel's figure of $952,337.18, the loadstar multiplier is modest. Even assuming the full distribution. As counsel explained in the supplement, the only circumstance in which Plaintiff's counsel will receive any multiplier at all is if the class enjoys a second distribution from the contingent litigation proceeds. If the full 2.9 million dollars of the contingent balance is distributed, class counsel's total fee at the 33 percent rate would be $1,813,333, including expenses. Still less than a multiplier of two of counsel's current loadstar of 952,337.18. If the full contingent amount is not collected and distributed, class counsel's multiplier will drop from less than two to potentially one. See the supplement at page 13.

In short, using the loadstar method as a cross check, the fees overall are reasonable compensation for the extraordinary work that was done by counsel in this case and

8

they are allowed.

I also have -- need to deal with payment of the class Plaintiffs.  The settlement provides for payments of $7,500 to each of eight class representatives who were named in the complaint.  The service payments recognized the time and effort the class representatives expended on behalf of the class as well as the risk they incurred during the litigation.  See joint motion to approve settlement at page 28.

Named Plaintiffs as opposed to designated class members who are not named Plaintiffs are eligible for reasonable incentive payments.  The Court however must evaluate their awards individually to detect excessive payment to named class members and may indicate the agreement was reached through fraud or collusion.  To assess whether an incentive payment is excessive, courts balance the number of named Plaintiffs receiving incentive payments, the proportion of the payment relative to the settlement amount and the size of each payment.  See a California case, Alberto v. GMRI, 252 F.R. decision 652 at 669.  See also a more recent California case, Sandoval at 2009 West.Law 3877203 at page 8.

Sandoval indicated criteria in determining whether to make an incentive award includes one, risk to the class representative in commencing suit, both financial and otherwise.  Two, notoriety and personal difficulties encountered by the class representative.  Three, time and

9

effort spent by the representative.  Four, duration of the litigation.  And five, personal benefit or lack thereof enjoyed by the class representative.

Initially, the joint movants argued as follows.  All class representatives performed important services.  In addition to incurring the risks inherent in serving as named Plaintiffs, they provided information during many interviews regarding the structure of the company, the job and compensation of themselves and others, the physical locations they worked and other locations they were aware of, integration of the companies and the events surrounding their termination and demise of the company.  They produced relevant documents and worked with Plaintiff's counsel throughout the case.  See the joint motion at page 29.

At the time, I needed more information given that there are eight class representatives who each individually seek the $7,500 award.  And I received it.  As summed up in this supplemental declaration, Plaintiffs provided valuable information crucial -- critical to counsel's understanding of the case.  Over a two-and-a-half-year period, they put counsel in contact with other class members, diligently provided affidavits and declarations, filed class proofs of claim in two bankruptcy proceedings and promptly responded to correspondence and telephonic requests for information.

Jennifer Binford, among other things, kept in touch

with former employees and received several calls and emails every week from class members to whom she would respond with information counsel provided.

Jennifer Hurtado, among other things, traveled to and spent a full day in mediation with class counsel where she answered questions on behalf of the class put to her by Trustee Erin.

Sheila Loebs was pregnant when she was terminated and forced to rely on the State for medical care and food to feed her child.  Nevertheless, she among other things, stayed informed as to the developments through telephone email and online communications and shared developments with other former employees.

Kelly Plummer, among other things, responded to multiple requests for information during discovery and in preparation for mediation.

Tirzah Rolle, among other things, kept in touch with former employees including reminders of filing deadlines, checking the Bankruptcy Court's website for updates, seeking information to verify whether rumors were true and responded to telephone and email inquiries from counsel at least once a month and much more frequently in the first four to five months after suit was filed.

Sheila Hart and Jennifer Hurtado also participated in but did not speak at conference calls with Chief Judge Marlar

AVTranz
E-Reporting and E-Transcription
Phoenix (602) 263-0885 • Tucson (520) 403-8024
Denver (303) 634-2295

11

during the hearings.  See the supplemental at pages 4 to 6.

Each class Plaintiff it seems to me took out a risk in taking this role given the economic climate following the unforeseen layoff and then having to look for work while in the status of suing a former employer.

It seems the $7,500 award is justified relative to the settlement amount.  See the Stanton case, 327 F.3d at 977.

As to the supplement notes, here the settlement fund is five and a half million dollars and Plaintiffs request a $7,500 payment each.  The payment to each Plaintiff represents only .13 percent of the fund.  In the aggregate, all eight service awards amounts to 1.09 percent.  Accordingly, the $7,500 award here is on par with the reduced award in Sandoval. See the supplement at page 3.

Further, it is argued in the supplement on average First Magnus class members stand to receive over $3,900.  Here the ratio is closer to two to one between incentive award and class member recovery.  This case does not present a discrepancy gap that would require the Court to make findings of substantial efforts by the class representatives. Nevertheless, Plaintiffs submit their efforts exceeded the limited efforts of the class representative in Sandoval that supported a $7,500 award.  See the supplement at page 4.

I agree and I'll -- the incentive award for the named class Plaintiffs should be allowed.  And with those findings on

12

the record, then we'll -- I'll ask that counsel lodge the necessary orders and I'll sign them as soon as they reach me.

MR. RAISNER:  Thank you, Your Honor.

THE COURT:  What else can we -- what else --

MR. RAISNER:  Your Honor, in filing the order, I just want clarification if I can and not to put too fine a point on it.  In this case, a decimal point I guess.  The papers speak to the one-third amount being 33 and a third, 33.33 I guess.  Is that Your Honor's decision that we're allowed the 33 and a third percent?

THE COURT:  Absolutely.  Apparently in my notes I dropped the fraction and I apologize for that.  I'm all done torturing counsel on this fee application.

MS. ROUPINIAN:  Thank you, Your Honor.

THE COURT:  So the full one-third award is intended by me to be given to class counsel.

MR. RAISNER:  Much appreciated.  Thank you.  We have no further questions.

THE COURT:  All right.

Mr. Hardenbrook?  All done.

All right, we'll be adjourned and I'll leave the line.  Congratulations.

MR. RAISNER:  Thank you, Your Honor.

MS. ROUPINIAN:  Thank you, Your Honor.

13

MR. RAISNER:  Good afternoon.

THE COURT:  Good day.

(Proceedings Concluded at 1:52 p.m.)

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Dated: <u>August 17, 2010</u>

_____
AVTranz, Inc.
845 North Third Avenue
Phoenix, AZ  85003

**AVTranz**
E-Reporting and E-Transcription
Phoenix (602) 263-0885 • Tucson (520) 403-8024
Denver (303) 634-2295