**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ART VAN FURNITURE, LLC ., *et al.*,[1] | Case No. 20-10553 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 49** |

**INTERIM ORDER: (I) AUTHORIZING SECURED POST-PETITION FINANCING PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 364(c) AND 364(d); (II) SCHEDULING A FINAL HEARING; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned Chapter 11 cases (collectively, the "Cases"), seeking among other relief, *inter alia,* an order (this "Interim Order") pursuant to sections 105, 361, 364(c)(1), 364(c)(2) and 364(d) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") *inter alia*:

(i) authorizing Sam Levin, Inc. ("DIP Borrower"), authority to obtain postpetition financing and grant a senior purchase money security interest in the DIP Collateral (as defined below)[3] to Levin Furniture, LLC "DIP Lender"), solely with respect to DIP Collateral purchased

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463). The location of the Debtors' service address in these chapter 11 cases is: 6500 East 14 Mile Road, Warren Michigan 48092.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Motion.

[3] As used in this Interim Order, "DIP Collateral" shall mean and include all of the following personal property assets of the DIP Borrower, whether now in existence or hereafter acquired or arising, and wherever located:

with the Advances made postpetition to DIP Borrower together with superpriority administrative expense status and adequate protection to the DIP Lender in accordance with this order; and

(ii) scheduling a final hearing (the "Final Hearing") within twenty days of the

---

(a) all inventory of the DIP Borrower purchased solely with the proceeds of any Advances made under the DIP Credit Agreement;

(b) all receivables of the DIP Borrower arising out of the sale of inventory referred to in clause (a) above;

(c) all right, title and interest in and to (i) all inventory returned or rejected by customers previously sold by the DIP Borrower giving rise to receivables referred to in clause (b) above, (ii) all of DIP Borrower's rights as a consignor, a consignee, an unpaid vendor, mechanic, artisan, or other lienor, including stoppage in transit, setoff, detinue, replevin, reclamation and repurchase with respect to any of the foregoing (a) or (b), (iii) all additional amounts due to DIP Borrower from any customer relating to the receivables set forth in clause (b) above, (iv) other property, including warranty claims, relating to any of the foregoing (a) and (b), (v) all of DIP Borrower's contract rights, rights of payment which have been earned under a contract right, instruments (including promissory notes), documents, chattel paper (including electronic chattel paper), warehouse receipts, deposit accounts, letters of credit and money relating to any of the foregoing (a) and (b), (vi) all commercial tort claims (whether now existing or hereafter arising) relating to any of the foregoing (a) and (b), and (vii) if and when obtained by DIP Borrower, all real and personal property of third parties in which DIP Borrower has been granted a lien or security interest as security for the payment or enforcement of receivables referred to in clause (b);

(d) ledger sheets, ledger cards, files, correspondence, records, books of account, business papers, computer software (owned by Borrower or in which it has an interest and in which the granting of a security interest therein is not expressly prohibited), computer programs, tapes, disks and documents relating to (a), (b) or (c) of this definition; and

(e) proceeds and products of (a), (b), (c) or (d) of this definition in whatever form, including, but not limited to cash, deposit accounts (whether or not comprised solely of proceeds), certificates of deposit, insurance proceeds (including hazard and credit insurance), negotiable instruments and other instruments for the payment of money, chattel paper, security agreements, documents and tort claim proceeds.

Notwithstanding anything to the contrary in this Interim Order or the DIP Credit Agreement, the term "DIP Collateral" shall not include any lease, license, contract, property right or agreement (or any of its rights or interests thereunder) if and to the extent that the grant of the security interest shall, after giving effect to Sections 9-406, 9-407, 9-408 or 9-409 of the Uniform Commercial Code (or any successor provision or provisions), the Bankruptcy Code or any other applicable law, constitute or result in (i) the abandonment, invalidation or unenforceability of any right, title or interest of Borrower therein or (ii) a breach or termination pursuant to the terms of, or a default under, any such lease license, contract, property rights or agreement; provided, however, that (y) the Collateral excluded hereby shall not include any and all proceeds of such property rights or agreements or any right, title or interest of Borrower therein, and (z) the security interest shall attach immediately at any such time as the restriction resulting in abandonment, invalidation or unenforceability or breach or termination shall be removed or any condition thereto (including any consent) shall be satisfied.

Petition Date to consider the relief requested in the Motion on a final basis (the "Final Order") and approving the form of notice with respect to the Final Hearing.

