## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ART VAN FURNITURE, LLC, *et al.*,[1] | ) Case No. 20-10553 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Objection Deadline: March 30, 2020 at 1:00 p.m. (ET)** |
| | ) **Hearing Date: April 6, 2020 at 1:00 p.m. (ET)** |
| | ) |

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF JONES LANG LASALLE AMERICAS, INC. AS SPECIAL REAL ESTATE CONSULTANT TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

Art Van Furniture, LLC and its affiliated debtors and debtors-in-possession (each a "Debtor" and collectively, the "Debtors") hereby submit this application (the "Application") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 327(a) and 328(a) of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-2(h) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing the retention and employment of Jones Lang LaSalle Americas, Inc., a Maryland corporation ("JLL") as special real estate consultant to the Debtors, *nunc pro tunc* to the Petition Date (as defined herein).  In support of this Application, the Debtors rely upon the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).  The location of the Debtors' service address in these chapter 11 cases is: 6500 East 14 Mile Road, Warren Michigan 48092.

declaration of Thomas Mullaney (the "Mullaney Declaration"), attached hereto as **Exhibit B**. In further support of this application, the Debtors submit:

**JURISDICTION**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and procedural predicates for the relief requested herein are sections 327(a) and 328(a) of title 11 of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016.

2.      The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008 and Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

**BACKGROUND**

### A.  General Background.

3.      On March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description regarding the Debtors' business, capital structure, and the events leading up to the Petition Date is set forth in the *Declaration of David Ladd, Executive Vice President and Chief Financial Offer of Art Van Furniture, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), which is incorporated by reference herein. The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of

72735129.4

the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

4.      The Debtors operate 169 locations, including 94 furniture and mattress showrooms and 75 freestanding mattress and specialty locations.  The Debtors do business under brand names, including Art Van Furniture, Pure Sleep, Scott Shuptrine Interiors, Levin Furniture, Levin Mattress, and Wolf Furniture.  The Debtors were founded in 1959 and was owned by its founder, Art Van Elslander, until it was sold to funds affiliated with Thomas H. Lee Partners, L.P. ("THL") in March 2017.  Pennsylvania based Levin Furniture and Wolf Furniture were acquired by Art Van in November 2017.  As of the Petition Date, the Debtors operate stores throughout Michigan, Indiana, Ohio, Illinois, Pennsylvania, Maryland, Missouri, and Virginia.  The Debtors are headquartered in Warren, Michigan and have approximately 4,500 employees as of the Petition Date

**B.  Background Specific to the Application.**

*(i)  JLL's Qualifications.*

5.      JLL has served as real estate advisors and consultants for over 25 years.  JLL has experience in virtually all aspects of the disposition of and negotiation of leasehold interests that may arise in connection with the proposed representations.  Further, JLL frequently serves as real estate consultant to debtors in other large bankruptcy cases across the country, including but not limited to: Taco Bueno, Haggens, Buffets Restaurants, Round Table Pizza, Uno Chicago Grill, Boston Market, Einstein-Noah Bagels, Loews Cineplex Entertainment, Strouds, Fresh Choice, Sizzler, Old Country Harvest, Houlihan's Restaurants, AmeriKing Restaurants, Pillowtex, World Kitchen, and Garden Ridge.

72735129.4

*(ii)  Prepetition Services Provided.*

6.      Prior to the Petition Date, on January 14, 2020, the Debtors engaged JLL pursuant to that certain engagement agreement, as subsequently amended and modified (the "Engagement Agreement"), to assist the Debtors renegotiate the terms of certain of their real property leases (collectively, the "Leased Properties").

7.      In rendering these prepetition services to the Debtors, JLL worked with the Debtors' management team and other professional advisors and has, therefore, become acquainted with the Debtors' business operations and Leased Properties.  Accordingly, JLL has developed significant knowledge regarding the Debtors that will assist it in providing effective and efficient real estate consulting services during these chapter 11 cases.  Should the Court approve the Debtors' retention of JLL as special real estate consultant in these chapter 11 cases, JLL will perform the services for the Debtors as described herein.

*(iii)  Services to be Provided.*

8.      The Debtors intend to employ JLL on the terms and conditions set forth in the Engagement Agreement to provide various real estate services, including, but not limited to, the following:[2]

> (a)     Negotiate with landlords and their agents with respect to lease modifications and terminations and present proposed transactions to the Debtors for approval;
>
> (b)     Assist the Debtors in implementing and negotiating lease restructures and terminations;
>
> (c)     Provide financial advice and participate in meetings of negotiations with creditors, stakeholders, and other appropriate parties in connection with the bankruptcy filing;

---

[2]     All descriptions of the terms of the Engagement Agreement are provided in the application for convenience only and are qualified by the terms of the Engagement Agreement. In the event of a conflict between the terms of the Engagement Agreement and the Application, the Engagement Agreement shall control. Parties are strongly encouraged to read the Engagement Agreement.

