**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ART VAN FURNITURE, LLC, *et al.*,[1] | ) ) ) | Case No. 20-10553 (CSS) |
| Debtors. | ) ) ) ) | (Jointly Administered)<br><br>Re: Docket No. 52 |

**INTERIM ORDER GRANTING DEBTORS'
EMERGENCY MOTION FOR ENTRY OF INTERIM AND
FINAL ORDERS (I) APPROVING PROCEDURES FOR STORE
CLOSING SALES, (II) AUTHORIZING CUSTOMARY BONUSES TO
EMPLOYEES OF CLOSING STORES, (III) AUTHORIZING ASSUMPTION
OF THE CONSULTING AGREEMENT UNDER §§ 363 AND 365 OF THE
BANKRUPTCY CODE, (IV) AUTHORIZING THE DEBTORS TO
RETAIN CERTAIN CONSULTANT ENTITIES AS SPECIAL ASSET
DISPOSITION ADVISORS TO THE DEBTORS PURSUANT TO §327(A)
OF THE BANKRUPTCY CODE AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") for entry of an interim order (this "<u>Interim Order</u>"): (a) authorizing and approving the conduct of store closing or similar themed sales in accordance with the terms of the store closing procedures (the "<u>Store Closing Procedures</u>") attached hereto as **Exhibit 1**, with such sales to be free and clear of all liens, claims and encumbrances; (b) authorizing the Debtors to conduct the Store Closings; (c) authorizing the Debtors to pay customary bonuses to Store level employees of Closing Stores (in aggregate amount not to exceed ten percent (10%) of payroll);

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVCE, LLC (2509); AVF Franchising, LLC (6325); AVF Holding Company, Inc. (0291); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); LF Trucking, Inc. (1484); and Sam Levin, Inc. (5198). The location of the Debtors' service address in these chapter 11 cases is: 6500 East 14 Mile Road, Warren Michigan 48092.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

13213144 v1

(d) authorizing the Debtors to assume the Consulting Agreement; (e) authorizing the Debtors to retain the Consultant as special asset disposition advisor pursuant to Section 327(a) of the bankruptcy Code; (f) scheduling a final hearing to consider approval of the Motion on a final basis; and (g) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that certain of the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested herein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND DETERMINED THAT:[3]

    A.    The Debtors have advanced sound business reasons for seeking to implement the Store Closing Procedures, as set forth at the Hearing, and such relief is in the best interests of the Debtors and their estates.

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate.

B.      The Store Closing Procedures are reasonable, and the conduct of the Closing Sales in accordance with the Store Closing Procedures (as may be modified by Side Letter (as defined below)) will provide an efficient means for the Debtors to dispose of the Merchandise and the M&E and will maximize the returns on the Merchandise and the M&E.

C.      The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates and the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

D.      The Store Closings and Closing Sales are in the best interest of the Debtors' estates.

E.      The entry of this Interim Order is in the best interest of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and now therefore it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis solely as provided herein.

2.      The hearing on the portion of the Motion requesting interim approval for the Debtors to assume the Consulting Agreement be and hereby is, adjourned to March 20, 2020 at 10:00 a.m., prevailing Eastern Time (the "Continued Hearing").  All objections or responses pertaining to interim approval for assumption of the Consulting Agreement shall be filed on or before 4:00 p.m., prevailing Eastern Time, on March 18, 2020, and shall be served on:  (a) the Debtors, 6500 14 Mile Road, Warren, Michigan 48092, Attn:  Michael Zambricki; (b) proposed counsel to the Debtors, Benesch, Friedlander, Coplan & Aronoff LLP, 222 Delaware Avenue, Suite 201, Wilmington, Delaware 19801-1611, Attn: Michael J. Barrie and Gregory W. Werkheiser; (ii) proposed special counsel to the Debtors, Montgomery McCracken Walker & Rhoads LLP, 437 Madison Avenue, New York, NY 10022; (iii) counsel to the Prepetition ABL Agent, Morgan Lewis & Bockius LLP, (a) 101 Park Avenue, New York, New York 10178-0060,

