## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 7 |
| ART VAN FURNITURE, LLC, *et al.*,[1] | Case No. 20-10553 (CSS) |
| Debtors. | (Jointly Administered) |
|  | **Related to Docket No. 348** |

### SECOND INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of Alfred T. Giuliano, solely in his capacity as trustee (the "Trustee") for the Chapter 7 bankruptcy estates of (a) AVF Parent, LLC (the "Borrower"), and (b) AVF Holdings II, LLC, Art Van Furniture, LLC, Art Van Furniture of Canada, LLC, AV Pure Sleep Franchising, LLC, AVCE, LLC, AVF Franchising, LLC, AVF Holding Company, Inc., AVF Holdings I, LLC, Levin Parent, LLC, LF Trucking, Inc., Comfort Mattress, LLC and Sam Levin, Inc., each as a debtor and debtor in possession (collectively, with the Borrower, the "Debtors") in the above-captioned Chapter 7 cases (collectively, the "Cases"), seeking entry of an order (this "Second Interim Order") pursuant to sections 105, 361, 362, 363 and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001,

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463). The location of the Debtors' service address in these chapter 11 cases is: 6500 East 14 Mile Road, Warren Michigan 48092.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Motion or the First Interim Order (as defined herein).

6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") *inter alia*:

     (i)     authorizing the Trustee to use Cash Collateral of the Prepetition ABL Parties under the Prepetition ABL Documents and the Prepetition Term Loan Parties under the Prepetition Term Loan Documents (each as defined herein), and providing adequate protection to the Prepetition ABL Parties and Prepetition Term Loan Parties for any diminution in value, including resulting from the imposition of the automatic stay, the Trustee's use, sale, or lease of the Cash Collateral, and, in the case of the Prepetition Secured Parties, the priming of their respective interests in the Cash Collateral pursuant to the terms and conditions set forth herein ("Diminution in Value");

     (ii)     vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of this Second Interim Order; and

     (iii)     scheduling a final hearing.

The Court having considered the Motion, the exhibits attached thereto, and the evidence submitted and argument made at the second interim hearing held on April 27, 2020 (the "Second Interim Hearing"); and the Court having entered the *Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Dkt. No. 93] (the "First Interim Order"); and notice of the Second Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b) and (d), and all applicable Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"); and the Second Interim Hearing having been held and

concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending a final hearing (the "Final Hearing"), and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and all parties in interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets pending the resumption of going-out-of-business sales; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE SECOND INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    **Petition Date**.  On March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").

B.    **Chapter 7 Trustee**.  On April 6, 2020, the Court granted the Debtors' motion to convert the Cases to cases under chapter 7 of the Bankruptcy Code, effective as of April 7, 2020.

C.    **Jurisdiction and Venue**.  This Court has jurisdiction over the Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue for the Cases and proceedings on the Motion is proper before this Court pursuant to 28

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

U.S.C. §§ 1408 and 1409.

      D.     **Notice**. Notice of the Motion and the Second Interim Hearing have been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

      E.     **First Interim Order**. On March 11, 2020, this Court entered the First Interim Order. Pursuant to the First Interim Order, the Debtors were authorized to use Cash Collateral subject to certain terms and conditions. On March 19, 2020, the Prepetition ABL Agent delivered a Termination Declaration to the Debtors which, among other things, notified the Debtors that due to the occurrence and continuation of certain Events of Default, the Debtors' ability to use Cash Collateral was terminated subject to the expiration of the Remedies Notice Period. The Remedies Notice Period was extended by the Prepetition ABL Agent and expired on April 6, 2020. The Debtors' ability to use Cash Collateral was terminated in accordance with the First Interim Order on April 6, 2020, and the Cases were converted to proceedings under chapter 7 of the Bankruptcy Code on April 7, 2020.

      F.     **Cash Collateral**. The Prepetition ABL Agent, for the benefit of itself and the other Prepetition ABL Parties, and the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Parties, assert that all of the Debtors' cash, including any cash in deposit accounts of the Debtors or on deposit with the Trustee, wherever located, constitutes Cash Collateral of the Prepetition Secured Parties.

      G.     **Adequate Protection**. The Prepetition ABL Agent, for the benefit of itself and the other Prepetition ABL Parties, and the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Parties, are each entitled to receive adequate protection as set forth herein to the extent of any Diminution in Value of their respective interests in the Cash Collateral.

DB1/ 113471671.4
DOCS_SF:103196.11 05233/003

H.    **Good Faith**. The Prepetition Secured Parties and the Trustee, on behalf of the Debtors' estates, have negotiated at arms' length and in good faith regarding the Trustee's use of Cash Collateral during the Specified Period (defined below). The Prepetition Secured Parties have agreed to permit the Trustee, on behalf of the Debtors' estates, to use their Cash Collateral for the Specified Period, subject to the terms and conditions set forth herein, which terms and conditions are fair and reasonable and have been stipulated to by the Trustee in the exercise of his sound business judgment. Entry of this Second Interim Order is in the best interests of the Debtors, their estates and their creditors.

I.    **Immediate Entry**. Sufficient cause exists for immediate entry of this Second Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

J.    **Second Interim Hearing**. Notice of the Second Interim Hearing and the relief requested in the Motion has been provided by the Trustee, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties-in-interest, including: (i) the U.S. Trustee; (ii) those entities or individuals included on the Debtors' list of 30 largest unsecured creditors on a consolidated basis; (iii) counsel to the Prepetition ABL Agent; (iv) counsel to the Prepetition Term Loan Agent; and (v) all other parties entitled to notice under the Bankruptcy Rules and the Local Rules. The Trustee has made reasonable efforts to afford the best notice possible under the circumstances.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.    <u>Motion Granted</u>. The Motion is granted, subject to the terms and conditions set forth in this Second Interim Order. The Trustee shall not use Cash Collateral except as expressly authorized and permitted herein. All objections to this Second Interim Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled.

