Exhibit B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) |  |
| ART VAN FURNITURE, LLC, *et al.*,[1] | ) | Case No. 20-10553 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | Re: Docket No. 401 |

ORDER GRANTING MOTION OF ALFRED T. GIULIANO,
CHAPTER 7 TRUSTEE, TO: (A) APPROVE AGREEMENT WITH AMERICAN
SIGNATURE, INC. AND AUTHORIZE SALE OF ASSETS AT TWO STORE
LOCATIONS, AND TO SELL ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES, AND INTERESTS; (B) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2]
         filed by Alfred T. Giuliano, chapter 7 trustee (the "Trustee"), to the estate of the

above-captioned debtors (the "Debtors"), seeking an order (this "Order"): (a) approving the

Trustee's entry into a letter agreement (the "Agreement"),[3] attached to this Order as **Exhibit 1**,

by and between the Trustee and American Signature, Inc. or its designee. ("Agent") to take

possession, but not ownership, of merchandise (the "Merchandise") at two of the Debtors' stores

located at O'Fallen, Missouri and Frederick, Maryland and to sell such Merchandise free and

clear of all liens, claims, encumbrances, and interests; and (b) granting related relief, as more

fully described in the Motion; it appearing that the relief requested is in the best interests of the

Debtors' estates, their creditors and other parties in interest; the Court having jurisdiction to

consider Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484);  Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).  The location of the Debtors' servi ce address in these chapter 11 cases is: 6500 East 14 Mile Road, Warren Michigan 48092.⊥

[2]  Capitalized terms not defined herein retain the meaning assigned to them in the Motion.⊥

[3]  A copy of the Agreement is attached as **Exhibit 1** to this Order.

*Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012, and the Court having the power to enter a final order consistent with Article III of the United States Constitution; consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and appropriate under the circumstances; and a hearing on the Motion having been held by this Court; and after due deliberation and sufficient cause appearing therefor:

<u>**THE COURT HEREBY FINDS AND DETERMINES THAT:**</u>[4]

A.    <u>**Jurisdiction, Final Order, Immediate Implementation and Statutory Bases**</u>

1.    This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This Court may enter a final order consistent with Article III of the United States Constitution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rule 6004(h), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

---

[4] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Motion and the Sale are hereby incorporated herein to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

3.      The statutory bases for the relief requested in the Motion and entry of this Order are sections 105(a), 363(b), (f) and (m), of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002(a)(2), 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

4.      On March 8, 2020 (the "Petition Date"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.  The cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

5.      On April 6, 2020, the Court entered an order converting the chapter 11 cases to chapter 7 [Docket No. 263] effective April 7, 2020 (the "Conversion Date"), and Alfred T. Giuliano was appointed as the chapter 7 trustee [Docket No. 264].

**B.      Notice of the Motion and Agreement**

6.      Actual written notice of relief requested in the Motion (the "Notice") and hearing on approval of the Agreement has been afforded to all known interested entities, including the following parties.   Evidence of service of the Notice is set forth in the Certificate of Service filed on May 1, 2020 [Docket No. 420].  Adequate and sufficient notice of the Motion, the Agreement, and the transactions contemplated thereby has been provided in accordance with the Bankruptcy Code and Bankruptcy Rules.

7.      The disclosures made by the Trustee concerning the Agreement were good, complete and adequate.

**C.      Approval of the Agreement**

8.    The Agreement represents a fair and reasonable offer to sell the Merchandise under the circumstances of these cases.  Approval of the Motion and the Agreement and the consummation of the transactions contemplated thereby are in the best interests of the Debtors' estates, creditors and other parties in interest.

9.    The Trustee has demonstrated a good, sufficient and sound business purpose and justification entry into the Agreement.

10.    Pursuant to Bankruptcy Rule 6004(f) and Local Rule 6004-11(b)(iv)(D), entry into the transaction with Agent per the terms of the Agreement is hereby approved and a public auction is not necessary.

11.    Agent is not an "insider" of any of the Debtors, as that term is defined in Bankruptcy Code section 101(31).

12.    The Agreement was negotiated, proposed and entered into by the Trustee and Agent without collusion, in good faith and from arm's-length bargaining positions.

