**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) |  |
| ART VAN FURNITURE, LLC, *et al.*,[1] | ) | Case No. 20-10553 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**[Requested] Objection Deadline: May 22, 2020 at 12:00 p.m. (Eastern Time)**
**[Requested] Hearing Date: May 27, 2020 at 11:00 a.m. (Eastern Time)**

**MOTION OF ALFRED T. GIULIANO,**
**CHAPTER 7 TRUSTEE, FOR ENTRY OF AN ORDER**
**APPROVING (I) SALE OF CERTAIN ASSETS TO LEVIN**
**FURNITURE, LLC AND LEVIN TRUCKING, LLC FREE AND**
**CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES; (II) REJECTION OF CERTAIN**
**UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY; (III)**
**ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS;**
**AND (IV) GRANTING RELATED RELIEF**

**COUNTERPARTIES RECEIVING THIS MOTION SHOULD LOCATE THEIR NAMES AND APPLICABLE CONTRACTS AND/OR LEASES LISTED ON <u>SCHEDULE 1</u> OR <u>SCHEDULE 2</u> ANNEXED HERETO.**

Alfred T. Giuliano, chapter 7 trustee (the "<u>Trustee</u>") to the estates of the above-captioned debtors (the "<u>Debtors</u>"), hereby files this motion (the "<u>Motion</u>") pursuant to sections 105, 363, 365, and 554 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), for entry of an order (the "<u>Order</u>"), substantially in the form attached hereto as **<u>Exhibit A</u>**, authorizing and approving: (i) the sale of certain assets to Levin Furniture, LLC (the "<u>Furniture</u>

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484);  Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).  The location of the Debtors' service address in these chapter 11 cases is: 6500 East 14 Mile Road, Warren Michigan 48092.

Buyer") and Levin Trucking, LLC (the "Trucking Buyer", and together with the Furniture Buyer, the "Purchaser") free and clear of all liens, claims, and encumbrances; (ii) the rejection of the certain leases of real property; (iii) the abandonment of any remaining personal property at the leased premises; (iv) assumption of certain executory contracts and unexpired leases of nonresidential real property and payment of related cure amounts; and (iv) granting related relief. **Contemporaneously with the filing of this Motion, the Trustee has filed a motion to shorten notice seeking an expedited hearing on the Motion May 27, 2020 at 11:00 a.m. (Eastern Time)**. In support of the Motion, the Trustee respectfully states as follows:[2]

## PRELIMINARY STATEMENT

1.      The Trustee seeks the Court's approval of a $25.7 million sale of certain assets, including inventory and rolling stock and vehicles, and assumption of over $660,000 in rejection damages and postpetition claims for three locations, all of which provides enormous benefits to the estates.  Importantly, $10 million of the total purchase price consists of a fund earmarked for customers at the applicable Ohio and Pennsylvania stores subject to the sale, and this fund approximates the total liability to such customers and is expected to make them whole by allowing the customers to receive their ordered furniture, receive store credit, or receive a cash refund.  That customer earmarked fund was heavily negotiated by the Trustee and his professionals and is supported by the Debtors' ABL lender, Wells Fargo Bank.

2.      In addition, the leases for the 32 stores subject to the sale will be rejected and the Purchaser will use its best efforts to vacate the stores as soon as possible, rather than the stores being used for a months-long "going out of business" sale process that would have likely entangled the estates in various issues and resulted in difficult negotiations (and more chapter 7

---

[2]     A capitalized term used but not defined herein shall have the meaning ascribed to it in the Asset Purchase Agreement (the "APA"), to be attached as Exhibit 1 to the proposed Order, which will be filed in advance of the deadline to object to the Motion.

administrative costs) with the applicable landlords, who can now have their locations returned to them months earlier than expected.  As further detailed below, the sale should be approved because it provides significant benefits to the estates and is a sound exercise of the Trustee's business judgment.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  The Trustee confirms his consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory bases for the relief requested in this Motion are sections 105, 363, 365, and 554 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rule of Bankruptcy Practice and Procedure 6004-1 (the "Local Rules").

## BACKGROUND

6.      On March 8, 2020 (the "Petition Date"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.  The cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

7.      On April 6, 2020, the Court entered an order converting the chapter 11 cases to chapter 7 [Docket No. 263] effective April 7, 2020 (the "Conversion Date"), and Alfred

3

T. Giuliano was appointed as the chapter 7 trustee [Docket No. 264].

### RELIEF REQUESTED

8.       The Trustee seeks the entry of the Order, pursuant to sections 105, 363, 365, and 554 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rule 6004-1, authorizing and approving: (i) the sale of the Purchased Assets (described below) to the Purchaser free and clear of all liens, claims, and encumbrances; (ii) assumption and assignment of the executory contracts and unexpired leases of nonresidential real property identified on Schedule 1 annexed hereto (collectively, the "Assumed Contracts"), (iii) the payment by the Purchaser of the cure amounts related to the Assumed Contracts (the "Cure Amounts") identified on Schedule 1 annexed hereto, (iii) the rejection of the unexpired leases of nonresidential real property identified on Schedule 2 annexed hereto (collectively, the "Rejected Leases"); and (iv) the abandonment of any remaining personal property at the leased premises relating to the Rejected Leases (the "Remaining Personal Property").

