IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ART VAN FURNITURE, LLC., *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 20-10553 (CSS)<br><br>Jointly Administered<br><br>Re: Docket No. 511 |

**DECLARATION OF ALFRED T. GIULIANO IN SUPPORT OF
MOTION FOR ENTRY OF ORDER APPROVING (I) SALE OF CERTAIN ASSETS TO
LEVIN FURNITURE, LLC AND LEVIN TRUCKING, LLC FREE AND
CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES; (II) REJECTION OF CERTAIN
UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY; (III)
ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS; AND (IV) GRANTING
RELATED RELIEF**

I, Alfred T. Giuliano, declare as follows:

1. I make this declaration in support of the *Motion of Alfred T. Giuliano, Chapter 7 Trustee, to Approving (I) Sale of Certain Assets to Levin Furniture, LLC and Levin Trucking, LLC Free and Clear of Liens, Claims, and Encumbrances: (II) Rejection of Certain Unexpired Leases of Nonresidential Real Property; (III) Assumption of Certain Executory Contracts; and (IV) Granting Related Relief* [Docket No. 511] (the "Sale Motion").[2] Unless otherwise noted, capitalized terms used in this Declaration have their meanings ascribed in the Motion.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463). The location of the Debtors' service address in these chapter 11 cases is: 6500 East 14 Mile Road, Warren Michigan 48092.

[2] Capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Motion.

2. I am the duly-appointed chapter 7 trustee to the estates of the above-captioned debtors (the "Debtors"). Since my appointment on April 7, 2020 (the "Conversion Date"), I have familiarized myself with the Debtors' assets, liabilities, and financial affairs.

3. By the Motion, I, on behalf of the Debtors' estates, seek approval of: (i) the sale of certain assets to Levin Furniture, LLC (the "Furniture Buyer") and Levin Trucking, LLC (the "Trucking Buyer", and together with the Furniture Buyer, the "Purchaser") free and clear of all liens, claims, and encumbrances; (ii) the rejection of the certain leases of real property; (iii) the abandonment of any remaining personal property at the leased premises; (iv) assumption of certain executory contracts and unexpired leases of nonresidential real property and payment of related cure amounts; and (iv) granting related relief.

4. All facts set forth in this Declaration are based on my personal knowledge, my review of relevant documents and other information prepared or collected by my advisors, representatives, or counsel at my direction, or my opinion based on my experience with the Debtors' books and records and through discussions and negotiations with the Purchaser and Wells Fargo Bank, National Association (the "ABL Lender") and their respective representatives and counsel. If I were called upon to testify, I could and would testify competently to the facts set forth herein, and I am authorized to submit this Declaration on behalf of the Debtors' estates.

5. The Debtors' furniture, mattresses, and other personal property are located in the Debtors' remaining retail stores and four distribution centers. Following the recently approved sales to American Signature, Inc. and U.S. Realty Acquisitions, L.L.C. and in response to inquiries from interested parties, my professionals at Guiliano Miller & Company ("GMCO")

2

and Pachulski Stang Ziehl & Jones LLP ("PSZJ") and I engaged in negotiations with the Purchaser to sell $25.7 million of certain assets, including inventory and rolling stock and vehicles, and assumption of over $660,000 in rejection damages and postpetition claims for three locations. Additionally, $10 million of the total purchase price consists of a fund earmarked for customers at the applicable Ohio and Pennsylvania stores subject to the Sale, and this fund approximates the total liability to such customers and is expected to make them whole by allowing the customers to receive their ordered furniture, receive store credit, or receive a cash refund.

6. The leases for the thirty-two stores subject to the Sale will be rejected and the Purchaser will use its best efforts to vacate the stores as soon as possible, rather than the stores being used for a months-long "going out of business" sale process that would have likely entangled the estates in various issues and resulted in difficult negotiations (and more chapter 7 administrative costs) with the applicable landlords, who can now have their locations returned to them months earlier than expected.

