## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| ART VAN FURNITURE, LLC, *et al.*,[1] | ) Case No. 20-10553 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket No. 511** |

**ORDER APPROVING
(I) SALE OF PURCHASED ASSETS TO LEVIN
FURNITURE, LLC AND LEVIN TRUCKING, LLC
FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES;
(II) REJECTION OF CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL
REAL PROPERTY; (III) ASSUMPTION OF CERTAIN ASSUMED CONTRACTS;
AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of Alfred T. Giuliano, chapter 7 trustee (the

"Trustee") to the estates of the above-captioned debtors (collectively, the "Debtors"), pursuant to

sections 105, 363, 365, and 554 of Title 11 of the United States Code (the "Bankruptcy Code")

and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), for entry of an order (this "Order") authorizing the (i) sale of the Purchased Assets to

Levin Furniture, LLC (the "Furniture Buyer") and Levin Trucking, LLC (the "Trucking Buyer",

and together with the Furniture Buyer, the "Purchaser") free and clear of all liens, claims, and

encumbrances; (ii) the rejection of the leases of the Subject Stores (the "Rejected Leases"); (iii)

assumption of Assumed Contracts; and (iv) granting related relief, all as more fully described in

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484);  Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).  The location of the Debtors' service address in these chapter 11 cases is: 6500 East 14 Mile Road, Warren Michigan 48092.

[2]   A capitalized term used but not defined herein shall have the meaning ascribed to it in the Motion or APA, as applicable.

the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court finding that it may enter a final order consistent with Article III of the United States Constitution; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion and the proposed sale having been provided; and the relief requested in the Motion being in the best interests of the Debtors, their estates, and their creditors; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court, and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED as set forth herein.

2. All objections and responses to the Motion, including all reservations of rights included therein that have not been overruled, withdrawn, waived, settled, continued, or resolved, are hereby overruled and denied

3. The form and manner of notice of the Motion and the proposed sale under the APA is hereby approved as providing good and sufficient notice to all creditors and parties in interest pursuant to the Bankruptcy Rules and the Local Rules.

4. The Asset Purchase Agreement ("<u>APA</u>"), in substantially the form attached hereto as **<u>Exhibit 1</u>**, and all of the terms and conditions thereof, are approved.

DOCS_SF:103420.9

The relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and other parties in interest.  Upon the record made at the Sale Hearing, the Trustee has demonstrated good, sufficient, and sound business purposes and justifications for the relief requested in the Motion.  The Trustee's decision to enter into the APA and perform thereunder is a reasonable exercise of his business judgment.

5.  The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

6.  Pursuant to section 363(b) of the Bankruptcy Code, the Trustee, on behalf of the Debtors, is authorized to perform its obligations under and comply with the terms of the APA and consummate the Sale, pursuant to and in accordance with the terms and conditions of the APA.

7.  The Trustee, on behalf of the Debtors, is authorized to execute and deliver, and empowered to perform under, consummate, and implement, the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA, and to take all further actions as may be reasonably required for the purpose of assigning, transferring, granting, conveying, and conferring the Purchased Assets to the Purchaser, or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA.

8.  Upon the closing of the Sale, the Sale of the Purchased Assets to the Purchaser shall vest the Purchaser with all right, title, and interest in the Purchased Assets, and, pursuant to section 363(f) of the Bankruptcy Code, the Sale shall be free and clear of any and all liens, claims, and encumbrances against the Purchased Assets, with such liens, claims (as defined

in section 101(5) of the Bankruptcy Code), interests, and encumbrances attaching to the proceeds of the Sale with the same validity, extent and priority as such liens, claims, and encumbrances had on the Purchased Assets immediately prior to the Sale, subject to any rights, claims and defenses of the Debtors and other parties in interest.

9.      The assumption and assignment of the Assumed Contracts pursuant to the terms of the APA and this Order is integral to the Sale and is in the best interests of the Debtors, their estates, their creditors, and parties-in-interest, and represents the reasonable exercise of sound and prudent business judgment by the Trustee.  The Trustee has met all requirements of section 365(b) of the Bankruptcy Code for each of the Assumed Contracts, and the Purchaser has provided adequate assurance of future performance under the relevant Assumed Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) and 365(f)(2)(B) of the Bankruptcy Code.

10.      Each of the Assumed Contracts shall be assumed by the Trustee, on behalf of the Debtors' estates, effective as of the Closing Date under the APA, and assigned to the Purchaser free and clear of all liens, claims (as defined in section 101(5) of the Bankruptcy Code), and encumbrances, in accordance with section 363(f), against the Purchaser notwithstanding any provision in the Assumed Contracts or other restrictions prohibiting their assignment or transfer.

