**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| ART VAN FURNITURE, LLC, *et al.*,[1] | Case No. 20-10553 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline: July 22, 2020 at 4:00 p.m. (ET)**<br>**Hearing Date: To be determined** |

**MOTION OF CENTURYLINK COMMUNICATIONS, LLC TO COMPEL DEBTORS
TO ASSUME OR REJECT CONTRACTS AND FOR APPROVAL OF
ADMINISTRATIVE EXPENSE CLAIM OR, IN THE ALTERNATIVE, FOR RELIEF
FROM THE AUTOMATIC STAY**

CenturyLink Communications, LLC, including its parents, subsidiaries, and affiliates, including Level 3 Communications, LLC and Global Crossing Telecommunications, Inc., (collectively, "CenturyLink"), by and through its undersigned counsel, moves the Court to enter an order: (i) compelling Art Van Furniture, LLC and the jointly administered parties, including Sam Levin, Inc. (collectively, the "Debtors"), to assume or reject Debtors' agreements, telecommunications goods and services, and accounts with CenturyLink pursuant to section 365(d)(2) of 11 U.S.C §§ 101-1532 (the "Bankruptcy Code"); (ii) allowing and directing the immediate payment of its administrative expense claim under Bankruptcy Code Sections 503(b)(1)(A) and 365(d)(5); and/or (iii) in the alternative, for relief from the automatic stay pursuant to Bankruptcy Code Section 362(d). In support of this Motion, CenturyLink states as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463). The location of the Debtors' former headquarters was: 6500 East 14 Mile Road, Warren Michigan 48092.

## JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY
## TO ENTER A FINAL ORDER

1. This Court has jurisdiction over this matter and the parties hereto pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157. CenturyLink confirms its consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper in this District pursuant to 28 U.S.C. §§1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 362(d), 365(d)(5), and 503(b)(1)(A) of the Bankruptcy Code.

## FACTUAL BACKGROUND

4. The Debtors filed their voluntary petitions for relief under Chapter 11 of title 11 of the United States Code on March 8, 2020 (the "Petition Date"). Effective as of April 7, 2020, the Debtors' bankruptcy cases were converted to chapter 7 cases, and Alfred T. Giuliano was appointed as the chapter 7 trustee (the "Trustee"), who based upon information and belief continues to operate the Debtors in a potentially limited capacity.

5. Prior to the Petition Date, the Debtors and CenturyLink were parties to several agreements under which CenturyLink provided telecommunications goods and services to the Debtors (collectively, the "Agreements"), attached as **Exhibits A-1 and A-2** in the forms of true and correct copies, incorporated herein by reference.

6. The Debtors ceased paying CenturyLink prior to the Petition Date. These unpaid pre-petition amounts for telecommunications goods and services total $132,635.23 and are documented in CenturyLink's two proofs of claim filed in this case (the "Proofs of Claim"), attached as **Exhibit B** in the forms of true and correct copies, incorporated herein by reference.

7. Additionally, the Debtors have not terminated the Agreements. CenturyLink has provided $256,814.02 of post-petition telecommunications goods and services for which it has not been paid, $197,111.98 of which is overdue. CenturyLink continues to invoice these post-petition telecommunications goods and services in the ordinary course of business between the parties (the "Invoices"). Attached as **Exhibit C** are true and correct copies of the Invoices, incorporated herein by reference.

8. Debtors' continued use of the telecommunications goods and services, without paying the post-petition amounts owed in the regular contractually required intervals, places CenturyLink in the untenable position of not being able to collect payments due under the Agreements while Debtors reap the benefits of the Agreements at CenturyLink's expense.

9. On March 9, 2020, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Determining Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Providers From Altering, Refusing, or Discontinuing Utility Services, (III) Establishing Procedures For Determining Adequate Assurance of Payment, (IV) Requiring Utility Providers to Return Deposits for Utility Services No Longer In Use, and (V) Granting Related Relief* [Docket No. 8] (the "Utilities Motion"). The Debtor's Utilities Motion posited that, "Uninterrupted Utility Services are essential to the Debtors' ongoing business operations and, hence, the overall success of these chapter 11 cases," and that "[s]hould any Utility Provider refuse or discontinue service, even for a brief period, the Debtors' business operations would be

severely disrupted, and such disruption would jeopardize the Debtors' ability to administer their chapter 11 cases," including " negatively affect[ing] the Debtors' revenues," the Debtors listing CenturyLink on the Utility Providers List as follows:

| | | | | | |
|---|---|---|---|---|---|
| CENTURYLINK | Telephone | 313747599<br>450311769<br>416286027 | 11,208 | 5,604 | Levin / Wolf |
| CenturyLink | Telephone | 409424666 | 46 | 23 | Art Van |

10.     To the extent that any funds remain in the Adequate Assurance Account, earmarked for CenturyLink, CenturyLink respectfully requests that the Court disburse the funds to CenturyLink in payment of the post-petition unpaid amounts.

