# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | )  | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ART VAN FURNITURE, LLC, *et al.*,[1] | ) | Case No. 20-10553 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## OBJECTION OF ABL AGENT TO CERTAIN
## LANDLORD MOTIONS SEEKING ALLOWANCE OF ADMINISTRATIVE RENT

Wells Fargo Bank, National Association, as administrative agent, issuing bank, collateral agent and lender under the Debtors' Prepetition ABL Credit Facility (the "ABL Agent") objects to fifteen pending motions [Dkt. Nos. 345, 471, 549, 606, 678, 687, 762, 764, 768, 771, 773, 774, 775, 776, 777] seeking allowance and payment of "administrative rent."[2]

### Background

1. On March 8, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, with a view to winding down operations. The original plan was to sell 44 stores and two distribution centers to Robert Levin as going concerns (the "Levin-Wolf Sale"), and to liquidate inventory at the remaining stores through going-out-of-business sales ("GOB Sales"). Ladd Decl. at ¶ 6. The Debtors expected that these transactions would pay down the Prepetition ABL Credit Facility within weeks of the filing and before April.

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463). The location of the Debtors' service address in these chapter 11 cases is: 6500 East 14 Mile Road, Warren Michigan 48092.

[2] Capitalized terms not otherwise defined in this objection are defined in the *Declaration of David Ladd, Executive Vice President and Chief Financial Officer of Art Van Furniture, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Dkt. No. 12] ("Ladd Declaration").

2. Over the course of February, the COVID-19 virus swept through the population, and within days of the filings, struck the nation with geometric force. The pandemic profoundly changed the course of commercial life in America and in these cases. Shut-down or shelter-in-place orders soon entered in each state in which the Debtors do business. The Debtors' proactively (and without notice to the ABL Lender) elected to shutter all of their stores ceasing the GOB sales and operations indefinitely, depriving the Debtors (and the ABL Lender) of almost all value in the leases, and any effective use of the leased premises other than as inventory warehouses.

3. By mid-March, the Levin-Wolf Sale fell apart. The GOB Sales were abandoned. Facing a dramatic new landscape, the Debtors moved to convert, and these cases were converted to chapter 7 cases on April 7, 2020 (the "Conversion Date").

4. Twenty days later, the Court extended to June 6, 2020 the time for the Trustee to perform any obligations of the Debtors under any unexpired lease of nonresidential real property– 60 days from the Conversion Date. *See Order Granting Motion of the Chapter 7 Trustee for an Order Extending the Time for Performance of Any Obligations of the Debtors Under Any Unexpired Lease of Nonresidential Real Property Pursuant to Section 365(d)(3) of the Bankruptcy Code* [Dkt. No. 373].

5. The extension gave the Trustee breathing room to develop a plan to liquidate the Debtors' assets for the benefit of all creditors. After negotiating with the ABL Agent and other stakeholders to mitigate the devastating impact of the pandemic, the Trustee consummated several major inventory sales or consignments (the "Sales"), but at a fraction of the value that was anticipated from the GOB Sales. These Sales were the result of a cooperative, thoughtful process that included (a) short-term storage at the Debtors' leased properties and negotiations with landlords for those properties (including the distribution centers); (b) a marketing and negotiating

process with prospective buyers; (c) negotiations of asset purchase agreements with the successful buyers; and (d) obtaining Court approval, often on an extremely expedited basis, of the Sales. The goal throughout was to mitigate the incurrence of further administrative claims.

6. As Sales were consummated, the parties moved to reject unexpired leases and surrender the space previously used to warehouse the Debtors' inventory.[3] On June 30, 2020, the Trustee filed the *First Omnibus Motion for Entry of an Order Authorizing Alfred T. Guiliano, Chapter 7 Trustee (A) To Reject Certain Unexpired Non-residential Real Property Leases Pursuant to 11 U.S.C. 365, Effective Nunc Pro Tunc to the Rejection Date, (B) Abandon Any Remaining Personal Property Located at the Leased Premises, and (C) Fixing a Bar Date for Claims of Landlords* [Dkt. No. 719] (the "Omnibus Lease Rejection Motion") seeking to reject 16 unexpired leases, effective June 30, 2020. Where landlords reached out with options to relet the premises, the Trustee and the ABL Lender worked to prioritize and vacate those locations. The Trustee is expected to move swiftly to reject the remaining leases in the near term.

