# EXHIBIT 1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ART VAN FURNITURE, LLC et al[1] | ) | Case No. 20-10553 (CSS) |
| | ) | |
| | ) | (Jointly Administered ) |
| Debtors. | ) | |
| | ) | |
| | ) | |
| | ) | |

## DECLARATION OF JAY STEINBACK IN SUPPORT OF MOTION OF O'FALLON-MISSOURI PROPERTIES, LLC FOR ADMINISTRATIVE EXPENSE CLAIM UNDER 503(b)(1)(A)

Pursuant to 28 U.S.C. § 1746, I, Jay Steinback, submit this Declaration under penalty of perjury under the laws of the United States of America, and state as follows:

1.      I am the managing member of O'Fallon-Missouri Properties, LLC. (the "Landlord"). I am familiar with the facts described herein.

2.      I submit this declaration in support of the Landlords' Motion for Administrative Expense Claim (the "Motion").

3.      Attached hereto as **Exhibit A** is a true and correct copy of the Lease executed between the Debtor as tenant and Landlord O'Fallon-Missouri Properties, LLC as landlord.

4.      Debtor and Trustee vacated the premises subject to the Lease on or about May 12, 2020. Debtor and Trustee used said premises from the filing date of the bankruptcy petition until on or about May 12, 2020 to store and protect assets of the Debtor including, but not limited to, equipment, furniture and other assets of the Debtor. Ultimately said assets of the Debtor were

---

[1]The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, where applicable are: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); Comfort Mattress, LLC (4463).

removed on or about May 12, 2020 and presumably liquidated shortly thereafter.  The Bankruptcy Trustee refused to surrender the premises before May 12, 2020 and the Debtor and Trustee used the premises until that date even though their representatives indicated that such premises would be vacated and the assets removed before that time.

5.      I have received no rent or other payments due on the Lease reflected on Exhibit 1 since Debtor has filed this bankruptcy proceeding.

6.      The amount of rent due under the Lease with Debtor from between March 9 and May 12, 2020 totals $108,199.68 calculated as follows: $88,680.96 for rent and $19,518.72 for taxes, all of which were required to be paid by Debtor under the Lease.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on August 13, 2020                    */s/ Jay Steinback*
_____
                                               Jay Steinback

1868985v1

# EXHIBIT A



Execution Version– O'Fallon

# LEASE AGREEMENT

**O'Fallon Missouri Properties, LLC**

## LANDLORD

and

**Art Van Furniture, LLC**

**Trade Name: Art Van Furniture**

## TENANT

For

**2101 East Terra Lane**

**O'Fallon, Missouri**

## LOCATION

Date of Lease: _____

Execution Version–O'Fallon

## TABLE OF CONTENTS

ARTICLE I:  BASIC LEASE PROVISIONS AND DEFINITIONS ..............................................................1
    Section 1.01.  Basic Lease Provisions and Definitions. ..............................................................1

ARTICLE II:  DEMISED PREMISES..............................................................................................................3
    Section 2.01. Demised Premises. ..............................................................................................3
    Section 2.02.  Surrender of the Demised Premises. ..................................................................3

ARTICLE III:  TERM OF LEASE....................................................................................................................4
    Section 3.01.  Lease Term. ..........................................................................................................4
    Section 3.02.  Commencement of Lease Term. ..........................................................................4
    Section 3.03.  Holding Over. ........................................................................................................4
    Section 3.04.  Option to Extend the Lease Term. ......................................................................4

ARTICLE IV:  RENT........................................................................................................................................4
    Section 4.01.  Minimum Annual Rent. ........................................................................................4
    Section 4.02.  Additional Rent. ....................................................................................................4

ARTICLE V:  USE OF THE DEMISED PREMISES......................................................................................5
    Section 5.01.  Use of the Demised Premises..............................................................................5
    Section 5.02.  Rules and Regulations. ........................................................................................5
    Section 5.03.  Quiet Enjoyment. ..................................................................................................6
    Section 5.04.  Environmental........................................................................................................6

ARTICLE VI:  TENANT'S CONSTRUCTION AND MAINTENANCE ..........................................................7
    Section 6.01.  Tenant's Installations and Alterations..................................................................7
    Section 6.02.  Signs, Awnings and Canopies.............................................................................7
    Section 6.03.  Laws, Waste or Nuisance.....................................................................................7

ARTICLE VII:  MAINTENANCE OF BUILDING; ACCESS TO DEMISED PREMISES..............................8
    Section 7.01.  Landlord Responsibilities.....................................................................................8
    Section 7.02.  Tenant Responsibilities. ......................................................................................8

ARTICLE VIII:  REAL ESTATE TAXES .......................................................................................................9
    Section 8.01.  Real Estate Taxes. ...............................................................................................9

ARTICLE IX:  UTILITIES................................................................................................................................9
    Section 9.01.  Utilities & Trash Removal. ...................................................................................9

ARTICLE X:  ASSIGNMENT; SUBLEASE.................................................................................................10
    Section 10.01.  Assignment or Subletting.................................................................................10

ARTICLE XI:  NOTICES...............................................................................................................................10
    Section 11.01.  Notices...............................................................................................................10

ARTICLE XII:  INDEMNITY; PROPERTY AND LIABILITY INSURANCE................................................10
    Section 12.01.  Indemnity. ..........................................................................................................10
    Section 12.02.  Insurance............................................................................................................10
    Section 12.03.  Waiver of Subrogation. ....................................................................................11
    Section 12.04.  Insured's Release...............................................................................................11

ARTICLE XIII:  LIABILITY ..........................................................................................................................11
    Section 13.01.  No Partnership...................................................................................................11
    Section 13.02.  Successors.........................................................................................................11
    Section 13.03.  Waiver................................................................................................................11

Section 13.04.  Consent Clause. ....................................................................................................11

**ARTICLE XIV:  DAMAGE CLAUSE** ...................................................................................................**11**

Section 14.01.  Destruction. ...........................................................................................................11

**ARTICLE XV:  CONDEMNATION** ......................................................................................................**12**

Section 15.01.  Condemnation. ......................................................................................................12

**ARTICLE XVI:  PRIORITY OF LEASE** ..............................................................................................**12**

Section 16.01.  Subordination and Attornment.............................................................................12

Section 16.02.  Estoppel.................................................................................................................13

Section 16.03.  Recording. .............................................................................................................13

**ARTICLE XVII:  DEFAULT AND REMEDIES**......................................................................................**13**

Section 17.01.  Tenant Default. ......................................................................................................13

Section 17.02.  Landlord's Remedies.............................................................................................14

Section 17.03.  Landlord Default. ...................................................................................................14

Section 17.04.  Tenant's Remedies................................................................................................14

Section 17.05.  Legal Fees. ............................................................................................................15

**ARTICLE XVIII:  MISCELLANEOUS PROVISIONS** ..........................................................................**15**

Section 18.01.  Tenant Defined; Use of Pronoun..........................................................................15

Section 18.02.  Delivery of Lease...................................................................................................15

Section 18.03.  Entire Agreement...................................................................................................15

Section 18.04.  Partial Invalidity. ...................................................................................................15

Section 18.05.  Applicable Law. .....................................................................................................15

Section 18.06.  Rules of Construction. ..........................................................................................15

Section 18.07.  Brokerage Commission. ........................................................................................15

Section 18.08.  Force Majeure. ......................................................................................................15

Section 18.09.  Bankruptcy or Insolvency of Tenant. ...................................................................16

Section 18.10.  Confidentiality. ......................................................................................................16

Section 18.11.  Landlord's Obligation To Cooperate With Tenant. ...............................................16

Section 18.12.  Determination Of Days. .........................................................................................16

Section 18.13.  Claims Limitation. ..................................................................................................16

Section 18.14.  Compliance with Anti-Terrorism, Embargo, Sanctions & Anti-Money Laundering Laws.16

Section 18.15.  Tenant Contingencies............................................................................................16

**EXHIBIT A: DEMISED PREMISES**....................................................................................................**19**

**EXHIBIT A-1:  LEGAL DESCRIPTION**...............................................................................................**20**

**EXHIBIT B:  SIGN SPECIFICATIONS**................................................................................................**21**

**EXHIBIT C: ESTOPPEL**....................................................................................................................**22**

**EXHIBIT D: SUBORDINATION AND NON-DISTURBANCE AGREEMENT**.......................................**24**

**EXHIBIT E:  MEMORANDUM OF LEASE**..........................................................................................**27**

**EXHIBIT F:  RULES AND REGULATIONS AND RESTRICTED USES**..............................................**31**

**EXHIBIT G:  RENEWAL OPTION RENT SCHEDULE**.......................................................................**32**

Execution Version– O'Fallon

This lease (the "Lease") is made and entered into the date set forth below by and between O'Fallon Missouri Properties, LLC, a Missouri limited liability company, herein called "Landlord," and **ART VAN FURNITURE, LLC**, a Delaware limited liability company, herein called "Tenant" and doing business as **Art Van Furniture.**

In consideration of the mutual covenants contained herein, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, Landlord and Tenant, intending to be legally bound hereby, agree with each other as follows:

# ARTICLE I:  BASIC LEASE PROVISIONS AND DEFINITIONS

**Section 1.01.  Basic Lease Provisions and Definitions.**

Wherever used in this Lease, the following terms shall have the meanings indicated.  Each reference in this Lease to any of the Basic Lease Provisions in this Section 1.01 shall be deemed and construed to incorporate all of the terms provided under such Basic Lease Provision, provided that the Basic Lease Provisions shall be controlled by the specific terms and provisions of this Lease relating to the subject matter of the Basic Lease Provision.

**A. Demised Premises:**

**Demised Premises or Premises**
(See Section 2.01):   Approximately 44,390 square feet dedicated to Store space ("Store Space") and as 124,005 square feet dedicated to Warehouse space ("Warehouse Space"), totaling 168,395 square feet (collectively known as "Demised Premises") as depicted on Exhibit A.

**Address of Demised Premises:**   2101 East Tara Lane, O'Fallon, MO 63366

**B. Lease Term:**

**Lease Term**
(See Section 3.01):   60 months

**Lease Year:**   Each consecutive period of twelve months during the Term commencing on the Lease Commencement Date.

**Commencement Date**:   January 15, 2019

**Expiration Date:**   December 31, 2023, unless sooner terminated as otherwise provided

**Renewal Option**
(See Section 3.04):   **Four (4)** Renewal Option Term(s) of **sixty (60)** months each

**C. Rent**

**Minimum Annual Rent**
(See Section 4.01):   A base monthly rent during the Lease Term shall be as follows:

| | Store (44,390 sf) | Warehouse (124,005 sf) | Total Annual Base Rent (168,395 sf) | Monthly Base Rent |
|---|---|---|---|---|
| Lease Year 1 | $381,754.00 | $124,005.00 | $505,759.00 | $42,146.58 |
| Lease Year 2 | $381,754.00 | $124,005.00 | $505,759.00 | $42,146.58 |
| Lease Year 3 | $381,754.00 | $124,005.00 | $505,759.00 | $42,146.58 |
| Lease Year 4 | $381,754.00 | $124,005.00 | $505,759.00 | $42,146.58 |
| Lease Year 5 | $381,754.00 | $124,005.00 | $505,759.00 | $42,146.58 |

**Renewal Option Term Minimum Annual Rent:**   See Exhibit G—Renewal Option Rent Schedule.

**Additional Rent**
(See Section 4.02):   Throughout all terms of the Lease the Tenant shall pay as additional rent all amounts listed in Section 4.02.

**D. Permitted Use**

**Permitted Store Use**
(See Section 5.01(a)):   Tenant shall use Store Space as retail store for the sale of furniture, bedding, mattresses, or home furnishings provided such retail use is not in conflict with (i) any applicable zoning ordinances, or (ii) the exclusive uses and prohibited uses set forth on the attached Exhibit H "Restricted Uses," attached hereto and made a part hereof.

**Permitted Warehouse Use**
(See Section 5.01(b)):   Tenant shall use Warehouse Space for general office purposes, warehouse, and distribution use related to Tenant's retail operation provided such use is not in conflict with (i) any applicable zoning ordinances, or (ii) the exclusive uses and prohibited uses set forth on the attached Exhibit H "Restricted Uses," attached hereto and made a part hereof.

