Case 20-10553-CSS    Doc 973    Filed 09/08/20    Page 1 of 7

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 7 |
| ) | |
| ART VAN FURNITURE, LLC, *et. al.*,[1]  ) | Case No 20-10553 (CSS) |
| ) | |
| Debtors.  ) | Jointly Administered |
| ) | |

**Hearing Date: Oct. 16, 2020 at 01:00 P.M.**
**Objection Deadline: Sept. 22, 2020 at 5:00 P.M.**

### MOTION OF ELSTON ACQUISITION, LLC FOR AN ORDER THAT (A) ALLOWS ITS CHAPTER 11 AND CHAPTER 7 ADMINISTRATIVE EXPENSE CLAIMS AND (B) COMPELS THE CHAPTER 7 TRUSTEE TO IMMEDIATELY PAY THE ADMINISTRATIVE EXPENSE CLAIMS

Elston Acquisition LLC (the "Landlord"), by and through its undersigned counsel, moves (the "Motion") the Court, pursuant to 11 U.S.C. §§ 105(a), 365(d), 503(a) and (b)(1)(A), 507(a)(2) for entry of an order (i) allowing Landlord's Chapter 7 and Chapter 11 administrative expense claims, and (ii) compelling the Trustee (defined below) to immediately pay such claims. In support of the Motion, the Landlord respectfully represents as follows:

### JURISDICTION

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Pursuant to 28 U.S.C. §§ 1408 and 1409, venue is proper before this Court.

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal EIN, are as follows: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491.); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463). The location of the Debtors' service address in these chapter 11 cases is: 6500 East 14 Mile Road, Warren Michigan 48092.

**BACKGROUND**

3.  On March 8, 2020 (the "Petition Date"), the Art Van Furniture LLC (the "Debtor") and its affiliates (collectively, the "Debtors") filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code.

4.  On April 6, 2020, the Court entered an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, effective April 7, 2020 (the "Conversion Date"). [Dkt. No 263] and on April 7, 2020, Alfred T. Giuliano was appointed as the chapter 7 trustee (the "Trustee") of the Debtors' estates. [Dkt. No 264].

5.  On April 24, 2020, the Trustee filed his Motion of the Chapter 7 Trustee for Entry of an Order Extending the Time for Performance of any Obligations of the Debtors Under Any Unexpired Lease of Nonresidential Real Property Pursuant to Section 365(d)(3) of the Bankruptcy Code [Dkt. No 342] (the "Extension Motion"). On April 27, 2020, the Court entered an order granting the Extension Motion extending the time for the Trustee to perform any obligations of the Debtors, except those specified in Section 365(b)(2), arising from and after the Conversion Date under any unexpired lease of nonresidential real property through June 6, 2020.

6.  As of the Petition Date, Landlord, as successor in interest by assignment from JPMCC 2007-C1 North Elston Avenue, LLC, and the Debtor[2] were parties to that certain Lease Agreement dated as of April 9, 2013 (as amended, supplemented, or otherwise restated, the "Lease"), pursuant to which the Debtor leased commercial property located at 2606 North Elston Avenue, Chicago IL, 60647 (the "Premises"). *See* Declaration of Andrew Gutman, attached hereto as **Exhibit A**, ¶2 (the "Gutman Decl."). A true and correct copy of the Lease is attached hereto as **Exhibit B**.

---

[2] The Debtor was formerly known as Art Van Furniture, Inc.

7. Pursuant to Section 2 of the Lease, the Debtor is obligated to pay Minimum Monthly Rent for the Premises on or before the first (1st) day of each month. *See* Lease, § 2. Additionally, pursuant to Section 18 of the Lease, in the event the Debtor does not pay Landlord any amount due under the Lease when such sum is due, the Lease entitles Landlord to collect a late fee in the amount of "the greater of (i) Five Hundred Dollars ($500.00), or (ii) two percent (2%) of the unpaid amount," as well as interest calculated at a rate of ten percent (10%) per annum. *See* Lease, § 18.

8. Pursuant to Sections 6 of the Lease, the Debtor is also obligated to pay certain taxes and additional rent to Landlord, including real estate taxes assessed with respect to the Premises. *See* Lease, § 6.

