**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ART VAN FURNITURE., *et al.*,[1] | ) | Case No. 20-10553 (CSS) |
| | ) | |
| | ) | Jointly Administered |
| | ) | Re: Docket No.679 |
| Debtors. | ) | Objections: Oct. 9, 2020 |
| | ) | Hearing: Oct. 16, 2020 at 1:00 p.m. |

**AMENDED MOTION OF BANC OF AMERICA LEASING & CAPITAL, LLC TO COMPEL PAYMENT OF ADMINISTRATIVE CLAIM FOR POST-PETITION LEASE OBLIGATIONS**

Movant BANC OF AMERICA LEASING & CAPITAL, LLC ("BALC"), by its undersigned counsel, amends its Motion, dated June 19, 2020 (Docket No. 679), for entry of an order compelling immediate payment of post-petition lease obligations to BALC pursuant to 11 U.S.C. §§ 365 and 503, based on BALC's rights under its agreements with Debtor Art Van Furniture Inc. ("Debtor"). In support of this Amended Motion, BALC states as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472): AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463). The location of the Debtors' service address in these Chapter 11 cases is: 6500 East 14 Mile Road, Warren, Michigan 48092.
.

1

## JURISDICTION

1. This bankruptcy case was filed under Chapter 11 of the United States Bankruptcy Code (the "Code") March 8, 2020 (the "Petition Date").

2. This bankruptcy case was converted to a case under Chapter 7 of the Code pursuant to the Court's Order dated April 6, 2020.

3. This Court has jurisdiction over this proceeding under 28 U.S.C. §1334, §157 and the Order of Reference of the District Court; this is a core proceeding under 28 U.S.C. §157; and venue in this Court is proper under 28 U.S.C. §1409.

4. This Motion is brought pursuant to Sections 365 and 503 of the Code, and Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Rules").

## EQUIPMENT LEASES

5. Debtor executed a Master Lease Agreement with BALC, dated August 26, 2016, in order for Debtor to lease vehicles through BALC (the "Master Lease"). A true and correct copy of the Master Lease is attached to this Amended Motion as Exhibit A.

6. On September 16, 2016, Debtor entered into the Schedule to Master Lease Agreement Schedule No. 001 with BALC ("Schedule 001") in order to lease six 2017 Kenworth T680 Tractors and other accessories (collectively, the "Schedule 001 Vehicles") pursuant to the terms of the Master Lease. A true and correct copy of Schedule 001 is attached to this Amended Motion as Exhibit B.

7. On October 31, 2016, Debtor entered into the Schedule to Master Lease Agreement Schedule No. 002 with BALC ("Schedule 002") in order to lease five 2017 Kenworth T300 Trucks and other accessories (collectively, the "Schedule 002 Vehicles") pursuant to the terms of the Master Lease. A true and correct copy of Schedule 002 is attached to this Amended Motion as Exhibit C.

8. On November 8, 2016, Debtor entered into the Schedule to Master Lease Agreement Schedule No. 003 with BALC ("Schedule 003") in order to lease five 2017 Kenworth T270 Box Trucks and other accessories (collectively, the "Schedule 003 Vehicles") pursuant to the terms of the Master Lease. A true and correct copy of Schedule 003 is attached to this Amended Motion as Exhibit D.

9. On November 17, 2016, Debtor entered into the Schedule to Master Lease Agreement Schedule No. 004 with BALC ("Schedule 004") in order to lease ten 2017 Kenworth T270 Tractors and other accessories (collectively, the "Schedule 004 Vehicles") pursuant to the terms of the Master Lease. A true and correct copy of Schedule 004 is attached to this Amended Motion as Exhibit E.

10. The Master Lease provides, under Paragraph 11 regarding "Defaults," under subheading (1), that a default occurs when Debtor, as lessee, fails to pay rent or any other amount owing under any lease within ten days of its due date.

11. Debtor defaulted on its obligations under the Master Lease and Schedule 001, Schedule 002, Schedule 003, and Schedule 004 (collectively, the

"Agreements") by failing the make monthly payments to BALC under the Agreements when due, starting in March of 2020.

12. As of Debtor's March 8, 2020 Petition Date, Debtor owed $1,572,320.23 to BALC under the Agreements.

13. No payments were made under the Agreements by Debtor, as debtor-in-possession, to BALC after the Petition Date.

14. No payments have been made under the Agreements by Alfred T. Giuliano, the duly-appointed Chapter 7 trustee (the "Trustee"), after this case was converted to a Chapter 7 case.

