Truck


**Bank of America**

| Banc of America Leasing & Capital, LLC | Schedule to Master Lease Agreement | Schedule Number 002 |
|---|---|---|

This Schedule ("**Schedule**"), dated as of October 31, 2016, between **Banc of America Leasing & Capital, LLC** ("**Lessor**") and **Art Van Furniture, Inc.** ("**Lessee**") is executed pursuant to Master Lease Agreement Number 31691-90000, dated August 26, 2016 (the "**Master Lease**"), which is incorporated into this Schedule by this reference. Unless otherwise defined in this Schedule, capitalized terms used in this Schedule have the respective meanings assigned to such terms in the Master Lease. If any provision of this Schedule conflicts with any provision of the Master Lease, the provisions contained in this Schedule shall prevail. Lessee hereby authorizes Lessor to insert the serial numbers and other identification data of the Equipment, dates, and other omitted factual matters or descriptions in this Schedule.

1. **Description of Equipment; Location.** The Equipment subject to this Schedule, which has a cost to Lessor in the aggregate of $397,400.00, which may include taxes, shipping, installation and other related expenses, if any (collectively "**Lessor's Cost**"), are as follows:

| Qty. | Year | Make | Model | Description | Vehicle Identification No. | Unit Cost | Fees | Total Cost |
|---|---|---|---|---|---|---|---|---|
| 1 | 2017 | Kenworth | T300 | Truck | 2NKHHM6X2HM165276 | $78,764.00 | $716.00 | $79,480.00 |
| 1 | 2017 | Kenworth | T300 | Truck | 2NKHHM6X4HM165277 | $78,764.00 | $716.00 | $79,480.00 |
| 1 | 2017 | Kenworth | T300 | Truck | 2NKHHM6X8HM165279 | $78,764.00 | $716.00 | $79,480.00 |
| 1 | 2017 | Kenworth | T300 | Truck | 2NKHHM6XXHM165283 | $78,764.00 | $716.00 | $79,480.00 |
| 1 | 2017 | Kenworth | T300 | Truck | 2NKHHM6X5HM165286 | $78,764.00 | $716.00 | $79,480.00 |
| | | | | | | | Grand Total: | $397,400.00 |
| | | | | | | | Payment Total: | $4,624.60 |

**Location of Equipment.** The Equipment will be located or (in the case of over-the-road vehicles) based at the following locations:

| Location | Address | City | County | State | ZIP |
|---|---|---|---|---|---|
| A | 6500 East 14 Mile Road | Warren | Macomb | MI | 48092 |

2. **Acceptance.** Lessee acknowledges and represents that the Equipment (a) has been delivered to, received and inspected by Lessee, (b) is in good operating order, repair, condition and appearance, (c) is of the manufacture, design and capacity selected by Lessee and is suitable for the purposes for which the Equipment is leased, and is acceptable and satisfactory to Lessee, (d) do not require any additions or modifications to make them suitable for use, other than ancillary modifications or additions normally made by lessees of similar assets, and are available for use and lease by Lessee and Lessor, and (e) have been irrevocably accepted as "Equipment" leased by Lessee under this Schedule as of the date written below (the "**Acceptance Date**"). Lessee hereby authorizes and directs Lessor to reimburse Lessee or pay Vendors for the purchase price of the Equipment in accordance with Vendors' invoices therefor, receipt and approval of which are hereby reaffirmed by Lessee.

3. **Lease Term.** The original Lease Term for the Lease of Equipment under this Schedule consists of: (i) an "**Interim Term**" (if any) beginning on the Acceptance Date, and continuing through and including the day preceding the Base Date; and (ii) a "**Base Term**" of sixty (60) months, beginning on November 28, 2016 (the "**Base Date**").

4. **Rent.** Rent payable under this Schedule consists of: (i) "**Interim Rent**", which shall be due Lessor for each day of the Interim Term and equal the daily equivalent of the initial Base Rent, and payable on the Base Date; and (ii) "**Base Rent**", which shall be payable in arrears in sixty (60) consecutive monthly installments of $4,624.60 each, or as set forth in the Schedule of Base Rent installments attached hereto, with the first Base Rent installment being payable thirty (30) days following the Base Date and the remaining Base Rent installments being payable on the 28th day of each succeeding month.

