**Exhibit "A"**

# CLOSED END MOTOR VEHICLE LEASE
## (WITH ARBITRATION PROVISION)

Cadillac

Lease Date: 11/05/2018

| Lessor Name and Business Address | Lessee Name and Address | Co-Lessee Name and Address |
|---|---|---|
| LES STANFORD CHEVROLET CADILLAC<br>21730 MICHIGAN AVE<br>DEARBORN MI 48124 | ART VAN FURNITURE,LLC<br>6500 E 14 MILE RD<br>WARREN MI 48092-1295<br>County: OAKLAND | N/A<br>County: |

| Lessee Billing Address (If different than above) | Vehicle Garaging Address (If different than above) |
|---|---|
| N/A | N/A<br>County: Principal Driver: N/A (if business use) |

In this Lease, "you" and "your" mean the lessee and co-lessee. "We," "us" and "our" mean the lessor, and any assignee of this Lease. The terms, conditions, and disclosures in this Lease govern your Lease with us. Each of you who signs the Lease is jointly and severally liable to us for all Lease obligations. You are leasing the Vehicle described below (the "Vehicle") from us. You agree to pay all amounts due under the Lease and fulfill all your obligations under the Lease. In this Lease, "e" means an estimate. The Consumer Leasing Act Disclosures shown below are also terms of this Lease. You are leasing the Vehicle and have no ownership rights in the Vehicle unless you exercise your purchase option.

**Monthly Payment Lease:** If your payment schedule shows monthly scheduled payments in Item 3A, your lease is a monthly payment lease.
**Single Payment Lease:** If your payment schedule shows a single scheduled payment in Item 3B, your lease is a single payment lease.

**1. The Vehicle**

| New/Used | Year | Make | Model | Body Style | Vehicle ID # | Odometer | Primary Use |
|---|---|---|---|---|---|---|---|
| NEW | 2018 | CADILLAC | CT6 SEDAN | 4DR SDN LUX | 1G6KB5RS9JU159214 | 28 | Personal, unless otherwise indicated below ☒ business ☐ agricultural |

**CONSUMER LEASING ACT DISCLOSURES**

**2. Amount Due at Lease Signing or Delivery** (Itemized in Item 6) $ 25160.36

**3. Scheduled Payments**
A. Your first monthly payment of $ N/A is due on N/A, followed by N/A monthly payments of $ N/A, due on the N/A of each month.
B. Your single payment of $ 15783.12 is due on 11/05/2018
C. The Total of your Scheduled Payments is $ 15783.12

**4. Other Charges** (not part of your scheduled payment)
A. Disposition fee (if you do not purchase the Vehicle and we do not waive the fee under Item 23(l)) $ 595.00
B. N/A $ N/A
C. N/A $ N/A
D. Total $ 595.00

**5. Total of Payments** (The amount you will have paid by the end of the Lease) $ 25755.36 (2 + 3C + 4D − 6A3 − 6A4 − 6A5)

**6. Itemization of Amount Due at Lease Signing or Delivery**

| A. Amount Due at Lease Signing or Delivery: | |
|---|---|
| 1. Capitalized cost reduction | $ 7620.00 |
| 2. Taxes on capitalized cost reduction | $ 457.20 |
| 3. First monthly payment | $ N/A |
| 4. Single scheduled payment | $ 15783.12 |
| 5. Refundable security deposit | $ N/A |
| 6. Lease acquisition fee | $ 650.00 |
| 7. Title fees | $ 15.00 |
| 8. License and registration fees | $ 372.00 |
| 9. Sales/use tax | $ 14.04 |
| 10. DOC FEE | $ 210.00 |
| 11. ACQ TAX | $ 39.00 |
| 12. Total | $ 25160.36 |

| B. How the Amount Due at Lease Signing or Delivery will be paid: | |
|---|---|
| 1. Net trade-in allowance | $ N/A |
| 2. Rebates and noncash credits | $ 7620.00 |
| 3. Amount to be paid in cash | $ 17540.36 |
| 4. Other N/A | $ N/A |
| 5. Total | $ 25160.36 |

**7. Your scheduled payment is determined as shown below:**

| | | |
|---|---|---|
| **A. Gross capitalized cost.** The agreed upon value of the Vehicle ($ 57831.50) and any items you pay over the Lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance). | | $ 57831.50 |
| **B. Capitalized cost reduction.** The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the gross capitalized cost. | − | $ 7620.00 |
| **C. Adjusted capitalized cost.** The amount used in calculating your base scheduled payment. | = | $ 50211.50 |
| **D. Residual value.** The value of the Vehicle at the end of the Lease used in calculating your base scheduled payment. | − | $ 35342.30 |
| **E. Depreciation and any amortized amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease term. | = | $ 14869.20 |
| **F. Rent charge.** The amount charged in addition to the depreciation and any amortized amounts. | + | $ 20.64 |
| **G. Total of base scheduled payments.** The depreciation and any amortized amounts plus the rent charge. | = | $ 14889.84 |
| **H. Lease payments.** The number of payments in your Lease. | ÷ | 1 |
| **I. Base scheduled payment.** | = | $ 14889.84 |
| **J. Sales/use tax (e).** | + | $ 893.28 |
| K. N/A | + | $ N/A |
| L. N/A | + | $ N/A |
| **M. Total Scheduled Payment.** | = | $ 15783.12 |

**Early Termination. You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.**

**8. Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 15000 miles per year at the rate of $ 0.25 per mile.

**9. Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle at the end of the Lease term for $ 35342.30 plus a purchase option fee of $ N/A. The purchase option price does not include official fees such as those for taxes, tags, licenses and registration.

