**<u>Exhibit 1</u>**

**APA**

**Execution Version**

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (this "Agreement"), dated as of January 26, 2021 (the "Effective Date"), is entered into by and among Alfred T. Giuliano, the Chapter 7 Trustee of the Debtors (as defined below) (the "Trustee"), acting solely in his capacity as trustee on behalf of each of the Debtors and their respective estates (as defined below) (collectively, the "Sellers") and VEC, LLC, a Michigan limited liability company, or its designee (the "Buyer"). Each of the Sellers and the Buyer are referred to herein as a "Party" and collectively as the "Parties."

Background

A.    On March 8, 2020, (the "Petition Date"), Art Van Furniture, LLC AVF Holding Company, Inc., AVCE, LLC, AVF Holdings 1, LLC, AVF Holdings II, LLC, AVF Parent, LLC, AV Pure Sleep Franchising, LLC, AVF Franchising, LLC (collectively, the "Debtors"), filed a voluntary petition for protection under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court" and the cases so initiated, the "Bankruptcy Cases").

B.    On June 6, 2020, the Bankruptcy Court entered its *Order (I) Converting Their Chapter 11 Cases To Cases Under Chapter 7, (II) Establishing A Deadline For Filing Final Chapter 11 Fee Applications And Setting A Hearing Thereon, And (III) Granting Related Relief*, which order applied both to the Bankruptcy Cases and the Chapter 11 bankruptcy cases of certain affiliates of the Debtors.

C.    On April 7, 2020, the United States Trustee issued its *Notice To Interim Trustee/ Trustee Of Selection In An Asset Case* appointing the Trustee as Chapter 7 Trustee of each of the Debtors in the Bankruptcy Cases.

D.    The Parties desire to enter into this Agreement pursuant to which the Sellers will sell to Buyer, and Buyer will purchase from the Sellers, all of the Assets (as defined below) upon the terms and subject to the conditions of this Agreement.

The Parties, intending to be legally bound hereby (subject to the conditions to their respective obligations set forth in this Agreement), agree as follows.

Agreement

1.    **Purchase and Sale**.  Upon the terms and subject to the conditions of this Agreement, the Sellers hereby agree to sell and transfer to Buyer, and Buyer hereby agrees to purchase and accept from the Sellers, all of Sellers' right, title and interest in and to the Assets, free and clear of any lien, pledge, claim, charge, mortgage, liability, security interest, rights of first refusal, third party right or any other encumbrance or interest (collectively, "Liens") to the extent provided in the Sale Order (as defined below).  Notwithstanding anything to the contrary contained in this Agreement, Buyer is not acquiring any property or assets (other than the Assets) and is not assuming and shall not be liable to any person or entity for any liability, debt, indebtedness guaranty, obligation, expense, deficiency, tax, penalty, assessment, fine, claim,

cause of action or other loss, fee, cost or expense of any kind or nature whatsoever, whether asserted or unasserted, absolute or contingent, known or unknown, accrued or unaccrued, liquidated or unliquidated of Sellers.  As used herein, the term "Assets" means all of the Sellers' right, title and interest, in and to (a) all Intellectual Property (as defined below in this Section 1) owned by any Seller on the date on which this Agreement is mutually executed and delivered, but only to the extent relating to or comprising part of the "Art Van" brand or product line (including the domain names and trademarks described on Exhibit A attached hereto and incorporated herein by this reference) and all rights to any royalty income associated therewith, together with all goodwill associated with any of the foregoing and symbolized by any of the foregoing, and the exclusive right to sue for and recover all damage and recoveries for the infringement of any such Intellectual Property, (b) all data and other information included in the customer file described on Exhibit A attached hereto and incorporated herein by this reference (the "Customer File"), (c) all claims, causes of action, rights of recovery (including any rights of indemnity, warranty rights, rights of contribution, rights to refunds and rights to reimbursement) and rights of set-off, in each case, of whatever kind or description against any person or entity (including any claim as defined in title 11 of the United States Code, but in each case only to the extent arising primarily out of, or relating primarily to, the assets described in clauses (a) and (b) above; provided that neither the Customer File nor any other Assets shall include any credit card information or social security number information whatsoever. As used herein, the term "Intellectual Property" means all intellectual property rights worldwide (whether arising under statutory or common law, contract or otherwise), which include, to the extent the same exist, the following items: (a) technology, proprietary information and materials, including inventions, discoveries, processes, designs, tools, molds, techniques, developments and related improvements whether or not patentable; (b) patents, patent applications, industrial design registrations and applications therefor, divisions, divisionals, continuations, continuations-in-part, reissues, substitutes, renewals, registrations, confirmations, reexaminations, extensions and any provisional applications, and any foreign or international equivalent of any of the foregoing; (c) trademarks (whether registered, unregistered or applied-for), trade dress, service marks, service names, trade names, brand names, product names, logos, corporate names, fictitious names, other names, symbols (including business symbols), slogans, social media identifiers (such as a Twitter® handle) and any foreign or international equivalent of any of the foregoing and any applications or registrations in connection with the foregoing; (d) domain name registrations; (e) technical, scientific and other know-how and information (including promotional material), confidential information, methods, processes, practices, formulas, designs, design rights, patterns, assembly procedures, software, specifications, drawings, prototypes, molds, models, tech packs, archival materials and advertising materials, copy, commercials, images, and samples; (f) copyrights, including copyrights in databases, copyright applications, and copyright registrations, works of authorship and moral rights and renewals in connection therewith; (g) databases and data collections, customer lists, customer contact information, customer licensing and purchasing histories, manufacturing information, business plans, product roadmaps, and all other trade secrets and know-how; (h) all other proprietary or intellectual property rights of every kind and nature now known or hereafter recognized in any jurisdiction; (i) the right to sue for infringement and other remedies against infringement of any of the foregoing, and (j) rights to protection of interests in the foregoing under the laws, rules and regulations of all jurisdictions, including all registrations, renewals, extensions, combinations, divisions, or reissues of, and applications for, any of the rights referred to above.

