**Exhibit A**

**Proposed Sale Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| ART VAN FURNITURE, LLC, *et al.*,[1] | ) Case No. 20-10553 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket No. _____** |

## ORDER APPROVING (I) SALE OF REAL PROPERTY LOCATED AT 1620 N. TUCKAHOE STREET, BELLWOOD, PENNSYLVANIA 16617 FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES; AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of Alfred T. Giuliano, chapter 7 trustee (the "Trustee") to the estates of the above-captioned debtors (collectively, the "Debtors"), pursuant to sections 105 and 363 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (this "Order") authorizing and approving: (i) the sale (the "Sale") of certain real property owned by Debtor Art Van Furniture, LLC located at 1620 N. Tuckahoe Street, Bellwood, Pennsylvania 16617 (the "Property") to BHN Associates (or its designee) (the "Buyer") free and clear of all liens, claims, and encumbrances; and (ii) granting related relief, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463). The location of the Debtors' former headquarters was: 6500 East 14 Mile Road, Warren Michigan 48092.

[2] A capitalized term used but not defined herein shall have the meaning ascribed to it in the Motion or PSA, as applicable.

dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court finding that it may enter a final order consistent with Article III of the United States Constitution; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion and the sale hearing (the "Sale Hearing") have been provided; and the relief requested in the Motion being in the best interests of the Debtors, their estates, and their creditors; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court, and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      All objections and responses to the Motion, including all reservations of rights included therein that have not been overruled, withdrawn, waived, settled, continued, or resolved, are hereby overruled and denied

3.      The Purchase and Sale Agreement ("PSA"), in substantially the form attached hereto as **Exhibit 1**, and all of the terms and conditions thereof, are approved.

4.      The Bid Procedures for the Sale are approved.

5.      The form and manner of notice of the Motion and the proposed sale under the PSA is hereby approved as providing good and sufficient notice to all creditors and parties in interest pursuant to the Bankruptcy Rules and the Local Rules.

6.      The relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and other parties in interest.  Upon the record made at the Sale Hearing, the Trustee has demonstrated good, sufficient, and sound business purposes and justifications for

DOCS_DE:232971.1 05233/003

the relief requested in the Motion.  The Trustee's decision to enter into the PSA and perform thereunder is a reasonable exercise of his business judgment.

7.    The failure specifically to include any particular provision of the PSA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the PSA be authorized and approved in its entirety.

8.    Pursuant to section 363(b) of the Bankruptcy Code, the Trustee, on behalf of the Debtors, is authorized to perform its obligations under and comply with the terms of the PSA and consummate the Sale, pursuant to and in accordance with the terms and conditions of the PSA.

9.    The Trustee, on behalf of the Debtors, is authorized to execute and deliver, and empowered to perform under, consummate, and implement, the PSA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the PSA, and to take all further actions as may be reasonably required for the purpose of assigning, transferring, granting, conveying, and conferring the Property to the Buyer, or as may be necessary or appropriate to the performance of the obligations as contemplated by the PSA.

10.    Upon the closing of the Sale, the Sale of the Property to the Buyer shall vest the Buyer with all right, title, and interest in the Property, and, pursuant to section 363(f) of the Bankruptcy Code, the Sale shall be free and clear of any and all liens, claims, and encumbrances against the Property, with such liens, claims (as defined in section 101(5) of the Bankruptcy Code), interests, and encumbrances attaching to the proceeds of the Sale with the same validity, extent and priority as such liens, claims, and encumbrances had on the Property immediately prior to the Sale, subject to any rights, claims and defenses of the Debtors and other

DOCS_DE:232971.1 05233/003

parties in interest.

11.     The transactions contemplated by the PSA are undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale of the Property to the Buyer.  The Buyer, its affiliates, and their respective principals and advisors have proceeded in good faith and without collusion in all respects and are entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

12.     The consideration provided by the Buyer for the Property under the PSA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

13.     No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the transactions contemplated by the PSA.

14.     The Buyer shall not have any liability for any obligation of the Debtors arising under or related to any of the Property prior to the date of closing.  Without limiting the generality of the foregoing, the Buyer shall not be liable for any claims against the Debtors or any of their predecessors or affiliates solely by virtue of its acquisition of the Property.  By virtue of the Sale, the Buyer and its affiliates, successors and assigns shall not be deemed or considered to, (a) be a legal successor, or otherwise be deemed a successor to any of the Debtors, (b) have, *de facto* or otherwise, merged with or into any or all Debtors, or (c) be a continuation or substantial continuation, or be holding itself out as a mere continuation, of any of the Debtors or their respective estates, businesses or operations, or any enterprise of the Debtors, in each case by any law or equity, and the Buyer has not assumed nor is it in any way responsible for any liability or obligation of the Debtors or the Debtors' estates.  The Buyer shall have no successor

or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date.

15.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

16.    If any person or entity that has filed statements (including UCC-1 financing statements) or other documents or agreements evidencing all liens, claims, and encumbrances on, or interests in, all or any portion of the Property shall not have delivered to the Trustee, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all liens, claims, and encumbrances or any other documents necessary for the purpose of documenting the release of all liens, claims, and encumbrances or interests which the person or entity has or may assert, the Trustee is hereby authorized, and the Buyer is hereby authorized on behalf of the Debtors' estates and the Trustee, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Property.

17.    This Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title to or interest in any of the Property.

18.    The failure to specifically include any particular provision of the PSA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that that PSA be authorized and approved in its entirety; *provided*, *however*, that this Order shall govern if there is any inconsistency between the PSA and this Order.

19.    The Buyer is a party in interest and shall have standing to appear and be heard on all issues related to or otherwise connected with this Order, the Sale or the PSA.

20.    Notwithstanding any applicability of Bankruptcy Rules 6004, 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

21.    The PSA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

22.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to the PSA, the Sale, implementation, interpretation and/or enforcement of this Order.

DOCS_DE:232971.1 05233/003

**<u>Exhibit 1</u>**

**APA**

## PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (the **"Agreement"**) is made and entered into as of this **9th** day of April, 2021, by and between BHN Associates LLC or its designee (the **"Buyer"**), on the one hand, and Alfred T. Giuliano, solely in his capacity as the Chapter 7 Trustee of Art Van Furniture, LLC (the **"Debtor"**), in Case No. 20-10553 (the **"Bankruptcy Case"**) pending in the United States Bankruptcy Court for District of Delaware (the **"Bankruptcy Court"**) (**"Seller"** and, together with Buyer, the **"Parties"**).

