# **EXHIBIT C**

**SECURITY AGREEMENT**
(All Assets)
(SIMPSON FURNITURE COMPANY)

As of August 14, 2016, for value received, Simpson Furniture Company, ("**Debtor**"), pledges, assigns and grants to Art Van Furniture Inc. ("**Art Van**"), whose address is 6500 E. 14 Mile Road, Warren, MI 48092, a continuing security interest and lien (any pledge, assignment, security interest or other lien arising hereunder is sometimes referred to herein as a "**security interest**") in the Collateral (as defined below) to secure payment when due, whether by stated maturity, demand, acceleration or otherwise, of all existing and future indebtedness ("**Indebtedness**") to Art Van of Simpson Furniture Company ("**Borrower**") and/or Debtor. Indebtedness includes without limit any and all obligations or liabilities of the Borrower and/or Debtor to Art Van, whether absolute or contingent, direct or indirect, voluntary or involuntary, liquidated or unliquidated, joint or several, known or unknown; any and all obligations or liabilities for which the Borrower and/or Debtor would otherwise be liable to Art Van were it not for the invalidity or unenforceability of them by reason of any bankruptcy, insolvency or other law, or for any other reason; any and all amendments, modifications, renewals and/or extensions of any of the above; all costs incurred by Art Van in establishing, determining, continuing, or defending the validity or priority of its security interest, or in pursuing its rights and remedies under this Agreement or under any other agreement between Art Van and Borrower and/or Debtor or in connection with any proceeding involving Art Van as a result of any financial accommodation to Borrower and/or Debtor; and all other costs of collecting Indebtedness, including without limit attorneys fees. Debtor agrees to pay Art Van all such costs incurred by Art Van, immediately upon demand, and until paid. All costs shall bear interest at the highest per annum rate applicable to any of the Indebtedness, but not in excess of the maximum rate permitted by law. Any reference in this Agreement to attorneys fees shall be deemed a reference to reasonable fees, costs, and expenses of both in-house and outside counsel and paralegals, whether inside or outside counsel is used, whether or not a suit or action is instituted, and to court costs if a suit or action is instituted, and whether attorneys fees or court costs are incurred at the trial court level, on appeal, in a bankruptcy, administrative or probate proceeding or otherwise. Debtor further covenants, agrees, represents and warrants as follows:

1. **Collateral.** Collateral shall mean all personal property of Debtor including, without limitation, all of the following property Debtor now or later owns or has an interest in, wherever located:

    (a) all Accounts Receivable (for purposes of this Agreement, "Accounts Receivable" consists of all accounts, general intangibles, chattel paper (including without limit electronic chattel paper and tangible chattel paper), contract rights, deposit accounts, documents, instruments and rights to payment evidenced by chattel paper, documents or instruments, health care insurance receivables; commercial tort claims, letters of credit, letter of credit rights, supporting obligations, and rights to payment for money or funds advanced or sold);

    (b) all Inventory;

    (c) all Equipment and Fixtures;

    (d) all Software (for purposes of this Agreement, "Software" consists of all (i) computer programs and supporting information provided in connection with a transaction relating to the program, and (ii) computer programs embedded in goods and any supporting information provided in connection with a transaction relating to the program whether or not the program is associated with the goods in such a manner that it customarily is considered part of the goods, and whether or not, by becoming the owner of the goods, a person acquires a right to use the program in connection with the goods, and whether or

not the program is embedded in goods that consist solely of the medium in which the program is embedded);

(e) all investment property (including, without limit, securities, securities entitlements, and financial assets);

(f) all goods, instruments, (including, without limit, promissory notes), documents (including, without limit, negotiable documents), policies and certificates of insurance, deposit accounts, and money or other property (except real property which is not a fixture) which are now or later in possession of Art Van, or as to which Art Van now or later controls possession by documents or otherwise; and

(g) all additions, attachments, accessions, parts, replacements, substitutions, renewals, interest, dividends, distributions, rights of any kind (including but not limited to stock splits, stock rights, voting and preferential rights), products, and proceeds of or pertaining to the above including, without limit, cash or other property which were proceeds and are recovered by a Bankruptcy trustee or otherwise as a preferential transfer by Debtor;

provided, however, subject to Section 9 of this Agreement, specifically excluding any license issued by the Federal Communications Commission ("**FCC**") for the operation of any radio or broadband spectrum as part of Debtor's business.

