# **<u>Exhibit A</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| START MAN FURNITURE, LLC, *et al.*,[1]<br><br>Debtors. | Case No. 20-10553 (CTG)<br>**Re: Docket No. 1588**<br><br>(Jointly Administered) |
| ALFRED T. GIULIANO, in his capacity as Chapter 7 Trustee of Start Man Furniture, LLC, *et al*.,<br><br>Plaintiff,<br>v.<br><br>FRANKLIN CORP.; FIRST-CITIZENS BANK & TRUST COMPANY d/b/a THE CIT GROUP,<br><br>Defendants. | Adv. Proc. No. 22-50159 (CTG)<br>**Re: Docket No. 33** |
| ALAN J. SUSSMAN & ASSOCIATES, INC.,<br><br>Defendant. | Adv. Proc. No. 22-50172 (CTG)<br>**Re: Docket No. 35** |
| CAMPBELL SALES GROUP, INC. dba LEATHER ITALIA USA,<br><br>Defendant. | Adv. Proc. No. 22-50174 (CTG)<br>**Re: Docket No. 30** |
| DETROIT PISTONS BASKETBALL COMPANY,<br><br>Defendant. | Adv. Proc. No. 22-50189 (CTG)<br>**Re: Docket No. 32** |
| KITH FURNITURE, LLC,<br><br>Defendant. | Adv. Proc. No. 22-50197 (CTG)<br>**Re: Docket No. 28** |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

| | |
|---|---|
| MICHAEL NICHOLAS DESIGNS, INC., | Adv. Proc. No. 22-50200 (CTG) |
| Defendant. | **Re: Docket No. 26** |
| PAXTON SALES, INC., | Adv. Proc. No. 22-50216 (CTG) |
| Defendant. | **Re: Docket No. 20** |

## ORDER GRANTING NINTH OMNIBUS MOTION OF ALFRED T. GIULIANO, CHAPTER 7 TRUSTEE, TO APPROVE SETTLEMENT AGREEMENTS

Upon consideration of the *Ninth Omnibus Motion of Alfred T. Giuliano, Chapter 7 Trustee, to Approve Settlement Agreements* (the "Motion")[2] of Alfred T. Giuliano, chapter 7 trustee (the "Trustee") to the estates of the above-captioned debtors (the "Debtors"), for entry of an order (this "Order"), pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, to approve the settlement agreements (the "Settlement Agreements") between the Trustee and (a) FRANKLIN CORP.; FIRST-CITIZENS BANK & TRUST COMPANY d/b/a THE CIT GROUP ("FRANKLIN") [Adv. Proc. No. 22-50159]; (b) ALAN J. SUSSMAN & ASSOCIATES, INC., ("SUSSMAN") [Adv. Proc. No. 22-50172]; (c) CAMPBELL SALES GROUP, INC. dba LEATHER ITALIA USA ("CAMPBELL") [Adv. Proc. No. 22-50174]; (d) DETROIT PISTONS BASKETBALL COMPANY ("PISTONS") [Adv. Proc. No. 22-50189]; (e) KITH FURNITURE, LLC ("KITH") [Adv. Proc. No. 22-50197]; (f) NICHOLAS DESIGNS, INC. ("MND") [Adv. Proc. No. 22-502]; and (g) PAXTON SALES, INC. ("PAXTON") [Adv. Proc. No. 22-50216] (the above collectively referred to herein as the "Defendants"); copies of Settlement Agreements are attached hereto as Exhibits 1 through 7; the Court having reviewed the Motion and the Settlement Agreements and having considered the record with respect to the Motion; the Court having found that (a) the district court has jurisdiction under 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for*

---

[2] Capitalized terms not otherwise defined herein shall have the meaning given to them in the Motion.

*the District of Delaware*, dated February 29, 2012, and that this Court may enter a final order consistent with Article III of the United States Constitution**,** (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (c) notice of the Motion was sufficient under the circumstances and in full compliance with Bankruptcy Rule 2002 and the local rules of this Court, (d) the Settlement Agreements (i) are the product of good faith, arms' length negotiations among the Parties, without collusion, (ii) are fair, reasonable, appropriate and in the best interests of the Debtors' estates and (iii) represent a sound exercise of the Trustee's business judgment and (e) each of the Parties to the Settlement Agreements provided sufficient consideration for the transactions contemplated by the Settlement Agreements; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; IT IS HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The terms of the Settlement Agreements attached hereto as Exhibits 1 through 7 are APPROVED in their entirety pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

3.      The Parties are hereby authorized to take such additional actions or execute such additional documents as are necessary or appropriate to implement the terms of the Settlement Agreements.

4.      Notwithstanding the possible applicability of Rules 6004, 7062, or 9014 of the Bankruptcy Rules, any other Bankruptcy Rule, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of effectiveness or execution of this Order.

5.     The Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation, interpretation, or enforcement of the Settlement Agreements or this Order.

**<u>EXHIBIT 1</u>**

**FRANKLIN**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely in his capacity as the Chapter 7 Trustee (the "Trustee") of Start Man Furniture, LLC f/k/a Art Van Furniture, LLC, et al. (the "Debtors"),[1] and not in any individual capacity, on the one hand, and Franklin Corp. ("Franklin"); First-Citizens Bank & Trust Company and its subsidiary The CIT Group/Commercial Services, Inc. ("CIT"), on the other hand.  Franklin, CIT and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) under Case No. 20-10553 in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Case"); and

WHEREAS, on or about April 6, 2020 (the "Conversion Date"), the Court entered an order converting the chapter 11 cases to chapter 7 [Docket No. 263], and Alfred T. Giuliano was appointed as the chapter 7 trustee [Docket No. 264]; and

WHEREAS, the Debtors, Franklin and CIT had a business relationship prior to the Petition Date; and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

WHEREAS, the Debtors' records reflect that CIT and Franklin received payments from the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date for product manufactured by Franklin and sold to the Debtors which the Trustee believes he can avoid and recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections 547 and 550, and

WHEREAS, on March 3, 2022, the Trustee filed a *Complaint For Avoidance And Recovery Of Preferential Transfers Pursuant To 11 U.S.C. §§ 547 & 550* against CIT and Franklin in the United States Bankruptcy Court, District of Delaware, assigned Adversary Case Number 22-50159 (the "Adversary Action").

WHEREAS, Franklin and CIT answered the Trustee's complaint and denied and disputed the Trustee's entitlement to relief, and

WHEREAS, the Parties have engaged in good faith, arms' length negotiations to resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.    **Recitals.** The recitals set forth above are incorporated herein by reference.

2.    **Settlement Amount**. Within twenty (20) days of entry of a final, nonappealable order by the Court approving the Settlement Agreement, Franklin shall pay to the Trustee the sum of Ninety Three Thousand Five Hundred Dollars (US $93,500.00) (the "Settlement Payment").

