# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 7 |
| START MAN FURNITURE, LLC, et al. (f/k/a Art Van Furniture, LLC),[1] | Case No. 20-10553 (CTG) |
| Debtors. | Jointly Administered |

Objection Deadline: March 24, 2026 at 4:00 p.m. (ET)H
Hearing Date: April 6, 2026, at 10:00 a.m. (ET)

## MOTION OF ALFRED T. GIULIANO, CHAPTER 7 TRUSTEE, FOR ORDER APPROVING SALE OF RIGHTS IN VISA/MASTERCARD CLASS ACTION INTERCHANGE LITIGATION FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 105 AND 363 <u>AND RELATED RELIEF</u>

Alfred T. Giuliano, chapter 7 trustee (the "<u>Trustee</u>" or "<u>Seller</u>") to the estates of the above-captioned debtors (the "<u>Debtors</u>") hereby files this motion (the "<u>Motion</u>") for the entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>**, approving the sale of rights of the Debtors' estates in the Class Action Interchange Litigation (defined below), free and clear of all liens, claims, interests, and encumbrances, and granting related relief.  In support of the Motion, the Trustee respectfully represents as follows:

### <u>Jurisdiction</u>

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

the meaning of 28 U.S.C. § 157(b)(2), and the Trustee confirms his consent pursuant to Rule

9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by

the Court in connection with this Motion to the extent that it is later determined that the Court,

absent consent of the parties, cannot enter final orders or judgments in connection herewith

consistent with Article III of the United States Constitution.

2.     Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The bases for the relief sought herein are sections 105 and 363 of title 11

of the United States Code (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Bankruptcy Rules").

### Case Background

4.     On March 8, 2020 (the "Petition Date"), each of the Debtors commenced a

case under chapter 11 of the Bankruptcy Code.

5.     On April 6, 2020, the Court entered an order converting the chapter 11

cases to chapter 7 (the "Conversion Order") [Docket No. 263] effective April 7, 2020 (the

"Conversion Date").

### Background Regarding Class Action Interchange Litigation

6.     On October 20, 2005, the case styled *In re Payment Card Interchange Fee

and Merchant-Discount Antitrust Litigation* (Case No. 1:05-md-01720-JG-JO) (the "Class

Action Interchange Litigation") was commenced in the United States District Court for the

Eastern District of New York (the "Eastern District Court") by numerous merchants, retailers

and trade associations (collectively, the "Plaintiffs") against, among other entities, Visa U.S.A.

Inc. ("Visa") and MasterCard International Inc. ("MasterCard", and collectively with all other named defendants in the Class Action Interchange Litigation, the "Defendants").  Pursuant to the lawsuit, the Plaintiffs claim that since January 1, 2004, the Defendants conspired to unlawfully fix the price of "interchange fees"[2] and other fees charged to merchants for transactions processed over the Visa and MasterCard networks.

7.    Beginning in December 2011, the parties to the Class Action Interchange Litigation, along with mediators, began potential settlement discussions. On July 13, 2012, the parties filed a Memorandum of Understanding attaching a document setting forth the terms of the settlement, and in October 2012, the parties executed a settlement agreement (the "Settlement Agreement") reflecting those terms.

8.     On November 27, 2012, the Eastern District Court preliminarily approved the Settlement Agreement, certified a settlement class under Federal Rule of Civil Procedure 23(b)(3) from which opt-outs were permitted, and certified a settlement class under Federal Rule of Civil Procedure 23(b)(2) from which opt-outs were not permitted.  On December 13, 2013, the Eastern District Court filed an order finally approving the Settlement Agreement and certified the two settlement classes.

9.    On June 30, 2016, the United States Court of Appeals for the Second Circuit vacated the Eastern District Court's class certification and approval of the Settlement Agreement.

10.    On September 18, 2018, the parties filed the *Superseding and Amended Definitive Class Settlement Agreement* with the Eastern District Court seeking approval of a proposed $5.56-$6.26 billion settlement (the "New Proposed Settlement").

