**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| START MAN FURNITURE, LLC, et al. (f/k/a Art Van Furniture, LLC),[1] | Case No. 20-10553 (CTG) |
| Debtors. | Jointly Administered |
| | **Re: Docket No. 1744** |

**DECLARATION OF ALFRED T. GIULIANO IN SUPPORT OF MOTION OF ALFRED T. GIULIANO, CHAPTER 7 TRUSTEE, FOR ORDER APPROVING SALE OF RIGHTS IN VISA/MASTERCARD CLASS ACTION INTERCHANGE LITIGATION FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 105 AND 363 AND RELATED RELIEF**

I, Alfred T. Giuliano, declare as follows:

1.      I make this declaration (this "Declaration") in support of the *Motion of Alfred T. Giuliano, Chapter 7 Trustee, for Order Approving Sale of Rights in Visa/Mastercard Class Action Interchange Litigation Free and Clear of Liens, Claims, Interests, and Encumbrances Pursuant to 11 U.S.C. §§ 105 and 363 and Related Relief* (the "Motion") [Docket No. 1744] [2]  Unless otherwise noted, capitalized terms used in this Declaration have their meanings ascribed in the Motion.

2.      I am the duly-appointed chapter 7 trustee to the estates of the above-captioned debtors (the "Debtors").  Since my appointment on April 7, 2020 (the "Conversion Date"), I have familiarized myself with the Debtors' assets, liabilities, and financial affairs.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

[2] Capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Motion.

DE:4927-5012-9821.2 05233.003

3.     By the Motion, I, on behalf of the Debtors' estates, seek approval of: (i) the sale (the "Sale") of the Debtors' estates' rights in the Class Action Interchange Litigation (as defined in the Motion) (or the "Asset"), subject to the Bidding Procedures[3] set forth in paragraph 36 of the Motion, free and clear of all liens, claims, and encumbrances; and (ii) related relief.

4.     Attached as Exhibit 1 to the proposed order filed with the Motion was the Interchange Litigation Claim Sale Agreement (the "Sale Agreement") by and between myself as the Trustee and Optium Fund 6 ("Optium") for the sale of the Asset for the purchase price of $850,000.

5.     All facts set forth in this Declaration are based on my personal knowledge, my review of relevant documents and other information prepared or collected by my advisors, representatives, or counsel at my direction, or my opinion based on my experience with the Debtors' books and records.  If I were called upon to testify, I could and would testify competently to the facts set forth herein, and I am authorized to submit this Declaration on behalf of the Debtors' estates.

### Asset to Be Sold

6.     In response to inquiries from interested parties, my professionals at Giuliano, Miller & Company, LLC ("GMCO") and Pachulski Stang Ziehl & Jones LLP ("PSZJ") and I engaged in negotiations with Optum to sell the Asset for $850,000, as set forth in the Sale Agreement.

---

[3] Capitalized terms not defined herein shall have the meaning ascribed in the Motion.

**Bidding Process**

7.     Before filing the Motion, I, through my advisors at GMCO and PSZJ, conducted a marketing and sale process by reaching out to potential interested parties and, ultimately, selecting Optium as the proposed purchaser and negotiating with Optium over the terms of the Sale Agreement, which resulted in the proposed purchase offer from Optium for $850,000 set forth in the Sale Agreement.  Pursuant to the terms of the Sale Agreement and as indicated in the Motion, the Sale was still subject to higher or better offers.  *See* Motion ¶¶34-36, Sale Agreement § 3.

8.     On March 10, 2026, the Motion was filed and an objection deadline was set for March 24, 2026 at 4:00 p.m. (ET) (the "Objection Deadline") and the hearing was scheduled for April 6, 2026 at 10:00 a.m. (ET).  No objections were received prior to the expiration of the Objection Deadline.

9.     Prior to the Objection Deadline, and consistent with the proposed Bidding Procedures set forth in paragraph 36 of the Motion, I received a bid for the Assets from one other bidder.  Specifically, I received a bid in the amount of $950,000 from SLFAQ, LLC ("SLFAQ").

10.     Consistent with the proposed bidding Procedures, on March 27, 2026, I, through counsel, filed a notice of the Qualified Bids [Docket No. 1747] setting forth each bidder's identification and bid amount.

11.     After consultation with my counsel and in accordance with my discretion under the proposed Bidding Procedures in order to maximize value for the Asset, I determined to conduct a short auction of the Asset.  Accordingly, on March 30, 2026, I, through counsel, filed a notice [Docket No. 1748] providing notice to the two qualified bidders – Optium and SLFAQ - of a scheduled auction on April 2, 2026 at 10:00 a.m. (ET) conducted via Zoom

videoconference.  On March 30, 2026, my counsel served the Auction Notice on the two qualified bidders and provided the Zoom videoconference link and calendar invite.

