**Exhibit B**

**Redline**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| START MAN FURNITURE, LLC, et al. (f/k/a Art Van Furniture, LLC),[1] | Case No. 20-10553 (CTG) |
| | Jointly Administered |
| Debtors. | **Re: Docket No. ——1744** |

**ORDER (I) APPROVING ASSET PURCHASE AGREEMENT
AND AUTHORIZING THE SALE OF RIGHTS IN VISA/MASTERCARD CLASS
ACTION INTERCHANGE LITIGATION; (II) AUTHORIZING THE SALE OF ASSET
FREE AND CLEAR OF ALL LIENS, CLAIMS, RIGHTS, ENCUMBRANCES AND
OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS
105, 363(b), 363(f) AND 363(m); (III) GRANTING RELATED RELIEF**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

Upon consideration of the motion (the "Sale Motion")[2]  filed by Alfred T. Giuliano, chapter 7 trustee (the "Trustee" or "Seller") to the estates of the above-captioned debtors (the "Debtors") for the entry of an order (this "Sale Order"), *inter alia*, (i) approving the sale of the rights of the Debtors' estates may recover as a result of their potential involvement as putative class members in the Class Action Interchange Litigation (as defined in the Sale Motion), free and clear of all liens, claims, interests, and encumbrances (the "Asset"); (ii) approving the Trustee's entry into the Asset Purchase Agreement ("APA") with ~~Optium Fund 6~~SLFAQ, LLC (the "Purchaser") and authorizing the Trustee to consummate the sale (the "Sale") contemplated thereby; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the APA; and the Court having reviewed and considered the Sale Motion; and upon all of the proceedings had before the Court, and after due deliberation and sufficient cause appearing therefor, and the Court having found that

(a) the Debtor's estate is the sole and lawful owner of, and has good, valid and marketable title to the Assigned Rights and the Trustee can sell the Assigned Rights free and clear of any mortgage, pledge, lien, security interest, claim, or encumbrance pursuant to the terms of the Sale Order;

(b) the Assigned Rights have not been previously sold, assigned, or transferred, and Debtor has not received, in whole or in part,  compensation for the Assigned Rights or any interest therein; and

---

[2]  Capitalized terms used, but not defined, herein shall have the meaning ascribed to them in the Sale Motion or in the APA, as applicable.

(c) the transfer of the Assigned Rights to Buyer pursuant to the Sale Order will be a legal, valid, and effective transfer of the Assigned Rights and will vest Buyer with all right, title and interest to the Assigned Rights free and clear of all mortgages, pledges, liens, security interests, claims and encumbrances, including those that purport to give any party any right to terminate the Debtor's or the Buyer's rights to the Assigned Rights;

**IT IS HEREBY ORDERED THAT::**

1. The Sale Motion is GRANTED as set forth herein.

2. All objections and responses to the Sale Motion, including all reservations of rights included therein that have not been overruled, withdrawn, waived, settled, continued, or resolved, are hereby overruled and denied.

3. The form and manner of notice of the Sale Motion and the proposed Sale under the APA is hereby approved as providing good and sufficient notice to all creditors and parties in interest pursuant to the Bankruptcy Rules and the Local Rules.

4. The Asset Purchase Agreement ("APA"), in substantially the form attached hereto as **Exhibit 1**, and all of the terms and conditions thereof, are approved.

5. The relief requested in the Sale Motion is in the best interests of the Debtors, their estates, creditors, and other parties in interest. The Trustee has demonstrated good, sufficient, and sound business purposes and justifications for the relief requested in the Sale Motion. The Trustee's decision to enter into the APA and perform thereunder is a reasonable exercise of his business judgment.

6.      Pursuant to section 363(b) of the Bankruptcy Code, the Trustee, on behalf of the Debtors, is authorized to perform his obligations under and comply with the terms of the APA and consummate the Sale, pursuant to and in accordance with the terms and conditions of the APA.

7.      The Debtors' estates are the sole and lawful owner of, and have good, valid and marketable title to the Asset, and the Trustee is authorized to sell the Asset free and clear of any mortgage, pledge, lien, security interest, claim, or encumbrance pursuant to the terms of the Sale Order.