The Court having considered the Motion, the exhibits attached thereto, *Declaration of David Ladd, Executive Vice President and Chief Financial Officer of Art Van Furniture, LLC, in Support of Chapter 11 Petitions and First Day Motions* (D.I. 20) and the evidence submitted and argument made at the first day hearing held on March 10, 2020 and the interim hearing held on March 12, 2020 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b) and (d), and all applicable local rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"); and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and all parties in interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[4]

---

[4] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as

A. **Petition Date**. On March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").

B. **Debtors in Possession**. The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C. **Jurisdiction and Venue**. This Court has jurisdiction over the Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue for the Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D. **Committee Formation**. As of the date hereof, the United States Trustee for the District of Delaware (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (a "Committee").

E. **DIP Loan**. DIP Borrower proposes that it obtain post-petition financing (the "DIP Facility") from the DIP Lender pursuant to the terms set forth in this Interim Order and in that certain form of Debtor-In-Possession Credit and Security Agreement (the "DIP Credit Agreement") and that certain Revolving Credit Note (collectively with the DIP Credit Agreement, the "DIP Loan Documents"), each in substantially the form as filed on the docket in these chapter 11 proceedings on March 13, 2020.

F. **Debtor Operations**. DIP Borrower is unable to operate without the

such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Liquidity provided by the DIP Facility.

G. **Inability to Obtain Alternative Credit**. DIP Borrower asserts that it is unable to obtain unsecured credit allowable under Bankruptcy Code Section 503(b)(1) as an administrative expense in an amount necessary to fund operations and that financing on a post-petition basis is not otherwise available to pay operating expenses or wage obligations to its employees without the DIP Borrower granting, pursuant to Bankruptcy Code Section 364(c)(1), claims having priority over any and all administrative expenses of the kinds specified in Sections 503(b) and 507(b) of the Bankruptcy Code and the granting of a senior priming lien pursuant to Bankruptcy Code Section 364(d).

H. **Good Faith**. The DIP Lender and the DIP Borrower have negotiated at arms' length and in good faith regarding the DIP Facility. Entry of this Interim Order is in the best interests of the Debtors, their estates and their creditors.

I. **Immediate Entry**. Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

J. **Interim Debt Limit**. The DIP Borrower has requested immediate entry of this Interim Order so that the DIP Lender will advance funds in an amount not to exceed $10,000,000.00 during this Interim Period in accordance with the DIP Loan Documents.

K. **Avoid Immediate and Irreparable Harm**. The partial relief granted herein to obtain the Interim DIP Loan (as defined herein) is necessary to avoid immediate and irreparable harm to the Debtor's estate. This Court concludes that entry of this Interim Order is in the best interests of the Debtor's estate and creditors as its implementation will, among other things, allow for the Debtor to continue servicing its necessary contracts and providing services to its customers without interruption.

L. **<u>Interim Hearing</u>**. Notice of the Interim Hearing and the relief requested in the Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties-in-interest, including: (i) the U.S. Trustee; (ii) those entities or individuals included on the Debtors' list of 30 largest unsecured creditors on a consolidated basis; (iii) counsel to the Prepetition ABL Agent; (iv) counsel to the Prepetition Term Loan Agent; (v) counsel to the Consultant (as defined in the Consulting Agreement); and (v) all other parties entitled to notice under the Bankruptcy Rules and the Local Rules.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1. **<u>Motion Granted</u>**. The Motion is granted.

2. **<u>Authorization For Interim DIP Loan</u>**. The DIP Borrower is expressly authorized and empowered to obtain credit pursuant to the DIP Loan Documents and this Interim Order on an interim basis (the "<u>Interim DIP Loan</u>") for the purchase of inventory during the Interim Period.

3. **<u>Terms of the Interim DIP Loan</u>**. The terms of the Interim DIP Loan are governed by the DIP Loan Documents between the DIP Lender and the DIP Borrower, as modified by this Interim Order; *provided, however,* notwithstanding anything to the contrary in the Motion or the forms of the DIP Loan Documents annexed to the Motion: (a) the "Maximum advance Amount" (as defined in the DIP Credit Agreement) shall be **Twenty Million and 00/100 U.S. dollars ($20,000,000.00);** (b) the aggregate balance of outstanding advances outstanding at any time pursuant to this Interim Order shall not exceed **Ten Million and 00/100 U.S. dollars**

**($10,000,000.00)**; and Section 14(a)(i) of the DIP Credit Agreement is deemed amended to strike the text "[April 7, 2020]" and replace it with "April 9, 2020". The Debtors are authorized to revise, execute and deliver the DIP Loan Documents to conform with this Paragraph 3.