72735129.4

(d)     Provide advice on potential sales or other disposition of the Debtors real property assets or businesses;

(e)     Assist in communication and negotiations with the Debtors' constituents, including creditors, employees, vendors, shareholders and interested parties in connection with a lease restructuring plan;

(f)     Advise and attend meetings of the Debtors' board of directors and committees as needed;

(g)     Provide general lease restructuring advice; and

(h)     Obtain broker opinions of value from local real estate brokers for proposed transactions.

9.      JLL will work with the Debtors and their other retained professionals to prevent any duplication of efforts in the course of advising the Debtors.

*(iv)  Professional Compensation.*

10.     Pursuant to the terms of the Engagement Agreement, JLL will receive compensation in the following forms: services and incentive fees, and fixed fees (collectively, the "Fee Structure").  The Fee Structure is summarized below:

(a)     Services and Incentive Fees: Set forth below are the possible outcomes of JLL's efforts and the associated Incentive Fees, which are comprised of fees for Lease Sale (all as defined below):

    i.     JLL sell/assign a leasehold interest to a new tenant ("Lease Sale").

Lease Sale: The Incentive Fee for a Lease Sale is 1.5% of the cash received ("Purchase Price") by the Debtors in exchange for the Lease Obligation that becomes the obligation of the purchaser or assignee; provided, however, if the Lease Obligation is sold or assigned without the services of an outside broker representing the purchaser, then the Incentive Fee for a Lease Sale is 2.5% of the Purchase Price received by the Debtors in exchange for the Lease Obligation that becomes the obligation of the purchaser or assignee. If the Lease Obligation is sold or assigned with the purchaser having representation, then the Debtors shall pay to the purchaser's broker 1% of the cash received by the Debtors in exchange for the Lease Obligation that becomes the obligation of the purchaser or assignee.

72735129.4

For example, (1) where a purchaser buys a Lease Obligation and is represented by a broker, the Debtors shall pay 1.5% of the Purchase Price to JLL and an additional 1% of the Purchase Price to the purchaser's broker; or (2) where a purchaser buys a Lease Obligation and is not represented by a broker, the Debtors shall pay 2.5% of the Purchase Price to JLL.

11.    In addition to the fees indicated above, the Debtors have also agreed to reimburse JLL for its reasonable and actual necessary out-of-pocket expenses.

### RELIEF REQUESTED

12.    The Debtors seek to employ and retain JLL on the terms and conditions set forth in the Engagement Agreement.

### BASIS FOR THE RELIEF REQUESTED

**A.    Retention Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code.**

13.    Bankruptcy Code section 327(a) provides, in relevant part, as follows:

> [T]he trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

14.    Bankruptcy Code section 328(a) provides, in relevant part, as follows:

> The trustee . . . with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . of this title . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

6

11 U.S.C. § 328(a).

15.    Section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."

16.    Bankruptcy Rule 2014 provides, in relevant part, as follows:

> An order approving the employment of . . . auctioneers . . . pursuant to § 327 . . . of the Code shall be made only on application of the trustee or committee.

Fed R. Bankr. P. 2014.

17.    First, the Debtors have a need to renegotiate the terms of certain of their real property leases (collectively, the "Leased Properties").  The Debtors have determined that, in their sound business judgment, the retention and employment of JLL, who, as explained above, has substantial experience in handling real estate matters in the context of chapter 11, will provide substantial benefit to these estates because JLL is well situated to assist the Debtors and handle the proposed real property transactions.

18.    Furthermore, JLL is well qualified to serve as the Debtors' real estate consultant in these chapter 11 cases.  Not only has JLL served as real estate advisors and consultants for over 25 years, but JLL also has a significant knowledge of the Debtors' real estate. JLL has worked with the Debtors in the weeks leading up to the Petition Date.  This experience has provided JLL with a broad and deep understanding of the Debtors' real estate locations, their landlords, and their leases.  JLL's experience generally coupled with the knowledge it has gained regarding the Debtors' operations make JLL well-suited to handle virtually all aspects of the disposition of and negotiation of leasehold interests that may arise in connection with the proposed representations.

19.    Second, the Fee Structure is market-based, fair, and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.  The Fee Structure reflects JLL's commitment

to the variable level of time and effort necessary to perform the services to be provided, its particular expertise, and the market prices for its services for engagements of this nature. Further, the Debtors submit that the rate of JLL's fees are appropriate and are in an amount typical of JLL's relationships with its other clients, in and out of chapter 11 proceedings.