13213144 v1

Attn: Jennifer Feldsher, and (b) One Federal Street, Boston, Massachusetts 02110, Attn: Marjorie Crider and Christopher L. Carter, and Burr & Forman LLP, 1201 N. Market Street, Suite 1407, Wilmington, Delaware 19801, Attn: J. Cory Falgowski; (iv) counsel to the Prepetition Term Loan Agent, Greenberg Traurig, LLP, One International Place, Suite 2000, Boston, MA 02110, Attn: Jeffrey M. Wolf; (v) the Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda Richenderfer; and (vi) counsel to any statutory committee appointed in these chapter 11 cases (collectively, the "Notice Parties").

3. The final hearing (the "Final Hearing") on the Motion shall be held on April 6, 2020, at 1:00 p.m., prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be served on the Notice Parties by no later than 4:00 p.m. at March 30, 2020. In the event no objections to entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without need for the Final Hearing.

4. The Debtors are authorized, but not directed, to make payments under the Store Closing Bonus Plan; provided however, the Store Closing Bonus Plan shall be no greater than ten percent (10%) of the aggregate payroll and shall be limited to store-level employees.

5. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion and the Store Closing Procedures.

6. To the extent of any conflict between this Interim Order, and the Store Closing Procedures, the terms of this Interim Order shall control. In the event of a conflict between this Interim Order, the Store Closing Procedures, and any Side Letter (as defined below), the terms of the respective Side Letter with the respective landlord shall control.

7. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

13213144 v1

**I.      Authority to Engage in Closing Sales and Conduct Store Closings.**

8.      The Debtors are authorized, on an interim basis pending the Continued Hearing, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to continue and conduct Closing Sales at the Closing Stores in accordance with this Interim Order, the Store Closing Procedures (as may be modified by a Side Letter (as defined below) between the Debtors and the respective landlords.

9.      The Store Closing Procedures are approved in their entirety on an interim basis pending the Continued Hearing.

10.     The Debtors are authorized to discontinue operations at the Closing Stores in accordance with this Interim Order and the Store Closing Procedures.

11.     All entities that are presently in possession of some or all of the Merchandise or M&E in which the Debtors hold an interest are hereby directed to surrender possession of such Merchandise or M&E to the Debtors.

12.     Neither the Debtors nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including, without limitation, any Governmental Unit (as defined in Bankruptcy Code section 101(27)) or landlord, to conduct the Closing Sales and to take the related actions authorized herein.

**II.     Conduct of the Sales.**

13.     All media in which the Closing Sales may be advertised and all landlords are directed to accept this Interim Order as binding authority so as to authorize the Debtors to conduct the Closing Sales and the sale of Merchandise and the M&E including, without limitation, to conduct and advertise the sale of the Merchandise and M&E in the manner contemplated by and in accordance with this Interim Order and the Store Closing Procedures (as may be modified by a Side Letter.)  Notwithstanding anything to the contrary in this Interim Order or the Store Closing

Procedures, the Debtors shall not sell or abandon any diagnostic units and related kiosks owned by Kingsdown, Inc. ("Kingsdown") and prior to the Sale Termination Date coordinate with Kingsdown for Kingsdown to retrieve such items when they are no longer being used during the Sale Term.

14.     The Debtors are hereby authorized to take such actions as may be necessary and appropriate to conduct the Store Closings without necessity of further order of this Court as provided in this Interim Order and the Store Closing Procedures, including, but not limited to, advertising the sale as a "store closing sale," "sale on everything," "everything must go," or similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall closing locations, and at enclosed mall closing locations to the extent the applicable closing location entrance does not require entry into the enclosed mall common area), use of signwalkers, A-frames, feather flags, and street signage; *provided*, *however*, that only Debtor-approved terminology will be used at each Closing Store in connection with the Sales. Notwithstanding the foregoing, the Debtors are authorized to continue to operate the retail store locations identified on **Exhibit 2** hereto (the "Levin & Wolf Go Forward Stores") until the earlier of (i) the closing of the sale of the assets identified in that certain letter agreement dated as of March 4, 2020 (the "Levin LOI") by and among Levin Furniture, LLC, Levin Trucking, LLC, as Buyer, and Sam Levin, Inc. and LF Trucking, Inc., as Seller, as may be amended or superseded by any asset purchase agreement entered into by the parties in accordance with the Interim Cash Collateral Order (the "Levin Sale Transaction")[4]; (ii) the Levin Sale Milestone with respect to the outside date for consummating the Levin Sale as set forth in Paragraph 12(e)(iv) of the Interim