2.    <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Second Interim Order, the Trustee is authorized to use Cash Collateral solely in accordance with the Budget, for the period (the "<u>Specified Period</u>") from the date of this Second Interim Order through the date which is the earliest to occur of: (a) the Termination Date, (b) May 29, 2020 (unless otherwise extended in writing by agreement of the Trustee and the Prepetition ABL Parties (which agreement may be by email)) and (c) entry of a final order (the "<u>Final Order</u>") of this Court regarding the Trustee's use of Cash Collateral. Nothing in this Second Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any use of Cash Collateral or proceeds resulting therefrom, except (x) as otherwise consented to by the Prepetition ABL Agent (with respect to Postpetition ABL Priority Collateral) or the Prepetition Term Loan Agent (with respect to Postpetition Term Priority Collateral) in writing, or (y) as otherwise disposed of, or used, in accordance with the Budget. The Trustee is not required or authorized to pay any sales taxes (or any related penalties or interest) that may be due and owing by the Debtors, except as set forth in the Budget or otherwise approved in writing by the Prepetition ABL Parties and the Prepetition Term Loan Parties.

3.    <u>Adequate Protection Liens</u>.

(a)    *Prepetition ABL Adequate Protection Liens*. Subject to the Carve Out, pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection of the

interests of the Prepetition ABL Parties in the Prepetition Collateral to the extent of any Diminution in Value of such interests in the Prepetition Collateral, pursuant to the First Interim Order (which grant is hereby ratified, continued, and affirmed), the Debtors granted to the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Parties, continuing, valid, binding, enforceable, and perfected postpetition security interests in and liens on (the "Prepetition ABL Adequate Protection Liens") any Postpetition Collateral.[4]

---

[4] "Postpetition Collateral" means: all personal property, whether now existing or hereafter arising and wherever located, tangible and intangible, of each of the Debtors, including: (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables from, and claims against, the Debtors' credit card processors (the "Processor Claims") including, but not limited to, Bank of America, Synchrony, and PNC Bank), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including all of the issued and outstanding capital stock of each of its subsidiaries), hedge agreements, furniture, fixtures, equipment (including documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims (subject to entry of the Final Order, other than with respect to Processor Claims which shall be included as Postpetition Collateral immediately upon entry of this Second Interim Order), causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds; (b) all proceeds of leased real property; (c) the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents (subject to entry of the Final Order, other than with respect to Processor Claims which shall be included as Postpetition Collateral immediately upon entry of this Second Interim Order); and (d) all Prepetition Collateral that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date. Notwithstanding the foregoing, Postpetition Collateral shall not include the Debtors' real property leases (but shall include all proceeds of such leases). Postpetition Collateral that is (i) Prepetition ABL Priority Collateral, (ii) of a type that would be Prepetition ABL Priority Collateral (including, without limitation, Processor Claims with respect to recovery of proceeds of Prepetition ABL Priority Collateral); and (iii) of a type that would be Prepetition ABL Priority Collateral, but that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date, shall, in each case, constitute "Postpetition ABL Priority Collateral." Postpetition Collateral that is (i) Prepetition Term Priority Collateral, (ii) of a type that would be Prepetition Term Priority Collateral; and (iii) of a type that would be Prepetition Term Priority Collateral, but that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date shall constitute "Postpetition Term Priority Collateral." Postpetition Collateral that is (i) the proceeds of the Debtors' real property leases; and (ii) other than with respect to Processor Claims, but subject to entry of the Final Order, the proceeds of avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents shall be shared Postpetition Collateral, and the Prepetition ABL Liens and Prepetition Term Loan Liens (and corresponding adequate protection liens and claims) on such proceeds shall rank equally in priority and share such proceeds equally (with 50% of such proceeds applied to the Prepetition ABL Obligations and 50% applied to the Prepetition Term Loan Obligations). Notwithstanding anything to the

(b)    *Prepetition Term Loan Adequate Protection Liens.*  Pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Term Loan Parties in the Prepetition Collateral, to the extent of any Diminution in Value of such interests in the Prepetition Collateral, pursuant to the First Interim Order (which grant is hereby ratified, continued, and affirmed), the Debtors granted to the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Parties, continuing, valid, binding, enforceable, and perfected postpetition security interests in and liens on the Postpetition Collateral (the "Prepetition Term Loan Adequate Protection Liens," and together with the Prepetition ABL Adequate Protection Liens, the "Adequate Protection Liens").

4.    Priority of Adequate Protection Liens.

(a)    The Prepetition ABL Adequate Protection Liens are and shall remain senior to all other security interests in, liens on, or claims against any of the Postpetition Collateral; *provided that*, the Prepetition ABL Adequate Protection Liens shall be subject to the Carve Out and junior only to: (i) with respect to the Postpetition ABL Priority Collateral, (A) Prepetition ABL Permitted Prior Liens and (B) the Prepetition ABL Liens; and (ii) with respect to the Postpetition Term Priority Collateral, (A) Prepetition Term Loan Permitted Prior Liens, (B) the Prepetition Term Loan Liens, (C) the Prepetition Term Loan Adequate Protection Liens, and (D) the Prepetition ABL Liens.

(b)    The Prepetition Term Loan Adequate Protection Liens are and shall remain senior to all other security interests in, liens on, or claims against any of the

---

contrary herein, but subject to entry of the Final Order, proceeds of commercial tort claims and avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code shall be applied equally to (x) repay the Prepetition Secured Obligations in accordance with this Second Interim Order, and (y) the Debtors' estates to fund the reasonable and necessary costs of the Debtors' estates and for the account of and paid to whomever may be lawfully entitled thereto (other than the Prepetition Secured Obligations). Nothing herein shall be construed to impair any Permitted Prior Liens.

Postpetition Collateral; *provided that*, the Prepetition Term Loan Adequate Protection Liens shall be subject to the Carve Out and junior only to: (i) with respect to the Postpetition ABL Priority Collateral, (A) Prepetition ABL Permitted Prior Liens, (B) the Prepetition ABL Liens, (C) the Prepetition ABL Adequate Protection Liens, and (D) the Prepetition Term Loan Liens; and (ii) with respect to the Postpetition Term Priority Collateral, (A) Prepetition Term Loan Permitted Prior Liens, and (B) the Prepetition Term Loan Liens.