13.    The Trustee and his professionals have complied, in good faith, with the requirements under the Bankruptcy Code, Bankruptcy Rules, and Local Rules in all respects.

## D.    No Fraudulent Transfer

14.    The consideration to be provided by Agent pursuant to the Agreement, (a) is fair and reasonable, (b) is the highest and best offer to sell the Merchandise and (c) constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and Bankruptcy Code section 548) under the laws of the United States, any state, territory, possession or the District of Columbia.

15.    The Agreement was not entered into for the purpose of hindering, delaying, preferring, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.  Neither the Trustee nor Agent entered into the transactions contemplated by the Agreement fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

E.    **Validity of Transfer**

16.    The Merchandise constitutes property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  Until the Merchandise is sold by Agent, title to the Merchandise shall remain with AVF.

17.    The Trustee and each Debtor has full corporate or limited liability company, as applicable, power and authority to execute and deliver Agreement and all other documents contemplated thereby.  No consents or approvals, other than those expressly provided for in the Agreement are required for the Trustee to consummate the Agreement and the transactions contemplated thereby.

F.    **Section 363(f) is Satisfied**

18.    The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, Agent may sell the Merchandise free and clear of any Lien or other interest in the Merchandise.

19.    Subject to the terms and conditions of this Order, Agent may sell the Merchandise in accordance with the Agreement free and clear of all Liens, Claims, Encumbrances, and Interests in or against the Debtors, their estates or any of the Merchandise because, in each case, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Liens, Claims, Encumbrances, and

Interests in or against the Debtors, their estates or any of the Merchandise who did not object, or who withdrew their objections, to the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Subject to the terms and conditions of this Order, those holders of such Liens, Claims, Encumbrances, and Interests who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Liens, Claims, Encumbrances, and Interests, if any, in each instance in or against the Debtors, their estates or any of the Merchandise, attach to the ~~cash proceeds, if any, of the Sale~~AVF Share ultimately attributable to the Merchandise in which such creditor alleges an interest, in the same priority, with the same validity, force and effect that such creditor had as of the Petition Date, subject to any claims and defenses the Trustee and the Debtors' estates may possess with respect thereto.

## G.    Compelling Circumstances for Immediate Approval

20.    Good and sufficient reasons for approval of the Agreement have been articulated. The relief requested in the Motion is in the best interests of the Debtors' estates, creditors and all other parties in interest. The Trustee has demonstrated both (a) good, sufficient and sound business purposes and justifications and (b) compelling circumstances approval of the Agreement pursuant to section 363(b) of the Bankruptcy Code before, in that, among other things, the immediate implementation of this Order and consummation of the Agreement is necessary both to preserve and maximize the value of the Debtors' assets for the benefit of the Debtors, their estates, their creditors and all other parties in interest, and the sales will provide the means for the Trustee to maximize creditor recoveries.

21.    To maximize the value of the Merchandise, it is essential that the transaction occurs within the time constraints set forth in the Agreement.

22.    Given all of the circumstances of the Debtors' chapter 7 cases and the

adequacy and fair value being provided, entry into the Agreement constitutes a reasonable and

sound exercise of the Trustee's business judgment and should be approved.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**A.    General Provisions**

23.    The relief requested in the Motion is granted and approved, and the

Agreement is hereby approved as set forth therein.

24.    All objections and responses to the Motion, including all reservations of

rights included therein that have not been overruled, withdrawn, waived, settled, continued, or

resolved, are hereby overruled and denied

25.    The form and manner of notice of the Motion and the proposed sale or

sales under the Agreement is hereby approved as providing good and sufficient notice to all

creditors and parties in interest pursuant to Bankruptcy Rule 2002.

**B.    Approval of the Agreement**

26.    The terms of the Agreement and all other ancillary documents, and all of

the terms and conditions thereof, and the transactions contemplated thereby, are hereby

authorized and approved as set forth herein.

27.    Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the

Trustee is authorized and empowered to take any and all actions necessary or appropriate to (a)

consummate the Agreement pursuant to and in accordance with the terms and conditions thereof

and this Order and (b) execute and deliver, perform under, consummate, implement and fully

consummate the transactions contemplated by the Agreement, and such other additional

instruments and documents as are necessary.