### THE SALE

9.       The APA generally provides for the sale of all of the Company's "Levin Mattress" and "Levin Furniture" inventory and operating assets located in Ohio and Pennsylvania and related intellectual property.  The aggregate purchase price is approximately $25.7 million (subject to adjustment), of which $10 million has been earmarked for the benefit customers that placed orders or deposits at the Subject Stores – which, upon information and belief, approximates the total liability to such customers.  In other words, a critical component of the proposed sale is to make Levin customers in Ohio and Pennsylvania whole by allowing them to receive their ordered furniture, receive store credit, or receive a cash refund.

10.       The APA also provides for the (i) sale of the rolling stock and vehicles of

debtor LF Trucking, Inc. and (ii) assumption of rejection damages and postpetition claims associated with certain leases.

11.    The Trustee believes it is in the best interest of the Debtors' estates, their creditors, their customers, and all parties in interest to complete the Sale under the terms of the APA.  The key terms of the APA are summarized below.[3]

| Provision | Summary Description |
|---|---|
| *Purchaser* | Levin Furniture, LLC, a Pennsylvania limited liability company, and Levin Trucking, LLC, a Pennsylvania limited liability company. |
| *Seller* | Alfred T. Giuliano, chapter 7 trustee (the "Trustee" or "Seller") to the estates of the Debtors Sam Levin, Inc. ("SLI"), and LF Trucking, Inc. ("LFT"). |
| *Releasing Landlords* | The Releasing Landlords are (a) Robert Levin, (b), Elyria Chestnut, LLC, and (c) 2505 Pitkin Corp.  The Releasing Landlords are the landlords at the following locations: (i) 301 Fitz Henry Road, Smithton, PA 15479 (the "Smithton Warehouse"); (ii) 510 Chestnut Commons, Elyria, OH 44035 (the "Elyria Store"); and (iii) 10688 Perry Highway, Pittsburgh, PA 15090 (the "Pittsburgh Store") (collectively, the "Releasing Locations").<br><br>APA, Sections 3.1 (d), 6.1(c), and 6.1(d). |

---

[3]    The descriptions below only summarize certain provisions of the APA, and the terms of the APA control in the event of any inconsistency.

| Provision | Summary Description |
|---|---|
| *Purchase Price* | The Purchase Price consists of the following: (a) $13,728,000, which represents the Inventory Valuation; *plus* (b) $1,400,000, which represents in the aggregate the Equipment Valuation ($150,000), the Included Rolling Stock Value ($1,000,000), and the Proprietary Rights Valuation ($250,000); *plus* (c) $10,000,000, which represents the Customer Claim Advance; *plus* (d) $660,001.51, which represents additional consideration in the form of: the assumption of rejection damages and postpetition claims associated with the Releasing Locations.    In total, the Purchase price is $25,788,001.51.<br><br>APA, Section 3.1 |
| *Purchased Assets* | The Purchased Assets include:<br><br>(i)    all tangible personal property, fixtures data processing hardware and software, fixtures, furniture, furnishings, appliances, and other tangible personal property of every kind and description and all replacement parts therefor located at the Subject Stores,  including the items set forth on Schedule 2.1(a) (collectively, the "<u>Equipment</u>")<br><br>(ii)    all such rolling stock and vehicles of Seller (and all replacement parts therefor) that are specifically listed or identified on Schedule 2.1(b) attached hereto (collectively, the "<u>Included Rolling Stock</u>");<br><br>(iii)    all Inventory, excluding Excluded Inventory;<br><br>(iv)    to the full extent transferable by Law, but subject to Section 2.2(xvi) hereof, all personnel and other records (including hard, electronic and microfiche copies), and all manuals, books and records, including personnel policies, files and manuals, accounting records and computer software, in each case, to the extent relating exclusively to the Subject Stores;<br><br>(v)    to the full extent transferable by Law, all licenses, permits, registrations, certificates, consents, accreditations, approvals and franchises, together with assignments thereof, if required, and all waivers which it currently has, if any, of any requirements pertaining to such licenses, permits, registrations, certificates, consents, accreditations, approvals and franchises, in each case, to the extent relating exclusively |

| Provision | Summary Description |
|---|---|
| | to the Subject Stores; |
| | (vi)    all guarantees, warranties, indemnities and similar rights in favor of Seller related to the Purchased Assets, and all other rights, claims, and/or causes of action against any person related exclusively to the Purchased Assets or the Assumed Contracts, if any; |
| | (vii)    the Assumed Contracts; |
| | (viii)    all Prepaid Expenses under and to the extent relating to the Assumed Contracts; |
| | (ix)    to the full extent transferable by Law or pursuant to applicable contractual provision, all Proprietary Rights owned, leased, licensed or possessed by it and used exclusively in the operation of the Business, including the domain name www.levinfurniture.com, the names "Levin Furniture", "Levin Mattress" and all derivatives thereof; |
| | (x)    to the full extent transferable by Law, all information relating solely to the Levin Stores regarding the Seller's past, current and prospective customers and suppliers (including any and all lists thereof (including contact information), purchase and sale history, correspondence, complaints, and any and all other data, reports, and information of any kind kept or maintained by or on behalf of the Seller), pricing and cost information, and business and marketing plans and proposals; |
| | (xi)    all telephone and facsimile numbers and telephone directory listings related exclusively to the Subject Stores; |
| | (xii)    rights, to the extent assignable, under any agreements in favor of either Seller or for the benefit of either Seller with current or former Employees, contractors or third parties, with respect to non-competition, non-solicitation, or other restrictive covenants, regardless of whether any such Person accepts an offer of employment from the Purchaser or continues to perform services for the Purchaser; and |
| | (xiv)   subject to Section 2.2(xvi), below, all books, records, ledgers, files, documents, correspondence, lists, plans, drawings and specifications, creative materials, sales collateral, advertising and promotional materials, studies, reports, and other printed or written materials to the extent |