7. The Purchased Assets will not include "Applicable Jofran Goods" that includes inventory prohibited to transfer because of the Court's *Amended Order Granting Jofran Sales, Inc.'s Motion for Injunctive Relief* [AP Docket No. 17] entered in Adversary Proceeding No. 20-50546 (CSS). The allegedly infringing inventory will be destroyed or disposed of and will not be used by the Trustee as part of the sale. This exclusion will avoid any disputes with Jofran Sales, Inc. over the proposed Sale.

8. The proposed transaction with Purchaser is beneficial to the estates because the proceeds from the sale of the Purchased Assets will maximize value for the Debtors' estates. The payment terms and purchase price represents fair market value of the Purchased Assets and the APA also includes a waiver and release against the estates of the postpetition rent from the Releasing Landlords, who are signatories to the APA, in the amount of $660,001.51, thereby avoiding significant administrative expenses that would otherwise be asserted against the Debtors' estates. Critically, the aggregate purchase price includes $10 million which has been earmarked for the benefit of customers that placed orders or deposits at the Subject Stores – which, upon information and belief, approximates the total liability to such customers and is designed to make Levin customers in Ohio and Pennsylvania whole by allowing them to receive their ordered furniture, receive store credit, or receive a cash refund. The rejection of the leases of the Subject Stores will reduce administrative expenses while the Purchaser's commitment to exit the rejected stores as soon as possible will allow the landlords to find new tenants and relet their properties.

9. Pursuant to the terms of the APA, the Purchaser is purchasing substantially all of the assets of the Sellers at each Subject Store, including furniture, fixtures, and equipment. Accordingly, upon the closing of the Sale and rejection of a lease at a Subject Store, I do not anticipate that the estates will have an ownership interest in any remaining personal property at the Subject Stores. However, to the extent that there is personal property remaining at the Subject Stores, such value will be de minimis and the cost of inspection and removal will outweigh any potential benefit to the estate.

10. I believe that the Purchaser has negotiated and acted at all times in good faith and, as a result, is entitled to the full protections of a good faith purchaser under section 363(m) of the Bankruptcy Code, and that the APA does not and will not constitute an avoidable transaction pursuant to section 363(n) of the Bankruptcy Code. The APA and the transactions contemplated thereby present the best opportunity to maximize value for the Debtors' estates and provide the best possible recovery for the Debtors' creditors in these circumstances. The Purchaser is not an "affiliate" or "insider" of the Debtors as such terms are defined by the Bankruptcy Code. There is no fraud or collusion between the Trustee and Levin. The Trustee and Levin have been represented by separate counsel in connection with the negotiation and documentation of the APA.

11. It is my position that the sale of the Purchased Assets by the Purchaser is free and clear of any and all Liens, Claims, Encumbrances, and Interests is appropriate as notice was provided to known lienholders and as such lienholders have an opportunity to object. Moreover, any Liens, Claims and Encumbrances, and Interests, will attach to the proceeds of the Sale in the same order of priority and with the same validity, force and effect that such creditors had prior to the Sale, subject to any claims or defenses of the Debtors' estates or that I have as the chapter 7 trustee. The ABL Agent has consented to and supports the approval of the APA.

12. Finally, I believe the circumstances support a private sale pursuant to section 363 of the Bankruptcy Code as opposed to a public auction. I do not believe that a public sale process would achieve a better result for the Debtors' estates in light of the inability to

5

conduct any going out of business sales at this time due to the COVID-19 pandemic and the costs and time associated with a bid and auction process. I also do not believe a public sale process would result in a purchase price that earmarks $10 million for the benefit of Levin customers that placed orders or deposits at the Subject Stores.

13. Accordingly, it is my business judgment that the APA with the Purchaser is the highest and best offer for the disposition of the Purchased Assets and the Sale of the Purchased Assets to the Purchaser is that in the best interests of the Debtors' estates and that the proposed transaction should be approved by the Court pursuant to section 363(b) of the Bankruptcy Code. For these reasons, I would urge the Court to authorize and approve the Sale on the terms proposed in the Sale Motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 26th day of May 2020.

/s/ Alfred T. Giuliano
Alfred T. Giuliano