11.      The Purchaser shall be responsible for and shall pay all Cure Amounts in connection with the assumption and assignment of any Assumed Contract to the Purchaser as of the Closing Date.

12.      The transactions contemplated by the Purchase Agreement are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to

consummate the Sale shall not affect the validity of the Sale of the Purchased Assets to the Purchaser. The Purchaser, its affiliates, and their respective principals and advisors have proceeded in good faith and without collusion in all respects and are entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

13.     The consideration provided by the Purchaser for the Purchased Assets under the APA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

14.     The proceeds of the Purchased Assets shall be subject to the *Second Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 372] and the payment provisions of paragraph 12 thereunder. Notwithstanding the foregoing, this provision shall not extend to the Customer Claim Advance, the Customer Claim Advance Fund or the Excess Funds (all as defined in the APA).

15.     Upon the closing of the Sale, any and all respective rights and obligations of the Trustee and/or the Purchaser pursuant to the *Interim Order: (I) Authorizing Secured Post-Petition Financing Pursuant to 11 U.S.C. Section 105, 361, 364(c) and 364(d); (II) Scheduling a Final Hearing; and (III) Granting Related Relief* [Docket No. 137] ("Interim DIP Order") are hereby deemed satisfied and extinguished in full. For the avoidance of doubt, upon the closing of the Sale, any claim or right that may exist for the Purchaser with respect to the Interim DIP Order is deemed waived upon closing of the Sale and any lien arising from the Interim DIP Order is hereby terminated and deemed extinguished without further order of this Court.

16.     The Purchaser is hereby granted a first lien and senior security interest,

senior to all liens, claims and encumbrances in the Excess Funds (as defined in the APA) which shall be deemed properly perfected without the need for any subsequent filing in the federal, state or local governmental agencies.

17.    Any Purchased Assets subject to the trademark infringement allegations asserted by JoFran Sales, Inc. will be caused by the Trustee, with the cooperation and assistance of the Purchaser, to be disposed of and shall not be transferred to Purchaser and shall not be resold, transferred for sale, or otherwise continue in the stream of commerce, other than as agreed between Jofran Sales, Inc. and the Trustee.

18.    No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the transactions contemplated by the APA.

19.    The Purchaser shall not have any liability for any obligation of the Debtors arising under or related to any of the Purchased Assets.  Without limiting the generality of the foregoing, the Purchaser shall not be liable for any claims against the Debtors or any of their predecessors or affiliates solely by virtue of its acquisition of the Purchased Assets.  By virtue of the Sale, the Purchaser and its affiliates, successors and assigns shall not be deemed or considered to, (a) be a legal successor, or otherwise be deemed a successor to any of the Debtors, (b) have, *de facto* or otherwise, merged with or into any or all Debtors, or (c) be a continuation or substantial continuation, or be holding itself out as a mere continuation, of any of the Debtors or their respective estates, businesses or operations, or any enterprise of the Debtors, in each case by any law or equity, and the Purchaser has not assumed nor is it in any way responsible for any liability or obligation of the Debtors or the Debtors' estates.  The Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger or

6

substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date.

20.     The Rejected Leases shall be deemed rejected, pursuant to section 365(a) of the Bankruptcy Code, upon the Trustee filing a notice with the Court, subsequent to the closing of the Sale, declaring that it has irrevocably surrendered the premises concerning a Rejected Lease (the date of such notice, the "Rejection Effective Date"). A Rejected Lease shall be deemed terminated effective as of the Rejection Effective Date. Notwithstanding the foregoing or anything to the contrary contained in this Order, the Motion, or the APA, the leases for the following Subject Stores are excluded from the definition of Rejected Leases and are unaffected by the relief granted herein: (a) 1801 Nagel Road, Avon, Ohio (Store No. 27), (b) 16960 Sprague Road, Middleburg Heights, Ohio (Store No. 30), (c) 6229 Promler Avenue, North Canton, Ohio (Store No. 28), (d) 7799 Mentor Avenue, Mentor, Ohio (Store No. 31), and (e) 124 Levin Way, Monroeville, Pennsylvania (Store No. 137).

21.     Effective automatically upon the Rejection Effective Date of the Rejected Leases with the Releasing Landlords, (i) each Releasing Landlord fully and unconditionally releases and waives any and all claims against the Trustee, the Seller, the Debtors and its and their affiliates and their respective bankruptcy estates, and (ii) the Rejected Leases shall be deemed rejected and terminated as of the Rejection Date.