11.     On March 10, 2020, the Court entered the *Interim Order (I) Determining Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Providers From Altering, Refusing, or Discontinuing Utility Services, (III) Establishing Procedures For Determining Adequate Assurance of Payment, (IV) Requiring Utility Providers to Return Deposits for Utility Services No Longer In Use, and (V) Granting Related Relief* [Docket No. 76] (the "Utilities Order"), therein including CenturyLink on the Utility Providers List.

12.     Then, on May 26, 2020, the Court entered the *Order Extending Deadline to Assume or Reject Executory Contracts and Unexpired Leases Pursuant to Section 365(d)(1) of Bankruptcy Code, Through and Including August 31, 2010* [Docket No. 555] (the "365 Extension Order").

13.     Upon review of each the *Order Authorizing (I) Sale of Purchased Assets to Buyer Free and Clear of Liens, Claims, and Encumbrances and (II) Rejection of Certain Unexpired Leases of Nonresidential Real Property* [Docket No. 478], the *Order Approving (I) Sale of Purchased Assets to Levin Furniture, LLC and Levin Trucking, LLC Free and Clear of Liens, Claims, and Encumbrances; (II) Rejection of Certain Unexpired Leases of Nonresidential Real Property; (III) Assumption of Certain Assumed Contracts; and (IV) Granting Related Relief*

[Docket No. 573], and the *Order Granting Motion of Alfred T. Giuliano, Chapter 7 Trustee, to: (A) Approve Agreement with American Signature, Inc. Authorizing the Sale of Merchandise from Distribution Centers and Certain AVF Stores Free and Clear of All Liens, Claims, Encumbrances, and Interests; and (B) Granting Related Relief* [Docket No. 652], and the purchase agreements associated with each, none of the above overtly included CenturyLink Agreements for cure and assumption or cure, assumption, and assignment, signifying that the 11 U.S.C. § 363 purchasers do not need the CenturyLink Agreements or associated telecommunications goods and services.

14.     Since the Court entered the order converting the Debtors' cases to chapter 7, the Trustee has sought to reject the contracts of other parties not necessary to the administration of the Debtors' bankruptcy estates, including through the *First Omnibus Motion of Alfred T. Giuliano, Chapter 7 Trustee, For Entry of An Order: (A) Authorizing Rejection of Unexpired Leases of Personal Property and Executory Contracts, Nunc Pro Tunc to the Dates Specified Herein; and (B) Granting Related Relief* [Docket No. 593]. Ultimately, between the Trustee nearing the wind down of the Debtors' estates and none of the 11 U.S.C. § 363 purchasers needing CenturyLink Agreements and associated telecommunications goods and services, the Trustee no longer requires up to August 2020 to determine whether to terminate the CenturyLink agreements and the associated telecommunications goods and services. As such, the Debtors, through the Trustee, must now decide whether to cure and assume or reject the Agreements with CenturyLink, and the unpaid post-petition amounts owed to CenturyLink warrant administrative claim status if uncured.

**RELIEF REQUESTED**

15.     CenturyLink respectfully requests that the Court enter an Order:

(a) Directing the Debtors and Trustee to assume or reject the Agreements and respective telecommunications goods and services and accounts as soon as reasonably possible;

(b) In the event the Debtors and Trustee assume the Agreements and respective telecommunications goods and services, directing the Debtors and Trustee to cure all defaults upon assumption;

(c) In the event the Debtors and Trustee rejects the Agreements and respective telecommunications goods and services, directing the Debtors and Trustee to surrender CenturyLink's equipment, if any, within a time period established by the Court;

(d) Deeming any unpaid post-petition expenses an allowed administrative expense claim and directing the Debtor and Trustee to make immediate payment;

(e) Lifting the automatic stay to permit CenturyLink to enforce its rights and remedies under the Agreements including, but not limited to, terminating the Agreements and recovering its equipment, if any;

(f) Providing that any Order lifting the stay be effective immediately notwithstanding the provisions of rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and

(g) Granting such other and further relief as is just, equitable and proper.