7. Despite the enormous progress made in these cases, fifteen landlords have now moved (collectively, the "Motions") for allowance and immediate payment of administrative rent. Citing sections 365(d) and 503(b) of the Bankruptcy Code, the Motions seek approximately $8.8 million in administrative expense payments ahead of all other stakeholders:

- A&R Properties, L.P. [Dkt. No. 354] seeks allowance and payment of $158,300.00 in post-petition administrative expenses for use of leased premises located in Ohio and Pennsylvania through April 2020.

- Samalex Trust [Dkt. No. 471] seeks allowance and payment of $37,556.36 in post-petition rent for use of administrative expenses located in Pennsylvania through May 27, 2020.

---

[3] To date, the Trustee has rejected 15 leases by entering into stipulations or by submission of agreed orders with the consent of the Debtors' landlords. *See* e.g. Dkt. Nos. 389, 623, 660, 715, 720, 728.

Case 20-10553-CSS    Doc 799    Filed 07/17/20    Page 4 of 11

- Walnut Capital Partners – Cranberry South, L.P. [Dkt. No. 549] seeks allowance and payment of $53,945.50 in post-petition administrative expenses for use of leased premises located in Pennsylvania through June 2020.

- L&Y Properties - Solon, LLC [Dkt No. 606] seeks allowance and payment of $39,998.24 in post-petition administrative expenses for use of leased premises located in Ohio through June 2020.

- SVAP II Pasadena Crossroads, LLC [Dkt. No. 678] seeks allowance and payment of $167,719.12 in post-petition administrative expenses for use of leased premises located in Maryland through June 2020.

- ECHO Strongsville, LLC [Dkt. No. 687] seeks allowance and payment of $62,055.14 in post-petition administrative expenses for use of leased premises located in Ohio through June 2020.

- CBL/Westmoreland, L.P. [Dkt No. 762] seeks allowance and payment of $107,013.52 in post-petition administrative expenses for use of leased premises located in Pennsylvania through June 2020.

- Broadstone AVF Michigan, LLC and Broadstone AVF Illinois, LLC [Dkt. No. 764] seeks allowance and payment of $2,913,253.70 in post-petition administrative expenses for use of leased premises located in Michigan and Illinois, accrued interest, late fees and attorneys' fees through June 2020.

- LCN AVF Warren(MI) LLC and LCN Capital Partners, LLC [Dkt No. 768] seeks allowance and payment of $2,927,609.36 in post-petition administrative expenses for use of leased premises located in Michigan through June 2020.

- Batavia Randall, LLC [Dkt. No. 771] seeks allowance and payment of $224,811.63 in post-petition administrative expenses for use of leased premises located in Illinois through July and reimbursement of a mechanic's lien.

- Gateway Fairview, Inc. [Dkt. No. 773] seeks allowance and payment of $344,177.34 in post-petition administrative expenses for use of leased premises located in Illinois, accrued interest and attorneys' fees through July 2020.

- Acadia Merrillville Realty, LP [Dkt. No. 774] seeks allowance and payment of $326,735.11 in post-petition administrative expenses for use of leased premises located in Indiana, accrued interest and attorneys' fees through July 2020.

- Brixmor Heritage Square LLC [Dkt. No. 775] seeks allowance and payment of $1,333,078.32 in post-petition administrative expenses for use of leased premises located in Illinois through July and reimbursement of mechanic's liens.

- Brixmor Holdings 1 SPE, LLC [Dkt. No. 776] seeks allowance and payment of $6,146.95 in post-petition administrative expenses for use of leased premises located in Michigan through March.

- Wolf Furniture Enterprises, Inc. // Frederick BLICO LLP [Dkt. No. 777] seeks allowance and payment of $131,291.43 in post-petition administrative expenses for use of leased premises located in Maryland through May 11, 2020.