**E.  Landlord and Tenant Notice:**

| | |
|---|---|
| **Landlord's Address for Notices:** | **O'Fallon Missouri Properties, LLC**<br>45 Colonial Hills Drive,<br>St. Louis, Missouri 63141<br>Attn: Jay Steinback, Manager<br>Phone: 636-978-3500<br>Facsimile: 636-284-3096<br>Email: |
| | cc: |
| | Danna McKitrick, P.C.<br>7701 Forsyth Blvd., Suite 800<br>St. Louis, Missouri 63105<br>Attn: Daniel Fort<br>Phone: 314-889-7177<br>Email: dfort@DMFIRM.com |
| | Greensfelder, Hemker, & Gale, P.C.<br>10 South Broadway, Suite 2000<br>St. Louis, Missouri 63102<br>Attn: Patrick Sweeney<br>Phone: 314-345-4794<br>Email: pjs@greensfelder.com |
| **Landlord's Address for Rent Payments:** | **O'Fallon Missouri Properties, LLC**<br>45 Colonial Hills Drive,<br>St. Louis, Missouri 63141<br>Attn: Jay Steinback, Manager<br>Phone: 636-978-3500<br>Facsimile: 636-284-3096<br>Email: |
| **Tenant Name:** | ART VAN FURNITURE, LLC |
| **Trade Name**<br>(See Section 5.01): | **Art Van Furniture**<br>and such other trade name adopted by Tenant or its Affiliates |
| **Tenant's Notice Address:** | Attn: Lease Administration<br>6500 E. Fourteen Mile Road<br>Warren, Michigan 48092<br>Phone: (586) 939-0800<br>Facsimile: (586) 983-3029 |
| **Tenant's Billing Address:** | Attn: Accounting<br>6500 E. Fourteen Mile Road<br>Warren, Michigan 48092<br>Phone: (586) 939-0800<br>Facsimile: (586) 983-3029 |

1

# ARTICLE II:  DEMISED PREMISES

**Section 2.01. Demised Premises.**

Landlord represents and warrants to Tenant that, as of the Lease Date and as of the Lease Commencement Date: (a) Landlord is and shall be the fee owner of the Demised Premises more particularly described on Exhibit A hereto, commonly known as 2101 East Terra Lane, O'Fallon, Missouri; comprising of approximately 168,395 square feet ("Floor Area"), the term "Floor Area" as used in this Lease shall mean and include all areas for the exclusive use and occupancy by Tenant, measured from the exterior surface of the Demised Premises' exterior walls and from the center of interior demising partitions, and shall include, but not be limited to, restrooms, mezzanines, warehousing or storage areas, clerical or office areas and employees areas within the tenant's premises; Floor Area shall not include areas within the Demised Premises for mechanical systems and similar uses that do not exclusively serve the Demised Premises, of the 168,395 square feet of Floor Area, approximately 44,390 square feet shall be dedicated to Store Space; approximately 124,005 square feet shall be dedicated to Warehouse Space, (b) the Demised Premises and Tenant's Use are in full compliance with all applicable "Laws" (as herein after defined), including without limitation, zoning ordinances, the Americans With Disabilities Act of 1990 (42 U.S.C. § 1201 et seq.), as amended and supplemented from time to time (the "ADA") and "Environmental Laws" (as defined in Section 5.04 of this Lease) and will not violate any recorded use restrictions affecting the Demised Premises; (c) the "Building Systems" (as herein defined) are and shall be in good working condition and (d) the Demised Premises are zoned and such zoning district permits, as a matter of right, Tenant's Use. Prior to the Lease Commencement Date, Landlord will furnish to Tenant evidence of Landlord's title to the Demised Premises in the form of a copy of a recent title policy or commitment, together with copies of all title exceptions identified thereon. Landlord shall at all times during the Term maintain at least the minimum parking ratio for the Demised Premises required by applicable Laws (without variance or exceptions therefrom).

If any title matter, would prohibit Tenant's use of the Demised Premises for a retail store for the sale of furniture, bedding, mattresses, or home furnishings, storage of inventory related to Tenant's retail operations, or otherwise materially affect Tenant's rights under this Lease (a "Title Objection"), then Tenant may terminate this Lease by written notice to Landlord without waiver of any of Tenant's other remedies at law or in equity, prior to the Lease Commencement Date.

In consideration of the mutual promises, covenants, and agreements herein contained, the adequacy of which is acknowledged by both parties, and in further consideration of the rent and other charges to be paid and the covenants to be performed by Tenant, Landlord hereby leases to Tenant, and Tenant hereby leases from Landlord, the Demised Premises. Tenant, its employees, customers and invitees shall have the right to park in the parking facilities at no charge.

**Section 2.02.  Surrender of the Demised Premises.**

At the Expiration Date or upon the earlier termination of this Lease in accordance with the terms and provisions hereof, Tenant agrees to: (a) surrender possession of the Demised Premises to Landlord; (b) return the Demised Premises to Landlord in at least the condition existing on the Lease Commencement Date (as such condition may be altered by any Alteration), ordinary wear and tear, damage by casualty and condemnation, act of god, and repairs which are the obligation of Landlord excepted; and (c) bear the costs of de-identification and shall repair or reimburse Landlord for the cost of any damage the results from Tenant's removal of trade dress items and Removable Property, as defined herein, from the Demised Premises. On the Expiration Date or within thirty (30) days thereafter, Landlord and Tenant (together with any professional inspector(s) retained by either party) shall conduct a walk-through inspection of the Demised Premises and shall complete (or cause to be completed) an inspection report to establish the condition of the Demised Premises on the Expiration Date. Unless Landlord notifies Tenant that the Demised Premises are not in the condition good condition required by this Section (including a detailed description thereof) within thirty (30) days of the Expiration Date ("Landlord's Damage Notice"), Landlord shall be deemed to have approved the condition of the Demised Premises. If either party elects to retain a professional inspector, any fees or costs charged by such inspector shall be paid by the party which retained such inspector.

In no event shall Landlord's Damage Notice require Tenant to remove any improvements and/or alterations attached to the realty except for as necessary to satisfy Tenant's de-identification obligation as set forth above. All furniture, trade fixtures, machinery and equipment ("Removable Property") installed in the Demised Premises at the expense of Tenant, or other occupant, shall remain the property of Tenant, or such other occupant; provided, however, Tenant shall, at any time and from time to time, during the Lease Term, have the option to relinquish its property rights with respect to Removable Property, which option shall be exercised by written notice of such relinquishment to Landlord and, from and after the exercise of said option, the property specified in said notice shall be the property of Landlord. Notwithstanding the foregoing, Landlord agrees that although affixed to the Demised Premises, Tenant's trade fixtures, which include without limitation all machinery and equipment used in the operation of Tenant's business, telephone alarm systems, attached and unattached showcases and shelving and display units, which are placed on the Demised Premises by Tenant from time to time during the Term of this Lease shall be the property of Tenant and at the expiration of termination of this Lease may be removed from the Demised Premises by Tenant.

3

# ARTICLE III:  TERM OF LEASE

**Section 3.01.  Lease Term.**

The Lease Term shall be for the period set forth in Section 1.01, unless sooner terminated in accordance with the terms and provisions herein. This Lease and the tenancy hereby created shall cease and terminate at the end of the Term hereof without the necessity of any notice from either the Landlord or the Tenant to terminate the same.

**Section 3.02.  Commencement of Lease Term.**

The Lease Term shall commence on the Commencement Date, as set forth in Section 1.01. The parties hereby acknowledge that certain obligations under various Articles herein may commence prior to the Commencement Date and the parties agree to be bound by all of such obligations from and after the date of this Lease.

**Section 3.03.  Holding Over.**

This Lease shall terminate without further notice on the Expiration Date. In the absence of any written agreement to the contrary, if Tenant should remain in occupancy of the Demised Premises after the expiration of the Lease Term, it shall so remain as a Tenant from month-to-month, at a Minimum Annual Rent, paid monthly, equivalent to one-hundred fifty (150%) percent of the amount of Minimum Annual Rent due and payable for the last month of the Term, together with Additional Rent payments due and owing under the Lease, and all other provisions of this Lease applicable to such tenancy shall remain in full force and effect. For the avoidance of doubt, Additional Rent payments by Tenant in any holdover period shall not be subject to the increased holdover rate.

**Section 3.04.  Option to Extend the Lease Term.**

(a)	Tenant shall have the right and option to extend the Lease Term upon the same terms and conditions, there shall be four (4) option terms of sixty (60) months each under option term (the "Renewal Option Term"), provided that at such time the option is exercised Tenant is not in default under this Lease beyond any applicable cure period.

(b)	Tenant shall notify Landlord of its election to exercise each Renewal Option Term by serving written notice one-hundred eighty (180) days before the last day of the then current Lease Term. If Tenant exercises any of its renewal options, then after the exercise of Renewal Option Term, all references to the Term of this Lease shall be deemed to mean the Term as extended pursuant to this Section 3.04. If Tenant does not exercise such option before the last day of the then current Lease Term, and Tenant continues in possession of the Demised Premises after such expiration, the Term will be extended automatically on a month-to-month basis in accord with Section 3.03, until thirty (30) days after the either party terminates the month-to-month tenancy and Tenant surrenders the Demised Premises to Landlord.

# ARTICLE IV:  RENT

**Section 4.01.  Minimum Annual Rent.**

Tenant hereby covenants and agrees to pay to Landlord the Minimum Annual Rent set forth in Section 1.01, unless suspended, abated or diminished, as hereinafter provided, in equal monthly installments together with all sums due as Additional Rent. Tenant's obligation to pay Rent under this Lease shall be deferred until Landlord provides Tenant with its Taxpayer Identification Number and Certification on Form W-9.

**Section 4.02.  Additional Rent.**

(a)	As used herein, the term "Additional Rent" shall mean all sums due to Landlord from Tenant under this Lease other than Minimum Annual Rent, including and not limited to all real estate taxes, insurance charges and other amounts due and payable to Landlord by Tenant hereunder. As used herein, "Rent" shall mean any and all payments of Minimum Annual Rent and Additional Rent, and shall, except as otherwise provided in this Lease, be paid to Landlord on or before the first day of each and every succeeding calendar month in advance during the Term.

(b)	Except as otherwise expressly provide in this Lease, the Minimum Rent and the Additional Rent shall be paid to Landlord without notice or demand and without deduction or offset, in lawful money of the United States of America at Landlord's address for notice noted in Section 1.01, or such other person or at such other place as Landlord may from time to time designate in writing.

(c)	All Rent payments shall commence on the Commencement Date.

Execution Version– O'Fallon

# ARTICLE V:  USE OF THE DEMISED PREMISES

**Section 5.01.  Use of the Demised Premises.**

(a)    <u>Store Use</u>: Tenant shall use the Store Space as retail store for the sale of furniture, bedding, mattresses, or home furnishings provided such retail use is not in conflict with (i) any applicable zoning ordinances, or (ii) the exclusive uses and prohibited uses set forth on the attached Exhibit F "Restricted Uses," attached hereto and made a part hereof.  Landlord represents that Exhibit F accurately reflects all of the exclusive uses and prohibited uses that presently encumber the Demised Premises under other recorded instruments.  Upon the expiration or earlier termination of the lease or other written instrument containing a Restricted Use, the Demised Premises shall not be subject to such Restricted Use, and such use shall no longer be a Restricted Use.  Upon the request of Tenant, Landlord shall promptly advise Tenant which Restricted Uses still encumber the Demised Premises and will furnish to Tenant the documentary support therefor.

(b)    <u>Warehouse Use</u>: Tenant shall use Warehouse Space for general office purposes, warehouse, and distribution use related to Tenant's retail operation provided such use is not in conflict with (i) any applicable zoning ordinances, or (ii) the exclusive uses and prohibited uses set forth on the attached Exhibit H "Restricted Uses," attached hereto and made a part hereof. Landlord represents that Exhibit F accurately reflects all of the exclusive uses and prohibited uses that presently encumber the Demised Premises under other recorded instruments.  Upon the expiration or earlier termination of the lease or other written instrument containing a Restricted Use, the Demised Premises shall not be subject to such Restricted Use, and such use shall no longer be a Restricted Use.  Upon the request of Tenant, Landlord shall promptly advise Tenant which Restricted Uses still encumber the Demised Premises and will furnish to Tenant the documentary support therefor.

(c)    Notwithstanding anything contained herein to the contrary, Tenant may change its trade name without Landlord's consent to the name that Tenant is changing all or substantially all other of Tenant's stores, provided that all costs for such name change and all signage changes related to such name change shall be borne exclusively by Tenant.

(d)    Landlord represents and warrants that Tenant shall have the right to occupy the Demised Premises twenty-four (24) hours per day, seven (7) days per week, and operate its retail business in compliance all applicable land use laws and governmental and association regulations. Landlord agrees to indemnify Tenant for any and all damages, costs, expenses or liabilities associated with any breach of the above warranty. If at any time during the Term or any extension thereof, through no fault of Landlord, Tenant is unable to occupy the Demised Premises twenty-four (24) hours a day seven (7) days a week or to provide the uses permitted herein, Landlord and Tenant will use best efforts to obtain an exclusion or variance for Tenant's retail business operations. In the event the parties are unable to obtain such exclusion or variance within a reasonable time, Tenant shall have the right to terminate this Lease upon thirty (30) days advance written notice to Landlord hereunder ("Termination Notice") without waiver of any of Tenant's other remedies at law or in equity. Tenant shall provide the Termination Notice within six (6) months of Tenant's receipt of written notification of the inability to operate in accordance with this Section or Tenant's right to terminate shall be null and void.