9. Subsequent to the Petition Date, the Trustee rejected the Lease effective as of July 29, 2020 (the "Rejection Date") pursuant to a Notice of Rejection of Unexpired Leases and Abandonment of Personal Property filed by the Trustee on July 29, 2020 [Dkt. No.860].

10. Landlord has not received any payments for rent or other obligations due under the Lease since the Petition Date. Gutman Decl., at ¶ 7.

11. Despite retaining continuous possession of the Premises after the Petition Date through the Rejection Date, Debtors, and thereafter the Trustee, have failed to fully and timely comply with their obligations under section 365(d)(3) of the Bankruptcy Code to pay post-petition rent and rent related charges due under the Lease for the Chapter 11 period from April 1, 2020 to April 6, 2020 in the amount of $13,178.46 (the "Chapter 11 Administrative Rent Claim") and for the Chapter 7 period from April 7, 2020 to July 29, 2020 in the amount of $247,542.03 (the "Chapter 7 Administrative Rent Claim"). Additionally, Debtors have failed to pay Stub Rent from the Petition Date to March 31, 2020 pursuant to 11 U.S.C. § 503(b)(1) in the amount of $51,049.40

(the "Stub Rent", and with the "Chapter 11 Administrative Rent" and the "Chapter 7 Administrative Rent", the "Administrative Rent"). Gutman Decl., at ¶¶ 8-9. The amount due to Landlord is broken down as follows:

|  | **March 8- March 31 (Stub Rent)** | **April 1 - April 6 (Chapter 11 Admin Rent)** | **April 7 – April 30 (Chapter 7 Admin Rent)** | **May (Chapter 7 Admin Rent)** | **June (Chapter 7 Admin Rent)** | **July 1 – July 29 (Chapter 7 Admin Rent)** |
|---|---|---|---|---|---|---|
| RENT | $34,064.52 | $8,800.00 | $35,200.00 | $44,000.00 | $44,000.00 | $41,151.29 |
| REAL ESTATE TAXES | $16,984.88 | $4,378.46 | $17,513.84 | $21,892.30 | $21,892.30 | $21,892.30 |
| **TOTAL** | $51,049.40 | $13,178.46 | $52,713.84 | $65,892.30 | $65,892.30 | $63,043.59 |

## **LEGAL AUTHORITY**

12. Section 365(d)(3) of the Bankruptcy Code imposes on a debtor in possession the obligation to perform when due all of its obligations under a lease of nonresidential real property without the need to file an administrative claim and seek immediate payment." *In re Sportsman's Warehouse, Inc.*, 436 B.R. 308, 313 (Bankr. D. Del. 2009); *see also In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 209 (3d Cir. 2001) (holding that Congress, in adopting section 365(d)(3), intended a debtor to perform all leasehold obligations as they came due).

13. In addition, when a debtor in possession fails to perform its obligations under Section 365(d)(3), a landlord is entitled under Section 503(b)(1)(A) of the Bankruptcy Code to recover as an administrative expense the actual, necessary costs and expenses of preserving the estate, including all payments due under a lease during the time the debtor occupies and uses the leased premises. *See, e.g.*, *Zagata Fabricators v. Superior Air Products*, 893 F.2d 624, 627 (3d Cir. 1990); *see also* 4 COLLIER ON BANKRUPTCY ¶ 503.06 (15th ed.).

14.     Section 365(d)(3) was added to the Bankruptcy Code in 1984 to protect landlords from the consequences of "involuntary" post-petition creditor status. The legislative history explains the reason for enacting § 365(d)(3):

> This subtitle contains three major substantive provisions which are intended to remedy serious problems caused shopping centers and their solvent tenants by the administration of the bankruptcy code. . . . A second and related problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments under the lease. In this situation, the landlord is forced to provide <u>current</u> services -- the use of its property, utilities, security, and other services -- without <u>current</u> payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the debtor. The bill would lessen these problems by requiring the trustee to perform <u>all</u> the obligations of the debtor under a lease of nonresidential real property <u>at the time required in the lease</u>. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease.