15. The Vehicles were under the possession and control of the Trustee following the conversion of the case to a Chapter 7 case.

16. Upon information and belief, the Vehicles were still being used for the benefit of the Debtor's bankruptcy estate, without BALC receiving the required payments for the Vehicles under the Agreements, up to and including the August 13, 2020 date of the rejection of the Agreements.

## ADDITIONAL FACTS SINCE DATE OF ORIGINAL MOTION

17. BALC filed its Motion to Compel Payment of Post-Petition Lease Obligations and Motion for Relief from Stay Concerning Personal Property on June 19, 2020 seeking to compel the Trustee to pay the post-petition obligations owed to

BALC under the Agreements, as well as for relief from the stay under Section 362(d) of the Code. the "Original Motion").

18. On August 13, 2020, the Court entered an Order Approving Stipulation (A) Continuing Motion of BALC to Compel Payment of Post-Petition Lease Obligations and (B) Granting Motion for Relief from Stay Concerning Personal Property (Docket No. 904) (the "Relief from Stay Order").

19. The Relief from Stay Order granted BALC relief from stay in order to recover the Vehicles and provided that the Agreements are rejected as of the August 13, 2020 date of the Order (the "Rejection Date").

20. The Relief from Stay Order adjourned the hearing on Original Motion, as to BALC's request to compel payment of the post-petition lease obligations, to September 9, 2020. The hearing date on the Original Motion has since been continued to October 16, 2020.

21. Upon entry of the Relief from Stay Order, BALC sought to recover each of the Vehicles by requesting the locations of the Vehicles from the Trustee.

22. The Trustee was only able to locate 24 of the 26 Vehicles. Two of the Vehicles (VIN 2NKHHM6X6HM165278 and VIN 2NKHHM6X7HM165290) (the "Missing Vehicles") have not been located and the Trustee has not been able to provide any information to BALC as to the whereabouts of the Missing Vehicles.

23. Additionally, two of the Vehicles, that BALC was able to locate, were being held in repair shops based on unpaid repairs owed for these Vehicles (the "Repaired Vehicles"). The Repaired Vehicles were not released to BALC until the costs of such repairs were paid in full.

24. Because the Trustee did not allow the Vehicles to be sold at auction from the locations where the Vehicles were being kept, all of the Vehicles that were found needed to be transported to different locations for auction.

25. Pursuant to Section 365(d)(5) of the Code, the Trustee is required to timely perform all obligations of the debtor, first arising from or after 60 days after the order for relief, under an unexpired lease of personal property until such lease is assumed or rejected unless the court others otherwise.

26. More than 60 days have passed since the date of the order for relief in these proceedings and the August 13, 2020 Rejection Date of the Agreements

27. The obligations of the Debtor to BALC under the Agreements have still not been performed by the Trustee.

28. The payments owed to BALC under the Agreements consist of monthly payments in the amount of $27,790.30.

29. The Original Motion sought entry of an order compelling the Trustee to comply with the obligations of Section 365(d)(5) of the Code in regards to payment of the post-petition rents owed to BALC under the Agreements.

30. BALC amends the Original Motion in order to include, in addition to compelling payment of the post-petition pre-rejection rents, a request to compel the Trustee to pay BALC for the loss of the Missing Vehicles, the costs of the repairs to the Repaired Vehicles, and the transporting of the Vehicles.

31. Pursuant to Sections 503(b)(1) and 365(d)(5) of the Code, BALC is entitled to an administrative claim for the post-petition pre-rejection rents under the Agreements, the repairs to the Vehicles, the transporting of the Vehicles, and the value of the Missing Vehicles.

## ADMINISTRATIVE CLAIM OF BALC FOR UNPAID RENTS

32. Section 503(b)(1) states that the Court shall allow an administrative expense claim for the "actual, necessary costs of preserving the estate…"

33. The Debtor and the Trustee apparently used the Vehicles from the Petition Date, through the conversion of case to a Chapter 7, up to and including the Rejection Date, in connection with the wind-down of the Debtor's business. The rental costs for the Vehicles were actual and necessary costs of preserving the bankruptcy estate and therefore are a proper administrative expense.

34. Furthermore, even if the Debtor or the Trustee claim that they did not use the Vehicles for the benefit of the estate post-petition, they did not reject the Agreements until the August 13, 2020 Rejection Date. Accordingly, BALC is

entitled to be paid an administrative expense priority claim for the rent owed from the Petition Date through the Rejection Date.