5. **Tax Exemption; Personal Property Taxes.** Lessor will invoice Lessee for all sales and use taxes as and when due and payable in accordance with applicable law, unless Lessee timely delivers to Lessor a valid exemption certificate with respect to such taxes. Delivery of such certificate shall constitute Lessee's representation and warranty that no such taxes shall become due and payable with respect to the Equipment, and Lessee shall indemnify and hold harmless Lessor from and against any and all liability or damages, including late charges and interest which Lessor may incur by reason of the assessment of such taxes. Notwithstanding any provision to the contrary in this Lease, Lessor shall file directly with all appropriate taxing authorities all declarations, returns, inventories and other documentation with respect to any personal property taxes due or to become due with

respect to the Equipment ("**Taxes**") and shall pay on or before the date when due all such Taxes assessed, billed or otherwise payable with respect to such Equipment directly to such taxing authorities. Lessee shall indemnify and, upon demand, reimburse Lessor for all Taxes paid by Lessor. The indemnity, covenants and reimbursement obligations set forth herein shall continue in full force and effect and shall survive the expiration or earlier termination of this Lease.

6. **Tax Matters.** Lessee represents, warrants and agrees that (i) Lessee will not claim that Lessee is the owner of the Equipment or that Lessee is otherwise entitled to all or any of the Tax Benefits; (ii) the Equipment will not require any improvements, modifications, or additions (other than ancillary or incidental items of removable equipment) in order to be rendered complete for its intended use by Lessee; (iii) the Equipment will not constitute "limited use property" within the meaning of Rev. Proc. 2001-28; (iv) during the Lease Term, Lessor shall not be required to include in its gross income for federal income tax purposes (1) any amount derived from the cost of any alteration, addition, improvement, modification, replacement, or substitution of the Equipment or from any refund or credit from the Vendor of the Equipment or (2) any foreign source income under Section 863 of the Code; (v) the Equipment will not constitute "public utility property" or "tax-exempt use property" within the meaning of Sections 168(i)(10) or 168(h) of the Code; and (vi) the Equipment constitutes "qualified property" eligible for the additional "bonus depreciation" deduction allowance described in Section 168(k) of the Internal Revenue Code of 1986, as amended, and Lessee acknowledges that Lessor has assumed such eligibility in reliance upon the foregoing representation and warranty of Lessee. The definition of "Tax Benefits" set forth in Section 7(c) of the Master Lease is hereby amended to include such allowance, and any loss, disallowance, recapture or delay in claiming of such allowance shall constitute a "Tax Loss" as defined therein.

7. **Further Representations and Agreements.** Lessee represents, warrants and agrees as follows: (a) all representations and warranties of Lessee contained in the Master Lease are restated as of the Acceptance Date and are true and correct as of such date; (b) there has been no material adverse change in the operations, business, properties or condition, financial or otherwise, of Lessee or any Guarantor since the date of the most recent financial statements provided pursuant to the Master Lease; (c) there exists no Default or Event of Default as of the Acceptance Date; and (d) the operation and maintenance of any Equipment in the ordinary course by Lessee does not require the entry into any software or other intellectual property rights agreement with any licensor or other person, except as disclosed to Lessor in writing prior to the Acceptance Date.

8. **Lease Options.**

Extension; Purchase Options. Provided no Event of Default has occurred and remains uncured, and upon Lessee having provided Lessor with written notice not more than 360 days or less than 90 days prior to expiration of the Lease Term, Lessee may irrevocably elect to:

(i) extend the Lease Term as to all and not less than all of the Equipment under this Schedule for a renewal period to be agreed upon by Lessee and Lessor for an amount equal to the then fair market rental value of the Equipment, as determined by Lessor, plus applicable taxes, payable monthly by Lessee to Lessor on the first day of each month during the extension term, or

(ii) purchase all of Lessor's right, title and interest in and to all, but not less than all, of the Equipment under this Schedule, free from all liens and encumbrances created by Lessor, but otherwise on an "AS-IS, WHERE-IS," quitclaim basis, for a purchase price equal to: the then fair market value of the Equipment, as reasonably determined by Lessor; *plus* all Base Rent Installments, late charges and other amounts then due and owing under the Lease; *plus* all applicable taxes, assessments and other charges due or payable in connection with the sale of the Equipment (collectively, the "**Purchase Price**"). Lessee shall pay Lessor the Purchase Price on or before the expiration of the Base Term in immediately available funds.