**10. Other Important Terms.** See your Lease documents for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

**11. The Trade-In Vehicle**

Year N/A
Make N/A
Model N/A

| | | |
|---|---|---|
| A. Gross Amount of Trade-In Allowance | | $ N/A |
| B. Prior Credit or Lease Balance | − | $ N/A |
| C. Net Trade-In Allowance (If less than 0 then enter 0) | = | $ 0.00 |

**12. Itemization of Gross Capitalized Cost**

| | | | |
|---|---|---|---|
| A. Agreed upon value of the Vehicle: | $ 57831.50 | Optional Products and Services: | |
| Other amounts included in the gross capitalized cost: | | I. N/A | $ N/A |
| B. Taxes | $ N/A | J. N/A | $ N/A |
| C. Title, license, and registration fees | $ N/A | K. N/A | $ N/A |
| D. Lease acquisition fee | $ N/A | L. N/A | $ N/A |
| E. Documentation fee | $ N/A | M. N/A | $ N/A |
| F. Prior credit or lease balance | $ N/A | N. N/A | $ N/A |
| G. | $ N/A | O. N/A | $ N/A |
| H. N/A | $ N/A | P. Total Gross Capitalized Cost: | $ 57831.50 |

**IF YOU DO NOT MEET YOUR OBLIGATIONS UNDER THIS LEASE, WE MAY RETAKE THE VEHICLE.**

**13. Official Fees and Taxes.** The total amount you will pay for official and license fees, registration, title, and taxes over the term of your Lease, whether included in your scheduled payments or assessed otherwise: $ 2138.52 (e). The total fees and taxes you pay may be different than this estimate based on changes in the tax or fee rates and the value of the Vehicle when the fee or tax is determined.

**14. Late Payments.** For any payment not received within 10 days of the date it is due, you will pay a late charge of: the lesser of $25 or 5% of the unpaid portion of the payment.

You will not have to pay a late charge if the only amount that is late is a late charge you owed for an earlier late payment.

**15. Returned Payments and Unpaid Fines and Fees.** You will also pay a returned payment charge of $ 0.00 for any check, instrument or electronic funds debit that is returned unpaid for any reason, if the law allows it. If you don't pay a fine, penalty, toll, or parking ticket and we elect to pay it, you will reimburse us for the amount paid plus a $ 25.00 Administrative Fee per incident, if the law allows it.

**16. Warranties.** The Vehicle is subject to the manufacturer's standard warranty, unless this box is checked: ☐

☐ If this box is checked, the Vehicle is subject to the following express warranties:
N/A
N/A
N/A

Warranty papers that are separate from this Lease state any coverage limits.

The law gives you a warranty that the Vehicle conforms to the description in this Lease. THERE ARE NO OTHER EXPRESS WARRANTIES ON THE VEHICLE.

Except as prohibited by law, the following sentence applies. WE DISCLAIM ANY WARRANTIES IMPLIED BY LAW, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE.

If we make a written warranty covering the Vehicle or, within 90 days of the Lease Date we enter into a service contract covering the Vehicle, this disclaimer will not affect any implied warranties during the term of the written warranty or service contract.

**17. OPTIONAL PRODUCTS AND SERVICES**

You are not required to buy any of the following optional products and services to enter into the Lease. The term of any product or service will be the Lease term, unless a different term is shown below. If you decide you want to purchase an optional product or service, review the terms of the contract that describe the product or service before you initial below. A completed copy of the contract will be given to you as soon as practicable. **By initialing below, you indicate that you want to buy the optional products and services indicated. If the cost shown below is not shown as part of the Itemization of Amount Due at Lease Signing or Delivery (Item 6), it has been added to the Gross Capitalized Cost (Item 7A).**

| Optional Product or Service | Coverage | Price | Name of Provider | Approval |
|---|---|---|---|---|
| N/A | N/A | N/A | N/A | Lessee Initials N/A |
| N/A | N/A | N/A | N/A | Lessee Initials N/A |
| N/A | N/A | N/A | N/A | Lessee Initials N/A |
| N/A | N/A | N/A | N/A | Lessee Initials N/A |

**18. TYPES AND AMOUNTS OF REQUIRED INSURANCE COVERAGE**

You must maintain: Bodily Injury Coverage with $ 100,000 / $ 300,000 limits; Property Damage Coverage with $ 50,000 / $ 500,000 limits or combined single limit; Collision, Fire, Theft and Comprehensive Coverage with a maximum deductible of $ 1,000. See Item 23(a) for additional insurance provisions. You confirm that insurance policies that meet the requirements described in this Lease are in force on the date of this Lease as follows:

Insurance Company Name TRAVELERS INSURANCE — Insurance Agency Name TRAVELERS INSURANCE
Agency Address — Agency Phone Number
Agent's Name SALES OFFICES — Policy Number [redacted]
Deductibles: Collision $ — Comprehensive $

**19. SCHEDULED LEASE END AND LEASE TERM**

**A.** This Lease is scheduled to end on a date determined as follows: (1) If the date of this Lease is the 29th, 30th, or 31st of the month, start with the 1st day of the month immediately following the date of this Lease and move forward by the number of months in the lease term (Item 19B); or (2) If the date of this Lease is not the 29th, 30th, or 31st of the month, start with the date of this Lease and move forward by the number of months in the lease term (Item 19B).

**B.** The scheduled lease term is 24 months.

**20. HOW THIS LEASE CAN BE CHANGED**

This Lease contains the entire agreement between you and us relating to this Lease. Any change to the Lease must be in writing and both you and we must sign it. No oral changes are binding.

Lessee Signs X *David Ladd CFO – Manager*
Co-Lessee Signs X N/A

**Total Loss Notice:** The payoff balance due at early termination due to a total loss may be different than the actual cash value of the Vehicle as determined by your insurer. Unless we agree to continue this Lease under Section 23(b), you will be responsible for the difference between these amounts only to the extent provided in Section 23(b).
Lessee Initials *[initials] – Manager* Co-Lessee Initials N/A

**NOTICE: THE OTHER SIDE OF THIS LEASE CONTAINS IMPORTANT TERMS AND CONDITIONS, INCLUDING AN ARBITRATION PROVISION.**

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this Lease, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.
Lessee Signs X *David Ladd, CFO – Manager* Co-Lessee Signs X N/A

Notice is hereby given that the rights, but not the obligations, of N/A to purchase and/or sell the asset described in this Lease have been assigned to N/A pursuant to an agreement between N/A and N/A.