2

2.      **Purchase Price**. The purchase price for the Assets is $6,000,013 (the "Purchase Price"). Concurrently with the mutual execution and delivery of this Agreement, Buyer shall deposit with the Trustee, by wire transfer made in accordance with such written wire transfer instructions as the Trustee may provide to Buyer prior to such mutual execution ("Wiring Instructions"), a deposit the amount of $600,001.30 (the "Deposit"). The Trustee shall hold the Deposit in trust to be credited and applied toward payment of the Purchase Price at the consummation of the transaction contemplated herein (the "Closing") and otherwise for disposition in accordance with the terms and provisions of this Agreement in the event the Closing does not occur. The portion of the Purchase Price in excess of the amount of the Deposit shall be paid by Buyer in accordance with the Wiring Instructions on the date on which the Closing occurs (the "Closing Date"). Except as provided in Section 22 below with respect to any termination of this Agreement resulting from Buyer's breach hereunder, upon a termination of this Agreement, the Deposit shall be returned to the Buyer.

3.      **Release**. Effective upon the occurrence of the Closing (and only at such time), the Seller, on behalf of itself, its affiliates and its successors and assigns, hereby releases each member of the Van Elslander family from any non-compete, non-solicitation and any other restrictive covenants preventing or limiting the nature or scope of business or employment that may be pursued by any member of the Van Elslander family (the "Restrictive Covenants"), including, without limitation, any Restrictive Covenants in the agreements set forth on Exhibit B.

4.      **Seller's Representations and Warranties**. Each Seller represents and warrants as of the date hereof that:

(a)      subject, in all respects, to the Bankruptcy Court's approval of this Agreement by entry of an order in substantially the form attached hereto as Exhibit C or such other form of order as the Parties may agree upon writing (the "Sale Order"), (i) each Seller has the authority necessary to enter into and perform their respective obligations under this Agreement and to consummate the transactions contemplated hereby, (ii) this Agreement has been duly and validly executed and delivered by Sellers, (iii) this Agreement constitutes the legal, valid and binding obligation of such Seller, enforceable against it in accordance with its terms and not subject to defenses and (iv) to the Trustee's actual current knowledge, Sellers are not required to give any notice to, make any filing with or obtain any consent from any person or entity (including any governmental authority) in connection with the execution and delivery of this Agreement or the consummation or performance of any of the transactions contemplated hereby;

(b)      Sellers have not incurred any obligation or liability, contingent or otherwise, for brokerage or finders' fees or agents' commissions or other similar payment in connection with this Agreement or the transactions contemplated hereby for which Buyer is or will become liable, and Sellers shall indemnify and hold harmless Buyer from any claims with respect to any such fees or commissions.

5.      **Buyer's Representations and Warranties**. Buyer represents and warrants as of the date hereof and as of the Closing Date that:

118507.000002 4840-1283-7077.1          DOCS_LA:334651.5 05233/003

(a)      it is duly organized, validly existing, and in good standing under the laws of the State of Michigan;

(b)      (i) Buyer has the full right, company power, and authority to enter into this Agreement and to perform its obligations hereunder; (ii) this Agreement has been duly and validly executed and delivered by Buyer, and (iii) Buyer is not required to give any notice to, make any filing with or obtain any consent from any person or entity (including any governmental authority) in connection with the execution and delivery of this Agreement or the consummation or performance of any of the transactions contemplated hereby;

(c)      Buyer has sufficient liquid assets available to Buyer and committed to payment of the Purchase Price on the Closing Date and to otherwise satisfy its obligations under this Agreement;

(d)      it has taken all necessary action to authorize the execution of this Agreement by its representative whose signature is set forth at the end hereof;

(e)      the execution and delivery of this Agreement, the consummation of the transactions contemplated by this Agreement, and the performance of, fulfillment of, and compliance with the terms and conditions hereof by Buyer do not and will not: (i) conflict with or result in a breach of the organizational documents of Buyer; (ii) violate any law binding on Buyer; or (iii) violate or conflict with or constitute a default under any contract to which Buyer is a party or by which Buyer or Buyer's assets or properties may be bound;

(f)      Buyer has not incurred any obligation or liability, contingent or otherwise, for brokerage or finders' fees or agents' commissions or other similar payment in connection with this Agreement or the transactions contemplated hereby for which any Seller is or will become liable, and Buyer shall indemnify, defend and hold harmless Sellers from any claims with respect to any such fees or commissions; and

(g)      subject, in all respects, to the Bankruptcy Court's approval of this Agreement by entry of the Sale Order, when executed and delivered by it, this Agreement will constitute the legal, valid and binding obligation of Buyer, enforceable against it in accordance with its terms and not subject to defenses.

6.      **Obligations of Sellers.**  During the period between mutual execution of this Agreement and the Closing Date, Sellers shall use commercially reasonable efforts, taking into account the respective Sellers' statuses as chapter 7 debtors, to maintain and preserve the Assets in their present condition (including by using its commercially reasonable efforts to renew any Intellectual Property registrations that may come up for renewal, and to use their commercially reasonable efforts to advance the process of any pending Intellectual Property applications).  Sellers shall not sell, lease (as lessor), transfer or otherwise dispose of, or mortgage or pledge, or voluntarily impose or suffer to be imposed any Lien on any Asset, cancel or compromise any material claim or waive or release any material right, in each case, that is a claim or right related to an Asset or enter into any agreement or commitment to take any action prohibited by this Section 5.