## RECITALS

A.      Buyer wishes to acquire from Seller all of Seller's right, title and interest in and to that certain real property located in 1620 N. Tuckahoe Street, Bellwood, Blair County, Pennsylvania, Blair County Tax Parcel No. 05.00-01.-141.00-000 and is more particularly described on **Exhibit "A"** attached hereto and incorporated herein by this reference (the **"Land"**), together with all improvements thereon (**"Improvements"**), and easements, rights of way, and other rights and interests appurtenant thereto (collectively, the **"Real Property"**).

B.      Seller wishes to sell to Buyer, pursuant to Sections 363 of Chapter 11 of Title 11 of the United States Code (the **"Bankruptcy Code"**), the Real Property, all at the price and on the other terms and conditions specified in detail below.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.      <u>Purchase and Sale of Assets</u>.  On the Closing Date, as hereinafter defined, in consideration of the covenants and obligations of Buyer hereunder, and subject to the conditions hereinafter set forth, Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase from Seller all of Seller's right, title and interest in and to the Real Property Including, but not limited to, any right, title and interest of Seller in and to (i) adjacent streets, alleys, or rights-of-way, and any easements benefiting the Land, (ii) to the extent the same run with the Land under applicable law, all construction, operating and reciprocal easement agreements affecting the land and Improvements (the **"REAs"**), including, without limitation, any rights of Seller as a declarant, operator, approving party or like authority thereunder, (iii) all mineral, water, sewer and irrigation rights, if any, running with, allocated to, or otherwise pertaining to the Land, (iv) any award made or to be made or settlement in lieu thereof for the Land and Improvements by reason of condemnation, eminent domain or exercise of police power and any unpaid award for damage to the Land or Improvements or any portion thereof by reason of change of grade or closing of any street, road or avenue, (v) all rights of ingress and egress to the Real Property, and (vi) all development rights relating to the Real Property and all other rights appurtenant to or connected with the beneficial use or enjoyment of the Real Property and the Improvements.

2.      <u>Consideration</u>.

2.1      <u>Purchase Price</u>.

2.1.1    The cash consideration to be paid by Buyer to Seller for the Real Property shall be Two Million dollars ($2,000,000.00) (the **"Purchase Price"**).

2.1.2    The Purchase Price shall be paid as follows:

(a)    Buyer shall deposit with the Title Company (as hereinafter defined): (a) within two (2) business days of the mutual execution and delivery of this Agreement (the date of such mutual execution and delivery is sometimes referred to herein as the **"Execution Date"**), the sum of Two Hundred Thousand Dollars ($200,000) in immediately available, good funds (the **"Deposit,"** which funds delivered in this manner are referred to herein as **"Good Funds"**), which shall be held by the Title Company in its segregated escrow or trustees account and retained or disbursed solely in accordance with the terms and provisions of this Agreement and Buyer's timely delivery of which shall be an express condition precedent to Seller's obligations under this Agreement. The Deposit shall become nonrefundable upon the termination of the transaction contemplated by this Agreement by reason of Buyer's failure to close in accordance with its obligations hereunder (a **"Buyer Default Termination"**), it being agreed that Seller shall not have the right to so terminate this Agreement unless Buyer has failed to cure the applicable default within ten (10) business days (i.e., excluding Saturdays, Sundays and national holidays) following their receipt of written notice thereof from Seller. At the Closing, the Deposit shall be credited and applied toward payment of the Purchase Price. In the event the Deposit becomes nonrefundable by reason of a Buyer Default Termination, the Seller shall be entitled to retain the Deposit as liquidated damages in accordance with Section 9.23 below. If the transaction contemplated herein terminates by reason of (A) Seller's material default under this Agreement, it being agreed that Buyer shall not have the right to so terminate this Agreement unless Seller has failed to cure the applicable default within ten (10) business days following his receipt of written notice thereof from Buyer, or (B) the failure of a condition to Buyer's obligations hereunder, the Deposit shall be returned to Buyer.

(b)    On the Closing Date, (A) the Seller shall retain the Deposit to be credited and applied toward payment of the Purchase Price, and (B) Buyer shall pay and deliver to the Seller, in Good Funds, the balance of the Purchase Price.

2.2    Assumed Liabilities; Environmental Release And Indemnification

(a).    Effective as of the Closing Date, Buyer shall assume all then existing liabilities and obligations of Seller: (i) arising in connection with the use and operation of the Real Property from and after the Closing Date, and (ii) with respect to any environmental liabilities (whether now existing or hereafter arising) under federal, state and/or local law relating to or arising in connection with the Real Property (including, without limitation, remediation or response costs for contamination and any administrative or civil fines or penalties for violations of environmental laws issued or imposed at any time). Other than the liabilities and obligations of Seller expressly assumed by Buyer hereunder, Buyer is not assuming and shall not be liable for any liabilities or obligations with respect to the Real Property.

(b)    Buyer and anyone claiming by, through or under Buyer hereby waives any right to recover from and fully and irrevocably releases Seller and Seller's respective employees, officers, directors, representatives, agents, servants, attorneys, affiliates, parent, subsidiaries,

2

successors and assigns, and all persons, firms, corporations and organizations in its behalf (collectively, **"Released Parties"**) of and from any and all claims, responsibility and/or liability that it may now have or hereafter acquire against any of the Released Parties for any costs, loss, liability, damage, expenses, demand, action or cause of action arising from or related to the environmental condition or any environmental matters affecting the Real Property, including, without limitation, geologic conditions and subsurface soil and water conditions. This release includes claims of which Buyer is presently unaware or which Buyer does not presently suspect to exist which, if known by Buyer, would materially affect Buyer's release to Seller. In this connection and to the extent permitted by law, Buyer hereby agrees, represents and warrants that Buyer realizes and acknowledges that factual matters now unknown to it may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses and expenses relating to the environmental condition of or environmental matters affecting the Real Property, including, without limitation, geologic conditions and subsurface soil and water conditions, which are presently unknown, unanticipated and unsuspected, and Buyer further agrees, represents and warrants that the waivers and releases herein have been negotiated and agreed upon in light of that realization and that Buyer nevertheless hereby intends to release, discharge and acquit the Released Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses and expenses relating to or arising in connection with the environmental condition of or environmental matters affecting the Real Property (including, without limitation, geologic conditions and subsurface soil and water conditions).