In the definition of Collateral, a reference to a type of collateral shall not be limited by a separate reference to a more specific or narrower type of that collateral.

2. **Warranties, Covenants and Agreements**. Debtor warrants, covenants and agrees as follows:

   2.1 Debtor shall furnish to Art Van, in form and at intervals as Art Van may request, any information Art Van may reasonably request and allow Art Van to examine, inspect, and copy any of Debtor's books and records. Debtor shall, at the request of Art Van, mark its records and the Collateral to clearly indicate the security interest of Art Van under this Agreement.

   2.2 At the time any Collateral becomes, or is represented to be, subject to a security interest in favor of Art Van, Debtor shall be deemed to have warranted that (a) Debtor is the lawful owner of the Collateral and has the right and authority to subject it to a security interest granted to Art Van; (b) no person, other than Art Van, has possession or control (as defined in the Uniform Commercial Code) of any Collateral of such nature that perfection of a security interest may be accomplished by control; and (c) Debtor acquired its rights in the Collateral in the ordinary course of its business.

   2.3 Debtor will not, without the prior written consent of Art Van, sell, transfer or lease, or permit to be sold, transferred or leased, any or all of the Collateral, except (where inventory is pledged as Collateral) for Inventory in the ordinary course of its business and will not return any Inventory to its supplier. Art Van or its representatives may at all reasonable times inspect the Collateral and may enter upon all premises where the Collateral is kept or might be located.

   2.4 Debtor will do all acts and will execute or cause to be executed all writings requested by Art Van to establish, maintain and continue an exclusive, perfected and first security interest of Art Van in the Collateral. Debtor agrees that Art Van has no obligation to

acquire or perfect any lien on or security interest in any asset(s), whether realty or personalty, to secure payment of the Indebtedness, and Debtor is not relying upon assets in which Art Van may have a lien or security interest for payment of the Indebtedness.

2.5 Debtor will pay within the time that they can be paid without interest or penalty all taxes, assessments and similar charges which at any time are or may become a lien, charge, or encumbrance upon any Collateral, except to the extent contested in good faith and bonded in a manner satisfactory to Art Van. If Debtor fails to pay any of these taxes, assessments, or other charges in the time provided above, Art Van has the option (but not the obligation) to do so and Debtor agrees to repay all amounts so expended by Art Van immediately upon demand, together with interest at the highest lawful default rate which could be charged by Art Van on any Indebtedness.

2.6 Debtor will keep the Collateral in commercially reasonable condition and will protect it from loss, damage, or deterioration from any cause. Debtor has and will maintain at all times (a) with respect to the Collateral, insurance under an "all risk" policy against fire and other risks customarily insured against, and (b) public liability insurance and other insurance as may be required by law or reasonably required by Art Van, all of which insurance shall be in an amount, form and content, and written by companies as may be reasonably satisfactory to Art Van, containing a lender's loss payable endorsement reasonably acceptable to Art Van. Debtor will deliver to Art Van immediately upon demand evidence reasonably satisfactory to Art Van that the required insurance has been procured. If Debtor fails to maintain satisfactory insurance, Art Van has the option (but not the obligation) to do so and Debtor agrees to repay all amounts so expended by Art Van immediately upon demand, together with interest at the highest lawful default rate which could be charged by Art Van on any Indebtedness.

2.7 Debtor at all times shall be in compliance in all material respects with all applicable laws, including without limit any laws, ordinances, directives, orders, statutes, or regulations an object of which is to regulate or improve health, safety, or the environment ("**Environmental Laws**").

2.8 If Art Van, acting in its sole discretion, redelivers Collateral to Debtor or Debtor's designee for the purpose of (a) the ultimate sale or exchange thereof; or (b) presentation, collection, renewal, or registration of transfer thereof; or (c) loading, unloading, storing, shipping, transshipping, manufacturing, processing or otherwise dealing with it preliminary to sale or exchange; such redelivery shall be in trust for the benefit of Art Van and shall not constitute a release of Art Van's security interest in it or in the proceeds or products of it unless Art Van specifically so agrees in writing. If Debtor requests any such redelivery, Debtor will deliver with such request a duly executed financing statement in form and substance satisfactory to Art Van. Any proceeds of Collateral coming into Debtor's possession as a result of any such redelivery shall be held in trust for Art Van and immediately delivered to Art Van for application on the Indebtedness. Art Van may (in its sole discretion) deliver any or all of the Collateral to Debtor, and such delivery by Art Van shall discharge Art Van from all liability or responsibility for such Collateral. Art Van, at its option, may require delivery of any Collateral to Art Van at any time with such endorsements or assignments of the Collateral as Art Van may request.