The Settlement Payment will be made in accordance with the following wire instructions or by check:

| Bank: | TriState Capital Bank |
| | 301 Grant Street, Suite 2700 |
| | Pittsburgh, PA 15219 |
| ABA #: | 043019003 |
| Swift #: | TRTTUS33 |
| Acct #: | 8100010308 |
| Acct Name: | Sam Levin, Inc. |

If by check, make payment to "A. Giuliano, Chapter 7 Trustee, Sam Levin, Inc.", as addressed to Pachulski Stang Ziehl & Jones LLP, Attn. Jeffrey P. Nolan, 10100 Santa Monica Blvd, Suite 1300, Los Angeles, CA 90067.

3.    **Settlement Effective Date.** The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the Settlement Payment, and (iii) entry of a final order of the Bankruptcy Court approving the Settlement Agreement (the "Settlement Effective Date").

4.    **Dismissal of Litigation.** Within ten (10) business days after the Settlement Effective Date, the Trustee shall cause to be filed whatever documents are necessary to ensure that the Adversary Action is dismissed with prejudice. Each party will bear its own costs relating to the Adversary Action, including attorneys' fees.

5.    **Trustee's Limited Release.** Effective on the Settlement Effective Date, the Trustee, solely on behalf of the Debtors and the Debtors' estates in his capacity as chapter 7 trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Franklin and CIT, Franklin and CIT affiliates, and their past or present attorneys, accountants, financial advisors, directors, employees, officers, and the successors and assigns of any of them (collectively, the "Franklin and CIT Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements,

3

promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, had, or may have in the Adversary Action.

6.  **Defendant's Limited Release.**  Effective on the Settlement Effective Date, Franklin and the CIT Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors and their bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Franklin and CIT Releasees has, had, or may have in the Adversary Action; provided however that the Franklin and CIT Releasees  retain all rights with respect to filed claims including any rights with respect to filing a § 502(h) claim.

7.  **CIT's Limited Release of Franklin.**  Effective on the Settlement Effective Date, CIT shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Franklin, Franklin's affiliates and Franklin and Franklin's affiliates' past and present attorneys, accountants, financial advisors, directors, employees, officers, and the successors and assigns of any of them from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies,

agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which CIT has, had, or may have, arising out of or related to the Adversary Action, the Bankruptcy Case, or the Transfers made the basis of the Adversary Action.

8.    **Franklin Limited Release of CIT**. Effective on the Settlement Effective Date, Franklin shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged CIT, CIT's affiliates and CIT and CIT's affiliates' past and present attorneys, accountants, financial advisors, directors, employees, officers, and the successors and assigns of any of them from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which Franklin has, had, or may have, arising out of or related to the Adversary Action, the Bankruptcy Case, or the Transfers made the basis of the Adversary Action.

9.    **Bankruptcy Court Approval.** Following the Parties' execution of this Agreement, the Trustee shall move for approval of this Agreement by the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019. Until and unless the Bankruptcy Court enters an order of approval, this Agreement shall have no binding effect. In the event an order approving this Agreement does not become final, each of the Parties shall not be prejudiced but returned to their position status quo ante.

5

10.    **No Admissions.**  This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the the Adversary Action.

11.    **Expenses.**  The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the Adversary Action and this Settlement Agreement.

12.    **Severability.**  The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement.  The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

13.    **Miscellaneous.**

(a)    Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)    Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

6

(c)     No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)     This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)     This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)     The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)     Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date.  Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(h)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented

7

to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(i)     In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(j)     The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(k)     This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of the Parties hereto or order of the Court.

(l)     This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(m)     The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

8

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:

Dated: July _____, 2023

Alfred T. Giuliano, solely in his capacity as Chapter 7 Trustee of Start Man Furniture, LLC, et al

By:_____
          Alfred T. Giuliano, Trustee

Dated: ~~July~~ August _1_, 2023

FRANKLIN CORP.

By:_____
Name: _Mark Franklin_
Title: _President_

Dated: July ___, 2023

THE CIT GROUP/COMMERCIAL SERVICES, INC.,

By:_____
Name: _____
Title: _____

9

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:

Dated: July ____, 2023

Alfred T. Giuliano, solely in his capacity as Chapter 7 Trustee of Start Man Furniture, LLC, et al

By: _____
     Alfred T. Giuliano, Trustee

Dated: July ___, 2023

FRANKLIN CORP.

By: _____
Name: _____
Title: _____

Dated: July ___, 2023


THE CIT GROUP/COMMERCIAL SERVICES, INC.,


By: _____
Name: ___Anthony Masci_____
Title: ___Senior Vice President_____

9

# **EXHIBIT 2**

## **SUSSMAN**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| START MAN FURNITURE, LLC, *et al.*,[1] | Case No. 20-10533 (CTG) (Jointly Administered) |
| Debtors. | |
| ALFRED T. GIULIANO, In his capacity as Chapter 7 Trustee of Start Man Furniture, LLC, *et al.*, | Adv. Pro. No. 22-50172 (CTG) |
| Plaintiff, | |
| v. | |
| ALAN J. SUSSMAN & ASSOCIATES, INC. dba THE SUSSMAN AGENCY, | |
| Defendant. | |

## STIPULATION OF SETTLEMENT AND FORM OF CONSENT JUDGMENT

IT IS HEREBY STIPULATED by and between Plaintiff, Alfred T. Giuliano, Chapter 7 Trustee (the "Trustee") on behalf of the bankruptcy estates of Start Man Furniture, LLC, on the one hand, and Defendant, Alan J. Sussman & Associates, Inc., dba The Sussman Agency, (the "Company" or "Sussman"), on the other hand (collectively, the "Parties"), as follows:

    1.    The Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334.

    2.    This is a core proceeding under 28 U.S.C. § 157(b).

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

3.    Venue of these chapter 11 cases and this adversary proceeding in this District and before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

4.    The statutory and legal predicates for the relief requested are sections 105, 502, 503, 541, 547, and 550 of title 11, United States Code (the "Bankruptcy Code"), Bankruptcy Rules 3007 and 7001, and Local Bankruptcy Rule 3007-1.

5.    On or about March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) under Case No. 20-10553 in the United States Bankruptcy Court for the District of Delaware; and

6.    On or about April 6, 2020 (the "Conversion Date"), the Court entered an order converting the chapter 11 cases to chapter 7 [Docket No. 263], and Alfred T. Giuliano was appointed as the chapter 7 trustee [Docket No. 264].

7.    The Trustee has the right, authority, and discretion to file, prosecute, enforce, abandon, settle, compromise or release avoidance causes of action subject to approval of the Bankruptcy Court.

8.    On February 24, 2022, the Trustee filed a *Complaint For Avoidance And Recovery Of Preferential Transfers Pursuant To 11 U.S.C. §§ 547 & 550* against the Company in the United States Bankruptcy Court, District of Delaware, assigned Adversary Case Number 22-50172 (the "Adversary Action"). The Company answered the Adversary Action and denied and disputed the Trustee's entitlement to relief. The Parties attended mediation pursuant to court order in an effort to resolve the Adversary Action.