---

[2]    An interchange fee is a fee that a merchant's bank pays a customer's bank when merchants accept cards using card networks such as Visa and MasterCard for purchases.

11.     On December 13, 2019, the Eastern District Court granted final approval of the New Proposed Settlement.  On January 3, 2020, an appeal of the final-approval order was filed.

12.     On October 7, 2020, the Trustee filed a motion [Docket No. 1014] to sell the estates' rights in the Class Action Interchange Litigation pursuant to a competitive auction process established through bid procedures.  On October 27, 2020, the Court entered an order [Docket No. 1060] approving bid procedures for the Class Action Interchange Litigation.  The Trustee solicited bids from interested purchasers pursuant to the approved bid procedures, however, interest and offers received were not high enough and, in the Trustee's business judgment, the bidding process was adjourned indefinitely.

13.     In March 2023, the Second Circuit affirmed the Eastern District Court's approval of the New Proposed Settlement for the damages class.

14.     In December 2023, the claims process opened for eligible merchants.

15.     On or about March 26, 2024, the Trustee filed a claim with the claims administrator (the "Asset").

16.     The Trustee has been approached by the Purchaser for a proposed private sale of the Asset.  The Trustee submits, in his business judgment, that the proposed sale of the Asset is the highest and best offer received and that a private sale is appropriate, for the reasons set forth below.

### The Proposed Asset Purchase Agreement

17.     In accordance with Bankruptcy Rule 6004 and Local Bankruptcy Rule 6004-1, the relevant terms of the proposed form of sale agreement are as follows:[3]

---

[3] A copy of the form of APA is attached hereto as Exhibit A and is incorporated herein by reference.  Capitalized terms not otherwise defined in this Motion have the meanings ascribed to them in the APA.

- Proposed Purchaser.  Optium Fund 6 (the "Purchaser")

- Sellers.  Alfred T. Giuliano, chapter 7 trustee (the "Trustee" or "Seller") to the estates of the Debtors.

- Purchase Price.  $850,000.00.

- Asset Acquisition.  The Asset encompasses all rights, title, and ownership interest of any kind, now existing or arising hereafter, to which Debtors' estates may be entitled, arising in any way or form, from the Class Action Interchange Litigation, or the operative facts alleged in the Class Action Interchange Litigation, including but not limited to the right to monetary benefits, or benefits that may be monetized, from settlements, judgments, or any other form of resolution of the Class Action Interchange Litigation or the operative facts alleged therein.

- Assumed Liabilities.  N/A

- Excluded Assets.  N/A

- Excluded Liabilities.  N/A

- Requested Findings as to Successor Liability.  For the reasons discussed below, pursuant to section 363(f) and 105(a) of the Bankruptcy Code, the Trustee is seeking to sell the Asset free and clear of all liens, claims, and encumbrances.

- Relief from Bankruptcy Rule 6004(h).  The Trustee is seeking a waiver of the fourteen day stay under Bankruptcy Rule 6004(h) for the reasons discussed below.

## Relief Requested

18.     By this Motion, the Trustee seeks the entry of an order pursuant to

11 U.S.C. §§ 105 and 363(b), (f), and (m), as well as Bankruptcy Rule 6004, (a) authorizing the

Trustee to sell the Asset free and clear of all liens, claims, interests, and encumbrances; and

(b) approving the terms of the APA.

## Basis for Relief Requested

A.     **Approval of the Sale is Warranted Under Sections 105 and 363 of the Bankruptcy Code**

19.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he Trustee,

after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate." 11 U.S.C. § 363(b). Under section 105(a) of the Bankruptcy Code, the

Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions" of section 363. 11 U.S.C. § 105(a).

20. Although the Bankruptcy Code does not explicitly set forth a standard for

determining when it is appropriate for a court to authorize the sale of property of the estate,

courts in this district and elsewhere have found that a debtor's sale of assets outside the ordinary

course of business should be approved if the debtor can demonstrate a sound business

justification for the proposed transaction. *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389,

395 (3d Cir. 1996); *In re Eagle Picher Holdings, Inc.*, 2005 Bankr. LEXIS 2894, at *3 (Bankr.