12.     On April 2, 2026, I oversaw the conduct of an Auction by my counsel for the Asset.  At the start of the Auction, the bid of SLFAQ, LLC in the amount of $950,000 was declared the baseline and opening bid.  Each bidder confirmed that, among other representations: (i) they have not engaged in any collusion with respect to the submission of any bid, the bidding, or the Auction; and (ii) their bid and each subsequent bid, if any, is an irrevocable bid.

13.     The Auction resulted in six rounds of bidding.  At the conclusion of the Auction, in consultation with my advisors, I selected (i) the bid of $1,275,000 submitted by SLFAQ, LLC (the "Successful Bidder") as the successful bid; and (ii) the bid of $1,250,000 submitted by Optium Fund 6 (the "Backup Bidder"), as the backup bid.

14.     I conducted an Auction to provide each of the qualified bidders a chance to submit its final, highest and best bid on the same terms as the original Sale Agreement attached to the Motion as that process would be in the best interests of the estate to maximize value for the Asset and bring finality to the sale process in advance of the hearing on the Motion. This is essentially the same process that I have used in the past for the sale of discrete assets with multiple bidders and the same process that I used in this case in selling certain of the Debtors' real estate and intellectual property.

15.     As a result of the Auction, the sale price for the Asset increased from $850,000 to $1,275,000—an increase of 50% over the initial bid for the Asset in the original Sale Agreement.

16.     I can confirm that SLFAQ, LLC submitted a revised Sale Agreement (the "Revised Sale Agreement").  The Revised Sale Agreement will be filed under certification of counsel concurrently with this Declaration.

**Approval of Sale and Benefit to the Estates**

17.     Both of the two bidders were on a level playing field with substantially similar information (or access to such information).  The sale process was fair and consistent with a sale process I have used in other cases, and in this case.  The reliability of this process is important for the integrity of the sale process in my opinion, and it increased the consideration for the Asset by $425,000.  The proposed transaction with SLFAQ, LLC is beneficial to the estates because the proceeds from the sale of the Asset will generate meaningful value for the Debtors' estates.  The payment terms and revised purchase price represent fair market value of the Asset generated by a fair process.

18.     I believe that SLFAQ, LLC has negotiated and acted at all times in good faith and, as a result, is entitled to the full protections as a good faith purchaser under section 363(m) of the Bankruptcy Code, and that the Revised Sale Agreement does not and will not constitute an avoidable transaction pursuant to section 363(n) of the Bankruptcy Code.  The Revised Sale Agreement thereby presents the best opportunity to maximize value for the Debtors' estates and provide the best possible recovery for the Debtors' creditors in these circumstances.

19.     I am informed that SLFAQ, LLC is not an "affiliate" or "insider" of the Debtors as such terms are defined by the Bankruptcy Code.  There has been no fraud or collusion in the Sale of the Asset or by SLFAQ, LLC during the sale process.  SLFAQ, LLC and I have

both been represented by separate counsel in connection with the negotiation and documentation of the Revised Sale Agreement.

20.     It is my position that the sale of the Asset to the SLFAQ, LLC is free and clear of any and all liens, claims, encumbrances, and interests under section 363(f) of the Bankruptcy Code is appropriate as notice was provided to any known lienholders and as such lienholders have an opportunity to object.  Moreover, any liens, claims and encumbrances, and interests, will attach to the proceeds of the Sale in the same order of priority and with the same validity, force and effect that such creditors had prior to the Sale, subject to any claims or defenses of the Debtors' estates or that I have as the chapter 7 trustee.

21.     Finally, I believe the circumstances support a private sale pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 6004(f) as opposed to a more fulsome public auction.  I have already conducted a competitive sale process and an Auction with each of the interested bidders for the Asset, as described above.  I do not believe that an additional public sale process would achieve a better result for the Debtors' estates in light of the process to date. Specifically, I believe that a long and complicated further auction and sale process with more complicated bid procedures (as opposed to the Bidding Procedures set forth in the Motion) is unlikely to net the estates a significant appreciable benefit through a substantially increased sale price in light of the costs and expenses for running a more fulsome and complex competitive bid and sale process.  In particular, the competitive sale process and Auction I have already conducted increased the original purchase price under the original Sale Agreement from $850,000 up to $1,275,000.

22.     Accordingly, it is my business judgment that the Revised Sale Agreement with SLFAQ, LLC is the highest or otherwise best offer for the disposition of the Asset, the Sale

of the Asset to SLFAQ, LLC is in the best interests of the Debtors' estates, and the proposed transaction should be approved by the Court pursuant to section 363(b) of the Bankruptcy Code. For these reasons, I urge the Court to authorize and approve the Sale on the terms proposed in the Motion and as modified through the Revised Sale Agreement filed with the Court.

23.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 3rd day of April, 2026.

*/s/ Alfred T. Giuliano*
Alfred T. Giuliano