8.      The Asset has not been previously sold, assigned, or transferred, and Debtors have not received, in whole or in part, compensation for the Asset or any interest therein.

9.      The transfer of the Asset to the Purchaser pursuant to this Order is a legal, valid, and effective transfer of the Asset and vests the Purchaser with all right, title and interest to the Asset free and clear of all mortgages, pledges, liens, security interests, claims and encumbrances, including those that purport to give any party any right to terminate any Debtor's or the Purchaser's rights to the Asset.

10.      The Trustee, on behalf of the Debtors, is authorized to execute and deliver, and is empowered to perform under, consummate, and implement, the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA, and to take all further actions as may be reasonably required for the purpose of assigning, transferring, granting, conveying, and conferring the Asset to the Purchaser, or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA.

3

11.     Upon the closing of the Sale, the Sale of the Asset to the Purchaser shall vest the Purchaser with all right, title, and interest in the Asset, and, pursuant to section 363(f) of the Bankruptcy Code, the Sale shall be free and clear of any and all liens, claims, and encumbrances against the Asset, with such liens, claims (as defined in section 101(5) of the Bankruptcy Code), interests, and encumbrances attaching to the proceeds of the Sale with the same validity, extent, and priority as such liens, claims, and encumbrances had on the Asset immediately prior to the Sale, subject to any rights, claims, and defenses of the Debtors and other parties in interest.

12.     The transactions contemplated by the APA are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale of the Asset to the Purchaser.  The Purchaser, its affiliates, and their respective principals and advisors have proceeded in good faith and without collusion in all respects and are entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

13.     The consideration provided by the Purchaser for the Asset under the APA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

14.     No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the transactions contemplated by the APA.

15.     The Purchaser shall not have any liability for any obligation of the Debtors arising under or related to any of the Asset prior to the date of closing.  Without limiting the generality of the foregoing, the Purchaser shall not be liable for any claims against the Debtors or any of their predecessors or affiliates solely by virtue of its acquisition of the Asset.  By virtue of the Sale, the Purchaser and its affiliates, successors, and assigns shall not be deemed or considered to (a) be a legal successor, or otherwise be deemed a successor to any of the Debtors; (b) have, *de facto* or otherwise, merged with or into any or all Debtors; or (c) be a continuation or substantial continuation, or be holding itself out as a mere continuation, of any of the Debtors or their respective estates, businesses, or operations, or any enterprise of the Debtors, in each case by any law or equity, and the Purchaser has not assumed nor is it in any way responsible for any liability or obligation of the Debtors or the Debtors' estates.  The Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor, or transferee liability, labor law, *de facto* merger, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date.

16.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

5

17.     If any person or entity that has filed statements (including UCC-1 financing statements) or other documents or agreements evidencing encumbrances on, or interests in, all or any portion of the Asset shall not have delivered to the Trustee, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of encumbrances, or any other documents necessary for the purpose of documenting the release of all encumbrances or interests that the person or entity has or may assert, the Trustee is hereby authorized, and the Purchaser is hereby authorized on behalf of the Debtors' estates and the Trustee, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Asset.

18.     This Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title to or interest in any of the Asset.

19.     The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that that APA be authorized and approved in its entirety; *provided, however*, that this Order shall govern if there is any inconsistency between the APA and this Order.

20.     The Purchaser is a party in interest and shall have standing to appear and be heard on all issues related to or otherwise connected with this Order, the Sale, or the APA.

21.     Notwithstanding any applicability of Bankruptcy Rules 6004, 6006, 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

22.     The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

23.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the APA, the Sale, and the implementation, interpretation, and enforcement of this Order.