4. **Additional DIP Loan Documents; Non-Material Amendments**. The DIP Borrower may enter into such other agreements, instruments and documents as may be necessary or required or requested by the DIP Lender in its sole discretion to evidence the Interim DIP Loan and to consummate the terms and provisions contemplated by the DIP Loan Documents and this Interim Order and to evidence perfection of the liens and security interests to be given to Lender hereunder. The DIP Borrower and the DIP Lender may enter into any nonmaterial amendments of or modification to the DIP Loan Documents without the need of further notice and hearing or order of this Court.

5. **The DIP Indebtedness**. The Interim DIP Loan and all other indebtedness and obligations incurred by the DIP Borrower on or after the Petition Date with respect to loans, advances and any other indebtedness or obligations, contingent or absolute, pursuant to this Interim Order and the Interim DIP Loan which may now or from time to time hereafter be owing by the DIP Borrower to the DIP Lender (including principal, accrued and unpaid interest, fees, costs and expenses, including without limitation reasonable attorneys' fees and expenses, and any other amounts owed under this Order or the DIP Loan Documents) are referred to herein as the "DIP Indebtedness".

6. **Interest, Fees, Costs and Expenses**. The DIP Indebtedness shall bear interest at the applicable non-default rate as set forth in the Motion and in the DIP Loan Documents. Notwithstanding the foregoing, nothing in this Interim Order shall be construed to

limit or otherwise impair the liability of the DIP Borrower for all of the DIP Indebtedness under the DIP Loan Documents.

7. **Termination of the DIP Loan**. DIP Lender's obligation to provide the Interim DIP Loan shall immediately and automatically terminate (except as DIP Lender may otherwise agree in writing in its sole discretion), and all DIP Indebtedness shall be immediately due upon the earlier of (i) closing of a § 363 sale of substantially all of the DIP Borrower's assets; or (ii) the occurrence of an Event of Default (as defined in the DIP Loan Documents). In the event of a postpetition default of the terms of this Interim Order and/or the DIP Loan Documents, the DIP Lender may declare the DIP Indebtedness immediately due and owing; provided that the DIP Lender may not exercise any remedies against the DIP Borrower upon default without first providing five (5) business days' notice of default to the DIP Borrower, obtaining a hearing date and without further order of the Court.

8. **DIP Intercreditor Provisions**. Notwithstanding anything to the contrary herein, (a) the DIP Lenders shall not have a lien on any Prepetition or Postpetition Collateral[5] that is not DIP Collateral, (b) the Prepetition ABL Agent (for the benefit of itself and the Prepetition ABL Lenders) shall have a lien (and corresponding adequate protection lien) on the DIP Collateral, junior only to the DIP Lenders and the Prepetition ABL Permitted Prior Liens, (c) the Prepetition Term Loan Agent (for the benefit of itself and the Prepetition Term Loan Lenders) shall have a lien (and corresponding adequate protection lien) on the DIP Collateral, junior only to the DIP Lenders, the Prepetition ABL Agent and the Prepetition Term Loan Permitted Prior Liens, (d) the

[5] Capitalized terms used in this paragraph 8 but not otherwise defined shall have the meanings ascribed to such terms in the *Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (D.I. 93) (the "Interim CC Order").

DIP Indebtedness shall not be repaid from (or have any recourse to) any proceeds of Prepetition or Postpetition Collateral that is not DIP Collateral, and (e) the Debtors shall cause the proceeds of DIP Collateral to be deposited into a segregated, non-commingled account which is required to be subject to the control of the DIP Lender and the Debtors' use of such proceeds shall be subject to, and distributed in accordance with, the DIP Loan Documents and the Budget.

9. **Security for DIP Loan**. As security for the DIP Indebtedness, the DIP Lender is granted a valid, perfected, first priority priming lien (the "DIP Lien") against the DIP Collateral, as that term is defined in the DIP Loan Documents; *provided, however,* that the DIP Lien shall be junior only to the pre-existing liens on and security interests in such DIP Collateral granted in favor of third parties (other than any Prepetition ABL Secured Party or any Prepetition Term Loan Secured Party (each as defined in the Interim CC Order)) that, as of the Petition Date, (a) were senior in priority under applicable law to the DIP Lien, (b) were not subordinated by agreement or applicable law, and (c) were in existence, valid, enforceable, properly perfected and non-avoidable as of the Petition Date, including any such liens and security interests that were perfected after the Petition Date but relate back to the Petition Date pursuant to section 546(b) of the Bankruptcy Code. Solely with respect to the DIP Collateral, the DIP Lender is granted an administrative expense in the amount of the Interim DIP Loan with the highest priority under §364(c) of the Bankruptcy Code, and shall have priority over all other costs and expenses of administration of any kind, including those specified in, or ordered pursuant to, §§ 105, 326, 330, 331, 503(b), 507(a), 507(b) or 726 or any other provision of the Bankruptcy Code or otherwise (whether incurred in this Case or any successor case), and shall at all times be senior to the rights of the DIP Borrower, any successor trustee or estate representative in the Case or any successor case.