20.    JLL's industry experience and capabilities were important factors in determining the Fee Structure. The ultimate benefit to the Debtors of JLL's services could not be measured merely by reference to the number of hours to be expended by its professionals in the performance of such services. Moreover, the actual time and commitment required of JLL and its professionals to render services to the Debtors may vary substantially from week to week or month to month, creating "peak load" issues for the firm.

21.    Thus, because of JLL's expertise, commitment of resources to this engagement, and the time that JLL has devoted and will continue to devote, the Debtors request that the Court approve the Fee Structure pursuant to section 328(a) of the Bankruptcy Code and that the Court evaluate JLL's final compensation and reimbursement of expenses in these chapter 11 cases under the standards of section 328(a) of the Bankruptcy Code, rather than under those of section 330 of the Bankruptcy Code. JLL will seek the Court's approval of its compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court. Furthermore, the U.S. Trustee shall have the right to object to JLL's request for compensation and reimbursement based on the reasonableness standard provided in section 330 of the Bankruptcy Code, not section 328(a) of the Bankruptcy Code.

72735129.4

B.          JLL's Disinterestedness.

22.       To the best of the Debtors' knowledge, information and belief, other than as set forth herein or in the Mullaney Declaration, JLL has not represented and has no relationship with: (i) the Debtors; (ii) the Debtors' thirty largest unsecured creditors; (iii) the Debtors' equity security holder; (iv) the Debtors' prepetition and post-petition lenders; (v) the respective attorneys and accountants of any of the foregoing; or (vi) the United States Trustee or any person employed in the Office of the United States Trustee for this District, in any matter relating to these cases.

23.       Additionally, other than as set forth herein or in the Mullaney Declaration, JLL believes it: (a) neither holds nor represents any interest adverse to the Debtors or the Debtors' estates on matters for which it is to be retained; (b) has no prior connection with the Debtors, their creditors or any other party in interest; and (c) is a "disinterested" person as such term is defined in section 101(14) of the Bankruptcy Code.

24.       As of the Petition Date, JLL does not hold a prepetition claim against the Debtors for services rendered.  Further, in accordance with section 504 of the Bankruptcy Code, JLL has informed the Debtors that there is no agreement or understanding between JLL and any other entity, other than an employee of, or contractor or broker engaged by, JLL, for the sharing of compensation received or to be received for services rendered in connection with these chapter 11 cases.

25.       To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of JLL's retention are discovered or arise, JLL will use reasonable efforts to promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

72735129.4

## C.        No Duplication of Services.

26.        The services provided by JLL will not duplicate the services that other professionals, will provide to the Debtors in these chapter 11 cases. Specifically, JLL will carry out unique functions directly related to renegotiation of the Debtors' leases and will use reasonable efforts to coordinate with the Debtors and their professionals retained in these chapter 11 cases to avoid the unnecessary duplication of services. JLL's services are limited in scope to those leases described within **Exhibit C** to the First Amendment to the Engagement Agreement. Its services will not be duplicated in any manner.

## D.        Recordkeeping.

27.        JLL seeks compensation on a fixed-fee and incentive-fee basis.  These fees are customary for the services provided by JLL to chapter 11 debtors in the ordinary course of JLL's business and in the commercial real estate industry.   As such, submission of detailed time entry is unnecessary and would be unduly burdensome to JLL.  JLL requests that it not be required to file time records in accordance with Bankruptcy Rule 2016(a), Local Rule 2016-2, the fee guidelines established by the Office of the United States Trustee for the District of Delaware, and any otherwise applicable orders or procedures of the Court.

28.        The Debtors propose that JLL submit interim and final fee applications that set forth: (i) the compensation requested; (ii) a summary of the bases for each fee earned for the particular application period; (iii) a daily summary of the services rendered on behalf of the Debtors each day of the engagement, and (iv) a detailed description of the amounts advanced by JLL for which it requests reimbursement.

72735129.4

## NOTICE

29.    Notice of this Application has been provided to: (i) the U.S. Trustee for the District of Delaware; (ii) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (iii) the agents under the Debtors' prepetition secured facilities and counsel thereto; (iv) any party that has requested notice pursuant to Bankruptcy Rule 2002.  A copy of this Application is also available on the website of the Debtors' notice and claims agent at https://www.kccllc.net/artvan. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form annexed hereto, granting the relief requested herein and such other and further relief as may be just and proper.


 Dated:  March 16, 2020                    **AVF Parent, LLC,** on behalf of itself and its
                                           affiliated Debtors and Debtors in Possession

                                            */s/ David Ladd*
                                           ──────────────────────────────────────
                                           DAVID LADD
                                           EXECUTIVE VICE PRESIDENT AND CHIEF
                                           FINANCIAL OFFICER