---

[4] The "Interim Cash Collateral Order" is that certain interim order of this Court, entered on March 11, 2020, (i) authorizing the Debtors to use cash collateral, (ii) granting adequate protection to the prepetition secured parties, (iii) modifying the automatic stay, (iv) scheduling a final hearing, and (v) granting related relief [Dkt. #93]

13213144 v1

Cash Collateral Order as such milestone may be extended in accordance with the Interim Cash Collateral Order; or (iii) if the Debtors determine that the Levin Sale Transaction will not close, such earlier date as the Debtors (after consultation with their secured lenders) determine (the "Levin Sale Transaction Deadline"). In the event that the Levin Sale Transaction does not close on or prior to the Levin Sale Transaction Deadline, then the Debtors shall have the right to designate the Levin & Wolf Go Forward Stores as Closing Stores (the "Additional Closing Stores") on no less than three (3) business days' notice.

15. The sale of the Merchandise and M&E shall be conducted by the Debtors notwithstanding any restrictive provision of any lease, sublease, restrictive covenant, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store Closings or the Closing Sales (including the sale of the Merchandise and M&E) and the abandonment of assets, or "going dark" provisions, and such provisions shall not be enforceable in conjunction with the Sales or the Store Closings. Breach of any such provisions in these chapter 11 cases in conjunction with the Store Closings or the Closing Sales shall not constitute a default under a lease or provide a basis to terminate the lease; *provided* that the Store Closings and Closing Sales are conducted in accordance with the terms of this Interim Order and the Store Closing Procedures (as may be modified by a Side Letter). The Debtors and landlords of the Closing Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the Store Closing Procedures in terms of the conduct or promotion of the Sale at the subject Stores premises by the Debtors without further order of the Court and such Side Letters shall be binding as among the Debtors and any such landlords. In the event of any conflict between the Store Closing Procedures, this Order and any Side Letter, the terms of such Side Letter shall control.

16. Except as expressly provided for herein or in the Store Closing Procedures, and except with respect to any Governmental Unit (as to which paragraphs 22 and 23 shall apply) no person or entity, including, but not limited to, any landlord, licensor, service provider, utility, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Closing Sales or the sale of Merchandise or M&E, or the advertising and promotion (including the posting of signs and exterior banners or the use of signwalkers) of such sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service provider, utility, and creditor and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding the conduct of the Closing Sales and/or Store Closings, and/or (b) instituting any action or proceeding in any court (other than this Court) or administrative body seeking an order or judgment against, among others, the Debtors, or the landlords at the Closing Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Closing Sales or other liquidation sales at the Closing Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

17. All sales of Merchandise and M&E shall be "as is" and final. Returns related to the purchase of Merchandise and M&E shall not be accepted at stores that are not participating in the Store Closings. However, as to the Closing Stores, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."

18. The Debtors shall remain liable for sales taxes for Merchandise and M&E sold in connection with the Closing sales. The Debtors are directed to remit all taxes arising from the

Sales to the applicable Governmental Units as and when due; *provided* that in the case of a *bona fide* dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit. For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected. This Interim Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

19. Pursuant to section 363(f) of the Bankruptcy Code, the Debtors are authorized to sell Merchandise and M&E through the Closing Stores and all sales of Merchandise and M&E shall be free and clear of any and all of any liens, claims, encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state, and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax, labor, ERISA, CERCLA, alter ego and other liabilities, causes of action, contract rights, and claims, to the fullest extent of the law, in each case, of any kind or nature (including, without limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether pre-petition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable (collectively, "Encumbrances"); as provided for herein because in each case, one or more of the standards set

forth in section 363(f)(1)–(5) has been satisfied; *provided, however*, that any such Encumbrances shall attach to the proceeds of the sale of the Merchandise and the M&E with the same validity, in the amount, with the same priority as, and to the same extent that any such Encumbrances have with respect to the Merchandise and the M&E.