(c)    Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases"), and shall be valid and enforceable in the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases. The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

5.    Adequate Protection Superpriority Claims.

(a)    *Prepetition ABL Superpriority Claim.* As further adequate protection of the interests of the Prepetition ABL Parties in the Prepetition Collateral, to the extent of any Diminution in Value of such interests in the Prepetition Collateral, pursuant to the First Interim Order (which grant is hereby ratified, continued and affirmed), the Prepetition ABL Agent, on behalf of itself and the Prepetition ABL Parties, was granted as and to the extent provided by section 507(b) of the Bankruptcy Code, an allowed superpriority administrative

expense claim in each of the Cases and any Successor Cases (the "Prepetition ABL Superpriority Claim").

        (b)   *Prepetition Term Loan Superpriority Claim.* As further adequate protection of the interests of the Prepetition Term Loan Parties in the Prepetition Collateral, to the extent of any Diminution in Value of such interests in the Prepetition Collateral, pursuant to the First Interim Order (which grant is hereby ratified, continued and affirmed), the Prepetition Term Loan Agent, on behalf of itself and the Prepetition Term Loan Parties, was granted as and to the extent provided by section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "Prepetition Term Loan Superpriority Claim," and together with the Prepetition ABL Superpriority Claim, the "Adequate Protection Superpriority Claims").

        6.   Priority of the Adequate Protection Superpriority Claims. Except as set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code. The Adequate Protection Superpriority Claims shall be subject to the Carve Out and the following priorities: (a) with respect to Postpetition ABL Priority Collateral, (1) the Prepetition ABL Superpriority Claim and (2) the Prepetition Term Loan Superpriority Claim; and (b) with respect to Postpetition Term Priority Collateral, (1) the Prepetition Term Loan Superpriority Claim and (2) the Prepetition ABL Superpriority Claim. Notwithstanding anything to the contrary herein, the Adequate Protection Superpriority Claims shall be payable only out of the proceeds of the Postpetition

Collateral.

7.    <u>Adequate Protection Payments and Protections for Prepetition ABL Parties</u>.  As further adequate protection, the Trustee is authorized to pay in cash the following: (a) all principal and interest at the default rate due under the Prepetition ABL Documents (but subject to the Challenge rights to the extent preserved in paragraph 27 of the First Interim Order) and (b) in accordance with paragraph 22 herein, the reasonable and documented fees, out-of-pocket fees and expenses, and disbursements (including the reasonable and documented fees, out-of-pocket fees and expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition ABL Agent reimbursable under the Prepetition ABL Documents.  For the avoidance of doubt, in the event that the amounts paid under, and in accordance with, this paragraph exceed the corresponding line item set forth in the Budget, such payments shall not be considered an Event of Default.

8.    <u>Adequate Protection Payments and Protections for Prepetition Term Loan Agent</u>.  As further adequate protection, the Trustee is authorized to pay in cash, in accordance with paragraph 22 herein, the reasonable and documented fees, out-of-pocket fees and expenses, and disbursements (including the reasonable and documented fees, out-of-pocket fees and expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition Term Loan Agent on and subsequent to the Petition Date reimbursable under the Prepetition Term Loan Documents; *provided*, *however*, that any payments made under this paragraph 8 shall be made solely from proceeds of Postpetition Term Priority Collateral.  For the avoidance of doubt, in the event that the amounts paid under, and in accordance with, this paragraph exceed the corresponding line item set forth in the Budget, such payments shall not be considered an Event of Default.

DB1/ 113471671.4
DOCS_SF:103196.11 05233/003

9.    <u>Perfection of Adequate Protection Liens</u>.  This Second Interim Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, or to entitle the Prepetition Secured Parties to the priorities granted herein.  Notwithstanding the foregoing, each Prepetition Agent is authorized to file, as it in its sole discretion deems necessary or advisable, such financing statements, security agreements, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the Adequate Protection Liens, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation shall be necessary or required in order to create or perfect the Adequate Protection Liens.  The Trustee is authorized to execute and deliver promptly upon demand to the Prepetition Agents, as applicable, all such financing statements, mortgages, notices, and other documents as the Prepetition Agents may reasonably request.  Each Prepetition Agent, in its discretion, may file a photocopy of this Second Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument.

10.    <u>Adequate Protection Reservation</u>.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate

DB1/ 113471671.4
DOCS_SF:103196.11 05233/003

protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Cases or any Successor Cases. The receipt by the Prepetition Secured Parties of the adequate protection provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected. Further, this Second Interim Order shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection.

11. <u>Budget</u>. The use of Cash Collateral during the Specified Period is permitted solely in accordance with the Budget attached hereto as **Exhibit 1**. The Budget may be updated, modified, or supplemented by the Trustee with the written consent of the Prepetition Agents, but in any event the Budget shall be updated by the Trustee not less than one time in each four (4) consecutive week period, and each such updated, modified, or supplemented budget shall be approved in writing (including by email) by, and shall be in form and substance satisfactory to, the Prepetition Agents, each in their sole discretion), and no such updated, modified, or supplemented budget shall be effective until so approved, and once so approved shall be deemed the Budget; *provided, however*, that in the event the Prepetition Agents, on the one hand, and the Trustee, on the other hand, cannot agree as to an updated, modified or supplemented budget, the Trustee shall continue to operate under the most recent prior-approved Budget and such disagreement shall give rise to an Event of Default once the period covered by such prior Budget has terminated. Each Budget delivered to the Prepetition Agents shall be accompanied by such customary supporting documentation as reasonably requested by the Prepetition Agents and shall be prepared in good faith based upon assumptions the Trustee believes to be reasonable at the time of delivery. A copy of any Budget (or updated Budget once

approved by the Prepetition Agents) shall simultaneously be delivered to the U.S. Trustee.  All

Cash Collateral use must be strictly in accordance with the terms of the Budget or agreed to in

writing by the Prepetition Agents.