28.     This Order shall be binding in all respects upon the Trustee, the Debtors,

their estates, all creditors of, and holders of equity interests in, any Debtor, any holders of Liens,

Claims, Encumbrances, and Interests or other interests in or against or on all or any portion of the

Merchandise (whether known or unknown), Agent and all successors and assigns of Agent, other

parties-in-interest and successor trustees, if any, subsequently appointed in any of the Debtors'

chapter 7 cases or dismissal of any of the Debtors' chapter 7 cases.  This Order and the

Agreement shall inure to the benefit of the Debtors, their estates and creditors, Agent and the

respective successors and assigns of each of the foregoing.

**C.      Possession of the Merchandise and Consignment**

29.     AVF's estate shall retain ownership in all of the Merchandise until such

Merchandise is sold to third parties pursuant to the Agreement.  Pursuant to the terms of the

Agreement, Agent is entitled to take possession, but not ownership, of the Merchandise, as a

consignment.  Such consignment by the Trustee, on behalf of AVF's estate, shall be perfected in

all respects ("Consignment Lien") without the need to file any additional documents or financing

statement under the Uniform Commercial Code or any other applicable law.  No lien or other

security interest shall attach to the Merchandise other than the Consignment Lien and the liens of

Wells Fargo.  Following the sale of the Merchandise by Agent, the Consignment Lien and the

liens of Wells Fargo shall attach only to the AVF Share (as defined in the Agreement) and not to

any other portion of the Proceeds.

30.     Except as otherwise expressly provided in the Agreement and the terms of

this Order, the Merchandise shall be sold by Agent free and clear of all Liens, Claims,

Encumbrances, and Interests or other interests, including, without limitation, the following: all

mortgages, restrictions (including, without limitation, any restriction on the use, voting rights,

transfer rights, claims for receipt of income or other exercise of any attributes of ownership),

hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options,

deeds of trust, security interests, equity interests, conditional sale rights or other title retention

agreements, pledges, judgments; demands, rights of first refusal, consent rights, offsets, contract

rights, rights of setoff, recoupment rights, rights of recovery, reimbursement rights, contribution

claims, indemnity rights, exoneration rights, product liability claims, alter-ego claims,

environmental rights and claims (including, without limitation, toxic tort claims), labor rights and

claims, employment rights and claims, pension rights and claims, tax claims, regulatory

violations by any governmental entity, decrees of any court or foreign or domestic governmental

entity, charges of any kind or nature, debts arising in any way in connection with any agreements,

acts, or failures to act, reclamation claims, obligation claims, demands, guaranties, option rights

or claims, rights, contractual or other commitment rights and claims, rights of licensees or

sublicensees under section 365(n) of the Bankruptcy Code or any similar statute, claims with

respect to Excluded Liabilities and all other matters of any kind and nature, whether known or

unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed,

recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or

non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material,

disputed or undisputed, whether arising prior to or subsequent to the commencement of the

chapter 7 cases, and whether imposed by agreement, understanding, law, equity or otherwise,

including claims otherwise arising under any theory, law or doctrine of successor liability or

related theories (all of the foregoing collectively being referred to in this Order as "Liens, Claims,

Encumbrances, and Interests", and, as used in this Order, the term Claims includes, without

limitation, any and all "claims" as that term is defined and used in the Bankruptcy Code,

including section 101(5) thereof), with all such Liens, Claims, Encumbrances, and Interests attaching to the AVF Share ultimately attributable to the Merchandise in which such creditor alleges an interest, in the same priority, with the same validity, force and effect that such creditor had as of the Petition Date, subject to any claims and defenses the Trustee and the Debtors' estates may possess with respect thereto.

31.     If any person or entity that has filed statements or other documents or agreements evidencing Liens, Claims, Encumbrances, and Interests in or against all or any portion of the Merchandise (each, a "Lien Registration Document") shall not have delivered to the Trustee prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents (each, a "Lien Termination Document") necessary for the purpose of documenting the release of all Liens, Claims, Encumbrances, and Interests which the person or entity has or may assert with respect to all or any portion of the Merchandise, the Trustee is hereby authorized and Agent is hereby authorized, to request that such parties execute and file Lien Termination Documents with respect to the Merchandise.