| Provision | Summary Description |
|---|---|
| | related to the Purchased Assets, including records to the extent related to inventory and maintenance of the Purchased Assets, whether in written or electronic form, other than employment records that may not be transferred pursuant to applicable Law (collectively, along with the assets described in Section 2.1(iv) above, the "Books and Records").<br><br>The Parties agree that (i) SLI shall sell its respective Purchased Assets to the Furniture Buyer, and the Furniture Buyer shall purchase from SLI such Purchased Assets, and (ii) LFT shall sell its respective Purchased Assets to the Trucking Buyer, and the Trucking Buyer shall purchase from LFT such Purchased Assets.  For the avoidance of all doubt, Purchaser hereby acknowledges and agrees that (i) notwithstanding anything to the contrary in the APA, to the extent that any Seller holds any asset (whether tangible or intangible) pursuant to a lease, rental agreement, license or other similar Contract (collectively, "Possessory Contracts"), Purchaser shall be entitled to possession of such asset at the Closing only if the applicable Possessory Contract is among the Assumed Contracts assumed by Seller and assigned to Purchaser at the Closing in accordance with the terms and provisions of the APA, and (ii) to the extent of any inconsistency or conflict between the provisions of this Section 2.1 and those of Section 2.2 below, the terms and provisions of Section 2.2 below shall govern and control.<br><br>APA, Section 2.1 |
| *Customer Claim Advance Fund* | Advance by Purchaser for Reconciliation of Customer Claims. As part of the Purchase Price and all other amounts to be paid by Purchaser pursuant to the APA, at the Closing, Purchaser shall deposit with the Trustee by wire transfer an amount equal to $10,000,000.00 (the "Customer Claim Advance") which shall be held in an interest bearing segregated account in a bank authorized by the Office of the United States Trustee for Region 3, in the name of the Trustee on behalf of the Debtor (the "Customer Claim Advance Fund"). The Customer Claim Advance Fund shall not be subject to the liens, claims, or encumbrances of any creditor of the Debtors, except as may be specifically provided in Section 6, and shall be administered in accordance with the following procedures:<br><br>(a) Following the Closing, a representative of the Purchaser and a representative of the Trustee shall jointly notify all |

| Provision | Summary Description |
|---|---|
| | customers (including those who have already filed a claim in the Debtors' bankruptcy cases) and who have made deposits for merchandise purchased from the Subject Stores, and who did not receive such merchandise (the "Levin Deposit Customers") that they may submit a claim to the Trustee (the "Resolution Request") within thirty (30) days of the issuance of such notification. The wording of the notification shall be subject to the reasonable joint approval of the Parties and shall provide the requirements to submit a Resolution Request; |
| | (b) The Resolution Request shall provide the following information: (1) the date, the amount of the deposit made by such Levin Deposit Customer and a receipt of such deposit (or other proof sufficient that the deposit was made); (2) whether such deposit was made by credit card (and if so, the identity of the credit card company), finance company (and its identity), debit card (and if so, the identity of the debit card company), cash, or check; (3) whether such Levin Deposit Customer has requested reimbursement from its credit card company, debit card company, or its finance company, as the case may be; and (4) written confirmation that such reimbursement request has been approved or denied; and (5) the Levin Deposit Customer's name, phone number, mailing address, email address (if applicable), and other contact information so that the Trustee and the Purchaser can contact the customer. The notice shall also indicate the following, to the extent the Levin Deposit Customer did not receive a refund from his or her credit card, debit card, or finance company, that a representative of the Purchaser (and Trustee if desired by the Trustee) will contact them (the "Remedies Discussion") to review that the customer, at the customer's option, may choose: (a) request that Purchaser fulfill their order by obtaining the previously ordered furniture and delivering the same to the Levin Deposit Customer giving credit of the full amount of such deposit to such order so long as the merchandise is available; or (b) request Purchaser provide the Levin Deposit Customer with store credit or gift card in an amount not less than the full amount of his or her deposit; or (c) a cash refund, which may not be in the full amount of their deposit, may not be issued to them until the earlier of end of the administration of the Bankruptcy Cases or one-hundred and eighty (180) days from the date that they file their Resolution Request. The Trustee shall be charged with administering the Customer Claim Advance and paying the same to the customer at the appropriate time during the |

9

| Provision | Summary Description |
|---|---|
|  | pendency of the Bankruptcy Cases. A Levin Deposit Customer whose information satisfies the criteria as set forth in subparagraphs (b)(1)-(5) hereof shall be known as a "Program Eligible Customer."

(c) The Program Eligible Customer must send its written election (the "Election") to the address or email address established by the Trustee within thirty (30) days of the Remedies Discussion, or they shall no longer be deemed to be a Program Eligible Customer, absent an agreement by Purchaser and the Trustee, in their reasonable discretion, to extend the date for returning the Election.  The Election shall indicate that the customer withdraws any claim it filed in the Bankruptcy Cases or has against the Estates seeking reimbursement for any deposit.

(d) Upon receipt of the Election back from a Program Eligible Customer, the Seller shall notify the Purchaser of the election from such Program Eligible Customer and shall provide a representative of the Purchaser with the relevant information from the Program Eligible Customer.

(e) If the Program Eligible Customer chooses a cash refund, then the Seller shall issue a refund (which may not be a refund in full) to the Program Eligible Customer upon the earlier of (1) one hundred and eighty (180) days from the date of the Closing or (2) the conclusion of the Bankruptcy Cases from the Customer Claim Advance Fund. Such refund shall be accompanied by a letter, in a form and substance reasonably acceptable to both the Trustee and the Purchaser.