22.     All claims by the Releasing Landlords against the Debtors, their estates, and the Trustee, including administrative expense claims arising under sections 365, 503(b), or any other applicable section of the Bankruptcy Code, are deemed waived and disallowed in their entirety.

23.     Any of the Debtors' owned personal property assets located on the premises underlying a Rejected Lease shall be deemed abandoned, without further order of this Court, pursuant to section 554(a) of the Bankruptcy Code as of the Rejection Effective Date.

24.     Notwithstanding anything in this Order or the APA to the contrary, the Trustee shall provide a copy to the Debtors' (a) ABL Lender, Wells Fargo Bank, and (b) Prepetition Term Loan Agent, Virtus Group LP, of the periodic accounting reports provided to the Purchaser pursuant to Section 6.13(j) of the APA.

25.     Nothing in this Order shall limit, release, or affect any claims of Samalex Trust, including but not limited to claims arising under the rejection of its lease of non-residential real property, or any defense to such claims.

26.     Notwithstanding anything in this Order or the APA to the contrary, no rights (if any) under certain implied licenses, or otherwise, for photographs produced by Pirrillo Digital Imaging, Inc. are being transferred to the Purchaser pursuant to this Order or the APA.

27.     Notwithstanding anything in this Order or the APA to the contrary, no software or hardware licensed by the Debtors from Oracle America, Inc. ("Oracle") will be transferred without Oracle's prior written consent.

28.     Notwithstanding anything in this Order or the APA to the contrary: (i) no rights under that certain (x) Vendor Buying Agreement between the Debtors and Tempur Sealy International, Inc. and its subsidiaries and affiliates (collectively, "Tempur Sealy"), (y) Multi-Line Retailer Agreement between the Debtors and Tempur Sealy, and (z) incentive agreement between the Debtors and Tempur Sealy (collectively, as amended, the "Tempur Sealy Agreements") are being transferred to the Purchaser pursuant to this Order or the Purchase Agreement; (ii) the Purchaser shall not be permitted to utilize, without the express permission of

Tempur Sealy, any intellectual property assets of Tempur Sealy including, but not limited to, Tempur-Pedic®, Sealy® and Stearns & Foster® trade names and trademarks (the "Tempur Sealy Marks");  provided, however, that the foregoing shall not (x) in any way preclude the Purchaser from selling any Purchased Assets that includes the Tempur Sealy Marks, or (y) obligate the Purchaser to remove any Tempur Sealy Marks from the Purchased Assets in connection with such sales or otherwise; provided further, however, that Purchaser shall not be permitted to include Tempur Sealy Marks in advertising or other promotions; (iii) Purchaser shall not be entitled to assert a claim against Tempur Sealy for indemnification, warranties, rebates, or incentives that may otherwise be due and owing to the Debtors pursuant to the Tempur Sealy Agreements; and (iv) Tempur Sealy reserves all of its rights and remedies under the Tempur Sealy Agreements against the Debtors and nothing in this Order or the Purchase Agreement shall abrogate Tempur Sealy's rights under the Tempur Sealy Agreements against the Debtors; provided that Tempur Sealy shall not be entitled to assert any such rights against the Purchaser or any purchaser of any Purchased Assets, the Debtors shall not be entitled to assert any claim against the Purchaser or any purchaser of any Purchased Assets in connection with any assertion of rights by Tempur Sealy against the Debtors under the Tempur Sealy Agreements and neither the Purchaser nor any purchaser of any Purchased Assets shall have any liability to any person or entity, including without limitation, Tempur Sealy and the Debtors, under, or in connection with, the Tempur Sealy Agreements.

29.    Notwithstanding anything in this Order or the APA to the contrary: (i) no rights under that certain (x) 2019 Vendor Buying Agreement dated January 17, 2019 between the Debtors and Serta Simmons Bedding Company and its subsidiaries and affiliates (collectively, "SSB"), (y) the Serta Simmons Bedding Authorized Dealer Terms and Conditions, effective as