**LEGAL AUTHORITIES IN SUPPORT OF THE RELIEF SOUGHT**

**A.   The Debtor Should Be Compelled to Assume or Reject the Agreements**

16. CenturyLink respectfully requests that the Court require the Debtors to assume or reject the Agreements as soon as reasonably possible.

17. Section 365(d)(2) provides that, at the request of any party to an executory agreement, the Court may order a debtor to assume or reject an agreement within a specified period of time. 11 U.S.C. § 365(d)(2).

18. To date, the Debtors have failed to assume or reject the Agreements and CenturyLink continues to suffer economic loss due to the Debtors' failure to make post-petition payments, despite the Debtors' assertions in the Utilities Motion that CenturyLink's telecommunications goods and services are vital to the administration of the estates.

19. In the event the Debtors elect to assume the Agreements, however, the Debtors must cure all pre-petition and post-petition defaults under the Agreements, pursuant to Section 365(b)(1). 11 U.S.C. § 365(b)(1).

20. CenturyLink further requests that, in the event the Debtors and Trustee elect to reject the Agreements, the Debtors and Trustee immediately and peacefully surrender CenturyLink's equipment, in the event that Debtors and Trustee are in the possession of any.

**B.    CenturyLink is Entitled to Immediate Payment for its Administrative Expenses Pursuant to 11 U.S.C. §§ 503(b)(1) and 365(d)(5)**

21. "In determining whether a claim is entitled to administrative status under section 503(b)(1)(A), courts apply a two-part test: '(1) there must be a post-petition transaction between the creditor and the debtor; and (2) the estate must receive a benefit from the transaction.'" *In re Goody's Family Clothing, Inc.*, 443 B.R. 5, 19 (Bankr. D. Del. 2010) (citation omitted).

22. Section 503(b)(1) is intended "to provide an incentive for creditors to continue doing business with a debtor and an incentive for others to engage in business transactions with the debtor." 4 *Collier on Bankruptcy*, 503.06[3][a] (16th ed. 2014). CenturyLink acted in accordance with the policies behind the statute and provided critical support to the Debtors.

23. Alternatively, 11 U.S.C. § 365(d)(5) requires the Debtors to "timely perform all of the obligations of the debtor, except those specified in Section 365(b)(2), first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property . . . until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title . . . ."

24. The telecommunications goods and services delivered by CenturyLink to the Debtors include dedicated access lines, ports, and dedicated internet access – personal property – among other types of potential personal property.

25. Courts recognize that analyses entitling Section 365(d)(3) claims to administrative claim treatment under Section 503(b) are applicable to Section 365(d)(5) claims as well. *In re Bella Logistics LLC*, 583 B.R. 674, 681, n.7 (Bankr. W.D. Tex. 2018) (persuasive).

26. A majority of courts, including the Second Circuit, interpret Section 365(d)(3) claims as obligating a debtor to perform all post-petition obligations under a lease, notwithstanding Section 503(b)(1), and automatically treat such claims as administrative expense claims. *In re BH S&B Holdings LLC*, 401 B.R. 96, 103–04 (Bankr. S.D.N.Y. 2009) (*citing* 3 *Collier on Bankruptcy*, 365.04[3][g][ii] (15th ed. rev. 2005)). "There is authority that lessors of non-consumer personal property can resort to either §§ 365(d)(5) or 503(b)(1) of the Bankruptcy Code to assert administrative claims against a debtor for lease payments due after the filing of a bankruptcy case." *In re Stone Barn Manhattan LLC*, 405 B.R. 68, 76 (Bankr. S.D.N.Y. 2009) (citations omitted).

27. Because the Debtors ultimately accepted the benefits of the pre-petition telecommunications goods and services and the respective Agreements post-petition, the expenses arose post-petition.

28. Further, there is no question that the telecommunications goods and services provided a necessary benefit to the Debtors in the operation of their business, as admitted in the Utilities Motion.