8. Eleven Landlords neither authenticate nor even attach the claimed lease. *See* Dkt. Nos. 345, 471, 687, 762, 764, 768, 773, 774, 775, 776, 777. Unauthenticated leases that are attached appear to contain both covenants by the Landlord to protect the Debtor's quiet enjoyment of the leased premises – a quiet enjoyment that has been shattered by the pandemic – and force majeure clauses. *See, e.g.,* Dkt. No. 549, Ex. A at 29, 30 (Walnut Capital Partners – Cranberry South, L.P. Motion), Dkt. No. 606, Ex. A at 25, 27 (L&Y Properties - Solon, LLC Motion), Dkt. No. 678 at 35-36 (SVAP II Pasadena Crossroads, LLC Motion), Dkt. No. 606, Ex. A at 25, 27 (L&Y Properties - Solon, LLC Motion), Dkt. No. 771, Ex. A at 8 (Batavia Randall, LLC Motion).

9. According to accounts receivable statements (the "AR Statements," also unauthenticated) stapled to a number of Motions,[4] the Landlords' administrative expense claims are not limited to contract rent calculated under the lease, but add amounts for insurance, common area charges, real property taxes, association fees, late fees, interest, attorneys' fees and reimbursement for mechanic's liens paid off by the Landlords. These amounts and the amount of the contract rent outstanding have yet to be reconciled.

10. No Motion includes a declaration authenticating relevant information or otherwise establishing an admissible record.

---

[4] All but four Motions included AR statements, varying in level of detail, in support of the Landlords' asserted administrative expense claims. *See* Dkt. Nos. 345, 471, 687, 768.

11. As of the filing of this Objection, the Trustee has not yet filed a response to the Motions.

### Argument

#### I. Standard of Review.

12. Whether and in what amount to allow, and how to characterize a landlord's rent claim presents questions of both law and fact. Facts "must [be] analyzed [by] the evidence submitted and determine[d], on a case by case basis." *In re Sportsman's Warehouse, Inc.*, 436 B.R. 308, 310 (Bankr. D. Del. 2009). The Landlords "bear[] the burden of proof to establish [their] claim is for an actual and necessary expense." *Id.* at 312*; In re WCI Communities, Inc.* 2010 WL 3523061, at *4 (Bankr. D. Del. Sep. 2, 2010); *see In re Goody's Family Clothing, Inc.*, 610 F.3d 812, 817 (3d Cir. 2010)). Should the Landlords fail to meet their burden of proof, the asserted expenses are general unsecured claims.

#### II. Grounds For Denial of the Motions.

**A. The Current Record is Inadequate, and the Time Premature for Review of Landlord Claims.**

13. The Motions should be denied without prejudice. None presents an authenticated factual record, and all may be denied on that basis alone.

14. All are premature. Because all of the leases will be rejected and the leased premises will be surrendered as soon as the inventories are liquidated, classification and quantification of the claims will be most efficiently resolved once that process is completed. So far as the record shows, the Landlords have no immediate ability to relet leased premises or put them to other commercial use. Addressing any unsettled claims upon surrender will serve judicial economy, cause the Landlords no material harm, and allow the disputes to be addressed once the estate has received consideration from the Sales.

15. The current record is also inadequate to support any relief. As *Sportsman's Warehouse* and *WCI Communities* hold, the Landlords' best case will be if they can carry a burden – as yet unmet – to show the extent to which the use of the leased premises (effectively, as warehouses) actually benefited the estates. But that is simply their best case. The Debtors may have complete defenses – at least as to certain leases and certain periods -- to the allowance of any claim, based on *force majeure* clauses and the apparent breaches by the Landlords of their respective covenants of quiet enjoyment.