(e)    Tenant shall be permitted to use the sidewalks and the parking areas located in front of the Demised Premises to conduct sidewalk sales, tent sales, and similar outdoor sales events consistent with all applicable land use laws and governmental and association regulations.

(f)    Notwithstanding anything contained or set forth in this Lease to the contrary, nothing set forth in this Lease shall be construed, in any manner whatsoever, as an express or implied covenant of continuous operation on the part of Tenant, and Landlord acknowledges that there is no covenant of continuous operation with respect to the Demised Premises, arising hereunder or otherwise, express or implied, on the part of Tenant.  If Tenant elects, in Tenant's sole discretion, to cease business operations at the Demised Premises, such cessation of business shall not be deemed a breach or default of this Lease, and Tenant shall remain liable for the performance of its obligations and payment of all Rents hereunder.  However, in the event Tenant ceases operating a business at the Demised Premises for reasons other than temporary cessations due to casualty, eminent domain or alterations to the Demised Premises and if such cessation continues for more than one hundred eighty (180) consecutive days for any reason other than repairs, remodeling, inventory, or force majeure, then at any time thereafter for so long as such cessation continues, Landlord may elect to terminate this Lease by written notice given to Tenant. The termination notice shall state a date of termination and the Lease shall terminate on such date as if that was the originally fixed expiration date of the Term. The termination date shall be no less than thirty (30) days after the date of Landlord's notice of termination under this section of the Lease in which event Tenant shall vacate the Demised Premises and surrender all rights to use and occupy the Demised Premises by such date and upon such termination, Tenant and Landlord shall have no continuing obligation to the other under this Lease.

**Section 5.02.  Rules and Regulations.**

Tenant shall comply with all reasonable rules and regulations as may be established by Landlord from time to time pertaining to the appearance and operation of the Demised Premises, provided such rules and regulations do not conflict with the terms of this Lease, are reasonable and customary for the operation of similar shopping centers in the municipality in which the premises are located, are uniformly enforced among all tenants, and do not otherwise materially and adversely interfere with Tenant's use, access, visibility or parking. Tenant shall conduct its business in the Demised Premises in all respects in a dignified manner and in accordance with high standards of retail store

operation. Subject to the foregoing, Tenant agrees to abide by the Rules and Regulations set forth in Exhibit F, if applicable.

**Section 5.03.  Quiet Enjoyment.**

Landlord represents to and covenants with Tenant that:

a)      Landlord has obtained or will obtain all consents or approvals that Landlord may require mortgagees of the property of which the Demised Premises are a part ("Property") to permit Landlord to enter into this Lease;

b)      There are no agreements or restrictive covenants to which Landlord is a party or affecting the Demised Premises that in any way prohibit or restrict Tenant's proposed use of the Demised Premises;

c)      Landlord has no knowledge and has received no written notice of any planned or contemplated construction or improvements to any street, highway or driveway providing access to the Demised Premises or any property abutting the Demised Premises by any governmental entity or adjoining landholder; and

d)      Landlord shall not enter into any covenants, easements or other agreements after the date of this Lease that prohibit or restrict Tenant's proposed use of the Demised Premises or otherwise change the terms of this Lease without Tenant's prior written consent, which may be withheld in Tenant's sole discretion; and

e)      Tenant's proposed uses of the Demised Premises are currently permitted under all applicable land use laws and governmental and association regulations; and

f)      Landlord shall warrant and defend Tenant in the quiet enjoyment and possession of the Demised Premises during the Term.

g)      The legal description set forth on Exhibit A-1 is sufficient to identify the Premises depicted on Exhibit A and includes no additional property;

h)      The Site Plan correctly and completely shows all improvements on or to be made to the Premises;

i)      The Premises complies with  all laws, rules, regulations and ordinances

The representations and covenants in this Lease are material inducements to Tenant in this Lease, the breach of which will cause irreparable and severe harm to Tenant.  Without limiting any other right or remedy of Tenant, in the event of Landlord's breach of the representations and covenants in this Section, Tenant has the right, after providing Landlord with thirty (30) days' prior written notice a breach of a representations and covenants in this Section, and if Landlord has not cured such breach within thirty (30) days, if practicable, (i) to terminate this Lease during any time during the period that the breach continues without waiver of any of Tenant's other remedies at law or in equity, or (ii) to pay Substitute Rent during the period that the breach continues in a mutually agreed upon amount.

**Section 5.04.  Environmental.**

(a)      Neither Tenant, its successors or assigns, nor any permitted assignee, permitted sublessee or other person acting at the direction of Tenant shall: (i) manufacture, treat, use, store or dispose of any Hazardous Materials (as hereinafter defined) on the Demised Premises or any part thereof in violation of any applicable Environmental Laws; or (ii) permit the release of a Hazardous Material on or from the Demised Premises or any part thereof. Notwithstanding the foregoing, Landlord hereby consents to the use by Tenant of materials routinely used in Tenant's business so long as said materials are used, kept, stored, and disposed of in a manner that complies with all laws relating to the use, storage, and disposal of same.

(b)      In the event of a release of Hazardous Material by Tenant or any of Tenant's agents, employees, contractors, subtenants or licensees, Tenant shall indemnify, protect, defend and hold Landlord harmless from and against any and all costs, fees, damages, losses, expenses and/or liabilities of any kind or nature in any way related to the release, removal, transportation and/or disposal of such Hazardous Materials. If any action or proceeding be brought against Landlord by reason of such claim, Tenant upon notice from Landlord shall defend the same at Tenant's expense by counsel reasonably satisfactory to Landlord. In the event Landlord incurs any costs, fees, damages, losses, expenses, and/or liabilities in connection with a release of Hazardous Materials by Tenant or any of Tenant's agents, employees, contractors, subtenants or licensees, Tenant shall pay such costs, fees, and/or expenses within ten (10) days of written request from Landlord. Landlord shall not incur any fees or costs before notifying Tenant that it is likely to incur such fees and costs unless Landlord is required to take corrective action.

(c)      Landlord represents and warrants that to the best of its knowledge as of the date of this Lease, no release (as hereinafter defined) of Hazardous Materials has occurred in the Demised Premises nor are Hazardous Materials are otherwise present in the Demised Premises. Landlord represents and warrants to the best of its knowledge as of the date of this Lease that the Demised Premises are in compliance with all federal, state and/or local statutes, regulations, rules, and/or ordinances, and with all orders, decrees or judgments of governmental authorities or courts having jurisdiction, relating to the use, generation, manufacture, collection, treatment, disposal, storage, control, removal or cleanup of Hazardous Materials ("Environmental Laws"). To the extent any Hazardous Materials are present in, at, on or about the Demised Premises and/or the Property through no fault of Tenant, Landlord shall be responsible for removing or otherwise remediating such Hazardous Materials as required by, and in full compliance with, all Environmental Laws at no cost to Tenant.

6

(d)    Landlord shall indemnify, protect, defend, and hold Tenant harmless from and against any and all costs, fees, damages, losses, expenses, and/or liabilities of any kind or nature in any way related to the existence, removal, transportation or disposal of any Hazardous Materials in, at, on or about the Demised Premises and/or the Property unless caused by Tenant or any of Tenant's agents, employees, contractors, subtenants or licensees. If any action or proceeding be brought against Tenant by reason of such claim, Landlord upon notice from Tenant shall defend the same at Landlord's expense by counsel reasonably satisfactory to Tenant.

(e)    The term "Hazardous Material" shall mean any waste, substance or material that is: (i) identified in Section 101(14) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as the same may be amended from time to time (herein called "CERCLA"); or (ii) determined to be hazardous, toxic, a pollutant or contaminant, under federal, state or local law, including, but not limited to, petroleum and petroleum products. The term "release" shall have the meaning given to such term in Section 101(22) of CERCLA.

## ARTICLE VI:  TENANT'S CONSTRUCTION AND MAINTENANCE

**Section 6.01.  Tenant's Installations and Alterations.**

(a)    Tenant may not perform any major repairs or renovations to the Demised Premises without having first received Landlord's written consent thereto.  Notwithstanding anything contained herein to the contrary, Landlord agrees that it shall not unreasonably withhold or delay its consent to Tenant's request to perform interior non-structural repairs, renovations, remodeling or alterations.  Further notwithstanding anything contained herein to the contrary, Tenant may make interior non-structural alterations to the Demised Premises up to a total cost per year of Seventy-Five Thousand and 00/100 Dollars ($75,000.00) without Landlord's consent or approval required; and Tenant shall not substantially modify the ratio of Store Space to Warehouse Space within the Demised Premises as of the Commencement Date, without Landlord's consent or approval.

(b)    Landlord hereby grants Tenant the right to install, maintain, repair, use, operate and remove a satellite dish receiver or other transmission or reception device (the "Equipment") on the roof or exterior walls of the building of which the Demised Premises is a part in a location and manner of installation approved by Landlord, such approval not to be unreasonably withheld, conditioned or delayed.  Tenant shall be responsible for all costs and expenses associated with such installation, maintenance, repair, use, operation and removal of the Equipment including, without limitation, obtaining any and all governmental permits and approvals, as necessary.  Tenant hereby acknowledges and agrees that Landlord shall have no liability or responsibility whatsoever in connection therewith and, excepting negligence or willful misconduct of Landlord, its agents, contractors, employees, servants, invitees, licensees or concessionaires, shall have no liability or responsibility whatsoever for any damage, injury or loss to the Equipment or to Tenant's business as a result of any damage, injury or loss to the Equipment.  Tenant, at its sole cost and expense, shall install, maintain and repair the Equipment in a good and workmanlike manner and shall keep, maintain and operate the Equipment in compliance with all applicable building codes and other applicable codes and regulations.  Tenant shall, at its sole cost and expense, cause the Equipment to be removed from the roof of the Demised Premises at the expiration or sooner termination of this Lease.

**Section 6.02.  Signs, Awnings and Canopies.**

(a)    Tenant shall have the option to erect, at its sole cost and expense subject to the approval of the appropriate governmental agencies the following signage of such height and dimensions as Tenant shall determine and bearing such legend or inscription as Tenant shall determine upon all sides of the exterior of the Demised Premises the right to erect the exterior signage as shown in Exhibit B - Sign Specifications attached hereto and made a part hereof.  Notwithstanding anything contained herein to the contrary, Tenant shall have the right to the maximum building signage available under local law and specifically, to the maximum signage permitted by law consisting of individual channel letters as typical for Tenant's typical store in the state where the Demised Premises are located.  Tenant shall also have the right to maximum signage on any pylon or monument signage now available or that may become available at any time during the Term or any extension thereof.  Landlord and Tenant will use best efforts to obtain an exclusion of variance or Tenant's signs to the extent reasonably necessary.  Tenant's standard window signs, temporary promotional window signs, banners, and displays depicted in "Tenant's Standard Corporate Identity Packet" attached hereto as Exhibit B are hereby approved by Landlord.

(b)    In the event that Tenant participates in any additional signage, such signage shall be placed in a location mutually acceptable to Landlord and Tenant and Tenant shall approve the overall composition, elevation and specifications of any additional signage.

(c)    Landlord shall not place upon the Demised Premises "for lease," "to let" or "for sale" signs, or other similar signs at any time during the Lease Term or any other Option Term, except that Landlord may place signs advertising the Demised Premises being "for lease," "to let" or "for sale", during the last one hundred and eighty (180) days of any Lease Term, if Tenant has not exercised its right to the next successive Renewal Term Option, or at any time after Tenant has ceased business operations for more than one hundred and eighty (180) days.

**Section 6.03.  Laws, Waste or Nuisance.**

Landlord, at its sole costs and expense, will be responsible to maintain the premises to be in compliance with all applicable Laws pertaining to the Building. Tenant shall comply with all Laws pertaining to the conduct of its

business in the Demised Premises. Tenant shall not perform any acts or carry on any practices which may injure the building or be a nuisance or menace to other tenants or the public.

Notwithstanding any provision of this Lease to the contrary, all exterior areas of the Demised Premises, including without limitation, customer parking areas, walkways, ramps, exterior of the buildings and ingress to and egress from the Demised Premises shall be constructed and maintained by Landlord at all times during the Term of this Lease and any renewal(s) in strict compliance with applicable requirements of the ADA. Landlord represents and warrants to Tenant that all interior areas of the Demised Premises comply with ADA as of the Commencement Date. Landlord shall indemnify, protect, defend and hold Tenant harmless from any and all costs, fees, damages, losses, expenses, and/or liabilities of any kind or nature in any way related to Landlord's obligations under this Section. Tenant shall maintain the interior of the Demised Premises and construct and maintain its improvements thereto in strict compliance with applicable ADA requirements. Tenant shall indemnify, protect, defend, and hold Landlord harmless from any and all costs, fees, damages, losses, expenses and/or liabilities of any kind or nature in any way related to Tenant's obligations under this Section 6.03.