130 Cong. Rec. S8887, 8895 (daily ed. June 29, 1984) (statement of Sen. Hatch) (emphasis added); *see also In re Stone Barn Manhattan LLC*, 398 B.R. 359, 361-68 (Bankr. S.D.N.Y. 2008) (stating that Congress enacted the 1984 amendments to Section 365 "to assure commercial landlords timely receipt of post-petition rent from debtors in Chapter 11 proceedings"). It is clear that section 365(d)(3) requires the Debtors and Trustee to pay their post-petition obligations under the Lease as they come due, thereby balancing the Debtors' need to maximize value by retaining the leasehold for sale purposes, and the Landlord's inability to evict the Debtors until assumption or rejection. *See El Paso Props. Corp. v. Gonzales (In re Furr's Supermarkets, Inc.)*, 283 B.R. 60, 69 (B.A.P. 10th Cir. 2002).

15.     In addition, pursuant to Sections 507(a)(2) and 503(b)(1)(A) of the Bankruptcy Code, administrative expense claims for "actual, necessary costs and expenses of preserving [the Debtor's] estate" are entitled to priority status under the Bankruptcy Code. *See* 11 U.S.C. §

507(a)(2) (providing "administrative expenses allowed under section 503(b)" are entitled to second priority status); 11 U.S.C. § 503(b)(1)(A) ("[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including . . . "the actual, necessary costs and expenses of preserving the estate."). To determine whether a claim is entitled to administrative status under Section 503(b)(1)(A), "courts apply a two-part test: '(1) there must be a post-petition transaction between the creditor and the debtor; and (2) the estate must receive a benefit from the transaction.'" *In re Ace Mortg. Funding, LLC*, 450 B.R. 484, 489 (Bankr. D. Del. 2011). "A debtor's use and occupancy of leased premises post-petition is an actual and necessary expense of preserving the estate," and "the amount of the benefit to the estate is presumed to be the contract rate of rent." *Id.* (citations omitted).

16. Here, both elements are satisfied. First, the Landlord leased the Premises to the Debtor from the Petition Date through the Rejection Date and the Debtor, and thereafter the Trustee, continuously occupied and used the Premises during such time period. Second, the Debtor's and Trustee's continued occupancy of the Premises during the time has benefited the Debtor's estate. For example, the Debtor and Trustee stored inventory in the Premises and have been able to use the Premises notwithstanding the Debtor's and Trustee's nonpayment of their obligations under the Lease. The Debtor's estate has thus been benefited by the amount of no less than $311,769.89 consisting of the total rent due under the Lease from the Petition Date through the Rejection Date. *See In re DVI, Inc.*, 308 B.R. 703, 707-08 (Bankr. D. Del. 2004); *In re Goody's Family Clothing Inc.*, 610 F.3d 812, 819-820 (3d Cir. 2010) (granting landlord administrative expense claim for "stub period" of month following petition date).

17. As stated previously, Landlord is entitled to immediate payment of the Administrative Rent pursuant to section 365(d)(3) of the Bankruptcy Code.

WHEREFORE, Elston Acquisition LLC, respectfully requests that this Court enter an order substantially in the form attached hereto as "**Exhibit C**" that (a) allows the Chapter 11 Administrative Claim in the amount of $64,227.86 consisting of Chapter 11 Administrative Rent Claim of $13,178.46 and the Stub Rent Claim in the amount of $51,049.40; (b) allows the Chapter 7 Administrative Rent Claim in the amount of $247,542.03; (c) compels the Trustee to immediately pay the Administrative Rent Claim; and (d) grants such other further relief as this Court deems just and proper.

| | |
|---|---|
| Dated: September 8, 2020<br>Wilmington, Delaware | FAEGRE DRINKER BIDDLE & REATH LLP<br><br> */s/ Joseph N. Argentina, Jr.*<br>Joseph N. Argentina, Jr. (Del. Bar No. 5453)<br>222 Delaware Avenue, Suite 1410<br>Wilmington, DE 19801<br>Tel: (302) 467-4200<br>Fax: (302) 467-4201<br>Joseph.Argentina@faegredrinker.com<br><br>*Attorneys for Elston Acquisition LLC* |