35. The Bankruptcy Court for the Eastern District of Michigan held that a lessor of personal property equipment is entitled to an administrative expense claim for rent during the post-petition, pre-rejected period, even when the debtor ceased operations and was not using the equipment during the post-petition, pre-rejection period. In re Palace Quality Service Induct., Inc., 283 B.R. 868, 905-906 (Bankr. E.D. Mich. 2002).

36. Bankruptcy courts have continued to hold that the award of actual rent as an administrative priority claim to the lessor is required for all post-petition rents, including the first sixty days of a commercial equipment lease. See In re Sturgis Iron & Metal Co., Inc., 420 B.R. 716, 762 (Bankr. W.D. Mich. 2009).

37. Similar to the debtor and the trustee in the Palace Quality case, the Debtor and the Trustee in the instant case had the right to possess the Vehicles notwithstanding BALC's ownership interest in the Vehicles. The cost of preserving this right was the payment of rent which has not been paid to BALC.

38. Accordingly, BALC is entitled to an administrative expense claim for the rents due and owing to BALC under the Agreements from the Petition Date to and including the August 13, 2020 Rejection Date because such use of the Vehicles during this time benefitted the bankruptcy estate. Even if Debtor or the Trustee can

show they did not use the Vehicles after the Petition Date, BALC is still entitled to an administrative expense claim for the rent owed from the Petition Date to the Rejection Date.

39. The monthly rents under the Agreements are in the amount of $27,790.30. Accordingly, prorating the portion of March that occurred after the Petition Date, and the portion of August that occurred prior to the Rejection Date, results in an administrative claim $147,728.11 for unpaid rents owed to BALC, as follows:

> March rent (3/8/20 – 3/31/20 = 23 days x $896.46 per diem):   $24,912.93*
> April rent:                                                                                                 $27,790.30*
> May rent:                                                                                                   $27,790.30
> June rent:                                                                                                  $27,790.30
> July rent:                                                                                                  $27,790.30
> August rent (8/1/20 – 8/13/20 = 13 days x $896.46 per diem):   $11,653.98
>
> TOTAL:                                                                                                      $147,728.11

\*- The rents for March and the first six days of April are Chapter 11 administrative claims while the remaining rents are Chapter 7 administrative claims.

### ADMINISTRATIVE CLAIM OF BALC FOR TRUSTEE'S FAILURE TO SAFEGUARD VEHICLES

40. Section 704(a)(2) of the Code requires that the trustee "be accountable for all property received." Trustees are bound to use due diligence in the discharge of their duty to secure possession of all of the debtor's property. See Collier on Bankruptcy, ¶ 704-8 & 9. The obligation of the trustee is to "carefully preserve the

9

assets in his possession, upon pain of surcharge, from deterioration or dissipation." Collier on Bankruptcy, at ¶ 704-9.

41. A bankruptcy trustee is a fiduciary of the estate's creditors, and a trustee's duty to collect and conserve the assets of the estate, and to maximize distribution to creditors, is a fiduciary duty. In re Melenyzer, 140 B.R. 143, 154 (Bankr. W.D. Tex. 1992).

42. The Trustee neglected his duties to secure and preserve BALC's property regarding the Missing Vehicles. The Supreme Court previously held that damages resulting from a receiver's tortious conduct are "actual and necessary costs" of administering an estate and therefore give rise to an administrative claim. Reading Co. v. Brown, 391 U.S. 471, 485, 88 S.Ct. 1759, 1767, 20 L.Ed2d 751 (1968). The Supreme Court found that it has long been the rule of equity receiverships that torts in the receivership result in claims against the receivership itself. Id., at 483.

43. The loss of the Missing Trucks resulted from the Trustee's negligence, willful conduct, and/or breach of his fiduciary duties.

44. Such breach of the Trustee's fiduciary duties caused damage to BALC. Accordingly, BALC is entitled to an administrative claim for the value of the Missing Vehicles.

45. The Agreements provide, Paragraph 5 of the Master Agreement, that the Debtor is to pay the Stipulated Loss Value, as defined in Paragraph 15 of the Master Agreement, for the Vehicles. The Stipulated Loss Value is provided in each Schedule to the Master Agreement regarding the amounts owed as of the date of the loss.