As used herein, "fair market value" means the amount which would be obtained in an arm's-length transaction between an informed and willing buyer-user (other than a buyer-user currently in possession or a used equipment or scrap dealer) and an informed and willing seller, each under no compulsion to buy or sell, and "fair market rental value" means the amount which would be obtained in an arm's-length transaction between an informed and willing lessee (other than a lessee currently in possession) and an informed and willing lessor, each under no compulsion to lease; provided, however, that in each such determination (a) the costs of removal of any Equipment from the location of current use shall not be a deduction from such value, (b) it shall be assumed (whether or not the same be true) that the Equipment has been maintained and would have been returned to Lessor in compliance with the requirements of this Lease, and (c) if any Equipment has been attached to or installed on or in any other property leased or owned by Lessee, the value for such Equipment shall be determined on an installed basis, in place and in use.

9. **Registration; Special California Regulatory Notice.**

(A) Registration:

(i) All items of Equipment that are motor vehicles shall at all times be registered and titled as follows:

(a) Registered Owner. **Banc of America Leasing & Capital, LLC (Lessor)**
c/o Art Van Furniture, Inc. **(Lessee)**
6500 East 14 Mile Road
Warren, MI 48092

(b) Lienholder. **Banc of America Leasing & Capital, LLC**
2059 Northlake Parkway, 3rd Floor
Tucker, GA 30084

(ii) Lessee shall be responsible for the correct titling of all such items of Equipment. Lessee shall cause the original certificates of title to be delivered to Lessor for retention in Lessor's files throughout the term of the Schedule. All costs of such registration and licensing are for the account of Lessee.

(B) Notice to Lessee Operating Certain Motor Vehicles in California:

As to any Equipment consisting of a heavy-duty tractor and/or box-type trailer, Lessee understands that when using a heavy-duty tractor to pull a 53-foot or longer box-type trailer on a highway within California, the heavy-duty tractor and box-type trailer must be compliant with sections 95300 – 95312, title 17, California Code of Regulations, and that it is the responsibility of Lessee to ensure this heavy-duty tractor and/or box-type trailer is compliant. The regulations may require any Equipment consisting of a heavy-duty tractor and/or box-type trailer to have low-rolling-resistance tires and aerodynamic technologies that are U.S. Environmental Protection Agency (U.S. EPA) SmartWay Verified Technologies prior to current or future use in California, or may entirely prohibit use of this tractor in California if it is a model year 2011 or later tractor and is not a U.S. EPA SmartWay Certified Tractor. The Lease does not prohibit the Lessee from modifying the trailer to be compliant with the cited regulations.

**10. Lessor Tax Disclosure.** Lessor has assigned its rights, but not its obligations, to purchase the Equipment to BAL Servicing Corporation ("BALSC"). In the event that Lessee at any time purchases the Equipment from Lessor, pursuant to a purchase option set forth in the Lease or otherwise, Lessee is hereby notified that Lessor has assigned to BALSC its rights, but not its obligations, in the sale of the Equipment to Lessee. This notice is provided in accordance with Internal Revenue Code Section 1031 and related federal income tax authority and does not affect any of Lessee's rights, or Lessor's obligations, under the Lease.

| BANC OF AMERICA LEASING & CAPITAL, LLC | ART VAN FURNITURE, INC. |
|---|---|
| By: *Carol Burton-Riley* | By: *Gary Van Eslander* |
| Printed Name: **Carol Burton-Riley** | Printed Name: Gary Van Eslander |
| Title: **Vice President** | Title: President |
| | Acceptance Date: November 2, 2016 |

Where multiple counterpart originals of this Schedule have been executed by Lessee and Lessor, only the counterpart marked "Lessor's Copy" shall be deemed chattel paper evidencing the Lease of Equipment subject to this Schedule, and a security interest in such chattel paper and Lease may be perfected through the transfer and possession of the "Lessor's Copy" of such Schedule only, without the need to transfer possession of the Master Lease, any Related Agreement or any other document executed and delivered in connection with this Lease.