**NOTICE TO THE LESSEE: DO NOT SIGN THIS LEASE BEFORE YOU READ IT OR IN BLANK. YOU ARE ENTITLED TO A COPY OF THIS LEASE WHEN YOU SIGN IT. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.**

**YOU AGREE TO THE TERMS OF THIS LEASE. YOU ACKNOWLEDGE YOU HAVE EXAMINED THE VEHICLE, THAT THE VEHICLE IS EQUIPPED AS YOU WANT, AND THAT IT IS IN GOOD CONDITION. YOU ACCEPT THE VEHICLE FOR ALL PURPOSES OF THE LEASE. YOU UNDERSTAND THAT YOU HAVE NO OWNERSHIP RIGHTS IN THE VEHICLE UNLESS YOU EXERCISE YOUR OPTION TO PURCHASE THE VEHICLE. YOU CONFIRM THAT BEFORE YOU SIGNED THIS LEASE, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU READ BOTH SIDES OF THIS LEASE, INCLUDING THE ARBITRATION PROVISION ON THE REVERSE SIDE (ITEM 24), BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED THIS LEASE.**

**LESSEE SIGNATURES**

| | |
|---|---|
| Lessee Signature *David Ladd, CFO – Manager* Date 11/05/18 | Co-Lessee Signature N/A Date N/A |
| Type/Print Lessee Name N/A | Type/Print Co-Lessee Name N/A |

**COMMERCIAL LESSEE SIGNATURE**

Commercial Lessee ART VAN FURNITURE,LLC. Date 11/05/2018 By *David Ladd, CFO*
Type/Print Name DAVID LADD Type/Print Title MANAGER

**LESSOR'S ACCEPTANCE**

The Lessor's authorized signature indicates the Lessor has accepted the terms, conditions and obligations of this Lease.

| | |
|---|---|
| Lessor Name: LES STANFORD CHEVROLET CADILLAC INC<br>Lienholder Name: WELLSFRGO AS CTL AGT<br>Assignee Name: ACAR Leasing Ltd. | By: *[signature]*<br>Type/Print Name: JEREMY BOULDIN<br>Type/Print Title: BUSINESS MANAGER |

LAW FORM NO. GMF-UCL-MI (REV.9/15)
© 2015 The Reynolds and Reynolds Company TO ORDER: www.gmfdealerstore.com
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

LESSOR COPY

## 21. DEFAULT, REPOSSESSION AND OTHER REMEDIES

If any of the following occurs, you will be in default under this Lease: • You do not pay any payment on its scheduled due date under this Lease; • You do not pay any other amount due under this Lease when we ask that you pay it; • You provide any false or misleading information on any Lease application; • You fail to maintain required insurance; • You lose possession of the Vehicle by confiscation, forfeiture or other involuntary transfer whether or not the Vehicle is the subject of judicial or administrative proceedings; • You assign the Lease or transfer the Vehicle without our prior written permission, or attempt to do either; • You start a bankruptcy, receivership, or insolvency proceeding or one is started against you or your property; • You do anything that endangers the Vehicle or your ability to pay your Lease obligations; • You fail to return the Vehicle when required to do so under this Lease; • You fail to meet any other obligation under this Lease; • You do anything the law says is a default.

If you are in default, after waiting any time the law requires, we may do any of the following: • End this Lease and require you to pay the amount due at early termination; • Take any action we believe is required to protect our interest in the Vehicle (for example buying insurance) and our action will not cure your default; • Add any amounts we spend taking these actions to your Lease obligation and charge rent on the amount added, or at our option, ask you to pay these amounts right away; • If the Vehicle has an electronic locating device, use it to find the Vehicle; • Cancel any optional products and services included with this Lease and apply any refund to your Lease obligation (you hereby instruct any provider of such products and services to pay us any refund or credit due on early cancellation); • Take (repossess) the Vehicle wherever we find it and enter any property where the Vehicle may be to do so; • Sue you for damages or to get the Vehicle back; • Pursue any other remedy the law gives us.

We will exercise our rights without breach of the peace, at reasonable times and places, in a reasonable way, as the law allows. We may use the license plates on the Vehicle to move it to a storage place. After repossessing the Vehicle, we will hold it free of any rights you may have under this Lease, subject to any right the law gives you to cure the default or recover the Vehicle. We may take and store any personal items that are in the Vehicle. If you do not ask for those items back, we may dispose of them as the law allows. Unless you tell us within five business days of any personal property you claim was in the Vehicle when it was repossessed, we will not be responsible for that property. You will pay our reasonable expenses of taking these actions as the law allows. These expenses may include expenses of taking and storing the Vehicle, attorney's fees, collection costs, and court costs.

## 22. EARLY TERMINATION LIABILITY

**When the Lease Can End Early.** You may terminate (end) the Lease early by returning the Vehicle to us and paying us your early termination liability (see below) when we ask for it.

We may end the Lease early if you are in default, the Vehicle is damaged or destroyed beyond repair, stolen or lost (a "Total Loss"); or you die and there is no surviving lessee. If we end the Lease, you must return the Vehicle to the place we designate and pay us the early termination liability (see below) when we ask for it.

**Early Termination Liability.** We will figure your early termination liability as follows:

**Monthly Payment Lease.** You will owe the amount, if any, by which the Adjusted Lease Balance (see definition below) exceeds the Vehicle's Fair Market Wholesale Value (see definition below) at termination. If this amount is more than the total of the following amounts, you will instead pay the total of the following amounts: • The total of your base scheduled payments not yet due; • An excess wear charge (see Item 23(c)); and • An excess mileage charge for any miles in excess of the permitted mileage during the scheduled Lease term at the rate per mile shown in Item 8.