4

7.    **"As Is" Transaction.**  BUYER HEREBY ACKNOWLEDGES AND AGREES THAT NEITHER THE TRUSTEE NOR THE SELLERS MAKE ANY REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATING TO THE ASSETS, INCLUDING EXPENSES TO BE INCURRED OR REVENUES TO BE REALIZED IN CONNECTION WITH THE ASSETS, THE CONDITION OF ANY OF THE ASSETS, THE VALUE OF THE ASSETS (OR ANY PORTION THEREOF), THE TRANSFERABILITY OF THE ASSETS, OR ANY OTHER MATTER OR THING RELATING TO THE ASSETS, OR ANY PORTION THEREOF. WITHOUT IN ANY WAY LIMITING THE FOREGOING, THE TRUSTEE AND THE SELLERS HEREBY DISCLAIM ANY WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AS TO ANY PORTION OF THE ASSETS.  BUYER FURTHER ACKNOWLEDGES THAT (I) BASED UPON THE PRIOR INVOLVEMENT OF ITS PRINCIPALS IN THE OPERATION OF SELLERS' BUSINESSES AND OWNERSHIP OF THE ASSETS, BUYER HAS EXTENSIVE KNOWLEDGE ABOUT THE ASSETS AND MATTERS RELATING TO THE ASSETS, (II) BUYER HAS CONDUCTED SUCH ADDITIONAL INVESTIGATION OF THE ASSETS AS BUYER DEEMED NECESSARY OR APPROPRIATE, AND (III) IN PROCEEDING WITH ITS ACQUISITION OF THE ASSETS, BUYER IS DOING SO BASED SOLELY UPON SUCH INDEPENDENT KNOWLEDGE, INSPECTIONS AND INVESTIGATIONS. ACCORDINGLY, BUYER WILL ACCEPT THE ASSETS AT THE CLOSING "AS IS," "WHERE IS," AND "WITH ALL FAULTS."

8.    **Conditions Precedent to Closing.**

(a)    <u>Conditions to Seller's Obligations</u>. Seller's obligation to sell, convey, assign, transfer, and deliver the Assets to Buyer shall be subject to the satisfaction or written waiver by Sellers of each of the following conditions:

(i)    all of the representations and warranties of Buyer contained herein shall continue to be true and correct on the Closing Date in all material respects, and Sellers shall have received a certificate of Buyer to such effect signed by a duly appointed officer thereof,

(ii)    Buyer shall have performed and complied with in all material respects the covenants and agreements that Buyer is required to perform or comply with pursuant to this Agreement on or prior to the Closing Date, and Sellers shall have received a certificate of Buyer to such effect signed by a duly appointed officer thereof,

(iii)    the Bankruptcy Court shall have entered the Sale Order, and the Sale Order shall not have been stayed, appealed, vacated, reversed, or modified as of the Closing Date,

(iv)    no governmental authority shall have enacted, issued, promulgated or entered any order, judgment, decree or stipulation which is in effect and has the effect of making illegal or otherwise prohibiting the consummation of the transactions contemplated by this Agreement,

5

(v)    Buyer shall have delivered to Sellers and Trustee written confirmation that the Trustee is authorized to release the Deposit to the Sellers for credit and application toward payment of the Purchase Price; and

(vi)    the Closing shall occur by no later than forty-five (45) days following the Effective Date (such date, the "Outside Date").

(b)    Conditions to Buyer's Obligations. Buyer's obligation to perform any of Buyer's obligations under this Agreement, including paying the Purchase Price to Seller on the Closing Date, shall be subject to the satisfaction or written waiver by Buyer of each of the following conditions:

(i)    all of the representations and warranties of Seller contained herein shall continue to be true and correct on the Closing Date in all material respects, and Buyer shall have received a certificate of Sellers to such effect signed by the Trustee,

(ii)    Sellers shall have performed and complied with in all material respects the covenants and agreements that Sellers are required to perform or comply with pursuant to this Agreement on or prior to the Closing Date, and Buyer shall have received a certificate of Sellers to such effect signed by the Trustee,

(iii)    the Bankruptcy Court shall have entered the Sale Order, and the Sale Order shall not have been stayed, appealed, vacated, reversed, or modified as of the Closing Date,

(iv)    no governmental authority shall have enacted, issued, promulgated or entered any order, judgment, decree or stipulation which is in effect and has the effect of making illegal or otherwise prohibiting the consummation of the transactions contemplated by this Agreement,

(v)    the Sellers shall have delivered to Buyer such bills of sale, deeds, endorsements, assignments, and other filings and other good and sufficient instruments, in form and substance reasonably satisfactory to Buyer, as Buyer may reasonably request to vest in Buyer all the right, title and interest of Sellers in, to or under any or all of the Assets free and clear of Liens to the extent provided in the Sale Order, provided, however, Sellers shall not be required to provide UCC terminations or similar instruments or documents relating to any Lien or other matter as to which the Sale Order provides Sellers are selling free and clear, and

(vi)    the Closing shall occur by no later than the Outside Date.