(c)     In addition to the assumption of liability set forth in Section 2.2(a)(ii) above and the release in favor of Seller and the other Released Parties set forth in Section 2.2(b) above, from and after the Closing Date, Buyer shall indemnify, defend (with counsel satisfactory to Seller), protect and save and hold the Released Parties harmless of, from and against any and all costs, loss, liability, damages, expenses (including, without limitation, all court costs and reasonable third-party attorneys' fees), claims, demands, fines, penalties, violations, actions, proceedings, liens, or causes of action (**"Losses"**) arising from or in any way relating to the environmental condition of the Real Property (or any portion thereof) or any Hazardous Substances (as defined below) which are present in, on, at, about, around or under the Real Property (or any portion thereof) as of the Closing, including, without limitation, any Losses imposed or arising under CERCLA, the RCRA (both as defined below) or any other applicable federal, state, or local law or regulation. For purposes of this Agreement, **"Hazardous Substances"** means any hazardous, toxic or dangerous waste, substance or material, pollutant or contaminant, as defined for purposes of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. Section 6901 et seq.), as amended (**"CERCLA"**), or the Resource Conservation and Recovery Act (42 U.S.C. Sections 6901 et seq.), as amended (**"RCRA"**), or any substance which contains gasoline, diesel fuel or other petroleum hydrocarbons, or polychlorinated biphenyls.

3.     <u>Closing Transactions</u>.

3.1     <u>Closing Conference</u>. The Closing of the transactions provided for herein (the **"Closing"**) shall take place at such location and in such manner as the Parties may mutually agree (and the parties mutually agree, by a closing in escrow).

3

3.2    <u>Closing Date</u>. The Closing shall be held on or before the date which is the later of (i) forty-five (45) days following the Diligence Date and (ii) ten (10) business days after the Approval Order (as defined below) has been issued and entered by the Bankruptcy Court (the **"Closing Date"**), and that in the event the conditions to Closing have not been satisfied or waived by the Closing Date, a Party who is not in default hereunder may terminate this Agreement. Alternatively, the Parties may mutually agree to an extended Closing Date. Until this Agreement is either terminated or the Parties have agreed upon an extended Closing Date, the Parties shall diligently, in good faith and using commercially reasonable efforts, continue to work to satisfy all conditions to Closing and the transaction contemplated herein shall close as soon as such conditions are satisfied or waived.

3.3    <u>Seller's Deliveries to Buyer at Closing</u>. On the Closing Date (or sooner if specifically provided below), Seller shall make the following deliveries to Buyer:

3.3.1    A Quitclaim Deed(s) duly executed and acknowledged by Seller, pursuant to which Seller quitclaims to Buyer Seller's right, title and interest in the Real Property (the **"Quitclaim"**).

3.3.2    A statement under Section 1445 of the Internal Revenue Code with respect to the Real Property (the **"FIRPTA Statement"**).

3.3.3    A bill of sale conveying to Buyer Seller's title to any personal property relating to the Real Property free and clear of any liens or encumbrances to the extent provided in the Approval Order.

3.3.4    A copy of the Approval Order issued and entered by the Bankruptcy Court.

3.3.5    An estimated closing statement itemizing the dollar amounts of all financial matters required by this Agreement to be addressed between Buyer and Seller at the Closing, including the adjustments and prorations provided herein, which must be submitted to Buyer for its approval at least five (5) days prior to the Closing. Upon the Parties' mutual written agreement, such estimated closing statement (as it may be modified to reflect mutually agreed upon changes) shall be the final closing statement for the transaction contemplated herein.

3.3.6    Such transfer tax forms as are required by law and checks to the appropriate officers in payment of all applicable real property transfer taxes.

3.3.7    A certificate from Seller (through its Chapter 7, Trustee) dated as of the Closing Date, that the representations and warranties of Seller set forth in this Agreement are true, correct, complete and accurate as of the Closing Date.

3.3.8    Cause to be paid and satisfied (or credited to, and paid by Buyer) all such other amounts to be paid by Seller at the Closing under the other terms and provisions of this Agreement.

4

3.4    <u>Buyer's Deliveries to Seller at Closing</u>.  On the Closing Date, Buyer shall (i) deliver to Seller that portion of the Purchase Price to be delivered by Buyer to Seller at the Closing under Section 2.1, (ii) cause to be paid and satisfied all such other amounts to be paid by Buyer at the Closing under the other terms and provisions of this Agreement, and (iii) deliver to Seller an assumption agreement (in form and content reasonably satisfactory to Seller and Buyer) pursuant to which Buyer assumes the liabilities and obligations Buyer is expressly required to assume pursuant to Section 2.2(a) hereof.

3.5    <u>Transfer Taxes; Certain Prorations</u>.  (a)  Any sales, purchase, transfer, stamp, documentary stamp, recording, use or similar taxes under the laws of the state of Pennsylvania, or any subdivision of such state, which may be payable by reason of the sale of the Real Property and/or the recordation of the Quitclaim under this Agreement shall be borne and timely paid with each of the Parties paying half of the total of such transfer taxes due.

(b)  <u>Real Estate Taxes</u>.  Real estate taxes ("**Taxes**") shall be prorated between Seller and Buyer as of the Closing Date based upon the most recently issued tax bill for the Real Property and the periods to which such Taxes apply. Seller shall pay at Closing all delinquent Taxes (i.e., Taxes that relate entirely to periods that have expired prior to the Closing Date), if any.

(c)  <u>Utility Meter Readings</u>.  Seller shall obtain final actual readings of the water, electric, gas and other utility meters servicing the Real Property to a date no sooner than three (3) days prior to the Closing Date.  At or prior to Closing, Seller shall pay all charges based upon such meter readings, adjusted to include a reasonable estimate of the additional charges due for the period from the dates of the respective readings until the Closing Date.  If Seller is unable to obtain readings of any meters prior to the Closing Date, the Closing shall be completed without such readings and Seller shall escrow, with the Title Company, funds adequate in Buyer's and if applicable, the Title Company's, reasonable opinion; to pay any final utility bills (the "**Utility Escrow**"). Upon receipt of the final readings after Closing, Seller shall pay the charges incurred prior to the Closing Date as reasonably determined by the parties based upon such readings and upon delivery to the Title Company of written evidence of the payment of any final bills, the Title Company shall release the Utility Escrow to Seller.