2.9 At any time and without notice, Art Van may: (a) cause any or all of such Collateral to be transferred to its name or to the name of its nominees; (b) receive or collect by legal

proceedings or otherwise all dividends, interest, principal payments and other sums and all other distributions at any time payable or receivable on account of such Collateral, and hold the same as Collateral, or apply the same to the Indebtedness, the manner and distribution of the application to be in the sole discretion of Art Van; (c) enter into any extension, subordination, reorganization, deposit, merger or consolidation agreement or any other agreement relating to or affecting such Collateral, and deposit or surrender control of such Collateral, and accept other property in exchange for such Collateral and hold or apply the property or money so received pursuant to this Agreement; and (d) take such actions in its own name or in Debtor's name as Art Van, in its sole discretion, deems necessary or appropriate to establish exclusive control (as defined in the Uniform Commercial Code) over any Collateral of such nature that perfection of Art Van's security interest may be accomplished by control.

2.10   Art Van may assign any of the Indebtedness and deliver any or all of the Collateral to its assignee, who then shall have with respect to Collateral so delivered all the rights and powers of Art Van under this Agreement, and after that Art Van shall be fully discharged from all liability and responsibility with respect to Collateral so delivered.

2.11   Debtor delivers this Agreement based solely on Debtor's independent investigation of (or decision not to investigate) the financial condition of Borrower and is not relying on any information furnished by Art Van. Debtor assumes full responsibility for obtaining any further information concerning the Borrower's financial condition, the status of the Indebtedness or any other matter which the undersigned may deem necessary or appropriate now or later. Debtor waives any duty on the part of Art Van, and agrees that Debtor is not relying upon nor expecting Art Van to disclose to Debtor any fact now or later known by Art Van, whether relating to the operations or condition of Borrower, the existence, liabilities or financial condition of any guarantor of the Indebtedness, the occurrence of any default with respect to the Indebtedness, or otherwise, notwithstanding any effect such fact may have upon Debtor's risk or Debtor's rights against Borrower. Debtor knowingly accepts the full range of risk encompassed in this Agreement, which risk includes without limit the possibility that Borrower may incur Indebtedness to Art Van after the financial condition of Borrower, or Borrower's ability to pay debts as they mature, has deteriorated.

2.12   Debtor shall defend, indemnify and hold harmless Art Van, its employees, agents, shareholders, affiliates, officers, and directors from and against any and all claims, damages, fines, expenses, liabilities or causes of action of whatever kind, including without limit consultant fees, legal expenses, and attorneys fees, suffered by any of them as a direct or indirect result of any actual or asserted violation of any law, including, without limit, Environmental Laws, or of any remediation relating to any property required by any law, including without limit Environmental Laws.

3.   **Collection of Proceeds**.

3.1   Debtor agrees to collect and enforce payment of all Collateral until the occurrence of an Event of Default and Art Van shall direct Debtor to the contrary. Immediately upon notice to Debtor by Art Van and at all times after that, Debtor agrees to fully and promptly cooperate and assist Art Van in the collection and enforcement of all Collateral and to hold in trust for Art Van all payments received in connection with Collateral and from the sale, lease or other disposition of any Collateral, all rights by way of suretyship or guaranty and

all rights in the nature of a lien or security interest which Debtor now or later has regarding Collateral. Immediately upon and after such notice, Debtor agrees to (a) endorse to Art Van and immediately deliver to Art Van all payments received on Collateral or from the sale, lease or other disposition of any Collateral or arising from any other rights or interests of Debtor in the Collateral, in the form received by Debtor without commingling with any other funds, and (b) immediately deliver to Art Van all property in Debtor's possession or later coming into Debtor's possession through enforcement of Debtor's rights or interests in the Collateral. Debtor irrevocably authorizes Art Van or any Art Van employee or agent to endorse the name of Debtor upon any checks or other items which are received in payment for any Collateral, and to do any and all things necessary in order to reduce these items to money. Art Van shall have no duty as to the collection or protection of Collateral or the proceeds of it, nor as to the preservation of any related rights, beyond the use of reasonable care in the custody and preservation of Collateral in the possession of Art Van. Debtor agrees to take all steps necessary to preserve rights against prior parties with respect to the Collateral. Nothing in this Section 3.1 shall be deemed a consent by Art Van to any sale, lease or other disposition of any Collateral.