9.    With the advice of their respective counsel herein, the Parties have reached a settlement evidenced by the *Settlement Agreement and Mutual Release* executed on or about

August __, 2023 (the "Settlement Agreement"), as attached hereto as **Exhibit 1**.[2] The parties have

further agreed that as consideration for the settlement sum being paid over a number of months in

accordance with the Settlement Agreement, judgment in the above-captioned bankruptcy case be

granted in favor of the Trustee and against Sussman pursuant to the terms of the *Stipulated Consent*

*Judgment* attached hereto as **Exhibit 2** (the "Sussman Stipulated Consent Judgment") for the sum

of $555,000.00 (Five Hundred Fifty-Five Thousand Dollars) less any payments paid pursuant to

the terms of the Settlement Agreement. Said Judgment shall be entered upon a default and the

failure to timely cure the default as set forth in the Settlement Agreement.

          10.    IT IS STIPULATED that in the event Sussman fails to comply with its

payment obligations set forth in the Settlement Agreement, then the Trustee shall be entitled to

obtain judgment as set forth in the Settlement Agreement. The Trustee shall lodge the Order,

attached hereto as **Exhibit 3**, and shall have all statutory rights of execution on said judgment.

          11.    IT IS FURTHER STIPULATED that the Sussman Stipulated Consent

Judgment may be executed in any number of counterparts. Each counterpart shall be deemed to

be an original and when taken together with the other signed counterparts, shall constitute one

instrument, which shall be binding and effective as to the parties to the Sussman Stipulated Consent

Judgment. This stipulation may be brought into effect by facsimile signature, which shall be

treated as an original.

          12.    Each of the parties hereto specifically warrants having full authority to

execute and enter into this Sussman Stipulated Consent Judgment and agrees to execute and deliver

such other additional agreements, instruments and documents, as may reasonably be necessary or

requested, to effectuate the intention, purpose, terms and conditions of this stipulation.

---

[2] To the extent that any inconsistencies exist between this Stipulation and the Settlement Agreement, the terms of the Settlement Agreement shall govern.

128283758v1

13.     All of the terms of the Sussman Stipulated Consent Judgment shall be binding upon and inure to the benefit of, and be enforceable by, the Parties hereto and their successors and assigns.

14.     No waiver of any term, covenant or condition of the Sussman Stipulated Consent Judgment shall be construed as a waiver of any other term, covenant or condition, nor shall any waiver of any default under this Stipulation be construed as a continuing waiver of any term, condition or covenant or as a waiver of any other default.  Furthermore, in the event any portion of the Sussman Stipulated Consent Judgment is found, judicially or otherwise, to be unlawful, void or, for any other reason, unenforceable, that provision shall be deemed severable and the invalidity or lack of enforceability shall not affect the validity and enforceability of the remaining portions of this stipulation.

15.     Sussman agrees that neither the Sussman Stipulated Consent Judgment, nor any provision hereof, constitutes a penalty.

16.     It is specifically understood and agreed by and between the Trustee and Sussman that in the event that there is a voluntary petition in bankruptcy filed by Sussman and/or if Sussman is the subject of an involuntary petition in bankruptcy, and if the Trustee's settlement proceeds identified in this stipulation are determined to be a voidable preference pursuant to the Bankruptcy Code, then the Trustee shall be free to file a claim against the bankrupt entity for the full amount of the transfers in the 90 days, minus any amounts received which the Trustee has not returned to the bankruptcy estate; and the Trustee shall not be deemed to have waived any rights or remedies against the bankrupt entity.

Dated: August 10, 2023

ALAN J. SUSSMAN & ASSOCIATES, INC. DBA
THE SUSSMAN AGENCY

By: _____
    Matt Meares
    COO

Dated: August 17, 2023

START MAN FURNITURE, LLC, ET AL.

By: _____
    Alfred T. Giuliano
    solely in his capacity as Chapter 7 Trustee

**APPROVED AS TO FORM:**

Dated: August 17, 2023

PACHULSKI STANG ZIEHL & JONES LLP

By: _____
    Jeffrey P. Nolan, Esq.
    *Counsel for Plaintiff, Alfred T. Giuliano, solely in his
    capacity as Chapter 7 Trustee of Start Man Furniture,
    LLC, et al.*

**APPROVED AS TO FORM:**

Dated: August 11, 2023

TAFT, STETTINIUS & HOLLISTER, LLP

By: _____
    Paul R. Hage, Esq.
    *Counsel for Defendant, Alan J. Sussman &
    Associates dba The Sussman Agency*

5

**EXHIBIT 1**

(Settlement Agreement)

128283758v1

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* with exhibits (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely in his capacity as the Chapter 7 Trustee (the "Trustee") of Start Man Furniture, LLC f/k/a Art Van Furniture, LLC, et al. (the "Debtors"),[3] and not in any individual capacity, on the one hand, and Alan J. Sussman & Associates, Inc. dba The Sussman Agency (the "Company or "Sussman"), on the other hand. The Company and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) under Case No. 20-10553 in the United States Bankruptcy Court for the District of Delaware (the "Court"); and

WHEREAS, on or about April 6, 2020 (the "Conversion Date"), the Court entered an order converting the chapter 11 cases to chapter 7 [Docket No. 263], and Alfred T. Giuliano was appointed as the chapter 7 trustee [Docket No. 264]; and

WHEREAS, the Debtors and Company had various business relationships prior to the Petition Date; and

---

[3] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

128283758v1

WHEREAS, the Debtors' records reflect that Company received payments from the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date (the "90 Day Transfer") in the total amount of $6,045,437, which the Trustee believes he can avoid and recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections 547 and 550, and

WHEREAS, on February 24, 2022, the Trustee filed a *Complaint For Avoidance And Recovery Of Preferential Transfers Pursuant To 11 U.S.C. §§ 547 & 550* against the Company in the United States Bankruptcy Court, District of Delaware, assigned Adversary Case Number 22-50172 (the "Adversary Action").

WHEREAS, the Company answered the Trustee's complaint in the Adversary Action, denied and disputed the Trustee's entitlement to relief and asserted certain affirmative defenses, and

WHEREAS, the Parties have engaged in good faith, arms' length negotiations to resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1. **Recitals.** The recitals set forth above are incorporated herein by reference.

2. **Liability for Stipulated Judgment Amount.** Concurrently with execution of this Agreement, the Company shall sign and deliver to the Trustee's counsel a copy of the *Stipulated Consent Judgment* pursuant to which the Parties have agreed upon a mutually acceptable form of stipulated judgment in the amount of Five Hundred and Fifty Thousand Dollars ($550,000.00) (the "Stipulated Consent Judgment"). The Parties agree that, upon the filing of a Certification of Counsel by the Trustee that there has been an uncured default under

2

the terms of the Settlement Agreement, the Court has jurisdiction and authority to render judgment in the form of the Stipulated Consent Judgment, and to promptly move to enter said judgment in the form of *Order Approving Stipulated Consent Judgment*.

Notwithstanding the foregoing, the Trustee agrees: (i) to accept a total payment from the Company in the amount of One Hundred Eighty Five Thousand Dollars (US $185,000.00) (the "Reduced Payment Amount"), if and only if such Reduced Payment Amount is paid to the Trustee in accordance with the payment schedule set out below in Paragraph 3, and (ii) to forbear from enforcement of any alleged claims against the Company so long as the Company is current on such payment schedule (including all cure rights).  If the Reduced Payment Amount is timely received, then the Stipulated Consent Judgment shall not be entered and will be returned to counsel for Sussman and or destroyed at the request of Sussman or counsel.