S.D. Ohio 2005); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Boston

Generating, LLC*, 440 B.R. 302, 321 (Bankr. S.D.N.Y. 2010). Once the debtor articulates a valid

business justification for the sale, the business judgment rule acts as "a presumption that in

making the business decision the directors of [the] corporation acted on an informed basis, in

good faith and in the honest belief that the action was in the best interests of the company.'" *In

re S.N.A. Nut Co.*, 186 B.R. 98 (Bankr. N.D. Ill. 1995) (quoting *Smith v. Van Gorkom*, 488 A.2d

858, 872 (Del. 1985)); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y.

1992); *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[A]

presumption of reasonableness attaches to a Debtor's management decisions.").

21. The sale of a debtor's assets is appropriate where there are sound business

reasons behind such a determination. *See Myers*, 91 F.3d at 395; *see also Dai-Ichi Kangyo Bank

Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R.

147, 153 (Bankr. D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D.D.C. 1991);

*Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (sale of substantially all

assets of estate authorized where "a sound business purpose dictates such action"). The Trustee has a sound business justification for selling the Asset at this time. After consulting with his legal professionals, the Trustee has determined that a sale of the Asset would be the most optimal manner to maximize value for the Debtors' estates.

22.     The Notice Parties will receive notice of this Motion and the Sale Hearing. In addition, parties identified by the Trustee that may have an interest in bidding on the Asset will receive the Sale Notice. Such notice is reasonably calculated to provide timely and adequate notice to the major creditor constituencies, those parties potentially interested in bidding on the Asset, and others whose interests are potentially implicated by the proposed Sale.

23.     In order to effectuate the Sale, the Trustee requests authorization to sell the Asset free and clear of liens, claims, interests, and encumbrances.

24.     Section 363(f) of the Bankruptcy Code authorizes a debtor to sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions is satisfied:

1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

2) such entity consents;

3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

4) such interest is in bona fide dispute; or

5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). *See In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) ("[Section 363(f)] is written in the disjunctive, not the conjunctive. Therefore, if any of the five conditions of § 363(f) are met, the Trustee has the authority to conduct the sale free and clear of all liens."); *see also In*

*re Kellstrom Indus.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002); *Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994).

25.     With respect to parties that may assert a lien, claim, encumbrance, or interest on or against the Asset, such parties will have their interest (if any) attach to all proceeds (if any) ultimately attributable to the Asset in which such creditor alleges an interest, in the same order of priority and with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Trustee and the Debtors' estates may have with respect thereto. *See Folger Adam Security, Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 259 (3d Cir. 2000); *In re Elliot*, 94 B.R. at 345; *In re Circus Time, Inc.*, 5 B.R. 1, 7 (Bankr. D. Me. 1979). Therefore, the Trustee may sell the Asset free and clear of all liens, claims, interests, and encumbrances.

**B.     The Purchaser Should be Entitled to the Protections of Section 363(m)**

26.     Section 363(m) of the Bankruptcy Code protects the sale of a debtor's property to a good faith purchaser. Specifically, section 363(m) provides "the reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal." *See Cinicola v. Scharffenberger*, 248 F.3d 110, 121 (3d Cir. 2001) ("To promote certainty and finality in bankruptcy sales, § 363(m) prohibits the reversal of a sale to a good faith purchaser of bankruptcy estate property if a party failed to obtain a stay of the sale."); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("[P]ursuant to 11 U.S.C. § 363(m),

good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal.").

27.     Although neither the Bankruptcy Code nor the Bankruptcy Rules define "good faith purchaser," the United States Court of Appeals for the Third Circuit has held that the misconduct that would destroy a purchaser's good faith status at a judicial sale typically involves "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Abbotts Dairies*, 788 F.2d 143, 147-48 (3d Cir. 1986) (citing *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)); *see also In re Bedford Springs Hotel, Inc.*, 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989); *In re Perona Bros., Inc.*, 186 B.R. 833, 839 (D.N.J. 1995); *Kabro Assocs. of W. Islip, LLC v. Colony Hill Assocs.*, 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a [buyer]'s good faith status at a judicial sale involves fraud, collusion between the [buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); *In re Bakalis*, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998).