**Exhibit 1**

**APA**

## INTERCHANGE LITIGATION CLAIM SALE AGREEMENT

Alfred T. Giuliano, solely in his capacity as chapter 7 trustee (acting in such capacity, the "Seller") of Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (the "Debtor"),[1] in the chapter 7 bankruptcy cases captioned *In re Start Man Furniture, LLC et al. (f/k/a Art Van Furniture, LLC, et al.)* (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") at Case No. 20-10553 (CTG), for good and valuable consideration in the amount set forth in Paragraph 1 below (the "Purchase Price"), the sufficiency of which is hereby acknowledged, hereby sells, transfers and assigns, to [Optium Fund 6]SLFAQ, LLC (the "Buyer") all of the right, title and interest of the Debtor's estate in the claims and causes of action that are of the same kind and type asserted against, or arising out of conduct alleged against, the defendants (the "Defendants") in the class action litigation captioned as "In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation" pending in the United States District Court for the Eastern District of New York at No. 05-MD-1720 (the "Interchange Litigation") for the applicable purchase period (the "Claims"), including, without limitation, all of Seller's rights, title and interest in and to (a) the Interchange Litigation, (b) all rights to receive principal, cash and interest, fees, and other amounts Seller receives in respect of, or in connection with, the Claims in the Interchange Litigation (including, but not limited to, as a result of settlement or judgment), whether asserted in the Interchange Litigation or in any other action or forum, and (c) all proceeds with respect to the foregoing, including any proceeds already received by the Seller.  The Claims, together with the rights and interests described in clauses (a) through (c) above are referred to collectively herein as the "Assigned Rights."[2]  For the avoidance of doubt, "Claims" does not include any claims or causes of action Seller or the Debtor have or had against Defendants or any other entity unrelated to the allegations in the Interchange Litigation.  Seller and Buyer sometimes are referred to in this Interchange Litigation Claim Sale Agreement ("Agreement") individually as a "Party" and collectively as the "Parties."

1.      Buyer agrees to pay US$850,000.00  (Eight1,275,000.00  (One  Million  Two Hundred Fifty Seventy Five  Thousand Dollars and zero cents) (the "Purchase Price") to Seller by wire transfer of immediately available funds in accordance with the wire instructions of Seller set forth on Exhibit A to this Agreement within three (3) business days after the later of (i) the date this Agreement is fully executed and (ii) the date that the ApprovalSale Order becomes a final, non-appealable order.

2.      Buyer shall deliverhas delivered to Seller, within one (1) business day after entry into this Agreement, a good faith deposit equal to 10% of the Purchase Price (US$100,000 (one hundred thousand dollars, the "Deposit"), which Deposit shall bewas placed into an escrow

---

[1] The Debtor, along with certain of its affiliates, filed chapter 11 cases in the Bankruptcy Court on March 8, 2020. The chapter 11 cases were converted to chapter 7 cases on April 7, 2020 (the "Conversion Date"), and the Trustee was appointed as the chapter 7 trustee of the debtors' estates.

[2] The sale of the Assigned Rights under this Agreement only includes those Assigned Rights belonging to Debtor Art Van Furniture, LLC and excludes any rights of the other debtors, including: AVF Holding Company, Inc.; AVCE, LLC; AVF Holdings I, LLC; AVF Holdings II, LLC; AVF Parent, LLC; Levin Parent, LLC; Art Van Furniture of Canada, LLC; AV Pure Sleep Franchising, LLC; AVF Franchising, LLC; LF Trucking, Inc.; Sam Levin, Inc.; and Comfort Mattress LLC.

4938-1890-9587.1 05233.003 4938-1890-9587.2 05233.003
DOCS_DE:233020.2 05233/003

account and shall be applied by Seller against the Purchase Price at the closing of the sale of the Assigned Rights.  The Deposit will be refunded to the Buyer if the sale of the Assigned Rights to the Buyer is not consummated, other than as a result of a breach by the Buyer or as otherwise set forth herein and subject to the terms of the Bid Procedures approved by the Bankruptcy Court for the proposed sale of the Assigned Rights.  The full amount of the Deposit shall be forfeited to the Seller if the Seller terminates this Agreement as a result of a breach thereof by Buyer.