10. **<u>Perfection of DIP Lien and Limited Stay Relief</u>**. The DIP Lien shall be, and is hereby deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection; <u>provided, however</u>, that notwithstanding the provisions of Section 362 of the Bankruptcy Code which stay is lifted for the limited purpose of allowing perfection, the (i) DIP Lender may, at its sole option, file or record or cause the DIP Borrower to obtain any such landlord or warehousemen lien waivers or other third party consents or execute, file or record, at the DIP Borrower's expense, any such UCC financing statements, notices of liens and security interests, mortgages and other similar documents as DIP Lender may require, and (ii) DIP Lender may require the DIP Borrower to deliver to DIP Lender any chattel paper, instruments or securities evidencing or constituting any DIP Collateral, and the DIP Borrower is directed to cooperate and comply therewith. If DIP Lender, in its sole discretion, shall elect for any reason to cause to be obtained any landlord or warehouse lien waivers or other third party consents or cause to be filed or recorded any such notices, financing statements, mortgages or other documents with respect to such security interests and liens, or if DIP Lender, in accordance with the DIP Loan Documents or this Interim Order, elects to take possession of any DIP Collateral, all such landlord or warehouse lien waivers or other third party consents, financing statements or similar documents or taking possession shall be deemed to have been filed or recorded or taken in this Case as of the commencement of this Case but with the priorities as set forth herein. The DIP Lender may (in its sole discretion), but shall not be required to, file a certified copy of this Interim Order in any filing or recording office in any county or other jurisdiction in which the DIP Borrower has property.

11. **Books and Records**. The DIP Borrower shall permit DIP Lender and any authorized representatives designated by DIP Lender (including, without limitation, its auditors, appraisers and financial advisors) to visit and inspect any of the properties of the DIP Borrower, including the DIP Borrower's financial and accounting records, and to make copies and take extracts therefrom, and to discuss any DIP Borrower's affairs, finances and business with such DIP Borrower's officers and independent public accountants, at such reasonable times during normal business hours and as often as may be reasonably requested. Without limiting the generality of the foregoing, the DIP Borrower shall promptly provide to DIP Lender any information or data reasonably requested to monitor the Debtor's compliance with the covenants and the provisions of the DIP Loan Documents and this Order.

12. **Effect of Dismissal, Conversion or Substantive Consolidation**. If the DIP Borrower's Case is dismissed, converted, otherwise superseded or substantively consolidated, DIP Lender's rights and remedies under this Interim Order and the DIP Loan Documents shall be and remain in full force and effect as if the DIP Borrower's Case had not been dismissed, converted, superseded or substantively consolidated. Furthermore, notwithstanding any such dismissal, conversion, or substantive consolidation, all of the terms and conditions of this Interim Order, including, without limitation, the liens and the priorities granted hereunder, shall remain in full force and effect.

13. **Order Binding on Successors**. The provisions of this Interim Order shall be binding upon and inure to the benefit of DIP Lender and the DIP Borrower and their respective successors and assigns (including any subsequently appointed trustee, examiner or other estate representative appointed as a representative of the DIP Borrower's estate or of any estate in any

successor cases). No third parties are intended to be or shall be deemed to be third party beneficiaries of this Interim Order or the DIP Loan Documents.

14. RESERVED

15. **Order Binding Upon Parties in Interest**. To the fullest extent that relief is available at a hearing held pending a final hearing as contemplated by Bankruptcy Rule 4001(2), all of the provisions of this Interim Order shall be final and binding on the DIP Borrower (including, without limitation, its successors and assigns), the DIP Borrower's equity holders, and all creditors and other parties in interest, including any Chapter 11 or Chapter 7 trustee hereinafter appointed.