20. To the extent that the Debtors propose to sell or abandon M&E that may contain personal and/or confidential information about the Debtors' employees and/or customers (the "Confidential Information"), the Debtors shall remove the Confidential Information from such items of M&E before such sale or abandonment.

21. The Debtors are authorized and empowered to transfer Merchandise and M&E among, and into, the Stores.

### III. Dispute Resolution Procedures with Governmental Units.

22. Nothing in this Interim Order, or the Store Closing Procedures, releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Interim Order. Nothing contained in this Interim Order, or the Store Closing Procedures shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with its rights and obligations as debtor in possession under the Bankruptcy Code. The Store Closings and the Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"). Nothing in this Interim Order or the Store Closing Procedures, shall alter or affect obligations to comply with

13213144 v1

all applicable federal safety laws and regulations. Nothing in this Interim Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(47) of the Bankruptcy Code) from enforcing General Laws, subject to the Debtors' rights to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code or this Interim Order. Notwithstanding any other provision in this Interim Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Interim Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Interim Order shall be deemed to have made any rulings on any such issues.

23. To the extent that the sale of Merchandise and M&E is subject to any Liquidation Sale Laws, including any federal, state or local statute, ordinance, or rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws, laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the sale and including ordinances establishing license or permit requirements, waiting periods, time limits, or bulk sale restrictions that would otherwise apply solely to the sale of the Merchandise and M&E, the Dispute Resolution Procedures in this section shall apply:

    a.    Provided that the Closing Sales are conducted in accordance with the terms of the Interim Order or the Final Order, as applicable, and the Store Closing Procedures, and in light of the provisions in the laws of many Governmental Units (as defined in the Bankruptcy Code) that exempt court-ordered sales from their provisions, the Debtors will be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Closing Sales in accordance with the terms of the Interim Order or the Final Order, as applicable, and the Store Closing Procedures without the necessity of further showing compliance with any such Liquidation Sale Laws.

    b.    Within three (3) business days after entry of the Interim Order, the Debtors will serve by email, facsimile, or first-class mail, copies of the Interim Order, the proposed Final Order and the Store Closing Procedures on the

       following: (i) the landlords for the Stores; (ii) the Attorney General's office for each state in which the Closing Sales are being held; (iii) the county consumer protection agency or similar agency for each county in which the Closing Sales are being held; (iv) the division of consumer protection for each state in which the Closing Sales are being held; (v) the chief legal counsel for each local jurisdiction in which the Closing Sales are being held (collectively, the "Dispute Notice Parties").

  c.  With respect to any Additional Closing Stores, within three (3) business days of the Debtors' designation of such locations as Additional Closing Stores, the Debtors will serve by email, facsimile, or first-class mail, copies of the Interim Order or Final Order, as applicable, and the Store Closing Procedures on the Dispute Notice Parties. To the extent that there is a dispute arising from or relating to the Sales, the Interim Order, or the proposed Final Order, as applicable, the Store Closing Procedures, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within ten (10) days following entry of the Interim Order or service of any Additional Closing Store List, as applicable, any Governmental Unit may assert that a Reserved Dispute exists by sending a notice (the "Dispute Notice") explaining the nature of the dispute to: (i) counsel to the Debtors, Benesch, Friedlander, Coplan & Aronoff LLP, 222 Delaware Avenue, Suite 201, Wilmington, Delaware 19801-1611, Attn: Michael J. Barrie and Gregory W. Werkheiser; (ii) counsel to the Prepetition ABL Agent, Morgan Lewis & Bockius LLP, (a) 101 Park Avenue, New York, New York 10178-0060, Attn: Jennifer Feldsher, and (b) One Federal Street, Boston, Massachusetts 02110, Attn: Marjorie Crider and Christopher L. Carter, and Burr & Forman LLP, 1201 N. Market Street, Suite 1407, Wilmington, Delaware 19801, Attn: J. Cory Falgowski; (iii) counsel to the Consultant, Riemer & Braunstein LLP, Times Square Tower, Seven Times Square, Suite 2506, New York, New York 10036; (iii) the United States Trustee's Office for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda Richenderfer; (iv) counsel to the Prepetition Term Loan Lenders, Greenberg Traurig, LLP, One International Place, Suite 2000, Boston, MA 02110, Attn: Jeffrey M. Wolf. The Debtors shall also notify any affected Landlord (and their counsel, if known) of any Dispute Notice within three (3) business days of receipt. If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within 15 days after service of the Dispute Notice, the Governmental Unit may file a motion with the Court requesting that the Bankruptcy Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