       12.    <u>Pay Down of Prepetition ABL Obligations</u>.  The Trustee shall endeavor to

satisfy the Prepetition ABL Obligations as soon as possible.  Until such time as the Prepetition

ABL Obligations have been satisfied in full in cash (including principal, interest, fees,

prepayment premiums, expenses, indemnities, other than contingent indemnification obligations

for which no claim has been asserted) and all other obligations, in the discretion of the

Prepetition ABL Agent, collateralized or satisfied in accordance with the terms of the Prepetition

ABL Documents, the Trustee shall pay to the Prepetition ABL Agent, for the benefit of the

Prepetition ABL Lenders, no less than (i) 10% of the Ending Book Cash as of the end of Week 8

of the Budget, (ii) 10% of actual Total Cash Receipts (as defined in the Budget) (net of Sales Tax

collected during that weekly period), on a weekly basis beginning with the first full week of the

liquidation sale process from and after Week 9 of the Budget, and (iii) on a weekly basis

beginning with the week that this Second Interim Order is entered, 50% of any net receipts or

funds recovered in excess of the projected Total Cash Receipts line item depicted in the Budget

(excluding proceeds of the going-out-of-business liquidation sale process from and after Week 9

and net of Sales Tax collected during that weekly period) for each such week through the

Termination Date; *provided, however*, that proceeds of Prepetition and Postpetition Term

Priority Collateral shall be subject to paragraph 17 of this Second Interim Order.  The

repayments provided under this paragraph shall be fully earned on Saturday of each week and

shall be paid to the Prepetition ABL Agent by the immediately following Wednesday and shall

not be subject to refund, offset, or rebate under any circumstances.

DB1/ 113471671.4
DOCS_SF:103196.11 05233/003

13.    <u>Modification of Automatic Stay</u>.    The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Second Interim Order, including to: (a) permit the Trustee to grant the Adequate Protection Liens and Adequate Protection Superpriority Claims; (b) permit the Trustee to perform such acts as the Prepetition Agents may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Trustee to incur all liabilities and obligations to the Prepetition Secured Parties under this Second Interim Order; and (d) authorize the Trustee to pay, and the Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of this Second Interim Order.

14.    <u>Protections of Rights of Prepetition Secured Parties</u>.

(a)    Subject to the Intercreditor Agreement and until the Termination Date, unless the Prepetition ABL Agent and Prepetition Term Loan Agent have each provided their respective prior written consent, or all Prepetition ABL Obligations and Prepetition Term Loan Obligations (excluding contingent indemnification obligations for which no claim has been asserted) have been Paid in Full, the Trustee shall neither seek entry of, nor support any motion or application seeking entry of, and otherwise shall object to any motion or application seeking entry of, any order (other than this Second Interim Order) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the Postpetition Collateral or Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the Prepetition Liens, the Prepetition Adequate Protection Liens, and/or the Adequate Protection Superpriority Claims except as expressly set forth in this Second Interim Order; (ii) the use of Cash Collateral for any purpose other than as permitted in this

DB1/ 113471671.4
DOCS_SF:103196.11 05233/003

Second Interim Order; (iii) the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor or any creditor's taking any setoff or recoupment against any of its prepetition indebtedness based upon any such return of goods pursuant to section 553 of the Bankruptcy Code or otherwise; or (iv) any modification of any of the Prepetition Secured Parties' rights under the First Interim Order, this Second Interim Order, the Prepetition ABL Documents, or the Prepetition Term Loan Documents. It shall be an Event of Default under this Second Interim Order if, in any of these Cases or any Successor Cases, the Trustee takes or fails to take any of the actions contemplated with respect to provisions (i) through (iv) of the previous sentence or if any order is entered granting any of the relief enumerated in provisions (i) through (iv) of the previous sentence.

(b)    The Trustee shall (i) maintain books, records, and accounts of receipts and disbursements and incurred expenses on a weekly basis; (ii) reasonably cooperate with, consult with, and provide to the Prepetition Agents, as applicable, all information, records and documents that any or all of the Debtors are obligated (including upon reasonable request by any of the Prepetition Agents, as applicable) to provide under the Prepetition Documents, or the provisions of this Second Interim Order; (iii) upon reasonable advance notice, permit the Prepetition Agents to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with the Trustee and other professional advisors (other than legal counsel) as and to the extent required by the Prepetition Documents; (iv) permit the Prepetition Agents to consult with the Trustee and

advisors on matters concerning the Debtors' businesses, financial condition, operations, and assets; and (v) upon reasonable advance notice, permit the Prepetition Agents to conduct, at their discretion, field audits, collateral examinations, liquidation valuations, and inventory appraisals at reasonable times in respect of any or all of the Postpetition Collateral and Prepetition Collateral, in each case, in accordance with the Prepetition Documents.

15.   Credit Bidding.  Subject to the Challenge rights referenced in paragraph 39 of this Second Interim Order, the Trustee shall not object to any Prepetition ABL Parties credit bidding up to the full amount of the applicable outstanding Prepetition ABL Obligations, or with respect to the Prepetition Term Loan Parties, credit bidding up to the full amount of the applicable outstanding Prepetition Term Loan Obligations, in each case including any accrued interest, fees, and expenses, in any sale of any Prepetition Collateral, as applicable, whether such sale is effectuated through sections 363 or 725 of the Bankruptcy Code or otherwise, to the extent permitted by section 363(k) of the Bankruptcy Code, and subject in each case to the rights, duties, and limitations, as applicable, of the parties under the Intercreditor Agreement, Prepetition Documents and to the provision of consideration sufficient to pay in full in cash any senior liens on the collateral that is subject to the credit bid.

16.   Proceeds of Subsequent Financing.  If the Trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Cases or any Successor Cases, shall obtain credit or incur debt pursuant to sections 364(b), 364(c), or 364(d) of the Bankruptcy Code at any time prior to the Prepetition Obligations being Paid in Full, and such facilities are secured by any Prepetition Collateral or Postpetition Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the Prepetition ABL Agent (or, following the Prepetition ABL Obligations being Paid in Full, to the

Prepetition Term Loan Agent) to be applied in accordance with the Intercreditor Agreement.