32.     Any Merchandise subject to the trademark infringement allegations asserted by JoFran Sales, Inc. will be caused by the Trustee to be disposed of and shall not be transferred to Agent, and subject to further order of the Court, shall be removed from the stream of commerce and shall not be resold, transferred for sale, or otherwise continue in the stream of commerce, other than as agreed between Jofran Sales, Inc. and the Trustee.   The Trustee shall use commercially reasonable efforts to clearly identify any such Merchandise to Agent.

33.     Any FF&E, Merchandise or other assets remaining at the AVF Stores and not removed within the timeframes set forth in the Agreement or otherwise within the time

agreed upon by and among the Debtors, Agent and the landlord of the MD Store (unless extended by agreement among the Debtors, Agent and the applicable landlord) is hereby deemed abandoned pursuant to section 554 of the Bankruptcy Code without Agent or the applicable landlord incurring liability to any person or entity. Notwithstanding the foregoing, the rights and claims of the landlord of the MD Store against the Debtors with respect to the abandonment of any FF&E, Merchandise or other assets pursuant to section 554 of the Bankruptcy Code are hereby preserved pending resolution of the *Motion of Wolf Furniture Enterprises Inc.///Frederick BLICO LLP to Compel Immediate Rejection of the Leases and Surrender Possession of the Premises Pursuant to 11 U.S.C. § 365(d) and for Other Related Relief* [Docket No. 303].

34.    Upon removal of the Merchandise from the ~~AVF Stores~~MO Store or abandonment thereof in accordance with the immediately preceding paragraph, the ~~applicable leases~~lease for the ~~AVF Stores are~~MO Store is hereby rejected.

**D.    Payment Terms**

35.    The aggregate consideration for the Merchandise under the Agreement, and payment terms thereof, is reasonable, fair, and appropriate in the circumstances of these cases.  The Proceeds shall be collected by Agent on behalf of the Trustee, and the Trustee is authorized and directed to allow the distribution of the Proceeds, as set forth in the Agreement.

36.    If the Trustee and Agent are unable to resolve any dispute regarding payment under the Agreement within 10 days, either party may request an expedited hearing before the Court to resolve such dispute in accordance with the terms of this Order, with such hearing to be held on no less than five (5) business days' notice, subject to the Court's availability.

**E.    Prohibition of Actions Against Agent**

37.     Except as expressly provided for in this Order or the Agreement, as applicable, Agent shall not have any liability or other obligation of the Debtors arising under or related to any of the Merchandise.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Agreement, Agent shall not be liable for any Claims against the Debtors or any of their predecessors or affiliates, and Agent shall not have successor or vicarious liabilities of any kind or character, including under any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, mere continuation or substantial continuity, whether known or unknown as of the closing date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including liabilities on account of warranties, intercompany loans and receivables between the Debtors, and any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the Merchandise prior to the closing.

38.     Except as expressly provided for in this Order or the Agreement, all persons and entities, including all debt holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding Liens, Claims, Encumbrances, and Interests of any kind or nature whatsoever in or against all or any portion of the Merchandise (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Merchandise, the Debtors' business prior to the closing date or the transfer of the Merchandise to Agent in accordance with the Agreement, hereby are forever barred from asserting against Agent, its successors or assigns, their property or the Merchandise, such persons' or entities' Liens,

Claims, Encumbrances, and Interests in or against the Merchandise, including the following actions: (a) commencing or continuing in any manner any action or other proceeding against Agent, its successors, assets or properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against Agent, its successors, or their assets or properties; (c) creating, perfecting, or enforcing any lien or other claim against Agent, its successors, its assets, or their properties; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due Agent or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to conduct any of the businesses associated with the Merchandise.

39.    The consideration provided by Agent for the Merchandise under the Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

F.    **Other Provisions**

40.    The AVF Share of the Proceeds from the sale of the Merchandise shall be subject to the *Second Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 372] and the payment provisions of paragraph 12 thereunder.