(f) The Seller may utilize amounts from the Customer Claim Advance to pay and/or reimburse itself for any Trustee's fees and the reasonable out of pocket costs and expenses incurred by Seller in the review, evaluation, investigation, negotiation, handling, payment and resolution of each Levin Customer Deposit, including, without limitation, the fees and expenses of the Trustee and his professionals) (collectively, "Covered Expenses"). Provided however, that such Covered Expenses shall be submitted to the Bankruptcy Court on regular notice. No such fees and expenses shall be paid until approved by the Bankruptcy Court after the opportunity for notice and hearing. For the avoidance of doubt, all Covered Expenses shall be payable solely from the Estate Recovery or the Customer Claim Advance and not from any other assets of the Estates. |

| Provision | Summary Description |
|---|---|
| | (g) Seller shall use commercially reasonable efforts to promptly resolve all Levin Deposit Customer Claims. Upon the earlier of the (1) resolution of the last claim, or (2) one-hundred and eighty (180) days from the issuance of the notification described in subparagraph (a) above, subject to extension granted by the Bankruptcy Court or by agreement of Purchaser and Seller. All funds remaining in the Customer Claim Advance, (the "Excess Funds") which have not been paid in cash to Program Eligible Customers less an amount up to the sum of $1,000,000 (the "Estate Recovery") to the extent it exists above satisfying the cash payments to the Program Eligible Customers and the Covered Expenses, shall be returned to the Purchaser. The Covered Expenses shall first be paid from the Estate Recovery, and to the extent the Estate Recovery is insufficient to pay the Covered Expenses, they shall be paid from Customer Claim Advance Fund prior to being paid to any customer. The Customer Claim Advance Fund shall be property of the Estates and distributed by the Trustee in the following order of priority: first, to both Program Eligible Customers who elect to receive cash and the Covered Expenses, and second, to the Estate Recovery, and third, to the Purchaser, which shall be a creditor of the Estates with rights of payment solely from the Excess Funds less the Covered Expenses. The Purchaser shall have no obligation to fund the Estate Recovery beyond the amounts provided for herein.<br><br>(h) The Trustee shall hold the Estate Recovery and the Purchaser shall be deemed to have assumed unsecured claims limited up to an amount equal to the Estate Recovery, which shall be distributed by the Trustee in accordance with the priorities set forth in the Bankruptcy Code. Notwithstanding anything to the contrary, neither Party shall have any obligation, liability, or responsibility under this Section 6.13 once the Trustee returns the Excess Funds to Purchaser.<br><br>(i) Purchaser shall be entitled to advertise (pursuant to advertisements approved by Trustee in his reasonable discretion) that Trustee and Purchaser are working to honor all such Levin Customer Deposit claims resulting from transactions with the Debtors in the Subject Stores.<br><br>(j) The Trustee shall provide Purchaser with a periodic accounting in reasonable detail, which shall reconcile and account for the Customer Claim Advance, the amount of |

| Provision | Summary Description |
|---|---|
| | Program Eligible Customers, and distributions made in accordance with this Section 6.<br><br>APA, Section 6.13 |
| *Assumed Contracts* | The Trustee has agreed to assume and assign the Assumed Contracts.  The Purchaser is responsible for and shall pay all Cure Amounts in connection with the assumption and assignment of any Assumed Contract to the Purchaser.<br><br>APA, Section 6.1 and Schedule 6.1(b) |
| *Assumed Liabilities* | The Assumed Liabilities include the following: (a) all Liabilities under, arising from or relating to the Assumed Contracts with respect to (i) matters occurring thereunder on or after the Closing Date, and (ii) the Cure Amounts; (b) all liabilities and obligations first arising after the Closing under or associated with Seller's privacy policy, which policy shall be adopted by Purchaser as of the Closing (a full and complete copy of which Purchaser acknowledges having received from Seller);  and (c) all Liabilities agreed to be paid by the Purchaser pursuant to Section 3.2 of the APA.<br><br>APA, Section 2.3 |
| *Excluded Assets* | The Excluded Assets include the following:<br><br>(i)      all Receivables;<br><br>(ii)     any Cash and Cash Equivalents of Seller;<br><br>(iii)    the Excluded Inventory;<br><br>(iv)     the Excluded Stores and the assets contained therein;<br><br>(v)      all of the Employee Plans;<br><br>(vi)     any rights of Seller under the APA;<br><br>(vii)    any Contract that is not an Assumed Contract;<br><br>(viii)   Seller's Organizational Documents;<br><br>(ix)     the Bellewood Distribution Center and the assets contained therein; |

12

(x)      any and all of the Seller's or the Estate's actions, claims, demands, rights, defenses, counterclaims, Proceedings, suits and causes of action of any value whatsoever (including, without limitation, the Specifically Excluded Claims), whether known or unknown, in law, equity or otherwise, against any creditor or other third party and the proceeds or benefits thereof, including any and all actions which a trustee, debtor in possession or other appropriate party in interest may assert on behalf of the Debtor or the Estate under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of Sections 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or under any other similar applicable federal, state or common law, and the Seller's claims or causes of action for professional negligence and director and officer liability, but excluding (i) any claim expressly released in writing by the Seller, and (ii) any claim against the Seller or any Affiliate of the Seller other than as expressly provided for in the APA;