of January 2019, and (z) the Beautyrest® Dealer Policies (collectively, as amended from time to time, the "SSB Agreements") are being transferred to the Purchaser pursuant to this Order or the Purchase Agreement; (ii) the Purchaser shall not be permitted to utilize, without the express permission of SSB, any intellectual property assets of SSB including, but not limited to, Beautyrest® trade names and trademarks of SSB (the "SSB Marks"); provided, however, that the foregoing shall not (x) in any way preclude the Purchaser from selling any Purchased Assets that includes the SSB Marks, or (y) obligate the Purchaser to remove any SSB Marks from the Purchased Assets in connection with such sales or otherwise; provided further, however, that the Purchaser shall not be permitted to include SSB Marks in advertising or other promotions; (iii) the Purchaser shall not be entitled to assert a claim against SSB for indemnification, warranties, rebates, or incentives that may otherwise be due and owing to the Debtors pursuant to the SSB Agreements (if any); and (iv) SSB reserves all of its rights and remedies under the SSB Agreements against the Debtors and nothing in this Order or the Purchase Agreement shall abrogate SSB's rights under the SSB Agreements against the Debtors; provided that SSB shall not be entitled to assert any such rights against the Purchaser or any purchaser of any Purchased Assets, the Debtors shall not be entitled to assert any claim against the Purchaser or any purchaser of any Purchased Assets in connection with any assertion of rights by SSB against the Debtors under the SSB Agreements and neither the Purchaser nor any purchaser of any Purchased Assets shall have any liability to any person or entity, including without limitation, SSB and the Debtors, under, or in connection with, the SSB Agreements; *provided*, *however*, that, for the avoidance of doubt, nothing herein is intended to exculpate the Purchaser or any purchaser of any Purchased Assets for use of the SSB Marks in violation of the limitations set forth in this paragraph.

30. Notwithstanding anything in this Order or the APA to the contrary: (i) no rights under certain vendor agreements (collectively, the "Serta Agreements") between the Debtors and Serta Restokraft Mattress Company ("Serta") are being transferred to the Purchaser pursuant to this Order or the Purchase; (ii) the Purchaser shall not be permitted to utilize, without the express permission of Serta, any intellectual property assets of Serta (the "Serta Marks"); provided, however, that the foregoing shall not (x) in any way preclude the Purchaser from selling any Purchased Assets that includes the Serta Marks, or (y) obligate the Purchaser to remove any Serta Marks from the Purchased Assets in connection with such sales or otherwise; provided further, however, that the Purchaser shall not be permitted to include Serta Marks in advertising or other promotions; (iii) the Purchaser shall not be entitled to assert a claim against Serta for indemnification, warranties, rebates, or incentives that may otherwise be due and owing to the Debtors pursuant to the Serta Agreements; and (iv) Serta reserves all of its rights and remedies under the Serta Agreements against the Debtors and nothing in this Order or the Purchase Agreement shall abrogate Serta's rights under the Serta Agreements against the Debtors; provided that Serta shall not be entitled to assert any such rights against the Purchaser or any purchaser of any Purchased Assets, the Debtors shall not be entitled to assert any claim against the Purchaser or any purchaser of any Purchased Assets in connection with any assertion of rights by Serta against the Debtors under the Serta Agreements and neither the Purchaser nor any purchaser of any Purchased Assets shall have any liability to any person or entity, including without limitation, Serta and the Debtors, under, or in connection with, the Serta Agreements.

31. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

32. If any person or entity that has filed statements (including UCC-1

financing statements) or other documents or agreements evidencing Encumbrances on, or interests in, all or any portion of the Purchased Assets shall not have delivered to the Trustee, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Encumbrances or any other documents necessary for the purpose of documenting the release of all Encumbrances or interests which the person or entity has or may assert, the Trustee is hereby authorized, and the Purchaser is hereby authorized on behalf of the Debtors' estates and the Trustee, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Purchased Assets.

33.    This Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title to or interest in any of the Purchased Assets.

34.    The failure to specifically include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that that APA be authorized and approved in its entirety; *provided*, *however*, that this Order shall govern if there is any inconsistency between the APA and this Order.

35.    The Purchaser is a party in interest and shall have standing to appear and be heard on all issues related to or otherwise connected with this Order, the Sale or the APA.

36.    Within three (3) business days after entry of this Order, the Trustee will serve this Order on the counterparty to each Rejected Lease, or their counsel if known.

DOCS_SF:103420.9

37.     Notwithstanding any applicability of Bankruptcy Rules 6004, 6006, 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

38.     The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

39.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the APA, the Sale, implementation, interpretation and/or enforcement of this Order.

**Dated: May 27th, 2020**
**Wilmington, Delaware**

**CHRISTOPHER S. SONTCHI**
**UNITED STATES BANKRUPTCY JUDGE**

DOCS_SF:103420.9