29. CenturyLink's executory Agreements with the Debtors fall within the bounds of 11 U.S.C. § 365(d)(5), further dictating that CenturyLink's unpaid post-petition amounts be awarded administrative claim status.

## C. In the Alternative, CenturyLink Requests Relief from the Automatic Stay to Terminate the Agreements

30. To the extent the Debtors and Trustee do not cure and assume the Agreements or pay for post-petition expenses, CenturyLink requests an order granting relief from the automatic stay under Bankruptcy Code Section 362(d)(1) to allow CenturyLink to terminate the Agreements, terminate the telecommunications goods and services, and recover its equipment, if any, that may be in the Debtors' or Trustee's possession.

31. Section 362(d)(1) requires that the stay be vacated "for cause, including the lack of adequate protection of an interest in property of such party in interest."

32. Cause exists to modify the automatic stay because of the Debtors' breach of the Agreements by failing to pay for post-petition telecommunications services, in addition to the fact that the Debtors are purportedly in the midst of nearing the wind up of operations.

33. In addition, further cause exists because CenturyLink continues to be obligated to provide future telecommunications goods and services despite the Debtors' failure to pay for those telecommunications goods and services, all while the Debtors purportedly continue or continued to use the telecommunications goods and services as a necessity in their operations.

34. As described in the Trustee's pleadings seeking rejection of various executory contracts, the Debtors will likely not be harmed by terminating the Agreements and

telecommunications goods and services accounts because the Debtors have indicated, at several points in the case, that they are concluding the termination of their operations and do not need the Agreements and telecommunications goods and services for purposes of cure and assumption or cure, assumption, and assignment to 11 U.S.C. § 363 purchasers.

35. Therefore, the Court should grant relief from the automatic stay to allow CenturyLink to recover the telecommunications goods, terminate the Agreements and respective accounts, and allow CenturyLink to collect the amounts owing from Debtors.

## RESERVATION OF RIGHTS

36. CenturyLink reserves all rights with respect to its administrative priority expense claim, including, but not limited to, the right to amend, update or supplement this Motion at any time and in any respect and to file additional proofs of claim. CenturyLink does not waive any claims against the Debtors or Trustee that may arise in these cases after the day of this Motion. To the extent applicable, CenturyLink reserves all rights of setoff and recoupment.

## NOTICE

37. Notice of this Motion will be provided to: (i) counsel to the Trustee; (ii) the Trustee; (iii) counsel to the ABL Lender; (iv) proposed counsel to the Debtors; (v) the Office of the United States Trustee for the District of Delaware; and (vi) all parties who have requested notice pursuant to Bankruptcy Rule 2002. In light of the relief requested, the Consultant submits that no further notice is required.

## CONCLUSION

WHEREFORE, CenturyLink respectfully requests that the Court enter an Order:

(a) Directing the Debtors and Trustee to assume or reject the Agreements and respective telecommunications goods and services and accounts as soon as reasonably possible;

(b) In the event the Debtors and Trustee assume the Agreements and respective telecommunications goods and services, directing the Debtors and Trustee to cure all defaults upon assumption;

(c) In the event the Debtors and Trustee rejects the Agreements and respective telecommunications goods and services, directing the Debtors and Trustee to surrender CenturyLink's equipment, if any, within a time period established by the Court;

(d) Deeming any unpaid post-petition expenses an allowed administrative expense claim and directing the Debtor and Trustee to make immediate payment;

(e) Lifting the automatic stay to permit CenturyLink to enforce its rights and remedies under the Agreements including, but not limited to, terminating the Agreements and recovering its equipment, if any;

(f) Providing that any Order lifting the stay be effective immediately notwithstanding the provisions of Bankruptcy Rule 4001(a)(3); and

(g) Granting such other and further relief as is just, equitable and proper.

Dated: July 8, 2020

**TROUTMAN PEPPER HAMILTON SANDERS, LLP**

/s/ *Henry J. Jaffe*
Henry Jaffe (DE Bar. No. 2987)
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: (302) 777-6500
Facsimile: (302) 421-8390
E-mail: Henry.Jaffe@Troutman.com

-and-

**Stinson LLP**
Lucas L. Schneider (CO I.D. #48125)
1050 17th Street, Suite 2400
Denver, CO 80265
Telephone: (303) 376-8414
E-mail: lucas.schneider@stinson.com

*Counsel for CenturyLink Communications, LLC*