16. As to quantification of claims, the contracted lease rates were established for the use of the premises as thriving commercial spaces. The Landlords have not shown (and certainly will not be able to show) that these rates represent the value conferred on the estates during the first and second quarters of 2020 for warehousing in the respective communities. Nor have the Landlords addressed how common area charges benefitted the estates when stores and shopping centers were shuttered by local government order. Landlord claims asserting interest, late fees, attorneys' fees and reimbursement of mechanic's liens, offer no evidence that such expenses represent actual, necessary expenses that benefit the Debtors' estate or are even allowable under the Bankruptcy Code.

17. Deferring consideration of the Motions until the evidentiary record is complete is consistent with the prior decisions of this Court and courts in other districts. *See Sportsman's Warehouse*, 436 B.R. at 315; *In re New Almacs, Inc.*, 196 B.R. 244, 250 (Bankr. N.D.N.Y. 1996) (finding that the court has "a certain amount of discretion with respect to the timing of the payments in these situations"). The Trustee must be given an opportunity to contest the characterization of these claims as administrative, their validity under the pandemic, and their quantification.

18. Thus the Motions should be denied without prejudice or deferred for evidentiary hearings. *In re DBSI, Inc.*, 407 B.R. 159, 165 (Bankr. D. Del. 2009) (citing *In re Continental Airlines, Inc.*, 146 B.R. 520, 526-27 (Bankr. D. Del. 1992) (ruling that an evidentiary hearing would be necessary to determine allowance of administrative claim under section 503(b)(1))); *Sportsman's Warehouse*, 436 B.R. at 315 (holding that where the amount of benefit to the estate is disputed, resolution of that dispute requires a further hearing).

    **B.    The Trustee's Use of Leased Premises Does Not Automatically Entitle the Landlords to Administrative Treatment.**

19. Section 365(d) sets out rules, applicable in the ordinary course and the great run of cases, for the timing of assumption and rejection decisions. It does not supplant section 503's requirements for administrative priority. *See Goody's Family Clothing Inc.*, 610 F.3d at 816. A debtor's failure to perform under section 365(d)(3) does not result in the automatic allowance of an administrative claim. *DBSI,* 407 B.R. at 164 (citing *In re Mr. Gatti's*, 164 B.R. 929, 946 (Bankr. W.D. Tex. 1994)). Rather, the appropriate remedy is to cause the debtor or the trustee to reject the defaulted lease in a timely fashioned manner. *Id*. The purpose of section 365(d)(3) is to provide relief to landlords in securing rent payments from non-occupying debtors. *Goody's Family Clothing Inc.*, 610 F.3d at 818 (citing *CenterPoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 210-11 (3d Cir. 2001)). Where the debtor is still occupying the leased premises, requirements under section 503(b)(1) must be met. *In re Goody's Family Clothing, Inc.*, 392 B.R. 604, 607 (Bankr. D. Del. 2008), *aff'd*, 610 F.3d 812 (3d Cir. 2010), shows that the concepts of timing and status are distinct. "An administrative expense claim under section 503(b)(1) for post-petition rent, however, need not be timely paid under section 365(d)(3). Rather, the timing of the payment is in the Court's discretion."

20. "For a commercial lessor's claim to get administrative expense treatment under 503(b)(1), the debtor's occupancy of the leased premises must confer an actual and necessary benefit to the debtor in the operation of the business . . . Proving this is the lessor's burden". *WCI Communities, Inc*. 2010 WL 3523061, at *4. The Landlords must prove that their claims are "for an actual and necessary expense." *Goody's Family Clothing,* 392 B.R. at 607 (holding that mere occupancy is not sufficient to demonstrate a benefit to the estate, and therefore the Court must consider the evidentiary record before it). Should the Landlords fail to meet their burden of proof, any otherwise allowable claim is a general unsecured claim. *DBSI, Inc.*, 407 B.R. at 165 (citing *Continental Airlines, Inc.*, 146 B.R. at 526-27).