# ARTICLE VII:  MAINTENANCE OF BUILDING; ACCESS TO DEMISED PREMISES

**Section 7.01.  Landlord Responsibilities.**

Landlord shall maintain the following in good condition and repair (including replacements, as reasonably necessary): (i) the Building footings, foundations, structural steel columns and girders at Landlord's sole expense; and the Building roof and exterior walls (collectively "Landlord Maintenance Responsibilities"); and (ii) the "Building Systems" (as hereinafter defined). Landlord will also be responsible, at its sole cost and expense, for any repairs or replacements to the Building or Demised Premises that are of a capital nature under GAAP, including, without limitation, the Building Systems (collectively referred to herein as "Capital Replacements"), and Tenant shall have no obligation to pay for any Capital Replacements made by Landlord. Notwithstanding the foregoing, with respect to the heating, ventilating and air conditioning equipment serving the Demised Premises (the "HVAC"), Tenant is solely responsible for all HVAC costs associated with maintaining; repairing; and replacing, if necessary, throughout the term of this Lease. Tenant shall maintain a bi-annual service and maintenance contract for the HVAC with a qualified, licensed HVAC contractor to maintain and service the HVAC.

If Tenant becomes aware of any condition that is Landlord's responsibility to repair pursuant to this Lease, Tenant shall promptly notify Landlord of the condition. As used herein, the term "Building Systems" shall mean any structural, heating, ventilating, or air conditioning systems serving the Building and/or the Demised Premises.

Landlord shall be responsible for all Landlord Maintenance Responsibilities with regard to the Demised Premises.  In addition, Landlord covenants and agrees that, within fifteen (15) days following written notice from Tenant and at Landlord's sole cost and expense, Landlord will make, or for those items that reasonably will take longer, commence and diligently pursue to completion, all necessary repairs and/or replacements to the structural elements, concrete slab and exterior surfaces of the Demised Premises including, but not limited to, the roof of the Demised Premises, roof covering and membrane (including interior ceiling and coverings if damaged by leakage), exterior paint, and all necessary structural repairs to the walls, concrete slab, footings, and foundations of the Demised Premises.

Furthermore, Landlord covenants and agrees to make, or for those items that reasonably will take longer, commence and diligently pursue to completion all necessary repairs and/or replacements within fifteen (15) days following written notice from Tenant and all other reasonable maintenance to the Premises, provided such repairs are not made necessary through negligence or willful misconduct of Tenant. Except as otherwise provided under Section 9.02(b) of this Lease, Tenant shall pay its share of all such costs and expenses for the maintenance and upkeep of the Premises.

In the event Landlord fails to make necessary repairs to the Demised Premises within said fifteen (15) day period following written notice or to commence such repairs and diligently pursue them to completion in the case of repairs that cannot be completed within said period, Tenant shall be permitted to make such repairs and bill Landlord for the reasonable costs of same. In the event of an emergency, Tenant shall attempt to provide Landlord with prompt notice, but shall be permitted to make necessary repairs and bill Landlord for the reasonable cost of same. In the event Landlord fails to pay any bona fide bill within thirty (30) days of receipt from Tenant, Tenant shall have the right to deduct such costs and expenses from subsequent Minimum Annual Rent installments to be made under this Lease.

**Section 7.02.  Tenant Responsibilities.**

Except to the extent the same is required to be maintained or repaired by Landlord pursuant to Section 7.01, Tenant shall, at its sole cost and expense, keep the Demised Premises and every part thereof in at least the condition and repair existing on the Lease Commencement Date (as such condition may be altered by any "Alterations", as hereinafter defined), ordinary wear and tear excepted. Tenant shall keep the Demised Premises and sidewalks, service-ways and loading areas adjacent to the Demised Premises neat, clean and free from dirt, rubbish, ice and snow at all times. Tenant shall have the option to employ JVS Services for property and HVAC maintenance in Tenant's sole discretion.

Tenant shall maintain a bi-annual service and maintenance contract for the HVAC with a qualified, licensed HVAC contractor to maintain and service the HVAC. Tenant will provide Landlord with a copy of such service and maintenance contract. So long as Tenant has complied with all of its obligations under this Section 7.02, Landlord will make all needed replacements to the existing HVAC, in service on the Lease Commencement Date (outside of routine maintenance covered by the Tenant's bi-annual service and maintenance contract) in accordance with Section 7.01.

# ARTICLE VIII:  REAL ESTATE TAXES

**Section 8.01.  Real Estate Taxes.**

Tenant shall pay, as Additional Rent, "Real Estate Taxes" in accordance with the following:

(a)     "Real Estate Taxes" shall mean and include all taxes, assessments (amortized over the longest period available to the Landlord and paid by Tenant in relation to the Lease Term) and other governmental charges, general and special, including, without limitation, assessments for public improvements or benefits, which shall, during the Term, be assessed, levied, and imposed by any governmental authority upon the land that comprises the Demised Premises.  Notwithstanding anything herein to the contrary, Real Estate Taxes shall not include: (i) any late fees or penalties (except those late fees and penalties caused by Tenant's failure to pay any Real Estate Taxes when due, which shall be Tenant's sole responsibility), (ii) any assessments for infrastructure or improvement districts, (iii) capital taxes, (iv) income taxes, (v) corporate taxes, (vi) corporation capital taxes, (vii) excise taxes, (viii) profits taxes, any municipal, county, state or federal income or (ix) franchise, business license, corporate, documentary transfer tax, succession, capital levy, excess profit or net profit taxes or tax increases of any kind in connection with the transfer, sale or change in ownership of all or part of the Demised Premises, or (x)other taxes personal to the Landlord.  Anything to the contrary notwithstanding, Tenant shall not be required to pay any public improvement assessments pertaining to the original construction of the Demised Premises which may have been levied prior to the Commencement Date, including any such assessments which may be payable after said date, but which relate to public improvements made prior to said date.

(b)     From and after the Commencement Date and throughout the Lease Term, Tenant shall timely pay Real Estate Taxes directly to the appropriate county and municipal governmental entities and provide Landlord with proof of payment. If Tenant's obligation to pay its share of Real Estate Taxes commences on a date other than the first day of the tax year of the taxing authority, Tenant shall pay a proportionate share of the Real Estate Taxes for the tax year in which the Commencement Date occurs, which share shall be based upon the length of time that this Lease shall have been in existence during such first tax year. Landlord shall furnish to Tenant a statement showing (i) the Real Estate Taxes for such tax year from such authority; (ii) Tenant's share of same, i.e. the Proportionate Share multiplied by said Real Estate Taxes; and (iii) the credit or balance due, as the case may be, after applying sums already paid against the Real Estate Percentage as reflected on said statement.  Any balance due to Landlord shall be payable by Tenant within thirty (30) days after delivery of the statement.

(c)     Tenant shall have the right to contest the amount of Taxes or the increases in Taxes which Tenant is obligated to pay under this Lease; provided, however, Tenant shall give Landlord written notice of any such intention to contest such Taxes.

# ARTICLE IX:  UTILITIES

**Section 9.01.  Utilities & Trash Removal.**

Landlord covenants and agrees that, the Demised Premises shall be properly serviced with gas, electric, telephone, water, sewer and other utilities sufficient to meet Tenant's requirements.  After installation and connection, Tenant shall be solely responsible for and promptly pay the respective provider all charges for trash and rubbish removal, heat, water, electricity, sewers or any other utility used or consumed in or for the Demised Premises commencing on the Commencement Date.  On or before the Commencement Date, Landlord shall provide at its sole cost and expense separate meters for all utilities supplied to the Demised Premises.  If the utility service is interrupted due to the negligence of Landlord, its agents or employees, there shall be a prorate abatement of Rent and all other charges payable by Tenant pursuant to this Lease based on the amount of time and area deemed nonfunctional by Tenant (such abatement to occur without any notice and cure period).  If the utility service is interrupted not due to the negligence of Landlord, its agents or employees Landlord shall be obligated to use commercially reasonable efforts to obtain the resumption of such utility services as quickly as reasonably possible.

Tenant shall pay the cost of removal of garbage or refuse from the Demised Premises directly to the service provider selected in Tenant's sole discretion. Tenant shall store all trash and garbage within the Demised Premises, or in a trash dumpster or similar container approved by Landlord as to type, location and screening prior to Lease Commencement Date; and Tenant shall arrange for the regular pick-up of such trash and garbage at Tenant's expense (unless Landlord finds it necessary to furnish such a service, in which event Tenant shall be charged an equitable portion of the total of charges to all tenants using the service).  Receipt and delivery of goods and merchandise and removal of garbage and trash shall be made only in the manner and areas prescribed by Landlord.

# ARTICLE X:  ASSIGNMENT; SUBLEASE

**Section 10.01.  Assignment or Subletting.**

Tenant may, on at least thirty (30) days' prior written notice, assign the Lease or sublet to an affiliate entity, without charge or penalty, so long as such assignee or sublessee meets Landlord's reasonable financial qualifications. Landlord agrees to execute written documentation confirming any such assignment and release of Tenant all the conditions set forth herein are satisfied.

# ARTICLE XI:  NOTICES

**Section 11.01.  Notices.**

(a)    Any notice required or permitted to be given under this Lease or by law shall be in writing, addressed to the party at the address set forth above, and must be served by one of the following methods: (a) certified mail, return receipt requested, postage prepaid; (b) by a reputable prepaid overnight courier (such as Federal Express or UPS); or (c) electronic delivery, via email or facsimile provided one of the other methods is also used.

(b)    Either party may, at any time or from time to time, designate in writing additional or substitute addresses for that above set forth, and thereafter notices shall be directed to such additional or substitute address for that above set forth.  Any notice given in conformance with the above shall be deemed received on the earlier of (i) five (5) business days after the date given to the delivery service or (ii) the date on which the noticed party receives or refuses receipt of the notice.

# ARTICLE XII:  INDEMNITY; PROPERTY AND LIABILITY INSURANCE

**Section 12.01.  Indemnity.**

From and after the Commencement Date and subject to Section 13.03 below, Tenant shall protect, defend, indemnify and hold Landlord harmless from and against any and all claims, damages, losses, liens, judgments, penalties, expenses including reasonable attorneys and consultants fees, and/or liabilities arising out of or relating to injury to any person or loss of or damage to property that occurs within the Demised Premises, except for those caused solely by the intentional misconduct, negligent acts or omissions of Landlord or Landlord's agents, members, officers, employees or contractors.

**Section 12.02.  Insurance.**

(a)    Landlord shall, at all times during the Term, maintain in full force and effect or cause to be maintained in full force and effect on an occurrence basis the following insurance meeting the requirements of this section below in at least the following amounts: (i) Commercial General Liability Insurance with respect to the Demised Premises for bodily injury, death and property damage, and including contractual liability coverage, with a combined single limit not less than One Million Dollars ($1,000,000,000) per occurrence, Two Million Dollars ($2,000,000) annual aggregate, and Five Million Dollars ($5,000,000,000) umbrella, which shall name Tenant as an additional insured; (ii) Comprehensive Automobile Liability insurance, including Hired, Owned or Non-Owned vehicles (including vehicles provided by Tenant) and contractual liability, with bodily injury, death and property damage minimum limits of One Million Dollars ($1,000,000) per accident, which shall name Tenant as an additional insured, and (iii) Worker's Compensation insurance coverage adequate to comply with all statutory requirements covering all persons employed by Landlord and Employer's Liability with minimum limits of at least One Million Dollars ($1,000,000.00). Landlord shall be financially responsible for payment of its premiums, deductibles, retentions, self-insurance, coinsurance, uninsured amounts or any amount in excess of policy limits.

(b)    Tenant shall, at all times during the Term, maintain in full force and effect or cause to be maintained in full force and effect on an occurrence basis the following insurance meeting the requirements of Section 12.02(c) below in at least the following amounts: (i) Commercial General Liability Insurance with respect to the Demised Premises for bodily injury, death and property damage, and including contractual liability coverage, with a combined single limit amount of not less than One Million Dollars ($1,000,000,000) per occurrence, Two Million Dollars ($2,000,000) annual aggregate, and Five Million Dollars ($5,000,000,000) umbrella, which shall name Landlord as additional insureds; (ii) Comprehensive Automobile Liability insurance, including Hired, Owned or Non-Owned vehicles (including vehicles provided by Landlord) and contractual liability, with bodily injury, death and property damage minimum limits of One Million Dollars ($1,000,000) per accident, which shall name Landlord as additional insureds; (iii) Workers' Compensation insurance coverage adequate to comply with all statutory requirements covering all persons employed by Tenant and Employer's Liability insurance with minimum limits of at least One Million Dollars ($1,000,000); and (iv) special form-causes of loss property insurance covering the full replacement cost of all Tenant's personal property placed in the Premises. All insurance policies maintained by Tenant will be primary and will not apply as excess or require contribution from any coverage maintained by Landlord. Tenant shall be financially responsible for payment of its premiums, deductibles, retentions, self-insurance, coinsurance, uninsured amounts or any amount in excess of policy limits.