46. As of the August 13, 2020 Rejection Date, the combined Stipulated Loss Value for the two Missing Vehicles was $115,912.28. A true and correct copy of the account statement for the Stipulated Loss Value of the Missing Vehicles is attached to this Amended Motion as Exhibit F.

47. Accordingly, BALC is entitled to an additional administrative claim in the amount of $115,912.28 for the Stipulated Loss Value for the Missing Vehicles.

### ADMINISTRATIVE CLAIM OF BALC FOR COSTS OF REPAIRS AND RECOVER TO VEHICLES

48. Paragraph 8 of the Master Agreement, regarding the return of the Vehicles, requires the Debtor to return the Vehicles to BALC to a location within a 300-mile radius of Debtor's address at 6500 East 14 Mile Road, Warren, Michigan, in the condition described in Paragraph 4 of the Master Agreement.

49. Paragraph 4 of the Master Agreement provides that the Debtor is to maintain the Vehicles in "the same condition as when received, ordinary wear and tear excepted."

50. As of the date of this Amended Motion, BALC has been required to pay for the repairs that were done to the Repaired Vehicles so that the Repaired Vehicles would be released from the repair shops where they were being kept.

51. The costs for the repairs to the Repaired Vehicles were $5,144.62 for VIN 2NKHHM6X0HM165289, and $1,969.74 for VIN 2NKHHM6X5HM165286, for a combined $7,114.36 paid for the repairs to the Repaired Vehicles. True and correct copies of the invoices for the Repaired Vehicles are attached to this Amended Motion as Exhibit G.

52. The Trustee did not allow BALC to have the Vehicles sold at the Debtor's location. Instead, BALC was required to engage Taylor & Martin to transport the Vehicles to an auction location near Pittsburgh, Pennsylvania. The cost of transporting the Vehicles incurred by BALC will likely be $500 per unit for a total of $12,000.00 to be paid by BALC to transport the 24 Vehicles which were recovered.

53. The costs for the repairs to the Repaired Vehicles, and the costs for transporting the 24 Vehicles, are costs that would not have been incurred if the Vehicles were provided to BALC in the manner required under Paragraphs 4 and 8 of the Master Agreement.

54. The costs for the repairs and the transporting of the Vehicles are costs incurred by BALC after the Petition Date and were obligations owed to BALC under

the Agreements. Accordingly, BALC is entitled to an additional administrative claim in the combined amount of $19,114.36, plus any additional costs and expenses which may still be incurred by BALC in repairing, transporting, and selling the Vehicles at auction.

ACCORDINGLY, Banc of America Leasing & Capital, LLC respectfully requests that the Court enters an order:

A. Granting this Amended Motion;

B. Directing the Trustee to comply with the obligations of Sections 365(d)(5) and 503(b)(1) of the Code and immediately pay the obligations owed to BALC under the Agreements, in an amount to be determined, which is presently $277,954.75, including:

1. $147,728.11 for unpaid rents owed to BALC for the period after the March 8, 2020 Petition Date and before the August 13, 2020 Rejection Date;

2. $115,912.28 for the Stipulated Loss Value for the Missing Vehicles;

3. $19,114.36, for the costs incurred to date by BALC for the repairs to the Repaired Vehicles and transporting the Vehicles;

4. any additional costs and expenses which may still be incurred by BALC in repairing, transporting, and selling the Vehicles at auction

C. Such further relief as the Court deems just and equitable.

| | |
|---|---|
| Date: September 30, 2020 | THE POWELL FIRM, LLC |
| | |
| | /s/ Jason C. Powell |
| | Jason C. Powell, Esquire (No. 3768) |
| | 1201 North Orange Street, #500 |
| | P.O. Box 289 |
| | Wilmington, Delaware 19899 |
| | Phone: 302-650-1572 |
| | Fax: 302-650-1574 |
| | Email: jpowell@delawarefirm.com |
| | |
| | -and- |
| | |
| | KOHNER, MANN & KAILAS, S.C. |
| | |
| | /s/ Eric R. von Helms |
| | Eric R. von Helms, Esq. |
| | Wisconsin Bar ID: 1043206 |
| | 4650 North Port Washington Road |
| | 2nd Floor North |
| | Milwaukee, Wisconsin 53212 |
| | Telephone: (414) 962-5110 |
| | Facsimile: (414) 962-8725 |
| | Email: evonhelms@kmksc.com |
| | |
| | *Counsel to Banc of America Leasing & Capital, LLC.* |