The terms applicable to the Lease of Equipment subject to this Schedule are supplemented by the following:
Annex I:   Schedule of Stipulated Loss Values
Annex II:  Supplemental Maintenance and Return Conditions

ANNEX I
TO
SCHEDULE NO. 002
31691-90000

SCHEDULE OF
STIPULATED LOSS VALUES

| Base Rent Installment Number | Stipulated Loss Value Percentage | Base Rent Installment Number | Stipulated Loss Value Percentage |
|---|---|---|---|
| 0 | 103.50000 | 31 | 76.08797 |
| 1 | 102.71376 | 32 | 75.16082 |
| 2 | 101.86869 | 33 | 74.23065 |
| 3 | 101.02074 | 34 | 73.29767 |
| 4 | 100.16989 | 35 | 72.36360 |
| 5 | 99.31611 | 36 | 71.42648 |
| 6 | 98.45891 | 37 | 70.48655 |
| 7 | 97.59878 | 38 | 69.54552 |
| 8 | 96.73521 | 39 | 68.60142 |
| 9 | 95.86871 | 40 | 67.65427 |
| 10 | 94.99927 | 41 | 66.70428 |
| 11 | 94.12637 | 42 | 65.75317 |
| 12 | 93.25053 | 43 | 64.79922 |
| 13 | 92.37172 | 44 | 63.84414 |
| 14 | 91.48945 | 45 | 62.88598 |
| 15 | 90.60422 | 46 | 61.92496 |
| 16 | 89.71603 | 47 | 60.96281 |
| 17 | 88.82502 | 48 | 59.99756 |
| 18 | 87.93206 | 49 | 59.02945 |
| 19 | 87.03626 | 50 | 58.06018 |
| 20 | 86.13851 | 51 | 57.08781 |
| 21 | 85.23778 | 52 | 56.11233 |
| 22 | 84.33420 | 53 | 55.13502 |
| 23 | 83.42865 | 54 | 54.16613 |
| 24 | 82.52010 | 55 | 53.19542 |
| 25 | 81.60869 | 56 | 52.23314 |
| 26 | 80.69530 | 57 | 51.26777 |
| 27 | 79.77890 | 58 | 50.30059 |
| 28 | 78.85949 | 59 | 49.34184 |
| 29 | 77.93730 | 60 | 48.38000 |
| 30 | 77.01402 | | |

ANNEX II
TO
SCHEDULE NO. 002
31691-90000

## SUPPLEMENTAL MAINTENANCE AND RETURN CONDITIONS

### MOTOR VEHICLES

In addition to the maintenance and return provisions applicable to all Equipment set forth in the Master Lease, the following shall apply to the Equipment subject to the Schedule:

1. The Equipment shall be operated only by appropriately licensed drivers to be selected, employed, controlled and paid by Lessee and who shall be conclusively presumed to be the agents of Lessee. Such Equipment shall be operated in a safe and reasonable manner so as to prevent loss or damage to such Equipment or other property and injury to third parties. Lessee will, at its sole expense: (a) replace all parts and tires for such Equipment as specifically provided for herein and supply all gasoline, oil, grease and other items required in the operation of such Equipment; (b) prior to any operation of such Equipment, obtain all titles, registrations, registration plates, permits and licenses, including all renewals thereof, which are required for the lawful ownership, use and operation of such Equipment; (c) cause such Equipment to be titled and registered in the name of Lessor as owner and first and sole lienholder, or in such other manner as Lessor shall direct; (d) furnish all original certificates of title, lien registration notices and related documentation to Lessor; and (e) retain all certificates of registration (and where required by applicable law, a copy of the Lease) in such Equipment. Lessor may furnish Lessee with a limited power of attorney for the sole and limited purpose of effecting said titling, registration and licensing.

2. Lessee shall ensure that all Equipment and Equipment operations conform to all applicable local, state, and federal laws, health and safety guidelines. Upon return, the Equipment will be complete and operational with all components as originally supplied and will have passed U. S. Department of Transportation ("DOT") or appropriate regulatory agency requirements for operation. If applicable, an inspection sticker or certificate will be furnished to Lessor verifying compliance with any regulatory requirements. Lessee shall satisfy all legal and regulatory conditions necessary for Lessor to sell or lease the Equipment to a third party. Lessee will keep all licenses and operating certificates required for operation of the Equipment current during the Lease Term.

3. In addition to the provisions of Section 7 of the Master Lease, Lessee will pay when due, and will indemnify and hold Lessor and its assigns harmless from and against: (a) any license, titling, registration or other fees, liabilities, losses, damages, penalties, claims, actions, suits, costs and expenses, including legal expenses, of every kind and nature whatsoever, imposed on, incurred by, or asserted against Lessor or its agents, successors and assigns, in any way relating to or arising out of any power of attorney issued by Lessor to any person or persons designated by Lessee to apply on behalf of Lessor for applications for the licensing, titling or registration of such Equipment, or any odometer certification with respect to such Equipment; and (b) all towing charges, parking tolls, fines, parking and speeding tickets and other civil and criminal motor vehicle violations (and all fines, penalties and interest applicable thereto) with respect to such Equipment. Lessee shall pay and shall file all returns with respect to all highway use taxes with respect to the Equipment, unless otherwise directed in writing by Lessor.