**Single Payment Lease.** The Base Scheduled Payment (Item 7I) paid at lease signing prepays the depreciation and any amortized amounts (Item 7D) and the rent charge (Item 7F). If the Vehicle's Fair Market Wholesale Value at termination (see definition below) exceeds the Adjusted Lease Balance (see definition below), we will give you a credit for the excess up to the amount of the Unused Base Scheduled Payment (see definition below). If the Adjusted Lease Balance exceeds the Vehicle's Fair Market Wholesale Value at termination, you will owe the excess up to the total of the following amounts: • An excess wear charge (see Item 23(c)); and • An excess mileage charge for any miles in excess of the permitted mileage during the scheduled Lease term at the rate per mile shown in Item 8.

In addition to the amounts described above, you will also owe us the Item 4A Disposition Fee unless this fee is waived under Item 23(t) plus the Additional Amounts Due and we will apply the Additional Credits to the amount you owe (see Item 23(s)).

**Definition of Adjusted Lease Balance:**

**Monthly Payment Lease.** The Adjusted Lease Balance equals the difference between: (1) The Item 7C Adjusted Capitalized Cost; and (2) all depreciation and amortized amounts in the base scheduled payments that have become due. Each Item 7I Base Scheduled Payment consists of • a rent charge portion; and • a portion allocable to depreciation and any amortized amounts. Although the amount of your Item 7I Base Scheduled Payment does not change, different portions of each Base Scheduled Payment are allocated to • rent charge, and • depreciation and any amortized amounts. The portion of a Base Scheduled Payment that is allocated to depreciation and any amortized amounts is equal to the Base Scheduled Payment minus the rent charge for that month. We use the Constant Yield Method to figure the rent charge portion of each Base Scheduled Payment. Under the "Constant Yield Method," the rent charge for each scheduled period is earned in advance by multiplying the constant rate implicit in this Lease times the Balance Subject to Rent Charge as it declines during the Lease term. At any given time during the Lease term, the "Balance Subject to Rent Charge" is the difference between the Item 7C Adjusted Capitalized Cost and the sum of: (i) all depreciation and amortized amounts accrued during the previous periods; and (ii) any Base Scheduled Payment paid at Lease signing or delivery. The scheduled rent charge calculations are based on the assumption that we will receive your scheduled payments on their exact due dates and that the Lease goes to its full term.

**Single Payment Lease.** The Adjusted Lease Balance at the beginning of the Lease equals: (i) The Item 7C Adjusted Capitalized Cost; minus (ii) the Item 7I Base Scheduled Payment. At the beginning of each month, the Adjusted Lease Balance increases by the rent charge for that month. We use the Constant Yield Method to figure the rent charge for each month. Under the "Constant Yield Method" the rent charge for each monthly period is earned in advance by multiplying the constant rate implicit in this Lease times the Balance Subject to Rent Charge as it increases during the Lease term. At any given time during the Lease term, the "Balance Subject to Rent Charge" equals: (i) the Item 7C Adjusted Capitalized Cost; minus (ii) the Item 7I Base Scheduled Payment; plus (iii) all rent charges accrued during previous periods. The rent charge calculations are based on the assumption that the Lease goes to its full term.

**Definition of Fair Market Wholesale Value:** Unless you exercise your independent appraisal right (see below), the Fair Market Wholesale Value of the Vehicle is: • the price we receive for the Vehicle at disposition; • the highest offer we receive for disposition of the Vehicle; • the amount you and we agree in writing; • or the wholesale fair market value of the Vehicle.

**Definition of Unused Base Scheduled Payment (Single Payment Lease):** The Unused Base Scheduled Payment equals: (i) the Item 7I Base Scheduled Payment; divided by (ii) the number of months in the Lease Term (Item 19B); times (iii) the number of full months remaining after the date of the early termination until the Scheduled Lease End (Item 19A).

**Your Independent Appraisal Right:** To the extent your early termination liability takes into account the value of the Vehicle at termination, you may get a professional appraisal of the Vehicle's fair market wholesale value. If you do so within a reasonable time, we will use the appraised value as the Fair Market Wholesale Value. The appraiser must be an independent third party. You and we must agree on the appraiser. You must pay for any appraisal. The appraisal will be binding.

## 23. OTHER TERMS AND CONDITIONS

(a) **Insurance.** For the duration of the Lease term, and until you return the Vehicle, you agree to maintain the amounts and types of primary insurance as indicated in Item 18 on the front of this Lease in your name. Insurance may be obtained by you from anyone reasonably acceptable to us. You must indicate us or anyone we require as an additional insured and loss payee on your policy. Your policy must state that we will be given at least 10 days' notice of any material coverage change, reduction, or cancellation. If your insurer does not pay a claim for any reason, it will mean that you have not maintained the required insurance. You will pay for any loss we incur because you do not maintain required insurance or because the insurer does not pay a claim. If you fail to obtain and maintain the required insurance, we may, if we choose, buy it for you. We may add the amount we pay for this insurance to your unpaid Lease obligations and charge rent on the amount added, or at our option, ask you to pay it right away. If we decide to buy this insurance, we may either buy insurance that covers your interest and our interest, or buy insurance that covers only our interest, unless the law requires us to buy insurance that also protects your interests. If the Vehicle is damaged, stolen or destroyed, and money becomes available from insurance, a judgment, a settlement, or the like, we will be entitled to the money. If the Lease ends in connection with our receipt of the money, we will treat any of the money we do not use to repair the Vehicle as part of the price we received for the Vehicle at disposition.

**NOTICE: PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE TO OTHERS IS NOT INCLUDED IN THIS LEASE.**

(b) **Total Loss of Vehicle.** If the Vehicle is a Total Loss (as described in the second paragraph of Item 22, Early Termination Liability) during the Lease term, we may at our option agree in writing to continue this Lease and provide you with a substitute vehicle. If you and we do not agree to continue this Lease with a substitute vehicle, we will end the Lease early as described in Item 22 Early Termination Liability, and you will only owe the amounts described in the following paragraphs of this Item 23(b). But if: (a) the Vehicle was forfeited or confiscated under governmental authority, or (b) the Total Loss arose from your fraud, intentional wrongful act or omission, gross negligence, or other failure to use the Vehicle in compliance with this Lease (see Item 23(i)), then you will still owe the Item 22 Early Termination Liability.