9.    **Bankruptcy Matters.** This Agreement is subject, in all respects, to approval by the Bankruptcy Court and entry of the Sale Order. Seller will seek and use commercially reasonable efforts to obtain the Bankruptcy Court's approval of this Agreement and entry of the Sale Order at a hearing to be held as soon as reasonably practicable after the Effective Date (the "Sale Hearing"). Buyer acknowledges and agrees that the Trustee is a fiduciary and, subject to his fiduciary duties, Trustee and Sellers shall consider (a) higher or better competing bids for the Assets that may be made at or prior to the Sale Hearing (each a "Competing Bid"), (b) Seller may elect, with Bankruptcy Court approval, to sell the Assets to the

6

maker of a Competing Bid, and (c) the consummation of any such sale of the Assets (a "Trigger Event") will void this Agreement and, other than the obligations of Sellers to (i) cause the Deposit to be returned to Buyer, and (ii) pay to Buyer upon the occurrence of a Trigger Event and from and out of the proceeds of the sale giving rise to the Trigger Event, an expense reimbursement of Buyer's actual costs and expenses (including the reasonable and documented out-of-pocket fees and expenses of counsel) incurred in connection with the negotiation of, and entry into, this Agreement (provided that such expense reimbursement shall in no event exceed an amount equal to one and one half percent (1.5%) of the Purchase Price), neither Sellers nor Trustee will have any further obligation to Buyer or any other party under or in connection with this Agreement.

10.    **Amendment**.  This Agreement and the Exhibits may not be amended except by an instrument in writing signed by Buyer and Sellers.

11.    **Third Party Beneficiaries**.  Except as set forth herein, nothing in this Agreement will be construed as giving any individual, entity, or otherwise, other than the Parties to this Agreement and their successors and permitted assigns, any right, remedy or claim under, or in respect of, this Agreement or any provision hereof.

12.    **Further Assurances**.  Each Party shall cooperate with the other(s) and execute and deliver to the other Party(ies) such other instruments and documents and take such other actions as may be reasonably requested from time to time by the other Party(ies) as necessary to carry out, evidence, and confirm the intended purposes of this Agreement.  Subject to the terms and conditions of this Agreement (including, without limitation, the proviso at the end of Section 7(b)(v) hereof), each of the Parties agrees to use commercially reasonable efforts, to take, or cause to be taken, all action and to do, or cause to be done, all things necessary or reasonably proper or advisable under applicable laws and regulations to consummate and make effective the transactions contemplated by this Agreement.  If at any time after the Closing any further action is necessary to carry out or perform a Party's obligations under this Agreement, such Party shall take, such necessary action; provided that as to Sellers, the obligation set forth in this sentence shall terminate upon the closing of the Cases.  For the avoidance of all doubt, nothing in this Section 11 shall be deemed to require any Party to incur any material cost or expense, to take any action or execute any document or instrument which would in any material respect increase the burdens or liability imposed upon such Party by the other provisions of this Agreement, or to initiate or join in any litigation or other proceeding. Sellers, on the one hand, and Buyer, on the other hand, each agree that, after the Closing Date, each will hold and will promptly transfer and deliver to the other(s), from time to time as and when received by them, any cash, checks with appropriate endorsements (using their commercially reasonable efforts not to convert such checks into cash) or other property that they may receive on or after the Closing Date which properly belongs to the other and will account to the other for all such receipts.

13.    **No Waiver**.  No failure of any Party to exercise any power given it under this Agreement, or to insist upon strict compliance with any provision of this Agreement, and no custom or practice at variance with the terms of this Agreement shall constitute a waiver of any such Party's right to demand strict compliance with the terms of this Agreement.

7

14.    **Entire Agreement.**    This Agreement, together with the Exhibits constitutes the entire Agreement between the Parties and pertaining to the subject matter of this Agreement and supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions (whether written or unwritten), of the Parties.

15.    **Governing Law and Severability.**    This Agreement shall be governed by, construed, interpreted and the rights of the Parties determined in accordance with the laws of the State of Delaware (regardless of the laws that might be applicable under principles of conflicts of law). Should any clause, section or part of this Agreement be held or declared to be void or illegal for any reason, all other clauses, sections or parts of this Agreement shall nevertheless continue in full force and effect.

16.    **Expenses; Prevailing Party Fees.**    Except only as otherwise provided in Section 8(ii) above, each Party shall pay its own costs and expenses, including legal, accounting, consulting and other professional fees and any broker's or finder's fees, incurred in connection with the negotiation, preparation, investigation, and performance by such Party of this Agreement and the transactions contemplated under this Agreement. Notwithstanding the foregoing, in the event a Party(ies) elects to incur legal expenses to enforce or interpret any provision of this Agreement by judicial proceedings, the prevailing Party(ies) in such proceedings shall be entitled to have and recover such legal costs and expenses, including reasonable attorneys' fees and costs and all court and tribunal costs and fees at all court levels, in addition to any other relief to which such Party shall be entitled to hereunder.

17.    **Notices.**    All notices required or permitted to be given under this Agreement shall be in writing and may be delivered by hand, by e-mail in portable document format (PDF) or similar format, or by nationally recognized private courier.  Notices delivered by hand shall be deemed delivered when actually delivered. Notices given by nationally recognized private courier shall be deemed delivered on the date delivery is promised by the courier. Notices given by electronic transmission shall be deemed given when sent; provided, however, that a notice delivered by e-mail shall only be effective if such notice is also delivered by hand or given by nationally recognized private courier on or before two business days after its delivery by e-mail. All notices shall be addressed as follows:

If to Buyer, addressed to:

VEC, LLC
35975 Woodward Avenue, Suite 200
Birmingham, MI  48009
Attention: Gary Van Elslander
Email: gvan@vec13.com

with a copy (which will not constitute notice) to:

Dykema Gossett PLLC
112 E. Pecan, Suite 1800
San Antonio, Texas 78205
Attention: Deborah D. Williamson

118507.000002 4840-1283-7077.1                    DOCS_LA:334651.5 05233/003

Email: dwilliamson@dykema.com

If to Sellers, addressed to:


Giuliano, Miller & Co., LLC
2301 E. Evesham Road
Pavilion 800, Suite 210
Voorhees, NJ 08043
Attention: Mr. Alfred T. Giuliano, Chapter 7 Trustee
Email: atgiuliano@giulianomiller.com

with a copy (which will not constitute notice) to:


Pachulski Stang Ziehl & Jones, LLP
919 Market Street
Wilmington, DE 19899
Attention: Bradford J. Sandler, Esq.
Email: bsandler@pszjlaw.com

If to Trustee, addressed to:

Mr. Alfred T. Giuliano, Chapter 7 Trustee
Giuliano, Miller & Co., LLC
2301 E. Evesham Road
Pavilion 800, Suite 210
Voorhees, NJ 08043
Email: atgiuliano@giulianomiller.com

with a copy (which will not constitute notice) to:

Pachulski Stang Ziehl & Jones, LLP
919 Market Street
Wilmington, DE 19899
Attention: Bradford J. Sandler, Esq.
Email: bsandler@pszjlaw.com

or to such other place and with such other copies as either Party may designate as to itself by written notice to the others in accordance with the provisions of this Section 15.

18.   **Execution of Agreement.**   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Copies (whether electronic, fax or otherwise) of this Agreement may be made and relied upon to the same extent as an original. The exchange of copies of this Agreement and of signature pages by fax transmission or e-mail shall constitute

118507.000002 4840-1283-7077.1          DOCS_LA:334651.5 05233/003

effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement for all purposes. Signatures of the Parties transmitted by fax or e-mail shall be deemed to be their original signatures for all purposes.

19.    **WAIVER OF JURY TRIAL**. EACH PARTY TO THIS AGREEMENT HEREBY UNCONDITIONALLY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, ANY OF THE TRANSACTION DOCUMENTS RELATED HERETO, ANY DEALINGS BETWEEN THE PARTIES RELATING TO THE SUBJECT MATTER OF THIS AGREEMENT OR ANY RELATED TRANSACTION.

20.    **SUBMISSION TO EXCLUSIVE JURISDICTION**. EACH PARTY IRREVOCABLY AND UNCONDITIONALLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE BANKRUPTCY COURT AND ANY APPELLATE COURT ARISING THEREFROM, IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT, THE TRANSACTION OR ANY OF THE TRANSACTION DOCUMENTS ENTERED INTO IN CONNECTION HEREWITH OR FOR THE RECOGNITION OR ENFORCEMENT OF ANY JUDGMENT, AND EACH OF THE PARTIES HERETO IRREVOCABLY AND UNCONDITIONALLY AGREES THAT ALL CLAIMS IN RESPECT OF ANY SUCH ACTION OR PROCEEDING SHALL BE HEARD AND DETERMINED ONLY IN SUCH COURTS. EACH OF THE PARTIES AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION OR PROCEEDING SHALL BE FINAL, CONCLUSIVE AND BINDING ON SUCH PARTY.

21.    **Assignment**. This Agreement shall be binding upon, and inure to the benefit of, the Parties and their respective successors and permitted assigns. Neither this Agreement nor any rights or obligations hereunder shall be assignable by any Party without the prior written consent of the other(s), which consent may be granted or withheld in the non-assigning parties' sole discretion. For the avoidance of doubt, Buyer, Sellers and the Trustee all hereby acknowledge and agree that no assignment of any rights, obligations and/or interests hereunder shall be deemed to in any way relieve or otherwise reduce the assigning Party's obligations under this Agreement.

22.    **No Recourse to Trustee**. Buyer expressly acknowledges and agrees that the Trustee is executing this Agreement and entering into the transaction contemplated herein solely in his capacity as Chapter 7 Trustee for bankruptcy estates of the Seller (collectively, the "**Estates**") and that in the event of any default in the performance of the obligations of any Seller or their respective Estates' under this Agreement or the transaction contemplated herein or in the event that any other claim is asserted against any Seller or their respective Estates in connection with this Agreement or the transactions contemplated herein, the Trustee shall in no event have any personal liability whatsoever (whether in his individual capacity or otherwise), it being expressly understood and agreed that Buyer's sole and exclusive recourse, if any, in such event shall be to the assets of the Estates.

23.    **Liquidated Damages**. In the event that this Agreement is terminated by reason of Buyer's material breach of its obligations hereunder, Sellers shall be entitled to receive from the Trustee and retain the Deposit as liquidated damages and Sellers' sole remedy against

10

Buyer in connection with such termination. Buyer and Sellers acknowledge and agree that it would be impracticable or extremely difficult to determine the actual monetary damages Sellers would incur by reason of a termination of this Agreement by reason of any such breach by Buyer.  Accordingly, Buyer and Sellers (each sophisticated in its own right and/or represented by counsel who advised them of the implications of this Section 22) have agreed that an amount equal to the Deposit represents a fair and reasonable estimate under the circumstances of the likely damages Sellers would incur by reason of a termination resulting from Purchaser's breach hereunder.  Sellers shall be entitled to retain the Deposit as liquidated damages, not as a fine or penalty paid by Purchaser.

        24.    **Personally Identifiable Information.**  Effective upon the Closing, the Buyer hereby agrees to maintain all personally identifiable information obtained by the Buyer in connection with the transactions contemplated by this Agreement in accordance with the Sellers' existing privacy policies (copies of which Buyer hereby acknowledges having received and reviewed prior to its execution and delivery of this Agreement); provided, however, that nothing in this Agreement shall be construed as preventing the Buyer from modifying any such privacy policies following the Closing to the extent permitted under such privacy policies and under applicable law.

[<em>Signature Pages Follow</em>]

118507.000002 4840-1283-7077.1          DOCS_LA:334651.5 05233/003

IN WITNESS WHEREOF, the Parties have duly executed and delivered this Agreement as of the date first written above.