(d)  <u>Assessments</u>. If, at Closing, the Real Property or any part thereof shall have been affected by an assessment or assessments, which are or may become payable in annual installments, of which the first installment is then a charge or lien, then for the purposes of this Agreement, all the unpaid installments of any such assessment due and payable in calendar years prior to the year in which the Closing occurs shall be paid by Seller and all installments becoming due and payable after the Closing shall be assumed and paid by Buyer, except, however, that any installments which are due and payable in the calendar year in which the Closing occurs (or otherwise relate in whole or in part to a period following the Closing Date) shall be adjusted pro rata. However, if such an assessment or assessments shall be due in one lump sum payment, then to the extent such assessment(s) is for improvements in place as of the date of this Agreement, then such assessment(s) shall be paid by Seller but if such assessment(s) is for improvements to be made subsequent to the date of Closing, then the same shall be paid by Buyer, otherwise the same shall be prorated.

5

3.6    <u>Possession</u>. Right to possession of the Real Property shall transfer to Buyer on the Closing Date. Seller shall transfer and deliver to Buyer on the Closing Date such keys, passcodes and other similar items as Buyer may reasonably require to obtain possession and control of the Real Property.

4.    <u>Conditions Precedent to Closing</u>.

4.1    <u>Conditions to Seller's Obligations</u>. Seller's obligation to make the deliveries required of Seller at the Closing Date and otherwise consummate the transaction contemplated herein shall be subject to the satisfaction or waiver by Seller of each of the following conditions:

4.1.1    All of the representations and warranties of Buyer contained herein shall continue to be true and correct at the Closing in all material respects and Buyer shall have provided a certificate (in form and content reasonably satisfactory to Seller) to that effect executed by an executive officer of Buyer.

4.1.2    Buyer shall have delivered, or shall be prepared to deliver to Seller at the Closing, all cash and other documents required of Buyer to be delivered at the Closing.

4.1.3    No action, suit or other proceedings shall be pending before any court, tribunal or governmental authority seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or seeking to obtain substantial damages in respect thereof, or involving a claim that consummation thereof would result in the violation of any law, decree or regulation of any governmental authority having appropriate jurisdiction.

4.1.4    Buyer shall have substantially performed or tendered performance of each and every material covenant on Buyer's part to be performed which, by its terms, is required to be performed at or before the Closing.

4.1.5    The Bankruptcy Court shall have entered the Approval Order in accordance with Section 8 below and the Approval Order shall not have been stayed as of the Closing Date.

4.2    <u>Conditions to Buyer's Obligations</u>. Buyer's obligation to make the deliveries required of Buyer at the Closing, and to otherwise close the transaction contemplated herein, shall be subject to the satisfaction or waiver by Buyer of each of the following conditions:

4.2.1    Seller shall have substantially performed or tendered performance of each and every covenant on Seller's part to be performed which, by its terms, is capable of performance before the Closing.

4.2.2    All representations and warranties of Seller contained herein shall continue to be true and correct at the Closing in all material respects and Seller shall have provided a certificate (in form and content reasonably satisfactory to Buyer) to that effect executed by Seller.

DOCS_DE:233810.1 05233/003

4.2.3   Seller shall have executed and be prepared to deliver to Buyer the Quitclaim and the FIRPTA Statement.

4.2.4   Seller shall have delivered or shall be prepared to deliver to Buyer at the Closing, all other documents required of Seller to be delivered at the Closing.

4.2.5   No action, suit or other proceedings shall be pending before any court, tribunal or governmental authority seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or seeking to obtain substantial damages in respect thereof, or involving a claim that consummation thereof would result in the violation of any law, decree or regulation of any governmental authority having appropriate jurisdiction.

4.2.6   On or before thirty (30) days following the day after the Execution Date (the **"Diligence Date"**), Buyer shall have obtained, at Buyer's sole cost and expense, a title commitment (the "**Title Commitment**") from a title company to be selected by Buyer (the "**Title Company**") and, if Buyer desires, a survey of the Real Property (obtained at Buyer's sole cost and expense), in each case, in form and substance reasonably satisfactory to Buyer.  The period between the Execution Date and the Diligence Date shall be referred to herein as the **"Due Diligence Period."**

4.2.7   On or before the Diligence Date, Buyer shall have determined, based upon such physical, financial, zoning, title, valuation and/or other review, inspections and investigations of the Real Property as Buyer may deem necessary to conduct or obtain (in each case at Buyer's sole cost and expense) that it finds the Real Property satisfactory and wishes to proceed with the transaction contemplated herein.  Prior to the Diligence Date, Seller shall, upon reasonable notice (which may be telephonic or by e-mail), provide Buyer and its representatives and consultants with access to the Real Property at reasonable times to conduct such inspections and investigations; provided, however, notwithstanding anything to the contrary in this Section 4.2.7 or elsewhere in this Agreement, in no event shall Buyer have the right to conduct any so-called Phase II soils investigations or other "invasive" testing at, on or of the Real Property (or any portion thereof) without Seller's further written consent (which consent Seller shall have the right to grant or withhold in Seller's sole discretion).

4.2.8   The Bankruptcy Court shall have entered the Approval Order in accordance with Section 8 below and the Approval Order shall not have been stayed as of the Closing Date.

4.3   Termination.  (a) If any of the above conditions is neither satisfied nor waived on or before the date by which the condition is required to be satisfied, a Party who is not then in default hereunder may terminate this Agreement by delivering to the other written notice of termination.  Any waiver of a condition shall be effective only if such waiver is stated in writing and signed by the waiving Party; provided, however, that the consent of a Party to the Closing shall constitute a waiver by such Party of any conditions to Closing not satisfied as of the Closing Date.

7

(b) Notwithstanding anything to the contrary in Section 4.3(a) above, Buyer shall have the right, at any time on or prior to the Diligence Date, in Buyer's sole and absolute discretion, to notify Seller (which notice may be sent solely via facsimile or e-mail): (i) that Buyer has determined to proceed with the acquisition of the Real Property, and in the event of such notice, the contingency provided for in Sections 4.2.6 and 4.2.7 above no longer shall be applicable, and this Agreement shall continue in full force and effect with the Diligence Period for all purposes hereunder thereafter being deemed to have expired on the date such notice is given by Buyer), or (ii) of Buyer's termination of this Agreement, for any reason or for no reason in its sole and absolute discretion, in which event the Deposit shall be promptly returned to Buyer by the Escrow Agent (which return of the Deposit shall not be conditioned in any way on the consent of the Seller) and, except as otherwise expressly set forth herein, neither Party shall have any further liability or obligation to the other hereunder. If Buyer fails to give either of such notices on or prior to the Diligence Date, this Agreement shall be deemed to be automatically terminated, in which event the Deposit shall be promptly returned to Buyer by the Seller (which return of the Deposit shall not be conditioned in any way on the consent of the Seller) and, except as otherwise expressly set forth herein, neither Party shall have any further liability or obligation to the other hereunder.