    3.2    All items or amounts which are remitted on account of partial or full payment of, or with respect to, any Collateral shall, at Art Van's option, be applied to the payment of the Indebtedness, whether then due or not, in such order or at such time of application as Art Van may determine in its sole discretion. Debtor agrees that Art Van shall not be liable for any loss or damage which Debtor may suffer as a result of Art Van's processing of items or its exercise of any other rights or remedies under this Agreement (except as a result of Art Van's gross negligence or willful miscounduct), including without limitation indirect, special or consequential damages, loss of revenues or profits, or any claim, demand or action by any third party arising out of or in connection with the processing of items or the exercise of any other rights or remedies under this Agreement. Debtor agrees to indemnify and hold Art Van harmless from and against all such third party claims, demands or actions, and all related expenses or liabilities, including, without limitation, attorneys' fees.

4. **Defaults, Enforcement and Application of Proceeds**.

    4.1    Upon the occurrence of any of the following events (each an "**Event of Default**"), Debtor shall be in default under this Agreement:

        (a)    Any loss, theft, substantial damage or destruction to or of any material portion of the Collateral, or the issuance or filing of any attachment, levy, garnishment or the commencement of any proceeding in connection with any Collateral or of any other judicial process of, upon or in respect of Borrower, Debtor, or any guarantor of any of the Indebtedness, or any Collateral; or

        (b)    Sale or other disposition by Borrower, Debtor, or any Guarantor of any substantial portion of its assets or property or voluntary suspension of the transaction of business by Borrower, Debtor, or any Guarantor, or death, dissolution, termination of existence, merger, consolidation, insolvency, business failure, or assignment for the benefit of creditors of or by Borrower, Debtor, or any Guarantor; or commencement of any proceedings under any state or federal bankruptcy or insolvency laws or laws for the relief of debtors by or against Borrower, Debtor, or any Guarantor; or the appointment of a receiver, trustee, court appointee,

                sequestrator or otherwise, for all or any part of the property of Borrower, Debtor, or any Guarantor; or

    (c)    Art Van reasonably deems the margin of Collateral insufficient or itself insecure, in good faith believing that the prospect of payment of the Indebtedness or performance of this Agreement is impaired or shall reasonably fear deterioration, removal, or waste of Collateral; or

    (d)    An event of default shall occur under any instrument, agreement or other document evidencing, securing or otherwise relating to any of the Indebtedness, and such default continues beyond any applicable grace, notice and/or cure periods.

4.2    Upon the occurrence of any Event of Default, Art Van may at its discretion and without prior notice to Debtor declare any or all of the Indebtedness to be immediately due and payable, and shall have and may exercise any right or remedy available to it including, without limitation, any one or more of the following rights and remedies:

    (a)    Exercise all the rights and remedies upon default, in foreclosure and otherwise, available to secured parties under the provisions of the Uniform Commercial Code and other applicable law;

    (b)    Institute legal proceedings to foreclose upon the lien and security interest granted by this Agreement, to recover judgment for all amounts then due and owing as Indebtedness, and to collect the same out of any Collateral or the proceeds of any sale of it;

    (c)    Institute legal proceedings for the sale, under the judgment or decree of any court of competent jurisdiction, of any or all Collateral; and/or

    (d)    Personally or by agents, attorneys, or appointment of a receiver, enter upon any premises where Collateral may then be located, and take possession of all or any of it and/or render it unusable; and without being responsible for loss or damage to such Collateral, hold, operate, sell, lease, or dispose of all or any Collateral at one or more public or private sales, leasings or other dispositions, at places and times and on terms and conditions as Art Van may deem fit, without any previous demand or advertisement; and except as provided in this Agreement, all notice of sale, lease or other disposition, and advertisement, and other notice or demand, any right or equity of redemption, and any obligation of a prospective purchaser or lessee to inquire as to the power and authority of Art Van to sell, lease, or otherwise dispose of the Collateral or as to the application by Art Van of the proceeds of sale or otherwise, which would otherwise be required by, or available to Debtor under, applicable law are expressly waived by Debtor to the fullest extent permitted.