3.     **Reduced Payment Amount**.  The Company shall pay to the Trustee the Reduced Payment Amount as follows (with time being of the essence):

a.     $30,000, on or before the first business day of the first month after the entry of a final non-appealable order approving the Settlement Agreement;

b.     $150,000.00, in fifteen monthly payments of $10,000, with the first such payment being due on the first business day of the second month after the entry of a final non-appealable order approving the Settlement Agreement;

c.     A $5,000.00 final payment due on the first business day of the seventeenth month after the entry of a final non-appealable order approving the Settlement Agreement.

The Reduced Payment Amount will be paid by ACH pursuant to the following instructions:

Bank:        TriState Capital Bank

3

|            | 301 Grant Street, Suite 2700 |
|------------|------------------------------|
|            | Pittsburgh, PA 15219 |
| ABA #:     | 043019003 |
| Swift #:   | TRTTUS33 |
| Acct #:    | 8100010712 |
| Acct Name: | Art Van Furniture, LLC |

   d. Sussman will pay the Reduced Payment Amount to the Trustee in accordance with this Settlement Agreement.  If the Trustee does not timely receive the Reduced Payment Amount, it will provide Sussman with a written default notice (a "Default Notice").  Sussman shall have ten (10) calendar days from service of the Default Notice to cure the default (the "Latest Cure Deadline").

   If Sussman fails to cure any default on the Reduced Payment Amount before the Latest Cure Deadline, then the Trustee shall be entitled to submit the Stipulated Consent Judgment by Certification of Counsel following 48 hours' email notice to (i) Sussman's counsel of record, and (ii) to Sussman, with the only issues to be whether Sussman has failed to make an installment payment by the Latest Cure Deadline, and the calculation of amounts owed.  Notices provided herein shall be sent to Sussman by e-mail and U.S. mail to the following addresses, or such other addresses as Sussman shall designate to the Trustee in writing:

| To Sussman:      | Dino Rotundo |
|------------------|--------------|
|                  | 29200 Northwestern Hwy., Ste. 130 |
|                  | Southfield, MI 48094 |
|                  | dino@thesussmanagency.com |
|                  | |
| With a copy to:  | Paul R. Hage, Esq. |
|                  | Taft Stettinius & Hollister, LLP |
|                  | 27777 Franklin Road, Suite 2500 |
|                  | Southfield, Michigan 48034 |
|                  | phage@taftlaw.com |

4

4.      **Settlement Effective Date.** The effective date of this Settlement Agreement and all of its terms shall be the date of entry of a final order of the Bankruptcy Court approving the Settlement Agreement (the "Settlement Effective Date").

5.      **Dismissal of Litigation.** Within ten (10) business days after the receipt of the full amount of the Reduced Payment Amount, the Trustee shall cause to be filed whatever documents are necessary to ensure that the Adversary Action is dismissed with prejudice. Each party will bear its own costs relating to the Adversary Action, including attorneys' fees.

6.      **Trustee's Limited Release.** Except for the obligations set forth under this Settlement Agreement, on the Settlement Effective Date, the Trustee, solely on behalf of the Debtors and the Debtors' estates in his capacity as chapter 7 trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Company, its past or present attorneys, accountants, financial advisors, directors, employees, officers, and the successors and assigns of any of them (collectively, the "Company Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, had, may have, or may claim to have against the Company Releasees, in connection with the 90 Day Transfer and/or the Adversary Action. For the avoidance of doubt, the release provided herein shall not impact the rights of the Parties to enforce the terms of this Settlement Agreement.

7.      **Company's Limited Release.** Except for the obligations set forth under this Settlement Agreement, on the Settlement Effective Date, the Company Releasees shall be

5

deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors and their bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Company Releasees has, had, may have, or may claim to have against any of the Trustee Releasees in connection with the 90 Day Transfer and/or the Adversary Action; provided however, the Company does not waive any rights with respect to the filing of a § 502(h) claim.  For the avoidance of doubt, the release provided herein shall not impact the rights of the Parties to enforce the terms of this Settlement Agreement.

        8.      **Bankruptcy Court Approval.**  Upon execution by the Parties, the Trustee shall move for approval of this Settlement Agreement by the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.  Until and unless the Bankruptcy Court enters an order of approval, this Settlement Agreement shall have no binding effect. In the event an order approving this Settlement Agreement does not become final, each of the Parties shall not be prejudiced but returned to their position status quo ante.

        9.      **No Admissions.**  This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the 90 Day Transfer or the Adversary Action.

128283758v1

10.    **Expenses.** The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the 90 Day Transfer, the Adversary Action and this Settlement Agreement.

11.    **Severability.** The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

12.    **Miscellaneous.**

(a)    Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and/or to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)    Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)    This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

7

(e)     This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)     The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)     Deleted

(h)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(i)     In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

8

(j)     The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(k)     This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(l)     This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(m)    The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

128283758v1

ACCEPTED AND AGREED TO BY:

Dated: August 17, 2023

**ALFRED T. GIULIANO, SOLELY IN HIS
CAPACITY AS CHAPTER 7 TRUSTEE OF
START MAN FURNITURE, LLC, ET AL.**

By: _____
        Alfred T. Giuliano, Trustee

Dated: August 10, 2023

**ALAN J. SUSSMAN & ASSOCIATES,
INC. dba THE SUSSMAN AGENCY**

By: _____
Name: _Matt Meares_
Title: _COO_

10

## EXHIBIT 2

(Stipulated Consent Judgment)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 7 |
| START MAN FURNITURE, LLC, *et al.*,[1] | Case No. 20-10533 (CTG)<br>(Jointly Administered) |
| Debtors. |  |
| ALFRED T. GIULIANO,<br>In his capacity as Chapter 7 Trustee of Start<br>Man Furniture, LLC, *et al.*, | Adv. Pro. No. 22-50172 (CTG) |
| Plaintiff, |  |
| v. |  |
| ALAN J. SUSSMAN & ASSOCIATES, INC.<br>dba THE SUSSMAN AGENCY, |  |
| Defendant. |  |

### STIPULATED CONSENT JUDGMENT

Upon the Certification of Counsel filed by counsel for plaintiff ALFRED T. GIULIANO,

in his capacity as Chapter 7 Trustee of Start Man Furniture, LLC, et al., ("Plaintiff" or the

"Trustee"), certifying that defendant, ALAN J. SUSSMAN & ASSOCIATES, INC. dba THE

SUSSMAN AGENCY ("Defendant") has failed to make certain settlement payments when

contractually due in accordance with the *Settlement Agreement and Mutual Release* entered into

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

128283758v1

among the parties (the "Settlement Agreement"), and with Defendant's consent expressed by its

signature below, IT IS HEREBY ORDERED, ADJUDGED, and DECREED THAT:

1.  Judgment is rendered in favor of Alfred T. Giuliano, in his capacity as Chapter 7

    Trustee of Start Man Furniture, LLC, et al. and against Defendant, Alan J. Sussman

    & Associates, Inc. dba, The Sussman Agency, in the amount of Five Hundred and

    Fifty Thousand Dollars ($550,000.00), less payments received of _____, for a

    final judgment of $_____.