28.     The terms and conditions of the Sale to are to be negotiated by the Trustee at arm's-length and in good faith with the assistance of counsel.  Accordingly, the Purchaser is an independent third party and should be entitled to the protections afforded to good faith purchasers under section 363(m) of the Bankruptcy Code.

## C.     A Private Sale Is Appropriate

29.     Bankruptcy Rule 6004(f) and Local Rule 6004-1(b)(iv)(D) permit a debtor to conduct a private sale pursuant to section 363 of the Bankruptcy Code.  Specifically, Bankruptcy Rule 6004(f) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction."  Fed. R. Bankr. P. 6004(f)(1); *see also Berg v. Scanlon (In*

*re Alisa P'ship*), 15 B.R. 802, 802 (Bankr. D. Del. 1981) ("[T]he manner of [a] sale is within the discretion of the trustee . . . .").

30.     Accordingly, in light of Bankruptcy Rule 6004(f) and the case law regarding section 363 sales, a trustee may conduct a private sale if a good business reason exists. *See, e.g.*, *In re MF Glob., Inc.*, 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015) ("The business judgment of a trustee is entitled to great deference."); *In re Pritam Realty, Inc.*, 233 B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a chapter 11 debtor); *In re Condere Corp.*, 228 B.R. 615, 629 (Bankr. S.D. Miss. 1998) (authorizing a private sale of the debtors' tire company where the "[d]ebtor has shown a sufficient business justification for the sale of the assets to the [p]urchaser"); *In re Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) ("A large measure of discretion is available to a bankruptcy court in determining whether a private sale should be approved.  The court should exercise its discretion based upon the facts and circumstances of the proposed sale."); *In re Wieboldt Stores, Inc.*, 92 B.R. 309 (N.D. Ill. 1988) (affirming the right of a chapter 11 debtor to transfer assets by private sale).

31.     Indeed, courts in this and other districts have approved private sales of estate property pursuant to section 363(b)(1) of the Bankruptcy Code when there has been a valid business reason for not conducting an auction.  *See, e.g.*, *In re Aquion Energy, Inc.*, No. 17-10500 (KJC) (Bankr. D. Del. May 30, 2017) (approving a private sale of machinery and equipment for over $400,000); *In re Evergreen Int'l Aviation, Inc.*, No. 13-13364 (MFW) (Bankr. D. Del. Feb. 26, 2014) (approving private sale of helicopters for $350,000); *In re Buffets Holdings, Inc.*, No. 08-10141 (MFW) (Bankr. D. Del. Feb. 3, 2009) (approving a private sale of real property for approximately $2.4 million); *In re W.R. Grace & Co.*, No. 01-01139 (JKF)

(Bankr. D. Del. Dec. 18, 2008) (approving a private sale of real property for approximately $3.8 million); *In re Wellman, Inc.*, No. 08-10595 (SMB) (Bankr. S.D.N.Y. Oct. 6, 2008) (approving a private sale of an industrial complex for $17.9 million).

32.    The Trustee submits that the proposed private sale to the Purchaser in accordance with the APA is appropriate in light of the facts and circumstances of these chapter 7 cases.  Specifically, the Trustee previously filed a motion to establish bid procedures for this Asset [Docket No. 1014].  However, that process did not yield actionable offers from any third parties, in the Trustee's business judgment.  In addition, the Class Action Interchange Litigation has progressed to a point at which there is more certainty and less risk, and there is likely to be less interest from buyers attempting to take advantage in buying the Asset to yield a greater upside return.  Finally, another sale process with an auction is unlikely to net the estates a significant appreciable benefit through a substantially increased sale price in light of the costs and expenses for running a competitive bid and sale process.  In addition, the Sale remains subject to higher or better bids, based upon the Purchase Price.