3. Notwithstanding any other provision of this Agreement, Buyer acknowledges that the proposed sale to the Buyer shall be subject to higher and better offers received by the Seller pursuant to proposed "Bid Procedures" subject to approval by the Bankruptcy Court (such approval, when entered by order of the Bankruptcy Court, the "Approval Order") and subject to the Seller's sole and absolute discretion.  Buyer acknowledges it has had an opportunity to review the proposed Bid Procedures part of the motion to approve this Agreement.  For the avoidance of doubt, no part of this Agreement shall include any break-up fee, expense reimbursement, or similar bid protections in favor of the Buyer.

3.1.  Buyer and Seller acknowledge that this Agreement and the transactions contemplated hereby are subject to the approval of the Bankruptcy Court and the entry by the Bankruptcy Court of a final order acceptable to Purchaser in its absolute discretion approving the sale of the Assigned Rights free and clear of any mortgage, pledge, lien, security interest, claim, set-off or encumbrance of any kind or nature and affording Buyer the protections under section 363 of the Bankruptcy Code as a good faith purchaser, which final order shall be in full force and effect and shall not have been modified, stayed, or reversed  (the "Sale Order"). The Sale Order shall contain specific findings by the Bankruptcy Court that:  (a) the Debtor's estate is the sole and lawful owner of, and has good, valid and marketable title to the Assigned Rights and the Trustee can sell the Assigned Rights free and clear of any mortgage, pledge, lien, security interest, claim, or encumbrance pursuant to the terms of the Sale Order; (b) the Assigned Rights have not been previously sold, assigned, or transferred, and Debtor has not received, in whole or in part,  compensation for the Assigned Rights or any interest therein; and (c) the transfer of the Assigned Rights to Buyer pursuant to the Sale Order will be a legal, valid, and effective transfer of the Assigned Rights and will vest Buyer with all right, title and interest to the Assigned Rights free and clear of all mortgages, pledges, liens, security interests, claims and encumbrances, including those that purport to give any party any right to terminate the Debtor's or the Buyer's rights to the Assigned Rights. Seller's obligation and Buyer's obligation to consummate the transaction contemplated hereunder is subject to approval by the Bankruptcy Court.  Within five (5) business days following exchange between the Parties of executed counterparts of this Agreement, Seller, at Seller's sole cost and expense, shall file with the Bankruptcy Court a motion seeking, *inter alia*, entry of the Sale Order.  If the Sale Order is not entered within sixty (60) days after the date on which Seller files a motion with the Bankruptcy Court seeking approval of the sale of the Assigned Rights, then Buyer, at its sole option, may terminate this Agreement.

4. Seller represents, warrants, and acknowledges to Buyer that: (a) Seller is duly authorized and empowered to execute and perform this Agreement; (b) subject to obtaining approval by the Bankruptcy Court, this Agreement constitutes the valid, legal and binding agreements of Seller, enforceable against Seller in accordance with its terms; (c) Seller shall use

commercially reasonable efforts to obtain an order from the Bankruptcy Court that allows Seller to sell the Assigned Rights free and clear of liens, claims, and encumbrances under section 363 of title 11 of the United States Code (the "Bankruptcy Code"); (d) Seller has not previously pledged, sold, assigned, participated or otherwise transferred the Assigned Rights, in whole or in part, or any interest therein; (e) except for the Bankruptcy Court's approval of this Agreement, no consent, approval, filing or other action is required as a condition to, or otherwise in connection with, the execution, delivery and performance of this Agreement by Seller; and (f) no payment has been received by or on behalf of Seller in full or partial satisfaction of the Assigned Rights.

4.1.    Seller has good, valid and marketable title to the Assigned Rights and it is selling the Assigned Rights free and clear of any mortgage, pledge, lien, security interest, claim, set-off or encumbrance of any kind or nature.  Seller has not: (a) transferred the Assigned Rights or any interest therein except to Buyer hereunder; or (b) received compensation for the Assigned Rights, in whole or in part, or any interest therein, or authorized any other party to file a Claim on its behalf and receive a fee, commission, or any similar compensation.   No settlement event has occurred and Seller has not received any payment or distribution in connection with any Claim.