16. **Effect of Modification of Interim Order**. The DIP Borrower shall not, without DIP Lender's prior written consent (which shall be given or refused in its sole discretion), seek to modify, vacate or amend this Interim Order or any DIP Loan Documents. If any of the provisions of this Interim Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court without DIP Lender's prior written consent, such stay, modification or vacatur shall not affect the validity of any obligation outstanding immediately prior to the effective time of such stay, modification or vacation, or the validity and enforceability of any lien, priority, right, privilege or benefit authorized hereby with respect to any such obligations. Notwithstanding any such stay, modification or vacatur, any obligation outstanding immediately prior to the effective time of such modification, stay or vacatur shall be governed in all respects by the original provisions of this Interim Order, and DIP Lender shall be entitled to all the rights, privileges and benefits, including, without limitation, the security interests and priorities granted herein, with respect to all such obligations.

17. **Safe Harbor**. The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the DIP Borrower to obtain credit on the terms and conditions upon which the DIP Borrower and Lender have agreed. Thus, each of such terms and conditions constitutes a part of the authorization under Section 364 of the Bankruptcy Code, and is, therefore, subject to the protections contained in Section 364(e) of the Bankruptcy Code.

18. **Insurance Proceeds and Policies**. Upon entry of this Interim Order and to the fullest extent provided by applicable law, the DIP Lender, shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the DIP Borrower that in any way relates to the DIP Collateral.

19. **Relationship to Contemplated Sale Transaction.** As contemplated by the Levin-Wolf LOI (attached as Exhibit B to the First Day Declaration), the Sale Agreement (as defined in the DIP Credit Agreement) shall provide for the DIP Lender and Levin Trucking, LLC, the purchasers thereunder, to assume, pay or otherwise satisfy all allowed section 503(b)(9) claims against the DIP Borrower, effective upon and subject to the occurrence of the closing under such Sale Agreement.

20. **Notice of Interim Order**. The DIP Borrower shall promptly serve a copy of this Order, by regular mail upon the creditors holding the 30 largest unsecured claims of each of the Debtor, or the Committee, if appointed, and any other party which theretofore has filed in the Cases a request for special notice with this Court and served such request upon DIP Borrower's counsel.

21. **Objections Overruled or Withdrawn**. All objections to the entry of this Interim Order have been withdrawn or are hereby overruled.

22. **Controlling Effect of Order**. To the extent any provisions in this Interim Order conflict with any provisions of the Motion, or any DIP Loan Document, the provisions of this Interim Order shall control.

23. **Final Hearing**. The Final Hearing to consider entry of the Final Order is scheduled for **April 6, 2020 at 1:00 p.m. (Prevailing Delaware Time)** before the Honorable Christopher S. Sontchi, Chief United States Bankruptcy Judge at the United States Bankruptcy Court for the District of Delaware. On or before March 13, 2020, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Interim Order and the Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for a Committee (if appointed); (d) the Securities and Exchange Commission; and (e) the Internal Revenue Service. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than **March 30, 2020**, which objections shall be served so as to be received on or before such date by: (i) counsel to the Debtors, Benesch, Friedlander, Coplan & Aronoff LLP, 222 Delaware Avenue, Suite 201, Wilmington, Delaware 19801-1611, Attn: Michael J. Barrie and Gregory W. Werkheiser; (ii) counsel to the DIP Lender, Clark Hill PLC, (a) 301 Grant Street, 14th Floor, Pittsburgh, Pennsylvania 15219, Attn: William C. Price and Jarrod Duffy, and (b) 824 N. Market Street, Suite 710, Wilmington, Delaware 19801, Attn: Karen Grivner; (iii) the Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda Richenderfer; (iv) lead counsel to the Prepetition ABL Agent, Morgan Lewis & Bockius LLP, (a) 101 Park Avenue, New York, New York 10178-0060, Attn: Jennifer Feldsher, and (b) One Federal

Street, Boston, Massachusetts 02110, Attn: Marjorie Crider and Christopher L. Carter; (v) Delaware counsel to the Prepetition ABL Agent, Burr & Forman LLP, 1201 N. Market Street, Suite 1407, Wilmington, Delaware 19801, Attn: J. Cory Falgowski; (vi) counsel to the Prepetition Term Loan Agent, Greenberg Traurig, LLP, One International Place, Suite 2000, Boston, MA 02110, Attn: Jeffrey M. Wolf; and (vii) counsel to the Committee (if appointed)

24. ***Nunc Pro Tunc* Effect of this Interim Order**. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.

25. **Retention of Jurisdiction**. The Court has and will retain jurisdiction to enforce the terms of, any and all matters arising from or related to this Interim Order.

**Dated: March 16th, 2020**
**Wilmington, Delaware**

**CHRISTOPHER S. SONTCHI**
**UNITED STATES BANKRUPTCY JUDGE**



13193241 v4