  d.  In the event that a Dispute Resolution Motion is filed, nothing in the Interim Order or the Final Order, as applicable, shall preclude the Debtors, a landlord, or any other interested party from asserting (i) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or

    (ii) that neither the terms of the Interim Order or the Final Order nor the conduct of the Debtors pursuant to the Interim Order or the Final Order violates such Liquidation Sale Laws.  Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of the Interim Order or the Final Order or to limit or interfere with the Debtors' ability to conduct or to continue to conduct the Closing Sales pursuant to the Interim Order or the Final Order, absent further order of the Court.  Upon the entry of the Interim Order or the Final Order, as applicable, the Court grants authority for the Debtors to conduct the Closing Sales pursuant to the terms of the Interim Order or the Final Order, as applicable, the Store Closing Procedures and to take all actions reasonably related thereto or arising in connection therewith.  The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code.  Nothing in the Interim Order or the Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

  e. If, at any time, a dispute arises between the Debtors and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in the Interim Order or the Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (c) and (d) above by serving a notice to the other party and proceeding thereunder in accordance with those subparagraphs.  Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

  24. Subject to paragraphs 22 and 23 above, each and every federal, state, or local agency, departmental unit, or Governmental Unit with regulatory authority over the Closing Sales, and all newspapers and other advertising media in which the Closing Sales are advertised shall consider this Interim Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors be required, to post any bond, to conduct the Sales.

  25. Within three (3) business days of this Interim Order, the Debtors shall serve copies of this Interim Order, and the Store Closing Procedures via e-mail, facsimile, or regular mail, on: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Attorney's

Office for the District of Delaware; (d) the Internal Revenue Service; (e) the state attorneys general for all states in which the Debtors conduct business; (f) all parties who are known by the Debtors to assert liens against the Merchandise and the M&E ; (g) all state attorneys general in which the Merchandise and the M&E are located; (h) municipalities in which the Merchandise and the M&E are located; (i) all of the Debtors' landlords at the locations of the Stores; (j) all applicable state and consumer protection agencies; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

26. The treatment of Pre-SCD Orders, including the Cancelled Back-Order Merchandise Credit, described in the interim order (a) authorizing the Debtors to implement and administer the Essential Customer Programs and honor certain prepetition obligations related thereto, (b) scheduling a final hearing to consider approval of the Motion on a final basis, and (c) granting related reliefs, entered by this Court on March 12, 2020 (this "<u>Customer Programs Interim Order</u>", Dtk. No. 111) is a sound exercise of the Debtors' business judgment, complies with applicable law, and is hereby approved, subject to entry of the Final Order.

27. Subject to the restrictions set forth in this Interim Order and the Store Closing Procedures (as may be modified by a Side Letter), the Debtors are hereby authorized to take any and all actions as may be necessary or desirable to implement the Store Closings, and the Closing Sales, and any actions taken by the Debtors necessary to implement the Closing Sales prior to the date hereof, are hereby approved and ratified.

28. The Debtors shall not be required to comply with any state or local law requiring that the Debtors pay an employee substantially contemporaneously with his or her termination;

*provided*, *however*, that the Debtors shall pay any accrued wages to terminated employees as expeditiously as possible.

29. Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Interim Order are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection or to seek avoidance of all such liens. No payment made pursuant to this Interim Order should be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

30. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

31. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

32. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

33. Cause exists to shorten the notice period set forth in Bankruptcy Rule 2002, to the extent possible.

34. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion (as limited by this Interim Order).