17.    Cash Collection. From and after the date of the entry of the Interim Order, all collections and proceeds of any Postpetition Collateral and Prepetition Collateral and all Cash Collateral (in each case, that does not constitute Prepetition or Postpetition Term Priority Collateral) that shall at any time come into the possession, custody, or control of the Trustee, or to which any Debtor is now or shall become entitled at any time, shall be deposited by the Trustee into a segregated, non-commingled account and shall be deemed to be Postpetition ABL Priority Collateral. Proceeds and other amounts arising from the Debtors' operations, the Cash Collateral or the Prepetition or Postpetition Collateral shall be used, subject to the conditions set forth herein, to fund the Budget during the Specified Period, and, subject to the last sentence of this Paragraph 17, the Trustee is authorized to pay to the Prepetition ABL Agent, and the Prepetition ABL Agent is authorized to apply, amounts in excess of the Budget until the Prepetition ABL Obligations are Paid in Full. The Trustee shall cause the proceeds of Prepetition and Postpetition Term Priority Collateral to be deposited into a segregated, non-commingled account, and such amounts shall be deemed to be Postpetition Term Priority Collateral. The Trustee's use of such proceeds shall be subject to (and limited to the extent set forth in) this Second Interim Order but, for the avoidance of doubt, may be used in accordance with the Budget.

18.    Maintenance of Collateral. Until all Prepetition ABL Obligations and Prepetition Term Loan Obligations are Paid in Full, the Trustee shall: (a) insure the Postpetition Collateral and Prepetition Collateral as required under the Prepetition Documents; and (b) maintain the cash management system in effect as of the Petition Date, as may be modified with the consent of the Prepetition Agents (such consent not to be unreasonably withheld) or as a

result of entry of any order by the Court; *provided* that the Trustee shall be authorized to open and maintain one or more segregated accounts in connection with this case for general operating purposes and for the purpose of depositing proceeds from the disposition of Postpetition Collateral.

19.    <u>Disposition of Collateral</u>.    The Trustee shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Postpetition Collateral or Prepetition Collateral other than in the ordinary course of business without (subject to the Intercreditor Agreement) the prior written consent of the Prepetition ABL Agent (with respect to Postpetition ABL Priority Collateral) or the Prepetition Term Loan Agent (with respect to Postpetition Term Priority Collateral), and no such consent shall be implied, from any other action, inaction or acquiescence by the Prepetition Secured Parties or from any order of this Court.

20.    <u>Events of Default</u>.    The occurrence of any of the following events, unless consented to or waived by the Prepetition Agents, in writing, each in their sole and absolute discretion, shall constitute an event of default (collectively, the "<u>Events of Default</u>"):

(a)    the failure of the Trustee to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Second Interim Order (including, without limitation, the payment of all amounts to the Prepetition Secured Parties authorized hereunder);

(b)    the replacement of the Trustee;

(c)    the filing of a motion: (i) to obtain additional financing under section 364(d) of the Bankruptcy Code not otherwise permitted pursuant to this Second Interim Order; (ii) to grant any lien other than Permitted Prior Liens upon or affecting any Postpetition Collateral; or (iii) except as provided in this Second Interim Order, to use Cash Collateral under

section 363(c) of the Bankruptcy Code;

(d)     the entry of an order amending, supplementing, staying, vacating or otherwise modifying this Second Interim Order, the filing by the Trustee of a motion for reconsideration with respect to this Second Interim Order, or the Second Interim Order shall cease to be in full force and effect;

(e)     the payment of, or application by the Trustee for authority to pay, any prepetition claim unless in accordance with the Budget;

(f)     the filing of a motion to approve a Prohibited Sale;

(g)     the dismissal of any Case;

(h)     the filing of a motion seeking, or the Court shall enter an order granting, relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor (other than the Prepetition ABL Agent and, subject to the Intercreditor Agreement, the Prepetition Term Loan Agent) to execute upon or enforce a lien on any Postpetition Collateral or Prepetition Collateral, (ii) approving any settlement or other stipulation with any secured creditor of any Debtor providing for payments as adequate protection or otherwise to such secured creditor, or (iii) with respect to any lien on or the granting of any lien on any Postpetition Collateral or the Prepetition Collateral to any federal, state or local environmental or regulatory agency or authority, which in either case involves a claim of $250,000 or more;

(i)     the existence of any claim or charges, or the entry of any order of the Court authorizing any claims or charges, entitled to superpriority administrative expense claim status in any Case pursuant to section 364(c)(1) of the Bankruptcy Code *pari passu* with or senior to the claims of the Prepetition Secured Parties under this Second Interim Order, or there

DB1/ 113471671.4
DOCS_SF:103196.11 05233/003

shall arise or be granted by the Court (i) any claim having priority over any or all administrative expenses of the kind specified in clause (b) of section 503 or clause (b) of section 507 of the Bankruptcy Code or (ii) any lien on the Postpetition Collateral or the Prepetition Collateral having a priority senior to or *pari passu* with the liens and security interests granted herein, except, in each case, as expressly provided in this Second Interim Order;

   (j) the Trustee shall file, or the Trustee shall fail to contest in good faith the filing of, a motion or entry of an order materially adversely impacting the rights and interests of the Prepetition Secured Parties shall have been entered by the Court or any other court of competent jurisdiction;

   (k) the Trustee shall challenge, support or encourage a challenge of any payments made to any Prepetition ABL Party with respect to the Prepetition ABL Obligations;

   (l) the Trustee shall challenge, support or encourage a challenge of any payments made to any Prepetition Term Loan Party with respect to the Prepetition Term Loan Obligations;

   (m) the entry of any order by the Court granting, or the filing by the Trustee of any motion or other request with the Court seeking authority to use cash proceeds of any of the Postpetition Collateral or Prepetition Collateral other than as set forth in this Second Interim Order or to obtain any financing under section 364(d) of the Bankruptcy Code;

   (n) the Trustee shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise provide any credit on account of any prepetition indebtedness or payables other than payments approved (i) by the Court or (ii) by the Prepetition Agents in writing, in each case in accordance with the Budget;

DB1/ 113471671.4
DOCS_SF:103196.11 05233/003

(o)    the Trustee shall fail to contest in good faith a request to take any action that if taken by the Trustee would constitute an event of default under this paragraph 20;

(p)    the automatic stay shall be modified, reversed, revoked or vacated in a manner that has a material adverse impact on the rights and interests of the Prepetition Agents or the Prepetition Secured Parties.