41.    Notwithstanding anything in this Order or the Agreement to the contrary: (i) no rights under that certain (x) Vendor Buying Agreement between the Debtors and Tempur

Sealy International, Inc. and its subsidiaries and affiliates (collectively, "Tempur Sealy"), (y)

Multi-Line Retailer Agreement between the Debtors and Tempur Sealy, and (z) incentive

agreement between the Debtors and Tempur Sealy (collectively, as amended, the "Tempur Sealy

Agreements") are being transferred to the Agent pursuant to this Order or the

~~Purchase~~Agreement; (ii) the Agent shall not be permitted to utilize, without the express

permission of Tempur Sealy, any intellectual property assets of Tempur Sealy including, but not

limited to, Tempur-Pedic®, Sealy® and Stearns & Foster® trade names and trademarks (the

"Tempur Sealy Marks");  provided, however, that the foregoing shall not (x) in any way preclude

Agent from selling any Merchandise that includes the Tempur Sealy Marks, or (y) obligate Agent

to remove any Tempur Sealy Marks from the Merchandise in connection with such sales or

otherwise; provided further, however, that Agent shall not be permitted to include Tempur Sealy

Marks in advertising or other promotions; (iii) Agent shall not be entitled to assert a claim

against Tempur Sealy for indemnification, warranties, rebates, or incentives that may otherwise

be due and owing to the Debtors pursuant to the Tempur Sealy Agreements; and (iv) Tempur

Sealy reserves all of its rights and remedies under the Tempur Sealy Agreements against the

Debtors and nothing in this Order or the Agreement shall abrogate Tempur Sealy's rights under

the Tempur Sealy Agreements against the Debtors; provided that Tempur Sealy shall not be

entitled to assert any such rights against Agent or any purchaser of any Merchandise, the Debtors

shall not be entitled to assert any claim against Agent or any purchaser of any Merchandise in

connection with any assertion of rights by Tempur Sealy against the Debtors under the Tempur

Sealy Agreements and neither Agent nor any purchaser of any Merchandise shall have any

liability to any person or entity, including without limitation, Tempur Sealy and the Debtors,

under, or in connection with, the Tempur Sealy Agreements; *provided, however,* nothing herein

is intended to exculpate the Agent or any purchaser of any Merchandise for any violation of this Order.

42.      Notwithstanding anything in this Order or the Agreement to the contrary: (i) no rights under that certain (x) 2019 Vendor Buying Agreement dated January 17, 2019 between the Debtors and Serta Simmons Bedding Company, its subsidiaries and affiliates (collectively, "SSB"), (y) the Serta Simmons Bedding Authorized Dealer Terms and Conditions, effective as of January 2019, and (z) the Beautyrest® Dealer Policies (collectively, as amended from time to time, the "SSB Agreements") are being transferred to the Agent pursuant to this Order or the Agreement; (ii) except as may have been agreed prior to the date hereof (or as may be agreed after the date hereof) between SSB and Agent, the Agent shall not be permitted to utilize, without the express permission of SSB, any intellectual property assets of SSB including, but not limited to, Beautyrest® trade names and trademarks of SSB (the "SSB Marks"); provided, however, that the foregoing shall not (x) in any way preclude Agent from selling any Merchandise that includes the SSB Marks, or (y) obligate Agent to remove any SSB Marks from the Merchandise in connection with such sales or otherwise; provided further, however, that Agent shall not be permitted to include SSB Marks in advertising or other promotions (except as may have been agreed prior to the date hereof (or as may be agreed after the date hereof) between SSB and Agent); (iii) Agent shall not be entitled to assert a claim against SSB for indemnification, warranties, rebates, or incentives that may otherwise be due and owing to the Debtors pursuant to the SSB Agreements (if any); and (iv) SSB reserves all of its rights and remedies under the SSB Agreements against the Debtors and nothing in this Order or the Agreement shall abrogate SSB's rights under the SSB Agreements against the Debtors; provided that SSB shall not be entitled to assert any such rights against Agent or any purchaser of any

Merchandise, the Debtors shall not be entitled to assert any claim against Agent or any purchaser of any Merchandise in connection with any assertion of rights by SSB against the Debtors under the SSB Agreements and neither Agent nor any purchaser of any Merchandise shall have any liability to any person or entity, including without limitation, SSB and the Debtors, under, or in connection with, the SSB Agreements; *provided, however*, nothing herein is intended to exculpate the Agent or any purchaser of any Merchandise for any violation of this Order.