(xi)      any insurance policies and all insurance proceeds arising in connection with the ownership or operation of the Purchased Assets or the Business prior to the Closing Date;

(xii)      all claims, rights, interests and proceeds with respect to refunds of Taxes for periods ending prior to the Closing Date and all rights to pursue appeals of the same;

(xiii)    all Prepaid Expenses or cash deposits to the extent not relating to an Assumed Contract;

(xiv)    all rolling stock and vehicles of Seller (and all replacement parts therefor) that are not specifically listed or identified on Schedule 2.1(b);

(xv)      all books, records (including, without limitation, accounting records), ledgers, files, manuals, documents, correspondence, lists, plans, and other any data in any form which are (a) reasonably necessary for Seller and/or Trustee to conclude the administration of the Bankruptcy Cases, (b) subject to a litigation hold, or (c) covered by or subject to any attorney-client, work product or similar privilege;

(xvi)    all other assets of Seller not expressly included among the Purchased Assets pursuant to Section 2.1 above; and

(xvii)   the proceeds, benefits and other recoveries on account

13

|  | of the foregoing items in the foregoing subparagraphs (i) through (xvi).<br><br>APA, Section 2.2 |
|---|---|
| *Breakup Fee* | N/A |
| *Outside Closing Date* | June 15, 2020 |
| *Representations and Warranties* | The APA contains standard representations and warranties in Sections 4 and 5 of the APA. |
| *Deposit* | $2,000,000.<br><br>APA, Section 3.1 |
| *Successor Liability* | N/A |

12.     The sale is intended to be a private sale, however, the Trustee reserves all rights to accept higher and better offers for the Purchased Assets up until the proposed sale hearing on the Motion.

**BASIS FOR RELIEF**

**A.     Approval of Sale**

13.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

14.     The sale of a debtor's property should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business purpose exists for doing so.  *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996), *citing Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir.

14

1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Titusville Country Club*, 128 B.R. 396 (W.D. Pa. 1991); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991). The *Delaware & Hudson Railway* court held that once a court is satisfied that there is a sound business reason, "the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith." *Id*.

15.     The Trustee proposes to sell the Purchased Assets to the Purchaser and has concluded that the Sale, as set forth in the APA, is supported by a number of sound business reasons. The payment terms and purchase price represents fair market value of the Purchased Assets and the APA also includes a waiver and release against the estates of the postpetition rent from the Releasing Landlords, who are signatories to the APA, in the amount of $660,001.51, thereby avoiding significant administrative expenses that would otherwise be asserted against the Debtors' estates.

16.     In addition, the Purchased Assets will not include "Applicable Jofran Goods" that includes inventory prohibited to transfer because of the Court's *Amended Order Granting Jofran Sales, Inc.'s Motion for Injunctive Relief* [AP Docket No. 17] entered in Adversary Proceeding No. 20-50546 (CSS).   The allegedly infringing inventory will be destroyed or disposed of and will not be used by the Trustee as part of the sale.  This exclusion will avoid any disputes with Jofran Sales, Inc. over the proposed sale.

17.     Finally, as discussed above, the aggregate purchase price includes $10 million which has been earmarked for the benefit customers that placed orders or deposits at the Subject Stores – which, upon information and belief, approximates the total liability to such customers and is designed to make Levin customers in Ohio and Pennsylvania whole by

allowing them to receive their ordered furniture, receive store credit, or receive a cash refund.

18.     For the reasons noted above, the immediate sale of the Purchased Assets and closing under the APA is supported by sound business reasons and is in the best interests of the Debtors' estates.  Accordingly, the Trustee requests approval under section 363(b) of the Bankruptcy Code of the Sale to the Purchaser.

**B.     The Sale of the Purchased Assets is
        Free and Clear of All Liens, Claims, and Encumbrances**

19.     The Purchaser is only willing to complete the sale of the Purchased Assets if those are sold free and clear of all liens, claims, and encumbrances.  Accordingly, the Trustee is seeking authorization to sell the Purchased Assets free and clear of all liens, claims, and encumbrances to maximize value.

20.     Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> > (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> >
> > (2) such entity consents;
> >
> > (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> >
> > (4) such interest is in a bona fide dispute; or
> >
> > (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

21.     Section 363(f) of the Bankruptcy Code provides for the sale of property "free and clear of any interests." The term "any interest," as used in section 363(f), is not defined

anywhere in the Bankruptcy Code. *Folger Adam Security v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 259 (3d Cir. 2000). In *Folger Adam*, the Third Circuit specifically addressed the scope of the term "any interest." 209 F.3d at 258. The Third Circuit observed that while some courts have "narrowly interpreted that phrase to mean only *in rem* interests in property," the trend in modern cases is towards "a broader interpretation which includes other obligations that may flow from ownership of the property." Id. at 258 (*citing* 3 Collier on Bankruptcy 363.06[1]). As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581-582 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in *Folger Adam*, the scope of 11 U.S.C. § 363(f) is not limited to *in rem* interests. Thus, the Third Circuit in *Folger Adam* stated that *Leckie* held that the debtors "could sell their assets under §363(f) free and clear of successor liability that otherwise would have arisen under federal statute." *Folger Adam*, 209 F.3d at 258.

22.    Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the Purchased Assets free and clear of all liens, claims, and encumbrances. *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that because section 363(f) is written in the disjunctive, a court may approve a sale free and clear if any one subsection is met); *see also Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (same); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same). Furthermore, a trustee or debtor possesses broad authority to sell assets free and clear of liens. *See In re Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3d Cir. 2003).