21. Section 105(a) of the Bankruptcy Code permits the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. *See, e.g., Adelphia Bus. Solutions, Inc. v. Abnos*, 482 F.3d 602, 609 (2d Cir. 2007) ("Section 105(a) grants broad equitable power to the bankruptcy courts to carry out the provisions of the Bankruptcy Code so long as that power is exercised within the confines of the Bankruptcy Code"). Bankruptcy Courts often rely on section 105 for the authority to protect and effectively administer estate assets. *See* 2 Collier on Bankruptcy ¶ 105.02 (16th ed. 2020) ("[Section 105] has also been used as the basis for staying actions by third parties against avoiding powers actions prior to the time the estate decides to pursue or abandon them."); *see also Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank and Trust Co. of Chicago (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 436 (S.D.N.Y. 1993) ("In order to allow the Trustee to assert actions which are property of the debtor's estate for the benefit of the estate as a whole, other claimants may be prohibited by the Bankruptcy Court from pursuing such actions under 11 U.S.C. § 105(a)."), aff'd, 17 F.3d 600 (2d Cir. 1994).

C.  **The "Obligations of the Debtor" Have Not Been Established.**

22.  Section 365(d)(3) provides only that "the obligations of the debtor" should be timely performed. Under the unique circumstances of the pandemic, where the Debtors have been unable to enjoy the use and benefit of the leased premises, those obligations remain unclear. They may be excused altogether by the failure of the Landlords to provide quiet enjoyment of the premises, or by force majeure clauses, or both.[5]

D.  **No Payment Order Should Enter.**

23.  The Motions seek orders directing immediate payment. The Trustee currently has no unencumbered funds with which to make such payments, as all of the Debtors' cash is collateral of the ABL Lender. The ABL Lender does not consent to use of such cash to pay the disputed rental obligations and, as the Court is aware, has thus far forgone its own previously Court approved pay-downs under the various cash collateral orders at the request of the Trustee to provide the Trustee with sufficient liquidity and time to ascertain and execute on the best possible option for all stakeholders in this case. The Court should not derail those efforts now by ordering the Debtors to do the impossible.

## Conclusion

For the forgoing reasons, the ABL Agent requests that the Court deny the Motions without prejudice, or in the alternative defer review until the dispositions of inventory and surrender of the premises are substantially complete, and grant such other and further relief as the Court deems just and proper.

---

[5] Arguments seeking to limit quiet enjoyment covenants to circumstances where the Landlord itself disturbs quiet enjoyment would render those covenants illusory, since the essence of the landlord/tenant relationship is that the Landlord has agreed to furnish the space in the first place. So too with arguments that the tenant's rights depend on payment of the rent. Rent is consideration for that quiet enjoyment. The current record does not enable review of the significant problems with the Landlords' contractual theories.

### Reservation of Rights

The ABL Agent reserves the right to supplement this Objection in connection with any hearing thereon, and pre- or post-hearing supplemental briefing that may be requested by the Court in connection therewith. The ABL Agent further reserves any and all rights under the Bankruptcy Code or applicable non-bankruptcy law, as the case may be.

| | |
|---|---|
| Dated: July 17, 2020<br>Wilmington, Delaware | **BURR & FORMAN LLP**<br><br> /s/ J. Cory Falgowski <br>J. Cory Falgowski (DE No. 4546)<br>1201 N. Market Street, Suite 1407<br>Wilmington, DE 19801<br>Telephone: (302) 830-2312<br>Facsimile: (302) 397-2566<br>Email: jfalgowski@burr.com<br><br>and<br><br>**MORGAN, LEWIS & BOCKIUS**<br>P. Sabin Willett<br>Christopher L. Carter (admitted *pro hac vice*)<br>One Federal Street<br>Boston, MA 02110<br>Telephone: (617) 951-8000<br>Facsimile: (617) 951-8736<br>Email: sabin.willett@morganlewis.com<br>　　　　christopher.carter@morganlewis.com<br><br>and<br><br>Jennifer Feldsher (admitted *pro hac vice*)<br>101 Park Avenue<br>New York, NY 10178<br>Telephone: (212) 309-6017<br>Facsimile: (212) 309-6001<br>Email: jennifer.feldsher@morganlewis.com<br><br>*Counsel to Wells Fargo Bank, National Association, in its capacity as ABL Agent* |