(c)    All insurance policies which shall be required to maintain by Landlord and Tenant, pursuant to this section shall be written by insurers which have an A.M. Best & Company rating of "A-", Class "VII", or better and who are authorized to write such business in the State of where the Demised Premises is located. Prior to taking possession of the Demised Premises and thereafter upon request, the Tenant shall deliver to Landlord certificates of insurance evidencing insurance coverage required to be maintained by Tenant under this Lease. Upon request, Landlord shall deliver to Tenant certificates of insurance evidencing the insurance coverage required to be maintained under this Lease by Landlord.

**Section 12.03.  Waiver of Subrogation.**

Landlord and Tenant hereby waive any rights each may have against the other on account of any loss or damage occasioned to Landlord or Tenant, as the case may be, their respective property, the Premises, or its contents to the extent the loss would be covered by a special form - causes of loss policy of property. The parties each, on behalf of their respective insurance companies insuring the property of either Landlord or Tenant against any such loss, waive any right of subrogation that it might have against Landlord or Tenant, as the case may be, if such loss or damage shall have been caused by the fault of the other party.

**Section 12.04.  Insured's Release.**

Landlord and Tenant mutually agree that with respect to any loss which is covered by insurance then being carried by them respectively, or required to be carried, the one carrying or required to carry such insurance and suffering said loss hereby releases the other of and from any and all claims with respect to such loss to the extent of such insurance carried or required to be carried.

# ARTICLE XIII:  LIABILITY

**Section 13.01.  No Partnership.**

Any intention to create a joint venture or partnership relation between the parties hereto is hereby expressly disclaimed.

**Section 13.02.  Successors.**

This Lease and the covenants and conditions herein contained shall inure to the benefit of and be binding upon Landlord, its successors, and assigns, and shall be binding upon Tenant, its successors, assigns, executors, administrators, and legal representatives, and shall inure to the benefit of Tenant, its successors, and only such assignees of Tenant to whom Tenant has assigned in compliance with the provisions of this Lease.

**Section 13.03.  Waiver.**

The failure of either party to insist, in any one or more instances, upon a strict performance of any covenant of this Lease or to exercise any option or right herein contained shall not be construed as a waiver or relinquishment for the future of such covenant, righter option, but the same shall remain in full force and effect unless the contrary is expressed in writing.

**Section 13.04.  Consent Clause.**

Unless another time period is stipulated in this Lease for consent or approval or a second notice is required prior to inaction being deemed consent or approval hereunder, failure by a party to approve, disapprove or comment to the other party's request for consent or approval within thirty (30) days after receipt of such request shall be deemed approval. Wherever in this Lease the consent or approval of a party is required, unless otherwise specified, such consent shall not be unreasonably withheld, delayed or conditioned.  If in this Lease it is provided that Landlord's consent or approval as to any matter will not be unreasonably withheld, and it is established by a Court or other body having final jurisdiction that Landlord has been unreasonable, Landlord shall be deemed to have consented to or approved the matter for which its consent or approval was requested and Landlord may be liable to Tenant for money or money damages by reason of withholding or delaying its consent or approval.

# ARTICLE XIV:  DAMAGE CLAUSE

**Section 14.01.  Destruction.**

If the building that comprises the Demised Premises should be damaged by fire, the elements, unavoidable accident or other casualty to the extent that the Demised Premises are rendered inaccessible for retail purposes or totally or partially unusable by Tenant in the ordinary course of Tenant's business, Tenant shall give immediate written notice thereof to Landlord.  Landlord shall thereafter, within forty-five (45) days after receipt of written notice of such damage, notify Tenant of the amount of time Landlord estimates it will take to repair such damage ("Landlord's Estimate").

If the loss to Landlord would be fully (exclusive of any deductible) covered by insurance required to be maintained by Landlord under this Lease or for Landlord's benefit, which loss renders the Demised Premises totally

or partially inaccessible or unusable by Tenant in the ordinary conduct of Tenant's business, then either party may terminate this Lease by written notice to the other, except that if: (i) Landlord's Estimate is equal to or less than ninety (90) days from the date of Tenant's Receipt of Landlord's Estimate; (ii) such damage or destruction is not the result of willful misconduct of Tenant; and (iii) Landlord is not prevented by applicable Laws from rebuilding the building to its preexisting condition, Landlord shall, at Landlord's expense, repair the same and this Lease shall remain in full force and effect and a proportionate reduction of the Minimum Annual Rent and Additional Rent shall be allowed Tenant for such portion of the Demised Premises as shall be rendered inaccessible or unusable to Tenant during the period of time that such portion is unusable or inaccessible. In the event such repairs are not complete within one hundred-twenty (120) days from the date of Tenant's Receipt of Landlord's Estimate, Tenant shall have the right to terminate this Lease by giving Landlord notice of Tenant's desire so to do, in which event this Lease shall be of no further force or effect and neither party shall have any liability to the other except for any liabilities which may exist prior to cancellation.

If, at any time prior to the expiration or termination of this Lease, the Demised Premises are totally or partially damaged or destroyed from a risk, the loss to Landlord that would not be fully (exclusive of any deductible) covered by insurance required to be maintained by Landlord under this Lease or for Landlord's benefit, then either party may terminate this Lease by written notice to the other. If Tenant does not terminate this Lease and Landlord elects to repair or restore such damage or destruction, this Lease shall continue in full force and effect provided that such repairs or restorations are completed within ninety (90) days from the date of Tenant's Receipt of Landlord's Estimate and the Minimum Annual Rent and Additional Rent shall be proportionately reduced as provided in Section 25(b). In the event such repairs are not complete within one hundred-twenty (120) days, Tenant shall have the right to terminate this Lease by giving Landlord notice of Tenant's desire so to do, in which event this Lease shall be of no further force or effect and neither party shall have any liability to the other except for any liabilities which may exist prior to cancellation.

Notwithstanding the foregoing, if the Demised Premises are wholly or partially damaged or destroyed within the final six (6) months of the Term, Landlord or Tenant may, at its option, elect to terminate this Lease by giving the other party notice of its desire to so to do, in which event this Lease shall be of no further force or effect and neither party shall have any liability to the other except for any liabilities which may exist prior to cancellation.

In the event of any damage to or destruction of the Demised Premises, Landlord shall not be required to repair, replace or compensate anyone for the personal property, trade fixtures, alterations, machinery, equipment or furniture of Tenant, unless said damage or destruction: (i) is covered by insurance maintained by Landlord; or (ii) is caused by Landlord's negligence and/or willful misconduct or of its agents, employees, contractors, invitees or licensees.

# ARTICLE XV:  CONDEMNATION

**Section 15.01.  Condemnation.**

If more than twenty-five percent (25%) of the Demised Premises shall be taken or condemned by any competent authority for any public or quasi public use or purpose, then Tenant may, at its option, terminate this Lease. Any award for the property of which the Demised Premises are a part, shall be the property of Landlord.  Tenant, however, shall be entitled to claim, prove and receive in the condemnation proceeding such awards excluding so called bonus awards as may be allowed for fixtures and other equipment installed by it and any other award expressly made to Tenant.

The Rent and additional sums in the case of any partial taking or condemnation, shall be apportioned as of the date of vesting of title and Tenant shall be entitled to a pro rata reduction in the annual Minimum Annual Rent and Additional Rent payable hereunder based on the portion that the floor area in the space taken bears to gross floor area of the Demised Premises immediately prior to such taking.

# ARTICLE XVI:  PRIORITY OF LEASE

**Section 16.01.  Subordination and Attornment.**

The rights of Tenant under this Lease shall be and are subject and subordinate at all times to the lien of any bank or institutional mortgage or deed of trust now or hereafter in force against the Property or upon any buildings hereafter placed upon the Property, and to all advances made or hereafter to be made upon the security thereof, on the condition that the note holder and mortgagee or beneficiary secured by such deed of trust or deeds of trust or mortgage(s), as the case may be, shall and does agree: a) to recognize this Lease so that Tenant's rights described herein are not diminished by reason of such subordination; and b) not to disturb the tenancy of Tenant in writing in the event of foreclosure if Tenant is not then in default beyond any applicable cure period. Tenant shall, from time to time upon receipt of request therefor by Landlord, deliver to Landlord such Subordination And Non-Disturbance Agreement ("SNDA") in the form attached as Exhibit D as requested by any lender or proposed lender to evidence such subordination. Landlord shall pay Tenant a non-refundable fee in the amount of One Thousand and 00/100 Dollars ($1,000.00) for each SNDA requested from Tenant to cover Tenant's administrative, legal and other costs and expenses, and Tenant is authorized to deduct that amount from Rent.

Tenant shall, in the event any proceedings are brought for the foreclosure of, or in the event of exercise of the power of sale under any mortgage made by Landlord covering the Demised Premises, attorn to the purchaser upon any such foreclosure or sale and recognize such purchaser as Landlord under Lease on the condition that such purchaser expressly assumes all of the Landlord's obligations hereunder in writing.

**Section 16.02.  Estoppel.**

Tenant shall, from time to time upon receipt of request therefor by Landlord, execute and deliver a certificate to any proposed mortgagee or purchaser or to Landlord a written declaration in form substantially similar to Exhibit C, attached hereto, certifying (if such be the case) that this Lease is in full force and effect, that there are no defenses or offsets thereto, or stating those claimed by Tenant and certifying such other matters directly related to this Lease that may be reasonably requested by Landlord.  Landlord shall pay Tenant a non-refundable fee in the amount of One Thousand Dollars ($1,000.00) for each estoppel certificate requested from Tenant to cover Tenant's administrative, legal and other costs and expenses, and Tenant is authorized to deduct that amount from Rent.

**Section 16.03.  Recording.**

The parties agree that upon the request of either party, they will execute, acknowledge, and deliver a memorandum of lease, in form substantially similar to Exhibit E to the end that the same may be recorded at the expense of the requesting party.  Upon the expiration or earlier termination of the Lease and within ten (10) days following written notice from Landlord, Tenant agrees to execute a Memorandum of Lease Termination or Quitclaim Deed discharging any recording made pursuant to this Section.

# ARTICLE XVII:  DEFAULT AND REMEDIES

**Section 17.01.  Tenant Default.**

Any one of the following shall be deemed to be an "Event of Tenant Default":

(a)    Failure on the part of Tenant to make payment of Rent or any other monetary amount due under this Lease within five (5) days after Landlord has sent to Tenant notice of such default.

However, if:  (i) Landlord shall have sent to Tenant one (1) notice of a monetary default, even though the same shall have been cured and this Lease not terminated; and (ii) during the twelve (12) month period following the sending of the latest of said notices of default by Landlord to Tenant, Tenant thereafter shall default in the timely payment of any Rent or monetary payment, the same shall be deemed to be an Event of Tenant Default upon Landlord giving Tenant written notice thereof, without the five (5) day grace period set forth above.

(b)    A receiver or trustee shall be appointed for the Demised Premises or for all or substantially all of the assets of Tenant or any guarantor of Tenant's obligation under this Lease.

(c)    Tenant shall not or permit to be done anything which creates a lien upon the Demised Premises or upon all or any part of the Property, and such lien is not released within thirty (30) days of Tenant receiving notice of lien or notice of intent to file, whichever is earlier.

(d)    Tenant or any guarantor of Tenant's obligations under this Lease shall become insolvent, or shall make a transfer in fraud of creditors, or shall make an assignment for the benefit of creditors.

(e)    Tenant or any guarantor of Tenant's obligations under this Lease shall file a petition under any section or chapter of the federal Bankruptcy Code, as amended, or under any similar law or statute of the United States or any state thereof; or Tenant or any guarantor of Tenant's obligations under this Lease shall be adjudged bankrupt or insolvent in proceedings filed against Tenant or any guarantor of Tenant's obligation under this Lease thereunder.

With respect to a non-monetary violation of this Lease, failure of Tenant to cure the same within thirty (30) days after Landlord has sent to Tenant notice of such failure or, if the failure is of such a nature that the cure cannot reasonably be completed within said thirty (30) day period, the failure of Tenant to commence the cure within said thirty (30) day period and thereafter to diligently and continuously pursue the completion of the cure.  Tenant shall be obligated to commence forthwith, to prosecute diligently and continuously, and to complete as soon as possible the curing of such violation; and if Tenant fails so to do, the same shall be deemed to be an Event of Tenant Default.