4. Lessee shall, at its expense, at all times maintain, and at the expiration or termination of the Lease Term re-deliver, the Equipment in accordance with the following provisions:

General Condition. The Equipment must be able to pass Federal Highway Administration inspection. The Equipment shall be structurally sound with no material structural or mechanical damage, in good overall appearance, clean and cosmetically acceptable to Lessor, with no missing or damaged parts, ordinary wear and tear excepted.

The Equipment shall be free of all rust and corrosion. No glass shall be broken or cracked, no upholstery shall have any cuts or burns and there shall be no physical damage to exterior or interior materials from normal use that exceeds $250 in the aggregate and no physical damage from accidents.

Upon return, all items of Equipment shall be completely de-identified, including but not limited to all commercial logos, advertising, graffiti, Lessee insignia and lettering. The de-identified surfaces shall be repaired and refinished in such a way that the area blends in with the remainder of the item's overall appearance. Manufacturer's identity plates and markings shall not be removed or obscured.

Fuel tanks must be at least twenty-five percent (25%) full.

Documents and Records. Written records of scheduled and other maintenance and repair work done shall be kept, dated, and signed by the appropriate authority. A service history or log will be maintained during the Lease Term, in English, and a copy provided to Lessor upon request during the Lease Term, or at the expiration or other termination (by acceleration or otherwise) of the Lease. All maintenance records, maintenance record jackets, repair jackets, repair orders, license plates, registration certificates and all other similar documents, in their entirety, must be returned to Lessor.

Tires. All tires shall be matched on each item of Equipment by the same type and tread design, original size, and manufacturer, and have a minimum of 12/32 inch of remaining tread depth. All front tires shall be original casings. One-time only recapped rear tires are acceptable provided that they comply with DOT requirements. All tires shall be free of flat or bald spots, cupping, dry rot, cuts and exposed cords.

Annex II – Supplemental Maintenance and Return Conditions
Page 2

Mechanical Power Train. Lessee shall repair to Lessor's reasonable satisfaction any item of Equipment which has engine knock, is smoking, is misfiring, has abnormal engine vibration, or leakage. There shall be no cracked cylinder heads or engine blocks, excess blow-by, exhaust system leakage or oil leakage; the transmission and rear axles shall be capable of pulling loads to their full rated capacity; there shall be no transmission, drive axle or wheel hub oil leaks and there shall be no slipping or grabbing clutch.

An In-Frame engine rebuild is required at 500,000 miles for small block engines and at 800,000 miles for large block engines. All electronic engines must have the password removed prior to turn-in.

Brakes. Brake drums and linings shall not be cracked and shall not exceed manufacturer's recommended wear limits. Brake linings on each item of Equipment shall have a minimum of 3/8 inch of remaining wear on each lining.

Batteries and Electrical System. Batteries must be capable of starting the Equipment unassisted and of holding a charge. Electrical system (including lighting) must be fully operational.

Maintenance. Lessee shall strictly follow the manufacturer's recommended maintenance and service schedule, as required to validate any warranty, at Lessee's sole cost and expense. Any maintenance or repair work shall comply with the guidelines and procedures as specified by the manufacturers of the Equipment or each component of the Equipment. Lessee will use only original manufacturer's approved replacement parts and components in the performance of any maintenance and repair of the Equipment. Lessee will at all times maintain the Equipment in good operational condition and appearance, and shall not discriminate in such maintenance between owned or leased Equipment.

Mileage. Average annual mileage, in the aggregate, for each unit shall not exceed 35,000 miles. Should mileage exceed this limit, Lessee agrees to pay a mileage surcharge of five and one half cents ($0.005) per mile in excess of this mileage limit.

Mandatory Alterations. Changes, modifications or additions to the Equipment mandated by Federal, state or local authorities will be completed by, and at the sole cost and expense of, Lessee and shall automatically be deemed the property of Lessor.

Pre-Surrender Inspection. Prior to any surrender of the Equipment, an in depth physical inspection will be conducted by an appropriate manufacturer's service representative(s) or independent service organization on behalf of and selected by Lessor, and paid for by Lessee. Any part, component or function found not to be within the manufacturer's tolerances and operational specifications will be replaced or brought within those tolerances and specifications to the satisfaction of Lessor, at the sole cost and expense of Lessee.