If we receive a settlement under an insurance policy that complies with the requirements of this Lease (see Items 18 and 23(a)), then:

**Monthly Payment Lease.** We will deduct the amount of any refunds we receive from canceling optional insurance, maintenance, service, or other contracts included in this Lease from the Adjusted Lease Balance (see Item 22) to compute a net lease balance (the "Net Lease Balance"). If the Net Lease Balance is greater than the insurance settlement we receive, you will owe the excess up to the sum of the following: (i) the amount, if any, by which your insurance deductible exceeds $1,000 for the insurance settlement we receive; and (ii) the total amount of any deductions from the value of the Vehicle used to compute the insurance settlement we receive due to past due premiums or the condition of the Vehicle before the Total Loss occurred.

If the insurance settlement we receive is more than the Net Lease Balance, you will receive a credit for any excess.

**Single Payment Lease.** You will receive a credit for the Unused Base Scheduled Payment (see Item 22). We will deduct the amount of any refunds we receive from cancelling optional insurance, maintenance, service, or other contracts included in this Lease from the sum of the Adjusted Lease Balance (see Item 22) and the Unused Base Scheduled Payment to compute a net lease balance (the "Net Lease Balance"). If the insurance settlement we receive is more than the Net Lease Balance, you will also receive a credit for the excess.

If the Net Lease Balance is more than the insurance settlement we receive, you will owe the excess up to the sum of the following: (i) the amount, if any, by which your insurance deductible exceeds $1,000 for the insurance settlement we receive; and (ii) the total amount of any deductions from the value of the Vehicle used to compute the insurance settlement we receive due to past due premiums or the condition of the Vehicle before the Total Loss occured.

If we do not receive a settlement under an insurance policy that complies with the requirements of this Lease (see Items 18 and 23(a)), you will owe us: (i) the Actual Cash Value of the Vehicle (see definition below); minus (ii) any part of your insurance deductible that you pay us; minus (iii) any settlement we receive from your insurance company; minus (iv) any amount we receive for selling the Vehicle as salvage; plus (v) if the Vehicle is returned to us, the Item 4A Disposition Fee unless this fee is waived under Item 23(t).

In addition to the amounts described above, you will also owe us the Additional Amounts Due (see Item 23(s)).

**Definition of Actual Cash Value of the Vehicle:** The Actual Cash Value of the Vehicle is: (i) the retail value of the Vehicle on the date of the Total Loss, as listed in a recognized national or regional guidebook for used vehicle values with no deductions for prior damage or the condition of the Vehicle; or (ii) if no such guidebook values are available, our estimate, based on the best data reasonably available to us, of the retail value of the Vehicle on the date of the Total Loss with no deductions for prior damage or the condition of the Vehicle.

(c) **Standards for Wear and Use.** You agree to pay an excess mileage charge as indicated in Item 8 and an excess wear charge, at the early end of this Lease to the extent provided for in Item 22 or at the Scheduled Lease End (Item 19). Excess wear is wear beyond the minor wear reasonably expected to result from ordinary use of the Vehicle, assuming you maintain the Vehicle as this Lease requires (Item 23(g)) and use the Vehicle as this Lease permits (Item 23(i)). The excess wear charge will be our actual or estimated cost of repairing any excess wear. (We do not have to make the repairs.) Repairs, including tires, must be made with original equipment manufacturer's parts or those of equal quality. These include but are not limited to those necessary to repair or replace: • painting or lettering the Vehicle or modifying its VIN; • accessories, equipment, or parts that have been added, removed, damaged or modified (including missing keys or remote entry devices) without our prior written permission; • road damage, chips, scratches, cracks, plugs, tinting, staining, corrosion or damage to the glass, paint, body, bumpers, suspension, engine, powertrain, frame, wheels, floor coverings, seats or any other part of the interior; • mechanical or electrical malfunction, upholstery, interior or trunkliner damage, stains or tears, dented trim or molding, or damage from water, sand, or freezing; • inoperable lights; • tires that have sidewall plugs, gouges, cuts or exposed cords or are not part of a matching set of five tires or of unequal quality to the originals (or four with a spare of quality and type as the original); • one or more tires with less than 1/8 inch of tread remaining at the shallowest point; • any condition that renders the Vehicle unsafe, incapable of passing any required inspection or makes the Vehicle run noisy, rough or unsafely; and • any other wear beyond normal wear. You will not owe a charge for excess mileage or excess wear if you purchase the Vehicle.

(d) **Security Deposit.** If you paid a security deposit this paragraph applies. Unless required by law, we do not keep the security deposit separate in a bank or earmarked on our books. We may apply some or all of the security deposit to any amounts you owe under this Lease, or, if you exercise your purchase option, to the price of the Vehicle. Any unused security deposit will be returned to you at the end of the Lease. We have no fiduciary duty to you with respect to the security deposit unless such duty is imposed by law. No interest, increase, or profit on the security deposit will accrue or be paid to you.

(e) **Option to Purchase Vehicle.** You have the option to buy the Vehicle at any time from a party designated by us. If you do, you agree to re-register and re-title the Vehicle in your name no later than 30 days from the time you purchase it. If you fail to do so, we reserve the right to cancel the registration. Before the Scheduled Lease End (Item 19A), the price will be the Adjusted Lease Balance (see Item 22) plus the Item 9 Purchase Price minus the Item 7D Residual Value. At the Scheduled Lease End (Item 19A), the price will be the Item 9 Purchase Price. At either time, you must also pay the Additional Amounts Due and we will apply the Additional Credits to the amount you owe (see Item 23(s)).

(f) **Return of the Vehicle.** If you do not exercise your purchase option, you will return the Vehicle to us at a place we designate when this Lease ends. You agree to make the Vehicle available for inspection at our request. When you return the Vehicle, you must give us a completed, signed odometer disclosure statement. If you keep the Vehicle after the Scheduled Lease End (Item 19), unless you return it within any grace period we offer, you will pay us at the beginning of each month for any part of a month you keep the Vehicle, an amount equal to:

- For a monthly payment lease, the Item 7M Total Scheduled Payment.
- For a single payment lease, the Item 7M Total Scheduled Payment divided by the number of months in the Lease Term (Item 19B).