**THE DEBTORS**

By: _____

Name: Alfred T. Giuliano, solely in his capacity as Chapter 7 Trustee of the Debtors and not in any individual capacity

**VEC, LLC**

By: _____

Name: _GARY VAN ELSLANDER_

Title: _PRESIDENT_

118507.000002 4827-0868-9877.4            DOCS_LA:334651.6 05233/003

**<u>EXHIBIT A</u>**

**SCHEDULE OF CERTAIN ASSETS**

Schedule of Trademarks and Brands

| TRADEMARK | OWNER | TRADEMARK TYPE | IC CLASS US CLASS GOODS AND SERVICES | SERIAL OR APPLICATION NUMBER | APPLICATION DATE | REGISTRATION NUMBER | REGISTRATION DATE |
|---|---|---|---|---|---|---|---|
| ADRENALINE | Art Van Furniture, LLC | Trademark<br><br>Word | IC 20 Mattresses, sleep products, namely, mattresses, spring mattresses, box springs and mattress foundations | 87-102,773 | 7/13/2016 | 5,233,861 | 6/27/2017 |
| ARBOR | Art Van Furniture, LLC | Trademark<br><br>Word | IC 20 Bed pillows; Pillows ;;<br>IC 24 Bed blankets; Bed covers; Bed linen; Bed pads; Bed sheets; Bed skirts; Bed spreads; Bed throws; Box spring covers; Comforters; Duvets; Eiderdown covers; Eiderdowns; Mattress covers; Mattress pads; Pillow cases | 87-681,916 | 11/13/2017 | 5,577,246 | 10/2/2018 |
| ARBOR | Art Van Furniture, LLC | Trademark<br><br>Word | IC 20 Box springs, mattress foundations, mattresses; spring mattresses | 88-606998 | 9/6/2019 | Pending | Pending |
| ART VAN | Art Van Furniture, LLC | Service Mark<br><br>Word | IC 42 Goods and Services: Retail Furniture Store Services | 73-757305 | 10/12/1988 | 1,555,257 | 9/5/1989 |
| ART VAN (Canada) | Art Van Furniture, LLC | Trade-Mark (Word) | Goods: (1) Furniture Services: (1) Retail Furniture store services; (2) online retail furniture store services; Classification: 20 (furniture) & 35 (marketing) | 1725263 | 4/24/2015 | TMA1037188 | 7/8/2019 |
| ART VAN (Canada) Chair in the Square | Art Van Furniture, LLC | Design Mark - Chair in the Square | Class 35: (Retail furniture stores) | 1835476 | 05/02/17 | TMA1054436 | 9/16/2019 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ART VAN PURE SLEEP | Art Van Furniture, LLC | Service Mark<br>Word with Pure Sleep next to a square with Art Van word | IC 35 Retail shops featuring sleep-related products such as pillows and mattresses, | 85-130,918 | 9/16/2010 | 3,988,774 | 7/5/2011 |
| ART VAN Chair in the Square | Art Van Furniture, LLC | Service Mark<br>Chair in the Square | IC 35: Retail furniture stores | 87-404,648 | 4/10/2017 | 5,316,879 | 10/24/2017 |
| BLACK SATURDAY | Art Van Furniture, LLC | Service Mark<br>Word | IC 35 Goods and Services: Retail store services featuring furniture and mattresses | 86-131,662 | 11/28/2013 | 4,579,292 | 8/5/2014 |
| DETROIT MATTRESS CO. | Art Van Furniture, LLC | Trademark<br>Word | IC 20 Box Springs; Mattress foundations; Mattresses; sleep products, namely, mattresses, spring mattresses, box springs and mattress foundations | 87-516,479 | 7/5/2017 | 5,377,263 | 1/9/2018 |
| DETROIT SOFA | Art Van Furniture, LLC | Trademark<br>Word | IC 20 Easy chairs; Sofas; Upholstered furniture | 86-622,152 | 8/26/2016 - Amended 5/7/2015- Original | 5,070,296 | 10/25/2016 |
| MATTRESS EXPRESS | Art Van Furniture, LLC | Service Mark<br>Words | IC 42 Goods and Services: Retail Furniture Store Services | 73-757307 | 10/12/1988 | 1,563,919 | 10/31/1989 |
| MOTOR CITY MATTRESS | Art Van Furniture, LLC | Trademark | IC 20 Sleep products, namely mattresses, box springs and foundations | 88-571912 | 8/8/2019 | Pending | Pending |
| PURESLEEP | Art Van Furniture, LLC | Service Mark<br>Word | IC 35 retail shops featuring sleep-related products such as pillows and mattresses | 86-533,340 | 2/12/2015 | 4,795,256 | 8/18/2015 |
| PURESLEEP<br>(online services) | Art Van Furniture, LLC | Service Mark<br>Word | IC 35 on-line retail stores services featuring mattress, pillows and other bedroom-related products | 87-724,756 | 12/18/2017 | 5,508,593 | 7/3/2018 |