5.    <u>Seller's Representations and Warranties</u>. Seller hereby makes the following representations and warranties to Buyer:

5.1    <u>Power of Seller</u>. Upon obtaining the Approval Order, Seller will have the power and authority to execute, deliver and perform this Agreement and all writings relating hereto.

5.2    <u>Authorization of Seller</u>.  This Agreement has been duly executed and delivered by Seller, and subject to the Seller's obtaining the Approval Order, the execution and delivery of this Agreement, the consummation of the transaction herein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Seller and assuming due and valid authorization, execution and delivery of this Agreement by Buyer, and upon execution and delivery by Seller, this Agreement will constitute a valid and binding obligation of Seller, enforceable against Seller in accordance with its terms, does not and will not: (i) violate any statute, law, rule or regulation, or any order, writ, injunction or decree of any court or governmental authority; or (ii) violate or conflict with or constitute a default under any agreement, instrument or writing of any nature to which Seller is a party or by which Seller or its assets or properties may be bound.

It shall be a condition to Buyer's obligation to close that each  of the representations, warranties and covenants of Seller contained in this Agreement are true and correct as of the date hereof and the Closing Date in all material respects.

6.    <u>Buyer's Warranties and Representations</u>.  In addition to the representations and warranties contained elsewhere in this Agreement, Buyer hereby makes the following representations and warranties to Seller:

6.1    <u>Power of Buyer</u>.  Buyer has all requisite power to execute, deliver and perform this Agreement and all writings relating hereto.

8

6.2    <u>Authorization of Buyer</u>.  This Agreement has been duly executed and delivered by Buyer, and subject to the Seller's obtaining the Approval Order, the execution and delivery of this Agreement, the consummation of the transaction herein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Seller and assuming due and valid authorization, execution and delivery of this Agreement by Seller, and upon execution and delivery by Seller, this Agreement will constitute a valid and binding obligation of Buyer, enforceable against Buyer in accordance with its terms does not and will not: (i) violate any statute, law, rule or regulation, or any order, writ, injunction or decree of any court or governmental authority; or (ii) violate or conflict with or constitute a default under any agreement, instrument or writing of any nature to which Buyer is a party or by which Buyer or their assets or properties may be bound.

7.    <u>"AS IS" "WHERE IS" Transaction</u>.  Buyer hereby acknowledges and agrees that Seller makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Real Property (including, without limitation, income to be derived or expenses to be incurred in connection with the Real Property, the environmental condition or other matter relating to the physical condition of the Real Property, the zoning of the Real Property or improvements thereon, the value of the Real Property, the title of the Real Property, or any other matter or thing relating to the Real Property or any portion thereof). Buyer further acknowledges that Buyer shall conduct an independent inspection and investigation of the physical condition of the Real Property and all such other matters relating to or affecting the Real Property as Buyer deemed necessary or appropriate and that in proceeding with its acquisition of the Real Property, Buyer is doing so based solely upon such independent inspections and investigations.  Accordingly, Buyer will accept the Real Property at the Closing **"AS IS, "WHERE IS," and "WITH ALL FAULTS."**

8.    <u>Bankruptcy Court Approvals</u>.  Unless Buyer has theretofore timely exercised its rights to terminate this Agreement pursuant to Sections 4.2.6 and/or 4.2.7 hereof),  promptly following the Diligence Date , Seller will file a motion (the **"Sale Motion"**) for an order (the **"Approval Order"**) from the Bankruptcy Court which (i) approves the sale of the Real Property to Buyer or its designee on the terms and conditions set forth in this Agreement and authorizes Seller to proceed with this transaction, (ii) includes a specific finding that Buyer is a good faith Buyer of the Real Property, and (iii) states that the sale of the Real Property to Buyer shall be free and clear of all liens, claims, interests and encumbrances other than (xx) any lien of current taxes not yet payable with respect to the Real Property, and (yy) non-monetary encumbrances and other non-monetary rights, claims and interests affecting the Real Property.  Following the filing of the Sale Motion, Seller shall use diligent and commercially reasonable efforts to obtain the Approval Order.  Both Buyer's and Seller's obligations to consummate the transactions contemplated in this Agreement shall be conditioned upon the Bankruptcy Court's entry of the Approval Order.  If the Bankruptcy Court refuses to issue the Approval Order or to approve any third party Buyer at the hearing on the Sale Motion, then this transaction shall automatically terminate and the Seller and the Buyer shall be relieved of any further liability or obligation hereunder, except that as soon as reasonably practicable thereafter the Deposit shall be returned to Buyer.  Buyer hereby acknowledges that the transaction contemplated by this Agreement is subject to higher and better offers that Seller may receive from third parties (each, a "**Competing Bid**") on or before the objection deadline scheduled to respond or object to the Sale Motion, which deadline may be extended by the Trustee in his sole discretion.  Buyer hereby

9

acknowledges that if the Trustee receives a Competing Bid, he may, in his sole discretion, establish an auction process of his choosing and associated procedure for such auction process, which may include, but is not limited to, a sealed bid auction, live or video auction, or on-line auction. In the event that the Trustee chooses to consummate a transaction for the Real Property with a third party (an **"Upset Buyer"** and the underlying agreement between the Upset Buyer and Seller, the **"Upset Agreement"**), then, until the Closing Date, the Buyer agrees to serve as the backup buyer for the Real Property. If the Upset Buyer is approved by the Bankruptcy Court as the buyer of the Real Property at the hearing on the Sale Motion, then this transaction shall automatically terminate upon the Closing Date and the Seller and the Buyer shall be relieved of any further liability or obligation hereunder, except that as soon as reasonably practicable after the Closing Date the Deposit shall be returned to Buyer. Upon entry of the Approval Order in accordance with the provisions of this Section 8 (such entry date being referred to herein as the **"Sale Approval Date"**), the condition set forth in this Section 8 shall conclusively be deemed satisfied.

9.    <u>Miscellaneous</u>.