            At any sale pursuant to this Section, whether under the power of sale, by virtue of judicial proceedings or otherwise, it shall not be necessary for Art Van or a public officer under order of a court to have present physical or constructive possession of Collateral to be sold. The recitals contained in any conveyances and receipts made and given by Art Van or the public officer to any purchaser at any sale made pursuant to this Agreement shall, to the extent permitted by applicable law, conclusively establish the truth and accuracy of the matters stated (including,

without limit, as to the amounts of the principal of and interest on the Indebtedness, the accrual and nonpayment of it and advertisement and conduct of the sale); and all prerequisites to the sale shall be presumed to have been satisfied and performed. Upon any sale of any Collateral, the receipt of the officer making the sale under judicial proceedings or of Art Van shall be sufficient discharge to the purchaser for the purchase money, and the purchaser shall not be obligated to see to the application of the money. Any sale of any Collateral under this Agreement shall be a perpetual bar against Debtor with respect to that Collateral. At any sale or other disposition of the Collateral pursuant to this Section, Art Van disclaims all warranties which would otherwise be given under the Uniform Commercial Code, including without limit a disclaimer of any warranty relating to title, possession, quiet enjoyment or the like, and Art Van may communicate these disclaimers to a purchaser at such disposition. This disclaimer of warranties will not render the sale commercially unreasonable.

4.3  Debtor shall at the request of Art Van, notify the account debtors or obligors of Art Van's security interest in the Collateral and direct payment of it to Art Van. Art Van may, itself, upon the occurrence of any Event of Default so notify and direct any account debtor or obligor. At the request of Art Van, whether or not an Event of Default shall have occurred, Debtor shall immediately take such actions as Art Van shall request to establish exclusive control (as defined in the Uniform Commercial Code) by Art Van over any Collateral which is of such a nature that perfection of a security interest may be accomplished by control.

4.4  The proceeds of any sale or other disposition of Collateral authorized by this Agreement shall be applied by Art Van first upon all expenses authorized by the Uniform Commercial Code and all reasonable attorneys fees and legal expenses incurred by Art Van; the balance of the proceeds of the sale or other disposition shall be applied in the payment of the Indebtedness, first to interest, then to principal, then to remaining Indebtedness and the surplus, if any, shall be paid over to Debtor or to such other person(s) as may be entitled to it under applicable law. Debtor shall remain liable for any deficiency, which it shall pay to Art Van immediately upon demand. Debtor agrees that Art Van shall be under no obligation to accept any noncash proceeds in connection with any sale or disposition of Collateral unless failure to do so would be commercially unreasonable. If Art Van agrees in its sole discretion to accept noncash proceeds (unless the failure to do so would be commercially unreasonable), Art Van may ascribe any commercially reasonable value to such proceeds. Without limiting the foregoing, Art Van may apply any discount factor in determining the present value of proceeds to be received in the future or may elect to apply proceeds to be received in the future only as and when such proceeds are actually received in cash by Art Van.

4.5  Nothing in this Agreement is intended, nor shall it be construed, to preclude Art Van from pursuing any other remedy provided by law or in equity for the collection of the Indebtedness or for the recovery of any other sum to which Art Van may be entitled for the breach of this Agreement by Debtor. Nothing in this Agreement shall reduce or release in any way any rights or security interests of Art Van contained in any existing agreement between Borrower, Debtor, or any Guarantor and Art Van.

4.6  No waiver of default or consent to any act by Debtor shall be effective unless in writing and signed by an authorized officer of Art Van. No waiver of any default or forbearance

on the part of Art Van in enforcing any of its rights under this Agreement shall operate as a waiver of any other default or of the same default on a future occasion or of any rights.