2.  The Court retains jurisdiction to interpret and enforce this Stipulated Consent

    Judgment.

STIPULATED TO BY:
ALAN J. SUSSMAN & ASSOCIATES, INC..
 dba THE SUSSMAN AGENCY,

By: _____
Name: _____Matt Meares_____
Title: _____COO_____

13

## **EXHIBIT 3**

(Order Approving Entry of Stipulated Consent Judgment)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| START MAN FURNITURE, LLC, *et al.*,[1] | Case No. 20-10533 (CTG)<br>(Jointly Administered) |
| Debtors. | |
| ALFRED T. GIULIANO, In his capacity as<br>Chapter 7 Trustee of Start Man Furniture, LLC,<br>*et al.*, | Adv. Pro. No. 22-50172 (CTG) |
| Plaintiff, | |
| v. | |
| ALAN J. SUSSMAN & ASSOCIATES, INC.<br>dba THE SUSSMAN AGENCY, | |
| Defendant. | |

## <u>ORDER APPROVING ENTRY OF STIPULATED CONSENT JUDGMENT</u>

The Court having considered the *Settlement Agreement and Mutual Release*,[2] the

*Stipulated Consent Judgment* and the *Certification of Counsel* filed by counsel for the Trustee in

the above-captioned Adversary Action, it is hereby ORDERED that:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include:
Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding
Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I,
LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent,
LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada,
LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC
(f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC
(4463).
[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Settlement
Agreement, as applicable.

1.   Judgment shall be entered in favor of Alfred T. Giuliano, in his capacity as Chapter 7 Trustee of Start Man Furniture, LLC, etc. and against Defendant, Alan J. Sussman & Associates, Inc. dba, The Sussman Agency, in the amount of Five Hundred and Fifty Thousand Dollars ($550,000.00), less payments received of_____, for a final judgment of $_____.

2.   This Court retains exclusive jurisdiction to interpret and enforce this Order, the Stipulated Consent Judgment, and the Settlement Agreement.

128283758v1

## **EXHIBIT 3**

## **CAMPBELL**

DocuSign Envelope ID: 1FE778D8-E535-413C-8407-EAC5E35B218B

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely in his capacity as the Chapter 7 Trustee (the "Trustee") of Start Man Furniture, LLC f/k/a Art Van Furniture, LLC, et al. (the "Debtors"),[1] and not in any individual capacity, on the one hand, and Campbell Sales Group, Inc. dba Leather Italia USA (the "Company"), on the other hand.  Company and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) under Case No. 20-10553 in the United States Bankruptcy Court for the District of Delaware; and

WHEREAS, on or about April 6, 2020 (the "Conversion Date"), the Court entered an order converting the chapter 11 cases to chapter 7 [Docket No. 263], and Alfred T. Giuliano was appointed as the chapter 7 trustee [Docket No. 264]; and

WHEREAS, the Debtors and Company had various business relationships prior to the Petition Date; and

WHEREAS, the Debtors' records reflect that the Company received multiple payments from the Debtors on account of outstanding indebtedness within the 90 days prior to

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

DocuSign Envelope ID: 1FE778D8-E535-413C-8407-EAC5E35B218B

the Petition Date (the "90 Day Transfers"), which the Trustee believes he can avoid and recover

for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections 547 and

550, and

WHEREAS, on February 24, 2022, the Trustee filed a *Complaint For Avoidance*

*And Recovery Of Preferential Transfers Pursuant To 11 U.S.C. §§ 547 & 550* against the

Company and First-Citizens Bank & Trust Company and its subsidiary The CIT

Group/Commercial Services, Inc. ("CIT"), in the United States Bankruptcy Court, District of

Delaware, assigned Adversary Case Number 22-50174 (the "Adversary Action").

WHEREAS, the Company answered the Trustee's complaint and denied and

disputed the Trustee's entitlement to relief, and

WHEREAS, the Parties have engaged in good faith, arms' length negotiations to

resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and

sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.      **Recitals.** The recitals set forth above are incorporated herein by

reference.

2.      **Settlement Amount**. Within twenty (20) days of Court approval of the

Settlement Agreement, the Company shall pay to the Trustee the sum of Twenty-Five Thousand

Dollars (US $25,000.00) (the "Settlement Payment").   The Settlement Payment will be made in

accordance with wire instructions provided to counsel for Defendant.

3.      **Settlement Effective Date.** The effective date of this Settlement

Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the

DocuSign Envelope ID: 1FE778D8-E535-413C-8407-EAC5E35B218B

Settlement Payment, and (iii) entry of a final order of the Bankruptcy Court approving the Settlement Agreement (the "Settlement Effective Date").

4.    **Dismissal of Litigation.** Within ten (10) business days after the Settlement Effective Date, the Trustee shall cause to be filed whatever documents are necessary to ensure that the Adversary Action is dismissed with prejudice. Each party will bear its own costs relating to the Adversary Action, including attorneys' fees.

5.    **Trustee's Limited Release.** Effective on the Settlement Effective Date, the Trustee, solely on behalf of the Debtors and the Debtors' estates in his capacity as chapter 7 trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Company, its past or present attorneys, accountants, financial advisors, directors, employees, officers, and the successors and assigns of any of them (collectively, the "Company Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, had, may have, or may claim to have against the Company Releasees, in connection with the 90 Day Transfers and/or the Adversary Action.

6.    **Company's Limited Release.** Effective on the Settlement Effective Date, the Company Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors and their bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors,

DOCS_LA:350119.2 05233/004

DocuSign Envelope ID: 1FE778D8-E535-413C-8407-EAC5E35B218B

employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Company Releasees has, had, may have, or may claim to have against any of the Trustee Releasees in connection with the 90 Day Transfers and/or the Adversary Action; provided however the Company retains any rights as to filed/scheduled claims in the Debtors' bankruptcy estates and/or with respect to the filing of a § 502(h) claim.

7.     **Bankruptcy Court Approval.**  Following the Parties' execution of this Agreement, the Trustee shall move for approval of this Agreement by the Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019.  Until and unless the Bankruptcy Court enters an order of approval, this Agreement shall have no binding effect.  In the event an order approving this Agreement does not become final, each of the Parties shall not be prejudiced but returned to their position status quo ante.

8.     **No Admissions.**  This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the 90 Day Transfers or the Adversary Action.

9.     **Expenses.**  The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the 90 Day Transfers, the Adversary Action and this Settlement Agreement.