33.    The transaction with the Purchaser allows the Trustee to maximize the value of the Asset and provides a significant benefit to the Debtors' estates.  Because a private sale is specifically authorized under Bankruptcy Rule 6004 and the Trustee believes that the Purchaser's offer is the highest and best offer for the Asset at this time, the Trustee requests that the Court approve the proposed private sale to the Purchaser in accordance with the APA.

## Reservation of Rights and Bidding Procedures

34.    Notwithstanding the requested relief for approval of the sale as a private sale, the Trustee reserves all rights, in the exercise of his business judgment, to accept any higher or better offers for an alternative value-maximizing transaction for the Asset that the Trustee

determines, in the exercise of his business judgment, will provide a greater value for the estates, and pursuant to the Bidding Procedures set forth below.

35.     Indeed, the Trustee recognizes that he has a duty to maximize value of the assets of the Debtors' estates.  Contemporaneously with the Motion, the Trustee has filed a notice of the Motion ("Notice"), which establishes a deadline by which objections or responses to this Motion must be filed with the Court ("Response Deadline").

36.     The Trustee is prepared to consummate the sale of the Asset to the Purchaser pursuant to the terms set forth herein and in the APA.  Notwithstanding, in the event a party other than the Purchaser (each, a "Competing Bidder") wishes to purchase the Asset, the Trustee requests that the Court approve the Trustee's application of the overbid procedures set forth below (collectively, "Bidding Procedures"), which serve the best interests of the Debtors' estates and creditors:

    a.  Each Competing Bidder who wants to participate in the overbid process must present the Trustee with a written overbid submitted by email to the Trustee (atgiuliano@giulianomiller.com) and his counsel (bsandler@pszjlaw.com and pkeane@pszjlaw.com) on or before the Response Deadline set forth in the Notice;

    b.  any Competing Bidder for the Asset must purchase the Asset under the same terms and conditions set forth in the APA, other than the Purchase Price;

    c.  a first overbid by a Competing Bidder for the Remnant Assets must be at least $100,000 more than the Purchase Price, or a total of $950,000.00;

    d.  a written overbid submitted by any Competing Bidder must be accompanied by a Cashier's Check to the Trustee in the amount of such Competing Bidder's first overbid;

    e.  in the event of an overbid that meets the foregoing conditions (each, a "Qualified Bid"), the Trustee shall file with the Court within three (3) business days of the Response Deadline a notice that indicates the identity of all Competing Bidders and the amount of their respective Qualified Bids;

    f.  thereafter, the Trustee, in his sole discretion, will elect to either: (a) schedule an auction of the Asset in advance of the hearing date at which the Trustee will

accept subsequent overbids for the Asset in additional increments of $100,000; or
(b) notify the Purchaser and any Competing Bidders of the date and time by
which each party may submit to the Trustee by email its respective sealed best
and final bid to determine the winning bidder, the identity of which the Trustee
will disclose to the Purchaser and the Competing Bidders within one (1) business
day following the Trustee's requested deadline to submit a sealed best and final
bid;

g.  regardless of the election made by the Trustee under subparagraph (f) above, the
Trustee will request that the Court approve the winning bidder as the purchaser at
the hearing on the Motion.

## **Notice**

37.     The Trustee will provide notice of this Motion by serving a copy of the

Motion via email if available (or first class mail if email is not available) upon: (a) the Office of

the United States Trustee; (b) all parties that have requested notice in these cases pursuant to

Bankruptcy Rule 2002; (c) the Purchaser; and (d) all parties known to the Trustee who may be

interested bidders for the Asset.

WHEREFORE, for the reasons set forth herein, the Trustee respectfully requests that the Court enter the proposed order, substantially in the form attached hereto as **Exhibit A**, and grant the Trustee the relief requested herein and such other and further relief as may be just and proper.

Dated:  March 10, 2026

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Peter J. Keane*
Bradford J. Sandler (DE Bar No. 4142)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899 (Courier 19801)
Telephone: 302-652-4100
Facsimile:  302-652-4400
E-mail:  bsandler@pszjlaw.com
          pkeane@pszjlaw.com

*Counsel to Alfred T. Giuliano, Chapter 7 Trustee*