5.    Buyer represents, warrants, and acknowledges to Seller that: (a) Buyer is duly authorized and empowered to execute and perform this Agreement; (b) this Agreement constitutes the valid, legal and binding agreements of Buyer, enforceable against Buyer in accordance with its terms; (c) neither the execution, delivery or performance of this Agreement nor consummation of the transactions contemplated pursuant to this Agreement will violate or contravene any law, rule, regulation, order, agreement, or instrument affecting Buyer; (d)  no consent, approval, filing or other action is required as a condition to, or otherwise in connection with, the execution, delivery and performance of this Agreement by Buyer; (e) Buyer has been given an opportunity to review and comment upon the proposed form of sale order to approve this Agreement that will be submitted to the Bankruptcy Court; and (f) that the Seller is an appointed chapter 7 bankruptcy trustee who has no direct knowledge of, or involvement in, the affairs of the Debtor prior to the Conversion Date, and, as such, the information provided to the Seller by the Debtor and by the Seller to the Buyer is "as is," and the sale of the Assigned Rights under this Agreement is a sale "as is," "where is," and with all faults.

6.    The closing of the purchase and sale of the Assigned Rights ("Closing") will take place via email and/or mail on or before fifteen (15) days of (i) full execution of this Agreement and (ii) entry of the ~~sale order~~Sale Order by the Bankruptcy Court, which sale order has not been stayed by a court of competent jurisdiction.  The date and time the Closing actually occurs are referred herein to as the "Closing Date."

7.    Each Party represents, warrants and acknowledges to the other Party that (a) the consideration being paid by Buyer pursuant to this Agreement might differ both in kind and amount from the amount ultimately distributed with respect to the Assigned Rights; (b) it has adequate information concerning the Interchange Litigation to make an informed decision regarding the sale or purchase of the Assigned Rights and that it has independently and without reliance on the other, and based on such information as it deems appropriate, made its own

decision to enter into this Agreement; (c) it is a sophisticated seller or buyer, as the case may be, with respect to the transactions described in this Agreement with sufficient knowledge and experience in investing in claims of this type to properly evaluate the merits of these transactions, and it is able to bear the substantial risk associated with these transactions; (d) it has not relied and will not rely on the other Party to furnish or make available any documents or other information regarding the Interchange Litigation; (e) it has been represented by counsel with respect to these transactions or has had an opportunity to consult with counsel and/or other relevant professional advisors prior to the execution of this Agreement; and (f) no broker, finder or other entity acting pursuant to its authority or the authority of any of its affiliates is entitled to any broker's commission or other fee in connection with this Agreement or the Assigned Rights for which the other Party could be responsible.

8.      Seller, to the extent the Bankruptcy Cases are not closed, agrees that in the event Seller receives any payments or distributions with respect to or relating to the Assigned Rights, Seller will accept the same as Buyer's agent and will hold the same for and on behalf of and for the sole benefit of Buyer, and promptly deliver the same forthwith to Buyer in the same form received (free of any withholding, set-off, claim or deduction of any kind), within three (3) Business Days (as defined below) in accordance with Buyer's written instructions.  Should Seller receive any notice with respect to or relating to the Assigned Rights that is not otherwise publicly available from and after the date of this Agreement, Seller promptly will deliver the same to Buyer at the address set forth on Exhibit A.

9.      Each Party agrees to indemnify the other Party from all costs, expenses, losses, damages or liabilities, including reasonable attorneys' fees and expenses that result from or arise out of any breach of any representation, warranty, covenant or agreement of the other Party set forth in this Agreement.

10.      Each Party will be solely responsible for all costs or expenses (including legal expenses) incurred by it with respect to the negotiation, preparation and execution of this Agreement and consummating the transactions contemplated in this Agreement.

11.      Seller hereby irrevocably appoints Buyer as its true and lawful attorney in fact and authorizes Buyer to act in Seller's name, place and stead, or otherwise, to demand, sue for, compromise and recover all such sums of money that now are or that hereafter might become due and payable for or on account of the Assigned Rights and grants to Buyer full authority to do all things necessary to enforce the Assigned Rights.