35. Pending further order of this Court with respect to the request for a temporary restraining order ("TRO Request") filed by Jofran, Inc. ("Jofran"), the Debtors, their employees, and their agents, shall refrain from any further sales, transfers, promotions, and advertisements (including on the Debtors' websites), of the Reign Dining, the Reign Occasional, the Reign Entertainment, the Manadel Dining, the Manadel Occasional, the Manadel Entertainment lines of furniture, and any other types of furniture manufactured in the Reign or Manadel lines. Notwithstanding the foregoing, nothing in this paragraph shall be deemed a finding by this Court that Jofran has any protectable intellectual property rights in its furniture design, that the Debtors have engaged in any conduct that constitutes trade dress infringement or unfair competition, or that Debtors made any fraudulent misrepresentations. The Debtors reserve all rights and defenses in regards to the complaint and TRO Request filed by Jofran. Further, nothing herein shall impair or otherwise affect any claim that Jofran may have against the Debtors or any other party, or the priority of such claims and Jofran reserves all of its rights.

36. Notwithstanding anything to the contrary in this order, Synchrony Bank is not required to extend credit to customers of the Debtors in connection with the Store Closing Sales liquidation sales or under other circumstances where it is not required to do so under the terms of the Private Label Consumer Credit Card Program Agreement dated December 24, 2009 between Sam Levin, Inc. and Synchrony Bank, as amended from time to time, the Bankruptcy Code, or other applicable law; provided however, nothing contained in this paragraph shall be deemed to

limit or restrict the Debtors' ability to offer such Synchrony Bank credit terms to customers at the Levin & Wolf Go Forward Stores, unless such locations are designated as Additional Closing Stores.

37. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order, including, but not limited to, (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional, and non-deceptive manner, (b) any claim of the Debtors, the landlords for protection from interference with the Store Closings or Closing Sales, (c) any other disputes related to the Store Closings or Closing Sales, and (d) protect the Debtors against any assertions of any liens, claims, encumbrances, and other interests. No such parties or person shall take any action against the Debtors, the landlords, the Store Closings, or the Closing Sales until this Court has resolved such dispute. This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

## Store Closing Procedures[5]

1. The Sales shall be conducted so that the Stores in which Sales are to occur will remain open no longer than during the normal hours of operation or such hours as otherwise provided for in the respective leases for the Stores.

2. The Store Closing Sales shall be conducted in accordance with applicable state and local "Blue Laws," where applicable, so that no Store Closing Sale shall be conducted on Sunday unless the Debtors had been operating such Stores on a Sunday prior to the commencement of the Store Closing Sales.

3. On "shopping center" property, the Debtors shall not distribute handbills, leaflets or other written materials to customers outside of any Stores' premises, unless permitted by the lease or if distribution is customary in the "shopping center" in which such Stores is located; *provided* that the Debtors may solicit customers in the Stores themselves. On "shopping center" property, the Debtors shall not use any flashing lights or amplified sound to advertise the Store Closing Sales or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

4. At the conclusion of the Store Closing Sales, the Debtors shall vacate the Stores and the Distribution Centers in broom clean condition; *provided* that Debtors may abandon any M&E not sold in the Store Closing Sales at the conclusion of the Store Closing Sales. The Debtors will have the option to remove the M&E at their own cost prior to the termination date. Any abandoned M&E left in a Stores after a lease is rejected shall be deemed abandoned to the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party and without waiver of any damage claims against the Debtors. For the avoidance of doubt, as of the Sale Termination Date, the Debtors may abandon, in place and without further responsibility or liability of any kind, any M&E.

5. The Debtors may advertise each Store Closing Sale as a "store closing," "sale on everything," "everything must go," or similar themed sale, and to the extent permitted in the Approval Orders, "going out of business". The Debtors may also have "countdown to closing" signs prominently displayed in a manner consistent with these Store Closing Procedures. All signs, banners, ads and other advertising collateral, promotions, and campaigns will be approved by the Debtors in accordance with these Store Closing Procedures.