21.    <u>Rights and Remedies Upon Event of Default</u>.    Immediately upon the occurrence and during the continuation of an Event of Default under this Second Interim Order, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion, or notice to, hearing before, or order from the Court, but subject to the terms of this Second Interim Order, (a) the Prepetition ABL Agent may declare (any such declaration delivered by the Prepetition ABL Agent or the Prepetition Term Loan Agent, as applicable, shall be referred to herein as a "<u>Termination Declaration</u>") a termination, reduction, or restriction on the ability of the Trustee to use Cash Collateral, and (b) the Prepetition Term Loan Agent may (i) declare a termination, reduction, or restriction on the ability of the Trustee to use Cash Collateral that is Postpetition Term Priority Collateral and (ii) after the Prepetition ABL Obligations have been Paid in Full, declare a termination, reduction, or restriction on the ability of the Trustee to use Cash Collateral (the date a Termination Declaration is delivered shall be referred to herein as the "<u>Termination Date</u>").    The Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Trustee, the Prepetition ABL Agent (if delivered by the Prepetition Term Loan Agent), the Prepetition Term Loan Agent (if delivered by the Prepetition ABL Agent), and the U.S. Trustee.    Upon the Termination Date, subject to the Carve Out, the Prepetition ABL Parties shall be entitled to seek authority to exercise their rights and remedies in accordance with the Prepetition ABL Documents and this Second Interim Order to satisfy the

DB1/ 113471671.4
DOCS_SF:103196.11 05233/003

Prepetition ABL Obligations, Prepetition ABL Superpriority Claims, and Prepetition ABL Adequate Protection Liens.  Upon the Termination Date, the Trustee shall not be entitled to use Cash Collateral without the consent of each of the Prepetition Agents (subject to the terms of the Intercreditor Agreement), except to fund the Carve Out.  Any entry upon the Debtors' premises as part of an exercise of remedies by the Prepetition Secured Parties shall be subject to the applicable provisions of Paragraph 32 of the First Interim Order.

22.    _Prepetition Secured Parties' Expenses_.  The Trustee is authorized to pay, in accordance with this Second Interim Order, all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of (a) the Prepetition ABL Agent (limited in the case of counsel and financial advisor, to all reasonable and documented out of pocket fees, costs, disbursements and expenses of Morgan, Lewis & Bockius LLP and Burr & Forman LLP, Clear Thinking Group, LLC, and any successor counsel or financial advisor) and, (b) solely from the proceeds of Postpetition Term Priority Collateral, the Prepetition Term Loan Agent (limited in the case of counsel, to all reasonable and documented out of pocket fees, costs, disbursements and expenses of Riemer & Braunstein LLP and Greenberg Traurig, LLP, and any successor counsel).  Payment of all such fees and expenses shall not be subject to allowance by the Court. Professionals for the Prepetition Agents shall not be required to comply with the U.S. Trustee fee guidelines, _provided_, _however_ that any time such professionals seek payment of fees and expenses from the Trustee that were incurred after the Petition Date, each professional shall provide summary copies of its fee and expense statements or invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices

shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine) to the U.S. Trustee contemporaneously with the delivery of such summary fee and expense statements to the Trustee. Any objections raised by the Trustee or the U.S. Trustee with respect to such invoices within ten (10) days of the receipt thereof will be subject to resolution by the Court to the extent they cannot be resolved by the applicable parties. Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Trustee. Notwithstanding the foregoing, the Trustee is authorized to pay any reasonable and documented fees, costs, and out-of-pocket expenses of the Prepetition ABL Parties as provided in the Prepetition ABL Documents, incurred prior to the Petition Date without the need for any professional engaged by the Prepetition ABL Parties to first deliver a copy of its invoice as provided for herein. No attorney or advisor to any Prepetition ABL Party shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

23. <u>Proofs of Claim</u>. Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of the Cases or any Successor Cases to the contrary, the Prepetition ABL Parties and the Prepetition Term Loan Parties will not be required to file proofs of claim in any of the Cases or Successor Cases for any claims arising under the Prepetition ABL Documents or the Prepetition Term Loan Documents. The stipulations, admissions, and acknowledgments in the First Interim Order and the provisions of this Second Interim Order shall be deemed to constitute a timely filed proof of claim for the Prepetition ABL Parties and the Prepetition Term Loan Parties with regard to all claims arising under the Prepetition ABL Documents or the Prepetition Term Loan Documents, as the case may be. Notwithstanding the foregoing, the Prepetition ABL Agent on behalf of itself and the Prepetition ABL Parties, and the Prepetition Term Loan Agent on behalf of itself and the Prepetition Term

DB1/ 113471671.4
DOCS_SF:103196.11 05233/003

Loan Parties, are hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate or master proofs of claim in each of the Cases or Successor Cases for any claim described herein (with any such aggregate or master proof of claim filed in any of the Cases deemed to be filed in all Cases of each of the Debtors and asserted against all of the applicable Debtors). Any proof of claim filed by the Prepetition ABL Agent or the Prepetition Term Loan Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition ABL Parties or Prepetition Term Loan Parties. Any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases shall not apply to any claim of the Prepetition ABL Parties or the Prepetition Term Loan Parties. The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

24.     Carve Out.

(a)     *Carve Out.* As used in this Second Interim Order, the "Carve Out" means (i) all fees required to be paid to (A) the Clerk of the Court and (B) the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code and (ii) all reasonable fees and expenses incurred by the Trustee (or by any persons or firms retained by the Trustee pursuant to sections 326, 327, 328 and 330 of the Bankruptcy Code) under section 726(b) of the Bankruptcy Code up to the amounts set forth in the Budget incurred prior to the delivery of a Carve Out Trigger Notice. For purposes of this Second Interim Order, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Prepetition ABL Agent to the Trustee and the U.S. Trustee, which notice may be delivered following the occurrence and during the continuation of an Event of Default (as defined herein).