43.    Notwithstanding anything in this Order or the Agreement to the contrary: (i) no rights under certain vendor agreements (collectively, the "Serta Agreements") between the Debtors and Serta Restokraft Mattress Company ("Serta") are being transferred to the Agent pursuant to this Order or the Agreement; (ii) except as may have been agreed prior to the date hereof (or as may be agreed after the date hereof) between Serta and Agent, the Agent shall not be permitted to utilize, without the express permission of Serta, any intellectual property assets of Serta (the "Serta Marks"); provided, however, that the foregoing shall not (x) in any way preclude Agent from selling any Merchandise that includes the Serta Marks, or (y) obligate Agent to remove any Serta Marks from the Merchandise in connection with such sales or otherwise; provided further, however, that Agent shall not be permitted to include Serta Marks in advertising or other promotions (except as may have been agreed prior to the date hereof (or as may be agreed after the date hereof) between Serta and Agent); (iii) Agent shall not be entitled to assert a claim against Serta for indemnification, warranties, rebates, or incentives that may otherwise be due and owing to the Debtors pursuant to the Serta Agreements; and (iv) Serta reserves all of its rights and remedies under the Serta Agreements against the Debtors and nothing in this Order or the Agreement shall abrogate Serta's rights under the Serta Agreements against the Debtors; provide ' that Serta shall not be entitled to assert a' y such rights against

Agent or any purchaser of any Merchandise, the Debtors shall not be entitled to assert any claim against Agent or any purchaser of any Merchandise in connection with any assertion of rights by Serta against the Debtors under the Serta Agreements and neither Agent nor any purchaser of any Merchandise shall have any liability to any person or entity, including without limitation, Serta and the Debtors, under, or in connection with, the Serta Agreements; *provided, however,* nothing herein is intended to exculpate the Agent or any purchaser of any Merchandise for any violation of this Order.

44.    42. During the term of the Agreement, Agent shall be authorized (on a royalty-free basis) to use any business, trademarks or trade names of the Debtors in advertisements and other promotional materials concerning the sale of the Merchandise.

45.    43. Any Merchandise to be sold pursuant to the Agreement that is in the control or possession of third parties shall be promptly turned over to Agent in cooperation with the Trustee. The Court retains jurisdiction over any Merchandise that is in the control or possession of the third parties for the purposes of enforcing this Order.

46.    44. Pursuant to Bankruptcy Rules 7062, 9014, and 6004(h), this Order shall be effective immediately upon entry and the Trustee and Agent are authorized to close the Agreement immediately upon entry of this Order.

47.    45. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Agreement.

48.    46. The failure specifically to include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement is authorized and approved in its entirety; *provided, however,* that this Order shall govern if there is any inconsistency between the Agreement

(including all ancillary documents executed in connection therewith) and this Order. Likewise, all of the provisions of this Order are non-severable and mutually dependent.

49.    ~~47.~~ The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

50.    ~~48.~~ The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Trustee is a party in accordance with the Agreement, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Agreement, including retaining jurisdiction to (a) compel delivery of the Merchandise in accordance with the Agreement; (b) interpret, implement and enforce the provisions of this Order; and (c) protect Agent against any Liens, Claims, Encumbrances, and Interests in or against the Debtors' estates or the Merchandise of any kind or nature whatsoever, attaching to the proceeds of the Sale under the Agreement (other than the AVF Share in accordance with the provisions of this Order).

51.    ~~49.~~ The Trustee is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

52.    ~~50.~~ All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

## EXHIBIT 1

**Agreement**

Document comparison by Workshare 9.5 on Friday, May 08, 2020 3:43:56 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_DE/228383/8 |
| Description | DOCS_DE-#228383-v8-Art_Van_-_Motion_to_Approve_Transaction_with_ASI_(O'Fallen,_MO_and_Frederick,_MD_Stores) |
| Document 2 ID | PowerDocs://DOCS_DE/228383/10 |
| Description | DOCS_DE-#228383-v10-Art_Van_-_Motion_to_Approve_Transaction_with_ASI_(O'Fallen,_MO_and_Frederick,_MD_Stores) |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 30 |
| Deletions | 17 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |

| Total changes | 47 |
|---|---|