23.    The Trustee submits that it is appropriate to sell the Purchased Assets on a final "as is" basis, free and clear of any and all liens, claims, and encumbrances in accordance

17

with section 363(f) of the Bankruptcy Code because one or more of the tests of section 363(f) are satisfied with respect to such Sale.  In particular, known lienholders will receive notice and will be given sufficient opportunity to object to the relief requested.  Such lienholders that do not object to a Sale should be deemed to have consented.  *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) ("[L]ack of objection (provided of course there is notice) counts as consent.  It could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted); *Hargrave v. Twp. Of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (holding that creditor's failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); *In re Elliot*, 94 B.R. at 345 (same).

24. Furthermore, the Trustee proposes that any liens, claims, and encumbrances asserted against the Purchased Assets be transferred to and attach to the proceeds of such Sale in the same order of priority and with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Trustee and the Debtors' estates may have with respect thereto.  *See Folger Adam*, 209 F.3d at 259; *In re Elliot*, 94 B.R. at 345; *In re Circus Time, Inc.*, 5 B.R. 1, 7 (Bankr. D. Me. 1979).  Therefore, the Trustee may sell the Purchased Assets free and clear of all liens, claims, and encumbrances on the terms set forth in the APA.  In addition, the Debtors' ABL Lender, Wells Fargo Bank, consents to the proposed sale.

**C.** **Good Faith of Purchaser Under Section 363(m) of the Bankruptcy Code**

25. Section 363(m) of the Bankruptcy Code provides:

DOCS_DE:228652.4

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  While the Bankruptcy Code does not define "good faith", the Third Circuit in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986) has held that:

> [t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted); *see Kabro Assocs. of W. Islip, LLC v. Colony Hill Assocs.*, 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a [buyer]'s good faith status at a judicial sale involves fraud, collusion between the [buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); In re Bakalis, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998); *see also Cinicola v. Scharffenberger*, 248 F.3d 110, 121 (3d Cir. 2001) ("To promote certainty and finality in bankruptcy sales, § 363(m) prohibits the reversal of a sale to a good faith purchaser of bankruptcy estate Real Property if a party failed to obtain a stay of the sale."); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("[P]ursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal.").

26.    The APA was a negotiated, arm's-length transaction, in which the Purchaser acted in good faith and in compliance with the *Abbotts Dairies* standards.  The Buyer is also an independent third-party buyer and is not an "insider" or "affiliate" as defined in section 101 of the Bankruptcy Code.  The Trustee thus requests that the Court find that the Purchaser is

acquiring the Purchased Assets in good faith within the meaning of section 363(m) of the Bankruptcy Code.

D.    **A Private Sale is Appropriate**

27.    Bankruptcy Rule 6004(f) and Local Rule 6004-11(b)(iv)(D) permit a debtor to conduct a private sale pursuant to section 363.  Specifically, Bankruptcy Rule 6004(f) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction."  Fed. R. Bankr. P. 6004(f)(1) (emphasis added); *see Berg v. Scanlon (In re Alisa P'ship)*, 15 B.R. 802, 802 (Bankr. D. Del. 1981) ("[T]he manner of [a] sale is within the discretion of the trustee . . .").

28.    Accordingly, in light of Bankruptcy Rule 6004(f) and case law regarding section 363 sales, a trustee may conduct a private sale if a good business reason exists.  See, e.g., *In re MF Global, Inc.*, 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015 ("The business judgment of a trustee is entitled to great deference"); *In re Pritam Realty, Inc.*, 233 B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a chapter 11 debtor); *In re Condere Corp.*, 228 B.R. 615, 629 (Bankr. S.D. Miss. 1998) (authorizing private sale of debtors' tire company where "[d]ebtor has shown a sufficient business justification for the sale of the assets to the [p]urchaser"); *In re Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) ("A large measure of discretion is available to a bankruptcy court in determining whether a private sale should be approved.  The court should exercise its discretion based upon the facts and circumstances of the proposed sale."); *In re Wieboldt Stores, Inc.*, 92 B.R. 309 (N.D. Ill. 1988) (affirming right of chapter 11 debtor to transfer assets by private sale).

29.    Indeed, courts in this and other districts have approved private sales of estate property pursuant to section 363(b)(1) when there has been a valid business reason for not conducting an auction.  *See, e.g.*, *In re Evergreen Int'l Aviation, Inc.*, Case No. 13-13364 (MFW)

20

(Bankr. D. Del. Feb. 26, 2014) (approving private sale of helicopters for $350,000); *In re Buffets Holdings, Inc.*, Case No. 08−10141 (MFW) (Bankr. D. Del. Feb. 3, 2009) (approving private sale of real property for approximately $2.4 million); *In re W.R. Grace & Co.*, Case No. 01−01139 (JKF) (Bankr. D. Del. Dec. 18, 2008) (approving the private sale of real property for approximately $3.8 million); *In re Wellman, Inc.*, Case No. 08−10595 (SMB) (Bankr. S.D.N.Y. Oct. 6, 2008) (approving private sale of industrial complex capable of converting recycled carpet into nylon engineered resins for $17.9 million).

30.    The Trustee submits that the proposed private sale to the Purchaser in accordance with the APA is appropriate in light of the facts and circumstances of these chapter 7 cases.  Specifically, a long and complicated sale process with bid procedures and an auction is unlikely to net the estates a significant appreciable benefit through a substantially increased sale price in light of the costs and expenses for running a competitive bid and sale process.