However, if:  (i) Landlord shall have sent to Tenant one (1) notice of a non-monetary default within any twelve (12) month period, even though the same shall have been cured and this Lease not terminated; and (ii) during the twelve (12) month period following the sending of the latest of such notices of default by Landlord to Tenant, Tenant thereafter shall default in any non-monetary matter substantially similar to those for which Tenant previously received written notice, the same shall be deemed to be an Event of Tenant Default upon Landlord giving Tenant written notice thereof and Tenant shall have no grace period within which to cure the same.

Landlord agrees to use reasonable efforts to relet the Demised Premises so as to mitigate the Tenant's damages, but in no event shall Landlord be obligated to use efforts greater than that used by Tenant to relet the Demised Premises.

**Section 17.02.  Landlord's Remedies.**

If an Event of Tenant Default occurs and continues beyond any applicable cure period, Landlord shall have the following remedies:

(a)     Landlord may continue the lease in full force and effect for so long as Landlord does not terminate the Tenant's right to possession and Landlord may enforce all of Landlord's rights and remedies under this Lease, including the right to recover Rent and Additional Rent as it becomes due, provided that Tenant may assign or sublet its interest in the Demised Premises, subject to the reasonable consent of Landlord, during such time that Tenant continues to pay Rent and Additional Rent; or

(b)     Landlord may terminate Tenant's right to possession, in which case this Lease shall terminate and, upon such termination, the Landlord may recover from the Tenant:

(i)     The worth at the time of award of the unpaid Rent and Additional Rent that had been earned at the time of termination;

(ii)     The worth at the time of award of the amount by which the unpaid Rent and Additional Rent that would have been earned after termination until the time of award exceeds the amount of such rental loss that the Tenant proves could have been reasonably avoided;

(iii)     Subject to subsection (c), the worth at the time of award of the amount by which the unpaid Rent and Additional Rent for the balance of the Term after the time of award exceeds the amount of such rental loss that the Tenant proves could be reasonably avoided;

(c)     The "worth at the time of award" of the amounts referred to in paragraphs (i) and (ii) of subsection (b) is computed by allowing interest at such lawful rate as may be specified in this Lease or, if no such rate is specified in this Lease, at the legal rate. The worth at the time of award of the amount referred to in paragraph (iii) of subsection (b) is computed by discounting such amount at a rate equal to the lesser of the rate announced by the Wall Street Journal from time to time as the "prime rate" plus 2% per annum or the highest rate permitted by law (the interest rate determined hereby is referred to as the "Interest Rate").

**Section 17.03.  Landlord Default.**

If Landlord fails to perform any of the covenants or conditions required on its part to be performed pursuant to this Lease, where such failure continues for a period of thirty (30) days after receipt of written notice specifying the nature and extent of such default in detail (provided, however, that if such default is of a nature that it cannot be reasonably be cured within such thirty (30) day period, Landlord shall have such additional time as may be required to effect such cure provided Landlord commences the cure within such thirty (30) day period), Landlord shall be in default under this Lease for so long as such condition continues thereafter.

**Section 17.04.  Tenant's Remedies.**

In the event that Landlord shall at any time be in default in the observance or performance of any of the covenants and agreements required to be performed and observed by Landlord hereunder and any such default shall continue for a period of thirty (30) days after written notice to Landlord (provided, however, if the default, by its nature, is not reasonably susceptible to cure within thirty (30) days, Landlord shall have such longer period as is reasonably required so long as Landlord commences the cure within such 30-day period and thereafter diligently pursues such default to completion without interruption within a reasonable period of time, not to exceed ninety (90) days after such notice), Tenant shall be entitled at its election, in addition to all remedies otherwise provided in this Lease and otherwise available at law or in equity:

(a)     To bring suit for the collection of any amounts for which Landlord may be in default, or for the performance of any other covenant or agreement devolving upon Landlord, without terminating the Lease;

(b)     To terminate this Lease without waiving Tenant's rights to damages for Landlord's failure to perform any of its covenants or agreements hereunder. In the event Tenant shall elect to terminate this Lease, all rights and obligations of Tenant, and of any permitted successors or assigns, shall cease and terminate, except that Tenant shall have and retain full right to sue for and collect all amounts for the payment of which Landlord shall then be in default and all damages to Tenant by reason of any such breach; and/or

(c)     Cure such default for the account of Landlord, and Landlord, within ten (10) days of the receipt of a statement therefor, shall reimburse Tenant for any amount paid and any expense or reasonable contractual liability so incurred. Any sum not paid when due shall accrue interest ("Interest") thereafter at a rate equal to the lesser of the rate announced by the Wall Street Journal from time to time as the "prime rate" plus 2% per annum or the highest rate permitted by law (the interest rate determined hereby is referred to as the "Interest Rate"). In the event of an emergency, or where necessary to prevent injury to persons or damage to the Demised Premises, Tenant may cure any such default by Landlord before the expiration of the cure period set forth above, with such written or oral notice to Landlord as is appropriate under the circumstances. In the event Landlord fails to pay Tenant any sum due pursuant to this Section, within such ten (10) day period, Tenant shall be entitled thereafter to offset the amounts owed by Landlord against Rent due hereunder and if Tenant does not offset all such amounts owed by Landlord (including interest as set forth above) prior to the expiration of the Term, Tenant shall have the right to extend the Term for the time necessary to complete such offset. No deduction from the rent or

reimbursement to Tenant in accordance with this Section will constitute a default or breach by Tenant under this Lease.

**Section 17.05.  Legal Fees.**

In the event any action or proceeding at law or equity, arising out of or pursuant to this Lease, is commenced between the parties hereto, the prevailing party shall be entitled to recover its reasonable attorneys' fees, and all of the costs and expenses incurred in connection with the action or proceeding. In the event any dispute arising between the parties is resolved without court proceedings, the prevailing party shall be entitled to recover reasonable attorneys' fees, and costs in connection with such dispute.

# ARTICLE XVIII:  MISCELLANEOUS PROVISIONS

**Section 18.01.  Tenant Defined; Use of Pronoun.**

The word "Tenant" shall be deemed and taken to mean each and every person or party mentioned as a tenant herein, be the same one or more; and if there shall be more than one tenant, (i) the liability of each shall be individual, joint and several.  The use of the neuter singular pronoun to refer to Landlord or Tenant shall be deemed a proper reference even though Landlord or Tenant may be an individual, a partnership, a corporation or a group of two or more individuals, corporations or limited liability companies.  The necessary grammatical changes required to make the provisions of this Lease apply in the plural sense where there is more than one Landlord or Tenant and to either corporations, associations, partnerships or individuals, males or females, shall in all instances be assumed as though in each case fully expressed.

**Section 18.02.  Delivery of Lease.**

The parties shall be bound only upon the full execution of this Lease by an authorized officer and the delivery of such executed Lease to Tenant.

**Section 18.03.  Entire Agreement.**

This Lease and the exhibits, riders and/or addenda, if any attached, set forth the entire agreement between the parties.  Any prior conversations or writings are merged herein.  No subsequent amendment to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed.  If any provision contained in a rider or addenda is inconsistent with the provisions contained herein then the provisions contained in said rider or addenda shall supersede said provisions contained herein.  The captions, numbers and index appearing herein are inserted only as a matter of convenience and are not intended to define, limit, construe or describe the scope or intent of any paragraph, nor in any way affect this Lease.

**Section 18.04.  Partial Invalidity.**

If any provision of this Lease or the application thereof to any person or circumstance shall to any extent be invalid, the remainder of this Lease or the application of such provision to persons or circumstances other than those as to which it is held invalid shall not be affected thereby and each provision of this Lease shall be valid and enforced to the fullest extent permitted by law.

**Section 18.05.  Applicable Law.**

This Lease and the rights and obligations of the parties arising hereunder, shall be construed in accordance with the laws of the state in which the Demised Premises is located.  All headings preceding the text of the several provisions and sub provisions are inserted solely for convenience of reference and none of them shall constitute a part of this Lease or affect its meaning, interpretation or effect.  Venue for any action brought by Landlord and Tenant in relation to this Lease shall be in the County and judicial district or division in which the Demised Premises is located.

**Section 18.06.  Rules of Construction.**

The parties hereby agree that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Lease or any Addenda or Exhibits hereto and the parties agree that they had an equivalent role in creating this agreement.

**Section 18.07.  Brokerage Commission.**

Each party represents and warrants that that it has not had dealings with any real estate broker, finder or other person and that there are no claims for brokerage commissions or finders' fees in connection with the execution of this Lease.

**Section 18.08.  Force Majeure.**

Landlord and Tenant shall each be excused for the period of any delay in the performance of any obligations hereunder when prevented from doing so by a cause or causes beyond such party's control which shall include, without limitation, all labor disputes, riots, civil commotion, war, war-like operations, acts of terrorism,

invasion, rebellion, hostilities, military or usurped power, sabotage, governmental regulations or controls, fire or other casualty, inability to obtain any material, services or financing or through acts of God or other cause beyond the control of the said party.  Notwithstanding the above, unless caused solely by Landlord, no cause or event shall (i) release Tenant from, or permit a delay in, or excuse, the payment of any item of rent or additional rent as such becomes due and payable in accordance with the terms of this Lease, or (ii) delay or defer the Commencement Date after Landlord has notified the Tenant that the Demised Premises are ready for occupancy or Tenant has occupied the Demised Premises, whichever first occurs.  If, however, Tenant is unable to carry on its business in the Demised Premises due to such occurrence of force majeure, Tenant's obligations under this Lease will abate until the condition ends and Tenant is able to resume unimpaired operation of its business at the Demised Premises. Should the abatement continue for a period of one hundred and eighty (180) days, and provided Tenant is not in default of this Lease beyond any applicable cure period, Tenant shall have the right to terminate this Lease on written notice to Landlord.

**Section 18.09.  Bankruptcy or Insolvency of Tenant.**

If any sale of Tenant's interest in the Demised Premises created by this Lease shall be made under execution or similar legal process, or if Tenant shall be adjudicated a bankrupt or insolvent, and such adjudication is not vacated within sixty (60) days or if a corporate reorganization of Tenant or an arrangement with its creditors shall be approved by a court under the United States Bankruptcy Code, or if Tenant shall make an assignment for the benefit of creditors, or if in any other manner Tenant's interest under this Lease shall pass to another by operation of law, then, in any of such events, Landlord may at its option re-enter the Demised Premises and declare this Lease and the tenancy hereby created terminated.

**Section 18.10.  Confidentiality.**

Landlord and Tenant acknowledge and agree that the terms and conditions contained in this Lease is confidential and proprietary to their business operations, and shall not be disclosed to any person(s) or entity(ies) other than their respective officers, employees, lenders, accountants, and attorneys, who shall each keep the terms and conditions herein confidential.

**Section 18.11.  Landlord's Obligation To Cooperate With Tenant.**

Landlord agrees during the Lease Term to cooperate with Tenant in good faith to effectuate the foregoing rights and benefits of Tenant, including without limitation: executing any and all documents and make all appearances required therefor.

**Section 18.12.  Determination Of Days.**

Wherever under the terms of the Lease, time for performance of a monetary obligation falls on a Saturday, Sunday or legal holiday, such time for receipt of monetary payment shall be extended to the next business day; otherwise all references herein to "days" shall be calendar days (unless otherwise provided herein).

**Section 18.13.  Claims Limitation.**

All actions or claims by Landlord for Rent shall be barred three (3) years after the end of each Lease Year. All actions or claims by Tenant for recovery of excess payments of Rent shall be barred three (3) years after the end of each Lease Year, except that in the case of any component of Additional Rent, the same will not be barred until three years after Tenant's receipt of Landlord's annual reconciliation statement furnished with respect to that Lease Year.  The foregoing limitations shall not apply in the event of fraud or willful misstatement of the amounts so stated.

**Section 18.14.  Compliance with Anti-Terrorism, Embargo, Sanctions & Anti-Money Laundering Laws.**

Each party represents and warrants to the other party that the neither representing party, nor the principals, officers, partners, and/or members of that party: (i) are currently identified on the list maintained by the U.S. Department of the Treasury, Office of Foreign Assets Control ("OFAC"), generally known as the "OFAC List" (formerly known as the Specially Designated Nationals and Blocked Persons List); (ii) are currently identified on the lists maintained by the U.S. Department of Commerce (the "DOC List") and/or the U.S. Bureau of Industry and Security (the "BIS List"); (iii) act for or on behalf of any person or persons listed on the OFAC List, the DOC List, the BIS List, and/or any other known list of denied persons, excluded persons, and excluded entities maintained by the federal agencies of the United States; and (iv) is a person or persons, or acts for or on behalf of any person or persons, with whom a citizen or business of the United States is prohibited to engage in transactions by any trade embargo, economic sanction, or other prohibition of United States law, regulation, or Executive Order of the President of the United States of America.