Your payment does not permit you to keep the Vehicle unless you get our permission in advance. Upon return of the Vehicle on or after the Scheduled Lease End (Item 19), you will also pay us the total of the following amounts: • the Item 4A Disposition Fee unless this fee is waived under Item 23(t); • an excess mileage charge for any miles in excess of the permitted mileage during the scheduled Lease term at the rate per mile shown in Item 8; • an excess wear charge (Item 23(c)); • the Additional Amounts Due (see Item 23(s)). We will apply the Additional Credits to the amount you owe (see Item 23(s)).

(g) **Maintenance.** You will maintain the Vehicle in good working order and repair. You will pay all operating costs, such as gasoline, oil, and replacement tires. You will, at your expense, service the Vehicle according to the owner's manual maintenance schedule. If the Vehicle is recalled, you will have the recall repairs or service performed. You will use original equipment manufacturer's parts or those of equal value in the maintenance and service of the Vehicle. We may but are not required to provide you with a replacement vehicle for any reason. You will maintain and keep in the Vehicle a record of all maintenance performed on the Vehicle. This maintenance record will be available to us at any time, and will be provided to us at the end of the Lease.

(h) **Registration, Parking Tickets, Tolls and Taxes.** You must keep the Vehicle currently registered. You must pay all parking tickets, tolls and traffic fines relating to the Vehicle. If you do not pay such tickets, tolls and fines, we may do so for you, and you will pay us upon demand. We may add the amount to what you owe us if you do not pay us when we make demand. You must pay when due or reimburse us **if we pay for you, all government charges, fees and taxes whether assessed on you**, us, or the Vehicle. You will not have to pay our income taxes. If you do not pay the charges, fees and taxes, and interest or penalties are assessed (unless the interest or penalties are a result of our negligence), you must pay the interest or penalties when due or reimburse us if we pay them. You must pay personal property taxes, ad valorem, sales, use or similar taxes assessed on the Vehicle, whether such fees or taxes are billed during or after the Lease term, and whether you are billed for them by the government or whether we pay them and bill you for them or include the amount of such taxes as part of your scheduled payment. We may change your scheduled payment if taxes change. If you don't pay a fine, penalty, toll or parking ticket and we elect to pay it, you will reimburse us for the amount paid plus the Item 15 Administrative Fee.

(i) **Use of the Vehicle.** You will keep the Vehicle free from any liens or claims. You have the risk of loss, and are responsible for the Vehicle's damage or destruction. You will not: • Use the Vehicle illegally, improperly such as for towing that exceeds the manufacturer's towing recommendations, or for hire; • Without our prior written consent, alter or install equipment that makes the Vehicle unsafe or unlawful to operate; • Use the Vehicle in a manner that your insurance policy prohibits or in a way that produces unusually high depreciation; • Allow unlicensed drivers to drive the Vehicle; • Use the Vehicle for more than 30 days outside the state where you originally registered the Vehicle without our prior written permission; • Take the Vehicle out of the United States without our written consent except for trips to Canada that do not exceed 30 days; • Change the Vehicle without our written consent. You will not let anyone else do any of these things.

(j) **Indemnification. We are not responsible for any injuries, damages, expenses or claims, including claims for attorney fees or under the strict liability doctrine, caused by the maintenance, condition, or operation or use of the Vehicle. You agree to indemnify and hold us (and our assignees, successors, agents, and insurers) harmless for all such injuries, damages, expenses and claims.**

(k) **Assignment of Returned Premiums and Other Amounts.** You assign to us any unearned returned premiums or charges or other amounts relating to insurance or any optional product or service sold in connection with this Lease and returned or paid to us. We will use these amounts to reduce amounts you owe under the Lease. You will earn no interest, increase, or profit with respect to such property.

(l) **Your Odometer Obligations.** You will maintain the odometer of the Vehicle so that it always reflects the Vehicle's actual mileage. If the odometer is at any time inoperable, you will provide us with reasonable evidence of the Vehicle's actual mileage. If you are unable to do so, you will pay us our reasonable estimate of any reduction of the Vehicle's fair market value caused by the inability to determine the Vehicle's actual mileage. You will provide us with an odometer certification at any time we request one. We may request more than one certification during the term of this Lease.

**Important Note: Federal law requires you to tell us the Vehicle's mileage in connection with a transfer of Vehicle ownership. You may be fined and/or imprisoned if you do not complete the disclosure or if you make a false statement.**

(m) **Assignment and Transfer of the Vehicle. You may not assign the Lease or transfer the Vehicle without our prior written permission.** We may assign all of our rights under this Lease. Any person to whom this Lease is assigned may reassign it. Any sale and assignment by us will not be considered to change materially your duties, burden, or risk under this Lease.

(n) **Ownership.** We are the sole owners of the Vehicle including original accessories and any installed after the Lease begins. This is a true lease for tax and other purposes and we receive all benefits of ownership. We have not given you any information or advice regarding possible tax consequences under this Lease.

(o) **Inspection.** Upon reasonable notice to you, at any reasonable place and time we choose we may inspect this Vehicle and you agree to cooperate with such inspection.

(p) **Waiver.** We may delay or refrain from enforcing any of our rights under this Lease without losing them.

(q) **Giving Notice.** Notices may be given personally or sent by first class mail. Notice mailed to us must be sent to the address shown in this Lease or as we otherwise direct from time to time. Notices shall be deemed given to us when they are personally given or actually received at our address. Notices shall be deemed given to you when they are personally given or when placed in the mail, addressed to you at your address then shown on our records, even though you might not actually receive our mailed notice. You agree that 10 days' notice is a reasonable notice period, unless state law requires a longer period, in which case you agree that the state-required period is reasonable.