| Mark | Owner | Type | Goods/Services | Serial No. | Date | Reg. No. | Date |
|---|---|---|---|---|---|---|---|
| PURESLEEP (claiming color blue) | Art Van Furniture, LLC | Service Mark / Word | IC 35 on-line retail stores services featuring bedroom products such as pillows and mattresses; Retail shops featuring bedroom products such as pillows and mattresses | 87-724,624 | 12/18/2017 | 5,508,592 | 7/3/2018 |
| PURETECH Child Matter | Art Van Furniture, LLC | Trademark / Word | IC 20 bed pillows and pillows and IC 24 Bed blankets; Bed covers; Bed linen; Bed pads; Bed skirts; Bed spreads; Bed throws; Eiderdown covers; Eiderdowns; Box spring covers; Fitted bed sheets; Flat bed sheets | 87-975564 | 8/30/2016 | 5,272,921 | 8/22/2017 |
| ROMA | Art Van Furniture, LLC | Trademark / Word | IC 20: Furniture | 87-908,119 | 5/4/2018 | 5,595,818 | 10/30/2018 |
| ROMA | Art Van Furniture, LLC | Trademark / Word with box and chair to left | IC 20 Good and Services: Furniture, excluding cabinets | 85-021,418 | 4/23/2010 | 4,147,167 | 5/22/2012 |
| SLEEP PURE BETTER SLEEP, NATURALLY and Sleeping Pure & Design | Art Van Furniture, LLC | Trademark / Word | IC 20 mattresses, pillows, toppers, dog bed | 87407302 | 4/11/2017 | 5,456,887 | 5/1/2018 |
| Snoozecube Trademark Assignment | Art Van Furniture, LLC | Standard Character Mark | IC 20 Mattresses | 87-094664 | | 5,277,794 | 8/29/2017 |
| Snoozecube Trademark Assignment | Art Van Furniture, LLC | Standard Character Mark | IC 20 Mattresses | 88-576303 | 8/13/2019 | Pending | Pending |

| Mark | Owner | Type | Format | Goods/Services | Serial No. | Filing Date | Reg. No. | Reg. Date |
|---|---|---|---|---|---|---|---|---|
| TAKE THE TEST OR TAKE YOUR CHANCES | Art Van Furniture, LLC | Service Mark | Word | IC 35; Retail furniture stores, retail store services featuring assistance with mattress selection; retail stores featuring sleep-related products, namely mattresses, mattress protectors and pillows | 86-933,669 | 3/9/2016 | 5,085,533 | 11/22/2016 |
| THE BED FOR YOUR HEAD | Art Van Furniture, LLC | Service Mark | Word | IC 35 Retail furniture stores, retail store services featuring bedding | 86-483,097 | 12/17/2014 | 4,789,730 | 8/11/2015 |
| THE BED FOR YOUR HEAD | Art Van Furniture, LLC | Trademark | Word | IC 20 pillows | 87-156,848 | 8/31/2016 | 5,424,282 | 3/13/2018 |
| Scott Shuptrine | | | | | | | | |
| UNIVERSAL SLEEP PRODUCTS (to be abandoned) | Art Van Furniture, LLC | Trade-Mark | Word | IC 20 Beds, mattresses, pillows and bolsters; Mattresses | 85-532,996 | 2/3/2012 | 4,404,055 | 9/17/2013 |

* This schedule remains subject to the terms of this Agreement, including, without limitation, Section 7.

Customer Database Sample*



* Personally identifiable information has been redacted from this schedule for consumer privacy reasons and shall remain subject to the terms of the Agreement.

## Schedule of Domain Names *

| Domain Name |
|---|
| artvansucks.biz |
| baltimoremattressco.com |
| baltimoremattresscompany.com |
| pittsburghmattressco.com |
| pittsburghmattresscompany.com |
| PURESLEEPMATTRESSES.COM |
| ARTVANPURESLEEPQUIZ.COM |
| ARTVANCONTESTS.COM |
| ARTVANSUCKS.CO |
| ARTVANSUCKS.COM |
| ARTVANSUCKS.INFO |
| ARTVANSUCKS.NET |
| ARTVANSUCKS.ORG |
| AVFCORP.COM |
| artvan.ca |
| THREADANDFEATHERFURNITURE.COM |
| detroitmattressco.ca |
| detroitmattressco.com |
| detroitmattresscompany.ca |
| detroitmattresscompany.com |
| detroitsofaco.ca |
| detroitsofacompany.ca |
| artvandirect.ca |
| artvanonline.ca |
| artvanpuresleep.ca |
| puresleepmattresses.ca |
| SCOTTSHUPTRINE-EMAIL.COM |
| artvan.online |
| artvanfurniture.online |
| artvanfurniturerewards.com |
| artvanrewards.com |
| artvanrewardscard.com |
| artvantagerewards.com |
| WEVEGOTTHELOOK.COM |
| ARTVAN.SALE |
| ARTVANFLOORS.COM |
| discoverartvanfranchising.com |
| artvanfurniture.net |
| artvan.store |
| artvanfurniture.store |
| ARTVANFLOORS.NET |
| ARTVANCHARITYCHALLENGE.COM |
| artvanhome.biz |
| artvanhome.co |
| artvanhome.us |
| artvanhome.info |
| artvanhome.net |
| artvanhome.org |
| artvan.co |
| artvanhome.ca |
| artvanhome.online |
| adrenalinesleep.com |
| sleepadrenaline.com |
| artvannordicstyle.com |
| 313linens.co |
| 313linens.com |
| 313linens.info |
| 313linens.net |
| 313linens.org |
| ARTVANMEDIA.COM |
| ARTVANMEDIA.INFO |
| ARTVANMEDIA.NET |
| artvanfranchising.biz |
| artvanfranchising.co |