9.1    <u>Damage and Destruction; Condemnation</u>. Seller shall immediately notify Buyer of the occurrence of any material damage to or destruction of the Real Property that occurs prior to the Closing Date. In the event of any damage to or destruction of the Real Property prior to the Closing Date the cost of which to repair would total, in the aggregate, $50,000.00 (the **"Threshold"**) or less, then such damage or destruction shall have no effect whatsoever on the Purchase Price or Buyer's or Seller's obligation to close. In the event of any damage to or destruction of the Real Property prior to the Closing Date the cost of which to repair would equal or exceed the Threshold, then unless prior to the Closing Date, Seller causes the same to be repaired and restored in all material respects to substantially the condition the Real Property was in immediately prior to the occurrence of such damage or destruction (in which case the Purchase Price shall be unaffected and the Parties shall proceed with the Closing as though such damage, destruction or proceedings had never occurred or been initiated), Buyer shall have the right and option to either (i) terminate the transaction contemplated herein, in which event, Seller shall cause the Deposit to be returned to the Buyer as soon as reasonably practicable, or (ii) elect to receive, as its sole and exclusive remedy by reason of such damage or destruction, a Purchase Price reduction in the amount of the uninsured replacement value and consummate the transaction contemplated herein as though the damage or destruction had never occurred or been initiated; provided, however, in no event shall Seller be obligated to close if the amount of the reduction of the Purchase Price pursuant to this sentence would exceed $50,000.00. In all other events or in the event that Buyer elects to consummate the purchase pursuant to clause (ii) above, (xx) all insurance or condemnation proceeds collected by or paid to Seller prior to the Closing Date, shall be credited against the Purchase Price on Buyer's account or the Purchase Price shall be adjusted by an amount agreed between Buyer and Seller, and (yy) all entitlement to all other insurance or condemnation proceeds arising out of such damage or destruction or proceedings and not collected prior to the Closing Date shall be assigned to Buyer at the Closing. Notwithstanding anything to the contrary in this Agreement, the risk of loss or damage to the Real Property shall unconditionally shift to the Buyer on the Closing Date. For avoidance of all doubt, Buyer and Seller intend that the provisions of this Section 9.1 shall control over any right or remedy to which the Buyer may otherwise be entitled under this Agreement by reason of the occurrence of any event subject to this Section 9.1.

10

9.2    <u>Attorneys' Fees</u>.  In the event that either Party hereto brings an action or other proceeding to enforce or interpret the terms and provisions of this Agreement, the prevailing Party in that action or proceeding shall be entitled to have and recover from the non-prevailing Party all such fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as the prevailing Party may suffer or incur in the pursuit or defense of such action or proceeding.

9.3    <u>Notices</u>.  Unless otherwise provided herein, any notice, tender, or delivery to be given hereunder by any Party to the other may be effected by personal delivery in writing, by overnight delivery by a nationally recognized express courier service or by registered or certified mail, postage prepaid, return receipt requested, and shall be deemed communicated as of the date of receipt.  Mailed notices shall be addressed as set forth below, but each Party may change his address by written notice in accordance with this Section 9.3.

| | |
|---|---|
| To Seller: | Alfred T. Giuliano, Trustee<br>Giuliano, Miller & Co., LLC<br>2301 E. Evesham Road<br>Pavilion 800, Suite 210<br>Voorhees, NJ 08043<br>Email: atgiuliano@giulianomiller.com |
| With a copy to: | Pachulski Stang Ziehl & Jones LLP<br>919 N. Market Street, 17th Floor<br>Wilmington, DE  19801<br>Bradford J. Sandler<br>Email:  bsandler@pszjlaw.com |
| To Buyer: | BHN Associates LLC<br>240 Adar Court<br>Monsey, New York<br>Attn: Samuel Blum 10952<br>Email: samuel@bhnassociates.com |
| With a copy to: | Reiss Sheppe LLP<br>425 Madison Avenue, 19th Floor<br>New York, NY 10017<br>Attn: Stephen Friedman<br>Email: sfriedman@reisssheppe.com |

9.4    <u>Entire Agreement; No Third-Party Beneficiaries</u>.  This Agreement and the Exhibits hereto constitute the entire agreement and supersede all prior agreements and understandings, both written and oral, among the Parties with respect to the subject matter hereof and thereof and supersede and cancel all prior agreements, negotiations, correspondence, undertakings, understandings and communications of the Parties, oral and written, with respect to the subject matter hereof, and are not intended to confer upon any person or entity other than the Parties hereto and thereto any rights or remedies hereunder.  Any oral representations or

11

modifications concerning this Agreement or any such other document shall be of no force and effect excepting a subsequent modification in writing, signed by the Party to be charged.

      9.5    Modification.  This Agreement may be modified, amended or supplemented only by a written instrument duly executed by all the Parties hereto, and approved by the Bankruptcy Court.

      9.6    Closing Date.  All actions to be taken on the Closing pursuant to this Agreement shall be deemed to have occurred simultaneously, and no act, document or transaction shall be deemed to have been taken, delivered or effected until all such actions, documents and transactions have been taken, delivered or effected.

      9.7    Severability.  Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.

      9.8    Captions.  All captions and headings contained in this Agreement are for convenience of reference only and shall not be construed to limit or extend the terms or conditions of this Agreement.

      9.9    Further Assurances.  Each Party hereto will execute, acknowledge and deliver any further assurance, documents and instruments reasonably requested by any other Party for the purpose of giving effect to the transactions contemplated herein or the intentions of the Parties with respect thereto; provided that nothing herein shall be deemed to require any Party to execute or deliver any such further assurance, document or instrument to the extent that the same could in any material way increase the monetary or other burdens, obligations or liabilities otherwise imposed upon such Party by this Agreement.

      9.10    Waiver.  No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the Party making the waiver.

      9.11    Brokerage Obligations.  Except for Newmark (the **"Broker"**), which Broker Seller has engaged in connection with this transaction, Seller and the Buyer each represent and warrant to the other that, such Party has incurred no liability to any real estate broker or other broker or agent with respect to the payment of any commission regarding the consummation of the transaction contemplated hereby. It is agreed that other than the fee or commission payable to the Broker (which shall be paid by the Seller to the Broker concurrently with, and out of the proceeds payable to Seller at, the Closing), if any claims for commissions, fees or other compensation, including, without limitation, brokerage fees, finder's fees, or commissions are ever asserted against Buyer or the Seller in connection with this transaction, all such claims shall be handled and paid by the Party whose actions form the basis of such claim and such Party shall indemnify, defend (with counsel reasonably satisfactory to the Party entitled to indemnification), protect and save and hold the other harmless from and against any and all such claims or demands asserted by any person, firm or corporation in connection with the transaction contemplated hereby.

DOCS_DE:233810.1 05233/003

9.12   <u>Payment of Fees and Expenses</u>.  Except as provided in Section 9.2 above, each Party shall be responsible for, and shall pay, all of its own fees and expenses, including those of its counsel, incurred in the negotiation, preparation and consummation of the Agreement and the transaction described herein. Without in any way limiting the foregoing, Buyer shall bear and pay all premiums and other costs of obtaining any title insurance policies Buyer or any financing source of Buyer may obtain with respect to the Real Property.