4.7 Debtor (a) irrevocably appoints Art Van or any agent of Art Van (which appointment is coupled with an interest) the true and lawful attorney of Debtor (with full power of substitution) to act in the name, place and stead of, and at the expense of, Debtor and (b) authorizes Art Van or any agent of Art Van, in its own name, at Debtor's expense, to do any of the following, as Art Van, in its sole discretion, deems appropriate:

   (i) to demand, receive, sue for, and give receipts or acquittances for any moneys due or to become due on any Collateral and to endorse any item representing any payment on or proceeds of the Collateral;

   (ii) to execute and file in the name of and on behalf of Debtor all financing statements or other filings deemed necessary or desirable by Art Van to evidence, perfect, or continue the security interests granted in this Agreement; and

   (iii) to do and perform any act on behalf of Debtor permitted or required under this Agreement.

4.8 Upon the occurrence of an Event of Default, Debtor also agrees, upon request of Art Van, to assemble the Collateral and make it available to Art Van at any place designated by Art Van which is reasonably convenient to Art Van and Debtor.

4.9 The following shall be the basis for any finder of fact's determination of the value of any Collateral which is the subject matter of a disposition giving rise to a calculation of any surplus or deficiency under Section 9-615 (f) of the Uniform Commercial Code (as in effect on or after July 1, 2001): (a) the Collateral which is the subject matter of the disposition shall be valued in an "as is" condition as of the date of the disposition, without any assumption or expectation that such Collateral will be repaired or improved in any manner; (b) the valuation shall be based upon an assumption that the transferee of such Collateral desires a resale of the Collateral for cash promptly (but no later than 30 days) following the disposition; (c) all reasonable closing costs customarily borne by the seller in commercial sales transactions relating to property similar to such Collateral shall be deducted including, without limitation, brokerage commissions, tax prorations, attorneys' fees, whether inside or outside counsel is used, and marketing costs; (d) the value of the Collateral which is the subject matter of the disposition shall be further discounted to account for any estimated holding costs associated with maintaining such Collateral pending sale (to the extent not accounted for in (c) above), and other maintenance, operational and ownership expenses; and (e) any expert opinion testimony given or considered in connection with a determination of the value of such Collateral must be given by persons having at least 5 years experience in appraising property similar to the Collateral and who have conducted and prepared a complete written appraisal of such Collateral taking into consideration the factors set forth above. The "value" of any such Collateral shall be a factor in determining the amount of proceeds which would have been realized in a disposition to a transferee other than a secured party, a person related to a secured party or a secondary obligor under Section 9-615(f) of the Uniform Commercial Code.

5. **Miscellaneous.**

   5.1   Until Art Van is advised in writing by Debtor to the contrary, all notices, requests and demands required under this Agreement or by law shall be given to, or made upon, Debtor at the following address: 3019 Neola Stree, Cedar Falls, Iowa 50613

   5.2   Debtor will give Art Van not less than 90 days prior written notice of all contemplated changes in Debtor's name, location, chief executive office, principal place of business, and/or location of any Collateral, but the giving of this notice shall not cure any Event of Default caused by this change.

   5.3   Art Van assumes no duty of performance or other responsibility under any contracts contained within the Collateral,

   5.4   Art Van has the right to sell, assign, transfer, negotiate or grant participations or any interest in, any or all of the Indebtedness and any related obligations, including without limit this Agreement. In connection with the above, but without limiting its ability to make other disclosures to the full extent allowable, Art Van may disclose all documents and information which Art Van now or later has relating to Debtor, the Indebtedness or this Agreement, however obtained. Debtor further agrees that Art Van may provide information relating to this Agreement or relating to Debtor or the Indebtedness to Art Van's parent, affiliates, subsidiaries, and service providers.

   5.5   In addition to Art Van's other rights, any indebtedness owing from Art Van to Debtor can be set off and applied by Art Van on any Indebtedness at any time(s) either before or after maturity or demand without notice to anyone. Any such action shall not constitute acceptance of collateral in discharge of any portion of the Indebtedness.