DOCS_LA:350119.2 05233/004

DocuSign Envelope ID: 1FE778D8-E535-413C-8407-EAC5E35B218B

10.    **Severability.**  The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement.  The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

11.    **Miscellaneous.**

(a)    Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)    Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)    This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)    This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

DocuSign Envelope ID: 1FE778D8-E535-413C-8407-EAC5E35B218B

(f)    The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)    Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date.  Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(h)    Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(i)    In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to

6

DocuSign Envelope ID: 1FE778D8-E535-413C-8407-EAC5E35B218B

making an informed judgment concerning the Settlement Agreement, and (d) it has conducted

such investigation as it or its counsel deemed appropriate regarding the settlement and its rights

and asserted rights in connection with the matters that are the subject of the Settlement

Agreement.

(j)    The Parties acknowledge that this Settlement Agreement constitutes

the entire agreement between the Parties with respect to the subject matter hereof, and all prior

agreements, negotiations and understandings with respect to the subject matter hereof are

canceled and superseded by this Settlement Agreement.

(k)    This Settlement Agreement shall not be modified, altered, amended

or vacated without the written consent of the Parties hereto or order of the Court.

(l)    This Settlement Agreement shall inure to the benefit of and be

binding upon the successors and assigns of the Parties hereto.

(m)    The headings of all sections of this Settlement Agreement are

inserted solely for the convenience of reference and are not a part of and are not intended to

govern, limit, or aid in the construction or interpretation of any term or provision hereof.

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s)

set forth below:

ACCEPTED AND AGREED TO BY:

Dated: _____

Alfred T. Giuliano, solely in his capacity as
Chapter 7 Trustee of Start Man Furniture, LLC, et
al

By: _____
        Alfred T. Giuliano, Trustee

Dated: _8/10/2023_____

CAMPBELL SALES GROUP, INC., dba
LEATHER ITALIA USA

By: _____
Name: _Gary Cebula_____
Title: _CFO_____

DOCS_LA:350119.2 05233/004

**<u>EXHIBIT 4</u>**

**PISTONS**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely in his capacity as the Chapter 7 Trustee (the "Trustee") of Start Man Furniture, LLC f/k/a Art Van Furniture, LLC, et al. (the "Debtors"),[1] and not in any individual capacity, on the one hand, and DETROIT PISTONS BASKETBALL COMPANY (the "Company"), on the other hand.  Company and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) under Case No. 20-10553 in the United States Bankruptcy Court for the District of Delaware; and

WHEREAS, on or about April 6, 2020 (the "Conversion Date"), the Court entered an order converting the chapter 11 cases to chapter 7 [Docket No. 263], and Alfred T. Giuliano was appointed as the chapter 7 trustee [Docket No. 264]; and

WHEREAS, the Debtors and Company had various business relationships prior to the Petition Date; and

WHEREAS, the Debtors' records reflect that Company received a payment from the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

(the "90 Day Transfer"), which the Trustee believes he can avoid and recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections 547 and 550, and

WHEREAS, on March 1, 2022, the Trustee filed a *COMPLAINT FOR AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 547 & 550* against the Company in the United States Bankruptcy Court, District of Delaware, assigned Adversary Case Number 22-50189 (the "Adversary Action").

WHEREAS, the Company answered the Trustee's complaint and denied and disputed the Trustee's entitlement to relief, and

WHEREAS, the Parties have engaged in good faith, arms' length negotiations to resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.    **Recitals.** The recitals set forth above are incorporated herein by reference.

**Settlement Amount.** Within ten (10) days of Court approval of the Settlement Agreement, the Company shall pay to the Trustee the sum of Ninety Two Thousand Five Hundred Dollars (US $92,500.00) (the "Settlement Payment").

The Settlement Payment will be made in accordance with following wire instructions or by check:

| | |
|---|---|
| Bank: | TriState Capital Bank |
| | 301 Grant Street, Suite 2700 |
| | Pittsburgh, PA 15219 |
| ABA #: | 043019003 |
| Swift #: | TRTTUS33 |
| Acct #: | 8100010712 |
| Acct Name: | Art Van Furniture, LLC |

DOCS_LA:348673.1 05233/003

If by check, make payment to "A. Giuliano, Chapter 7 Trustee, Art Van, Inc.", as addressed to c/o Pachulski Stang Ziehl & Jones LLP, Attn. Jeffrey P. Nolan, 10100 Santa Monica Blvd, Suite 1300, Los Angeles, CA 90067.

2.    **Settlement Effective Date.**  The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the Settlement Payment, and (iii) entry of a final order of the Bankruptcy Court approving the Settlement Agreement (the "Settlement Effective Date").

3.    **Dismissal of Litigation.** Within ten (10) business days after the Settlement Effective Date, the Trustee shall cause to be filed whatever documents are necessary to ensure that the Adversary Action is dismissed with prejudice. Each party will bear its own costs relating to the Adversary Action, including attorneys' fees.

4.    **Trustee's Limited Release.**  Effective on the Settlement Effective Date, the Trustee, solely on behalf of the Debtors and the Debtors' estates in his capacity as chapter 7 trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Company, its affiliates (including Palace Sports & Entertainment, LLC), its past or present attorneys, accountants, financial advisors, directors, employees, officers, and the successors and assigns of any of them (collectively, the "Company Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, had, may have, or may claim to have against the Company Releasees, in connection with the 90 Day Transfer and/or the Adversary Action.

3

5.    **Company's Limited Release.**  Effective on the Settlement Effective Date, the Company Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors and their bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Company Releasees has, had, may have, or may claim to have against any of the Trustee Releasees in connection with the 90 Day Transfer and/or the Adversary Action, however, the Company does not waive any rights with respect to the filing of a § 502(h) claim.

6.    **Bankruptcy Court Approval.**  Following the Parties' execution of this Agreement, the Trustee shall move for approval of this Agreement by the Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019.  Until and unless the Bankruptcy Court enters an order of approval, this Agreement shall have no binding effect. In the event an order approving this Agreement does not become final, each of the Parties shall not be prejudiced but returned to their position status quo ante.

7.    **No Admissions.**  This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the 90 Day Transfer or the Adversary Action.

4

8.    **Expenses.**  The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the 90 Day Transfer, the Adversary Action and this Settlement Agreement.

9.    **Severability.**  The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement.  The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

10.    **Miscellaneous.**

(a)    Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)    Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

DOCS_LA:348673.1 05233/003

(d)     This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)     This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)     The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)     Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date.  Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(h)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

6

(i)    In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(j)    The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(k)    This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(l)    This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(m)    The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

DOCS_LA:348673.1 05233/003

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s)

set forth below:

ACCEPTED AND AGREED TO BY:

Dated: April 2-7, 2023

Alfred T. Giuliano, solely in his capacity as
Chapter 7 Trustee of Start Man Furniture, LLC, et
al

By: _____
          Alfred T. Giuliano, Trustee

Dated: April 26 , 2023

DETROIT PISTONS BASKETBALL
COMPANY

By: _Richard Haddad_____
Name: _Richard Haddad_____
Title: _EVP, COO & Cheif Legal Officer_

8

# **EXHIBIT 5**

## **KITH**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely in his capacity as the Chapter 7 Trustee (the "Trustee") of Start Man Furniture, LLC f/k/a Art Van Furniture, LLC, et al. (the "Debtors"),[1] and not in any individual capacity, on the one hand, and Kith Furniture, LLC., an Alabama Limited Liability Company (the "Company"), on the other hand.  Company and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) under Case No. 20-10553 in the United States Bankruptcy Court for the District of Delaware; and

WHEREAS, on or about April 6, 2020 (the "Conversion Date"), the Court entered an order converting the chapter 11 cases to chapter 7 [Docket No. 263], and Alfred T. Giuliano was appointed as the chapter 7 trustee [Docket No. 264]; and

WHEREAS, the Debtors and Company had various business relationships prior to the Petition Date; and

WHEREAS, the Debtors' records reflect that Company received two payments from the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

DOCS_LA:349076.1 05233/004

Date (the "90 Day Transfers"), which the Trustee believes he can avoid and recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections 547 and 550, and

WHEREAS, on March 3, 2022, the Trustee filed a *COMPLAINT FOR AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 547 & 550* against the Company in the United States Bankruptcy Court, District of Delaware, assigned Adversary Case Number 22-50197 (the "Adversary Action").