11.1.    If the purchase of the Assigned Rights is disallowed, for any reason, following the payment of the Purchase Price, the Buyer has the option of (i) recovering from future recoveries from the Interchange Litigation an amount equal to the sum of the Purchase Price ; or (ii) directing Seller, in which event, Seller agrees to pursue the Assigned Rights as directed by and at the sole cost of Buyer, and to remit to the Buyer all amounts actually received by Seller as a result of its pursuit of the Assigned Rights.  The Interest Payment will be assessed for the period of time elapsed between the date of the payment of the Purchase Price and date the Purchase Price has been repaid to the Buyer.

12.     In the event that at any time, including after the Bankruptcy Cases are fully administered and closed, there is no representative of Seller available to comply with the provisions of section 8, Buyer is authorized to act in all instances as if it were the Seller and to take such actions as reasonable and necessary to effectuate the intent of this Agreement and the prosecution of the Claims or any related legal action.

13.     Seller agrees that Buyer may sell, transfer or assign the Assigned Rights, in whole or in part, together with all or any portion of the right, title and interest of Buyer in and to this Agreement and may transfer or assign its rights and obligations pursuant to this Agreement, in whole or in part, without the consent of Seller, provided however, that Seller shall have no further document production/inspection obligations to such Assignee.

14.     All representations and warranties contained in this Agreement will survive the execution and delivery of this Agreement and the purchase and sale of the Assigned Rights and will inure to the benefit of, and be binding upon, the Parties and their respective successors and assigns; provided, however, nothing in this Agreement shall restrict or prevent the Trustee or the Bankruptcy Court from closing the Bankruptcy Cases.

15.     This Agreement constitutes the entire agreement and understanding of the Parties with respect to the transactions described in this Agreement and supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, representations and warranties in respect thereof, all of which have become merged and finally integrated into the Agreement.

16.     This Agreement will be governed and construed in accordance with the laws of the State of Delaware without giving effect to any choice of law principles.  Each Party irrevocably and unconditionally consents to the jurisdiction of the Bankruptcy Court over any action to enforce, interpret or construe any provision of this Agreement and also hereby irrevocably waives any defense of improper venue or forum non conveniens to any such action brought in the Bankruptcy Court.  Each Party consents to service of process by certified mail at its address set forth on Exhibit A.  Each Party further irrevocably agrees that any action to enforce, interpret or construe any provision of this Agreement will be brought only in those courts and not in any other court.  Each Party waives, to the fullest extent permitted by applicable law, any right that it might have to trial by jury in any action to enforce, interpret or construe any provision of this Agreement.

17.     All notices required to be delivered pursuant to this Agreement are to be sent in writing and may be sent by either electronic mail (e-mail) or internationally-recognized overnight courier service to the addresses set forth on Exhibit A hereto or to such other address as the Party desiring the change advises the other Party from time to time through a notice given in accordance with the provisions of this Section 17.  Any such notice will be effective and will be deemed to have been given, in the case of a notice sent by courier service, when delivered personally (provided that if delivery is tendered but refused, such notice will be deemed effective upon such tender).

18.     This Agreement may be executed in counterparts and such counterparts taken together will be deemed to constitute a single agreement.  The Parties agree that facsimile signatures or other forms of electronic transmission of an executed counterpart of this Agreement will have the same binding force and effect as original signatures.

**IN WITNESS WHEREOF**, the undersigned have duly executed this Agreement by their duly authorized representative dated the 2nd day of ~~March~~April, 2026.

**SELLER**:

ALFRED T. GIULIANO, SOLELY IN HIS CAPACITY AS CHAPTER 7 TRUSTEE

By:     /s/_____
Name:   Alfred T. Giuliano, solely in his capacity as the chapter 7 trustee of the bankruptcy estate of Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC), and not in any individual capacity

**BUYER**:

~~Optium Fund 6~~
SLFAQ, LLC

By:     /s/_____
Name:   ~~Neil Kornswier~~Joseph E. Sarachek
Title:  ~~CEO~~Managing Member

~~4938-1890-9587.1 05233.003~~ 4938-1890-9587.2 05233.003  6