6. The Debtors shall be permitted to utilize sign walkers, display, hanging signs, and interior banners in connection with the Sales; *provided* that such sign walkers, display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner. The Debtors shall not use neon or day-glo on its sign walkers, display, hanging signs, or interior banners. Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Store Closing Procedures. In addition, the Debtors shall be permitted to utilize exterior banners at (i) non-

---

[5] Capitalized terms used but not defined in these Store Closing Procedures have the meanings given to them in the Interim Order to which these Store Closing Procedures are attached as **Exhibit 1** or the Motion to which the Interim Order is attached as **Exhibit A**, as applicable.

enclosed mall Stores and (ii) enclosed mall Stores to the extent the entrance to the applicable Stores does not require entry into the enclosed mall common area; *provided*, however, that such banners shall be located or hung so as to make clear that the Store Closing Sales are being conducted only at the affected Stores, and shall not be wider than the storefront of the Closing Stores. In addition, the Debtors shall be permitted to utilize sign walkers in a safe and professional manner and in accordance with the terms of the Order. Nothing contained in these Store Closing Procedures shall be construed to create or impose upon the Debtors any additional restrictions not contained in the applicable lease agreement.

7. The purchasers of any Merchandise sold during the Store Closing Sales shall be permitted to remove the Merchandise through the front of the Closing Stores, or through the back or alternative shipping areas at any time.

8. Conspicuous signs shall be posted in the cash register areas of each of the affected Stores to effect that "all sales are final."

9. Except with respect to the hanging of exterior banners, the Debtors shall not make any alterations to the storefront or exterior walls of any Stores, except as authorized by the applicable lease.

10. The Debtors shall not make any alterations to interior or exterior Stores lighting, except as authorized by the applicable lease. No property of the landlord of a Stores shall be removed or sold during the Store Closing Sales. The hanging of exterior banners or in-store signage and banners shall not constitute an alteration to a Stores.

11. The Debtors shall keep Stores premises and surrounding areas clean and orderly consistent with present practices.

12. The Debtors may advertise the sale of the M&E in a manner consistent with these guidelines. The purchasers of any M&E sold during the Store Closing Sales shall be permitted to remove the M&E either through the back or alternative shipping areas at any time, or through other areas after applicable business hours, *provided, however* that the foregoing shall not apply to *de minimis* M&E sales made whereby the item can be carried out of the Closing Stores in a shopping bag. For the avoidance of doubt, as of the Sale Termination Date, The Debtors may abandon, in place and without further responsibility, any M&E.

13. At the conclusion of the Store Closing Sales at each Stores, pending assumption or rejection of applicable leases, the landlords of the Closing Stores shall have reasonable access to the Closing Stores' premises as set forth in the applicable leases. The Debtors and their representatives and agents shall continue to have access to the Closing Stores.

14. The rights of landlords against the Debtors for any damages to a Stores shall be reserved in accordance with the provisions of the applicable lease.

15. If and to the extent that the landlord of any Stores affected hereby contends that the Debtors is in breach of or default under these Store Closing Procedures, such landlord shall email or deliver written notice by overnight delivery to the Debtors as follows:

If to the Debtors:

Art Van Furniture, LLC
6500 14 Mile Road
Warren, MI 48092
Attn: Michael Zambricki
Email: mzambricki@artvan.com

with copies (which shall not constitute notice) to:

Benesch, Friedlander, Coplan & Aronoff LLP
222 Delaware Avenue, Suite 801
Wilmington, Delaware 19801
Attn: Gregory Werkheiser & Michael J. Barrie
Email: gwerkheiser@beneschlaw.com and mbarrie@Beneschlaw.com

-and-

Montgomery McCracken Walker & Rhoads LLP
437 Madison Avenue
New York, NY 10022
Attn. Maura I. Russell
Email: mrussell@mmwr.com

If the parties are unable to resolve the dispute, either the landlord or the Debtors shall have the right to schedule a hearing before the Court on no less than five (5) days' written notice to the other party, served by email or overnight delivery.

Dated: March 16th, 2020
Wilmington, Delaware

**CHRISTOPHER S. SONTCHI**
**UNITED STATES BANKRUPTCY JUDGE**

13213144 v1