(b)    *Carve Out Funding.*  On the day on which a Carve Out Trigger Notice is given by the Prepetition ABL Agent (the "Termination Declaration Date"), the Carve Out Trigger Notice shall be deemed a demand to the Trustee, and authorization for the Trustee, to utilize cash on hand and proceeds of the Postpetition Collateral to fund a reserve in an amount equal to the Carve Out as of the Termination Declaration Date.  For the avoidance of doubt and notwithstanding anything to the contrary herein or in any Prepetition Secured Facility, the Carve Out shall be senior to all liens and claims securing the Adequate Protection Liens and any and all other forms of adequate protection, liens, or claims securing the obligations under the Prepetition Documents.

(c)    *No Direct Obligation To Pay Allowed Professional Fees.*  The Prepetition Secured Parties shall not be responsible for the payment or reimbursement of any fees or disbursements of any professional person incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Second Interim Order or otherwise shall be construed to obligate the Prepetition Secured Parties in any way, to pay compensation to, or to reimburse expenses of, any professional person or to guarantee that the Trustee has sufficient funds to pay such compensation or reimbursement.

(d)    *Payment of Carve Out On or After the Termination Declaration Date.*  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date shall permanently reduce the Carve Out on a dollar-for-dollar basis

25.    Limitations on Use of Cash Collateral and Carve Out.  Through the occurrence of the Termination Date, the Postpetition Collateral, the Prepetition Collateral, the Cash Collateral and the Carve Out may not be used in connection with:  (a) except to contest the occurrence of an Event of Default, preventing, hindering, or delaying any of the Prepetition

Secured Parties' permitted enforcement or realization upon any of the Postpetition Collateral or Prepetition Collateral; (b) using or seeking to use Cash Collateral except as provided for in this Second Interim Order; (c) selling or otherwise disposing of Postpetition Collateral without the consent of the Prepetition Agents; (d) using or seeking to use any insurance proceeds constituting Prepetition Collateral or Postpetition Collateral without the consent of the Prepetition ABL Agent or the Prepetition Term Loan Agent (in the case of Postpetition Term Priority Collateral); (e) incurring Indebtedness (as defined in the Prepetition Documents) without the prior consent of the Prepetition Agents; (f) seeking to amend or modify any of the rights granted to the Prepetition Secured Parties under this Second Interim Order or the Prepetition Documents, including seeking to use Cash Collateral and/or Collateral on a contested basis; (g) objecting to or challenging in any way the Prepetition Liens, Prepetition Secured Obligations, Collateral (including Cash Collateral) or, as the case may be, Prepetition Collateral, or any other claims or liens, held by or on behalf of any of the Prepetition Secured Parties, respectively; (h) asserting, commencing, or prosecuting any claims or causes of action whatsoever, including any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or disgorge payments, against any of the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees; (i) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Liens, Prepetition Secured Obligations, or any other rights or interests of any of the Prepetition Secured Parties; or (j) seeking to subordinate, recharacterize, disallow, or avoid the Prepetition Secured Obligations; *provided however* that the Carve Out may be used for allowed fees and expenses of the Trustee and his professionals, in an amount not to exceed $75,000, in investigating (but not

DB1/ 113471671.4
DOCS_SF:103196.11 05233/003

prosecuting or challenging) the Prepetition Lien and Claim Matters; *provided further* that the Carve Out may not be used for fees and expenses of the Trustee and his professionals in investigating the Prepetition Lien and Claim Matters to the extent such fees and expenses are duplicative of those sought by the Committee and payable from any prior carve outs funded by the Prepetition Secured Parties or otherwise.

26.    <u>Payment of Compensation</u>.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any professional person retained by the Debtors or the Trustee or shall affect the right of the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses.  So long as an unwaived Event of Default has not occurred, the Trustee shall be permitted to pay fees and expenses of its professionals, as reflected in the most recent Budget provided by the Trustee and approved by the Prepetition Agents.

27.    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Second Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

28.    <u>Limits on Lender Liability</u>.  Nothing in this Second Interim Order, the Prepetition Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors or the Trustee in the operation of the Debtors' businesses or in connection with the administration of these Cases.  The Prepetition Secured Parties shall not, solely by reason of having made Cash Collateral available to the Trustee in accordance with the terms of this Second Interim Order, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with

respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute). Nothing in this Second Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Secured Parties of any liability for any claims arising from the activities of any of the Debtors or the Trustee.

29. <u>Insurance Proceeds and Policies</u>. Upon entry of the First Interim Order and to the fullest extent provided by applicable law, the Prepetition ABL Agent (on behalf of the Prepetition ABL Parties) and the Prepetition Term Loan Agent (on behalf of the Prepetition Term Loan Parties), were, and shall continue to be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtors or the Trustee that in any way relates to the Postpetition Collateral.

30. <u>Additional Rights of the Prepetition Term Loan Agent</u>. Subject to the Prepetition ABL Obligations being Paid in Full, any reference in this Second Interim Order to the Prepetition ABL Agent agreeing to or having the right to do, or refraining from or having the right to refrain from doing, an act, or providing any consent or waiver hereunder, shall automatically, without further order of the Court, be construed as referring to the Prepetition Term Loan Agent.

31. <u>Joint and Several Liability</u>. Nothing in this Second Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder.

32.    No Superior Rights of Reclamation.    The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien; rather, any such alleged claims arising or asserted as a right of reclamation (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the Prepetition ABL Liens as such claim had on the Petition Date.

33.    Rights Preserved.    Notwithstanding anything herein to the contrary, the entry of this Second Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, subject to the Prepetition Documents and the Intercreditor Agreement: (a) the Prepetition Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors or the Trustee; (b) any of the rights of any of the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, or (ii) request dismissal of any of the Cases or Successor Cases; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the Prepetition Secured Parties.    Notwithstanding anything herein to the contrary, the entry of this Second Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Trustee's or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Second Interim Order.    Entry of this Second Interim Order is without prejudice to any and all rights of any party in interest with respect to the terms and approval of any further order regarding the use of Cash Collateral and, unless otherwise set forth in the First Interim Order or this Second Interim Order, any other position which any party in interest deems appropriate to raise in the Cases.

DB1/ 113471671.4
DOCS_SF:103196.11 05233/003

34.   <u>No Waiver by Failure to Seek Relief</u>.   The failure of the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under the First Interim Order, this Second Interim Order, the Prepetition Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the Prepetition Secured Parties.