31.    As a result, the transaction with the Purchaser allows the Trustee to maximize the value of the Purchased Assets and provides a significant benefit to the Debtors' estates.  Because a private sale is specifically authorized under Bankruptcy Rule 6004 and the Trustee believes that the Purchaser's offer is the highest and best offer for the Purchased Assets at this time, the Trustee requests that the Court approve the proposed private sale to the Purchaser in accordance with the APA.

**E.**     **Rejection of the Rejected Leases is Supported by Sound Business Reasons**

32.     Section 365(a) of the Bankruptcy Code provides that a trustee "may assume or reject any executory contract or unexpired lease of the debtor" subject to the court's approval. Courts generally authorize a trustee to reject executory contracts and unexpired leases where a trustee appropriately exercises their "business judgment." *See, e.g., Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39–40 (3d Cir. 1989); *In re Fed. Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993); *Robertson v. Pierce (In re Chi-Feng Huang)*, 23 B.R. 798, 800 (B.A.P. 9th Cir. 1982); *Lubrizol Enters. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.),* 756 F.2d 1043, 1047 (4th Cir. 1985) (holding that absent bad faith or abuse of discretion, deference is given to debtor's business  judgment);  *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 849 (Bankr. W.D. Pa. 1987); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

33.     Courts generally will not second-guess a trustee's business judgment concerning the rejection of an executory contract or unexpired lease. *See In re Trans World Airlines*, 261 B.R. 103, 121 (Bankr. D. Del. 2003). The "business judgment" test merely requires a showing that rejection of the executory contract or unexpired lease will benefit the debtor's estate. *Id*. ("A debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice'") (quoting *In re Wheeling-Pittsburgh Steel Corp.*, 72 B.R. at 849–50); *In re Trans World Airlines, Inc.*, No. 01-0056, 2001 Bankr. LEXIS 722, at *7–8 (Bankr. D. Del. Mar. 16, 2001) (noting that the standard under section 365 requires consideration of the benefit of the rejection to the debtor's estate).

34.     Here, the APA provides for the rejection of the Rejected Leases subsequent to the closing of the Sale.  By this Motion, the Trustee requests authority to effectuate the rejection of a Rejected Lease by filing a notice with the Court, subsequent to the closing of the Sale, declaring that the it has irrevocably surrendered the premises concerning a Rejected Lease (the date of such notice, the "<u>Rejection Effective Date</u>"); and that a Rejected Lease shall be deemed terminated effective as of the Rejection Effective Date.  Rejection, and the procedure requested herein, is appropriate and supported by sound business reasons, as such Rejected Leases will no longer be of any benefit to the estates' once the Purchased Assets have been removed from the leased premises.  Accordingly, rejection is appropriate under the terms of the APA.

F.    **<u>Abandonment of Remaining Personal Property</u>**

35.     The Trustee believes that, as of the Rejection Effective Date, the Purchaser will have removed all of the Debtors' owned personal property assets located at the leased premises associated with the Rejected Leases.  However, out of an abundance of caution and solely to the extent that the estates retain any ownership interest in any Remaining Personal Property, the Trustee seeks authority to abandon any Remaining Personal Property assets that remain at the locations subject to the Rejected Leases as of the Rejection Effective Date.

36.     The Trustee seeks to abandon any Remaining Personal Property assets described above as is, where is, and in accordance with section 554(a) of the Bankruptcy Code. Section 554(a) provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).  The Trustee believes that the costs associated with liquidating any Remaining Personal Property at the leased premises will likely approach or exceed the value of

such assets.    Accordingly, the Trustee believes that the Remaining Personal Property at the

leased premises, if any, have inconsequential value to the these estates and should be abandoned

as of the Rejection Effective Date.

**F.    Assumption of Assumed Contracts, Payment of
Cure Amounts, and Adequate Assurance of Future Performance**

37.    Sections 365(a) and (b) of the Bankruptcy Code authorize a trustee to

assume, subject to the court's approval, executory contracts or unexpired leases of the debtor.

Under section 365(a) of the Bankruptcy Code, a debtor, "subject to the court's approval, may

assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).

Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for assuming an

unexpired lease or executory contract of a debtor, providing that:

> (b)(l) If there has been a default in an executory contract or unexpired
> lease of the debtor, the trustee may not assume such contract or lease
> unless, at the time of assumption of such contract or lease, the trustee-
>
> > (A) cures or provides adequate assurance that the trustee will
> > promptly cure, such default . . . ;
> >
> > (B) compensates, or provides adequate assurance that the trustee
> > will promptly compensate, a party other than the debtor to such
> > contract or lease, for any actual pecuniary loss to such party
> > resulting from such default; and
> >
> > (C) provides adequate assurance of future performance under such
> > contract or lease.

11 U.S.C. § 365(b)(1).

38.    The standard applied by the Third Circuit in determining whether an

executory contract or unexpired lease should be assumed is the "business judgment" test, which

requires a trustee to determine that the requested assumption or rejection would be beneficial to a

debtor's estate.  *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.,* 872 F.2d 36, 40 (3d

Cir. 1989); *see also NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 523 (1984) (describing business

judgment test as "traditional") (superseded in part by 11 U.S.C. § 1113).

39.     Courts generally will not second-guess a trustee's business judgment concerning the assumption of an executory contract.  *See In re Decora Indus., Inc.*, No. 00-4459 (JJF), 2002 WL 32332749, at *8; *Official Comm. for Unsecured Creditors v. Aust (In re Network Access Solutions, Corp.,* 330 B.R. 67, 75 (Bankr. D. Del. 2005) ("The standard for approving the assumption of an executory contract is the business judgment rule"); *In re Exide Techs.,* 340 B.R. 222, 239 (Bankr. D. Del. 2006) ("The propriety of a decision to reject an executory contract is governed by the business judgment standard").