**Section 18.15.  Tenant Contingencies.**

Tenant's obligation to pay Rent under this Lease shall be deferred until Landlord and Landlord's mortgagee provide Tenant with the SNDA and Landlord's Taxpayer Identification Number and Certification on Form W-9.

Execution Version– O'Fallon

EXHIBITS:

EXHIBIT A – Demised Premises

EXHIBIT A-1 – Legal Description

EXHIBIT B – Sign Specifications

EXHIBIT C – Estoppel

EXHIBIT D – Subordination and Non-Disturbance Agreement

EXHIBIT E – Memorandum of Lease

EXHIBIT F – Rules and Regulations and Restricted Uses

EXHIBIT G – Easement with Covenant and Restrictions

[signatures commence on following page]

IN WITNESS WHEREOF, the parties have respectively signed and sealed this Lease as of the day and year first above written.

**LANDLORD:**
**O'Fallon Missouri Properties, LLC,**
**a Missouri limited liability company**

By: _____
Name: _Jay Stenbade_
Title: _Manager_
Date of Execution: _1/14/2019_

**TENANT:**
**Art Van Furniture, LLC,**
**a Delaware limited liability company**

By: _____
Name: _Ron Boire_
Title: _CEO_
Date of Execution: _Jan 10, 2019_

END - THIS LEASE IS COMPRISED OF ARTICLES I THROUGH XVIII AND EXHIBITS A through G.

Execution Version– O'Fallon

1                         **EXHIBIT A: DEMISED PREMISES**



"PROPERTY BOUNDARY SURVEY"

# EXHIBIT A-1:  LEGAL DESCRIPTION

Legal Description:

A tract of land being part of the Northeast Quarter of Fractional Section 27, Township 47 North, Range 3 East and being more particularly described as follows:  Commencing at an old stone marking the Northeast corner of said Fractional Section 27, Township 47 North, Range 3 East, thence from said point, South 1 degree 00 minutes West along the common line between Fraction Section 27 and 26, 2487.80 feet to an old iron pipe on the Northern Right-of-Way of U.S. Highway I-70; thence along said Right-of-Way North 88 degrees 13 minutes 30 seconds West 350.03 feet to an iron pipe on said Right-of-Way, said iron pipe also marking the point of beginning of the tract herein described; thence continuing along said highway Right-of-Way, North 88 degrees 13 minutes 30 seconds West, 90.21 feet to a Right-of-Way marker opposite said Highway Station 866+00 thence North 87 degrees 35 minutes 30 seconds West, 419.93 feet to an old concrete monument on said highway Right-of-Way; thence North 1 degrees 00 minutes East 538.46 feet to an iron pipe; thence South 89 degrees 00 minutes East 30.00 feet to an iron pipe; thence South 1 degree 00 minutes West 100.00 feet to an iron pipe; thence South 89 degrees 00 minutes East 100.00 feet to an iron pipe; thence North 1 degree 00 minutes East 50.00 feet to an iron pipe; thence South 89 degrees 00 minutes East 380.00 feet to an iron pipe; thence South 1 degree 00 minutes West 500.00 feet to the place of beginning of the tract herein described as per survey and plat made by St. Charles County Engineering and Surveying, Inc., dated April 7, 1975.

Address of Property:

2101 East Tara Lane, O'Fallon, MO 63366

Parcel Number:

2-056-S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.01

1

# EXHIBIT B:  SIGN SPECIFICATIONS

**TENANT'S STANDARD CORPORATE IDENTITY PACKET**



NOTES:
AVF LOGO ON BACKER AND RACEWAY MOUNTED FURNITURE LETTERS

RACEWAY TO MATCH BUILDING MATERIAL



NOTES:
AVF LOGO AND RACEWAY MOUNTED FURNITURE LETTERS

TO MATCH SW #6321 RED BAY

 STORE DESIGN AND CONSTRUCTION

EXTERIOR SIGNS STANDARDS
ART VAN LOGO + FURNITURE

08.30.2016



BACKER FACE PAINTED TO
MATCH SW #8321 RED BAY

1" WHITE TRIM CAP

24"/7 WHITE PLEXIGLASS

1 1/2" WHITE .63 RETAINER

RACEWAY FACE PAINTED TO
MATCH SW #8321 RED BAY

1" WHITE TRIM CAP

24"/7 WHITE PLEXIGLASS

WHITE RETURNS

1 1/2" WHITE .63 RETAINER

4"X4" ALUMINUM
SQUARE TUBE

4"X4" ALUMINUM
SQUARE TUBE

ELEVATION VIEW

END VIEW

| FABRICATION NOTES | ELECTRICAL NOTES | INSTALL NOTES |
|---|---|---|
| **FURNITURE LETTERS**<br>• 5" DEEP LIGHTED CHANNEL LETTER ON 4"X8" RACEWAY<br>• WHITE ACRYLIC LETTERS FACES WITH 1" WHITE TRIM CAPS AND RETURNS<br>• SLOAN VL LONG WHITE LED ILLUMINATION<br><br>**ART VAN LOGO LETTERS**<br>• 5 DEEP CHANNEL LETTERS ON BACKER<br>• WHITE ACRYLIC LETTERS FACES WITH 1" WHITE TRIM CAP AND RETURNS<br>• SLOAN VL LONG WHITE LED ILLUMINATION<br><br>**ART VAN FRAME AND CHAIR LOGO**<br>• 5 DEEP LIGHTED CHANNEL FRAME, LOGO MOUNTED ON BACKER<br>• WHITE ACRYLIC FACES ON CHAIR LOGO AND SQUARE CAPSULE WITH WHITE .63" RETAINER CAP AND RETURNS<br>• SLOAN VL LONG WHITE LED ILLUMINATION<br>• BACKER PANEL .87 ALUM. SHEET SKIN ON 4' ALUMINUM TUBE FRAME | • SLOAN VL PLUS LONG WHITE<br>• 20 AMP 120V CIRCUIT REQUIRED<br>• POWER SUPPLIES SELF CONTAINED IN LETTERS AND CAPSULES<br>• FLUSH MOUNTED JUNCTION BOX | • RACEWAY AND LOGO MECHANICALLY FASTENED<br>• FASTENERS AS REQUIRED<br>• 3/4" PLYWOOD BLOCKING ON WALL SURFACE TO SUPPORT RACEWAY |

| STORE DESIGN AND CONSTRUCTION | EXTERIOR SIGNS STANDARDS<br>ART VAN FURNITURE SIGN | 08.30.2016 |



PREFERRED OPTION - RACEWAY MOUNTED LETTERS WITH ART VAN LOGO

NOTES:
ORACAL 8300-053 TR LIGHT BLUE
RACEWAY TO MATCH BUILDING MATERIAL

RACEWAY MOUNTED LETTERS WITHOUT ART VAN LOGO

NOTES:
ORACAL 8300-053 TR LIGHT BLUE
RACEWAY TO MATCH BUILDING MATERIAL

 STORE DESIGN AND CONSTRUCTION

EXTERIOR SIGNS STANDARDS
PURESLEEP MATTRESS STORE

08.30.2016



PREFERRED OPTION: RACEWAY MOUNTED LETTERS WITH ART VAN LOGO

NOTES:

ORACAL 8300-053 TR LIGHT BLUE

RACEWAY TO MATCH BUILDING MATERIAL



RACEWAY MOUNTED LETTERS WITHOUT ART VAN LOGO

NOTES:

2447 WHITE PLEX

RACEWAY TO MATCH PANTONE 298C





| FABRICATION NOTES | ELECTRICAL NOTES | INSTALL NOTES |
|---|---|---|
| • 5" STANDARD CHANNEL LETTER CONSTRUCTION<br>• 4"X8" 0.063 BRAKE-FORMED RACEWAY<br>• 0.063 BACK ON LIGHTED CAPSULE<br>• 0.040 RETURNS<br>• WHITE OUTLINE ON BLUE LETTER FACES | • SLOAN VL-PLUS LONG WHITE<br>• 20 AMP 120V CIRCUIT REQUIRED<br>• POWER SUPPLIES SELF CONTAINED IN LETTERS AND CAPSULES<br>• FLUSH MOUNTED JUNCTION BOX | • RACEWAY AND LOGO MECHANICALLY FASTENED<br>• FASTENERS AS REQUIRED<br>• 3/4" PLYWOOD BLOCKING ON WALL SURFACE TO SUPPORT RACEWAY |

| STORE DESIGN AND CONSTRUCTION | EXTERIOR SIGNS STANDARDS<br>PURESLEEP SIGN | 08.30.2016 |












STORE DESIGN AND CONSTRUCTION        EXTERIOR SIGNS STANDARDS        08.30.2016
                                     MONUMENT SIGN PANEL

# EXHIBIT C: ESTOPPEL

TENANT ESTOPPEL CERTIFICATE

[LANDLORD]

_____
_____
_____
_____

Re: Lease between _____, a _____ ("Landlord"), and _____, a _____ ("Tenant") dated _____, 20___, amended _____ (collectively "Lease") for space described as _____ ("Demised Premises").

1.    Tenant is the tenant under that certain lease agreement dated _____ (the **"Lease Agreement"),** between Tenant and _____ **("Landlord"),** whereby Tenant leases from Landlord the Premises, which Premises are more particularly described in the Lease Agreement. The Lease Agreement has been amended, modified, or supplemented by the following documents: _____ (the **"Amendments"**).The Lease Agreement and the Amendments, if any, are collectively referred to herein as the **"Lease".** The Lease is in full force and effect and has not been amended, modified, or supplemented, except as noted above. Tenant is in possession of the Premises and has not assigned, sublet, pledged, mortgaged, transferred, or otherwise conveyed all or any portion of its interest in the Premises or the Lease except as follows: None. Tenant understands that, in reliance on this certificate, a lender may make a loan secured in whole or in part by the Premises and/or a buyer may acquire the Premises.

2.    The Lease represents the entire agreement between Tenant and Landlord with respect to the leasing and occupancy of the Premises and there are no other written agreements or representations of any kind between Landlord and Tenant with respect thereto. Without limiting the foregoing and except as set forth in the Lease, Tenant does not have any rights of first refusal for additional space, options to increase or relocate its space, or options to purchase the Premises or any interest therein.

3.    To Tenant's current, actual knowledge, without any duty of inquiry: (i) all obligations of Landlord to be performed or complied with by Landlord through the date hereof have been fully performed and complied with including, without limitation, any obligations of Landlord to prepare the Premises for Tenant's occupancy (except as follows: None) and (ii) there exists no default, condition, state of facts, or event that, with the passing of time or the giving of notice, or both, would constitute a default by Landlord in the performance of its obligations under the Lease (except as follows: None). In addition, any tenant improvement allowance owing under the Lease has been paid other than: $_____

4.    The term of the Lease has commenced and will expire on _____, unless sooner terminated in accordance with the terms of the Lease. Tenant has no rights to extend the term of the Lease, except as otherwise set forth in the Lease.

5.    The current base rent under the Lease is $_____ per month, which has been paid for the period through _____. Tenant has not prepaid any rent or other amounts to Landlord more than one month in advance.

6.    No security deposit or other security has been given to Landlord under the Lease except as follows: $_____

7.    ☐ If the checkbox to the left is "checked" (i.e., contains an "X"), then notwithstanding anything set forth in this estoppel certificate to the contrary, Tenant is currently auditing operating expenses, taxes, etc., paid by Tenant pursuant to the Lease. Tenant is awaiting the results of such audit which may (i) reveal a previously unknown or undisclosed default of Landlord, (ii) create circumstances that might give rise to a default by Landlord under the terms of the Lease, or (iii) permit Tenant the right to a refund of charges or expenses previously paid or the right to offset against rent or other charges due or to become due under the Lease. Therefore, Tenant reserves the right to pursue any remedy available to Tenant with respect to any default, refund, offset, or otherwise disclosed by such audit.

8.    To Tenant's current, actual knowledge, without any duty of inquiry, Tenant has not filed and is not the subject of any filing for bankruptcy or reorganization under the bankruptcy or insolvency laws of the United States or of any state or territory of the United States.

9.    Notwithstanding anything set forth in this certificate to the contrary: (i) Tenant reserves the right to pursue any claim for overpayment of rent or any other charges under the Lease, if any, against Landlord and

any successor landlord after any such successor landlord succeeds to the right of any landlord, (ii) the Lease remains unchanged and this certificate does not modify, amend, or otherwise change the terms of the Lease (except with respect to the notice addresses set forth below) (i.e., the terms of the Lease shall control), (iii) any inaccurate statement in this certificate will not prevent Tenant from taking a contrary position in the future and will not subject Tenant to any damages or liability absent fraud; provided, however, that Tenant shall not be permitted to assert or enforce any claim against the party to whom this certificate is delivered (or against such party's property) which is inconsistent with the statements contained herein, except to the extent that the party against whom the claim would otherwise be asserted or enforced had actual knowledge of facts to the contrary at the time the party acted in reliance on the statement.