(r) **Notice and Agreement Regarding E-Mails and Calls/Text Messages to Wireless Telephones: You agree, in order for us to service your account or to collect any amounts you may owe, we may contact you by telephone at any telephone number associated with your account, including land-line, wireless, cellular, or VoIP/Internet telephone numbers, which could result in charges to you. We may also contact you at any e-mail address you provide to us or by sending text messages, which could result in charges to you. Methods of contact may include using pre-recorded/artificial voice messages and/or use of an automatic dialing device, as applicable. Your agreement and consent also extends to any other agents, affiliates, or entities to whom we may assign, transfer, or sell your obligation for servicing or collection. You may revoke this consent for any telephone number or email address by contacting us and telling us know.**

(s) **Additional Amounts Due and Additional Credits:** Regardless of how this Lease ends, you will owe us the following amounts: • Any official fees and taxes related to the termination. • Any other amounts due under this Lease including any unpaid late charges or other amounts due because you failed to meet your obligations under this Lease. If this Lease ends early, we may cancel any optional insurance, maintenance, service, or other contracts included in this Lease or claim benefits under them to reduce what you owe or repair the Vehicle. If the sum of the amounts you owe under this Lease exceeds the sum of the credits, you will owe us the difference. If the sum of the credits exceeds the amounts you owe, we will refund the difference to you.

(t) **Disposition Fee Waiver:** The Item 4A Disposition Fee will be waived if you purchase or lease a new General Motors vehicle when this Lease ends.

(u) **Limited Power of Attorney.** If there is any damage or loss to the Vehicle, you agree that we or our agent may settle any insurance claim or sign your name on any title or registration or on any check or draft we receive for that Vehicle damage or loss.

(v) **General.** If any part of this Lease is invalid, unenforceable or illegal in any jurisdiction, the part that is invalid, unenforceable or illegal will not be effective as to that jurisdiction. The rest of the Lease will be enforceable except as provided in the Arbitration Provision, below. This Lease is our entire agreement. We have made no promises to you not contained in this Lease. If any part of this Lease is found by a court or other dispute resolution body to be void or unenforceable, this Lease is to be read as if that part were never contained in this Lease.

## 24. ARBITRATION PROVISION

**ARBITRATION PROVISION**

**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, lease or condition of this Vehicle, this Lease or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Lessor named on the front of this Lease is a party to the claim or dispute, in which case the hearing will be held in the federal district where this Lease was executed. You and we will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee in accordance with the rules and procedures of the chosen arbitration organization. If the rules of the chosen arbitration organization do not specify how fees must be allocated, we will pay the filing, administration, service or case management fee and the arbitrator or hearing fee up to a maximum of $5,000, unless the law requires us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control.

Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the Vehicle, to recover amounts you owe under this Lease, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this Lease. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

## 25. LESSOR'S ASSIGNMENT

Pursuant to the terms of that certain agreement between Lessor and the assignee named on the other side of this Lease ("Assignee") for the assignment of leases by Lessor to Assignee from time to time, Lessor hereby assigns all right, title and interest in the Lease and the Vehicle and rights the Lessor may have under any guaranty executed in connection with the Lease, with full powers to Assignee to collect and discharge all obligations, any guaranty and this assignment.

STATE OF MICHIGAN

# CERTIFICATE OF TITLE

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | MODEL | BODY STYLE |
|---|---|---|---|---|
| 1G6KB5RS9JU159214 | 2018 | CADILLAC | CT6 | FOUR DOOR |

| TITLE NUMBER | ISSUE DATE | ODOMETER | BRAND OR LEGEND |
|---|---|---|---|
| [redacted] | 11/13/2018 | 000028 | |

| WEIGHT OR FEE CATEGORY | ODOMETER BRAND |
|---|---|
| 56 | *ACTUAL MILEAGE* |

OWNER(S) NAME AND ADDRESS

ACAR LEASING LTD LSR
ART VAN FURNITURELLC LSE
6500 E 14 MILE RD
WARREN MI 48092

| First Secured Party | | Filing Date |
|---|---|---|
| WELLS FARGO AS CTL AGT | | |
| PO BOX 9000 | | 11-09-2018 |
| LUTHERVILLE | MD | 21094 |

Release of First Lien:

X ______________________ ____________
Signature of Agent Date

## Title Assignment by Seller

State and federal laws require the seller(s) to indicate mileage when ownership is transferred. Failure to complete or providing false information may result in civil liability, fines and/or imprisonment. **ANY ALTERATION, ERASURE, FALSE STATEMENT, FORGERY OR FRAUD VOIDS THIS TITLE AND IS A CRIME.**

Completed by Seller

I warrant the ownership of the vehicle described on Certificate of Title has been transferred to the following purchaser(s) and is free of all previous liens:

| **Purchaser(s) Name (printed)** | | Date of Sale | Selling Price |
|---|---|---|---|
| Purchaser's Street Address | City | State | Zip |

I (we) certify the odometer reading is: [ ][ ][ ][ ][ ][ ].[X] (No Tenths) and to the best of my knowledge the odometer mileage is:

☐ actual mileage ☐ not actual mileage - **WARNING ODOMETER DISCREPANCY** ☐ exceeds mechanical limits of odometer (odometer has rolled over)

| Signature of Seller(s) X | | Seller(s) Name (printed) | |
|---|---|---|---|
| Seller's Street Address | City | State | Zip |

Completed by Buyer

**A $15.00 Late Fee is Due for Failure to Apply for Title Within 15 Calendar Days of Date of Assignment**

"I am aware of the above odometer certification made by the seller(s)."

| Signature of Purchaser(s) X | Printed Name of Purchaser(s) |
|---|---|

**NEW LIENHOLDER INFORMATION:** The information below must be on an application for title and presented to the Michigan Department of State.

| Secured Party: | Address: |
|---|---|

The State of Michigan, Michigan Department of State certifies this certificate of title is issued in compliance with the laws of Michigan and constitutes prima facie proof of ownership. Further, on the date of title issuance, the described vehicle was subject to the security interest(s) listed above.