artvanfranchising.us
artvanfranchising.info
artvanfranchising.net
artvanfranchising.org
adrenalinemattress.com
detroitsofaco.com
detroitsofacompany.com
SCOTTSHUPTRINE.COM
SCOTTSHUPTRINEINTERIORS.COM
SHUPTRINEINTERIORS.COM
ARTVANFLOORING.COM
purasleep.com
artvanfurniture.co
artvanfurnituresucks.biz
artvanfurnituresucks.co
artvanfurnituresucks.info
artvanfurnituresucks.net
artvanfurnituresucks.org
MICHIGANCLEANTEAM.COM
PURESLEEPMATTRESSSHOP.COM
PURESLEEPMATTRESSSTORE.COM
PURESLEEPMATTRESSSTORES.COM
artvanfurnitureoutlet.co
artvanoutlet.co
ARTVANFLOORING.INFO
ARTVANFLOORING.NET
artvanfurnitureoutlet.biz
artvanfurnitureoutlet.ca
artvanfurnitureoutlet.com
artvanfurnitureoutlet.gallery
artvanfurnitureoutlet.info
artvanfurnitureoutlet.net
artvanfurnitureoutlet.org
artvanfurnitureoutlet.store
artvanfurnitureoutlet.us
artvanoutlet.biz
artvanoutlet.ca
artvanoutlet.com
artvanoutlet.gallery
artvanoutlet.info
artvanoutlet.net
artvanoutlet.org
artvanoutlet.store
ARTVANFRANCHISING.COM
PURESLEEPING.COM
PURESLEEPEDGE.COM
PURESLEEPEDGE.INFO
PURESLEEPEDGE.NET
PURESLEEPEDGE.ORG
artvandirect.biz
artvandirect.co
artvandirect.us
artvanfurnituredirect.biz
artvanfurnituredirect.co
artvanfurnituredirect.us
artvan.direct
artvandirect.com
artvandirect.info
artvandirect.net
artvandirect.org
artvanfurnituredirect.com
artvanfurnituredirect.info
artvanfurnituredirect.net
artvanfurnituredirect.org
ARTVANFURNITURE.ORG
artvanbrands.com
ARTVAN.BIZ
ARTVAN.US

ARTVANFURNITURE.BIZ
ARTVANFURNITURE.US
ARTVAN.INFO
ARTVAN.MOBI
ARTVAN.ORG
ARTVAN.XXX
ARTVANFURNITURE.INFO
ARTVANFURNITURE.MOBI
ARTVANFURNITURE.XXX
ARTVANFURNITURESUCKS.COM
ARTVANONLINE.COM
hillside-furniture.com
hillsidefurniture.com
arborbedding.com
arborbedding.info
arborbedding.net
arborbedding.org
arborbedlinens.com
arborbedlinens.info
arborbedlinens.net
arborbedlinens.org
arborlinens.com
arborlinens.info
arborlinens.net
arborlinens.org
detroitpetbeds.com
detroitpetbeds.info
detroitpetbeds.net
detroitpetbeds.org
ARTVANHOMEREWARDS.COM
artvan.blackfriday
artvan.adult
artvan.bargains
artvan.careers
artvan.porn
artvan.today
artvan.wtf
artvancareers.com
myartvan.com
hillside.furniture
hillside-furniture.net
hillsidefurniture.net
ARTVAN.COM
ARTSBACKYARD.COM
ARTVANMATTRESSES.COM
ARTVANPURESLEEP.COM

\* This schedule is based on the Debtors' schedules of financial affairs and is subject to the terms of this Agreement, including, without limitation, Section 7.

## **EXHIBIT B**

## **RESTRICTIVE COVENANT AGREEMENTS**

Non-Competition and Non-Solicitation Agreement by and among AVF Parent, LLC, Art Van Furniture, Inc., AVASI, Inc., Comfort Mattress Co., Art Van Furniture – Conner, Inc., and Beth M. Wood, entered into as of January 16, 2017.

Non-Competition and Non-Solicitation Agreement by and among AVF Parent, LLC, Art Van Furniture, Inc., AVASI, Inc., Comfort Mattress Co., Art Van Furniture – Conner, Inc., and David P. Van Elslander, entered into as of January 16, 2017.

Non-Competition and Non-Solicitation Agreement by and among AVF Parent, LLC, Art Van Furniture, Inc., AVASI, Inc., Comfort Mattress Co., Art Van Furniture – Conner, Inc., and Debra A. Van Elslander, entered into as of January 16, 2017.

Non-Competition and Non-Solicitation Agreement by and among AVF Parent, LLC, Art Van Furniture, Inc., AVASI, Inc., Comfort Mattress Co., Art Van Furniture – Conner, Inc., and Gary A. Van Elslander, entered into as of January 16, 2017.

Non-Competition and Non-Solicitation Agreement by and among AVF Parent, LLC, Art Van Furniture, Inc., AVASI, Inc., Comfort Mattress Co., Art Van Furniture – Conner, Inc., and Karen B. Paglino, entered into as of January 16, 2017.

Non-Competition and Non-Solicitation Agreement by and among AVF Parent, LLC, Art Van Furniture, Inc., AVASI, Inc., Comfort Mattress Co., Art Van Furniture – Conner, Inc., and Kenneth A. Van Elslander, entered into as of January 16, 2017.

Non-Competition and Non-Solicitation Agreement by and among AVF Parent, LLC, Art Van Furniture, Inc., AVASI, Inc., Comfort Mattress Co., Art Van Furniture – Conner, Inc., and Kim M. Van Elslander, entered into as of January 16, 2017.

Non-Competition and Non-Solicitation Agreement by and among AVF Parent, LLC, Art Van Furniture, Inc., AVASI, Inc., Comfort Mattress Co., Art Van Furniture – Conner, Inc., and Kris A. Scarfone, entered into as of January 16, 2017.

Non-Competition and Non-Solicitation Agreement by and among AVF Parent, LLC, Art Van Furniture, Inc., AVASI, Inc., Comfort Mattress Co., Art Van Furniture – Conner, Inc., and Lori J. Webb, entered into as of January 16, 2017.

Non-Competition and Non-Solicitation Agreement by and among AVF Parent, LLC, Art Van Furniture, Inc., AVASI, Inc., Comfort Mattress Co., Art Van Furniture – Conner, Inc., and Sandra Seroka, entered into as of January 16, 2017.

**<u>EXHIBIT C</u>**

**FORM OF SALE ORDER**

**[Attached to Motion]**