9.13   <u>Survival</u>.   The respective representations, warranties, covenants and agreements of Seller and Buyer herein, or in any certificates or other documents delivered prior to or at the Closing, shall not be deemed waived or otherwise affected by the Closing.

9.14   <u>Assignments</u>.  This Agreement may not be assigned by any Party hereto without the prior written consent of the other Party hereto (which consent the Parties may grant or withhold in their sole and absolute discretion); provided, however, (without in any way releasing or relieving Buyer of any obligation or liability under this Agreement), Buyer may assign its rights hereunder, without first obtaining Seller's consent, to any entity that is controlled (i.e., Buyer or the principals of Buyer (the "<u>Relevant Principals</u>"), own, directly or indirectly, not less than 51% of all voting interests) and managed by the Relevant Principals.   For the avoidance of doubt, however, Buyer shall also have the right (without first obtaining Seller's consent) to designate a third party to take title (as distinguished from assigning any of Buyer's rights under this Agreement) to the Real Property at the Closing. With respect to any designation or assignment, upon request of Buyer, Buyer and Seller shall execute a Novation Agreement (the same in all material respects as that attached hereto as **Exhibit "B"**) no later than five (5) days prior to Closing; provided, however, it is expressly understood and agreed that Seller shall not be obligated to execute any Novation Agreement that (i) could result in the Buyer's obligations hereunder otherwise being diminished, or (ii) imposes on Seller any monetary or other material obligation that is greater than the monetary and other obligations imposed upon Seller by the other provisions of this Agreement.

9.15   <u>Binding Effect</u>.  Subject to the provisions of Section 9.14, above, this Agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the Parties hereto.  In addition, the provisions of Sections 2.2(b) and (c) shall inure to the benefit of and be enforceable by each of the Released Parties, whether or not such Released Parties are signatories to this Agreement.

9.16   <u>Applicable Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the state of Delaware, where the Bankruptcy Court is located.

9.17   <u>Good Faith</u>.  All Parties hereto agree to do all acts and execute all documents required to carry out the terms of this Agreement and to act in good faith with respect to the terms and conditions contained herein before and after Closing.

9.18   <u>Construction</u>.  In the interpretation and construction of this Agreement, the Parties acknowledge that the terms hereof reflect extensive negotiations between the Parties and that this Agreement shall not be deemed, for the purpose of construction and interpretation, drafted by either Party hereto.

13

9.19     Counterparts.  This Agreement may be signed in counterparts.  The Parties further agree that this Agreement may be executed by the exchange of facsimile signature pages provided that by doing so the Parties agree to undertake to provide original signatures as soon thereafter as reasonable in the circumstances.

9.20     Time is of the Essence.  Time is of the essence in this Agreement, and all of the terms, covenants and conditions hereof.

9.21     Bankruptcy Court Jurisdiction.  **THE PARTIES AGREE THAT IF ANY DISPUTE ARISES OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE DOCUMENTS EXECUTED HEREUNDER OR IN CONNECTION HEREWITH, THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE PERSONAL AND SUBJECT MATTER JURISDICTION AND SHALL BE THE EXCLUSIVE VENUE TO RESOLVE ANY AND ALL DISPUTES RELATING TO THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT.  SUCH COURT SHALL HAVE SOLE JURISDICTION OVER SUCH MATTERS AND THE PARTIES AFFECTED THEREBY AND BUYER AND SELLER EACH HEREBY CONSENT AND SUBMIT TO SUCH JURISDICTION.**

9.22     No Recourse to Trustee.  Buyer expressly acknowledges and agrees that Seller is executing this Agreement and entering into the transaction contemplated herein solely in his capacity as Chapter 7 Trustee for the bankruptcy estate of the Debtor in the Bankruptcy Case (the **"Estate"**) and that in the event of any default in the performance of the obligations of Seller under this Agreement or the transaction contemplated herein or in the event that any other claim is asserted against Seller or the Estate in connection with this Agreement or the transactions contemplated herein, the Seller shall in no event have any personal liability whatsoever (whether in his individual capacity or otherwise), it being expressly understood and agreed that Buyer's sole and exclusive recourse, if any, in such event shall be to the assets of the Estate.

9.23     Default.  (a) In the event of a Buyer Default Termination, Seller shall be entitled to retain the Deposit as liquidated damages and Seller's sole remedy against Buyer in connection with such Buyer Default Termination. Buyer and Seller each acknowledges and agrees that it would be impracticable or extremely difficult to determine the actual monetary damages Seller would incur by reason of a termination of this Agreement by reason of any Buyer Default Termination.  Accordingly, Buyer and Seller (each sophisticated in its own right and/or represented by counsel who advised them of the implications of this Section 9.23) have agreed that an amount equal to the Deposit represents a fair and reasonable estimate under the circumstances of the likely damages Seller would incur by reason of a Buyer Default Termination.  Seller shall be entitled to retain the Deposit as liquidated damages, not as a fine or penalty paid by Buyer.

(b) In the event of a material default by Seller under this Agreement and Seller's failure to cure such default within fifteen (15) business days after written notice thereof from Buyer (a **"Seller Default"**), Buyer shall have the right to pursue any remedy provided by law, including but not limited to (i) seek specific performance of the Agreement; or (ii) terminate the Agreement, receive a refund of Deposit and any interest earned thereon shall be immediately returned to Buyer.

14

9.24    <u>Interpretation and Rules of Construction</u>.  In this Agreement, except to the extent that the context otherwise requires:

9.24.1    when a reference is made in this Agreement to an Article, Section, Exhibit or Schedule, such reference is to an Article or Section of, or an Exhibit or a Schedule to, this Agreement unless otherwise indicated;

9.24.2    the headings and captions used in this Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Agreement;

9.24.3    whenever the words "include," "includes" or "including" are used in this Agreement, they are deemed to be followed by the words "without limitation";

9.24.4    the words "hereof," "herein" and "hereunder" and works of similar import, when used in this Agreement, refer to this Agreement as a whole and not to any particular provision of this Agreement;

9.24.5    all terms defined in this Agreement have the defined meanings when used in any certificate or other document made or delivered pursuant hereto, unless otherwise defined therein;

9.24.6    the definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms;

9.24.7    any law defined or referred to herein or in any agreement or instrument that is referred to herein means such law or statute as from time to time amended, modified or supplemented, including by succession of comparable successor laws;

9.24.8    references to a person are also to its permitted successors and assigns; and

9.24.9    the use of "or" is not intended to be exclusive unless expressly indicated otherwise.