   5.6   Debtor, to the extent not expressly prohibited by applicable law, waives any right to require Art Van to: (a) proceed against any person or property; (b) give notice of the terms, time and place of any public or private sale of personal property security held from Borrower or Debtor or any other person, or otherwise comply with the provisions of Section 9-504 of the Uniform Commercial Code in effect prior to July 1, 2001 or its successor provisions thereafter; or (c) pursue any other remedy in Art Van's power. Debtor waives notice of acceptance of this Agreement and presentment, demand, protest, notice of protest, dishonor, notice of dishonor, notice of default, notice of intent to accelerate or demand payment of any Indebtedness, any and all other notices to which the undersigned might otherwise be entitled, and diligence in collecting any Indebtedness, and agree(s) that Art Van may, once or any number of times, modify the terms of any Indebtedness, compromise, extend, increase, accelerate, renew or forbear to enforce payment of any or all Indebtedness, or permit Borrower to incur additional Indebtedness, all without notice to Debtor and without affecting in any manner the unconditional obligation of Debtor under this Agreement. Debtor unconditionally and irrevocably waives each and every defense and setoff of any nature which, under principles of guaranty or otherwise, would operate to impair or diminish in any way the obligation of Debtor under this Agreement, and acknowledges that such waiver is by this reference incorporated into each security agreement, collateral assignment, pledge and/or other document from Debtor now or later securing the Indebtedness, and acknowledges that as of the date of this Agreement no such defense or setoff exists.

5.7 Debtor waives any and all rights (whether by subrogation, indemnity, reimbursement, or otherwise) to recover from Borrower any amounts paid or the value of any Collateral given by Debtor pursuant to this Agreement.

5.8 In the event that applicable law shall obligate Art Van to give prior notice to Debtor of any action to be taken under this Agreement, Debtor agrees that a written notice given to Debtor at least ten days before the date of the act shall be reasonable notice of the act and, specifically, reasonable notification of the time and place of any public sale or of the time after which any private sale, lease, or other disposition is to be made, unless a shorter notice period is reasonable under the circumstances. A notice shall be deemed to be given under this Agreement when delivered to Debtor or when placed in an envelope addressed to Debtor and deposited, with postage prepaid, in a post office or official depository under the exclusive care and custody of the United States Postal Service or delivered to an overnight courier. The mailing shall be by overnight courier, certified, or first class mail.

5.9 Notwithstanding any prior revocation, termination, surrender, or discharge of this Agreement in whole or in part, the effectiveness of this Agreement shall automatically continue or be reinstated in the event that any payment received or credit given by Art Van in respect of the Indebtedness is returned, disgorged, or rescinded under any applicable law, including, without limitation, Bankruptcy or insolvency laws, in which case this Agreement, shall be enforceable against Debtor as if the returned, disgorged, or rescinded payment or credit had not been received or given by Art Van, and whether or not Art Van relied upon this payment or credit or changed its position as a consequence of it. In the event of continuation or reinstatement of this Agreement, Debtor agrees upon demand by Art Van to execute and deliver to Art Van those documents which Art Van determines are appropriate to further evidence (in the public records or otherwise) this continuation or reinstatement, although the failure of Debtor to do so shall not affect in any way the reinstatement or continuation.

5.10 This Agreement and all the rights and remedies of Art Van under this Agreement shall inure to the benefit of Art Van's successors and assigns and to any other holder who derives from Art Van title to or an interest in the Indebtedness or any portion of it, and shall bind Debtor and the heirs, legal representatives, successors, and assigns of Debtor. Nothing in this Section 5.10 is deemed a consent by Art Van to any assignment by Debtor.

5.11 If there is more than one Debtor, all undertakings, warranties and covenants made by Debtor and all rights, powers and authorities given to or conferred upon Art Van are made or given jointly and severally.

5.12 Except as otherwise provided in this Agreement, all terms in this Agreement have the meanings assigned to them in Article 9 (or, absent definition in Article 9, in any other Article) of the Uniform Commercial Code, as those meanings may be amended, revised or replaced from time to time. "Uniform Commercial Code" means Act No. 174 of the Michigan Public Acts of 1962, as amended, revised or replaced from time to time, including without limit as amended by Act No. 348 of the Michigan Public Acts of 2000. Notwithstanding the foregoing, the parties intend that the terms used herein which are defined in the Uniform Commercial Code have, at all times, the broadest and most inclusive meanings possible. Accordingly, if the Uniform Commercial Code shall in the future be amended or held by a court to define any term used herein more broadly or inclusively than the Uniform Commercial Code in effect on the date of this Agreement,

then such term, as used herein, shall be given such broadened meaning. If the Uniform Commercial Code shall in the future be amended or held by a court to define any term used herein more narrowly, or less inclusively, than the Uniform Commercial Code in effect on the date of this Agreement, such amendment or holding shall be disregarded in defining terms used in this Agreement.