WHEREAS, the Company answered the Trustee's complaint and denied and disputed the Trustee's entitlement to relief, and

WHEREAS, the Parties have engaged in good faith, arms' length negotiations to resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.    **Recitals.** The recitals set forth above are incorporated herein by reference.

2.    **Settlement Amount.** Within ten (10) days of Court approval of the Settlement Agreement, the Company shall pay to the Trustee the sum of Twenty Thousand Dollars (US $20,000.00) (the "Settlement Payment").

The Settlement Payment will be made in accordance with following wire instructions or by check:

Bank:         TriState Capital Bank
              301 Grant Street, Suite 2700
              Pittsburgh, PA 15219
ABA #:        043019003
Swift #:      TRTTUS33
Acct #:       8100010712

2

Acct Name:    Art Van Furniture, LLC

If by check, make payment to "A. Giuliano, Chapter 7 Trustee, Art Van, Inc.", as addressed to c/o Pachulski Stang Ziehl & Jones LLP, Attn. Jeffrey P. Nolan, 10100 Santa Monica Blvd, Suite 1300, Los Angeles, CA 90067.

3.    **Settlement Effective Date.** The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the Settlement Payment, and (iii) entry of a final order of the Bankruptcy Court approving the Settlement Agreement (the "Settlement Effective Date").

4.    **Dismissal of Litigation.** Within ten (10) business days after the Settlement Effective Date, the Trustee shall cause to be filed whatever documents are necessary to ensure that the Adversary Action is dismissed with prejudice.  Each party will bear its own costs relating to the Adversary Action, including attorneys' fees.

5.    **Trustee's Limited Release.** Effective on the Settlement Effective Date, the Trustee, solely on behalf of the Debtors and the Debtors' estates in his capacity as chapter 7 trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Company, its past or present attorneys, accountants, financial advisors, directors, employees, officers, and the successors and assigns of any of them (collectively, the "Company Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, had, may have, or

may claim to have against the Company Releasees, in connection with the 90 Day Transfers and/or the Adversary Action.

6.     **Company's Limited Release.**   Effective on the Settlement Effective Date, the Company Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors and their bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Company Releasees has, had, may have, or may claim to have against any of the Trustee Releasees in connection with the 90 Day Transfers and/or the Adversary Action, including any rights with respect to filing a § 502(h) claim.

7.     **Bankruptcy Court Approval.**   Following the Parties' execution of this Agreement, the Trustee shall move for approval of this Agreement by the Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019.  Until and unless the Bankruptcy Court enters an order of approval, this Agreement shall have no binding effect.  In the event an order approving this Agreement does not become final, each of the Parties shall not be prejudiced but returned to their position status quo ante.

4

8.    **No Admissions.** This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the 90 Day Transfers or the Adversary Action.

9.    **Expenses.** The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the 90 Day Transfers, the Adversary Action and this Settlement Agreement.

10.    **Severability.** The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

11.    **Miscellaneous.**

(a)    Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)    Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)    This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)    This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)    The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)    Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date. Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(h)    Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority

6

to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(i)    In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(j)    The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(k)    This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of the Parties hereto or order of the Court.

(l)    This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(m)    The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

7

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the

date(s) set forth below:

ACCEPTED AND AGREED TO BY:

Dated: June /2, 2023                     Dated: June 07, 2023

Alfred T. Giuliano, solely in his capacity as          KITH FURNITURE, LLC
Chapter 7 Trustee of Start Man Furniture, LLC, et
al

By: _____          By: _____
      Alfred T. Giuliano, Trustee              Name: Craig Smith
                                                  Title: President + CEO

**<u>EXHIBIT 6</u>**

**MND**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely in his capacity as the Chapter 7 Trustee (the "Trustee") of Start Man Furniture, LLC f/k/a Art Van Furniture, LLC, et al. (the "Debtors"),[1] and not in any individual capacity, on the one hand, and Michael Nicholas Designs, Inc., a California corporation (the "Company"), on the other hand.  Company and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) under Case No. 20-10553 in the United States Bankruptcy Court for the District of Delaware (the "Court"); and

WHEREAS, on or about April 6, 2020 (the "Conversion Date"), the Court entered an order converting the chapter 11 cases to chapter 7 [Docket No. 263], and Alfred T. Giuliano was appointed as the chapter 7 trustee [Docket No. 264]; and

WHEREAS, the Debtors and Company had various business relationships prior to the Petition Date; and

WHEREAS, the Debtors' records reflect that Company received a payment from the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

(the "90 Day Transfer"), which the Trustee believes he can avoid and recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections 547 and 550, and

WHEREAS, on March 2, 2022, the Trustee filed a *Complaint For Avoidance And Recovery Of Preferential Transfers Pursuant To 11 U.S.C. §§ 547 & 550* against the Company in the United States Bankruptcy Court, District of Delaware, assigned Adversary Case Number 22-50200 (the "Adversary Action").

WHEREAS, the Company answered the Trustee's complaint and denied and disputed the Trustee's entitlement to relief, and

WHEREAS, the Parties have engaged in good faith, arms' length negotiations to resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.  **Recitals.** The recitals set forth above are incorporated herein by reference.

2.  **Settlement Amount.** Within ten (10) days after entry of a final order approving the Settlement Agreement, the Company shall pay to the Trustee the sum of Seventy-Five Thousand Dollars (US $75,000.00) (the "Settlement Payment"). The Settlement Payment will be made in accordance with following wire instructions or by check:

| | |
|---|---|
| Bank: | TriState Capital Bank |
| | 301 Grant Street, Suite 2700 |
| | Pittsburgh, PA 15219 |
| ABA #: | 043019003 |
| Swift #: | TRTTUS33 |
| Acct #: | 8100010308 |
| Acct Name: | Sam Levin, Inc. |

2

Or if by check, make payment to "A. Giuliano, Chapter 7 Trustee, Sam Levin, Inc.", as addressed to Pachulski Stang Ziehl & Jones LLP, Attn. Jeffrey P. Nolan, 10100 Santa Monica Blvd, Suite 1300, Los Angeles, CA 90067.

   3.  **Settlement Effective Date.** The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the Settlement Payment, and (iii) entry of a final order of the Court approving the Settlement Agreement (the "<u>Settlement Effective Date</u>").