35.   <u>Binding Effect of Second Interim Order</u>.   Immediately upon execution by this Court, the terms and provisions of this Second Interim Order shall become valid and binding upon and inure to the benefit of the Trustee, the Debtors' estates, the Prepetition Secured Parties, all other creditors of any of the Debtors, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

36.   <u>No Modification of Second Interim Order</u>.   Until and unless the Prepetition Secured Obligations have been Paid in Full (such payment being without prejudice to any terms or provisions contained in the Prepetition ABL Documents which survive such discharge by their terms) the Trustee irrevocably waives the right to seek and shall not seek or consent to, directly or indirectly without the prior written consent of the Prepetition Agents, any modification, stay, vacatur, or amendment to this Second Interim Order.  The Trustee irrevocably waives any right to seek any amendment, modification, or extension of this Second Interim Order without the prior written consent, as provided in the foregoing, of the Prepetition Agents, and no such consent shall be implied by any other action, inaction or acquiescence of the Prepetition ABL Agent or the Prepetition Term Loan Agent.

37.   <u>Continuing Effect of Intercreditor Agreement</u>.   The Prepetition Secured Parties each shall be bound by, and be subject to all the terms, provisions and restrictions of the

Intercreditor Agreement.  In the event of any inconsistency between the terms and conditions of the Intercreditor Agreement and this Second Interim Order, the provisions of the Intercreditor Agreement shall govern and control the relationship of the Prepetition Secured Parties.

38.    Discharge.    The Trustee's obligation with respect to the adequate protection provided herein shall not be discharged unless such obligations have been Paid in Full, or each of the Prepetition ABL Agent and Prepetition Term Loan Agent, as applicable, has otherwise agreed in writing.  The Trustee shall not propose or support any sale of all or substantially all of the Debtors' assets, or order approving such sale, that does not require that all Prepetition ABL Obligations be Paid in Full (in the case of the sale of Postpetition ABL Priority Collateral) or that all Prepetition Term Loan Obligations be Paid in Full (in the case of the sale of Postpetition Term Priority Collateral), and the payment of the Debtors' obligations with respect to the adequate protection provided for herein, in full in cash within a commercially reasonable period of time (and in no event later than the effective date of such sale) (a "Prohibited Sale") without the written consent of each of the Prepetition ABL Agent and Prepetition Term Loan Agent, as applicable.  For the avoidance of doubt, the Trustee's proposal or support of a Prohibited Sale, or the entry of an order with respect thereto, shall constitute an Event of Default hereunder.

39.    Survival / Challenge Deadline.    The provisions of the First Interim Order are hereby ratified and affirmed except to the extent amended or modified by this Second Interim Order.  The admissions, stipulations, agreements, releases and waivers, including the Prepetition Lien and Claim Matters, granted by the Debtors in the First Interim Order shall remain binding on the Debtors. The Prepetition Lien and Claim Matters shall also be binding on the Trustee and other parties in interest as set forth in the First Interim Order (including paragraph 27 thereof)

subject to the Challenge requirements therein and the Challenge Deadline; *provided that* the Trustee shall have through and including May 29, 2020 to assert a Challenge.  Any payments made to the Prepetition Secured Parties in accordance with the First Interim Order are ratified and confirmed by this Second Interim Order.  The provisions of this Second Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) dismissing any of the Cases or any Successor Cases; or (b) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.  The terms and provisions of the First Interim Order and this Second Interim Order, including the claims, liens, security interests, and other protections granted to the Prepetition Secured Parties granted pursuant to the First Interim Order and this Second Interim Order, notwithstanding the entry of any such orders described in (a)-(b), above, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by the First Interim Order and this Second Interim Order until: (x) in respect of the Prepetition ABL Facility, all of the Prepetition ABL Obligations pursuant to the Prepetition ABL Documents, the First Interim Order and this Second Interim Order, have been Paid in Full; and (y) in respect of the Prepetition Term Loan Agreement, all of the Prepetition Term Loan Obligations pursuant to the Prepetition Term Loan Documents, the First Interim Order and this Second Interim Order have been Paid in Full.  In addition, the terms and provisions of this Second Interim Order shall continue in full force and effect for the benefit of the Prepetition Term Loan Parties notwithstanding the repayment in full of the Prepetition ABL Obligations.

> 40.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to

enforce the terms of, any and all matters arising from or related to the this Second Interim Order.

41.    <u>Final Hearing</u>. The final hearing to consider entry of the Final Order is scheduled for **May 27, 2020 at 11:00 a.m. (ET)** before the Honorable Christopher S. Sontchi, United States Bankruptcy Judge at the United States Bankruptcy Court for the District of Delaware. Any party in interest that wishes to object to the entry of the Final Order shall file a written objection with the Clerk of the Court no later than on **May 20, 2020, at 4:00 p.m. (ET),** which objections shall be served so as to be received on or before such date by: (i) counsel to the Trustee, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801, Attn: Bradford J. Sandler; (ii) counsel to the Prepetition ABL Agent, Morgan Lewis & Bockius LLP, (a) 101 Park Avenue, New York, New York 10178-0060, Attn: Jennifer Feldsher, and (b) One Federal Street, Boston, Massachusetts 02110, Attn: Marjorie Crider and Christopher L. Carter, and Burr & Forman LLP, 1201 N. Market Street, Suite 1407, Wilmington, Delaware 19801, Attn: J. Cory Falgowski; (iii) counsel to the Prepetition Term Loan Agent, Greenberg Traurig, LLP, One International Place, Suite 2000, Boston, MA 02110, Attn: Jeffrey M. Wolf; and (iv) the Office of the U.S. Trustee.

42.    For the avoidance of doubt, this Second Interim Order and its terms are without prejudice to the Carve Out Reserves (as defined in the First Interim Order, as modified by the Conversion Order) and the Carve Out Escrow Funds (as defined in the Conversion Order) and any person or entity's rights or obligations under or in connection with such Carve Out Reserves and Carve Out Escrow Funds.

**Dated: April 27th, 2020**
**Wilmington, Delaware**

**CHRISTOPHER S. SONTCHI**
**UNITED STATES BANKRUPTCY JUDGE**