40.     To determine if the business judgment standard is met, the court is "required to examine whether a reasonable business person would make a similar decision under similar circumstances*." In re AbitibiBowater Inc.,* 418 B.R. 815, 831 (Bankr. D. Del. 2009). "This is not a difficult standard to satisfy and requires only a showing that rejection will benefit the estate." *Id.* (citations omitted).  Specifically, a court should find that the assumption or rejection is elected on "an informed basis, in good faith, and with the honest belief that the assumption . . . [is] in the best interests of [the debtor] and the estate." *In re Network Access Solutions Corp.,* 330 B.R. 67, 75 (Bankr. D. Del. 2005).  Under this standard, a court should approve a debtor's business decision unless that decision is the product of bad faith or a gross abuse of discretion.  *See In re Federal Mogul Global, Inc.,* 293 B.R. 124, 126 (D. Del. 2003).

41.     Here, the Trustee's assumption and assignment of the Assumed Contracts to the Purchaser meets the business judgment standard and satisfy the requirements of section 365 of the Bankruptcy Code.  The assumption and assignment is necessary for the Purchaser to receive the full benefits under the sale of the Purchased Assets.  Consequently, the Trustee submits that assumption of the Assumed Contracts and payment of the Cure Amounts at the

closing of the Sale is fair and reasonable and an appropriate exercise of the Trustee's business judgment.

42.     In addition, adequate assurance will be provided or is otherwise accounted for under the APA because, with respect to the assumed lease for the Smithton Warehouse, the landlord will have consented.  A trustee may assign an executory contract or an unexpired lease of the debtor if it assumes the agreement in accordance with section 365(a) of the Bankruptcy Code, and provides adequate assurance of future performance by the assignee, whether or not there has been a default under the agreement.  *See* 11 U.S.C. § 365(c)(2).

43.     The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *EBG Midtown South Corp. v. McLaren/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.),* 139 B.R. 585, 592 (S.D.N.Y. 1992) (citations omitted), *aff'd,* 993 F.2d 300 (2d Cir. 1993); *In re Prime Motor Inns Inc.,* 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994); *In re Rachels Indus. Inc.,* 109 B.R. 797, 803 (Bankr. W.D. Tenn. 1990); *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.),* 103 B.R. 524, 538 (Bankr. D.N.J. 1988).

44.     Significantly, among other things, adequate assurance of future performance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.  *See, e.g., In re Bygaph, Inc.,* 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (stating that adequate assurance of future performance is present when the prospective assignee of a lease from the debtor has financial resources and has expressed willingness to devote sufficient funding to the business in order to give it a strong likelihood of succeeding).

45.     Under Section 6.1(b) of the APA, the Purchaser has agreed to provide

adequate assurance of future performance under and with respect to the Assumed Contracts.  The Trustee will serve a copy of the Motion with the proposed Cure Amounts on each of the counterparties to the Assumed Contracts.

## RESERVATION OF RIGHTS FOR HIGHER AND BETTER OFFERS

46.     Notwithstanding the requested relief for approval of the Sale as a private sale, the Trustee reserves all rights, in the exercise of his business judgment, to accept any higher and better offers for an alternative transaction for the Purchased Assets, that the Trustee determines, in the exercise of his business judgment, will provide a greater value for the estates. The Trustee expressly reserves this right to accept higher and better offers up until the hearing to approval the Sale and the relief requested in the Motion.

## WAIVER OF BANKRUPTCY RULE 6004(h)

47.     The Purchaser is ready, willing, and able to close the Sale. Because the liens, claims, and encumbrances will attach to the sale proceeds, the Trustee submits there is no prejudice to creditors by having an order approving the Motion become effective immediately upon its entry.  In addition, there is a risk of deterioration of the value of the Purchased Assets if the APA is not consummated quickly.  Accordingly, the Trustee is requesting a waiver of the fourteen-day stay requirement under Bankruptcy Rule 6004(h).

## NOTICE

48.     Notice of this Motion shall be provided to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Attorney's Office for the District of Delaware; (d) the Internal Revenue Service; (e) the Debtors' secured lenders; (f) counterparties to the Assumed Contracts; (g)

counterparties to the Rejected Leases; (h) parties asserting liens on the Debtors' assets; (i) the Purchaser; and (j) any party that has requested service pursuant to Bankruptcy Rule 2002. The Trustee submits that, in light of the nature of the relief requested, no other or further notice need be given.

### NO PRIOR REQUEST

49. No prior request for the relief sought in this Motion has been made to this Court or any other court.

### CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court grant the Motion and enter the Order approving the Sale.

Dated:  May 18, 2020                            PACHULSKI STANG ZIEHL & JONES LLP


                                                */s/ Bradford J. Sandler*
                                                Bradford J. Sandler (DE Bar No. 4142)
                                                Colin R. Robinson (DE Bar No. 5524)
                                                Peter J. Keane (DE Bar No. 5503)
                                                919 N. Market Street, 17th Floor
                                                Wilmington, DE 19801
                                                Telephone:  (302) 652-4100
                                                Facsimile:   (302) 652-4400
                                                Email:      bsandler@pszjlaw.com
                                                            crobinson@pszjlaw.com
                                                            pkeane@pszjlaw.com

                                                *Proposed Counsel to Alfred T. Giuliano, Chapter 7 Trustee*