10.      Tenant's current address for the purpose of receiving notice under the Lease is as follows:

11.      Tenant represents that the person signing this certificate is duly authorized by Tenant to execute this certificate on Tenant's behalf.

**TENANT:**
**Rothman Furniture Stores, Inc.**


**By:**_____
**Name:** _____
**Title:**_____

## EXHIBIT D: SUBORDINATION AND NON-DISTURBANCE AGREEMENT

Store No.
RECORDING REQUESTED BY, AND
WHEN RECORDED RETURN TO:

_____
_____
_____
_____

### SUBORDINATION AND NON-DISTURBANCE AGREEMENT

This **SUBORDINATION AND NON-DISTURBANCE AGREEMENT** (the "Agreement") is made and entered into this ___ day of _____, 2_____, by and between Rothman Furniture Stores, Inc.("Tenant") and **[LENDER]**, a [entity type and jurisdiction] ("Lender") and O'Fallon Missouri Properties, LLC, a Missouri limited liability company ("Landlord").

### RECITALS

**WHEREAS,** Landlord executed a Lease dated _____, in favor of Tenant, and a memorandum covering certain Demised Premises therein described located on a parcel of real estate, a legal description of which is attached hereto and incorporated herein by this reference as **Exhibit A** (said parcel of real estate and the Demised Premises being sometimes collectively referred to herein as the "Property"); and

**WHEREAS,** Landlord has executed a Deed of Trust (the "Mortgage") dated _____, 2_____ _____, and recorded on in Book _____, Page _____, of the County Records of _____ County, State of _____ in favor of Lender, payable upon the terms and conditions described therein; and

**WHEREAS,** it is a condition to said loan that said Mortgage shall unconditionally be and remain at all times a lien or charge upon the Property, prior and superior to the Lease and to the leasehold estate created thereby; and

**WHEREAS,** the parties hereto desire to assure Tenant's possession and control of the Property under the Lease upon the terms and conditions therein contained.

**NOW, THEREFORE,** for and in consideration of the mutual covenants and premises herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and confessed by the parties hereto, the parties hereto do hereby agree as follows:

### AGREEMENT

1.    The Lease is and shall be subject and subordinate to the lien of the Mortgage, and to all renewals, modifications, consolidations, replacements, and extensions thereof, and to all future advances made thereunder.

2.    Should Lender become the owner of the Property, or should the Property be sold by reason of foreclosure or other proceedings brought to enforce the Mortgage that encumbers the Property, or should the Property be transferred by deed in lieu of foreclosure, or should any portion of the Property be sold under a trustee's sale, the Lease shall continue in full force and effect as a direct lease between the then owner of the Property covered by the Mortgage and Tenant, upon, and subject to, all of the terms, covenants and conditions of the Lease for the balance of the term thereof remaining, including any extensions therein provided. Tenant does hereby agree to attorn to Lender or to any such owner as its landlord, and Lender hereby agrees that it will accept such attornment.

3.    Notwithstanding any other provision of this Agreement, Lender shall not be: a) liable for any default of Landlord under the Lease; b) subject to any offsets or defenses that have accrued prior to the date of foreclosure, unless Tenant shall have delivered to Lender written notice of the default that gave rise to such offset or defense and has permitted Lender the same right to cure such default as is permitted Landlord under the Lease; c) bound by any Rent that Tenant may have paid under the Lease more than one month in advance; d) bound by any amendment or modification of the Lease hereafter made without Lender's prior written consent; e) responsible for the return of any security deposit delivered to Landlord under the Lease and not subsequently received by Lender.

4.    If Lender sends written notice to Tenant to direct its Rent payments under the Lease to Lender instead of Landlord, then Tenant agrees to follow the instructions set forth in such written instructions and deliver Rent payments to Lender; however, Landlord and Lender agree that Tenant shall be credited under the Lease for any Rent payments sent to Lender pursuant to such written notice.

5.    All notices that may or are required to be sent under this Agreement shall be in writing and shall be sent by first-class certified U.S. mail, postage prepaid, return receipt requested, and sent to the party at the address appearing below or such other address as any party shall hereafter inform the other party by written notice:

**Tenant:  6500 E. Fourteen Mile Rd, Warren, MI  48092**

**Landlord:**

**Lender:**

All notices delivered as set forth above shall be deemed effective three (3) days from the date deposited in the U.S. mail.

6.    Said Mortgage shall not cover or encumber and shall not be construed as subjecting in any manner to the lien thereof any of Tenant's improvements or trade fixtures, furniture, equipment or other personal property at any time placed or installed in the Demised Premises.

7.    This Agreement shall inure to the benefit of and be binding upon the parties hereto, their successors in interest, heirs, assigns, and any subsequent owner of the Property secured by the Mortgage.

8.    Should any action or proceeding be commenced to enforce any of the provisions of this Agreement or in connection with its meaning, the prevailing party in such action shall be awarded, in addition to any other relief it may obtain, its reasonable costs and expenses, not limited to taxable costs, and reasonable attorneys' fees.

9.    Except to the extend required by law, Tenant shall not be joined as a party/defendant in any action or proceeding that may be instituted or taken by reason or under any default by Landlord in the performance of the terms, covenants, conditions, and agreements set forth in the Mortgage.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first above written.

**LENDER:**
[_____]

By: _____
Name: _____
Title: _____

**TENANT:**
[_____]

By: _____
Name: _____
Title: _____

**LANDLORD:**
[_____]

By: _____
Name: _____
Title: _____

**EXHIBIT A**

**TO SUBORDINATION AND NON-DISTURBANCE AGREEMENT**

**LEGAL DESCRIPTION OF DEMISED PREMISES**

## EXHIBIT E:  MEMORANDUM OF LEASE

Prepared by and
Return to:

_____
_____
_____
_____

### MEMORANDUM OF LEASE

THIS MEMORANDUM OF LEASE is made and entered into effective this day of ____ day of _____, 2___, by and between _____, a(n) _____, whose address is _____ ("Landlord"), and [TENANT], a [COMPANY], whose address is 6500 E. Fourteen Mile Road, Warren, Michigan 48092 ("Tenant").

### W I T N E S S E T H:

WHEREAS, Landlord and Tenant entered into a lease agreement dated _____ (the "Lease), by which Landlord leased to Tenant certain real property located in the City of _____, _____ County, State of _____, commonly known as _____ (the "Premises") which Lease is incorporated herein by reference as if appearing in full; and

WHEREAS, the parties wish to provide record of public notice of the fact of the execution and existence of the Lease and all of the terms and conditions of the Lease.

NOW, THEREFORE, Landlord and Tenant do hereby state the following:

1.      <u>Lease of the Premises</u>.  Landlord does hereby lease the Premises to the Tenant, and the Tenant hereby leases the Premises from Landlord, upon the terms and conditions stipulated in the Lease.

2.      <u>Term</u>.  The initial term of this Lease is [TERM] (***) months from the Commencement Date, as defined in the Lease, unless extended or sooner terminated as provided by the Lease.

3.      <u>Option to Extend</u>.  The terms of the Lease provide Tenant with [NUMBER] (***) optional term extensions of [MONTHS] (***) months each.

4.      <u>Grant of Exclusive Use</u>.  Section 5.02 of the Lease provides in part as follows:

[exclusive provision]

5.      <u>Minimum Parking</u>.  Section 9.01 (e) of the Lease provides in part as follows:

[minimum parking provision]

6.      <u>Binding Effect</u>.  The Lease and this Memorandum shall inure to the benefit of and shall be binding upon the Landlord, its successors and assigns, and upon the Tenant and its permitted successors and assigns.

6.      <u>Notices</u>.  All notices, certificates or other communications hereunder shall be sufficiently given and shall be deemed given when mailed by registered or certified mail, postage prepaid, or overnight mail or courier addressed as follows:

To Landlord:            _____
                        _____
                        _____

27

Execution Version– O'Fallon

_____
_____

To Tenant:          [TENANT]
                    6500 E. Fourteen Mile Road
                    Warren, Michigan 48092
                    Phone: (586) 939-0800
                    Facsimile: (586) 983-3029


With a copy to:     Art Van Furniture, Inc.
                    General Counsel
                    6500 E. Fourteen Mile Road
                    Warren, Michigan 48092
                    Phone: (586) 939-0800
                    Facsimile: (586) 983-3029

The Landlord or Tenant may, by notice given to the other, designate any further or different addresses to which subsequent notices, certificates or communications shall be sent.

7.    Conflict.  In the event of a conflict between the terms and provisions of this Memorandum and the Lease, the Lease shall govern and control.


IN WITNESS WHEREOF, the Landlord and Tenant have executed this Memorandum as of the date and year first above written.

[The remainder of this page is intentionally left blank.]
[Signatures to follow on next page.]

28

**LANDLORD:**

**By:** _____
**Name:** _____
**Title:** _____

**TENANT:**

**By:** _____
**Name:** _____
**Title:** _____

STATE OF _____ )
                                        ) ss:
COUNTY OF _____ )

    Before me, the undersigned authority, a Notary Public in and for said County and State aforesaid, personally appeared _____, with whom I am personally acquainted, and who, upon oath, acknowledged himself to be the _____ of _____, the within named bargainor, a corporation, and that he as such officer, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as _____.

    Witness my hand and seal at office this _____ day of _____, 201__.

_____
Notary Public
My Commission Expires: _____

STATE OF _____ )
                                        ) ss:
COUNTY OF _____ )

    Before me, the undersigned authority, a Notary Public in and for said County and State aforesaid, personally appeared _____, with whom I am personally acquainted, and who, upon oath, acknowledged himself to be the _____ of _____, the within named bargainor, a corporation, and that he as such officer, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as _____.

    Witness my hand and seal at office this _____ day of _____, 201__.

_____
Notary Public
My Commission Expires: _____

Execution Version– O'Fallon

**EXHIBIT A TO MEMORANDUM OF LEASE**

**LEGAL DESCRIPTION**

Execution Version– O'Fallon

## EXHIBIT F:  RULES AND REGULATIONS AND RESTRICTED USES

*NONE*

Execution Version– O'Fallon

## EXHIBIT G:  RENEWAL OPTION RENT SCHEDULE

| | Year | Store (44,390 sf) | Warehouse (124,005 sf) | Total Annual Base Rent (168,395 sf) | Monthly Base Rent |
|---|---|---|---|---|---|
| Renewal Option 1 | Renewal Year 1 | $   343,134.70 | $  136,405.50 | $   479,540.20 | $    39,961.68 |
| | Renewal Year 2 | $   349,997.39 | $  136,405.50 | $   486,402.89 | $    40,533.57 |
| | Renewal Year 3 | $   356,997.34 | $  136,405.50 | $   493,402.84 | $    41,116.90 |
| | Renewal Year 4 | $   364,137.29 | $  136,405.50 | $   500,542.79 | $    41,711.90 |
| | Renewal Year 5 | $   371,420.03 | $  136,405.50 | $   507,825.53 | $    42,318.79 |
| Renewal Option 2 | Renewal Year 6 | $   378,848.44 | $  150,046.05 | $   528,894.49 | $    44,074.54 |
| | Renewal Year 7 | $   386,425.40 | $  150,046.05 | $   536,471.45 | $    44,705.95 |
| | Renewal Year 8 | $   394,153.91 | $  150,046.05 | $   544,199.96 | $    45,350.00 |
| | Renewal Year 9 | $   402,036.99 | $  150,046.05 | $   552,083.04 | $    46,006.92 |
| | Renewal Year 10 | $   410,077.73 | $  150,046.05 | $   560,123.78 | $    46,676.98 |
| Renewal Option 3 | Renewal Year 11 | $   418,279.28 | $  165,050.66 | $   583,329.94 | $    48,610.83 |
| | Renewal Year 12 | $   426,644.87 | $  165,050.66 | $   591,695.53 | $    49,307.96 |
| | Renewal Year 13 | $   435,177.77 | $  165,050.66 | $   600,228.42 | $    50,019.04 |
| | Renewal Year 14 | $   443,881.32 | $  165,050.66 | $   608,931.98 | $    50,744.33 |
| | Renewal Year 15 | $   452,758.95 | $  165,050.66 | $   617,809.60 | $    51,484.13 |
| Renewal Option 4 | Renewal Year 16 | $   461,814.13 | $  181,555.72 | $   643,369.85 | $    53,614.15 |
| | Renewal Year 17 | $   471,050.41 | $  181,555.72 | $   652,606.13 | $    54,383.84 |
| | Renewal Year 18 | $   480,471.42 | $  181,555.72 | $   662,027.14 | $    55,168.93 |
| | Renewal Year 19 | $   490,080.85 | $  181,555.72 | $   671,636.57 | $    55,969.71 |
| | Renewal Year 20 | $   499,882.46 | $  181,555.72 | $   681,438.19 | $    56,786.52 |