MAILING ADDRESS

ACAR LEASING LTD
PO BOX 9000
LUTHERVILLE MD 21094

G94109885

**NOTICE TO SELLERS**

Sellers must keep a receipt or photocopy of the reassigned title for their records for 18 months or accompany the purchaser to a Secretary of State Office.

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**For Dealer Use Only**

**First Reassignment by Licensed Vehicle Dealer**

I (selling dealer) warrant the title is free and clear of all liens and I have transferred ownership of this vehicle to the purchaser(s) listed below.

I further certify the odometer reading is: ☐☐☐☐☐☐.☒ (No Tenths) and to the best of my knowledge the odometer mileage is:

☐ actual mileage ☐ not actual mileage - **WARNING ODOMETER DISCREPANCY** ☐ exceeds mechanical limits of odometer

| Information Below Completed by Selling Dealer: | | Information Below Completed by Purchaser(s): |
|---|---|---|
| **KEEP A PHOTOCOPY OF BOTH SIDES OF THIS SIGNED TITLE.** | | "I am aware of the above odometer certification made by the selling dealer." |
| Printed Name of Selling Dealer and Agent | | Signature of Purchaser(s) X |
| Signature of Agent X | | Printed Name of Purchaser(s) |
| Date of Sale | Selling Dealer's License Number | Purchaser's Address |

**Second Reassignment by Licensed Vehicle Dealer**

I (selling dealer) warrant the title is free and clear of all liens and I have transferred ownership of this vehicle to the purchaser(s) listed below.

I further certify the odometer reading is: ☐☐☐☐☐☐.☒ (No Tenths) and to the best of my knowledge the odometer mileage is:

☐ actual mileage ☐ not actual mileage - **WARNING ODOMETER DISCREPANCY** ☐ exceeds mechanical limits of odometer

| Information Below Completed by Selling Dealer: | | Information Below Completed by Purchaser(s): |
|---|---|---|
| **KEEP A PHOTOCOPY OF BOTH SIDES OF THIS SIGNED TITLE.** | | "I am aware of the above odometer certification made by the selling dealer." |
| Printed Name of Selling Dealer and Agent | | Signature of Purchaser(s) X |
| Signature of Agent X | | Printed Name of Purchaser(s) |
| Date of Sale | Selling Dealer's License Number | Purchaser's Address |

**Third Reassignment by Licensed Vehicle Dealer**

I (selling dealer) warrant the title is free and clear of all liens and I have transferred ownership of this vehicle to the purchaser(s) listed below.

I further certify the odometer reading is: ☐☐☐☐☐☐.☒ (No Tenths) and to the best of my knowledge the odometer mileage is:

☐ actual mileage ☐ not actual mileage - **WARNING ODOMETER DISCREPANCY** ☐ exceeds mechanical limits of odometer

| Information Below Completed by Selling Dealer: | | Information Below Completed by Purchaser(s): |
|---|---|---|
| **KEEP A PHOTOCOPY OF BOTH SIDES OF THIS SIGNED TITLE.** | | "I am aware of the above odometer certification made by the selling dealer." |
| Printed Name of Selling Dealer and Agent | | Signature of Purchaser(s) X |
| Signature of Agent X | | Printed Name of Purchaser(s) |
| Date of Sale | Selling Dealer's License Number | Purchaser's Address |

**Fourth Reassignment by Licensed Vehicle Dealer**

I (selling dealer) warrant the title is free and clear of all liens and I have transferred ownership of this vehicle to the purchaser(s) listed below.

I further certify the odometer reading is: ☐☐☐☐☐☐.☒ (No Tenths) and to the best of my knowledge the odometer mileage is:

☐ actual mileage ☐ not actual mileage - **WARNING ODOMETER DISCREPANCY** ☐ exceeds mechanical limits of odometer

| Information Below Completed by Selling Dealer: | | Information Below Completed by Purchaser(s): |
|---|---|---|
| **KEEP A PHOTOCOPY OF BOTH SIDES OF THIS SIGNED TITLE.** | | "I am aware of the above odometer certification made by the selling dealer." |
| Printed Name of Selling Dealer and Agent | | Signature of Purchaser(s) X |
| Signature of Agent X | | Printed Name of Purchaser(s) |
| Date of Sale | Selling Dealer's License Number | Purchaser's Address |

**No Further Reassignments Permitted**

**AUTHORITY GRANTED UNDER PUBLIC ACT 300 OF 1949, AS AMENDED**

**Exhibit "B"**



11/23/2020

NADA Used Cars/Trucks

## Vehicle Information

| | |
|---|---|
| Vehicle: | 2018 Cadillac CT6 Sedan 4D AWD 3.6L V6 |
| Region: | Central |
| Period: | November 23, 2020 |
| VIN: | 1G6KB5RS9JU159214 |
| Mileage: | 42,500 |
| Base MSRP: | $56,095 |
| Typically Equipped MSRP: | $60,590 |

## NADA Used Cars/Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| **Monthly** | | | | |
| **Trade-In** | | | | |
| Rough | $23,450 | N/A | N/A | **$23,450** |
| Average | $25,675 | N/A | N/A | **$25,675** |
| Clean | $27,550 | N/A | N/A | **$27,550** |
| Clean Loan | $24,800 | N/A | N/A | **$24,800** |
| Clean Retail | $30,750 | N/A | N/A | **$30,750** |
| **Weekly** | | | | |
| **Auction** | | | | |
| Low | $22,550 | $147 | N/A | **$22,697** |
| Average | $24,950 | $147 | N/A | **$25,097** |
| High | $27,375 | $147 | N/A | **$27,522** |
| Clean Loan | $25,450 | N/A | N/A | **$25,450** |
| Clean Retail | $31,500 | N/A | N/A | **$31,500** |

*The auction values displayed include typical eqiupment and adjustments for mileage and any of the following applicable accessories: engine size, drivetrain, and trim.

NADA Used Car Guide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report.
NADA Used Car Guide and its logo are registered trademarks of National Automobile Dealers Association, used under license by J.D. Power.
©2020 J.D.Power