10.    <u>Seller's Conduct Until Closing</u>.  Seller covenants that between the Execution Date and the Closing Date:

(a)    provided that sufficient funds are available therefor in the Bankruptcy Case, Seller shall use commercially reasonable efforts to maintain the Real Property in substantially the condition existing as of the Execution Date, normal wear and tear and casualty, condemnation and other damage and destruction excepted.

(b)    Seller shall, to the extent received by Seller, from the Execution Date until Closing, promptly deliver to Buyer copies of (i) all written default and other material notices to or from any utility or service providers or in connection with any of the REAs relating to the Real Property, (ii) all written notices of violations and any other material written notices

15

received from any governmental authority with respect to the Real Property, and (iii) written notices regarding regulations or laws affecting the Real Property.

(c) Seller shall not alter the Real Property or consent to such alteration except to the extent necessitated by an emergency(ies) or to commence or complete any improvements or changes, installations, or decorations which may be required by law.

(d) Seller shall not voluntarily withdraw, settle or otherwise compromise any protest or reduction proceeding affecting real estate taxes assessed against the Real Property for any fiscal period in which the Closing Date is to occur or any subsequent fiscal period without the prior written consent of Buyer, which consent shall not be unreasonably withheld. Real estate tax refunds and credits received after the Closing Date (i) which are attributable to the fiscal tax year during which the Closing Date occurs shall be apportioned between Seller and Buyer, and (ii) which are attributable to any fiscal tax year that ended prior to the Closing Date occurs shall belong entirely to and be the property of Seller and, if received by Buyer, shall immediately be turned over to Seller, in each case, after deducting the expenses of collection thereof, which obligations set forth in this sentence shall survive the Closing.

(e) Seller shall not enter into any service contract for the Real Property unless the same is terminable without penalty by the then owner of the Real Property upon not more than thirty days' notice.

(f) Seller shall not enter into any leases, licenses or occupancy agreements with respect to any portion of the Real Property.

16

**In Witness Whereof,** Buyer and Seller have executed this Purchase and Sale Agreement as of the day and year first above written.

BUYER:

BHN ASSOCIATES LLC

By: _/s/ M. Wider_____
       Name: Mordy Wider
       Title: Member

SELLER:

_/s/ Alfred T. Giuliano_____
Alfred T. Giuliano, solely in his capacity as Chapter 7 Trustee of the Debtor, and not in any individual or other capacity

17

## Exhibit "A"

Legal Description

**[TO BE ATTACHED]**

DOCS_DE:233810.1 05233/003

## Exhibit "B"

FORM OF NOVATION AGREEMENT

CANCELLATION OF AGREEMENT OF SALE AND NEW AGREEMENT OF SALE

**THIS AGREEMENT** (this "**Agreement**") is made this __ day of _____, 20__, by and among _____ ("**Original Buyer**"), _____ ("**New Buyer**") and _____ ("**Seller**").

## W I T N E S S E T H :

**WHEREAS**, Seller and Original Buyer entered into that certain Purchase and Sale Agreement dated April ____, 2021 (as subsequently amended, the "Agreement of Sale") for the sale of certain property located in 1620 N. Tuckahoe Street, Bellwood, Blair County, Pennsylvania, Blair County Tax Parcel No. 05.00-01.-141.00-000 and is more particularly described on **Exhibit "A"** attached to the Agreement of Sale and incorporated herein by this reference (the "**Land**"), together with all improvements thereon ("**Improvements**"), and easements, rights of way, and other rights and interests appurtenant thereto (collectively, the "**Real Property**"); and

**WHEREAS**, Seller and Original Buyer wish to cancel the Agreement of Sale, and Seller and New Buyer wish to simultaneously enter into a new agreement of sale on the same exact terms as existed between Seller and Original Buyer, except as provided herein, with the parties substituted.

**NOW, THEREFORE**, the parties hereto, in consideration of the Real Property and other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, and intending to be legally bound, hereby agree as follows:

1. The foregoing Recitals are incorporated herein as a material part hereof. Capitalized terms not otherwise defined herein shall have their meanings as set forth in the Agreement of Sale.

2. The Agreement of Sale is hereby cancelled and both Seller and Original Buyer are released from any obligation or performance thereunder.

3. By executing this Agreement, Seller and New Buyer each adopts the terms and conditions of the Agreement of Sale and wish to be bound thereby and entitled to the rights and benefits thereof (with Seller entitled to and bound by the same rights and obligations previously applicable to Seller, and New Buyer entitled to and bound by the same rights and obligations previously applicable to the Original Buyer, under the Agreement of Sale), and hereby incorporate its terms herein (collectively, the "**New Agreement of Sale**").

4. Seller, Original Buyer, and New Buyer agree that the Deposit and any other monies delivered to Escrow Agent under the Agreement of Sale shall transfer to

19

this New Agreement of Sale.  This New Agreement of Sale shall not revive or renew any expired right or extend or modify any unexpired right, but the New Agreement of Sale shall be binding upon and inure to the benefit of Seller and New Buyer.

5.  Except as otherwise set forth herein, the parties intend this to be a novation and a new agreement independent of the Agreement of Sale.

6.  New Buyer acknowledges and agrees that it is responsible for all transfer taxes (if any) arising in connection with the execution of this Agreement creating the New Agreement of Sale, and hereby agrees to indemnify and hold harmless Seller from all such transfer taxes, costs, and expenses arising in connection with the execution of said Agreement.  This paragraph shall survive the Closing and/or delivery of the Deed.

7.  The New Agreement of Sale and the obligation so of the parties hereunder shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania and may not be modified or amended other than by a written agreement signed by the parties hereto.

8.  This Agreement may be executed by facsimile or electronically, and may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement.

9.  Notwithstanding anything to the contrary in this Agreement, this Agreement shall only become effective concurrently with the Closing.

DOCS_DE:233810.1 05233/003

     **IN WITNESS WHEREOF**, the parties hereto, intending to be legally bound hereby, have executed this Agreement.

**ORIGINAL BUYER**:

_____,

a _____


By:_____
Name:
Title:


**NEW BUYER**:

_____,

a _____


By:_____
Name:
Title:


**SELLER**:

_____,

a _____


By:_____
Name:
Title:

DOCS_DE:233810.1 05233/003