5.13   No single or partial exercise, or delay in the exercise, of any right or power under this Agreement, shall preclude other or further exercise of the rights and powers under this Agreement. The unenforceability of any provision of this Agreement shall not affect the enforceability of the remainder of this Agreement. This Agreement constitutes the entire agreement of Debtor and Art Van with respect to the subject matter of this Agreement. No amendment or modification of this Agreement shall be effective unless the same shall be in writing and signed by Debtor and an authorized officer of Art Van. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF MICHIGAN, WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES.

5.14   To the extent that any of the Indebtedness is payable upon demand, nothing contained in this Agreement shall modify the terms and conditions of that Indebtedness nor shall anything contained in this Agreement prevent Art Van from making demand, without notice and with or without reason, for immediate payment of any or all of that Indebtedness at any time(s), whether or not an Event of Default has occurred.

5.15   Debtor represents and warrants that Debtor's exact name is the name set forth in this Agreement. Debtor further represents and warrants the following and agrees that Debtor is, and at all times shall be, located in the following place:

- ☐ Debtor is an individual, and Debtor is located (as determined pursuant to the Uniform Commercial Code) at Debtor's principal residence which is (street address, state and county or parish): _____

- ☒ Debtor is a registered organization which is organized under the laws of one of the states comprising the United States (e.g. corporation, limited partnership, registered limited liability partnership or limited liability company), and Debtor is located (as determined pursuant to the Uniform Commercial Code) in the state under the laws of which it was organized, which is the state of: Iowa.

- ☐ Debtor is a domestic organization which is not a registered organization under the laws of the United States or any state thereof (e.g. general partnership, joint venture, trust, estate or association), and Debtor is located (as determined pursuant to the Uniform Commercial Code) at its sole place of business or, if it has more than one place of business, at its chief executive office, which is (street address, state and county or parish):

- ☐ Debtor is a registered organization organized under the laws of the United States, and Debtor is located in the state that United States law designates as its location or, if United States law authorizes the Debtor to designate the state for its location, the state designated by Debtor, or if neither of the foregoing are applicable, at the District of Columbia. Based on the foregoing, Debtor is located (as determined pursuant to the Uniform Commercial Code) at (state):

      ☐    Debtor is a foreign individual or foreign organization or a branch or agency of a Art Van that is not organized under the laws of the United States or a state thereof. Debtor is located (as determined pursuant to the Uniform Commercial Code) at (street address, state and county or parish):

5.16    A carbon, photographic or other reproduction of this Agreement shall be sufficient as a financing statement under the Uniform Commercial Code and may be filed by Art Van in any filing office.

5.17    This Agreement shall be terminated only by the filing of a termination statement in accordance with the applicable provisions of the Uniform Commercial Code, but the obligations contained in Section 2.13 of this Agreement shall survive termination.

5.18    Debtor agrees to reimburse Art Van upon demand for any and all costs and expenses (including, without limit, court costs, legal expenses and reasonable attorneys fees, whether inside or outside counsel is used, whether or not suit is instituted and, if suit is instituted, whether at the trial court level, appellate level, in a Bankruptcy, probate or administrative proceeding or otherwise) incurred in enforcing or attempting to enforce this Agreement or in exercising or attempting to exercise any right or remedy under this Agreement or incurred in any other matter or proceeding relating to this Agreement.

6.    **DEBTOR AND ART VAN ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED. EACH PARTY, AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THEIR MUTUAL BENEFIT WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION REGARDING THE PERFORMANCE OR ENFORCEMENT OF, OR IN ANY WAY RELATED TO, THIS AGREEMENT OR THE INDEBTEDNESS.**

7.    To the extent permitted by applicable law, Art Van reserves a right of setoff in all Debtor's accounts with Art Van (whether checking, savings, or some other account). This includes all accounts Debtor holds jointly with someone else and all accounts Debtor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Debtor authorizes Art Van, to the extent permitted by applicable law, to hold these funds if there is a default, and Art Van may apply the funds in these accounts to pay what Debtor owes under the terms of this Agreement.

[signatures on next page]

This Security Agreement has been executed as of the date written above.

Debtor: SIMPSON FURNITURE COMPANY

By: _____
Dale Emmert
Its:    President and Chief Executive Officer

ART VAN FURNITURE, INC.

By: _____
Steve Glucksman
Its:    Vice-President