   4.  **Dismissal of Litigation.** Within ten (10) business days after the Settlement Effective Date, the Trustee shall cause to be filed whatever documents are necessary to ensure that the Adversary Action is dismissed with prejudice. Each party will bear its own costs relating to the Adversary Action, including attorneys' fees.

   5.  **Trustee's Release.** Effective on the Settlement Effective Date, the Trustee, solely on behalf of the Debtors and the Debtors' estates in his capacity as chapter 7 trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Company, its past or present attorneys, accountants, financial advisors, directors, employees, officers, and the successors and assigns of any of them (collectively, the "<u>Company Releasees</u>") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, had, may have, or may claim to have against the Company Releasees.

3

6.    **Company's Release.**  Effective on the Settlement Effective Date, the Company Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors and their bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Company Releasees has, had, may have, or may claim to have against any of the Trustee Releasees including any rights with respect to filing of a § 502(h) claim.

7.    **Bankruptcy Court Approval.**  Following the Parties' execution of this Agreement, the Trustee shall move for approval of this Agreement by the Court pursuant to Federal Rules of Bankruptcy Procedure 9019. Until and unless the Court enters an order of approval and such order becomes final and no longer subject to appeal, this Agreement shall have no binding effect. In the event an order approving this Agreement does not become final, each of the Parties shall not be prejudiced but returned to their position status quo ante.

8.    **No Admissions.**  This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the 90 Day Transfer or the Adversary Action.

4

9.      **Expenses.** The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the 90 Day Transfer, the Adversary Action and this Settlement Agreement.

10.      **Severability.** The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

11.      **Miscellaneous.**

(a)      Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)      Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)      No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

5

(d)     This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)     This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)     The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)     Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date.  Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(h)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

6

(i)     In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(j)     The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(k)     This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(l)     This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(m)     The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

7

N WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:

Dated: ~~June~~ *July 1?*, 2023

Dated: June *19*, 2023

Alfred T. Giuliano, solely in his capacity as Chapter 7 Trustee of Start Man Furniture, LLC, et al

Michael Nicholas Designs, Inc.

By: _____
        Alfred T. Giuliano, Trustee

By: _____
Name: *Mike Cimarusti*
Title: *President*

8

**<u>EXHIBIT 7</u>**

**PAXTON**

DOCS_LA:348525.2 05233/004

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely in his capacity as the Chapter 7 Trustee (the "Trustee") of Start Man Furniture, LLC f/k/a Art Van Furniture, LLC, et al. (the "Debtors"),[1] and not in any individual capacity, on the one hand, and PAXTON SALES, INC., a Mississippi corporation (the "Company"), on the other hand. Company and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) under Case No. 20-10553 in the United States Bankruptcy Court for the District of Delaware; and

WHEREAS, on or about April 6, 2020 (the "Conversion Date"), the Court entered an order converting the chapter 11 cases to chapter 7 [Docket No. 263], and Alfred T. Giuliano was appointed as the chapter 7 trustee [Docket No. 264]; and

WHEREAS, the Debtors and Company had various business relationships prior to the Petition Date; and

WHEREAS, the Debtors' records reflect that Company received a payment from the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

(the "90 Day Transfer"), which the Trustee believes he can avoid and recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections 547 and 550, and

WHEREAS, on March 3, 2022, the Trustee filed a *COMPLAINT FOR AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 547 & 550* against the Company in the United States Bankruptcy Court, District of Delaware, assigned Adversary Case Number 22-50216 (the "Adversary Action").

WHEREAS, the Company answered the Trustee's complaint and denied and disputed the Trustee's entitlement to relief, and

WHEREAS, the Parties have engaged in good faith, arms' length negotiations to resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.    **Recitals.** The recitals set forth above are incorporated herein by reference.

**Settlement Amount.** Within ten (10) days of Court approval of the Settlement Agreement, the Company shall pay to the Trustee the sum of Forty Thousand Dollars (US $40,000.00) (the "Settlement Payment").

The Settlement Payment will be made in accordance with following wire instructions or by check:

| | |
|---|---|
| Bank: | TriState Capital Bank |
| | 301 Grant Street, Suite 2700 |
| | Pittsburgh, PA 15219 |
| ABA #: | 043019003 |
| Swift #: | TRTTUS33 |
| Acct #: | 8100010712 |
| Acct Name: | Art Van Furniture, LLC |

2

If by check, make payment to "A. Giuliano, Chapter 7 Trustee, Art Van, Inc.", as addressed to c/o Pachulski Stang Ziehl & Jones LLP, Attn. Jeffrey P. Nolan, 10100 Santa Monica Blvd, Suite 1300, Los Angeles, CA 90067.

      2.    **Settlement Effective Date.** The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the Settlement Payment, and (iii) entry of a final order of the Bankruptcy Court approving the Settlement Agreement (the "Settlement Effective Date").

      3.    **Dismissal of Litigation.** Within ten (10) business days after the Settlement Effective Date, the Trustee shall cause to be filed whatever documents are necessary to ensure that the Adversary Action is dismissed with prejudice. Each party will bear its own costs relating to the Adversary Action, including attorneys' fees.

      4.    **Trustee's Limited Release.** Effective on the Settlement Effective Date, the Trustee, solely on behalf of the Debtors and the Debtors' estates in his capacity as chapter 7 trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Company, its past or present attorneys, accountants, financial advisors, directors, employees, officers, and the successors and assigns of any of them (collectively, the "Company Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, had, may have, or may claim to have against the Company Releasees, in connection with the 90 Day Transfer and/or the Adversary Action.

3

5.    **Company's Limited Release.**  Effective on the Settlement Effective Date, the Company Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors and their bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Company Releasees has, had, may have, or may claim to have against any of the Trustee Releasees in connection with the 90 Day Transfer and/or the Adversary Action, including any rights with respect to filing a § 502(h) claim.

6.    **Bankruptcy Court Approval.**  Following the Parties' execution of this Agreement, the Trustee shall move for approval of this Agreement by the Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019.  Until and unless the Bankruptcy Court enters an order of approval, this Agreement shall have no binding effect. In the event an order approving this Agreement does not become final, each of the Parties shall not be prejudiced but returned to their position status quo ante.

7.    **No Admissions.**  This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the 90 Day Transfer or the Adversary Action.

4

8.    **Expenses.** The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the 90 Day Transfer, the Adversary Action and this Settlement Agreement.

9.    **Severability.** The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

10.    **Miscellaneous.**

(a)    Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)    Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

5

(d)    This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)    This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)    The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)    Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date.  Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(h)    Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(i)    In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(j)    The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(k)    This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(l)    This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(m)    The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s)

set forth below:

ACCEPTED AND AGREED TO BY:

Dated:  April____, 2023

Alfred T. Giuliano, solely in his capacity as
Chapter 7 Trustee of Start Man Furniture, LLC, et
al

By:_____
        Alfred T. Giuliano, Trustee

Dated:  April ___, 2023

PAXTON SALE, INC.

By:_____
Name: _Carolyn Cole_____
Title:  __CFO_____